# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588

WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

April 14, 2014

*VIA ECF*

The Honorable Katherine B. Forrest
United States District Court
Southern District of New York
500 Pearl Street
New York, New York  10007-1312

> Re:   *In re Aluminum Warehousing Antitrust Litigation,*
> Case No. 1:13-md-02481-KBF

Dear Judge Forrest:

The Goldman Sachs defendants renew their request for **a stay of discovery pending decision on the motions to dismiss** defendants intend to file next week.[1]  Although the Court declined at the February 6 conference to stay discovery (Tr. 17:12-14), after hearing from defendants (Tr. 31:18-24), Your Honor invited defendants to renew their request for a stay if they determined, after reviewing plaintiffs' amended complaints, that they had "a very good basis for stay" (Tr. 37:17-19).  Plaintiffs have now filed their amended complaints, and the Goldman Sachs defendants submit that a stay is warranted for the reasons set forth below.  The Goldman Sachs defendants are filing this request today pursuant to the schedule proposed by plaintiffs as part of the meet-and-confer process.

None of the five complaints filed on March 12—on behalf of three proposed classes and two individual companies alleging violations of the Sherman Act and multiple state laws—states a claim.  In an MDL proceeding concerning aluminum warehousing, not one plaintiff alleges that it stored aluminum in warehouses operated by a defendant or traded LME contracts related to the aluminum stored in those warehouses.  Instead, they claim only that they purchased aluminum in the physical market or products made of aluminum at prices supposedly affected by warehouse practices through an attenuated chain of causation.  There are a number of reasons why plaintiffs fail to state a claim.

---

[1] Pacorini Metals USA LLC, JPMorgan Chase & Co. and Henry Bath LLC concur in the arguments made in this letter but are writing separately to emphasize their own individual circumstances.  The London Metal Exchange ("LME") also is filing a separate request for a stay.  The Goldman Sachs defendants have participated in three separate met-and-confer calls with plaintiffs, but the parties are at impasse on this issue.

The Honorable Katherine B. Forrest                                                -2-

Plaintiffs do not have antitrust standing as a matter of law: they have suffered no antitrust injury, and they are not "efficient enforcers" of the antitrust laws. *See Gatt Commc'ns, Inc.* v. *PMC Assocs., LLC*, 711 F.3d 68, 78 (2d Cir. 2013). There are only three types of plaintiffs that can suffer a cognizable antitrust injury: consumers and competitors of the defendants in the allegedly restrained market, as well as "instrumentalities" (*i.e.*, those plaintiffs whose injuries are a necessary step for defendants to effectuate market injury). Plaintiffs are none of those. They do not participate in the markets in which the alleged anticompetitive conduct occurred—the alleged markets for warehousing and for trading aluminum contracts on the LME—but participated instead in a separate market for physical aluminum. They also do not allege that they were instrumentalities. Moreover, even if plaintiffs could establish antitrust injury, their alleged injuries are too indirect and remote from the alleged anticompetitive conduct involving warehousing and trading on the LME to confer antitrust standing, and there are more efficient enforcers of the antitrust laws. *See Assoc. Gen. Contractors of Calif.* v. *State Council of Carpenters*, 459 U.S. 519, 535-45 (1983); *Paycom Billing Servs., Inc.* v. *MasterCard Int'l, Inc.*, 467 F.3d 283, 290-93 (2d Cir. 2006).

Plaintiffs' antitrust claims also fail under the governing pleading standard. Plaintiffs do not even attempt to state a claim under the rule of reason, and they fail to plead facts sufficient to support a plausible inference of a *per se* unlawful horizontal conspiracy among the warehouse defendants or the financial-firm defendants, relying instead on conclusory assertions of "agreements." Nor can plaintiffs plead a horizontal conspiracy by pointing to supposedly parallel conduct by defendants. They do not even allege parallel conduct among warehouses because they fail to allege that any defendant other than Metro has aluminum queues at warehouses in the United States. With respect to their allegation that defendants agreed to treat the LME minimum load-out rule as a maximum, plaintiffs acknowledge that each warehouse had a strong *unilateral* incentive to keep aluminum in their warehouses as long as possible because they earn daily rent while the aluminum is in storage. Plaintiffs' challenges to Metro's payments of incentives to attract aluminum into its warehouses and Metro's agreement to comply with the LME's minimum load-out rule likewise fall short of stating a conspiracy claim. Those essentially vertical arrangements are not among the narrow set of "naked restraints" courts have held are *per se* unlawful, and plaintiffs do not even try to state a claim under the rule of reason.

Similarly, plaintiffs' monopolization claims suffer from multiple fatal defects. Not only do plaintiffs fail to plead a relevant market with barriers to entry in other than conclusory terms, but the complaints also do not allege any anticompetitive conduct. Plaintiffs do not identify a single actual or potential competitor in any of their proposed markets that supposedly was excluded or otherwise foreclosed from competing as a result of the challenged conduct. They also do not allege that Metro's payment of incentives was predatory—to the contrary, they admit that the incentives were highly profitable for Metro because of the rent it subsequently collected. To the extent that plaintiffs complain that Metro's payment of incentives provided producers with an alternative to selling their inventory to users of physical aluminum, they are complaining about competition, not a restraint on competition.

The Honorable Katherine B. Forrest                                    -3-

Plaintiffs also will not be prejudiced by a stay. Numerous defendants that plaintiffs claim are important to the cases have individual defenses—lack of personal jurisdiction or immunity from suit. Discovery cannot proceed against those defendants until those threshold defenses are resolved. For example, discovery from the LME—a central defendant under plaintiffs' theory— is barred as a practical matter until the Court resolves the LME's sovereign immunity and personal jurisdiction defenses. Other defendants have not even been served yet. Accordingly, granting the stay as to the Goldman Sachs defendants will merely place them on the same discovery schedule that will apply to those other defendants if these cases are not dismissed on the pleadings.

Defendants recognize that there is no automatic discovery stay in antitrust cases (Tr. 30:16), but neither is there any doubt that courts have the discretion to enter stays. Following *Twombly*, courts have frequently entered stays in antitrust cases pending ruling on motions to dismiss.[2] The concerns underlying those decisions clearly apply here. Although the Court seemed to envision that early discovery would be limited to "three or four document requests" (Tr. 32:17-18), plaintiffs have served sweeping requests seeking "all" documents on numerous broad topics over a more than eight-year period. Those requests seek to impose burdens on defendants that would be unreasonable even in the absence of imminent dispositive motions. The Court should not require defendants to engage in costly, time-consuming and intrusive discovery in the current procedural posture of this litigation. Indeed, the rationale for a stay is even more compelling here, given that multiple defendants raise substantial threshold questions about personal jurisdiction and that plaintiffs lack standing to assert antitrust claims. Plaintiffs no doubt will cite decisions permitting discovery in antitrust cases before resolution of motions to dismiss, but those decisions, which generally involve private actions following on the heels of guilty pleas arising from grand jury investigations, have no application here.

Defendants are not asking that the Court decide today whether to grant or deny their motions to dismiss; that is obviously not possible without the benefit of full briefing and such argument as the Court may choose to entertain. But a court should grant a stay if defendants "have *substantial arguments* for dismissal of many, if not all, of the claims asserted in this lawsuit." *Spencer Trask Software & Info Servs., LLC* v. *RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (emphasis added). Nor are defendants asking the Court simply to "take our word for it." Rather, defendants ask the Court to wait until it receives their motions to dismiss next week before deciding whether to issue a stay. Defendants intend to file some of their briefs early next week so that the Court has them before the April 25 conference. Defendants are confident that the Court will conclude that those motions present "substantial arguments" and that **a stay of discovery pending a ruling on defendants' motions to dismiss** is warranted.

---

[2] *See, e.g., Rio Grande Royalty Co.* v. *Energy Transfer Partners, L.P.*, 2008 WL 8465061, at *1 (S.D. Tex. Aug. 11, 2008); *In re Rail Freight Fuel Surcharge Litig.*, Misc. No. 07-489 (PLF), Dkt. 114, at 1 (D.D.C. June 23, 2008); *In re Graphics Processing Units Antitrust Litig.*, 2007 WL 2127577, at *4-5 (N.D. Cal. July 24, 2007).

The Honorable Katherine B. Forrest                                              -4-

The Goldman Sachs defendants will respond separately to the motion to compel filed today by the so-called direct purchaser plaintiffs.

Sincerely,

Richard C. Pepperman, II