**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                             :

IN RE ALUMINUM WAREHOUSING        :        MDL No. 2481
ANTITRUST LITIGATION                   :

This Document Relates To:             :    Master Docket No.
                             :    13-md-2481-KBF-RLE

FIRST LEVEL PURCHASER CASES    :
COMMERCIAL END-USER CASES     :
CONSUMER END-USER CASES        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

## DEFENDANT LME HOLDINGS LIMITED'S
## <u>MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS</u>

LATHAM & WATKINS LLP
Margaret M. Zwisler (admitted *pro hac vice*)
(*margaret.zwisler@lw.com*)
William R. Sherman
(*william.sherman@lw.com*)
Jennifer L. Giordano
(*jennifer.giordano@lw.com*)
Jeffrey H. Newhouse
(*jeffrey.newhouse@lw.com*)
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201

*Attorneys for Defendant LME Holdings Limited*

Dated:  April 23, 2014

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND .........................................................................................................2

ARGUMENT .............................................................................................................5

I.  THIS COURT LACKS PERSONAL JURISDICTION OVER HOLDINGS ...................5

    A.  Plaintiffs Cannot Satisfy Their Burden To Show That The Court Has
Personal Jurisdiction Over Holdings......................................................5

    B.  Holdings Is Not Subject To General Or Specific Jurisdiction In The
United States.......................................................................................7

        1.  The Court Lacks General Jurisdiction Over Holdings ...............8

        2.  The Court Lacks Specific Jurisdiction Over Holdings............11

    C.  The Exercise of Personal Jurisdiction Over Holdings Would Be
Unreasonable ..................................................................................15

II.  THE COMPLAINTS FAIL TO STATE A CLAIM AGAINST HOLDINGS...............16

    A.  Plaintiffs Do Not Include Any Factual Allegations Of Wrongdoing By
Holdings .........................................................................................16

    B.  Holdings Is Not Liable For Any Alleged Acts Of The LME .............17

    C.  The Complaints Fail To Give Holdings Adequate Notice Of Plaintiffs'
Claims ...........................................................................................19

CONCLUSION........................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Allstate Life Insurance Co. v. Linter Group Ltd.*,
  782 F. Supp. 215 (S.D.N.Y. 1992) ........................................................................14

*Asahi Metal Indutrial Co., imited. v. Superior Court of Caifornia*,
  480 U.S. 102 (1987).................................................................................................15

*Atuahene v. City of Hartford*,
  10 F. App'x 33 (2d Cir. 2001) ...............................................................................19

*Beach v. Citigroup Alternative Investments*,
  No. 12 Civ. 7717 (PKC), 2014 WL 904650 (S.D.N.Y. Mar. 7, 2014)....................11

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007)................................................................................................16

*Bodum U.S.A., Inc. v. Hantover, Inc.*,
  No. 11 Civ. 8702, 2012 WL 1309176 (S.D.N.Y. Apr. 16, 2012)............................10

*Bristol-Myers Squibb Co. v. Matrix Laboratories, Ltd.*,
  964 F. Supp. 2d 287 (S.D.N.Y. 2013)....................................................................11

*Burger King v. Rudzewicz*,
  471 U.S. 462 (1985).................................................................................................11

*Calder v. Jones*,
  465 U.S. 783 (1984).................................................................................................12

*Chloé v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d Cir. 2010)...................................................................................15

*Conomos v. Chase Manhattan Corp.*,
  No. 97 CIV 0909 (PKL), 1998 WL 118154 (S.D.N.Y. Mar. 17, 1998) ..................17

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014).................................................................................................8

*Daniel v. American Board of Emergency Medicine*,
  428 F.3d 408 (2d Cir. 2005).....................................................................................6

*Dardana Ltd. v. Yuganskneftegaz*,
  317 F.3d 202 (2d Cir. 2003).....................................................................................7

*Dejesus v. Sears, Roebuck & Co.*,
  87 F.3d 65 (2d Cir. 1996).................................................................................17, 19

*Desyatnikov v. Credit Suisse Group, Inc.*,
  No. 10-CV-1870, 2012 U.S. Dist. LEXIS 41180 (E.D.N.Y. Mar. 26, 2012) ..........................18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  131 S. Ct. 2846 (2011) ............................................................................................8, 9, 11

*Gurfein v. Ameritrade, Inc.*,
  411 F. Supp. 2d 416 (S.D.N.Y. 2006)...................................................................................20

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984)...........................................................................................................8, 11

*Hinds County. v. Wachovia Bank, N.A.*,
  708 F. Supp. 2d 348 (S.D.N.Y. 2010).....................................................................................14

*In re Digital Music Antitrust Litigation*,
  812 F. Supp. 2d 390 (S.D.N.Y. 2011)..................................................................... 16, 17, 18

*In re Foodservice Inc. Pricing Litigation*,
  No. 3:07 MD 1894, 2009 U.S. Dist. LEXIS 117403 (D. Conn. Dec. 15, 2009)............ 9, 11, 13

*In re New Motor Vehicles Canadian Export*,
  307 F. Supp. 2d 145 (D. Me. 2004) ......................................................................................13

*In re Roman Catholic Diocese*,
  --- F.3d ----, No. 13-4736-cv, 2014 U.S. App. LEXIS 2403 (2d Cir. Feb. 7, 2014) ..............8, 9

*In re Ski Train Fire in Kaprun, Austria*,
  257 F. Supp. 2d 717 (S.D.N.Y. 2003)......................................................................................9

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 659 (2d Cir. 2013)..................................................................................................15

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices & Products*
  *Liability Litigation*, 826 F. Supp. 2d 1180 (C.D. Cal. 2011) ...................................................20

*Jazini v. Nissan Motor Co., Ltd.*,
  148 F.3d 181 (2d Cir. 1998) ...................................................................................................6

*Kingston Dry Dock Co. v. Lake Champlain Transport Co.*,
  31 F.2d 265 (2d Cir. 1929) ...................................................................................................17

*Licci v. Lebanese Canadian Bank*,
  673 F.3d 50 (2d Cir. 2012) ........................................................................................6, 8, 12

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
  No. 91 Civ. 2923, 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994)................................................20

*NovelAire Technologies, L.L.C. v. Munters AB*,
  No. 13 Civ. 472, 2013 WL 6182938 (S.D.N.Y. Nov. 21, 2013).......................................10, 13

iii

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*,
   No. 12 Civ. 2837, 2012 U.S. Dist. LEXIS 172208 (S.D.N.Y. Nov. 28, 2012)..................19, 20

*Penguin Group (USA) Inc. v. American Buddha*,
   609 F.3d 30 (2d Cir. 2010) ...................................................................................................5

*Peterson v. Islamic Republic of Iran*,
   No. 10 Civ. 4518, 2013 U.S. Dist. LEXIS 40470 (S.D.N.Y. Feb. 28, 2013)............................6

*Porina v. Marward Shipping Co.*,
   521 F.3d 122 (2d Cir. 2008) ......................................................................................7, 8, 11

*Precision Associates v. Panalpina World Transp. (Holding) Ltd.*,
   No. 08-CV-00042, 2012 U.S. Dist. LEXIS 113829 (E.D.N.Y. Aug. 13, 2012) .......................17

*Satyam Computer Services Limited Securities Litigation*,
   915 F. Supp. 2d 450 (S.D.N.Y. 2013)..............................................................................14, 15

*Saudi v. Marine Atlantic, Ltd.*,
   306 F. App'x 653 (2d Cir. 2009) .........................................................................................9

*Sikhs for Justice v. Nath*,
   850 F. Supp. 2d 435 (S.D.N.Y. 2012)...................................................................................10

*Tarsavage v. Citic Trust Co., Ltd.*,
   --- F. Supp. 2d ----, No. 13 Civ 2312 (KBF), 2014 WL 956408 (S.D.N.Y. Mar. 11, 2014) .....15

*Troma Entertainment, Inc. v. Centennial Pictures Inc.*,
   729 F.3d 215 (2d Cir. 2013) .................................................................................................5

*Tymoshenko v. Firtash*,
   No. 11-cv-2794, 2013 U.S. Dist. LEXIS 43543 (S.D.N.Y. Mar. 27, 2013) ............................13

*United States v. Bestfoods*,
   524 U.S. 51 (1998)...............................................................................................................17

*Universal Trading & Investment Co. v. Credit Suisse (Guernsey) Ltd.*,
   --- F. App'x ----, 2014 WL 1099222 (2d Cir. Mar. 21, 2014) .................................................10

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*,
   751 F.2d 117 (2d Cir. 1984) .................................................................................................10

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014) .........................................................................................................11

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980)..............................................................................................................12

## STATUTES

15 U.S.C. § 22 ........................................................................................................................6

## RULES

Fed. R. Civ. P. 12(b)(2) ........................................................................................................1

Fed. R. Civ. P. 12(b)(6) ........................................................................................................1

Fed. R. Civ. P. 4(k)(1) .....................................................................................................8, 14

Fed. R. Civ. P. 4(k)(2) .......................................................................................... 7, 8, 13, 14

Fed. R. Civ. P. 8 .........................................................................................................19, 20

Defendant LME Holdings Limited ("Holdings"), appearing specially and without consenting to this Court's jurisdiction or waiving the objections and defenses set forth herein, respectfully submits this memorandum in support of its motion to dismiss all claims against it.

## PRELIMINARY STATEMENT

The Court should dismiss all three Consolidated Amended Complaints (collectively, the "Complaints")[1] against Holdings for lack of personal jurisdiction and for failure to state a claim. The Complaints fail to allege any basis for the Court to exercise personal jurisdiction over Holdings, and no such basis exists. Holdings is not organized under the laws of the United States, and does not do business in the United States. Holdings has no operations or physical presence in the United States. Holdings has in no way purposely availed itself of the privilege of doing business in the United States, and has not undertaken any conduct expressly aimed at the United States, much less conduct giving rise to plaintiffs' claims. In short, Holdings does not have the requisite minimum contacts with the United States to allow this Court to exercise personal jurisdiction over Holdings. *See* Fed. R. Civ. P. 12(b)(2).

In addition, the Complaints fail to state a claim against Holdings, inasmuch as they do not include any factual allegations regarding Holdings's alleged misconduct. Accordingly, Holdings should be dismissed from all of the consolidated actions on this separate basis as well. *See* Fed. R. Civ. P. 12(b)(6).

---

[1] The so-called Direct Purchaser Plaintiffs (referred to herein as First Level Purchasers, or "FLPs"), the Commercial End-User Plaintiffs, and the Consumer End-User Plaintiffs (but not the individual plaintiffs Agfa Corporation ("Agfa") and Mag Instrument, Inc. ("Mag")) named Holdings as a defendant in their recently filed Amended Complaints. For purposes of this Motion, the term "plaintiffs" refers collectively to the Direct Purchaser Plaintiffs, the Commercial End-User Plaintiffs, and the Consumer End-User Plaintiffs.

## BACKGROUND

Holdings is organized under the laws of the United Kingdom and is headquartered in London, England.  *See* Declaration of Marcos Castro ("Castro Decl.") ¶ 4.  Holdings is purely a holding company of the London Metal Exchange (the "LME").  *Id*. ¶ 3.  Holdings and the LME maintain separate corporate identities and functions.  *Id.* ¶ 27.  Holdings does not conduct the business of the LME.  *Id.* ¶ 24.  Indeed, consistent with its existence as nothing more than a holding company, Holdings does not have any of its own employees and does not conduct any business related to aluminum warehousing.  *Id.* ¶¶ 5-6.  Further, Holdings's limited corporate activities are confined entirely to the United Kingdom.  *Id.* ¶ 23.

Plaintiffs do not include any factual allegations about Holdings that would establish personal jurisdiction over Holdings in this Court (or any other court in the United States). Instead, plaintiffs apparently seek to include Holdings, along with all the other named Defendants, in those paragraphs in the Complaints that claim personal jurisdiction over all Defendants based upon boilerplate language alleging:

- Business activities, aggregate contacts, or engagement in an illegal price-fixing conspiracy that was directed at and intended to cause injury in this District (Consumer End-User Consolidated Amended Class Action Complaint (ECF No. 227) ("Consumer Compl.") ¶ 14);

- Transacting business, maintaining substantial contacts, committing acts in furtherance of the illegal conspiracy, or being located in the United States and this District, or directing the alleged conspiracy at and causing injury in this District (First Level Purchasers' Corrected Consolidated Amended Complaint (ECF No. 235) ("FLP Compl.") ¶ 104);

- Engaging in conduct substantially affecting commerce throughout the United States and purposefully availing themselves of the laws of each affected state, causing damage to residents of those states, and committing acts or omissions that they should have known would cause damage in every such state.  (Commercial End Users' Corrected Consolidated Class Action Complaint (ECF No. 242) ("Commercial Compl.") ¶ 17).

Even if such non-specific, conclusory allegations were sufficient to establish this Court's jurisdiction over any defendant to whom they applied, they provide no basis for jurisdiction over Holdings because, as demonstrated below and in the Castro Declaration, none of those blunderbuss allegations apply to Holdings.

In the few instances where the Complaints refer to Holdings specifically, the allegations do nothing to support the exercise of personal jurisdiction here.  While plaintiffs allege that Defendants conspired to "restrain large amounts of aluminum in warehousing of exchange-traded aluminum *in the U.S.*," FLP Compl. ¶ 19 (emphasis added); *see also, e.g.*, Commercial Compl. ¶ 1 ("Defendants combined, conspired and agreed with one another to limit and restrain the availability of primary aluminum *in the United States* ….") (emphasis added); Consumer Compl. ¶ 223 ("[t]he primary method and means of the conspiracy was to hoard … aluminum … *in Michigan*" (emphasis added)), none of the challenged conduct is tied to Holdings.  Indeed, the Complaints say virtually nothing at all about Holdings's conduct.  Plaintiffs do not even attempt to allege how a pure holding company with no employees, no services, and its only place of business in London participated in the alleged conspiracy.  Out of more than 1,066 paragraphs contained in the Complaints, only 16 specifically reference Holdings, and those paragraphs contain nothing more than descriptions of Holdings and its shareholders, or simply seek to improperly conflate Holdings with its subsidiary, the LME, or its ultimate parent, Hong Kong Exchanges & Clearing Limited ("HKEx").  *See, e.g.*, FLP Compl. ¶ 130 ("The LME, LME Holdings, and (after December 5, 2012) HKEx are referred herein collectively as the "LME."); Commercial Compl. Preamble at 1 (referring to the London Metal Exchange Limited and LME Holdings Limited together); Consumer Compl. ¶ 35 ( "LME Defendants" are all of the non-Warehouse Defendants).

As explained below, plaintiffs fall woefully short of carrying their burden to establish personal jurisdiction over Holdings with such sparse allegations, inasmuch as the Complaints do not (and cannot) allege that Holdings does business in the United States or that it has minimum contacts with the United States (or any state therein) that would support personal jurisdiction. Lest there be any doubt, however, the Castro Declaration establishes the following facts, fatal to plaintiffs' attempt to hale Holdings into this Court:

- Holdings is merely a holding company organized under the laws of the United Kingdom with its principal place of business in London, England. *See* Castro Decl. ¶¶ 3-4;

- Holdings does not transact any business in the United States. *Id.* ¶ 7;

- Holdings does not maintain, and has never maintained, offices or branches in the United States. *Id.* ¶ 12;

- Holdings does not own, and has never owned, any subsidiary located in the United States. *Id.* ¶ 11;

- Holdings does not own or lease, and has never owned or leased, any real property in the United States. *Id.* ¶ 13;

- Holdings does not employ, and has never employed, individuals or agents in the United States. *Id.* ¶ 14;

- Holdings does not have a designated agent for service of process in the United States. *Id.* ¶ 15;

- Holdings does not have an address or phone number in the United States. *Id.* ¶ 16;

- Holdings does not manufacture or sell products into the United States. *Id.* ¶ 17;

- Holdings does not have a bank account in the United States. *Id.* ¶ 18;

- Holdings does not receive income in the United States.  *Id.* ¶ 19;

- Holdings does not pay, and has never paid, taxes in the United States.  *Id.* ¶ 20;

- Holdings does not conduct officer or board meetings in the United States.  *Id.* ¶ 21; and

- Holdings does not solicit investments or advertise in the United States.  *Id.* ¶ 22.

Moreover, despite plaintiffs' attempts to suggest otherwise, Holdings is a distinct entity from the LME.  Holdings does not exercise day-to-day control or influence over the LME's business operations.  *Id.* ¶ 24.  Holdings and the LME do not share financial records. *Id.*  ¶ 25. And Holdings does not guarantee loans or other financial arrangements on behalf of the LME. *Id.* ¶ 26.[2]

In light of these facts, the claims against Holdings must be dismissed.

## <u>ARGUMENT</u>

### I.     THIS COURT LACKS PERSONAL JURISDICTION OVER HOLDINGS

#### A.     Plaintiffs Cannot Satisfy Their Burden To Show That The Court Has Personal Jurisdiction Over Holdings

As an initial matter, plaintiffs have the burden to allege sufficient jurisdictional facts that, if credited as true, would allow the Court to exercise personal jurisdiction over the Defendants. To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists.  *See Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013); *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010).   While a Court may construe the pleadings in the light most favorable to the

---

[2] The FLPs also ignore that Holdings and HKEx are distinct entities and instead lump Holdings together with its new parent.  *See* FLP Compl. ¶ 130.  Plaintiffs have not alleged any misconduct by HKEx and, in any event, have provided no basis for this Court to ignore the distinct corporate forms of Holdings and HKEx.

plaintiffs, it is not required to credit "conclusory statements…without any supporting facts," *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998), or accept as true "a legal conclusion couched as a factual allegation," *Licci v. Lebanese Canadian Bank*, 673 F.3d 50, 59 (2d Cir. 2012) (citation omitted).  Moreover, the Court is only "required to accept the allegations in the complaint as true so long as they are uncontroverted by defendant's affidavits." *Peterson v. Islamic Republic of Iran*, No. 10 Civ. 4518, 2013 U.S. Dist. LEXIS 40470, at *67 (S.D.N.Y. Feb. 28, 2013) (Forrest, J.).  As noted above, plaintiffs adduce no facts about Holdings in support of personal jurisdiction, and instead simply seek to include Holdings in general boilerplate allegations that do not apply, as shown by the Castro Declaration.

Although plaintiffs seek to rely upon the Clayton Act's worldwide service of process provision, 15 U.S.C. § 22, to support their allegations of personal jurisdiction over Defendants (*see* FLP Compl. ¶¶ 99, 104; Commercial Compl. ¶¶ 16-17; Consumer Compl. ¶¶ 14-16), that provision is unavailing where plaintiffs have not established that the action is brought in the district where a defendant resides, is found, or transacts business.  *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 424, 427 (2d Cir. 2005) (holding that "the extraterritorial service provision of Clayton Act Section 12 may be invoked to establish personal jurisdiction" "only when the action is brought in the district where the defendant resides, is found, or transacts business").

It is plain that Holdings does not reside and is not found in the Southern District of New York, *see* Castro Decl. ¶ 4, and plaintiffs allege nothing to the contrary.  For an entity to "transact business" in a forum, the Second Circuit requires evidence of a "practical everyday business or commercial concept of doing business or carrying on business of any substantial character."  *See Daniel*, 428 F.3d at 430 (rejecting mere solicitation of business from a forum or

intermittent contacts as sufficient) (citation omitted).  Plaintiffs have not (and cannot) assert that Holdings engages in this type of practical, everyday business in the Southern District of New York (or in any other district in the United States).  *See* Castro Decl. ¶¶ 6-23.  Thus, plaintiffs cannot rely upon Section 12 of the Clayton Act to establish personal jurisdiction.

**B.      Holdings Is Not Subject To General Or Specific Jurisdiction In The United States**

Because Holdings is not subject to jurisdiction in any state's courts of general jurisdiction and plaintiffs' claims arise under federal antitrust law, under Federal Rule of Procedure 4(k)(2) a federal district court may exercise personal jurisdiction over Holdings only if exercising jurisdiction is "consistent with the United States Constitution and laws."  *See Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008) (quoting Fed. R. Civ. P. 4(k)(2)(B)).  Thus, "Rule 4(k)(2) confers personal jurisdiction over a defendant so long as the exercise of jurisdiction comports with the Due Process Clause of the Fifth Amendment." *Dardana Ltd. v. Yugraneftegaz*, 317 F.3d 202, 207 (2d Cir. 2003); *see also Porina*, 521 F.3d at 127.

The requisite due process inquiry involves two steps.  First, the Court considers "whether the defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction."  *Porina*, 521 F.3d at 127.  A plaintiff satisfies this "minimum contacts" standard by establishing either (1) "general jurisdiction" based on the defendant's "continuous and systematic general business contacts with the United States," or (2) "specific jurisdiction" "arising out of or related to the defendant's contacts with the forum."  *Id.* at 128.  To perform this analysis pursuant to Rule 4(k)(2), the Court considers aggregate contacts with the United States and does not confine its analysis to contacts with a given forum state.  *See id.* at 127.  Second, if the plaintiff shows that the defendant has minimum contacts, the court considers whether

exercising personal jurisdiction "is reasonable under the circumstances of the particular case." *Id.*

Here, plaintiffs cannot demonstrate sufficient contacts with the United States to establish either general or specific jurisdiction. Thus, the Court cannot exercise personal jurisdiction over Holdings pursuant to the federal long-arm provision found in Rule 4(k)(2). As a result, plaintiffs also necessarily cannot demonstrate sufficient contacts with New York under the more restrictive Rule 4(k)(1) in order to invoke New York's long-arm jurisdiction.[3]

### 1.    *The Court Lacks General Jurisdiction Over Holdings*

General jurisdiction is typically based on the defendant's "continuous and systematic general business contacts" with the United States, rather than contacts related to the specific cause of action. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). The "paradigm forum for the exercise of general jurisdiction" over a corporation is its "place of incorporation" and "principal place of business." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011); *see also In re Roman Catholic Diocese*, --- F.3d ----, No. 13-4736-cv, 2014 U.S. App. LEXIS 2403, at *17 (2d Cir. Feb. 7, 2014) (noting only a limited set of circumstances warranting general jurisdiction). Alternatively, a defendant may be subject to general jurisdiction in the "exceptional" case where its activities "[are] so substantial and of such a nature as to render the corporation at home" in the United States. *See In re Roman Catholic Diocese*, 2014 U.S. App. LEXIS 2403, at *18-19 (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 n.19 (2014)) (quotation marks omitted). This is a high burden under which a

---

[3] Because the exercise of personal jurisdiction over Holdings *in the United States* would not satisfy due process, it follows that Plaintiffs cannot establish personal jurisdiction over Holdings *in New York* based on Rule 4(k)(1) and New York's long-arm statute, which is narrower than the constitutional limits of the Due Process Clause. *See Licci*, 673 F.3d at 60-61 ("The New York long-arm statute does not extend in all respects to the constitutional limits established by [*International Shoe*] and its progeny.").

plaintiff must show "that [the defendant's] contacts approximate physical presence in the United States." *See In re Foodservice Inc. Pricing Litig.*, No. 3:07 MD 1894, 2009 U.S. Dist. LEXIS 117403, at *42 (D. Conn. Dec. 15, 2009) (citing *In re Ski Train Fire in Kaprun, Austria*, 257 F. Supp. 2d 717, 730 (S.D.N.Y. 2003)).

None of these avenues for general jurisdiction apply to Holdings.  Holdings is not incorporated or headquartered in the United States.  *See* Castro Decl. ¶ 4.  Nor does Holdings engage in activities that would equate to its physical presence in the United States or remotely warrant general jurisdiction in the United States.  Indeed, Holdings has no presence in the United States whatsoever.  It owns no real property in the United States, much less the warehouses relevant here.  *See* Castro Decl. ¶ 13.  It has no offices, employees, telephone listing, or mailing address in the United States, *see id.* ¶¶ 12, 14, 16, and is not even licensed to do business here, *see id.* ¶ 10.  Further, Holdings owns no U.S. subsidiaries, *id.* ¶ 11, has no U.S. bank accounts, *id*. ¶ 18, and derives no income in the United States, *id.* ¶ 19.  The Castro Declaration establishes Holdings's ***absence*** from the United States, rather than any presence here.

Even in the face of far greater contacts than those here, courts consistently find an absence of general jurisdiction.  *See, e.g.*, *Goodyear*, 131 S. Ct. at 2856-57 (foreign subsidiary of U.S. corporation lacked contacts with North Carolina to justify general jurisdiction there because it was not registered to do business there and had no employees, offices, or bank accounts there, even though it sold a small percentage of products in North Carolina); *In re Roman Catholic Diocese*, 2014 U.S. App. LEXIS 2403, at *17-18, 21-22 (general jurisdiction lacking where diocese "operates no office or facility" in forum, even though it had employees there); *Saudi v. Marine Atl., Ltd.*, 306 F. App'x 653, 655 (2d Cir. 2009) (general jurisdiction lacking where defendant "has no office in New York, no bank account or property in New York, and no

employees permanently stationed in New York"); *Bodum U.S.A., Inc. v. Hantover, Inc.*, No. 11 Civ. 8702, 2012 WL 1309176, at *4 (S.D.N.Y. Apr. 16, 2012) (general jurisdiction lacking where defendant "owns no property in New York and has no offices, employees, bank accounts, post office boxes, telephone lines, or mailing addresses within the state"); *Sikhs for Justice v. Nath*, 850 F. Supp. 2d 435, 444 (S.D.N.Y. 2012) (contacts "insufficiently permanent or continuous to establish general jurisdiction" where defendant "has no office in New York, no bank accounts or other property in New York, and no employees or agents in New York").

Plaintiffs also cannot premise general jurisdiction on "corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." *NovelAire Techs., L.L.C. v. Munters AB*, No. 13 Civ. 472, 2013 WL 6182938, at *12 (S.D.N.Y. Nov. 21, 2013). Here, because Holdings, the LME, and HKEx are separate corporate entities, and plaintiffs have not and cannot allege facts suggesting that their corporate formalities and separate identities have been disregarded, personal jurisdiction cannot be premised on their corporate relationship. *See* Castro Decl. ¶¶ 24-27; *see also Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.*, -- - F. App'x ----, 2014 WL 1099222, at *2 n.1 (2d Cir. Mar. 21, 2014) ("[A] parent company's control over a subsidiary is generally not enough to subject the subsidiary to suit in New York courts, and jurisdiction is only proper when the activities of the parent show a disregard for the separate corporate existence of the subsidiary." (quotation marks omitted)).

Thus, plaintiffs cannot rely on Holdings's parent-subsidiary relationship with the LME or the composition of its stockholders or board to assert general jurisdiction over Holdings in the United States. *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984) ("The officers of any corporation that owns the stock of another necessarily

exercise a considerable degree of control over the subsidiary corporation and the discharge of that supervision alone is not enough to subject the parent to New York jurisdiction."). Mere jurisdiction in the forum with respect to one entity does not warrant jurisdiction over its affiliates. *See, e.g.*, *Goodyear*, 131 S. Ct. at 2852 (court lacked general jurisdiction over foreign subsidiaries of U.S. parent corporation); *In re Foodservice Inc. Pricing Litig.*, 2009 U.S. Dist. LEXIS 117403, at *43 (rejecting general jurisdiction under Rule 4(k)(2) because "ownership of United States subsidiaries does not establish jurisdiction over the foreign, parent company" and collecting cases); *see also Beach v. Citigroup Alternative Invs.*, No. 12 Civ. 7717 (PKC), 2014 WL 904650, at * 6-7 (S.D.N.Y. Mar. 7, 2014) (rejecting attempt to base general jurisdiction of subsidiary on jurisdiction over parent where the "facts alleged [we]re consistent with a traditional relationship between a parent company and a subsidiary" and did not give rise to inference that parties abused the corporate form); *Bristol-Myers Squibb Co. v. Matrix Labs. Ltd.*, 964 F. Supp. 2d 287, 293 n.2 (S.D.N.Y. 2013) (rejecting argument that jurisdiction could be exercised over foreign corporation based on contacts of affiliates and collecting cases). Plaintiffs' conclusory jurisdictional allegations regarding the contacts of subsidiaries with the forum, *see, e.g.*, Consumer Compl. ¶ 14, cannot justify general jurisdiction over Holdings here.

## 2.    *The Court Lacks Specific Jurisdiction Over Holdings*

Plaintiffs also have not alleged jurisdictional facts to support the exercise of specific jurisdiction over Holdings. A court may exercise specific jurisdiction where "a suit aris[es] out of or related to the defendant's contacts with the forum." *Porina*, 521 F.3d at 128 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. at 414 n.8). This analysis "looks to the defendant's contacts with the forum," and jurisdiction "must arise out of contacts that the 'defendant *himself*' creates." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in both). As noted above, plaintiffs

make a handful of conclusory assertions of personal jurisdiction based on conspiratorial behavior allegedly aimed at the United States and/or this forum or certain states, but make no allegations regarding the actual conduct of Holdings or its connection to the challenged conduct.  *See, e.g.*, FLP Compl. ¶ 104; Consumer Compl. ¶ 14.

The Complaints do not allege (and cannot allege) that the claims arise out of any contacts Holdings had with the United States, or that Holdings ever "purposefully availed itself of the privilege of doing business" in the United States.  *Licci*, 732 F.3d at 170.  Holdings does not conduct, and has never conducted, business in the United States.  *See* Castro Decl. ¶¶ 6-7.  It does not supply goods or services to the United States, *id.* ¶¶ 3, 7, nor does it advertise or solicit investments in the United States, *id.* ¶ 22.  Instead, Holdings is a holding company that exists and acts entirely within the United Kingdom.  *See id.* ¶¶ 3, 7, 23.  Plaintiffs provide no evidentiary facts to suggest how the allegations of this case arise from any contact between Holdings and the United States; nor could they.

Plaintiffs' conclusory allegations that Defendants could anticipate causing damage in the United States also do not confer specific jurisdiction over Holdings.  Plaintiffs have utterly failed to show that Holdings "expressly aimed" any conduct at the United States.  *See Calder v. Jones*, 465 U.S. 783, 789 (1984).  "'[F]oreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980).  Instead, plaintiffs must allege that a defendant's "intentional, and allegedly tortious, actions" were "expressly aimed" at the United States. *Calder*, 465 U.S. at 789.

The Complaints here contain virtually no allegations concerning Holdings's conduct at all.  The only non-conclusory allegations in the Complaints concerning Holdings involve its

status as a parent to the LME and the existence of certain defendant banks as Holdings's shareholders. *See, e.g.*, FLP Compl. ¶¶ 68, 70, 127-128; Commercial Compl. ¶¶ 28, 79; Consumer Compl. ¶¶ 5, 20, 34. First, Holdings has no subsidiaries that are U.S. companies. *See* Castro Decl. ¶ 11. Second, as with general jurisdiction, plaintiffs try to rely upon the contacts of the LME with the United States as the basis for specific jurisdiction over Holdings. They may not do so. *See, e.g., In re Foodservice Pricing Litig.*, 2009 U.S. Dist. LEXIS 117403, at *46-47 (rejecting specific personal jurisdiction over parent because allegations that parents had "knowledge of its subsidiary's business practices are not allegations of purposeful availment sufficient to invoke the benefits and protections of the United States"); *NovelAire*, 2013 WL 6182938, at *10 ("As with general jurisdiction, the mere presence of a subsidiary in New York does not elevate the parent corporation's contacts with the state to the requisite level for specific jurisdiction." (quotation marks omitted)). Thus, even allegations regarding Holdings's ownership over the LME coupled with allegations of the LME's conduct, taken as true, fail to provide a basis for the Court to exercise specific jurisdiction over Holdings. The handful of empty allegations regarding the ownership levels of certain Holdings shareholders do not attribute conduct to Holdings at all, much less conduct purposefully aimed at the United States.

Plaintiffs also cannot rely on their general allegations of Defendants' supposedly conspiratorial conduct as a basis for specific jurisdiction over Holdings under a co-conspirator theory. As a threshold matter, courts have rejected a conspiracy theory of personal jurisdiction under Rule 4(k)(2). *See, e.g., Tymoshenko v. Firtash*, No. 11-cv-2794, 2013 U.S. Dist. LEXIS 43543, at *13-15 (S.D.N.Y. Mar. 27, 2013) (noting general criticism of the conspiracy theory of jurisdiction and declining to consider contacts of defendant's alleged co-conspirators under Rule 4(k)(2)); *see also In re New Motor Vehicles Canadian Export*, 307 F. Supp. 2d 145, 157-58 (D.

Me. 2004) (rejecting "conspiracy theory of jurisdiction" and collecting cases to that effect). Plaintiffs likewise cannot expand the scope of Rule 4(k)(2) to support personal jurisdiction over Holdings via a conspiracy theory of jurisdiction here.

Even if the Court applies the conspiracy theory that New York courts have applied under Rule 4(k)(1), plaintiffs have failed to allege a basis for personal jurisdiction over Holdings. To base specific jurisdiction on the acts of an alleged co-conspirator, the Second Circuit requires a plaintiff to (1) make a prima facie showing of a conspiracy, (2) allege specific facts that warrant an inference that the defendant was a member of the conspiracy; and (2) set forth evidentiary facts that connect the defendant to transactions that occurred in the United States. *Satyam Computer Servs Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 484 (S.D.N.Y. 2013) (citing *Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 782 F. Supp. 215, 221 (S.D.N.Y. 1992)). "Bland and conclusory assertions of conspiracy are insufficient." *Id.* (citing *Linter*, 782 F. Supp. at 221).

Plaintiffs fail each of these prongs. First, plaintiffs fail to make a prima facie showing of a conspiracy. *See generally* The London Metal Exchange's Memorandum In Support Of Its Motion To Dismiss All Complaints On The Merits. Second, plaintiffs do not allege *any* specific action by Holdings that ties it to the alleged conspiracy. *See, e.g.*, *Hinds Cnty. v. Wachovia Bank, N.A.*, 708 F. Supp. 2d 348, 362 (S.D.N.Y. 2010) ("Plaintiffs must allege a factual connection between each Defendant and the alleged conspiracy, and may not rely solely on government investigations and conclusory allegations based on mere participation in the … market."). Third, plaintiffs also fail to allege *any* evidentiary facts to connect Holdings to transactions or conduct that occurred in the United States. *See, e.g.*, *Satyam Computer Servs.*, 915 F. Supp. 2d at 485 (dismissing defendant for lack of personal jurisdiction where factual allegations "do not demonstrate any link" between the relevant defendant and the transactions at

issue).  With only conclusory allegations, and absent the requisite specific evidentiary facts, there is no basis for the court to conclude that Holdings purposefully directed its activities at the United States, either through its alleged co-conspirators or through its subsidiary.  *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 676 (2d Cir. 2013) ("conclusory" allegations are "insufficient for specific personal jurisdiction purposes"); *Tarsavage v. Citic Trust Co., Ltd.*, --- F. Supp. 2d ----, No. 13 Civ 2312 (KBF), 2014 WL 956408, at *3 (S.D.N.Y. Mar. 11, 2014) (Forrest, J.) (Plaintiffs "may not rely on conclusory statements … without any supporting facts," and the Court "will not draw argumentative inferences in the plaintiff's favor" (citation omitted)); *Satyam Computer Servs.*, 915 F. Supp. 2d at 485 (rejecting "such bare assertions" as basis for personal jurisdiction).

### C.    The Exercise Of Personal Jurisdiction Over Holdings Would Be Unreasonable

Finally, even if plaintiffs could establish that Holdings has relevant contacts with the United States, exercising personal jurisdiction over Holdings still would be unreasonable.  In assessing reasonableness, courts consider [1] the burden on the defendant; [2] the interests of the forum State; [3] the plaintiff's interest in obtaining relief; [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and [5] the shared interest of the several States in furthering fundamental substantive social policies.  *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 172-73 (2d Cir. 2010); *see also Asahi Metal Indus. Co., Ltd. v. Super Ct. of Cal.*, 480 U.S. 102, 113 (1987).  The Supreme Court has cautioned courts that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field."  *Asahi*, 480 U.S. at 115 (citation omitted).  The above factors collectively weigh against jurisdiction here.  Holdings is domiciled in the United Kingdom, and there is an obvious burden to Holdings of having to defend itself against litigation in New York,

where it has no offices or employees -- especially where, as here, it took no actions in the United States.  Moreover, New York and the United States have little interest in including Holdings in this proceeding because plaintiffs can seek to obtain relief from the numerous Defendants that have not challenged personal jurisdiction, including the LME.  In sum, plaintiffs simply have not shown a sufficient connection between Holdings and the United States to make personal jurisdiction reasonable.

## II.      THE COMPLAINTS FAIL TO STATE A CLAIM AGAINST HOLDINGS

The Court should also dismiss the Complaints with respect to Holdings for the separate reason that plaintiffs fail to state a claim and fail to sufficiently provide Holdings notice of the claims against which it must defend itself.

### A.      Plaintiffs Do Not Include Any Factual Allegations Of Wrongdoing By Holdings

The Complaints lack even a single factual allegation of improper conduct by Holdings. Though the Complaints contain more than 1,066 paragraphs and 285 pages, they do not once allege that Holdings *did* anything.  Instead, most of Holdings-specific paragraphs refer to the makeup of Holdings's shareholders.  *See, e.g.*, Consumer Compl. ¶¶ 5, 20, 34; Commercial Compl. ¶¶ 28-29, 32, 35, 79, 87; FLP Compl. ¶¶ 68, 70, 127.   A handful of other paragraphs reference the HKEx's acquisition of Holdings and the LME.  *See, e.g.*, Commercial Compl. ¶¶ 28, 87; FLP Compl. ¶¶ 127-28; Consumer Compl. ¶ 34.  None of these paragraphs address any actual conduct of Holdings, much less tie Holdings actions to the alleged warehousing of aluminum inventories.  In short, plaintiffs do not allege with factual specificity any misconduct by Holdings and their claims cannot survive a motion to dismiss.  *Bell Atl. v. Twombly*, 550 U.S. 544, 557 (2007); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 417-19 (S.D.N.Y.

2011) (dismissing parent companies because "there are no allegations about any involvement of the Parent Companies" in the alleged misconduct).

**B.      Holdings Is Not Liable For Any Alleged Acts Of The LME**

"[I]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation omitted).  To survive a motion to dismiss, a plaintiff must do more than allege conduct by a subsidiary and attribute that conduct to the parent corporation because of its ownership of the subsidiary.  *See, e.g.*, *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d at 417-19 (dismissing parent companies for failure to plead their participation in the alleged misconduct); *Conomos v. Chase Manhattan Corp.*, No. 97 CIV 0909 (PKL), 1998 WL 118154, at *2-3 (S.D.N.Y. Mar. 17, 1998) (dismissing defendant parent company where the only allegations related to conduct of the subsidiary and the complaint simply refers to the parents and subsidiary together).  To maintain an action against a parent for the actions of a company whose stock it owns, a plaintiff must therefore allege specific facts that establish "actual domination" over the subsidiary's conduct.  *Dejesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996).   Mere ownership of an entity, even when coupled with overlapping board membership, does not permit a plaintiff to base claims against the parent on conduct alleged with respect to the subsidiary.  *See Kingston Dry Dock Co. v. Lake Champlain Transp. Co.*, 31 F.2d 265, 267 (2d Cir. 1929) ("Control through the ownership of shares does not fuse the corporations, even when the directors are common to each."); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d at 417-19 (dismissing parent companies because plaintiffs' antitrust claims failed to assert a basis to pierce corporate veil and "there are no allegations about any involvement of the Parent Companies" in the alleged misconduct); *Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-00042, 2012 U.S. Dist. LEXIS 113829, at

*12 (E.D.N.Y. Aug. 13, 2012) ("The plaintiffs must allege facts — not legal conclusions couched as factual allegations — that nudge their claims *against each defendant* across the line from conceivable to plausible, and the bare allegation that one defendant is the subsidiary of another fails to satisfy that requirement." (emphasis added)); *Desyatnikov v. Credit Suisse Grp., Inc.*, No. 10-CV-1870, 2012 U.S. Dist. LEXIS 41180, at *5 (E.D.N.Y. Mar. 26, 2012) (dismissing claims against parent Credit Suisse where "the only link that the complaint asserts is that Credit Suisse is the parent company to Clariden Leu, which is insufficient to hold Credit Suisse  liable" and concluding that "it is not premature to dismiss Credit Suisse at this stage of the litigation" because "[p]ermitting plaintiff discovery on the relationship between Credit Suisse and Clariden Leu would be permitting a 'fishing expedition'").

Where, as here, plaintiffs simply attempt to assert claims against a parent (Holdings) based on conduct that, at most, involves a subsidiary (the LME), and in the absence of allegations that would support piercing the corporate veil, courts routinely dismiss claims against the parent company.  In *In re Digital Music Antitrust Litig*., the court dismissed all of the claims against the parent company defendants because of the absence of relevant allegations about the parent companies.  812 F. Supp. 2d at 419 ("There are no allegations that any Parent Company did anything actionable in the alleged antitrust conspiracy.").  In the absence of such allegations, "[w]hether the . . . subsidiaries did anything actionable is not relevant with respect to the liability of the Parent Companies absent a basis to pierce the corporate veil."  *Id.*  And because the plaintiffs failed to allege a basis to pierce the corporate veil and made "no allegation that the Parent Companies directed the subsidiaries to engage in an antitrust conspiracy," the court dismissed the antitrust conspiracy claims against the parent companies.  *See id.*

So too here.  Plaintiffs do not describe any alleged misconduct (or any conduct at all) on the part of Holdings.  Instead, plaintiffs premise the entire basis of Holdings's inclusion here on the fact that it is the parent corporation to the LME.  But plaintiffs likewise offer no facts to suggest that the Court may disregard the separate corporate forms of the LME and Holdings.  Plaintiffs do not (and cannot) allege that Holdings exercised domination over the acts of the LME, or acted through it.  Instead, plaintiffs seek to plead an antitrust conspiracy involving Holdings without alleging conduct by Holdings.  The law does not allow that.  *See Dejesus*, 87 F.3d at 69.  Accordingly, plaintiffs fail to state a claim against Holdings.

### C.    The Complaints Fail To Give Holdings Adequate Notice Of Plaintiffs' Claims

Federal Rule of Civil Procedure 8 "requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001).  A complaint that names multiple defendants "must provide a plausible factual basis to distinguish the conduct of *each* of the defendants."  *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12 Civ. 2837, 2012 U.S. Dist. LEXIS 172208, at *16 (S.D.N.Y. Nov. 28, 2012) (emphasis added).  By "lumping all the defendants together" and by failing to provide a "factual basis to distinguish their conduct," plaintiffs' Complaints here "fail[] to satisfy this minimum standard" and should therefore be dismissed.  *Atuahene*, 10 F. App'x at 34.

Here, each set of plaintiffs attempts to "lump together" the LME and Holdings (and, at times, HKEx).  *See* FLP Compl. ¶ 130; Commercial Compl. Preamble at 1; Consumer Compl. ¶ 35.  But such unspecified pleading does not give sufficient notice to Holdings (or to the LME or HKEx for that matter) as to the factual predicates for any specific conduct by Holdings that plaintiffs challenge.  *Atuahene*, 10 F. App'x at 34.  The Complaints collectively refer to Holdings specifically in only 16 paragraphs of the more than 1,066 paragraphs contained in those

Complaints.  None of those paragraphs actually addresses any alleged conduct by Holdings or attempts to tie Holdings to the challenged conduct here.  Thus, Holdings lacks sufficient notice of its alleged misconduct, as necessitated by Rule 8.  *See, e.g.*, *Ochre*, 2012 WL 172208, at *16-18 (dismissing complaint where facts were "'lumped' together and thus d[id] not afford each defendant adequate notice of the factual allegations it faces," and noting that "[s]uch 'lumping' of allegations is exactly what the Second Circuit warned against …; plaintiff cannot force the various defendants to guess at the nature of its claims").[4]  The Complaints should therefore be dismissed against Holdings for failure to state a claim on this separate ground as well.

## CONCLUSION

For the foregoing reasons, Holdings respectfully requests the Court dismiss the Complaints against it in their entirety with prejudice.

Dated:  New York, New York
            April 23, 2014

Respectfully submitted,

/s/ Margaret M. Zwisler
Margaret M. Zwisler (admitted *pro hac vice*)
(*margaret.zwisler@lw.com*)
William R. Sherman
(*william.sherman@lw.com*)
Jennifer L. Giordano
(*jennifer.giordano@lw.com*)

---

[4] *See also Gurfein v. Ameritrade, Inc.*, 411 F. Supp. 2d 416, 427 (S.D.N.Y. 2006) (dismissing complaint that "fails to make any distinction between Knight Execution and Knight Financial, referring to them collectively throughout the amended complaint as 'Knight,' and making all allegations generally against 'defendant Knight' or 'Knight'" on the ground that "[t]hose are two separate entities, … and the allegations against them must also be separate and specific"); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 Civ. 2923, 1994 WL 88129, at *20 (S.D.N.Y. Mar. 15, 1994) ("[A]t a minimum, the Complaint must specify which defendant is alleged to have committed a particular predicate act."); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1201 (C.D. Cal. 2011) (dismissing complaint based on "failure to ascribe any predicate act to a particular Defendant rather than impermissibly ascribing conduct to 'Toyota' or 'Defendants' generally").

20

Jeffrey H. Newhouse
(*jeffrey.newhouse@lw.com*)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201

*Attorneys for Defendant LME Holdings
Limited*