**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                  :
                                                                  :
IN RE ALUMINUM WAREHOUSING            :          MDL No. 2481
ANTITRUST LITIGATION                  :        Master Docket No.
                                      :        13-md-2481-KBF-RLE
This Document Relates To:             :
                                      :
ALL ACTIONS                           :
                                      :
                                      :
                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## JOINT MOTION TO DISMISS STATE LAW CLAIMS

## Table of Contents

INTRODUCTION .................................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

I.  Plaintiffs' Consumer Protection Claims Should Be Dismissed ......................................... 1

     A.  Plaintiffs' Lists Of Consumer Protection Statutes Fail To State A Claim ............... 2

     B.  Plaintiffs' Consumer Protection Claims Fail Because They Do Not
         Adequately Allege Proximate Cause. ..................................................................... 3

     C.  Plaintiffs' Consumer Protection Claims Under The Laws Of Twenty-Six
         Jurisdictions Fail For Additional Reasons ............................................................. 4

II.  The Michigan And New York Antitrust Claims Should Be Dismissed As To Out-
     of-State Purchasers ......................................................................................................... 10

III.  The Unjust Enrichment Claim Should Be Dismissed ....................................................... 13

     A.  Plaintiffs Do Not Identify The State Law Basis For Their Unjust
         Enrichment Claim ............................................................................................... 13

     B.  Plaintiffs' Unjust Enrichment Claim Falls With Their Underlying Antitrust
         And Consumer Protection Claims ........................................................................ 14

IV.  Mag's "Interference" Claims Should Be Dismissed ......................................................... 16

     A.  Mag Has Not Pled A Claim For Intentional Interference With Contract ............. 16

     B.  Mag Has Not Pled A Claim For Intentional Interference With Economic
         Relationship ........................................................................................................ 18

     C.  Mag Has Not Pled A Claim For Negligent Interference With Economic
         Relationship ........................................................................................................ 20

CONCLUSION ................................................................................................................. 22

# TABLE OF AUTHORITIES

CASES

*2156 Stratford Circle v. AIG, Inc.*,
   2012 WL 29411 (Cal. Ct. App. Jan. 6, 2012) .......................................................................21

*In re Abbott Labs. Norvir Anti-Trust Litigation*,
   562 F. Supp. 2d 1080 (N.D. Cal. 2008) ..............................................................................15

*Anderson v. Hannaford Brothers Co.*,
   659 F.3d 151 (1st Cir. 2011) .................................................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................................3

*Barnes v. Federal Home Loan Mortgage Corp.*,
   2013 WL 1314200 (W.D. Mo. Mar. 28, 2013)....................................................................7

*In re Bayer Corp. Combination Aspirin Products Marketing & Sales Practices Litigation*,
   701 F. Supp. 2d 356 (E.D.N.Y. 2010) .................................................................................3

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................................3

*Bose v. Interclick, Inc.*,
   2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) ...................................................................17

*In re Brand Name Prescription Drugs Antitrust Litigation*,
   123 F.3d 599 (7th Cir. 1997) .........................................................................................12, 13

*Burnett v. Mortgage Electric Registration Systems, Inc.*,
   706 F.3d 1231 (10th Cir. 2013) ...........................................................................................5

*Burton v. R.J. Reynolds Tobacco Co.*,
   884 F. Supp. 1515 (D. Kan. 1995)......................................................................................6

*Cargill, Inc. v. Degesch America, Inc.*,
   875 F. Supp. 2d 667 (E.D. La. 2012)...............................................................................6, 9

*In re Chocolate Confectionary Antitrust Litigation*,
   602 F. Supp. 2d 538 (M.D. Pa. 2009) ...........................................................................13,14

*Churchill Village, L.L.C. v. GE*,
   169 F. Supp. 2d 1119 (N.D. Cal. 2000) ..........................................................................8, 24

*Connolly v. Wood-Smith*,
   2012 WL 7809099 (S.D.N.Y. May 14, 2012) ...................................................................19

*Crown Imports, LLC v. Superior Court*,
   223 Cal. App. 4th 1395 (Cal. Ct. App. 2014) .......................................................................20

*Dalton v. Camp*,
   548 S.E.2d 704 (N.C. 2001) .................................................................................................9

*Davis v. Nadrich*,
   174 Cal. App. 4th 1 (Cal. Ct. App. 2009) ...........................................................................16

*In re DDAVP Indirect Purchaser Antitrust Litigation*,
   903 F. Supp. 2d 198 (S.D.N.Y. 2012) .................................................................................15

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
   902 P.2d 740 (Cal. 1995) ....................................................................................................20

*In re Digital Music Antitrust Litigation*,
   812 F. Supp. 2d 390 (S.D.N.Y. 2011) ............................................................................6, 15

*DIRECTV, Inc. v. Keehn*,
   2003 WL 23200249 (W.D. Mich. Oct. 20, 2003) .................................................................7

*Dominion Exploration & Production, Inc. v. Waters*,
   972 So. 2d 350 (La. Ct. App. 2007) ......................................................................................7

*Doobenen v. Goyak*,
   2002 WL 31868088 (Cal. Ct. App. Dec. 24, 2002) ............................................................18

*In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*,
   516 F. Supp. 2d 1072 (N.D. Cal. 2007) ..........................................................................8, 10

*In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*,
   536 F. Supp. 2d 1129 (N.D. Cal. 2008) ..............................................................................14

*E-Shops Corp. v. U.S. Bank National Association*,
   795 F. Supp. 2d 874 (D. Minn. 2011) ...................................................................................6

*Eaves v. Designs for Finance, Inc.*,
   785 F. Supp. 2d 229 (S.D.N.Y. 2011) ...................................................................................5

*Edgar v. MITE Corp.*,
   457 U.S. 624 (1982) ............................................................................................................12

*F.M. Tarbell Co. v. A & L Partners, Inc.*,
   2011 WL 1153539 (C.D. Cal. Mar. 23, 2011) .....................................................................20

*Fifield Manor v. Finston*,
   54 Cal.2d 632 (Cal. 1960) ...................................................................................................21

*In re Flonase Antitrust Litigation*,
    692 F. Supp. 2d 524 (E.D. Pa. 2010) ..................................................................15

*In re Flonase Antitrust Litigation*,
    815 F. Supp. 2d 867 (E.D. Pa. 2011) ..................................................................11

*Ganim v. Smith and Wesson Corp.*,
    780 A.2d 98 (Conn. 2001) .................................................................................7

*Golden v. Anderson*,
    256 Cal. App. 2d 714 (Cal. Ct. App. 1967) ........................................................18

*Goshen v. Mutual Life Insurance Co. of New York*,
    98 N.Y.2d 314 (N.Y. 2002) ...........................................................................8, 12

*In re Grand Theft Auto Video Game Consumer Litigation*,
    251 F.R.D. 139 (S.D.N.Y. 2008) ......................................................................12

*In re Graphics Processing Units Antitrust Litigation*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ....................................................9, 10, 12

*Healy v. Beer Inst., Inc.*,
    491 U.S. 324 (1989) .........................................................................................12

*Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*,
    665 F. Supp. 2d 239 (S.D.N.Y. 2009) ...............................................................17

*Jackson County Hog Producers v. Consumers Power Co.*,
    234 Mich. App. 72 (Mich. Ct. App. 1999) ...........................................................4

*John Boyd Co. v. Boston Gas Co.*,
    775 F. Supp. 435 (D. Mass. 1991) ......................................................................7

*Kerrigan v. Coldwell Banker Residential Real Estate Co.*,
    2011 WL 6739631 (Cal. Ct. App. Dec. 21, 2011) ...............................................19

*Kervin v. GC Servs., Ltd. Partnership*,
    2014 WL 584966 (D. Nev. Feb. 12, 2014) ..........................................................6

*Kramer v. Pollock-Krasner Foundation*,
    890 F. Supp. 250 (S.D.N.Y. 1995) ...............................................................15, 18

*Lexmark International, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014) ...................................................................................3, 4

*MacDonald v. Thomas M. Cooley Law School*,
    880 F. Supp. 2d 785 (W.D. Mich. 2012) ..............................................................4

*Marvin Lumber & Cedar Co. v. PPG Industries, Inc.*,
   223 F.3d 873 (8th Cir. 2000) ...................................................................4

*McGarvey v. Penske Automotive Group*,
   639 F. Supp. 2d 450 (D.N.J. 2009) .........................................................2

*Meridian Project Systems Inc. v. Hardin Construction Co.*,
   404 F. Supp. 2d 1214 (E.D. Cal. 2005)...................................................8

*In re Microsoft Corp. Antitrust Litigation*,
   241 F. Supp. 2d 563 (D. Md. 2003) .......................................................15

*In re Microsoft Corp. Antitrust Litigation*,
   401 F. Supp. 2d 461 (D. Md. 2005) .......................................................15

*Monsanto Co. v. Campuzano*,
   206 F. Supp. 2d 1252 (S.D. Fla. 2002) ...................................................5

*Mueller Co. v. U.S. Pipe & Foundry Co.*,
   2003 WL 22272135 (D.N.H. Oct. 2, 2003) .............................................8

*National Gypsum Co. v. Ace Wholesale, Inc.*,
   738 So. 2d 128 (La. Ct. App. 1999)........................................................7

*Pacamor Bearings, Inc. v. Minebea Co., Ltd.*,
   918 F. Supp. 491 (D.N.H. 1996)..............................................................8

*In re Packaged Ice Antitrust Litigation*,
   779 F. Supp. 2d 642 (E.D. Mich. 2011)................................................14

*Perez v. Volkswagen Group of America, Inc.*,
   2013 WL 1661434 (W.D. Ark. Apr. 17, 2013).........................................6

*In re Pharm. Industry Average Wholesale Price Litigation*,
   230 F.R.D. 61 (D. Mass. 2005)..............................................................12

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985).................................................................................13

*Plasticware v. Flint Hills Resources*,
   852 F. Supp. 2d 398 (S.D.N.Y. 2012).....................................................16

*Polish & Slavic Federal Credit Union v. Saar*,
   39 Misc. 3d 850, 963 N.Y.S.2d 556 (Sup. Ct. 2013)...............................4

*In re Potash Antitrust Litigation*,
   667 F. Supp. 2d 907 (N.D. Ill. 2009) ....................................................14

*Randall v. Campbell,*
      2005 WL 44920 (Cal. Ct. App. Jan. 11, 2005) ....................................................................18

*Reeves v. American Broadcasting Cos.,*
      719 F.2d 602 (2d Cir. 1983) ...........................................................................................11

*In re Relafen Antitrust Litigation,*
      221 F.R.D. 260 (D. Mass. 2004) .............................................................................11, 12, 13

*Riggs National Bank v. District of Columbia,*
      581 A.2d 1229 (D.C. 1990) ...............................................................................................9

*Ripa v. Federal National Mortgage Association,*
      2013 WL 5705426 (D. Ariz. Oct. 21, 2013) .......................................................................6

*Robinson v. Deutsche Bank National Trust Co.,*
      932 F. Supp. 2d 95 (D.D.C. 2013) ....................................................................................7

*Russomanno v. Russo,*
      2005 WL 469151 (Cal. Ct. App. Mar. 1, 2005) ................................................................17

*Sheet Metal Workers Loc. 441 Health & Welfare Plan v. GlaxoSmithKline, PLC,*
      737 F. Supp. 2d 380 (E.D. Pa. 2010) ...............................................................................15

*Shoemaker v. Myers,*
      52 Cal.3d 1 (Cal. 1990) ....................................................................................................19

*In re Skelaxin (Metaxalone) Antitrust Litigation,*
      --- F.R.D. ----, 2014 WL 340903 (E.D. Tenn. Jan. 30, 2014) ....................................11, 13

*Slobin v. Henry Ford Health Care,*
      666 N.W.2d 632 (Mich. 2003) ............................................................................................4

*In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litigation,*
      758 F. Supp. 2d 1077 (S.D. Cal. 2010) ...............................................................................2

*In re Static Random Access Memory (SRAM) Antitrust Litigation,*
      580 F. Supp. 2d 896 (N.D. Cal. 2008) .............................................................................14

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.,*
      171 F.3d 912 (3d Cir. 1999) .............................................................................................15

*Stolz v. Wong Commcations Ltd. Partnership,*
      25 Cal. App. 4th 1811 (Cal. Ct. App. 1994) .....................................................................22

*Sutter Home Winery, Inc. v. Vintage Selections, Ltd.,*
      971 F.2d 401 (9th Cir. 1992) ..............................................................................................6

*Taylor v. McNichols*,
243 P.3d 642 (Idaho 2010)...................................................................................7

*In re Terazosin Hydrochloride Antitrust Litigation*,
160 F. Supp. 2d 1365 (S.D. Fla. 2001) ................................................................15

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
586 F. Supp. 2d 1109 (N.D. Cal. 2008) ...............................................................14

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
599 F. Supp. 2d 1179 (N.D. Cal. 2009) ...............................................................15

*In re Trilegiant Corp.*,
2014 WL 1315244 (D. Conn. Mar. 28, 2014) ....................................................2, 3

*Tungate v. MacLean-Stevens Studios, Inc.*,
714 A.2d 792 (Me. 1998)....................................................................................10

*Universal Cooperatives, Inc. v. AAC Flying Service, Inc.*,
710 F.3d 790 (8th Cir. 2013) ...............................................................................9

*Wille v. Southwestern Bell Telephone Co.*,
549 P.2d 903 (Kan. 1976)....................................................................................9

*Winchester Mystery House, LLC v. Global Asylum, Inc.*,
210 Cal. App. 4th 579 (Cal. Ct. App. 2012) ...................................................18, 19

*Woroch v. Regents of the University of California*,
2005 WL 2699234 (Cal. Ct. App. Oct. 21, 2005)................................................21

*Yong Ki Hong v. KBS America, Inc.*,
951 F. Supp. 2d 402 (E.D.N.Y. 2013) ..................................................................15

*Young v. Wells Fargo & Co.*,
671 F. Supp. 2d 1006 (S.D. Iowa 2009) ................................................................3

**STATUTES**

Commodities Exchange Act, 7 U.S.C. § 1...............................................................22

Arizona Revised Statutes § 44-1522.........................................................................5

Arkansas Code Annotated § 4-88-108.......................................................................5

District of Columbia Code § 28-3901.......................................................................4

District of Columbia Code § 28-3904.......................................................................9

Hawaii Revised Statutes § 480-1..............................................................................4

Kansas Statutes Annotated § 50-623 ................................................................5

Kansas Statutes Annotated § 50-624 ................................................................5

Kansas Statutes Annotated § 50-627 ................................................................9

Kansas Statutes Annotated § 50-634 ................................................................5

Louisiana Revised Statutes Annotated § 51:1402 ..............................................4

5 Maine Revised Statutes § 213 ......................................................................4

Minnesota Statutes § 325F.69 ........................................................................5

Mississippi Code Annotated § 75-24-5 ............................................................6

Mississippi Code Annotated § 75-24-9 ............................................................6

Mississippi Code Annotated § 75-24-15 ........................................................4, 6

Missouri Revised Statutes § 407.025 ..............................................................4

Montana Code Annotated § 30-14-102 ............................................................4

New Hampshire Revised Statutes Annnnoted § 358-A:2 ....................................8

New York General Business Law § 349 ............................................................6

Nevada Revised Statutes § 598.0915 ..............................................................5

Nevada Revised Statutes § 598.0923 ..............................................................5

Rhode Island General Laws § 6-13.1-5.2 ..........................................................5

West Virginia Code § 46A-6-102 ....................................................................5

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 9 ..................................................................6

Restatement (Second) of the Conflicts of Laws (1971) § 158............................11

Restatement (Second) of Torts (1979) § 766 ..................................................17

Restatement (Third) of Restitution and Unjust Enrichment (2011) § 44..............14

## INTRODUCTION

Plaintiffs' complaints contain a litany of derivative and baseless state law claims, including claims asserted under the consumer protection laws of 30 jurisdictions, claims on behalf of out-of-state plaintiffs under two states' antitrust laws, an unjust enrichment claim, and claims for interference with contracts or economic relationships.[1]   These claims are pled as afterthoughts to Plaintiffs' core antitrust claims, in many cases as nothing more than a list of statutes that Defendants allegedly have violated.

These state law claims should be dismissed because Plaintiffs have not adequately pled that Defendants entered into a conspiracy or engaged in monopolization, as addressed in Defendants' separate briefs addressed to the plausibility of the alleged conspiracy.  This brief addresses additional grounds for dismissing Plaintiffs' state law claims—specifically, their failure to plead the required elements of the statutes they purport to invoke.

## ARGUMENT

## I.   PLAINTIFFS' CONSUMER PROTECTION CLAIMS SHOULD BE DISMISSED.

The First Level Purchaser, Commercial, Consumer, and Mag complaints allege that Defendants' alleged antitrust violations also constitute violations of the consumer protection laws of 29 states and the District of Columbia.  (FLP Compl. ¶¶ 429-31; Commercial Compl. ¶¶ 272-96; Consumer Compl. ¶¶ 238-43, 268-92; Mag Compl. ¶¶ 146-49).

---

[1] *See* First Level Purchasers' Second Corrected Consolidated Amended Class Action Complaint (ECF No. 271) ("FLP Compl.") ¶¶ 414-31; Commercial End Users' Corrected Consolidated Class Action Complaint (ECF No. 242) ("Commercial Compl.") ¶¶ 236-309; Consumer End-User Consolidated Amended Class Action Complaint (ECF No. 227) ("Consumer Compl.") ¶¶ 217-326; Mag Instrument, Inc.'s Amended Complaint (ECF No. 226) ("Mag Compl.") ¶¶ 120-149.  Annexed as Appendix A is a table that details the state statutes invoked in each of the complaints.  This brief does not address the amended complaint of Agfa Corporation and Agfa Graphics, N.V., which asserts only federal and state antitrust claims.

All these claims should be dismissed on grounds addressed below.

**A.      Plaintiffs' Lists Of Consumer Protection Statutes Fail To State A Claim.**

Plaintiffs have not even attempted to tie the facts they allege to the statutory elements of the consumer protection statutes they catalog in their Complaints.  Indeed, in many instances, Plaintiffs purport to state claims under multiple state laws simply by listing the statutory provisions they hope to invoke.  (*See* FLP Compl. ¶¶ 429-31; Commercial Compl. ¶¶ 272-96; Consumer Compl. ¶¶ 268-92.)  For example, the First Level Purchaser Complaint's Eighth Claim For Relief, in its entirety, asserts:

> Plaintiff repeats and reasserts each of the preceding allegations as if fully set forth herein.
>
> By reason of the foregoing, Defendants have violated, and Plaintiff and members of the class are entitled to relief under:
>
> > [List of 22 state statutes].
>
> As a direct and proximate result, Plaintiff and Class members have been injured in their property in that they had to pay artificially high prices for aluminum.  Unless injunctive relief, including structural injunctive relief, is granted, these violations may continue to reoccur.

(FLP Compl. ¶¶ 429-31.)

These allegations fail to state a claim because they merely "list[] several . . . states' consumer protection statutes without explaining how those statutes relate to the Defendants' alleged conduct in this case."  *See In re Trilegiant Corp.*, 2014 WL 1315244, at *35 (D. Conn. Mar. 28, 2014); *McGarvey v. Penske Auto. Group*, 639 F. Supp. 2d 450, 452 (D.N.J. 2009) (dismissing state consumer protection claims where "[p]laintiffs do not even set forth the elements of the fifteen causes of action they assert . . . or explain how the fifteen listed statutes apply to the facts of this case"), *modified on other grounds,* 2010 WL 1379967 (D.N.J. Mar. 29, 2010); *In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litig.*, 758 F.

Supp. 2d 1077, 1096-97 (S.D. Cal. 2010) (similar); *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d

1006, 1016 (S.D. Iowa 2009) (similar); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading

that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action

will not do.'" (quoting *Bell A. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))); *In re Bayer Corp.*

*Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 378-79

(E.D.N.Y. 2010) (applying pleading requirement and finding pleading sufficient where

"[p]laintiffs have drawn the connection between the statutes and defendant's offending

conduct").

The consumer protection claims also fail because Plaintiffs fail to explain on a defendant-

by-defendant basis what each defendant allegedly did to violate a consumer protection statute.

*See In re Trilegiant Corp.*, 2014 WL 1315244, at *35 (dismissing state consumer protection

claims where plaintiffs failed "to explain how the Defendants' conduct fits into each of the

undoubtedly varying elements of the statutory schemes").

### B.   Plaintiffs' Consumer Protection Claims Fail Because They Do Not Adequately Allege Proximate Cause.

Plaintiffs also have not alleged a sufficient nexus between the conduct they challenge and

the injuries they allege.  Every state's consumer protection statute—whether expressly or

implicitly—requires Plaintiffs to allege proximate cause to ensure that their purported injuries

are not too remote from the conduct that gives rise to their complaint.  As the Supreme Court

recently stated, courts should "generally presume that a statutory cause of action is limited to

plaintiffs whose injuries are proximately caused by violations of the statute."  *Lexmark Int'l, Inc.*

*v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390 (2014).  That is because "[f]or

centuries, it has been a well established principle of [the common] law, that in all cases of loss,

we are to attribute it to the proximate cause, and not to any remote cause." *Id.* (citations omitted).

Plaintiffs' consumer protection causes of action fail because their purported injuries are too remote from the alleged misconduct, as discussed in Defendants' separate joint motion to dismiss all of plaintiffs' antitrust claims for lack of standing.  *See* Defendants' Memorandum of Law in Support of Their Joint Motion to Dismiss All Federal and State Antitrust Claims for Lack of Antitrust Standing, Section II.A.

### C.    Plaintiffs' Consumer Protection Claims Under The Laws Of Twenty-Six Jurisdictions Fail For Additional Reasons.

For 26 of the 30 jurisdictions under whose laws Plaintiffs have pled consumer protection claims, some or all of their claims fail for additional reasons.  These additional grounds are addressed below and are summarized as applied to each state in Appendix B.

#### 1.    Fifteen Jurisdictions Do Not Permit Business Purchasers To Assert Consumer Protection Claims.

The consumer protection laws of 13 jurisdictions—the **District of Columbia**, **Hawaii**, **Louisiana**, **Maine**, **Michigan**, **Minnesota**, **Mississippi**, **Missouri**, **Montana**, **New York**, **Rhode Island**, **Utah**, and **West Virginia**—bar claims by those who purchased primarily for business or commercial purposes.  *See* D.C. Code § 28-3901(a)(2)(B); Haw. Rev. Stat. § 480-1; La. Rev. Stat. Ann. § 51:1402(3); 5 Me. Rev. Stat. § 213(1); *Jackson County Hog Producers v. Consumers Power Co.*, 234 Mich. App. 72, 84-86 (Mich. Ct. App. 1999); *Slobin v. Henry Ford Health Care*, 666 N.W.2d 632, 634-35 (Mich. 2003); *MacDonald v. Thomas M. Cooley Law Sch.*, 880 F. Supp. 2d 785, 791-92 (W.D. Mich. 2012), *aff'd*, 724 F.3d 654 (6th Cir. 2013); *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 887-88 (8th Cir. 2000) (Minnesota law); Miss. Code Ann. § 75-24-15(1); Mo. Rev. Stat. § 407.025(1); Mont. Code Ann. § 30-14-102(1); *Polish & Slavic Fed. Credit Union v. Saar*, 39 Misc. 3d 850, 855-56, 963

N.Y.S.2d 556 (Sup. Ct. 2013); *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 266 (S.D.N.Y. 2011); Rhode Island Gen. L. § 6-13.1-5.2(1); *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1241 (10th Cir. 2013) (Utah law); W. Va. Code § 46A-6-102(2). Because First Level Purchaser Plaintiffs, Commercial Plaintiffs, and so-called "consumer" plaintiff Brick Pizzeria LLC all purchased aluminum for business or commercial purposes, they cannot sue under these statutes and their claims should be dismissed.

Similarly, **Kansas** law permits only "consumers" to bring consumer protection claims and defines a "consumer" as an "individual, husband and wife, sole proprietor or family partnership." Kan. Stat. Ann. §§ 50-634(a)-(b), 50-624(b). Because First Level Purchaser Plaintiffs, Commercial Plaintiffs, and Brick Pizzeria LLC are all corporations or limited liability companies, none falls within this definition, and their claims under Kansas law should be dismissed.

Finally, commercial purchasers cannot sue under **Florida** law if they were engaged in the relevant business before the transaction in question. *See Monsanto Co. v. Campuzano*, 206 F. Supp. 2d 1252, 1268-69 (S.D. Fla. 2002), *modified*, 206 F. Supp. 2d 1270 (S.D. Fla. 2002). Because First Level Purchaser Plaintiffs, Commercial Plaintiffs, and Brick Pizzeria LLC do not allege that they were not engaged in the relevant business before the transactions in question, their Florida consumer protection claims should be dismissed.

## 2. Eight Jurisdictions Require Misrepresentation Or Fraudulent Conduct.

Only claims based upon misrepresentation or fraudulent conduct are actionable under the consumer protection laws of six jurisdictions—**Arizona**, **Arkansas**, **Kansas**, **Louisiana**, **Minnesota**, and **Nevada**. *See* Ariz. Rev. Stat. § 44-1522(A); Ark. Code Ann. § 4–88–108; Kan. Stat. Ann. § 50-623; Minn. Stat. § 325F.69(1); Nev. Rev. Stat. §§ 598.0915, 598.0923. As fraud-

based claims, such claims must be pled with particularity.  *See* Fed. R. Civ. P. 9(b).[2]  Because

Plaintiffs have not pled—much less, with particularity—that misrepresentation or fraudulent

conduct occurred, the consumer protection claims asserted under the laws of these states should

be dismissed.

     Similarly, Plaintiffs' claims under the consumer protection laws of **Mississippi** and **New**

**York** should be dismissed because the private right of action under these laws applies only to

claims involving "deceptive" conduct.  *See* Miss. C. Ann. §§ 75-24-15, 75-24-5, 75-24-9; N.Y.

Gen. Bus. L. § 349; *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 410 (S.D.N.Y.

2011) ("anticompetitive conduct that is not premised on consumer deception is not within the

ambit of the [New York] statute").  No such allegations have been made here.

### 3.    Nine Jurisdictions Require Privity Or A Business Connection Between Plaintiffs And Defendants.

     The consumer protection laws of nine jurisdictions—**Arizona**, **Connecticut**, the **District**

**of Columbia**, **Idaho**, **Louisiana**, **Maine**, **Michigan**, and **Missouri**—require plaintiffs to be in

privity with defendants.  *See Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401,

407 (9th Cir. 1992) (dismissing Arizona consumer protection claim where plaintiff and

---

[2] *See also Ripa v. Fed. Nat. Mortgage Ass'n*, 2013 WL 5705426, at *2 (D. Ariz. Oct. 21, 2013) (Arizona consumer protection plaintiffs must plead deceptive conduct with particularity); *Perez v. Volkswagen Grp. of Am., Inc.*, 2013 WL 1661434, at *7-8 (W.D. Ark. Apr. 17, 2013) (Arkansas consumer protection plaintiffs must plead deceptive conduct with particularity); *Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp. 1515, 1524 (D. Kan. 1995) (Kansas consumer protection plaintiffs must plead deceptive conduct with particularity); *Cargill, Inc. v. Degesch Am., Inc.*, 875 F. Supp. 2d 667, 676-77 (E.D. La. 2012) (Louisiana consumer protection plaintiffs must plead deceptive conduct with particularity); *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 795 F. Supp. 2d 874, 879 (D. Minn. 2011) (Minnesota consumer protection plaintiffs must plead deceptive conduct with particularity); *Kervin v. GC Servs., Ltd. P'ship*, 2014 WL 584966, at *2 (D. Nev. Feb. 12, 2014) (Nevada consumer protection plaintiffs must plead deceptive conduct with particularity).

defendant were not in buyer-seller relationship); *Ganim v. Smith and Wesson Corp.*, 780 A.2d 98, 119-20, 134 (Conn. 2001) (dismissing consumer protection claims where injuries were indirect); *Robinson v. Deutsche Bank Nat. Trust Co.*, 932 F. Supp. 2d 95, 102-03 (D.D.C. 2013) (dismissing D.C. consumer protection claim "[s]ince no transaction was consummated" between parties); *Taylor v. McNichols*, 243 P.3d 642, 662 (Idaho 2010) (affirming dismissal of Idaho consumer protection claims because "aggrieved party must have been in a contractual relationship with the party alleged to have acted unfairly"); *Nat'l Gypsum Co. v. Ace Wholesale, Inc.*, 738 So. 2d 128, 130 (La. Ct. App. 1999) (dismissing consumer protection claims because Louisiana law provides private right of action "only to direct consumers or to business competitors"); *Dominion Exploration & Prod., Inc. v. Waters*, 972 So. 2d 350, 363 (La. Ct. App. 2007) (same); *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 161 (1st Cir. 2011) ("narrow" Maine consumer protection law requires privity); *DIRECTV, Inc. v. Keehn*, 2003 WL 23200249, at *5 (W.D. Mich. Oct. 20, 2003) (dismissing consumer protection claim because plaintiff "does not allege that he purchased or leased anything from DIRECTV"); *Barnes v. Fed. Home Loan Mortgage Corp.*, 2013 WL 1314200, at *7 (W.D. Mo. Mar. 28, 2013) (agreeing with defendants that Missouri consumer protection claim "fails as a matter of law because Plaintiff cannot satisfy the first element, that he purchased or leased anything from Defendants"), *aff'd*, 2014 WL 67894 (8th Cir. Jan. 9, 2014).  Because Plaintiffs have not alleged privity between themselves and Defendants, their claims under the laws of these jurisdictions should be dismissed.

Commercial Plaintiffs' claims under the consumer protection law of **Massachusetts** should similarly be dismissed because that law disallows claims brought by commercial indirect purchasers.  *See John Boyd Co. v. Boston Gas Co.*, 775 F. Supp. 435, 440 (D. Mass. 1991) ("the

existence of some contractual or business relationship between the parties [is] a precursor to

liability under [Massachusetts consumer protection law]").

> **4.    Six Jurisdictions Require That Wrongdoing Occur Within Those States.**

The consumer protection laws of **California**, **Louisiana**, **Montana**, **New Hampshire**,

**New York**, and **South Carolina** require that at least some portion of defendants' alleged

wrongdoing have occurred within the state; the presence of an alleged *victim* in these states is

insufficient.  *See, e.g., Meridian Project Sys. Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214,

1225 (E.D. Cal. 2005) (dismissing California unfair competition claims against out-of-state

defendant where there was "no specific intrastate misconduct" alleged in complaint); *Churchill*

*Village, L.L.C. v. GE*, 169 F. Supp. 2d 1119, 1125-27 (N.D. Cal. 2000) (consumer protection

claim dismissed where none of alleged misconduct occurred in California, even though

California residents were injured in California); *In re Dynamic Random Access Memory (DRAM)*

*Antitrust Litig.*, 516 F. Supp. 2d 1072, 1103-04 (N.D. Cal. 2007) (dismissing Louisiana,

Montana, and South Carolina consumer protection claims where plaintiffs failed to allege "any

conduct or activity taking place within" those states); N.H. Rev. Stat. Ann. § 358-A:2; *Pacamor*

*Bearings, Inc. v. Minebea Co., Ltd.*, 918 F. Supp. 491, 504 (D.N.H. 1996) ("It is the 'offending

conduct' that must occur within the state—the 'unfair method of competition or any unfair or

deceptive act or practice' in trade or commerce—not the actual sale."); *Mueller Co. v. U.S. Pipe*

*& Foundry Co.*, 2003 WL 22272135, at *6 (D.N.H. Oct. 2, 2003) ("In the absence of any alleged

unfair method of competition or unfair or deceptive act or practice which took place within New

Hampshire, the harm suffered by [plaintiff] within the state does not state a claim under RSA

358-A:2."); *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324-25 (N.Y. 2002) ("to qualify

as a prohibited act under [New York consumer protection law], the deception of a consumer

must occur in New York").  Because Plaintiffs do not claim that any of the alleged misconduct

occurred within these states, their consumer protection claims under these laws should be

dismissed.

> **5.** **Five Jurisdictions Require Unconscionable Or Egregious Misconduct.**

The consumer protection laws of **Arkansas**, the **District of Columbia**, **Kansas**,

**Louisiana**, and **North Carolina** require that conduct be "unconscionable" to be in violation of

those laws.  "Unconscionable" conduct requires a showing of unequal bargaining power,

inequitable terms in the transaction in question, or both.  *See In re Graphics Processing Units*

*Antitrust Litig.*, 527 F. Supp. 2d 1011, 1029-30 (N.D. Cal. 2007) (dismissing price-fixing claims

brought under consumer protection laws of Arkansas, the District of Columbia, and Kansas,

because "pleading unconscionability requires something more than merely alleging that the price

of a product was unfairly high."); *Universal Cooperatives, Inc. v. AAC Flying Serv., Inc.*, 710

F.3d 790, 795-96 (8th Cir. 2013) (dismissing Arkansas consumer protection claims because

complaint "does not allege . . . conduct in the nature of an improper use of economic leverage in

a trade transaction [and] [a]s a result, the alleged conduct simply fails to fit within the scope of

the unconscionable trade practices prohibited by the [statute]"); D.C. Code § 28-3904(r); *Riggs*

*Nat'l Bank v. District of Columbia*, 581 A.2d 1229, 1251 (D.C. 1990) ("To establish

unconscionability, [Plaintiff] must prove not only that one of the parties lacked a meaningful

choice but also that the terms of the contract are unreasonably favorable to the other party.");

Kan. Stat. Ann. § 50-627; *Wille v. Sw. Bell Tel. Co.*, 549 P.2d 903, 907 (Kan. 1976)

(unconscionable conduct requires "additional factors such as deceptive bargaining conduct as

well as unequal bargaining power"); *Cargill.*, 875 F. Supp. 2d at 677 (requiring allegations of

"egregious actions involving elements of fraud, misrepresentation, deception, or other unethical

conduct" to state claim); *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001) (requiring "egregious

or aggravating circumstances" to state claim).  Because Plaintiffs have not pled unconscionable
or egregious misconduct, their claims brought under the consumer protection laws of these
jurisdictions should be dismissed.

> **6.**    **Nine Jurisdictions Bar Antitrust Claims Asserted Under Consumer
> Protection Laws.**

Antitrust claims are not actionable under the consumer protection laws of **Arkansas**, the
**District of Columbia**, **Idaho**, **Kansas**, **Maine**, **New Mexico**, **Rhode Island**, **Utah**, and **West
Virginia**.  *See Graphics Processing Units*, 527 F. Supp. 2d at 1029-31 (dismissing antitrust
claims brought under consumer protection statutes of Arkansas, the District of Columbia,
Kansas, New Mexico, Rhode Island, and West Virginia because "allegations of price fixing . . .
are not the kind of conduct prohibited under these statutes."); *Tungate v. MacLean-Stevens
Studios, Inc.*, 714 A.2d 792, 797 (Me. 1998) (dismissing "unfair pricing" claims brought under
Maine consumer protection law because a "higher price . . . does not operate to induce
consumers to purchase [goods] they would not otherwise purchase if . . . prices were 20%
lower"); *DRAM*, 516 F. Supp. 2d at 1110-19 (dismissing antitrust claims brought under
consumer protection laws of Idaho, Rhode Island, Utah, and West Virginia).  Because the
gravamen of Plaintiffs' consumer protection claims are alleged antitrust violations, their claims
brought under the consumer protection laws of these jurisdictions should be dismissed.

## II.    THE MICHIGAN AND NEW YORK ANTITRUST CLAIMS SHOULD BE DISMISSED AS TO OUT-OF-STATE PURCHASERS.

All but one of the named plaintiffs who assert claims under the Michigan Antitrust
Reform Act and the New York Donnelly Act fail to allege that they purchased aluminum in those
states.  Under governing choice-of-law rules, out-of-state purchasers cannot pursue Michigan or
New York antitrust claims; these plaintiffs' state law claims, if any, arise under the laws of the

states in which they purchased aluminum.  Their Michigan and New York antitrust claims

therefore should be dismissed.[3]

State law claims asserted in this Court are governed by New York's choice-of-law rules,

which require the Court to apply the law of the "state with the most significant relationship to the

issues in dispute."  *Reeves v. Am. Broad. Cos.*, 719 F.2d 602, 605 (2d Cir. 1983) ("It is axiomatic

that a federal court sitting in diversity follows the choice of law principles of the state of its

situs.").  To determine which state has the most significant relationship, New York applies the

balancing test of the Restatement (Second) of the Conflicts of Laws (the "Restatement").  *Id.*

Under the Restatement, the "applicable law will usually be the local law of the state

where the injury occurred."  Restatement § 158.  Applying this presumption, antitrust claims are

properly adjudicated under the law of the state of purchase.  *See, e.g.*, *In re Skelaxin*

*(Metaxalone) Antitrust Litig.*, --- F.R.D. ----, 2014 WL 340903, at *32 (E.D. Tenn. Jan. 30, 2014)

("Antitrust class actions . . . focus on the place the injury occurred, which is where the plaintiffs

were overcharged."); *In re Flonase Antitrust Litig.*, 815 F. Supp. 2d 867, 885 (E.D. Pa. 2011)

(applying "the law of the purchase states to the [plaintiffs'] claims"); *In re Relafen Antitrust*

*Litig.*, 221 F.R.D. 260, 277 (D. Mass. 2004) ("[T]he Court considers the more significant contact

in this context to be the location of the injury—that is, the location of the sales to the

[plaintiffs].").

In an antitrust case, the law of the state of purchase has the most significant relationship

to the issues in dispute because "the primary aim of antitrust and consumer protection laws

---

[3] This argument addresses the Fifth and Sixth Claims for Relief by all named first level purchaser plaintiffs; the Fifth Claim for Relief by all named commercial plaintiffs other than Welk-ko Fabricators, Inc., and the Fourth and Fifth Claims for Relief by all named consumer plaintiffs. No named plaintiff other than Welk-ko Fabricators, Inc. alleges having purchased aluminum in Michigan or New York.

generally—and those of indirect purchaser states particularly—is compensating consumers, not policing corporate conduct." *Relafen*, 221 F.R.D. at 277.  Courts therefore reject attempts by plaintiffs to pursue antitrust claims under the laws of states in which they have not purchased allegedly overpriced products.  *See, e.g.*, *Graphics Processing Units*, 527 F. Supp. 2d at 1028 (dismissing claims based on out-of-state transactions because "[e]ven where substantial contacts to the forum state have been pled, courts have declined to apply a single state's laws to a nationwide antitrust class"); *Relafen*, 221 F.R.D. at 276-77; *see also In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 149 (S.D.N.Y. 2008) ("'[s]tates have a strong interest in protecting consumers with respect to sales within their borders, but they have a relatively weak interest, if any, in applying their policies to consumers or sales in neighboring states'" (quoting *Relafen*, 221 F.R.D. at 278) (alteration in original)).[4]

Any other conclusion would conflict with the Commerce and Due Process Clauses.  The Supreme Court has flatly held that "the 'Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders.'"  *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982)).  In the antitrust context, this prohibition means that "State A cannot use its antitrust law to make a seller in State B charge a lower price to a buyer in C."  *In re Brand Name Prescription*

---

[4] Although the complaints suggest that application of Michigan or New York antitrust law could be appropriate even as to out-of-state purchases because allegedly anticompetitive conduct occurred in these states (*see* FLP Compl. ¶¶ 416-17, 422-23; Commercial Compl. ¶ 307; Consumer Compl. ¶¶ 223, 229), the law is to the contrary:  even though it is "tempting to apply the consumer protection laws of the states where defendants have their principal places of business to promote uniform results and the ease of managing a class, under the Restatement, the laws of the home states of the consumers govern."  *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 83 (D. Mass. 2005); *Relafen*, 221 F.R.D. at 276-77; *cf. Goshen*, 98 N.Y.2d at 321 (New York consumer protection law does not apply to "an allegedly deceptive scheme that originates in New York, but injures a consumer in a transaction outside the state").

*Drugs Antitrust Litig.*, 123 F.3d 599, 613 (7th Cir. 1997) (Posner, C.J.).[5]  For precisely these

reasons, the Commerce Clause bars application of Michigan or New York antitrust law to

purchases occurring outside those states.  *See id.*  The Due Process Clause independently

requires the same conclusion.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818-23 (1985)

(due process prohibits nationwide application of a single state's law where the state lacks "a

significant contact or significant aggregation of contacts, creating state interests, such that choice

of its law is neither arbitrary nor fundamentally unfair" (citation omitted)).

## III.   THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.

The Consumer Plaintiffs' Eleventh Claim for Relief is an undifferentiated unjust

enrichment claim, which asserts that Defendants were unjustly enriched by "unlawful acts" and

seeks a constructive trust of alleged "ill-gotten gains" on behalf of a nationwide class.

(Consumer Compl. ¶¶ 324-26.)  This claim should be dismissed for two independent reasons.

### A.   Plaintiffs Do Not Identify The State Law Basis For Their Unjust Enrichment Claim.

As an initial matter, the unjust enrichment claim fails because it does not "identif[y] the

state jurisdictions upon whose law plaintiffs predicate [this] claim[]."  *In re Chocolate*

*Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 587 (M.D. Pa. 2009).  This omission is fatal

because state law requirements for unjust enrichment vary—indeed, some states, including

Michigan, Florida, and Kansas, bar "indirect" unjust enrichment claims of the sort brought by the

---

[5] The claims at issue in *Brand Name Prescription Drugs* were brought under Alabama's antitrust law, and the Seventh Circuit held that "insofar as the Alabama suit challenges sales from plants or offices in other states to pharmacies in other states, it exceeds the constitutional scope of the Alabama antitrust law."   123 F.3d at 613; *see also Relafen*, 221 F.R.D. at 277 ("Applying Pennsylvania law to these wholly out-of-state transactions would be at best a 'novelty,' and at worst a violation of constitutional limitations."); *Skelaxin (Metaxalone)*, --- F.R.D. ----, 2014 WL 340903, at *32 (same).

Consumers.  *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 948 (N.D. Ill. 2009); *see also*

*Chocolate Confectionary*, 602 F. Supp. 2d at 587 ("[r]estitution remedies vary considerably from

state to state").

The unjust enrichment claim should be dismissed for this reason alone.  *See In re*

*Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 667-68 (E.D. Mich. 2011) (dismissing unjust

enrichment claim because "[t]he Court cannot analyze the IP Plaintiffs' undifferentiated unjust

enrichment claims"); *Chocolate Confectionary*, 602 F. Supp. 2d at 587 (same); *In re TFT-LCD*

*(Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1124 (N.D. Cal. 2008) (same); *In re Static*

*Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008)

(same); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129,

1145 (N.D. Cal. 2008) (same).

### B.   Plaintiffs' Unjust Enrichment Claim Falls With Their Underlying Antitrust And Consumer Protection Claims.

In addition, because the consumers' Eleventh Claim for Relief is predicated on

Defendants' alleged violations of antitrust or consumer protection laws (*see* Consumer Compl.

¶¶ 324-26), the failure of those underlying claims (as discussed in Defendants' motions to

dismiss) provides an independent basis for dismissal of Plaintiffs' unjust enrichment claim.

Plaintiffs cannot pursue an unjust enrichment claim where "allowance of the claim would

conflict with liability or penalties for the interference provided by other law."  Restatement

(Third) of Restitution and Unjust Enrichment § 44 (2011).  The Restatement commentary

explains, specifically using the example of antitrust claims, that where "[a]llowing [plaintiffs] to

recover . . . overcharges on a theory of unjust enrichment would conflict with the remedial

scheme established by the law that makes the defendants' acts illegal[,] . . . [plaintiffs] have no

claim to restitution."  *Id.* § 44 Ill. 16.

Courts consistently apply this rule to dismiss unjust enrichment claims where plaintiffs' underlying claims are deficient.  Two recent decisions of this Court have done so where the underlying antitrust claims failed for lack of standing.  *See In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 231-33 (S.D.N.Y. 2012); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 412-13 (S.D.N.Y. 2011).  More generally, courts have determined that there is "no justification for permitting plaintiffs to proceed on their unjust enrichment claim once we have determined that the District Court properly dismissed the traditional tort claims," *Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 937 (3d Cir. 1999), and therefore routinely dismiss unjust enrichment claims when underlying claims fail, *see, e.g.*, *Yong Ki Hong v. KBS Am., Inc.*, 951 F. Supp. 2d 402, 425 (E.D.N.Y. 2013) (barring "all litigants who lack antitrust standing from bringing identical claims under a common law theory of unjust enrichment"); *Sheet Metal Workers Loc. 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 425-26 (E.D. Pa. 2010) (dismissing indirect purchaser unjust enrichment claims as inconsistent with state antitrust laws); *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 542 (E.D. Pa. 2010) ("Thus, where an antitrust defendant's conduct cannot give rise to liability under state antitrust and consumer protection laws, [p]laintiffs should be prohibited from recovery under a claim for unjust enrichment.").[6]

---

[6] *See also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1192 (N.D. Cal. 2009) (dismissing unjust enrichment claims where "permitting such claims would allow plaintiffs to circumvent limitations of state antitrust laws"); *In re Abbott Labs. Norvir Anti-Trust Litig.*, 562 F. Supp. 2d 1080, 1090 (N.D. Cal. 2008) (same), *rev'd on other grounds sub nom. John Doe 1 v. Abbott Labs.*, 571 F.3d 930 (9th Cir. 2009); *In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461, 464 (D. Md. 2005) (same); *In re Microsoft Corp. Antitrust Litig.*, 241 F. Supp. 2d 563, 565 (D. Md. 2003) (same); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1379-80 (S.D. Fla. 2001) (same); *Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 257 (S.D.N.Y. 1995) (same).

The same result applies here.  Having failed to state viable antitrust or consumer protection claims, the Consumers cannot circumvent the pleading requirements of those causes of action by recasting those same claims as an unjust enrichment claim.

## IV.   MAG'S "INTERFERENCE" CLAIMS SHOULD BE DISMISSED.

Plaintiff Mag Instrument, Inc. ("Mag") has asserted three purported claims under California law, all of which should be dismissed.  Specifically, Mag's Third, Fourth, and Fifth Claims for Relief, styled, respectively, "intentional interference with contract," "intentional interference with economic relationship," and "negligent interference with economic relationship" (Mag Compl. ¶¶ 127-45), are all fatally deficient.

### A.     Mag Has Not Pled A Claim For Intentional Interference With Contract.

Mag has not pled the elements of intentional interference with contract under California law:  "(1) a valid contract between plaintiff and a third party, (2) defendant's knowledge of the contract, (3) defendant's intentional acts designed to induce breach or disruption of the contract, (4) actual breach or disruption, and (5) resulting damage." *Davis v. Nadrich*, 174 Cal. App. 4th 1, 10 (Cal. Ct. App. 2009).  Mag's complaint is deficient in at least two respects.

First, Mag's complaint fails to provide the particulars of any contract.  To plead a claim for intentional interference with contract, the plaintiff must plead "adequate details about a specific contract between itself and a third party." *Plasticware v. Flint Hills Res*., 852 F. Supp. 2d 398, 404 (S.D.N.Y. 2012).  A plaintiff's general allegation that it is a party to "agreements" is insufficient. *Id*.

Here, Mag alleges only that it "purchased aluminum pursuant to a long-standing supply contract(s)" and that "[i]ndustrial users of aluminum, such as Plaintiff, purchase their aluminum pursuant to supply contract [*sic*] with aluminum producers."  (Mag Compl. ¶¶ 128-29.)  Mag does not plead the date or duration of any contract, the quantities supplied under any contract, the

delivery schedule, the shipping terms, the payment terms, or the pricing terms of any contract (beyond a general statement that the form of pricing is cost-plus using the LME Official Price and the Midwest Premium).

These allegations are inadequate to plead a cause of action for intentional interference with contract. *See Bose v. Interclick, Inc.*, 2011 WL 4343517, at *10 (S.D.N.Y. Aug. 17, 2011) (dismissing claim for tortious interference with contract where contracts with counterparties were alleged in general terms, but allegations did not give "facts regarding the terms of the contracts"); *Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 255 (S.D.N.Y. 2009) (claim for tortious interference was inadequately pled where plaintiffs alleged that "defendants interfered with their customer contracts," but did not "specify a single customer contract with which defendants interfered").

Second, to be liable for intentional interference with contract, the defendant "must have knowledge of the contract with which he is interfering and of the fact that he is interfering with the performance of the contract." Restatement (Second) of Torts § 766 cmt. i (1979); *Russomanno v. Russo*, 2005 WL 469151, at *21 (Cal. Ct. App. Mar. 1, 2005) (same). Even where the defendant's conduct interferes with the performance of a contract, "the defendant does not induce or otherwise intentionally cause that failure *if it has no knowledge of the contract*." Restatement (Second) of Torts § 766 cmt. I (emphasis added); *Russomanno*, 2005 WL 469151, at *21 (same).

Mag cannot and does not allege that any of the defendants had knowledge of Mag's contract. Mag merely alleges that "[a]s participants in the aluminum industry, Defendants were or should have been aware of such long-standing supply contracts." (Mag Compl. ¶¶ 128-29.)

17

This allegation falls short of the requirement that the defendant had knowledge of the contract with which it allegedly interfered.  *See Doobenen v. Goyak*, 2002 WL 31868088, at *4 (Cal. Ct. App. Dec. 24, 2002) (pleading that defendant "knew or should have known" about contract, without factual support, is insufficient); *see also Golden v. Anderson*, 256 Cal. App. 2d 714, 720 (Cal. Ct. App. 1967) (granting summary judgment dismissing claim for intentional interference with contract where defendants did not know of the existence of the contract at issue and "did not know nor had [they] ever heard of plaintiff").

Because the Mag complaint fails to plead adequately a claim for intentional interference with contract, its Third Claim for Relief should be dismissed.

### B.    Mag Has Not Pled A Claim For Intentional Interference With Economic Relationship.

As an initial matter, there is no cause of action in California styled "intentional interference with economic relationship."  *See Randall v. Campbell*, 2005 WL 44920, at *6 (Cal. Ct. App. Jan. 11, 2005) (no cause of action styled "interference with economic relationship"). Even giving Mag the benefit of the doubt—and assuming that Mag is attempting to allege a cause of action for intentional interference with *prospective* economic benefit—Mag's pleading is deficient.  Under California law, the elements of this cause of action are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) *the defendant's knowledge of the relationship*; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant."  *Winchester Mystery House, LLC v. Global Asylum, Inc.*, 210 Cal. App. 4th 579, 596 (Cal. Ct. App. 2012).  Mag's complaint again is deficient in multiple respects.

First, to plead a claim for intentional interference with prospective economic benefit, a plaintiff must "specify some particular, existing business relationship." *Kramer*, 890 F. Supp. at 258. A general allegation that plaintiff "had an ongoing business relationship" with the counterparty is insufficient. *Connolly v. Wood-Smith*, 2012 WL 7809099, at *11 (S.D.N.Y. May 14, 2012), *report and recommendation adopted as modified*, 2013 WL 1285168 (S.D.N.Y. Mar. 28, 2013). Mag's general allegation that it "had an existing economic relationships [sic] with its aluminum supplier" (Mag Compl. ¶ 134) is therefore inadequate.

Second, the prospective economic benefit must actually be *prospective*. It cannot be based on an existing contract, as such a claim is for intentional interference with *contract*. *See Shoemaker v. Myers*, 52 Cal.3d 1, 24 (Cal. 1990) (upholding dismissal where pleading identified no "prospective economic advantage" other than continuation of plaintiff's employment relationship, and the claim was "in reality identical in substance to plaintiff's claim for inducement of breach of contract."). Mag's allegation that it "purchased aluminum pursuant to a *long-standing supply contract(s)* [sic]" is therefore fatal to its claim. (Mag Compl. ¶ 134 (emphasis added).)

Third, and finally, the cause of action for intentional interference with prospective economic benefit similarly requires "the defendant's *knowledge* of the relationship[.]" *Winchester Mystery House*, 210 Cal. App. 4th at 596 (emphasis added). Again, Mag alleges only that "[a]s participants in the aluminum industry, Defendants were or should have been aware of such economic relationships." (Mag Compl. ¶ 135.) These allegations fall far short of the requirement that the defendant have knowledge of the specific relationship at issue. *See Kerrigan v. Coldwell Banker Residential Real Estate Co.*, 2011 WL 6739631, at *8 (Cal. Ct. App. Dec. 21, 2011) (affirming summary judgment dismissing claim for intentional interference

with prospective economic benefit where defendants "had no knowledge of any existing economic relationship between" plaintiff and counterparty).

Because the Mag complaint fails adequately to plead a claim for "intentional interference with economic relationship," Mag's Fourth Claim for Relief should be dismissed.

### C.    Mag Has Not Pled A Claim For Negligent Interference With Economic Relationship.

Similarly, under California law, there is no cause of action styled "negligent interference with economic relationship."  The only cause of action that bears any resemblance to such a claim is for negligent interference with *prospective* economic benefit.  *See Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 902 P.2d 740, 743 (Cal. 1995) (listing two "interference torts," "interference with contract and its sibling, interference with prospective economic relations").

Again, even giving Mag the benefit of the doubt, Mag's pleading is deficient.  Under California law, the elements of a cause of action for negligent interference with prospective economic benefit are:  "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the *defendant's knowledge of the relationship*; (3) . . . negligent acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant."  *Crown Imports, LLC v. Superior Court*, 223 Cal. App. 4th 1395, 1404 (Cal. Ct. App. 2014).  Mag's Complaint is deficient in the following respects.

First, to plead a claim for negligent interference with prospective economic benefit, a plaintiff must specify the business relationship on which the claim is based.  *See F.M. Tarbell Co. v. A & L Partners, Inc.*, 2011 WL 1153539, at *5 (C.D. Cal. Mar. 23, 2011) (pleading that plaintiff "had and has existing business relationships or prospective business relationships which

20

had probability of future economic benefit and/or advantage" is insufficient).  The Mag

Complaint does not do so, instead alleging only that Mag "purchased aluminum pursuant to a

long-standing supply contract(s)" and that "[i]ndustrial users of aluminum, such as Plaintiff,

purchase their aluminum pursuant to supply contract [sic] with aluminum producers."  (Mag

Compl. ¶¶ 140-41.)  That is insufficient to state a claim.

Second, Mag fails to satisfy the knowledge element of the cause of action.  Mag's

assertions that "[a]s participants in the aluminum industry, Defendants were or should have been

aware of such long-standing supply contracts" and that "Defendants were aware of [sic] should

have been aware, that if they did not act with due care, their actions would interfere with

Plaintiff's relationship with its suppliers of aluminum" (Mag Compl. ¶¶ 141-42), are insufficient

to plead defendants' knowledge of the specific relationship at issue.  *See Woroch v. Regents of*

*the Univ. of Cal.*, 2005 WL 2699234, at *6 n.4 (Cal. Ct. App. Oct. 21, 2005) (affirming summary

judgment dismissing claim for negligent interference with prospective economic advantage

where plaintiff "presented no evidence that [defendant] knew of Woroch's claimed prospected

economic advantage").

Third, this claim also rests entirely on an *existing* contract.  As before, Mag pleads that it

"purchased aluminum pursuant to a long-standing supply contract(s)."  (Mag Compl. ¶ 140.)

California law, however, does not recognize a cause of action for negligent interference with an

*existing* contract.  *See Fifield Manor v. Finston*, 54 Cal.2d 632, 636-37 (Cal. 1960) (no cause of

action for negligent interference with contract; to create such a cause of action "would constitute

an unwarranted extension of liability for negligence"); *2156 Stratford Circle v. AIG, Inc.*, 2012

WL 29411, at *14 (Cal. Ct. App. Jan. 6, 2012) ("[a]s to appellants' claim for negligent

21

interference with contract, the Supreme Court has held that there is no such cause of action in California" (*citing Fifield Manor*)).

Fourth, and finally, Mag fails to plead adequately that Defendants had a duty of care to Mag. Mag alleges, in *ipse dixit* fashion, that Defendants had a duty of care to every "participant in the market for aluminum," including to entities unknown to the Defendants. (Mag Compl. ¶ 143.) Defendants owe no such sweeping duty of care. Absent a specific duty of care owed to Mag, the claim for negligent interference with prospective economic benefit fails. *See Stolz v. Wong Commc'ns Ltd. P'ship*, 25 Cal. App. 4th 1811, 1825 (Cal. Ct. App. 1994) (tort of negligent interference with prospective economic advantage exists "only when the defendant owes the plaintiff a duty of care").[7]

Because the Mag Complaint fails adequately to plead a claim for "negligent interference with economic relationship," Mag's Fifth Claim for Relief should be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' non-antitrust state law claims and Plaintiffs' Michigan and New York antitrust claims (as to out-of-state purchasers) should be dismissed.

---

[7] Mag alleges conclusorily that a duty of care arises under the Commodities Exchange Act, 7 U.S.C. §§ 1 et seq. (Mag Compl. ¶ 143.) Mag does not specify how such a duty supposedly arises, or even under what provision of the Act it supposedly arises. This generic reference to the Act fails to satisfy Federal Rule of Civil Procedure 8(a).

Dated:  April 25, 2014

Respectfully submitted,

/s/ Eliot Lauer
Eliot Lauer (*elauer@curtis.com*)
Jacques Semmelman
(*jsemmelman@curtis.com*)
Chelsea McLean
(*chelsea.mclean@curtis.com*)
CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP
101 Park Avenue
New York, NY  10178
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559

*Attorneys for Defendant Glencore Ltd.*

/s/ Richard Pepperman, II  (on consent)
Richard C. Pepperman, II
(*peppermanr@sullcrom.com*)
Suhana S. Han (*hans@sullcrom.com*)
Yavar Bathaee (*bathaeey@sullcrom.com*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Attorneys for Defendants GS Power
Holdings, LLC, The Goldman Sachs Group,
Inc. and Metro International Trade Services,
L.L.C.*

/s/ John M. Nannes  (on consent)
John M. Nannes (john.nannes@skadden.com)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C.  20005
Telephone:  (202) 371-7500
Facsimile:  (202) 661-9191

*Attorneys for Defendant Pacorini Metals USA, LLC*

/s/ Robert D. Wick  (on consent)[8]
Robert D. Wick (*rwick@cov.com*)
Neil K. Roman (*nroman@cov.com*)
John S. Playforth (*jplayforth@cov.com*)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone:  (202) 662-5758
Facsimile:  (202) 778-5758

*Attorneys for Defendants Henry Bath, LLC and
JP Morgan Chase & Co*

/s/ Margaret M. Zwisler  (on consent)
Margaret M. Zwisler
(*margaret.zwisler@lw.com*)
William R. Sherman (*william.sherman@lw.com*)
Jennifer Lynn Giordano
(*jennifer.giordano@lw.com*)
Jeffrey Hamilton Newhouse
(*jeffrey.newhouse@law.com*)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201

*Attorneys for Defendant London Metal Exchange
Limited*

---

[8] Defendants besides Glencore Ltd. use electronic signatures with consent in accordance with Rule 8.5(b) of the Court's ECF Rules and Instructions.