# LOVELL STEWART HALEBIAN JACOBSON LLP

61 Broadway, Suite 501
New York, New York 10006
www.lshllp.com

| Telephone | | Facsimile |
|---|---|---|
| 212.608.1900 | | 212.719.4775 |

April 25, 2014

**BY ECF**
The Honorable Katherine B. Forrest
United States District Court
Southern District of New York
500 Pearl Street, Room 1950
New York, New York 10007-1312

Re:   *In Re Aluminum Warehousing Antitrust Litig.*, 13-md-2481 (KBF) (S.D.N.Y.)

Dear Judge Forrest:

In order to try to make today's conference before Your Honor more productive, the Direct Purchaser Plaintiffs ("Plaintiffs") are respectfully submitting this letter in order to correct what we believe are errors in the Joint Motion to Dismiss on Standing Grounds (Docket No. 314).  Although Plaintiffs will respond more fully to the Defendants' just-filed and lengthy briefs in accordance with the schedule set by this Court, we believe this short submission is appropriate now because the Defendants' discovery positions rely to a large extent on their standing arguments.

**First**, Defendants assert/imply that, in order to have antitrust standing, a plaintiff must be a consumer or competitor in the relevant market or suffer an injury that is the instrumentality of the violation.  *Id.* at pp. 6-7.  This is not the correct legal standard; the correct reasoning for that standard, nor even a correct description of the facts involved in standing decisions by this Circuit.  In *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 122 (2d Cir. 2007), an antitrust case not cited by Defendants, the Second Circuit rejected as "oversimplified" a rule which would determine antitrust injury for standing purposes by reference to whether the plaintiff was a customer or competitor, citing, *inter alia*, *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 310-14 (4th Cir. 2007) (declining to adopt bright line rule that only consumers or competitors have antitrust standing). "We can ascertain antitrust injury only by identifying the anticipated anticompetitive effect of the specific practice at issue and comparing it to the actual injury the plaintiff alleges."  *Id.*  Similarly, in *Crimpers Promotions Inc. v. Home Box Office, Inc.,* 724 F.2d 290, 292 (2d Cir. 1983) ("*Crimpers*"), antitrust standing was upheld where the plaintiff was not a consumer and "did not directly compete with [the defendants] in buying and selling cable programming," but the harm it suffered was "inextricably intertwined" with, and was the "intended consequence" of, the defendants' alleged antitrust violations.  *Compare also* Final Brief of *Amicus Curiae* Netscape Communications Corp. in Support of Affirming the District Court's Judgment for Appellee Sun Microsystems, Inc., 2003 U.S. 4th Cir. Briefs LEXIS 114, *20-21 (July 2, 2003) (accurately stating the result in *Crimpers* exactly as set forth in the *Crimpers* proposition described above).

The Honorable Katherine B. Forrest
April 25, 2014
Page 2

**Second**, Defendants rely heavily on a decision that is a nullity. Docket No. 314 pp. 7, 8, 20, 22, citing repeatedly to *Ocean View Capital, Inc. v. Sumitomo Corp. of America*, No. 98 Civ. 4067 (LAP), 1999 WL 1201701 (S.D.N.Y. Dec. 15, 1999). That decision was issued after a JPML order had transferred that action to the Western District of Wisconsin.[1]

**Third,** after such transfer, the *Ocean View* case and the standing issues therein were eventually decided with exactly the opposite result by *Loeb Industries v. Sumitomo Corp.*, 306 F.3d 469, 483, 489 (7th Cir. 2002) *cert. denied sub nom. Sumitomo Corp. of America v. Ocean View Capital, Inc.*, 539 U.S. 903 (2003) (first level purchasers of copper pursuant to contracts that specified the price term as the Commodity Exchange Inc. copper futures price, had antitrust standing to sue persons who inflated prices in a different market, the London Metal Exchange ("LME") copper market in London which inflation allegedly was transmitted to the Commodity Exchange Inc., copper futures prices; the persons who had antitrust standing to sue for this manipulation included copper commodity futures traders on the Commodity Exchange Inc., and, as here, the first level purchasers of copper in the cash market); see fn. 1 *supra*. Thus, the actual rule of decision resulting from the case on which Defendants most heavily rely, strongly supports Plaintiffs' antitrust standing to bring their antitrust claims here.

**Fourth**, implicitly recognizing that the ultimate rule of decision in *Ocean View* actually supports Plaintiffs' standing here, Defendants take pains to try to distinguish *Loeb* on multiple grounds. Docket No. 314, pp. 20-21, fn. 30. Once again, these attempts support rather than contraindicate Plaintiffs' standing. For but one example, Defendants' attempt to erect a border fence to keep *Loeb* out of this Circuit by erroneously relying on *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014), (Docket No. 314, *passim*). *Lexmark* involved only a false advertising claim under the Lanham Act. Surveying the "lay of the land," the Court identified "three competing approaches to determining whether a plaintiff has standing to sue under the Lanham Act:" (1) "antitrust standing or the [*Associated General Contractors*] factors in deciding Lanham Act standing," (2) "a categorical test, permitting Lanham Act suits only by

---

[1] In *In re Copper Antitrust Litig.*, 99-C-621-C, 2000 WL 34230131, *15 (W.D. Wis. July 12, 2000) the Court held:

> The Sumitomo and Global defendants argue that "[i]n all relevant respects, Ocean View is identical to this case." Mem. of Law in Supp. of Sumitomo and Global Defs.' Mot. to Dismiss the Compl. at 16. Defendants argue that this court should apply the reasoning employed by the Southern District of New York when it dismissed the complaint against defendants in *Ocean View Capital v. Sumitomo Corp. of America*, No. 98 Civ. 4067, 1999 WL 1201701 (S.D.N.Y. Dec.15, 1999). However, that order was ineffectual because the case had been transferred to this court at the time the court issued its opinion. Revisiting the issues raised by defendants, I denied their motion to dismiss for lack of antitrust standing in an order dated May 9, 2000. *See Ocean View Capital, Inc. v. Sumitomo Corporation of America*, Nos. MDL 1303, 99–C–801–C, 2000 WL 576238 (W.D.Wis. May 9, 2000).

an actual competitor," and (3) a " 'reasonable interest' approach" used by the Second Circuit. *Id.* at 1385 (bracketed material in original). To the extent relevant here, *Lexmark's* teaching is that the analysis of "antitrust standing" is separate and different from any "categorical test" focusing only on an "actual competitor."

**Fifth**, Defendants imply, without explanation, that *Loeb's* reasoning may not apply in this Circuit. Docket No. 314 pp. 20-21 fn. 30. But the decisions in this Circuit citing to *Loeb* that have been located by Plaintiffs, have all cited *Loeb* with apparent approval, including one by Chief Judge Loretta Preska, who authored the original *Ocean View* decision. *See In re Digital Music Antitrust Litig.*, 06 MD 1780, 2011 WL 2848195 at *6 (S.D.N.Y. July 18, 2011) (Preska, C.J.) (the *Loeb* facts involved an example of the type of "physical and economic nexus between the alleged violation and the harm to the plaintiff" that supports antitrust standing); *see also In re LIBOR-Based Financial Instruments Antitrust Litig.*, 962 F.Supp.2d 606, 612 (S.D.N.Y. 2013); *In re LIBOR-Based Financial Instruments Antitrust Litig.*, 935 F.Supp.2d 666, 721 (S.D.N.Y. 2013).

When Plaintiffs' allegations are analyzed under the correct standing principles, Plaintiffs easily satisfy the antitrust standing requirements. *E.g.*:

> Through both levels of agreements, the LME and Goldman Defendants intentionally sought to and did create a positive feedback loop. In such feedback loop, higher LME Detroit supplies and slower load-outs empowered higher incentive payments. This caused higher supplies and slower load-outs which empowered higher incentive payments which caused higher LME Detroit supplies and slower load-outs, etc.

Docket No. 271, ¶39. This violative conduct of the Goldman and LME Defendants has had multiple anticompetitive effects and caused multiple unreasonable and pernicious restraints of trade or commerce, including:

> (a)  all-time record Midwest premium prices for aluminum at times when the Midwest premium should have been very low;
> (b)  higher levels of "all in" aluminum prices or Midwest Transaction Prices existed than should have existed and, in the absence of the unlawful conduct alleged herein, would have existed;
> (c)  all-time record amounts of aluminum were stored in LME warehouses at times when the amounts of the LME aluminum supplies should have been low;
> (d)  substantial increases in LME aluminum supplies occurred at times when the LME aluminum supplies should have been decreasing;
> (e)  all-time record delays of sixteen months or more in removing aluminum from LME Detroit Warehousing occurred at times when there should have been no delays;
> (f)  the uneconomic restraint of almost 90% of an entire year's worth of U.S. production of aluminum in the LME Detroit Warehousing and subject to a load-out time of in excess of 16 months.

The Honorable Katherine B. Forrest
April 25, 2014
Page 4

¶59.

  Plaintiffs here are the first level purchasers who paid the all-time record MW premium, as in *Loeb*.  Far more than the plaintiffs in *Loeb*, however Plaintiffs here are also the persons whom Goldman outbid by increasing its incentive payments to divert more aluminum away from the real economy and purchases by Plaintiffs.  That is, Plaintiffs' injury, as in *Crimpers*, is inextricably intertwined with the positive feedback loop of Defendants' providing increasingly slower services in order to take increasingly greater amounts of money from the community by restraining increasingly greater amounts of US aluminum in LME Detroit Warehousing.

  Plaintiffs look forward to answering any questions the Court may have in this respect or others during today's conference.

  Thank you very much.

  Respectfully Submitted,

| /s/ *Christopher Lovell* | /s/ *Linda P. Nussbaum* | /s/ *Bonny E. Sweeney* |
|---|---|---|
| **Lovell Stewart Halebian Jacobson LLP** | **Grant & Eisenhofer P.A** | **Robbins Geller Rudman & Dowd LLP** |

  Interim Co-Lead Counsel for Direct Purchaser Plaintiffs

cc: All Counsel of Record (via ECF)