# EXHIBIT A



# Warehousing Committee

## Terms of Reference

# Status

1.1   The Warehousing Committee ("the Committee") is a sub-committee of the Board of The London Metal Exchange. to which the Board has delegated consideration of the matters set out in clause 2 below. The Board has also delegated to the Executive Committee ("EXCOM") the power to consider, and to act on, recommendations made by the Committee.

# Purpose

2.1   The Committee is responsible for:

- Maintaining contact with the warehousing industry, trade and trade associations.

- Keeping EXCOM apprised of relevant issues relating to warehousing, including industry views, changes to industry structures and other appropriate matters.

- Considering, from a logistical perspective, and at the discretionary request of EXCOM, proposals for listing or delisting LME good delivery locations

- Making recommendations to EXCOM on warehousing related policy issues.

- Discharging other duties as determined from time to time by EXCOM.

# Composition

3.1   An independent chairman will be appointed by EXCOM. The chairman of the Committee shall have no material interest in the operations of a warehouse company, whether LME approved or not.   In the absence of the independent chairman, the Committee may nominate an acting chairman.

3.2   The remaining Committee members shall be representatives of each LME approved warehouse company or group of related warehouse companies. Each LME approved warehouse company or group of related warehouse companies shall be entitled to nominate one employee representative to be a Committee member. These Committee members will be appointed by EXCOM upon recommendation from the Committee chairman. EXCOM shall have absolute discretion whether to accept or reject a nomination from a warehouse company or group of related warehouse companies, and no reason need be given. In the event that EXCOM rejects a nomination, the warehouse company or group of related warehouse companies may nominate an alternative.

3.3   If a member appointed under clause 3.2 is unable to attend a meeting, that person may, with the prior permission of the independent  chairman, designate an alternative

representative from the same warehouse company or group of related warehouse companies

3.4    EXCOM may review the policy of each warehouse company or group of related warehouse companies having a representative on the Committee in the event that the number of representatives becomes too large to facilitate effective discussion.

3.5    The Chairman of the Physical Market Committee shall, ex officio, be a member of the Committee and shall be entitled to attend meetings of the Committee (without a vote)

3.6    The Exchange executive shall be entitled to attend meetings of the Committee (without a vote) and will provide secretarial and administrative support as required.

3.7    The chairman shall be appointed for a period of three years, with a maximum term of nine years' continuous service.  The Board may, at its sole discretion, extend the term of service of the chairman beyond nine years. Where it does so, the Board shall record the reasons for, and the proposed period of, such extension.

3.8    The chairman of the Committee shall review annually the Committee's performance to ensure it is operating at maximum effectiveness and recommend any changes it considers necessary to EXCOM for approval.

3.9    EXCOM may at its sole discretion request that the chairman resign from the Committee at any time, and the chairman shall comply with such request. No reason or period of notice need be given by EXCOM.

3.10   EXCOM may at its sole discretion request that any member of the Committee (except the chairman) resign from the Committee at any time, and such person shall comply with such request. No reason or period of notice need be given by EXCOM.

3.11   Should a member of the Committee appointed under clause 3.2 subsequently leave the employment of the warehouse company or group of related warehouse companies by which the member of the Committee was nominated, that person shall automatically resign from the Committee. The warehouse company or group of related warehouse companies shall be entitled to appoint an alternative representative in accordance with clause 3.2.

3.12   Should a warehouse company or group of related warehouse companies no longer be approved as an LME approved warehouse company, the employee representative appointed to the Committee under clause 3.2 shall automatically resign from the Committee.

## Frequency of Meetings

4.1   The Committee should meet at least four times a year and more frequently when appropriate, unless otherwise recommended by the Committee chairman and approved by EXCOM.

4.2   The Committee chairman shall agree in consultation with the Exchange executive the agenda   for each committee meeting,

4.3   Committee meeting dates shall be agreed in advance affording adequate notice for maximum participation.   Papers prepared for the Committee may be sent (by post, email or other medium) between meeting dates. Decisions or recommendations may be solicited and received between meetings by email or other medium, where necessary, to avoid delays in the decision-making processes.

4.4   Minutes will be taken for all meetings and will be included in EXCOM papers, and, when either the Committee chairman or EXCOM deems appropriate, tabled at Board meetings.

4.5   The Committee shall be at liberty to publicise forthcoming agenda items with the prior approval of the chairman and the Executive in order to encourage outside contributions, where appropriate.

4.6    All agenda items must be agreed by the chairman of the Committee in advance of the meeting.

## Attendance at Meetings

5.1   Failure to attend three consecutive Committee meetings will result in the withdrawal of Committee membership, subject to the discretion of the Committee chairman and EXCOM.

## Quorum

6.1    To be quorate, the Committee must have at least 50% of its members present at its meeting,

## Confidentiality and Conflicts of Interest

7.1   Committee members must ensure that unless outside consultation is agreed, they maintain confidentiality with regard to all matters discussed and all materials and data made available to them in respect of their Committee-related activities.    Further,

Committee members must not abuse their Committee status and must set aside any potential conflict of interest in their decision-making processes.   Where Committee members find themselves in a position of conflict of interest in relation to any matter to be discussed at a Committee meeting, they should consider whether it is appropriate for them to absent themselves from the part of the meeting at which that matter is discussed.   Further, where the chairman feels that there will be a conflict of interest in respect of any matter to be discussed at a meeting and it is appropriate for a Committee member to leave all or part of a meeting, the chairman is empowered to ask the member to leave the meeting.   No reason need be given.

## Committee Recommendations

8.1   EXCOM has the right to accept, reject or modify any recommendations made to it. EXCOM should have sufficient confidence that any recommendation made to it by the Committee is capable of endorsement without further detailed review being necessary by EXCOM members.   Accordingly, it is incumbent upon the Committee to ensure that the quality of analysis, research and supporting paperwork it provides to EXCOM in support of any recommendation i s sufficient for EXCOM to ratify such a recommendation without further enquiry being necessary.

8.2   In the event that a Committee recommendation is rejected by EXCOM, the Committee chairman has the right to appeal to the Board.

8.3   Decisions or recommendations of the Committee shall be decided by a majority of the members of the Committee being in favour.

# EXHIBIT B

***Status:*** *This version of this Act contains provisions that are prospective.*
***Changes to legislation:*** *There are outstanding changes not yet made by the legislation.gov.uk editorial team to Financial Services and Markets Act 2000. Any changes that have already been made by the team appear in the content and are referenced with annotations. (See end of Document for details)*



# Financial Services and Markets Act 2000

## 2000 CHAPTER 8

An Act to make provision about the regulation of financial services and markets; to provide for the transfer of certain statutory functions relating to building societies, friendly societies, industrial and provident societies and certain other mutual societies; and for connected purposes.                    [14th June 2000]

Be it enacted by the Queen's most Excellent Majesty, by and with the advice and consent of the Lords Spiritual and Temporal, and Commons, in this present Parliament assembled, and by the authority of the same, as follows:—

---

**Annotations:**

**Modifications etc. (not altering text)**

C1    Act restricted (11.8.2001) by S.I. 2001/2659, **art. 2(4)(c)**

Act excluded (1.12.2001) by S.I. 2001/2617, **arts. 2(b)**, 10(9); S.I. 2001/3538, **art. 2(1)**

Act: specified provisions excluded (1.12.2001) by S.I. 2001/2957, **arts. 1**, 13(8)(b); S.I. 2001/3538, **art. 2(1)**

Act restricted (1.12.2001) by S.I. 2001/3646, **arts. 2(7)(b)**, 4(6)(b), 6(4)(b), 7(4)(c), 8(4)(b), 9(4)(b)

Act applied (with modifications) by S.I. 1994/188, **reg. 4** (as amended (1.12.2001) by S.I. 2001/3649, **arts. 1**, 454)

C2    Act modified (18.7.2002 for certain purposes and 21.8.2002 otherwise) by The Electronic Commerce Directive (Financial Services and Markets) Regulations 2002 (S.I. 2002/1775), regs. 1, **17**

C3    Act extended (E.W.S.) (1.1.2003) by 2000 c. 39, s. 15(2); S.I. 2002/2711, **art. 2** (subject to arts. 3-5)

C4    Act: power to modify, exclude or apply conferred (N.I.) (10.8.2004) by Open-Ended Investment Companies Act (Northern Ireland) 2002 (c. 13 (N.I.)), **ss. 1(2)(l)(3)(b)(f)(4)**, 4; S.R. 2004/333, **art. 2**

C5    Act extended (18.2.2004) by The Insurers (Reorganisation and Winding Up) Regulations 2004 (S.I. 2004/353), **regs. 2(5)**, 3

C6    Act extended (5.5.2004) by The Credit Institutions (Reorganisation and Winding up) Regulations 2004 (S.I. 2004/1045), **reg. 2(5)**

C7    Act extended by The European Communities (Lawyer's Practice) Regulations 2000 (S.I. 2000/1119), reg. 14, Sch. 3 Pt. 1 (as amended (16.9.2004) by The European Communities (Lawyer's Practice) (Amendment) Regulations 2004 (S.I. 2004/1628), **reg. 6**

**Status:** This version of this Act contains provisions that are prospective.
**Changes to legislation:** There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

**C8**   Act modified (31.10.2004) by The Financial Services and Markets Act 2000 (Transitional Provisions) (Mortgages) Order 2004 (S.I. 2004/2615), arts. 1(2)(b), 5, **Sch. para. 5**

**C9**   Act modified (31.12.2004) by The Insurance Accounts Directive (Lloyd's Syndicate and Aggregate Accounts) Regulations 2004 (S.I. 2004/3219), **reg. 16(4)**

**C10**  Act modified (14.1.2005) by The Financial Services and Markets Act 2000 (Transitional Provisions) (General Insurance Intermediaries) Order 2004 (S.I. 2004/3351), arts. 1(2)(b), 5, **Sch. para. 5**

**C11**  Act restricted (E.W.) (1.3.2007) by National Health Service Act 2006 (c. 41), **ss. 71(8)**, 277

**C12**  Act modified (6.4.2007) by The Financial Services and Markets Act 2000 (Regulated Activities) (Amendment) Order 2006 (S.I. 2006/1969), arts. 1(3), 7, **Sch. para. 5**

**C13**  Act modified (30.6.2008 for certain purposes and 1.1.2009 otherwise) by The Financial Services and Markets Act 2000 (Regulated Activities) (Amendment) (No. 2) Order 2007 (S.I. 2007/3510), arts. 1(2), **8(1)(2)**, **9**

**C14**  Act modified (1.7.2009 for certain purposes and 30.6.2010 otherwise) by The Financial Services and Markets Act 2000 (Regulated Activities) (Amendment) Order 2009 (S.I. 2009/1342), arts. 1(2), 34, Sch. paras. 4, **5**

## PART I

### THE REGULATOR

**1       The Financial Services Authority.**

(1) The body corporate known as the Financial Services Authority ("the Authority") is to have the functions conferred on it by or under this Act.

(2) The Authority must comply with the requirements as to its constitution set out in Schedule 1.

(3) Schedule 1 also makes provision about the status of the Authority and the exercise of certain of its functions.

[<sup>F1</sup>(4) Section 249 of the Banking Act 2009 provides for references to functions of the Authority (whether generally or under this Act) to include references to functions conferred on the Authority by that Act (subject to any order under that section).]

**Annotations:**

**Amendments (Textual)**
**F1**   S. 1(4) added (17.2.2009 for certain purposes and 21.2.2009 otherwise) by Banking Act 2009 (c. 1), **ss. 249(4)**, 263(1) (with s. 247); S.I. 2009/296, **arts. 2, 3**, Sch. para. 9

**Modifications etc. (not altering text)**
**C15**  S. 1(3) extended (17.8.2001) by S.I. 2001/2617, arts. 2(a), 4(3), 8, **Sch. 2 para. 2**

*The Authority's general duties*

**2       The Authority's general duties.**

(1) In discharging its general functions the Authority must, so far as is reasonably possible, act in a way—

---

*Status: This version of this Act contains provisions that are prospective.*

*Changes to legislation: There are outstanding changes not yet made by the legislation.gov.uk editorial*
*team to Financial Services and Markets Act 2000. Any changes that have already been made by the*
*team appear in the content and are referenced with annotations. (See end of Document for details)*

---

    (a)   which is compatible with the regulatory objectives; and

    (b)   which the Authority considers most appropriate for the purpose of meeting those objectives.

(2) The regulatory objectives are—

    (a)   market confidence;

    [**F2**(ab)   financial stability;]

    **F3**

    (b)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

    (c)   the protection of consumers; and

    (d)   the reduction of financial crime.

(3) In discharging its general functions the Authority must have regard to—

    (a)   the need to use its resources in the most efficient and economic way;

    (b)   the responsibilities of those who manage the affairs of authorised persons;

    (c)   the principle that a burden or restriction which is imposed on a person, or on the carrying on of an activity, should be proportionate to the benefits, considered in general terms, which are expected to result from the imposition of that burden or restriction;

    (d)   the desirability of facilitating innovation in connection with regulated activities;

    (e)   the international character of financial services and markets and the desirability of maintaining the competitive position of the United Kingdom;

    (f)   the need to minimise the adverse effects on competition that may arise from anything done in the discharge of those functions;

    (g)   the desirability of facilitating competition between those who are subject to any form of regulation by the Authority.

    [**F4**(h)   the desirability of enhancing the understanding and knowledge of members of the public of financial matters (including the UK financial system).]

(4) The Authority's general functions are—

    (a)   its function of making rules under this Act (considered as a whole);

    (b)   its function of preparing and issuing codes under this Act (considered as a whole);

    (c)   its functions in relation to the giving of general guidance (considered as a whole); and

    (d)   its function of determining the general policy and principles by reference to which it performs particular functions.

(5) "General guidance" has the meaning given in section 158(5).

---

**Annotations:**

**Amendments (Textual)**
  **F2**  S. 2(2)(ab) inserted (8.4.2010) by Financial Services Act 2010 (c. 28), **ss. 1(2)**, 26(1)(a)
  **F3**  S. 2(2)(b) omitted (12.10.2010) by virtue of Financial Services Act 2010 (c. 28), **ss. 2(2)(a)**, 26(3); S.I. 2010/2480, **art. 2**
  **F4**  S. 2(3)(h) inserted (12.10.2010) by Financial Services Act 2010 (c. 28), **ss. 2(2)(b)**, 26(3); S.I. 2010/2480, **art. 2**

**Modifications etc. (not altering text)**
  **C16**  S. 2(4)(a) restricted (17.8.2001) by S.I. 2001/2617, arts. 2(a), 4(3), Sch. 2 paras. 9, **11**

***Status:*** This version of this Act contains provisions that are prospective.
***Changes to legislation:*** There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

| | |
|---|---|
| **C17** | S. 2(4)(c) restricted (17.8.2001) by S.I. 2001/2617, arts. 2(a), 4(3), **Sch. 2 paras. 13-16** |

*The regulatory objectives*

### 3        Market confidence.

(1) The market confidence objective is: maintaining confidence in [**F5**the UK financial system**]**.

(2) [**F6**In this Act "the UK financial system"**]** means the financial system operating in the United Kingdom and includes—

    (a)    financial markets and exchanges;

    (b)    regulated activities; and

    (c)    other activities connected with financial markets and exchanges.

---

**Annotations:**

**Amendments (Textual)**
    **F5**  Words in s. 3(1) substituted (8.4.2010) by Financial Services Act 2010 (c. 28), ss. 24(1), 26(1)(g)(l), **Sch. 2 para. 2(2)**
    **F6**  Words in s. 3(2) substituted (8.4.2010) by Financial Services Act 2010 (c. 28), ss. 24(1), 26(1)(g)(l), **Sch. 2 para. 2(3)**

---

### [**F7**3A    Financial stability

---

**Annotations:**

**Amendments (Textual)**
    **F7**  S. 3A inserted (8.4.2010) by Financial Services Act 2010 (c. 28), **ss. 1(3)**, 26(1)(a)

---

(1) The financial stability objective is: contributing to the protection and enhancement of the stability of the UK financial system.

(2) In considering that objective the Authority must have regard to—

    (a)    the economic and fiscal consequences for the United Kingdom of instability of the UK financial system;

    (b)    the effects (if any) on the growth of the economy of the United Kingdom of anything done for the purpose of meeting that objective; and

    (c)    the impact (if any) on the stability of the UK financial system of events or circumstances outside the United Kingdom (as well as in the United Kingdom).

(3) The Authority must, consulting the Treasury, determine and review its strategy in relation to the financial stability objective.**]**

### 4        Public awareness.

    **F8**
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

***Status:*** *This version of this Act contains provisions that are prospective.*

***Changes to legislation:*** *There are outstanding changes not yet made by the legislation.gov.uk editorial*
*team to Financial Services and Markets Act 2000. Any changes that have already been made by the*
*team appear in the content and are referenced with annotations. (See end of Document for details)*

---

**Annotations:**

**Amendments (Textual)**
**F8**   S. 4 omitted (12.10.2010) by virtue of Financial Services Act 2010 (c. 28), **ss. 2(3)**, 26(3); S.I.
2010/2480, **art. 2**

---

**5        The protection of consumers.**

(1) The protection of consumers objective is: securing the appropriate degree of protection
for consumers.

(2) In considering what degree of protection may be appropriate, the Authority must have
regard to—

    (a)    the differing degrees of risk involved in different kinds of investment or other
transaction;

    (b)    the differing degrees of experience and expertise that different consumers may
have in relation to different kinds of regulated activity;

[**F9**(ba)    any information which the consumer financial education body has provided
to the Authority in the exercise of the consumer financial education function;]

    (c)    the needs that consumers may have for advice and accurate information; and

    (d)    the general principle that consumers should take responsibility for their
decisions.

[**F10**(3) Sections 425A and 425B (meaning of "consumers") apply for the purposes of this
section.]

---

**Annotations:**

**Amendments (Textual)**
**F9**    S. 5(2)(ba) inserted (12.10.2010) by Financial Services Act 2010 (c. 28), **ss. 2(4)**, 26(3); S.I.
2010/2480, **art. 2**
**F10**   S. 5(3) substituted (8.4.2010) by Financial Services Act 2010 (c. 28), ss. 24(1), 26(1)(g)(l), **Sch. 2
para. 4**

**Modifications etc. (not altering text)**
**C18**   S. 5(3) modified (18.6.2001) by S.I. 2001/1821, **arts. 1(1)**, 3(4)

---

**6        The reduction of financial crime.**

(1) The reduction of financial crime objective is: reducing the extent to which it is possible
for a business carried on—

    (a)    by a regulated person, or

    (b)    in contravention of the general prohibition,

to be used for a purpose connected with financial crime.

(2) In considering that objective the Authority must, in particular, have regard to the
desirability of—

    (a)    regulated persons being aware of the risk of their businesses being used in
connection with the commission of financial crime;

*Financial Services and Markets Act 2000 (c. 8)*
*Part I – The Regulator*
*Document Generated  2014-04-03*

**Status:** This version of this Act contains provisions that are prospective.
**Changes to legislation:** There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

(b)  regulated persons taking appropriate measures (in relation to their administration and employment practices, the conduct of transactions by them and otherwise) to prevent financial crime, facilitate its detection and monitor its incidence;

(c)  regulated persons devoting adequate resources to the matters mentioned in paragraph (b).

(3) "Financial crime" includes any offence involving—

(a)  fraud or dishonesty;

(b)  misconduct in, or misuse of information relating to, a financial market; or

(c)  handling the proceeds of crime.

(4) "Offence" includes an act or omission which would be an offence if it had taken place in the United Kingdom.

(5) "Regulated person" means an authorised person, a recognised investment exchange or a recognised clearing house.

[*F11 Enhancing public understanding of financial matters etc*

---

**Annotations:**

**Amendments (Textual)**

F11    S. 6A and preceding cross-heading inserted (8.4.2010) by Financial Services Act 2010 (c. 28), **ss. 2(5),** 26(1)(b)

---

**6A      Enhancing public understanding of financial matters etc**

(1) The Authority must establish a body corporate ("the consumer financial education body") whose function ("the consumer financial education function") is to enhance—

(a)  the understanding and knowledge of members of the public of financial matters (including the UK financial system); and

(b)  the ability of members of the public to manage their own financial affairs.

(2) The consumer financial education function includes, in particular—

(a)  promoting awareness of the benefits of financial planning;

(b)  promoting awareness of the financial advantages and disadvantages in relation to the supply of particular kinds of goods or services;

(c)  promoting awareness of the benefits and risks associated with different kinds of financial dealing (which includes informing the Authority and other bodies of those benefits and risks);

(d)  the publication of educational materials or the carrying out of other educational activities; and

(e)  the provision of information and advice to members of the public.

(3) Schedule 1A makes further provision about the consumer financial education body.]

**Status:** *This version of this Act contains provisions that are prospective.*
**Changes to legislation:** *There are outstanding changes not yet made by the legislation.gov.uk editorial team to Financial Services and Markets Act 2000. Any changes that have already been made by the team appear in the content and are referenced with annotations. (See end of Document for details)*

*Corporate governance*

**7      Duty of Authority to follow principles of good governance.**

In managing its affairs, the Authority must have regard to such generally accepted principles of good corporate governance as it is reasonable to regard as applicable to it.

*Arrangements for consulting practitioners and consumers*

**8      The Authority's general duty to consult.**

The Authority must make and maintain effective arrangements for consulting practitioners and consumers on the extent to which its general policies and practices are consistent with its general duties under section 2.

---

**Annotations:**

**Modifications etc. (not altering text)**
   C19    S. 8 excluded (17.8.2001) by S.I. 2001/2617, arts. 2(a), 4(3), 8, **Sch. 2 para. 5**

---

**9      The Practitioner Panel.**

(1) Arrangements under section 8 must include the establishment and maintenance of a panel of persons (to be known as "the Practitioner Panel") to represent the interests of practitioners.

(2) The Authority must appoint one of the members of the Practitioner Panel to be its chairman.

(3) The Treasury's approval is required for the appointment or dismissal of the chairman.

(4) The Authority must have regard to any representations made to it by the Practitioner Panel.

(5) The Authority must appoint to the Practitioner Panel such—
   (a)   individuals who are authorised persons,
   (b)   persons representing authorised persons,
   (c)   persons representing recognised investment exchanges, and
   (d)   persons representing recognised clearing houses,
as it considers appropriate.

**10     The Consumer Panel.**

(1) Arrangements under section 8 must include the establishment and maintenance of a panel of persons (to be known as "the Consumer Panel") to represent the interests of consumers.

(2) The Authority must appoint one of the members of the Consumer Panel to be its chairman.

(3) The Treasury's approval is required for the appointment or dismissal of the chairman.

**Status:** This version of this Act contains provisions that are prospective.
**Changes to legislation:** There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

(4) The Authority must have regard to any representations made to it by the Consumer Panel.

(5) The Authority must appoint to the Consumer Panel such consumers, or persons representing the interests of consumers, as it considers appropriate.

[**F12**(5A) The Secretary of State may direct the Authority to appoint as a member of the Consumer Panel a person specified by the Secretary of State who—

    (a)  is a non-executive member of the National Consumer Council, and

    (b)  is nominated for the purposes of this subsection by the National Consumer Council after consultation with the Authority.

(5B) Only one person may, at any time, be a member of the Consumer Panel appointed in accordance with a direction under subsection (5A); but that does not prevent the Authority appointing as a member of the Consumer Panel any person who is also a member of the National Consumer Council.

(5C) A person appointed in accordance with a direction under subsection (5A) ceases to be a member of the Panel on ceasing to be a non-executive member of the National Consumer Council.]

(6) The Authority must secure that the membership of the Consumer Panel is such as to give a fair degree of representation to those who are using, or are or may be contemplating using, services otherwise than in connection with businesses carried on by them.

[**F13**(7) Sections 425A and 425B (meaning of "consumers") apply for the purposes of this section, but the references to consumers in this section do not include consumers who are authorised persons.]

---

**Annotations:**

**Amendments (Textual)**
**F12**  S. 10(5A)-(5C) inserted (21.12.2007) by Consumers, Estate Agents and Redress Act 2007 (c. 17), **ss. 39**, 66(2) (with s. 6(9)); S.I. 2007/3546, **art. 3**, Sch.
**F13**  S. 10(7) substituted (8.4.2010) by Financial Services Act 2010 (c. 28), ss. 24(1), 26(1)(g)(l), **Sch. 2 para. 5**

**Modifications etc. (not altering text)**
**C20**  S. 10(7) modified (18.6.2001) by S.I. 2001/1821, **arts. 1(1)**, 3(4)

---

**11**    **Duty to consider representations by the Panels.**

(1) This section applies to a representation made, in accordance with arrangements made under section 8, by the Practitioner Panel or by the Consumer Panel.

(2) The Authority must consider the representation.

(3) If the Authority disagrees with a view expressed, or proposal made, in the representation, it must give the Panel a statement in writing of its reasons for disagreeing.

---

**Status:** *This version of this Act contains provisions that are prospective.*
**Changes to legislation:** *There are outstanding changes not yet made by the legislation.gov.uk editorial team to Financial Services and Markets Act 2000. Any changes that have already been made by the team appear in the content and are referenced with annotations. (See end of Document for details)*

---

*Reviews*

**12**      **Reviews.**

(1) The Treasury may appoint an independent person to conduct a review of the economy, efficiency and effectiveness with which the Authority has used its resources in discharging its functions.

(2) A review may be limited by the Treasury to such functions of the Authority (however described) as the Treasury may specify in appointing the person to conduct it.

(3) A review is not to be concerned with the merits of the Authority's general policy or principles in pursuing regulatory objectives or in exercising functions under Part VI.

(4) On completion of a review, the person conducting it must make a written report to the Treasury—

    (a)    setting out the result of the review; and

    (b)    making such recommendations (if any) as he considers appropriate.

(5) A copy of the report must be—

    (a)    laid before each House of Parliament; and

    (b)    published in such manner as the Treasury consider appropriate.

(6) Any expenses reasonably incurred in the conduct of a review are to be met by the Treasury out of money provided by Parliament.

(7) "Independent" means appearing to the Treasury to be independent of the Authority.

---

**Annotations:**

**Modifications etc. (not altering text)**

**C21**   S. 12 modified (17.8.2001) by S.I. 2001/2617, arts. 2(a), 4(3), 8, **Sch. 2 para. 6**

---

**13**      **Right to obtain documents and information.**

(1) A person conducting a review under section 12—

    (a)    has a right of access at any reasonable time to all such documents as he may reasonably require for purposes of the review; and

    (b)    may require any person holding or accountable for any such document to provide such information and explanation as are reasonably necessary for that purpose.

(2) Subsection (1) applies only to documents in the custody or under the control of the Authority.

(3) An obligation imposed on a person as a result of the exercise of powers conferred by subsection (1) is enforceable by injunction or, in Scotland, by an order for specific performance under section 45 of the [M1]Court of Session Act 1988.

*Status: This version of this Act contains provisions that are prospective.*
***Changes to legislation:*** *There are outstanding changes not yet made by the legislation.gov.uk editorial team to Financial Services and Markets Act 2000. Any changes that have already been made by the team appear in the content and are referenced with annotations. (See end of Document for details)*

---

**Annotations:**

................................................................

**Marginal Citations**
 **M1**    1988 c. 36.

---

*Inquiries*

**14**      **Cases in which the Treasury may arrange independent inquiries.**

(1) This section applies in two cases.

(2) The first is where it appears to the Treasury that—

    (a)   events have occurred in relation to—

        (i) a collective investment scheme, or

        (ii) a person who is, or was at the time of the events, carrying on a regulated activity (whether or not as an authorised person),

    which posed or could have posed a grave risk to [**F14**the UK financial system] or caused or risked causing significant damage to the interests of consumers; and

    (b)   those events might not have occurred, or the risk or damage might have been reduced, but for a serious failure in—

        (i) the system established by this Act [**F15**, or by any previous statutory provision,] for the regulation of such schemes or of such persons and their activities; or

        (ii) the operation of that system.

(3) The second is where it appears to the Treasury that—

    (a)   events have occurred in relation to listed securities or an issuer of listed securities which caused or could have caused significant damage to holders of listed securities; and

    (b)   those events might not have occurred but for a serious failure [**F16** in—

        (i) the regulatory system established by Part 6 or by any previous statutory provision concerned with the official listing of securities; or

        (ii) the operation of that system.]

(4) If the Treasury consider that it is in the public interest that there should be an independent inquiry into the events and the circumstances surrounding them, they may arrange for an inquiry to be held under section 15.

[**F17**(5) Sections 425A and 425B (meaning of "consumers") apply for the purposes of this section.]

(5A) "Event" does not include any event occurring before 1st December 2001 (but no such limitation applies to the reference in subsection (4) to surrounding circumstances).

(6) **F18**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

(7) "Listed securities" means anything which has been admitted to the official list under Part VI.

**Status:** This version of this Act contains provisions that are prospective.
**Changes to legislation:** There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

---

**Annotations:**

**Amendments (Textual)**

**F14**   Words in s. 14(2)(a) substituted (8.4.2010) by Financial Services Act 2010 (c. 28), ss. 24(1), 26(1)(g)
(l), **Sch. 2 para. 6(2)**

**F15**   Words in s. 14(2)(b)(i) inserted (7.6.2005) by Inquiries Act 2005 (c. 12), **ss. 46(2)**, 51(1) (with ss. 44,
50); S.I. 2005/1432, **art. 2**

**F16**   Words in s. 14(3)(b) substituted (7.6.2005) by Inquiries Act 2005 (c. 12), **ss. 46(3)**, 51(1) (with ss. 44,
50); S.I. 2005/1432, **art. 2**

**F17**   S. 14(5) substituted (8.4.2010) by Financial Services Act 2010 (c. 28), ss. 24(1), 26(1)(g)(l), **Sch. 2
para. 6(3)**

**F18**   S. 14(6) omitted (8.4.2010) by virtue of Financial Services Act 2010 (c. 28), ss. 24(1), 26(1)(g)(l), **Sch.
2 para. 6(4)**

---

**15**      **Power to appoint person to hold an inquiry.**

(1) If the Treasury decide to arrange for an inquiry to be held under this section, they may
appoint such person as they consider appropriate to hold the inquiry.

(2) The Treasury may, by a direction to the appointed person, control—

    (a)   the scope of the inquiry;

    (b)   the period during which the inquiry is to be held;

    (c)   the conduct of the inquiry; and

    (d)   the making of reports.

(3) A direction may, in particular—

    (a)   confine the inquiry to particular matters;

    (b)   extend the inquiry to additional matters;

    (c)   require the appointed person to discontinue the inquiry or to take only such
steps as are specified in the direction;

    (d)   require the appointed person to make such interim reports as are so specified.

**16**      **Powers of appointed person and procedure.**

(1) The person appointed to hold an inquiry under section 15 may—

    (a)   obtain such information from such persons and in such manner as he thinks fit;

    (b)   make such inquiries as he thinks fit; and

    (c)   determine the procedure to be followed in connection with the inquiry.

(2) The appointed person may require any person who, in his opinion, is able to provide
any information, or produce any document, which is relevant to the inquiry to provide
any such information or produce any such document.

(3) For the purposes of an inquiry, the appointed person has the same powers as the court
in respect of the attendance and examination of witnesses (including the examination
of witnesses abroad) and in respect of the production of documents.

(4) "Court" means—

    (a)   the High Court; or

    (b)   in Scotland, the Court of Session.

*Financial Services and Markets Act 2000 (c. 8)*
*Part I – The Regulator*
*Document Generated  2014-04-03*

**Status:** This version of this Act contains provisions that are prospective.
**Changes to legislation:** There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

**17      Conclusion of inquiry.**

(1) On completion of an inquiry under section 15, the person holding the inquiry must make a written report to the Treasury—

    (a)  setting out the result of the inquiry; and

    (b)  making such recommendations (if any) as he considers appropriate.

(2) The Treasury may publish the whole, or any part, of the report and may do so in such manner as they consider appropriate.

(3) Subsection (4) applies if the Treasury propose to publish a report but consider that it contains material—

    (a)  which relates to the affairs of a particular person whose interests would, in the opinion of the Treasury, be seriously prejudiced by publication of the material; or

    (b)  the disclosure of which would be incompatible with an international obligation of the United Kingdom.

(4) The Treasury must ensure that the material is removed before publication.

(5) The Treasury must lay before each House of Parliament a copy of any report or part of a report published under subsection (2).

(6) Any expenses reasonably incurred in holding an inquiry are to be met by the Treasury out of money provided by Parliament.

**18      Obstruction and contempt.**

(1) If a person ("A")—

    (a)  fails to comply with a requirement imposed on him by a person holding an inquiry under section 15, or

    (b)  otherwise obstructs such an inquiry,

the person holding the inquiry may certify the matter to the High Court (or, in Scotland, the Court of Session).

(2) The court may enquire into the matter.

(3) If, after hearing—

    (a)  any witnesses who may be produced against or on behalf of A, and

    (b)  any statement made by or on behalf of A,

the court is satisfied that A would have been in contempt of court if the inquiry had been proceedings before the court, it may deal with him as if he were in contempt.

*Financial Services and Markets Act 2000 (c. 8)*
*Part II – Regulated And Prohibited Activities*
*Document Generated  2014-04-03*

13

**Status:** This version of this Act contains provisions that are prospective.
**Changes to legislation:** There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

# PART II

## REGULATED AND PROHIBITED ACTIVITIES

### *The general prohibition*

**19       The general prohibition.**

(1) No person may carry on a regulated activity in the United Kingdom, or purport to do so, unless he is—

    (a)   an authorised person; or

    (b)   an exempt person.

(2) The prohibition is referred to in this Act as the general prohibition.

### *Requirement for permission*

**20       Authorised persons acting without permission.**

(1) If an authorised person carries on a regulated activity in the United Kingdom, or purports to do so, otherwise than in accordance with permission—

    (a)   given to him by the Authority under Part IV, or

    (b)   resulting from any other provision of this Act,

he is to be taken to have contravened a requirement imposed on him by the Authority under this Act.

(2) The contravention does not—

    (a)   make a person guilty of an offence;

    (b)   make any transaction void or unenforceable; or

    (c)   (subject to subsection (3)) give rise to any right of action for breach of statutory duty.

(3) In prescribed cases the contravention is actionable at the suit of a person who suffers loss as a result of the contravention, subject to the defences and other incidents applying to actions for breach of statutory duty.

**Annotations:**

**Modifications etc. (not altering text)**

C22  S. 20 excluded (1.12.2001) by S.I. 2001/2636, **arts. 1(2)(b)**, 62(1)-(4); S.I. 2001/3538, **art. 2(1)**
      S. 20 applied (1.12.2001) by S.I. 2001/2636, **arts. 1(2)(b)**, 62(5); S.I. 2001/3538, **art. 2(1)**
      S. 20 modified (31.10.2001) by S.I. 2001/3374, art. 1, **Sch. para. 2**

C23  S. 20 modified (31.10.2004) by The Financial Services and Markets Act 2000 (Transitional Provisions) (Mortgages) Order 2004 (S.I. 2004/2615), arts. 1(2)(b), 5, **Sch. para. 2**

C24  S. 20 modified (14.1.2005) by The Financial Services and Markets Act 2000 (Transitional Provisions) (General Insurance Intermediaries) Order 2004 (S.I. 2004/3351), arts. 1(2)(b), 5, **Sch. para. 2**

C25  S. 20 modified (6.4.2007) by The Financial Services and Markets Act 2000 (Regulated Activities) (Amendment) Order 2006 (S.I. 2006/1969), arts. 1(3), 7, **Sch. para. 2**

C26  S. 20 modified (30.6.2008 for certain purposes, otherwise 1.1.2009) by The Financial Services and Markets Act 2000 (Regulated Activities) (Amendment) (No. 2) Order 2007 (S.I. 2007/3510), arts. 1(2), **7(1)(2)**

---

**Status:** This version of this Act contains provisions that are prospective.

**Changes to legislation:** There are outstanding changes not yet made by the legislation.gov.uk editorial team to Financial Services and Markets Act 2000. Any changes that have already been made by the team appear in the content and are referenced with annotations. (See end of Document for details)

---

**C27**   S. 20 modified (1.7.2009 for certain purposes, otherwise 30.6.2010) by The Financial Services and Markets Act 2000 (Regulated Activities) (Amendment) Order 2009 (S.I. 2009/1342), **arts. 1(2)**, 34, {Sch. paras. 1, 2}

**Commencement Information**

**I1**   S. 20 wholly in force at 1.12.2001; s. 20 not in force at Royal Assent see s. 431(2); s. 20(3) in force for certain purposes at 25.2.2001 by S.I. 2001/516, art. 2(b), **Sch. Pt. 2**; s. 20 in force in so far as not already in force at 1.12.2001 by S.I. 2001/3538, **art. 2(1)**

*Financial promotion*

**21     Restrictions on financial promotion.**

(1) A person ("A") must not, in the course of business, communicate an invitation or inducement to engage in investment activity.

(2) But subsection (1) does not apply if—

    (a)   A is an authorised person; or

    (b)   the content of the communication is approved for the purposes of this section by an authorised person.

(3) In the case of a communication originating outside the United Kingdom, subsection (1) applies only if the communication is capable of having an effect in the United Kingdom.

(4) The Treasury may by order specify circumstances in which a person is to be regarded for the purposes of subsection (1) as—

    (a)   acting in the course of business;

    (b)   not acting in the course of business.

(5) The Treasury may by order specify circumstances (which may include compliance with financial promotion rules) in which subsection (1) does not apply.

(6) An order under subsection (5) may, in particular, provide that subsection (1) does not apply in relation to communications—

    (a)   of a specified description;

    (b)   originating in a specified country or territory outside the United Kingdom;

    (c)   originating in a country or territory which falls within a specified description of country or territory outside the United Kingdom; or

    (d)   originating outside the United Kingdom.

(7) The Treasury may by order repeal subsection (3).

(8) "Engaging in investment activity" means—

    (a)   entering or offering to enter into an agreement the making or performance of which by either party constitutes a controlled activity; or

    (b)   exercising any rights conferred by a controlled investment to acquire, dispose of, underwrite or convert a controlled investment.

(9) An activity is a controlled activity if—

    (a)   it is an activity of a specified kind or one which falls within a specified class of activity; and

*Financial Services and Markets Act 2000 (c. 8)*
*Part II – Regulated And Prohibited Activities*
*Document Generated  2014-04-03*

15

**Status:** This version of this Act contains provisions that are prospective.
**Changes to legislation:** There are outstanding changes not yet made by the legislation.gov.uk editorial team to Financial Services and Markets Act 2000. Any changes that have already been made by the team appear in the content and are referenced with annotations. (See end of Document for details)

    (b)   it relates to an investment of a specified kind, or to one which falls within a specified class of investment.

(10) An investment is a controlled investment if it is an investment of a specified kind or one which falls within a specified class of investment.

(11) Schedule 2 (except paragraph 26) applies for the purposes of subsections (9) and (10) with references to section 22 being read as references to each of those subsections.

(12) Nothing in Schedule 2, as applied by subsection (11), limits the powers conferred by subsection (9) or (10).

(13) "Communicate" includes causing a communication to be made.

(14) "Investment" includes any asset, right or interest.

(15) "Specified" means specified in an order made by the Treasury.

---

**Annotations:**

**Modifications etc. (not altering text)**

| | |
|---|---|
| **C28** | S. 21(1) modified (31.10.2001) by S.I. 2001/3374, art. 1, **Sch. para. 6** |
| **C29** | S. 21(1) modified (31.10.2004) by The Financial Services and Markets Act 2000 (Transitional Provisions) (Mortgages) Order 2004 (S.I. 2004/2615), arts. 1(2)(b), 5, **Sch. para. 6** |
| **C30** | S. 21(1) modified (14.1.2005) by The Financial Services and Markets Act 2000 (Transitional Provisions) (General Insurance Intermediaries) Order 2004 (S.I. 2004/3351), arts. 1(2)(b), 5, **Sch. para. 6** |
| **C31** | S. 21(1) modified (6.4.2007) by The Financial Services and Markets Act 2000 (Regulated Activities) (Amendment) Order 2006 (S.I. 2006/1969), arts. 1(3), 7, **Sch. para. 6** |
| **C32** | S. 21(2) modified (30.6.2008 for certain purposes, otherwise 1.1.2009) by The Financial Services and Markets Act 2000 (Regulated Activities) (Amendment) (No. 2) Order 2007 (S.I. 2007/3510), arts. 1(2), **8(1)(3)** |
| **C33** | S. 21(2) modified (1.7.2009 for certain purposes, otherwise 30.6.2010) by The Financial Services and Markets Act 2000 (Regulated Activities) (Amendment) Order 2009 (S.I. 2009/1342), **arts. 1(2)**, 34, {Sch. paras. 1, 3} |

**Commencement Information**

| | |
|---|---|
| **I2** | S. 21 wholly in force at 1.12.2001; s. 21 not in force at Royal Assent see s. 431(2); s. 21 in force for certain purposes at 25.2.2001 by S.I. 2001/516, art. 2(b), **Sch. Pt. 2**; s. 21 in force in so far as not already in force at 1.12.2001 by S.I. 2001/3538, **art. 2(1)** |

---

*Regulated activities*

**22**     **The classes of activity and categories of investment.**

(1) An activity is a regulated activity for the purposes of this Act if it is an activity of a specified kind which is carried on by way of business and—

    (a)   relates to an investment of a specified kind; or

    (b)   in the case of an activity of a kind which is also specified for the purposes of this paragraph, is carried on in relation to property of any kind.

(2) Schedule 2 makes provision supplementing this section.

*Financial Services and Markets Act 2000 (c. 8)*
*Part II – Regulated And Prohibited Activities*
*Document Generated  2014-04-03*

***Status:*** *This version of this Act contains provisions that are prospective.*
***Changes to legislation:*** *There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)*

(3) Nothing in Schedule 2 limits the powers conferred by subsection (1).

(4) "Investment" includes any asset, right or interest.

(5) "Specified" means specified in an order made by the Treasury.

---

**Annotations:**

**Modifications etc. (not altering text)**

**C34**  S. 22 applied (1.9.2002) by 1974 c. 39, **s. 16(6E)(a)** (as inserted (1.9.2002) by 2001/544, arts. 2(2)(b),
90(2))

Case 1:13-md-02481-PAE Document 387-1 Filed 05/23/14 Page 24 of 86

314
*Financial Services and Markets Act 2000 (c. 8)*
*Part XVIII – Recognised Investment Exchanges and Clearing Houses*
*Chapter VI – Investigations*
*Document Generated 2014-04-03*

***Status:*** *This version of this Act contains provisions that are prospective.*

***Changes to legislation:*** *There are outstanding changes not yet made by the legislation.gov.uk editorial team to Financial Services and Markets Act 2000. Any changes that have already been made by the team appear in the content and are referenced with annotations. (See end of Document for details)*

# PART XVIII

## RECOGNISED INVESTMENT EXCHANGES AND CLEARING HOUSES

---

**Annotations:**

**Modifications etc. (not altering text)**

**C505** Pt. 18 applied in part (with modifications) (12.12.2011) by (The Recognised Auction Platforms Regulations 2011 (S.I. 2011/2699), **reg. 7**, Sch. 2

---

---

*Status:* This version of this Act contains provisions that are prospective.
*Changes to legislation:* There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

---

# CHAPTER I

## EXEMPTION

### *General*

**285    Exemption for recognised investment exchanges and clearing houses.**

(1) In this Act—

   (a)   "recognised investment exchange" means an investment exchange in relation
         to which a recognition order is in force; and

   (b)   "recognised clearing house" means a clearing house in relation to which a
         recognition order is in force.

(2) A recognised investment exchange is exempt from the general prohibition as respects
    any regulated activity—

   (a)   which is carried on as a part of the exchange's business as an investment
         exchange; or

   (b)   which is carried on for the purposes of, or in connection with, the provision
         of clearing services by the exchange.

(3) A recognised clearing house is exempt from the general prohibition as respects any
    regulated activity which is carried on for the purposes of, or in connection with, the
    provision of clearing services by the clearing house.

**286    Qualification for recognition.**

(1) The Treasury may make regulations setting out the requirements—

   (a)   which must be satisfied by an investment exchange or clearing house if it is to
         qualify as a body in respect of which the Authority may make a recognition
         order under this Part; and

   (b)   which, if a recognition order is made, it must continue to satisfy if it is to
         remain a recognised body.

(2) But if regulations contain provision as to the default rules of an investment exchange
    or clearing house, or as to proceedings taken under such rules by such a body, they
    require the approval of the Secretary of State.

(3) "Default rules" means rules of an investment exchange or clearing house which
    provide for the taking of action in the event of a person's appearing to be unable, or
    likely to become unable, to meet his obligations in respect of one or more market
    contracts connected with the exchange or clearing house.

(4) "Market contract" means—

   (a)   a contract to which Part VII of the [M33]Companies Act 1989 applies as a result
         of section 155 of that Act or a contract to which Part V of the [M34]Companies
         (No. 2)(Northern Ireland) Order 1990 applies as a result of Article 80 of that
         Order; and

   (b)   such other kind of contract as may be prescribed.

[[F398](4A) If regulations under subsection (1) require an investment exchange to make
    information available to the public in accordance with—

316

*Financial Services and Markets Act 2000 (c. 8)*
*Part XVIII – Recognised Investment Exchanges and Clearing Houses*
*Chapter I – Exemption*
*Document Generated 2014-04-03*

*Status:* This version of this Act contains provisions that are prospective.
*Changes to legislation:* There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

> (a)  Article 29.1 of the markets in financial instruments directive and the Commission Regulation, or
>
> (b)  Article 44.1 of that directive and that Regulation,

> the regulations may authorise the Authority to waive the requirement in the circumstances specified in the relevant provisions.

(4B) The "relevant provisions" for the purposes of subsection (4A) are—

> (a)  in a case falling within paragraph (a) of that subsection, Article 29.2 of the markets in financial instruments directive and the Commission Regulation, and
>
> (b)  in a case falling within paragraph (b) of that subsection, Article 44.2 of that directive and that Regulation.

(4C) If regulations under subsection (1) require an investment exchange to make information available to the public in accordance with—

> (a)  Article 30.1 of the markets in financial instruments directive and the Commission Regulation, or
>
> (b)  Article 45.1 of that directive and that Regulation,

> the regulations may authorise the Authority to defer the requirement in the circumstances specified, and subject to the requirements contained, in the relevant provisions.

(4D) The "relevant provisions" for the purposes of subsection (4C) are—

> (a)  in a case falling within paragraph (a) of that subsection, Article 30.2 of the markets in financial instruments directive and the Commission Regulation, and
>
> (b)  in a case falling within paragraph (b) of that subsection, Article 45.2 of that directive and that Regulation.

(4E) "The Commission Regulation" means Commission Regulation 1287/2006 of 10 August 2006.]

(5) Requirements resulting from this section are referred to in this Part as "recognition requirements".

[**F399**(6) In the case of an investment exchange, requirements resulting from this section are in addition to requirements which must be satisfied by the exchange as a result of section 290(1A) before the Authority may make a recognition order declaring the exchange to be a recognised investment exchange.]

**Annotations:**

**Amendments (Textual)**
**F398**  S. 286(4A)-(4E) inserted (6.12.2006) by The Financial Services and Markets Act 2000 (Markets in Financial Instruments) (Modification of Powers) Regulations 2006 (S.I. 2006/2975), **reg. 8**
**F399**  S. 286(6) inserted (1.4.2007 for certain purposes and 1.11.2007 otherwise) by The Financial Services and Markets Act 2000 (Markets in Financial Instruments) Regulations 2007 (S.I. 2007/126), regs. 1(2), 3(2), **Sch. 2 para. 2**

**Marginal Citations**
**M33**  1989 c. 40.
**M34**  S.I. 1990/1504 (N.I. 10).

---

*Status:* This version of this Act contains provisions that are prospective.

*Changes to legislation:* There are outstanding changes not yet made by the legislation.gov.uk editorial team to Financial Services and Markets Act 2000. Any changes that have already been made by the team appear in the content and are referenced with annotations. (See end of Document for details)

---

*Applications for recognition*

## 287    Application by an investment exchange.

(1) Any body corporate or unincorporated association may apply to the Authority for an order declaring it to be a recognised investment exchange for the purposes of this Act.

(2) The application must be made in such manner as the Authority may direct and must be accompanied by—

    (a)    a copy of the applicant's rules;

    (b)    a copy of any guidance issued by the applicant;

    (c)    the required particulars; and

    (d)    such other information as the Authority may reasonably require for the purpose of determining the application.

(3) The required particulars are—

    (a)    particulars of any arrangements which the applicant has made, or proposes to make, for the provision of clearing services in respect of transactions effected on the exchange;

    (b)    if the applicant proposes to provide clearing services in respect of transactions other than those effected on the exchange, particulars of the criteria which the applicant will apply when determining to whom it will provide those services [F400,

    (c)    a programme of operations which includes the types of business the applicant proposes to undertake and the applicant's proposed organisational structure;

    (d)    such particulars of the persons who effectively direct the business and operations of the exchange as the Authority may reasonably require;

    (e)    such particulars of the ownership of the exchange, and in particular of the identity and scale of interests of the persons who are in a position to exercise significant influence over the management of the exchange, whether directly or indirectly, as the Authority may reasonably require.]

[F401(4) Subsection (3)(c) to (e) does not apply to an application by an overseas applicant.]

---

**Annotations:**

**Amendments (Textual)**

F400    S. 287(3)(c)-(e) inserted (1.4.2007 for certain purposes and 1.11.2007 otherwise) by The Financial Services and Markets Act 2000 (Markets in Financial Instruments) Regulations 2007 (S.I. 2007/126), regs. 1(2), 3(2), **Sch. 2 para. 3(a)**

F401    S. 287(4) inserted (1.4.2007 for certain purposes and 1.11.2007 otherwise) by The Financial Services and Markets Act 2000 (Markets in Financial Instruments) Regulations 2007 (S.I. 2007/126), regs. 1(2), 3(2), **Sch. 2 para. 3(b)**

**Commencement Information**

I83    S. 287 wholly in force at 3.9.2001; s. 287 not in force at Royal Assent see s. 431(2); s. 287(2) in force for specified purposes at 18.6.2001 by S.I. 2001/1820, art. 2, **Sch.**; s. 287 in so far as not already in force at 3.9.2001 by S.I. 2001/2632, art. 2, **Sch. Pt. 2**

*Financial Services and Markets Act 2000 (c. 8)*
*Part XVIII – Recognised Investment Exchanges and Clearing Houses*
*Chapter I – Exemption*
*Document Generated  2014-04-03*

**Status:** This version of this Act contains provisions that are prospective.
**Changes to legislation:** There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

**288    Application by a clearing house.**

(1) Any body corporate or unincorporated association may apply to the Authority for an order declaring it to be a recognised clearing house for the purposes of this Act.

(2) The application must be made in such manner as the Authority may direct and must be accompanied by—

　　(a)    a copy of the applicant's rules;

　　(b)    a copy of any guidance issued by the applicant;

　　(c)    the required particulars; and

　　(d)    such other information as the Authority may reasonably require for the purpose of determining the application.

(3) The required particulars are—

　　(a)    if the applicant makes, or proposes to make, clearing arrangements with a recognised investment exchange, particulars of those arrangements;

　　(b)    if the applicant proposes to provide clearing services for persons other than recognised investment exchanges, particulars of the criteria which it will apply when determining to whom it will provide those services.

---

**Annotations:**

**Commencement Information**

I84     S. 288 wholly in force at 3.9.2001; s. 288 not in force at Royal Assent see s. 431(2); s. 288(2) in force for specified purposes at 18.6.2001 by S.I. 2001/1820, art. 2, **Sch.**; s. 288 in force in so far as not already in force at 3.9.2001 by S.I. 2001/2632, **art. 2 Sch. Pt. 2**

---

**289    Applications: supplementary.**

(1) At any time after receiving an application and before determining it, the Authority may require the applicant to provide such further information as it reasonably considers necessary to enable it to determine the application.

(2) Information which the Authority requires in connection with an application must be provided in such form, or verified in such manner, as the Authority may direct.

(3) Different directions may be given, or requirements imposed, by the Authority with respect to different applications.

**290    Recognition orders.**

(1) If it appears to the Authority that the applicant satisfies the recognition requirements applicable in its case, the Authority may make a recognition order declaring the applicant to be—

　　(a)    a recognised investment exchange, if the application is made under section 287;

　　(b)    a recognised clearing house, if it is made under section 288.

[^F402^](1A) In the case of an application for an order declaring the applicant to be a recognised investment exchange, the reference in subsection (1) to the recognition requirements applicable in its case includes a reference to requirements contained in any directly

*Financial Services and Markets Act 2000 (c. 8)*
*Part XVIII – Recognised Investment Exchanges and Clearing Houses*
*Chapter I – Exemption*
*Document Generated  2014-04-03*

319

*Status: This version of this Act contains provisions that are prospective.*
*Changes to legislation: There are outstanding changes not yet made by the legislation.gov.uk editorial*
*team to Financial Services and Markets Act 2000. Any changes that have already been made by the*
*team appear in the content and are referenced with annotations. (See end of Document for details)*

applicable Community regulation made under the markets in financial instruments directive.

(1B) In the case mentioned in subsection (1A), the application must be determined by the Authority before the end of the period of six months beginning with the date on which it receives the completed application.

(1C) Subsection (1B) does not apply in the case of an application by an overseas applicant.]

(2) The Treasury's approval of the making of a recognition order is required under section 307.

(3) In considering an application, the Authority may have regard to any information which it considers is relevant to the application.

(4) A recognition order must specify a date on which it is to take effect.

(5) Section 298 has effect in relation to a decision to refuse to make a recognition order—

(a) as it has effect in relation to a decision to revoke such an order; and

(b) as if references to a recognised body were references to the applicant.

(6) Subsection (5) does not apply in a case in which the Treasury have failed to give their approval under section 307.

---

**Annotations:**

**Amendments (Textual)**

**F402** S. 290(1A)-(1C) inserted (1.4.2007 for certain purposes and 1.11.2007 otherwise) by The Financial Services and Markets Act 2000 (Markets in Financial Instruments) Regulations 2007 (S.I. 2007/126), regs. 1(2), 3(2), **Sch. 2 para. 4**

**Commencement Information**

**I85** S. 290 wholly in force at 1.12.2001; s. 290 not in force at Royal Assent see s. 431(2); s. 290 in force for specified purposes at 3.9.2001 by S.I. 2001/2632, art. 2(2), **Sch. Pt. 2**; s. 290 in force in so far as not already in force at 1.12.2001 by S.I. 2001/3538, **art. 2(1)**

---

[F403**290A Refusal of recognition on ground of excessive regulatory provision**

---

**Annotations:**

**Amendments (Textual)**

**F403** S. 290A inserted (20.12.2006) by Investment Exchanges and Clearing Houses Act 2006 (c. 55), **ss. 4**, 5(2)

---

(1) The Authority must not make a recognition order if it appears to the Authority that an existing or proposed regulatory provision of the applicant in connection with—

(a) the applicant's business as an investment exchange, or

(b) the provision by the applicant of clearing services,

imposes or will impose an excessive requirement on the persons affected (directly or indirectly) by it.

(2) The reference in section 290(1) (making of recognition order) to satisfying the applicable recognition requirements shall be read accordingly.

320

*Financial Services and Markets Act 2000 (c. 8)*
*Part XVIII – Recognised Investment Exchanges and Clearing Houses*
*Chapter I – Exemption*
*Document Generated  2014-04-03*

---

*Status: This version of this Act contains provisions that are prospective.*
*Changes to legislation: There are outstanding changes not yet made by the legislation.gov.uk editorial*
*team to Financial Services and Markets Act 2000. Any changes that have already been made by the*
*team appear in the content and are referenced with annotations. (See end of Document for details)*

---

(3) Expressions used in subsection (1) above that are defined for the purposes of section 300A (power of Authority to disallow excessive regulatory provision) have the same meaning as in that section.

(4) The provisions of section 300A(3) and (4) (determination whether regulatory provision excessive) apply for the purposes of this section as for the purposes of section 300A.

(5) Section 298 has effect in relation to a decision under this section to refuse a recognition order—

    (a)   as it has effect in relation to a decision to revoke such an order, and

    (b)   as if references to a recognised body were references to the applicant.

(6) This section does not apply to an application for recognition as an overseas investment exchange or overseas clearing house.]

## 291    Liability in relation to recognised body's regulatory functions.

(1) A recognised body and its officers and staff are not to be liable in damages for anything done or omitted in the discharge of the recognised body's regulatory functions unless it is shown that the act or omission was in bad faith.

(2) But subsection (1) does not prevent an award of damages made in respect of an act or omission on the ground that the act or omission was unlawful as a result of section 6(1) of the [M35]Human Rights Act 1998.

(3) "Regulatory functions" means the functions of the recognised body so far as relating to, or to matters arising out of, the obligations to which the body is subject under or by virtue of this Act.

---

**Annotations:**

**Modifications etc. (not altering text)**
**C506** S. 291 modified (22.2.2008) by The Northern Rock plc Transfer Order 2008 (S.I. 2008/432), **art. 20**
**C507** S. 291 modified (29.9.2008 at 8.00 a.m.) by The Bradford & Bingley plc Transfer of Securities and Property etc. Order 2008 (S.I. 2008/2546), **art. 39**

**Marginal Citations**
**M35** 1998 c. 42.

---

## 292    Overseas investment exchanges and overseas clearing houses.

(1) An application under section 287 or 288 by an overseas applicant must contain the address of a place in the United Kingdom for the service on the applicant of notices or other documents required or authorised to be served on it under this Act.

(2) If it appears to the Authority that an overseas applicant satisfies the requirements of subsection (3) it may make a recognition order declaring the applicant to be—

    (a)   a recognised investment exchange;

    (b)   a recognised clearing house.

(3) The requirements are that—

*Financial Services and Markets Act 2000 (c. 8)*
*Part XVIII – Recognised Investment Exchanges and Clearing Houses*
*Chapter I – Exemption*
*Document Generated  2014-04-03*

321

*Status:* This version of this Act contains provisions that are prospective.
*Changes to legislation:* There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

(a)   investors are afforded protection equivalent to that which they would be afforded if the body concerned were required to comply with recognition requirements [**F404**, other than any such requirements which are expressed in regulations under section 286 not to apply for the purposes of this paragraph**]**;

(b)   there are adequate procedures for dealing with a person who is unable, or likely to become unable, to meet his obligations in respect of one or more market contracts connected with the investment exchange or clearing house;

(c)   the applicant is able and willing to co-operate with the Authority by the sharing of information and in other ways;

(d)   adequate arrangements exist for co-operation between the Authority and those responsible for the supervision of the applicant in the country or territory in which the applicant's head office is situated.

(4) In considering whether it is satisfied as to the requirements mentioned in subsection (3) (a) and (b), the Authority is to have regard to—

(a)   the relevant law and practice of the country or territory in which the applicant's head office is situated;

(b)   the rules and practices of the applicant.

(5) In relation to an overseas applicant and a body or association declared to be a recognised investment exchange or recognised clearing house by a recognition order made by virtue of subsection (2)—

(a)   the reference in section 313(2) to recognition requirements is to be read as a reference to matters corresponding to the matters in respect of which provision is made in the recognition requirements;

(b)   sections 296(1) and 297(2) have effect as if the requirements mentioned in section 296(1)(a) and section 297(2)(a) were those of subsection (3)(a), (b), and (c) of this section;

(c)   section 297(2) has effect as if the grounds on which a recognition order may be revoked under that provision included the ground that in the opinion of the Authority arrangements of the kind mentioned in subsection (3)(d) no longer exist.

---

**Annotations:**

**Amendments (Textual)**
**F404**   Words in s. 292(3)(a) inserted (6.12.2006) by The Financial Services and Markets Act 2000 (Markets in Financial Instruments) (Modification of Powers) Regulations 2006 (S.I. 2006/2975), **reg. 9**

**Commencement Information**
**I86**   S. 292 wholly in force at 1.12.2001; s. 292 not in force at Royal Assent see s. 431(2); s. 292(1) in force and s. 292(2)-(5) in force specified purposes at 3.9.2001 by S.I. 2001/2632, art. 2(2), **Sch. Pt. 2**; s. 292 in force in so far as not already in force at 1.12.2001 by S.I. 2001/3538, **art. 2(1)**

322

*Financial Services and Markets Act 2000 (c. 8)*
*Part XVIII – Recognised Investment Exchanges and Clearing Houses*
*Chapter I – Exemption*
*Document Generated  2014-04-03*

**Status:** *This version of this Act contains provisions that are prospective.*
**Changes to legislation:** *There are outstanding changes not yet made by the legislation.gov.uk editorial*
*team to Financial Services and Markets Act 2000. Any changes that have already been made by the*
*team appear in the content and are referenced with annotations. (See end of Document for details)*

[F405*Publication of information by recognised investment exchange*

| Annotations: |
| --- |
| **Amendments (Textual)** <br> **F405**  S. 292A and cross-heading inserted (1.4.2007 for certain purposes and 1.11.2007 otherwise) by The Financial Services and Markets Act 2000 (Markets in Financial Instruments) Regulations 2007 (S.I. 2007/126), regs. 1(2), 3(2), **Sch. 2 para. 5** |

### 292A     Publication of information by recognised investment exchange

(1) A recognised investment exchange must as soon as practicable after a recognition order is made in respect of it publish such particulars of the ownership of the exchange as the Authority may reasonably require.

(2) The particulars published under subsection (1) must include particulars of the identity and scale of interests of the persons who are in a position to exercise significant influence over the management of the exchange, whether directly or indirectly.

(3) If an ownership transfer takes place in relation to a recognised investment exchange, the exchange must as soon as practicable after becoming aware of the transfer publish such particulars relating to the transfer as the Authority may reasonably require.

(4) "Ownership transfer", in relation to an exchange, means a transfer of ownership which gives rise to a change in the persons who are in a position to exercise significant influence over the management of the exchange, whether directly or indirectly.

(5) A recognised investment exchange must publish such particulars of any decision it makes to suspend or remove a financial instrument from trading on a regulated market operated by it as the Authority may reasonably require.

(6) The Authority may determine the manner of publication under subsections (1), (3) and (5) and the timing of publication under subsection (5).

(7) This section does not apply to an overseas investment exchange.]

*Supervision*

### 293     Notification requirements.

(1) The Authority may make rules requiring a recognised body to give it—
    (a)   notice of such events relating to the body as may be specified; and
    (b)   such information in respect of those events as may be specified.

(2) The rules may also require a recognised body to give the Authority, at such times or in respect of such periods as may be specified, such information relating to the body as may be specified.

(3) An obligation imposed by the rules extends only to a notice or information which the Authority may reasonably require for the exercise of its functions under this Act.

(4) The rules may require information to be given in a specified form and to be verified in a specified manner.

*Financial Services and Markets Act 2000 (c. 8)*
*Part XVIII – Recognised Investment Exchanges and Clearing Houses*
*Chapter I – Exemption*
*Document Generated 2014-04-03*

323

*Status: This version of this Act contains provisions that are prospective.*
*Changes to legislation: There are outstanding changes not yet made by the legislation.gov.uk editorial*
*team to Financial Services and Markets Act 2000. Any changes that have already been made by the*
*team appear in the content and are referenced with annotations. (See end of Document for details)*

(5) If a recognised body—

    (a)   alters or revokes any of its rules or guidance, or

    (b)   makes new rules or issues new guidance,

it must give written notice to the Authority without delay.

(6) If a recognised investment exchange makes a change—

    (a)   in the arrangements it makes for the provision of clearing services in respect of transactions effected on the exchange, or

    (b)   in the criteria which it applies when determining to whom it will provide clearing services,

it must give written notice to the Authority without delay.

(7) If a recognised clearing house makes a change—

    (a)   in the recognised investment exchanges for whom it provides clearing services, or

    (b)   in the criteria which it applies when determining to whom (other than recognised investment exchanges) it will provide clearing services,

it must give written notice to the Authority without delay.

(8) Subsections (5) to (7) do not apply to an overseas investment exchange or an overseas clearing house.

(9) "Specified" means specified in the Authority's rules.

---

**Annotations:**

**Commencement Information**

**I87**  S. 293 wholly in force at 1.12.2001; s. 293 not in force at Royal Assent see s. 431(2); s. 293 in force for specified purposes at 18.6.2001 by S.I. 2001/1820, art. 2, **Sch.**; s. 293 in force in so far as not already in force at 1.12.2001 by S.I. 2001/3538, **art. 2(1)**

---

[<sup>F406</sup>**293A** **Information: compliance of recognised investment exchanges with directly applicable Community regulations**

---

**Annotations:**

**Amendments (Textual)**

**F406**  S. 293A inserted (1.4.2007 for certain purposes and 1.11.2007 otherwise) by The Financial Services and Markets Act 2000 (Markets in Financial Instruments) Regulations 2007 (S.I. 2007/126), regs. 1(2), 3(2), **Sch. 2 para. 6**

---

The Authority may require a recognised investment exchange to give the Authority such information as it reasonably requires in order to satisfy itself that the exchange is complying with any directly applicable Community regulation made under the markets in financial instruments directive.]

**294**   **Modification or waiver of rules.**

(1) The Authority may, on the application or with the consent of a recognised body, direct that rules made under section 293 or 295—

324

*Financial Services and Markets Act 2000 (c. 8)*
*Part XVIII – Recognised Investment Exchanges and Clearing Houses*
*Chapter I – Exemption*
*Document Generated  2014-04-03*

---

*Status:* This version of this Act contains provisions that are prospective.
*Changes to legislation:* There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

---

    (a)   are not to apply to the body; or

    (b)   are to apply to the body with such modifications as may be specified in the direction.

(2) An application must be made in such manner as the Authority may direct.

(3) Subsections (4) to (6) apply to a direction given under subsection (1).

(4) The Authority may not give a direction unless it is satisfied that—

    (a)   compliance by the recognised body with the rules, or with the rules as unmodified, would be unduly burdensome or would not achieve the purpose for which the rules were made; and

    (b)   the direction would not result in undue risk to persons whose interests the rules are intended to protect.

(5) A direction may be given subject to conditions.

(6) The Authority may—

    (a)   revoke a direction; or

    (b)   vary it on the application, or with the consent, of the recognised body to which it relates.

---

**Annotations:**

**Modifications etc. (not altering text)**
**C508** S. 294 amended (*temp.* from 3.9.2001 to 1.12.2001) by S.I. 2001/2659, **arts. 1(2)**, 3(10); S.I. 2001/3538, **art. 2(1)**

**Commencement Information**
**I88** S. 294 wholly in force at 3.9.2001; s. 294 not in force at Royal Assent see s. 431(2); s. 294(2) in force for specified purposes at 18.6.2001 by S.I. 2001/1820, art. 2, **Sch.**; s. 294 in force in so far as not already in force at 3.9.2001 by S.I. 2001/2632, **art. 2 Sch. Pt. 2**

---

**295    Notification: overseas investment exchanges and overseas clearing houses.**

(1) At least once a year, every overseas investment exchange and overseas clearing house must provide the Authority with a report.

(2) The report must contain a statement as to whether any events have occurred which are likely—

    (a)   to affect the Authority's assessment of whether it is satisfied as to the requirements set out in section 292(3); or

    (b)   to have any effect on competition.

(3) The report must also contain such information as may be specified in rules made by the Authority.

(4) The investment exchange or clearing house must provide the Treasury and the [[F407]OFT] with a copy of the report.

*Financial Services and Markets Act 2000 (c. 8)*
*Part XVIII – Recognised Investment Exchanges and Clearing Houses*
*Chapter I – Exemption*
*Document Generated  2014-04-03*

325

**Status:** This version of this Act contains provisions that are prospective.
**Changes to legislation:** There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

---

**Annotations:**

**Amendments (Textual)**
**F407**  Words in s. 295 substituted (1.4.2003) by Enterprise Act 2002 (c. 40), ss. 278, 279, **Sch. 25 para. 40(9)**; S.I. 2003/766, **art. 2**, Sch. (with art. 3)

**Commencement Information**
**I89**  S. 295 wholly in force at 1.12.2001; s. 295 not in force at Royal Assent see s. 431(2); s. 295 in force for specified purposes at 18.6.2001 by S.I. 2001/1820, art. 2, **Sch.**; s. 295 in force in so far as not already in force at 1.12.2001 by S.I. 2001/3538, **art. 2(1)**

---

**296   Authority's power to give directions.**

(1) This section applies if it appears to the Authority that a recognised body—

    (a)  has failed, or is likely to fail, to satisfy the recognition requirements; or

    (b)  has failed to comply with any other obligation imposed on it by or under this Act.

[**F408**(1A) This section also applies in the case of a recognised body which is a recognised investment exchange if it appears to the Authority that the body has failed, or is likely to fail, to comply with any obligation imposed on it by any directly applicable Community regulation made under the markets in financial instruments directive.]

(2) The Authority may direct the body to take specified steps for the purpose of securing the body's compliance with—

    (a)  the recognition requirements; or

    (b)  any obligation of the kind in question.

[**F409**(2A) In the case of a recognised investment exchange other than an overseas investment exchange, those steps may include—

    (a)  the granting to the Authority of access to the premises of the exchange for the purpose of inspecting—

        (i) those premises; or

        (ii) any documents on the premises which appear to the Authority to be relevant for the purpose mentioned in subsection (2);

    (b)  the suspension of the carrying on of any regulated activity by the exchange for the period specified in the direction.]

(3) A direction under this section is enforceable, on the application of the Authority, by an injunction or, in Scotland, by an order for specific performance under section 45 of the **M36**Court of Session Act 1988.

(4) The fact that a rule made by a recognised body has been altered in response to a direction given by the Authority does not prevent it from being subsequently altered or revoked by the recognised body.

326

*Financial Services and Markets Act 2000 (c. 8)*
*Part XVIII – Recognised Investment Exchanges and Clearing Houses*
*Chapter I – Exemption*
*Document Generated  2014-04-03*

*Status:* This version of this Act contains provisions that are prospective.
*Changes to legislation:* There are outstanding changes not yet made by the legislation.gov.uk editorial team to Financial Services and Markets Act 2000. Any changes that have already been made by the team appear in the content and are referenced with annotations. (See end of Document for details)

---

**Annotations:**

**Amendments (Textual)**
**F408** S. 296(1A) inserted (1.4.2007 for certain purposes and 1.11.2007 otherwise) by The Financial Services and Markets Act 2000 (Markets in Financial Instruments) Regulations 2007 (S.I. 2007/126), regs. 1(2), 3(2), **Sch. 2 para. 7(a)**
**F409** S. 296(2A) inserted (1.4.2007 for certain purposes and 1.11.2007 otherwise) by The Financial Services and Markets Act 2000 (Markets in Financial Instruments) Regulations 2007 (S.I. 2007/126), regs. 1(2), 3(2), **Sch. 2 para. 7(b)**

**Modifications etc. (not altering text)**
**C509** S. 296 amended (*temp.* from 3.9.2001 to 1.12.2001) by S.I. 2001/2659, **arts. 1(2)**, 3(11); S.I. 2001/3538, **art. 2(1)**

**Marginal Citations**
**M36** 1988 c. 36.

---

## 297    Revoking recognition.

(1) A recognition order may be revoked by an order made by the Authority at the request, or with the consent, of the recognised body concerned.

(2) If it appears to the Authority that a recognised body—

    (a)    is failing, or has failed, to satisfy the recognition requirements, or

    (b)    is failing, or has failed, to comply with any other obligation imposed on it by or under this Act,

it may make an order revoking the recognition order for that body even though the body does not wish the order to be made.

[**F410**(2A) If it appears to the Authority that a recognised body which is a recognised investment exchange—

    (a)    has not carried on the business of an investment exchange during the period of twelve months beginning with the day on which the recognition order took effect in relation to it,

    (b)    has not carried on the business of an investment exchange at any time during the period of six months ending with the relevant day, or

    (c)    has failed, or is likely to fail, to comply with any obligation imposed on it by a directly applicable Community regulation made under the markets in financial instruments directive,

it may make an order revoking the recognition order for that body even though the body does not wish the order to be made.

(2B) The "relevant day", for the purposes of paragraph (b) of subsection (2A), is the day on which the power to make an order under that subsection is exercised.

(2C) Subsection (2A) does not apply to an overseas investment exchange.]

(3) An order under this section ("a revocation order") must specify the date on which it is to take effect.

*Financial Services and Markets Act 2000 (c. 8)*
*Part XVIII – Recognised Investment Exchanges and Clearing Houses*
*Chapter I – Exemption*
*Document Generated  2014-04-03*

327

---

**Status:** *This version of this Act contains provisions that are prospective.*
**Changes to legislation:** *There are outstanding changes not yet made by the legislation.gov.uk editorial*
*team to Financial Services and Markets Act 2000. Any changes that have already been made by the*
*team appear in the content and are referenced with annotations. (See end of Document for details)*

---

(4) In the case of a revocation order made under subsection (2) [**F411**or (2A)**]**, the specified date must not be earlier than the end of the period of three months beginning with the day on which the order is made.

(5) A revocation order may contain such transitional provisions as the Authority thinks necessary or expedient.

---

**Annotations:**

**Amendments (Textual)**
**F410** S. 297(2A)-(2C) inserted (1.4.2007 for certain purposes and 1.11.2007 otherwise) by The Financial Services and Markets Act 2000 (Markets in Financial Instruments) Regulations 2007 (S.I. 2007/126), regs. 1(2), 3(2), **Sch. 2 para. 8(a)**
**F411** Words in s. 297(4) inserted (1.4.2007 for certain purposes and 1.11.2007 otherwise) by The Financial Services and Markets Act 2000 (Markets in Financial Instruments) Regulations 2007 (S.I. 2007/126), regs. 1(2), 3(2), **Sch. 2 para. 8(b)**

**Modifications etc. (not altering text)**
**C510** S. 297 amended (*temp.* from 3.9.2001 to 1.12.2001) by S.I. 2001/2659, **arts. 1(2)**, 3(11); S.I. 2001/3538, **art. 2(1)**

---

**298    Directions and revocation: procedure.**

(1) Before giving a direction under section 296, or making a revocation order under section 297(2) [**F412**or (2A)**]**, the Authority must—
   (a)   give written notice of its intention to do so to the recognised body concerned;
   (b)   take such steps as it considers reasonably practicable to bring the notice to the attention of members (if any) of that body; and
   (c)   publish the notice in such manner as it thinks appropriate for bringing it to the attention of other persons who are, in its opinion, likely to be affected.

(2) A notice under subsection (1) must—
   (a)   state why the Authority intends to give the direction or make the order; and
   (b)   draw attention to the right to make representations conferred by subsection (3).

(3) Before the end of the period for making representations—
   (a)   the recognised body,
   (b)   any member of that body, and
   (c)   any other person who is likely to be affected by the proposed direction or revocation order,
may make representations to the Authority.

(4) The period for making representations is—
   (a)   two months beginning—
      (i) with the date on which the notice is served on the recognised body; or
      (ii) if later, with the date on which the notice is published; or
   (b)   such longer period as the Authority may allow in the particular case.

(5) In deciding whether to—
   (a)   give a direction, or

328

*Financial Services and Markets Act 2000 (c. 8)*
*Part XVIII – Recognised Investment Exchanges and Clearing Houses*
*Chapter I – Exemption*
*Document Generated  2014-04-03*

***Status:*** *This version of this Act contains provisions that are prospective.*
***Changes to legislation:*** *There are outstanding changes not yet made by the legislation.gov.uk editorial*
*team to Financial Services and Markets Act 2000. Any changes that have already been made by the*
*team appear in the content and are referenced with annotations. (See end of Document for details)*

    (b)   make a revocation order,

the Authority must have regard to any representations made in accordance with subsection (3).

(6) When the Authority has decided whether to give a direction under section 296 or to make the proposed revocation order, it must—

    (a)   give the recognised body written notice of its decision; and

    (b)   if it has decided to give a direction or make an order, take such steps as it considers reasonably practicable for bringing its decision to the attention of members of the body or of other persons who are, in the Authority's opinion, likely to be affected.

(7) If the Authority considers it essential to do so, it may give a direction under section 296 —

    (a)   without following the procedure set out in this section; or

    (b)   if the Authority has begun to follow that procedure, regardless of whether the period for making representations has expired.

(8) If the Authority has, in relation to a particular matter, followed the procedure set out in subsections (1) to (5), it need not follow it again if, in relation to that matter, it decides to take action other than that specified in its notice under subsection (1).

---

**Annotations:**

**Amendments (Textual)**

**F412**  Words in s. 298(1) inserted (1.4.2007 for certain purposes and 1.11.2007 otherwise) by The Financial Services and Markets Act 2000 (Markets in Financial Instruments) Regulations 2007 (S.I. 2007/126), regs. 1(2), 3(2), **Sch. 2 para. 9**

**Modifications etc. (not altering text)**

**C511**  S. 298 amended (*temp.* from 3.9.2001 to 1.12.2001) by S.I. 2001/2659, **arts. 1(2)**, 3(11); S.I. 2001/3538, **art. 2(1)**

**Commencement Information**

**I90**  S. 298 wholly in force at 1.12.2001; s. 298 not in force at Royal Assent see s. 431(2); s. 298 in force for specified purposes at 3.9.2001 by S.I. 2001/2632, **art. 2 Sch. Pt. 2**; s. 298 in force in so far as not already in force at 1.12.2001 by S.I. 2001/3538, **art. 2(1)**

---

**299**    **Complaints about recognised bodies.**

(1) The Authority must make arrangements for the investigation of any relevant complaint about a recognised body.

(2) "Relevant complaint" means a complaint which the Authority considers is relevant to the question of whether the body concerned should remain a recognised body.

**300**    **Extension of functions of Tribunal.**

(1) If the Treasury are satisfied that the condition mentioned in subsection (2) is satisfied, they may by order confer functions on the Tribunal with respect to disciplinary proceedings—

---

*Status: This version of this Act contains provisions that are prospective.*
*Changes to legislation: There are outstanding changes not yet made by the legislation.gov.uk editorial*
*team to Financial Services and Markets Act 2000. Any changes that have already been made by the*
*team appear in the content and are referenced with annotations. (See end of Document for details)*

---

   (a) of one or more investment exchanges in relation to which a recognition order under section 290 is in force or of such investment exchanges generally, or

   (b) of one or more clearing houses in relation to which a recognition order under that section is in force or of such clearing houses generally.

(2) The condition is that it is desirable to exercise the power conferred under subsection (1) with a view to ensuring that—

   (a) decisions taken in disciplinary proceedings with respect to which functions are to be conferred on the Tribunal are consistent with—

      (i) decisions of the Tribunal in cases arising under Part VIII; and

      (ii) decisions taken in other disciplinary proceedings with respect to which the Tribunal has functions as a result of an order under this section; or

   (b) the disciplinary proceedings are in accordance with the Convention rights.

(3) An order under this section may modify or exclude any provision made by or under this Act with respect to proceedings before the Tribunal.

(4) "Disciplinary proceedings" means proceedings under the rules of an investment exchange or clearing house in relation to market abuse by persons subject to the rules.

(5) "The Convention rights" has the meaning given in section 1 of the [M37] Human Rights Act 1998.

---

**Annotations:**

**Marginal Citations**
   **M37** 1998 c. 42.

---

*[[F413]Power to disallow excessive regulatory provision*

---

**Annotations:**

**Amendments (Textual)**
   **F413** S. 300A and preceding cross-heading inserted (20.12.2006) by Investment Exchanges and Clearing Houses Act 2006 (c. 55), **ss. 1**, 5(2) (with s. 5(3))

---

## 300A     Power of Authority to disallow excessive regulatory provision

(1) This section applies where a recognised body proposes to make any regulatory provision in connection with its business as an investment exchange or the provision by it of clearing services.

(2) If it appears to the Authority—

   (a) that the proposed provision will impose a requirement on persons affected (directly or indirectly) by it, and

   (b) that the requirement is excessive,

the Authority may direct that the proposed provision must not be made.

(3) A requirement is excessive if—

330

*Financial Services and Markets Act 2000 (c. 8)*
*Part XVIII – Recognised Investment Exchanges and Clearing Houses*
*Chapter I – Exemption*
*Document Generated  2014-04-03*

---

*Status:* This version of this Act contains provisions that are prospective.
*Changes to legislation:* There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

---

    (a)   it is not required under [**F414**EU] law or any enactment or rule of law in the
        United Kingdom, and

    (b)   either—

         (i) it is not justified as pursuing a reasonable regulatory objective, or

        (ii) it is disproportionate to the end to be achieved.

(4) In considering whether a requirement is excessive the Authority must have regard to
all the relevant circumstances, including—

    (a)   the effect of existing legal and other requirements,

    (b)   the global character of financial services and markets and the international
        mobility of activity,

    (c)   the desirability of facilitating innovation, and

    (d)   the impact of the proposed provision on market confidence.

(5) In this section "requirement" includes any obligation or burden.

(6) Any provision made in contravention of a direction under this section is of no effect.

---

**Annotations:**

**Amendments (Textual)**
    **F414**  Word in s. 300A(3)(a) substituted (22.4.2011 with application in accordance with art. 3 of the
        amending S.I.) by virtue of The Treaty of Lisbon (Changes in Terminology) Order 2011 (S.I.
        2011/1043), **art. 6(2)-(5)**

---

**300B**    **Duty to notify proposal to make regulatory provision**

---

**Annotations:**

**Amendments (Textual)**
    **F415**  Ss. 300B-300E inserted (20.12.2006) by Investment Exchanges and Clearing Houses Act
        2006 (c. 55), **ss. 2**, **3**, **5(2)** (with s. 5(3))

---

(1) A recognised body that proposes to make any regulatory provision must give written
notice of the proposal to the Authority without delay.

(2) The Authority may by rules under section 293 (notification requirements)—

    (a)   specify descriptions of regulatory provision in relation to which, or
        circumstances in which, the duty in subsection (1) above does not apply, or

    (b)   provide that the duty applies only to specified descriptions of regulatory
        provision or in specified circumstances.

(3) The Authority may also by rules under that section—

    (a)   make provision as to the form and contents of the notice required, and

    (b)   require the body to provide such information relating to the proposal as may
        be specified in the rules or as the Authority may reasonably require.

*Financial Services and Markets Act 2000 (c. 8)*
*Part XVIII – Recognised Investment Exchanges and Clearing Houses*
*Chapter I – Exemption*
*Document Generated  2014-04-03*

331

---

*Status: This version of this Act contains provisions that are prospective.*
*Changes to legislation: There are outstanding changes not yet made by the legislation.gov.uk editorial*
*team to Financial Services and Markets Act 2000. Any changes that have already been made by the*
*team appear in the content and are referenced with annotations. (See end of Document for details)*

---

**300C    Restriction on making provision before Authority decides whether to act**

(1) Where notice of a proposal to make regulatory provision is required to be given to the Authority under section 300B, the provision must not be made—

    (a)    before that notice is given, or

    (b)    subject to the following provisions of this section, before the end of the initial period.

(2) The initial period is—

    (a)    the period of 30 days beginning with the day on which the Authority receives notice of the proposal, or

    (b)    if any consultation period announced by the body in relation to the proposal ends after that 30-day period, the end of the consultation period.

(3) If before the end of the initial period the Authority notifies the body that it is calling in the proposal, the provisions of section 300D (consideration by Authority whether to disallow proposed provision) apply as to when the provision may be made.

(4) If—

    (a)    before the end of the initial period the Authority notifies the body that it is not calling in the proposal, or

    (b)    the initial period ends without the Authority having notified the body that it is calling in the proposal,

the body may then make the proposed provision.

(5) Any provision made in contravention of this section is of no effect.

**300D    Consideration by Authority whether to disallow proposed provision**

(1) This section applies where the Authority notifies a recognised body that it is calling in a proposal to make regulatory provision.

(2) The Authority must publish a notice—

    (a)    giving details of the proposed provision,

    (b)    stating that it has called in the proposal in order to consider whether to disallow it, and

    (c)    specifying a period during which representations with respect to that question may be made to it.

(3) The Authority may extend the period for making representations.

(4) The Authority must notify the body of its decision whether to disallow the provision not later than 30 days after the end of the period for making representations, and must publish the decision and the reasons for it.

(5) The body must not make the provision unless and until—

    (a)    the Authority notifies it of its decision not to disallow it, or

    (b)    the 30-day period specified in subsection (4) ends without the Authority having notified any decision.

(6) If the Authority notifies the body of its decision to disallow the provision and that decision is questioned in legal proceedings—

    (a)    the body must not make the provision until those proceedings, and any proceedings on appeal, are finally determined,

332

*Financial Services and Markets Act 2000 (c. 8)*
*Part XVIII – Recognised Investment Exchanges and Clearing Houses*
*Chapter I – Exemption*
*Document Generated  2014-04-03*

*Status:* This version of this Act contains provisions that are prospective.
*Changes to legislation:* There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

(b)   if the Authority's decision is quashed and the matter is remitted to it for reconsideration, the court may give directions as to the period within which the Authority is to complete its reconsideration, and

(c)   the body must not make the provision until—

(i) the Authority notifies it of its decision on reconsideration not to disallow the provision, or

(ii) the period specified by the court ends without the Authority having notified any decision.

(7) Any provision made in contravention of subsection (5) or (6) is of no effect.

### 300E   Power to disallow excessive regulatory provision: supplementary

(1) In sections 300A to 300D—

(a)   "regulatory provision" means any rule, guidance, arrangements, policy or practice, and

(b)   references to making provision shall be read accordingly as including, as the case may require, issuing guidance, entering into arrangements or adopting a policy or practice.

(2) For the purposes of those sections a variation of a proposal is treated as a new proposal.

(3) Those sections do not apply to an overseas investment exchange or overseas clearing house.]]

*Other matters*

### 301   Supervision of certain contracts.

(1) The Secretary of State and the Treasury, acting jointly, may by regulations provide for—

(a)   Part VII of the [M38]Companies Act 1989 (financial markets and insolvency), and

(b)   Part V of the [M39]Companies (No. 2)(Northern Ireland) Order 1990,

to apply to relevant contracts as it applies to contracts connected with a recognised body.

(2) "Relevant contracts" means contracts of a prescribed description in relation to which settlement arrangements are provided by a person for the time being included in a list ("the list") maintained by the Authority for the purposes of this section.

(3) Regulations may be made under this section only if the Secretary of State and the Treasury are satisfied, having regard to the extent to which the relevant contracts concerned are contracts of a kind dealt in by persons supervised by the Authority, that it is appropriate for the arrangements mentioned in subsection (2) to be supervised by the Authority.

(4) The approval of the Treasury is required for—

(a)   the conditions set by the Authority for admission to the list; and

(b)   the arrangements for admission to, and removal from, the list.

*Financial Services and Markets Act 2000 (c. 8)*
*Part XVIII – Recognised Investment Exchanges and Clearing Houses*
*CHAPTER 1A – CONTROL OVER RECOGNISED INVESTMENT EXCHANGE*
*Document Generated  2014-04-03*

333

---

**Status:** *This version of this Act contains provisions that are prospective.*
**Changes to legislation:** *There are outstanding changes not yet made by the legislation.gov.uk editorial team to Financial Services and Markets Act 2000. Any changes that have already been made by the team appear in the content and are referenced with annotations. (See end of Document for details)*

---

(5) If the Treasury withdraw an approval given by them under subsection (4), all regulations made under this section and then in force are to be treated as suspended.

(6) But if—

    (a)   the Authority changes the conditions or arrangements (or both), and

    (b)   the Treasury give a fresh approval under subsection (4),

the suspension of the regulations ends on such date as the Treasury may, in giving the fresh approval, specify.

(7) The Authority must—

    (a)   publish the list as for the time being in force; and

    (b)   provide a certified copy of it to any person who wishes to refer to it in legal proceedings.

(8) A certified copy of the list is evidence (or in Scotland sufficient evidence) of the contents of the list.

(9) A copy of the list which purports to be certified by or on behalf of the Authority is to be taken to have been duly certified unless the contrary is shown.

(10) Regulations under this section may, in relation to a person included in the list—

    (a)   apply (with such exceptions, additions and modifications as appear to the Secretary of State and the Treasury to be necessary or expedient) such provisions of, or made under, this Act as they consider appropriate;

    (b)   provide for the provisions of Part VII of the [M40]Companies Act 1989 and Part V of the [M41]Companies (No. 2)(Northern Ireland) Order 1990 to apply (with such exceptions, additions or modifications as appear to the Secretary of State and the Treasury to be necessary or expedient).

---

**Annotations:**

**Marginal Citations**

  **M38**  1989 c. 40.

  **M39**  S.I. 1990/1504 (N.I. 10).

  **M40**  1989 c. 40.

  **M41**  S.I. 1990/1504 (N.I. 10).

*Financial Services and Markets Act 2000 (c. 8)*
*SCHEDULE 1 – The Financial Services Authority*
*Document Generated  2014-04-03*

479

**Status:** *This version of this Act contains provisions that are prospective.*
***Changes to legislation:*** *There are outstanding changes not yet made by the legislation.gov.uk editorial*
*team to Financial Services and Markets Act 2000. Any changes that have already been made by the*
*team appear in the content and are referenced with annotations. (See end of Document for details)*

# S C H E D U L E S

## SCHEDULE 1

Section 1.

### THE FINANCIAL SERVICES AUTHORITY

**Annotations:**

**Modifications etc. (not altering text)**
  C690  Sch. 1 extended (17.8.2001) by S.I. 2001/2617, arts. 2(a), 4(3), 8, **Sch. 2 para. 2**

## PART I

### GENERAL

**Annotations:**

**Modifications etc. (not altering text)**
  C691  Sch. 1 Pt. 1 modified (15.12.2007) by The Transfer of Funds (Information on the Payer) Regulations 2007 (S.I. 2007/3298), **reg. 4(4)**
  C692  Sch. 1 Pt. 1 applied (27.11.2008) by Counter-Terrorism Act 2008 (c. 28), ss. 62, 100(2), **Sch. 7 para. 41(1)** (with s. 101(2), Sch. 7 para. 43)

*Interpretation*

1      (1) In this Schedule—

      **F610** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
      "non-executive committee" means the committee maintained under paragraph 3;
      "functions", in relation to the Authority, means functions conferred on the Authority by or under any provision of this Act.

      (2) For the purposes of this Schedule, the following are the Authority's legislative functions—

          (a)    making rules;

          (b)    issuing codes under section 64 or 119;

          (c)    issuing statements under section 64, 69, 124 or 210;

          (d)    giving directions under section 316, 318 or 328;

          (e)    issuing general guidance (as defined by section 158(5)) [**F611**or guidance under section 158A].

480

*Financial Services and Markets Act 2000 (c. 8)*
*SCHEDULE 1 – The Financial Services Authority*
*Document Generated  2014-04-03*

*Status:* This version of this Act contains provisions that are prospective.
*Changes to legislation:* There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

---

**Annotations:**

**Amendments (Textual)**
  **F610**  Sch. 1 para. 1(1): definition of "the 1985 Act" omitted (1.10.2009) by virtue of The Companies Act
      2006 (Consequential Amendments, Transitional Provisions and Savings) Order 2009 (S.I. 2009/1941),
      art. 2(1), **Sch. 1 para. 181(5)(a)** (with art. 10)
  **F611**  Words in Sch. 1 para. 1(2)(e) inserted (6.12.2006) by The Financial Services and Markets Act 2000
      (Markets in Financial Instruments) (Modification of Powers) Regulations 2006 (S.I. 2006/2975) {reg.
      12}

---

*Constitution*

2      (1) The constitution of the Authority must continue to provide for the Authority to have
—

  (a)   a chairman; and
  (b)   a governing body.

  (2) The governing body must include the chairman.

  (3) The chairman and other members of the governing body must be appointed, and be
  liable to removal from office, by the Treasury.

  (4) The validity of any act of the Authority is not affected—

  (a)   by a vacancy in the office of chairman; or
  (b)   by a defect in the appointment of a person as a member of the governing
        body or as chairman.

---

**Annotations:**

**Modifications etc. (not altering text)**
  **C693**  Sch. 1 Pt. I para. 2(3) modified (18.6.2001) by S.I. 2001/1821, **arts. 1(1)**, 2(2)

---

*Non-executive members of the governing body*

3      (1) The Authority must secure—

  (a)   that the majority of the members of its governing body are non-executive
        members; and
  (b)   that a committee of its governing body, consisting solely of the non-
        executive members, is set up and maintained for the purposes of discharging
        the functions conferred on the committee by this Schedule.

  (2) The members of the non-executive committee are to be appointed by the Authority.

  (3) The non-executive committee is to have a chairman appointed by the Treasury from
  among its members.

---

*Functions of the non-executive committee*

4      (1) In this paragraph "the committee" means the non-executive committee.

  (2) The non-executive functions are functions of the Authority but must be discharged
  by the committee.

**Status:** This version of this Act contains provisions that are prospective.
**Changes to legislation:** There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

(3) The non-executive functions are—

    (a) keeping under review the question whether the Authority is, in discharging its functions in accordance with decisions of its governing body, using its resources in the most efficient and economic way;

    (b) keeping under review the question whether the Authority's internal financial controls secure the proper conduct of its financial affairs; and

    (c) determining the remuneration of—

        (i) the chairman of the Authority's governing body; and

        (ii) the executive members of that body.

(4) The function mentioned in sub-paragraph (3)(b) and those mentioned in sub-paragraph (3)(c) may be discharged on behalf of the committee by a sub-committee.

(5) Any sub-committee of the committee—

    (a) must have as its chairman the chairman of the committee; but

    (b) may include persons other than members of the committee.

(6) The committee must prepare a report on the discharge of its functions for inclusion in the Authority's annual report to the Treasury under paragraph 10.

(7) The committee's report must relate to the same period as that covered by the Authority's report.

*Arrangements for discharging functions*

5 (1) The Authority may make arrangements for any of its functions to be discharged by a committee, sub-committee, officer or member of staff of the Authority.

[$^{F612}$(2) But—

    (a) in exercising the legislative functions mentioned in paragraph 1(2)(a) to (d) [$^{F613}$or in determining or reviewing its strategy in relation to the financial stability objective], the Authority must act through its governing body; and

    (b) the legislative function mentioned in paragraph 1(2)(e) may not be discharged by an officer or member of staff of the Authority.]

(3) Sub-paragraph (1) does not apply to the non-executive functions.

**Annotations:**

**Amendments (Textual)**

**F612** Sch. 1 para. 5(2) substituted (12.7.2007) by The Regulatory Reform (Financial Services and Markets Act 2000) Order 2007 (S.I. 2007/1973), **art. 14**

**F613** Words in Sch. 1 para. 5(2)(a) inserted (8.4.2010) by Financial Services Act 2010 (c. 28), ss. 24(1), 26(1) (g)(l), **Sch. 2 para. 34(2)**

**Modifications etc. (not altering text)**

**C694** Sch. 1 para. 5 extended (18.6.2001) by S.I. 2001/1821, **arts. 1(1)**, 2(1)(b)(c)

**C695** Sch. 1 para. 5(1) excluded by Serious Organised Crime and Police Act 2005 (c. 15), s. 71(6B) (as inserted (6.4.2010) by Coroners and Justice Act 2009 (c. 25) {ss. 113(4)}, 182(5) (with s. 180); S.I. 2010/816, **art. 2**, Sch. para. 6)

482

*Financial Services and Markets Act 2000 (c. 8)*
*SCHEDULE 1 – The Financial Services Authority*
*Document Generated  2014-04-03*

*Status:* This version of this Act contains provisions that are prospective.
*Changes to legislation:* There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

*Monitoring and enforcement*

6    (1) The Authority must maintain arrangements designed to enable it to determine whether persons on whom requirements are imposed by or under this Act [**F614**, or by any directly applicable [**F615**Community regulation or decision] made under the markets in financial instruments directive [**F616**or the UCITS directive],] are complying with them.

(2) Those arrangements may provide for functions to be performed on behalf of the Authority by any body or person who, in its opinion, is competent to perform them.

(3) The Authority must also maintain arrangements for enforcing the provisions of, or made under, this Act [**F617**or of any directly applicable [**F615**Community regulation or decision] made under the markets in financial instruments directive [**F616**or the UCITS directive]].

(4) Sub-paragraph (2) does not affect the Authority's duty under sub-paragraph (1).

---

**Annotations:**

**Amendments (Textual)**
**F614**  Words in Sch. 1 para. 6(1) inserted (1.4.2007 for certain purposes, otherwise 1.11.2007) by The Financial Services and Markets Act 2000 (Markets in Financial Instruments) Regulations 2007 (S.I. 2007/126), regs. 1(2), 3(5), **Sch. 5 para. 23(a)**
**F615**  Words in Sch. 1 para. 6(1)(3) substituted (1.7.2011) by The Undertakings for Collective Investment in Transferable Securities Regulations 2011 (S.I. 2011/1613), **reg. 2(32)(a)**
**F616**  Words in Sch. 1 para. 6(1)(3) inserted (1.7.2011) by The Undertakings for Collective Investment in Transferable Securities Regulations 2011 (S.I. 2011/1613), **reg. 2(32)(b)**
**F617**  Words in Sch. 1 para. 6(3) inserted (1.4.2007 for certain purposes, otherwise 1.11.2007) by The Financial Services and Markets Act 2000 (Markets in Financial Instruments) Regulations 2007 (S.I. 2007/126), regs. 1(2), 3(5), **Sch. 5 para. 23(b)**

**Modifications etc. (not altering text)**
**C696**  Sch. 1 para. 6 modified (18.7.2002 for certain purposes and 21.8.2002 otherwise) by The Electronic Commerce Directive (Financial Services and Markets) Regulations 2002 (S.I. 2002/1775), regs. 1, **12(2)**
**C697**  Sch. 1 Pt. I para. 6(2) applied (with modifications) (17.8.2001) by S.I. 2001/2617, arts. 2(a), 4(3), 8, **Sch. 2 para. 3**

---

*Arrangements for the investigation of complaints*

7    (1) The Authority must—

(a)    make arrangements ("the complaints scheme") for the investigation of complaints arising in connection with the exercise of, or failure to exercise, any of its functions (other than its legislative functions); and

(b)    appoint an independent person ("the investigator") to be responsible for the conduct of investigations in accordance with the complaints scheme.

(2) The complaints scheme must be designed so that, as far as reasonably practicable, complaints are investigated quickly.

(3) The Treasury's approval is required for the appointment or dismissal of the investigator.

***Status:*** *This version of this Act contains provisions that are prospective.*

***Changes to legislation:*** *There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)*

(4) The terms and conditions on which the investigator is appointed must be such as, in the opinion of the Authority, are reasonably designed to secure—

    (a)    that he will be free at all times to act independently of the Authority; and

    (b)    that complaints will be investigated under the complaints scheme without favouring the Authority.

(5) Before making the complaints scheme, the Authority must publish a draft of the proposed scheme in the way appearing to the Authority best calculated to bring it to the attention of the public.

(6) The draft must be accompanied by notice that representations about it may be made to the Authority within a specified time.

(7) Before making the proposed complaints scheme, the Authority must have regard to any representations made to it in accordance with sub-paragraph (6).

(8) If the Authority makes the proposed complaints scheme, it must publish an account, in general terms, of—

    (a)    the representations made to it in accordance with sub-paragraph (6); and

    (b)    its response to them.

(9) If the complaints scheme differs from the draft published under sub-paragraph (5) in a way which is, in the opinion of the Authority, significant the Authority must (in addition to complying with sub-paragraph (8)) publish details of the difference.

(10) The Authority must publish up-to-date details of the complaints scheme including, in particular, details of—

    (a)    the provision made under paragraph 8(5); and

    (b)    the powers which the investigator has to investigate a complaint.

(11) Those details must be published in the way appearing to the Authority to be best calculated to bring them to the attention of the public.

(12) The Authority must, without delay, give the Treasury a copy of any details published by it under this paragraph.

(13) The Authority may charge a reasonable fee for providing a person with a copy of—

    (a)    a draft published under sub-paragraph (5);

    (b)    details published under sub-paragraph (10).

(14) Sub-paragraphs (5) to (9) and (13)(a) also apply to a proposal to alter or replace the complaints scheme.

---

**Annotations:**

**Modifications etc. (not altering text)**

C698    Sch. 1 Pt. I para. 7(1)(a) restricted (19.7.2001) by S.I. 2001/2326, **arts. 1(1)(a)**, 18(3)

C699    Sch. 1 Pt. I para. 7(2)-(14) applied (19.7.2001) by S.I. 2001/2326, **arts. 1(1)(a)**, 18(2)(a)

**Commencement Information**

I123    Sch. 1 Pt. I para. 7 wholly in force at 3.9.2001; Sch. 1 Pt. I para. 7 not in force at Royal Assent see s. 431(2); Sch. 1 Pt. I para. 7 in force for specified purposes at 19.7.2001 by S.I. 2001/2364, **art. 2(2)** (with

**Status:** This version of this Act contains provisions that are prospective.
**Changes to legislation:** There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

art. 3); Sch. 1 Pt. I para. 7 in force in so far as not already in force at 3.9.2001 by S.I. 2001/2632, art. 2(2), **Sch. Pt. 2**

*Investigation of complaints*

8    (1) The Authority is not obliged to investigate a complaint in accordance with the complaints scheme which it reasonably considers would be more appropriately dealt with in another way (for example by referring the matter to the Tribunal or by the institution of other legal proceedings).

(2) The complaints scheme must provide—

    (a)   for reference to the investigator of any complaint which the Authority is investigating; and

    (b)   for him—

        (i) to have the means to conduct a full investigation of the complaint;

        (ii) to report on the result of his investigation to the Authority and the complainant; and

        (iii) to be able to publish his report (or any part of it) if he considers that it (or the part) ought to be brought to the attention of the public.

(3) If the Authority has decided not to investigate a complaint, it must notify the investigator.

(4) If the investigator considers that a complaint of which he has been notified under sub-paragraph (3) ought to be investigated, he may proceed as if the complaint had been referred to him under the complaints scheme.

(5) The complaints scheme must confer on the investigator the power to recommend, if he thinks it appropriate, that the Authority—

    (a)   makes a compensatory payment to the complainant,

    (b)   remedies the matter complained of,

or takes both of those steps.

(6) The complaints scheme must require the Authority, in a case where the investigator—

    (a)   has reported that a complaint is well-founded, or

    (b)   has criticised the Authority in his report,

to inform the investigator and the complainant of the steps which it proposes to take in response to the report.

(7) The investigator may require the Authority to publish the whole or a specified part of the response.

(8) The investigator may appoint a person to conduct the investigation on his behalf but subject to his direction.

(9) Neither an officer nor an employee of the Authority may be appointed under sub-paragraph (8).

(10) Sub-paragraph (2) is not to be taken as preventing the Authority from making arrangements for the initial investigation of a complaint to be conducted by the Authority.

---

*Status:* This version of this Act contains provisions that are prospective.
*Changes to legislation:* There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

---

| Annotations: |
| --- |
| **Modifications etc. (not altering text)**<br>**C700**   Sch. 1 Pt. I para. 8 power to apply conferred (19.7.2001) by S.I. 2001/2326, **arts. 1(1)(a)**, 18(2)(b) |
| **Commencement Information**<br>**I124**   Sch. 1 Pt. I para. 8 wholly in force at 3.9.2001; Sch. 1 Pt. I para. 8 not in force at Royal Assent see s.<br>431(2); Sch. 1 Pt. I para. 8 in force for specified purposes at 19.7.2001 by S.I. 2001/2364, **art. 2(2)** (with<br>art. 3); Sch. 1 Pt. I para. 8 in force in so far as not already in force at 3.9.2001 by S.I. 2001/2632, art.<br>2(2), **Sch. Pt. 2** |

*Records*

9       The Authority must maintain satisfactory arrangements for—

   (a)   recording decisions made in the exercise of its functions; and

   (b)   the safe-keeping of those records which it considers ought to be preserved.

*Annual report*

10      (1) At least once a year the Authority must make a report to the Treasury on—

   (a)   the discharge of its functions;

   (b)   the extent to which, in its opinion, the regulatory objectives have been met;

   (c)   its consideration of the matters mentioned in section 2(3); and

   (d)   such other matters as the Treasury may from time to time direct.

(2) The report must be accompanied by—

   (a)   the report prepared by the non-executive committee under paragraph 4(6); and

   (b)   such other reports or information, prepared by such persons, as the Treasury may from time to time direct.

(3) The Treasury must lay before Parliament a copy of each report received by them under this paragraph.

(4) The Treasury may—

   (a)   require the Authority to comply with any provisions of [**F618**the Companies Act 2006**]** about accounts and their audit which would not otherwise apply to it; or

   (b)   direct that any such provision of that Act is to apply to the Authority with such modifications as are specified in the direction.

(5) Compliance with any requirement imposed under sub-paragraph (4)(a) or (b) is enforceable by injunction or, in Scotland, an order under section 45(b) of the **M78**Court of Session Act 1988.

(6) Proceedings under sub-paragraph (5) may be brought only by the Treasury.

*Financial Services and Markets Act 2000 (c. 8)*
*SCHEDULE 1 – The Financial Services Authority*
*Document Generated  2014-04-03*

*Status: This version of this Act contains provisions that are prospective.*
*Changes to legislation: There are outstanding changes not yet made by the legislation.gov.uk editorial*
*team to Financial Services and Markets Act 2000. Any changes that have already been made by the*
*team appear in the content and are referenced with annotations. (See end of Document for details)*

---

**Annotations:**

**Amendments (Textual)**
**F618** Words in Sch. 1 para. 10(4)(a) substituted (6.4.2008) by The Companies Act 2006 (Consequential Amendments etc) Order 2008 (S.I. 2008/948), arts. 2(2), 3(1), **Sch. 1 para. 213** (with arts. 6, 11, 12)

**Marginal Citations**
**M78** 1988 c. 36.

---

*Annual public meeting*

11 (1) Not later than three months after making a report under paragraph 10, the Authority must hold a public meeting ("the annual meeting") for the purposes of enabling that report to be considered.

(2) The Authority must organise the annual meeting so as to allow—

(a) a general discussion of the contents of the report which is being considered; and

(b) a reasonable opportunity for those attending the meeting to put questions to the Authority about the way in which it discharged, or failed to discharge, its functions during the period to which the report relates.

(3) But otherwise the annual meeting is to be organised and conducted in such a way as the Authority considers appropriate.

(4) The Authority must give reasonable notice of its annual meeting.

(5) That notice must—

(a) give details of the time and place at which the meeting is to be held;

(b) set out the proposed agenda for the meeting;

(c) indicate the proposed duration of the meeting;

(d) give details of the Authority's arrangements for enabling persons to attend; and

(e) be published by the Authority in the way appearing to it to be most suitable for bringing the notice to the attention of the public.

(6) If the Authority proposes to alter any of the arrangements which have been included in the notice given under sub-paragraph (4) it must—

(a) give reasonable notice of the alteration; and

(b) publish that notice in the way appearing to the Authority to be best calculated to bring it to the attention of the public.

*Report of annual meeting*

12 Not later than one month after its annual meeting, the Authority must publish a report of the proceedings of the meeting.

*Financial Services and Markets Act 2000 (c. 8)*
*SCHEDULE 1 – The Financial Services Authority*
*Document Generated  2014-04-03*

487

**Status:** This version of this Act contains provisions that are prospective.
**Changes to legislation:** There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

## PART II

### STATUS

> **Annotations:**
>
> **Modifications etc. (not altering text)**
> **C701**  Sch. 1 Pt. 2 modified (15.12.2007) by The Transfer of Funds (Information on the Payer) Regulations 2007 (S.I. 2007/3298), **reg. 4(4)**
> **C702**  Sch. 1 Pt. 2 applied (27.11.2008) by Counter-Terrorism Act 2008 (c. 28), ss. 62, 100(2), **Sch. 7 para. 41(1)** (with s. 101(2), Sch. 7 para. 43)

13      In relation to any of its functions—

      (a)   the Authority is not to be regarded as acting on behalf of the Crown; and

      (b)   its members, officers and staff are not to be regarded as Crown servants.

### *Exemption from requirement of "limited" in Authority's name*

14      The Authority is to continue to be exempt from the requirements of [**F619**the Companies Act 2006] relating to the use of "limited" as part of its name.

> **Annotations:**
>
> **Amendments (Textual)**
> **F619**  Words in Sch. 1 para. 14 substituted (1.10.2009) by The Companies Act 2006 (Consequential Amendments, Transitional Provisions and Savings) Order 2009 (S.I. 2009/1941), art. 2(1), **Sch. 1 para. 181(5)(b)** (with art. 10)

15      If the Secretary of State is satisfied that any action taken by the Authority makes it inappropriate for the exemption given by paragraph 14 to continue he may, after consulting the Treasury, give a direction removing it.

## PART III

### PENALTIES AND FEES

### *Penalties*

16      (1) In determining its policy with respect to the amounts of penalties to be imposed by it under this Act, the Authority must take no account of the expenses which it incurs, or expects to incur, in discharging its functions.

(2) The Authority must prepare and operate a scheme for ensuring that the amounts paid to the Authority by way of penalties imposed under this Act are applied for the benefit of authorised persons.

(3) The scheme may, in particular, make different provision with respect to different classes of authorised person.

(4) Up to date details of the scheme must be set out in a document ("the scheme details").

Case 1:13-md-02481-PAE   Document 387-1   Filed 05/23/14   Page 53 of 86

488     *Financial Services and Markets Act 2000 (c. 8)*
*SCHEDULE 1 – The Financial Services Authority*
*Document Generated  2014-04-03*

***Status:*** This version of this Act contains provisions that are prospective.
***Changes to legislation:*** There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

(5) The scheme details must be published by the Authority in the way appearing to it to be best calculated to bring them to the attention of the public.

(6) Before making the scheme, the Authority must publish a draft of the proposed scheme in the way appearing to the Authority to be best calculated to bring it to the attention of the public.

(7) The draft must be accompanied by notice that representations about the proposals may be made to the Authority within a specified time.

(8) Before making the scheme, the Authority must have regard to any representations made to it in accordance with sub-paragraph (7).

(9) If the Authority makes the proposed scheme, it must publish an account, in general terms, of—

   (a)   the representations made to it in accordance with sub-paragraph (7); and

   (b)   its response to them.

(10) If the scheme differs from the draft published under sub-paragraph (6) in a way which is, in the opinion of the Authority, significant the Authority must (in addition to complying with sub-paragraph (9)) publish details of the difference.

(11) The Authority must, without delay, give the Treasury a copy of any scheme details published by it.

(12) The Authority may charge a reasonable fee for providing a person with a copy of—

   (a)   a draft published under sub-paragraph (6);

   (b)   scheme details.

(13) Sub-paragraphs (6) to (10) and (12)(a) also apply to a proposal to alter or replace the complaints scheme.

---

**Annotations:**

**Modifications etc. (not altering text)**

C703   Sch. 1 para. 16 applied (with modifications) (6.3.2008) by The Regulated Covered Bonds Regulations 2008 (S.I. 2008/346), **reg. 37**

---

*Fees*

17   (1) The Authority may make rules providing for the payment to it of such fees, in connection with the discharge of any of its functions under or as a result of this Act, as it considers will (taking account of its expected income from fees and charges provided for by any other provision of this Act) enable it—

   (a)   to meet expenses incurred in carrying out its functions or for any incidental purpose;

   (b)   to repay the principal of, and pay any interest on, any money which it has borrowed and which has been used for the purpose of meeting expenses incurred in relation to its assumption of functions under this Act or the [M79]Bank of England Act 1998; and

   (c)   to maintain adequate reserves.

**Status:** *This version of this Act contains provisions that are prospective.*
**Changes to legislation:** *There are outstanding changes not yet made by the legislation.gov.uk editorial team to Financial Services and Markets Act 2000. Any changes that have already been made by the team appear in the content and are referenced with annotations. (See end of Document for details)*

(2) In fixing the amount of any fee which is to be payable to the Authority, no account is to be taken of any sums which the Authority receives, or expects to receive, by way of penalties imposed by it under this Act.

(3) Sub-paragraph (1)(b) applies whether expenses were incurred before or after the coming into force of this Act or the [M80]Bank of England Act 1998.

(4) Any fee which is owed to the Authority under any provision made by or under this Act may be recovered as a debt due to the Authority.

---

**Annotations:**

**Modifications etc. (not altering text)**

C704    Sch. 1 para. 17 modified (1.12.2001) by S.I. 2001/3650, **arts. 1(a)**, 25(1)(2)

C705    Sch. 1 para. 17 applied (with modifications) (6.3.2008) by The Regulated Covered Bonds Regulations 2008 (S.I. 2008/346), reg. 46, **Sch. para. 5**

C706    Sch. 1 para. 17 modified (16.1.2009) by Building Societies (Funding) and Mutual Societies (Transfers) Act 2007 (c. 26), **ss. 3(15)**, 6(2); S.I. 2009/36, **art. 2**

C707    Sch. 1 para. 17 modified (2.3.2009) by The Payment Services Regulations 2009 (S.I. 2009/209), regs. 1(2)(a), **92(1)** (with reg. 3)

C708    Sch. 1 para. 17 extended (with modifications) (11.2.2010) by The Cross-Border Payments in Euro Regulations 2010 (S.I. 2010/89), **reg. 13**

C709    Sch. 1 para. 17 extended (with modifications) (9.2.2011 for certain purposes, otherwise 30.4.2011) by The Electronic Money Regulations 2011 (S.I. 2011/99), regs. 1(2)(a)(xiii)(b), **59** (with art. 3)

C710    Sch. 1 para. 17(1) modified (17.8.2001) by S.I. 2001/2617, arts. 2(a), 4(3), 8, Sch. 2 paras. 9, **10**

**Marginal Citations**

M79    1998 c. 11.

M80    1998 c. 11.

---

*Services for which fees may not be charged*

18      The power conferred by paragraph 17 may not be used to require—

   (a)   a fee to be paid in respect of the discharge of any of the Authority's functions under paragraphs 13, 14, 19 or 20 of Schedule 3; or

   (b)   a fee to be paid by any person whose application for approval under section 59 has been granted.

## PART IV

### MISCELLANEOUS

---

**Annotations:**

**Modifications etc. (not altering text)**

C711    Sch. 1 Pt. 4 modified (15.12.2007) by The Transfer of Funds (Information on the Payer) Regulations 2007 (S.I. 2007/3298), **reg. 4(4)**

C712    Sch. 1 Pt. 4 applied (27.11.2008) by Counter-Terrorism Act 2008 (c. 28), ss. 62, 100(2), **Sch. 7 para. 41(1)** (with s. 101(2), Sch. 7 para. 43)

490

*Financial Services and Markets Act 2000 (c. 8)*
*SCHEDULE 1 – The Financial Services Authority*
*Document Generated  2014-04-03*

---

***Status:*** This version of this Act contains provisions that are prospective.
***Changes to legislation:*** There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Financial Services and Markets Act 2000. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)

---

*Exemption from liability in damages*

19    (1) Neither the Authority nor any person who is, or is acting as, a member, officer or
        member of staff of the Authority is to be liable in damages for anything done or
        omitted in the discharge, or purported discharge, of the Authority's functions.

       (2) Neither the investigator appointed under paragraph 7 nor a person appointed to
        conduct an investigation on his behalf under paragraph 8(8) is to be liable in damages
        for anything done or omitted in the discharge, or purported discharge, of his functions
        in relation to the investigation of a complaint.

       (3) Neither sub-paragraph (1) nor sub-paragraph (2) applies—

          (a)   if the act or omission is shown to have been in bad faith; or

          (b)   so as to prevent an award of damages made in respect of an act or omission
                on the ground that the act or omission was unlawful as a result of section 6(1)
                of the [M81]Human Rights Act 1998.

---

**Annotations:**

**Modifications etc. (not altering text)**

**C713**   Sch. 1 para. 19 extended (1.12.2001) by S.I. 2001/3650, **arts. 1(a)**, 24(6)

**C714**   Sch. 1 para. 19 modified (6.3.2008) by The Regulated Covered Bonds Regulations 2008 (S.I. 2008/346),
        **reg. 45**

**C715**   Sch. 1 para. 19 modified (2.3.2009) by The Payment Services Regulations 2009 (S.I. 2009/209), regs.
        1(2)(a), **94** (with reg. 3)

**C716**   Sch. 1 para. 19 applied (11.2.2010) by The Cross-Border Payments in Euro Regulations 2010 (S.I.
        2010/89), **reg. 15**

**C717**   Sch. 1 para. 19 extended (9.2.2011 for certain purposes, otherwise 30.4.2011) by The Electronic Money
        Regulations 2011 (S.I. 2011/99), regs. 1(2)(a)(xiii)(b), **61** (with art. 3)

**C718**   Sch. 1 para. 19(1) applied (1.12.2001) by S.I. 1995/1537, **reg. 23(1)** (as amended (1.12.2001) by S.I.
        2001/3649, **arts. 1**, 509(b)(i))

**Marginal Citations**

**M81**   1998 c. 42.

---

[[F620]19A   For the purposes of this Act anything done by an accredited financial investigator
        within the meaning of the Proceeds of Crime Act 2002 who is—

          (a)   a member of the staff of the Authority, or

          (b)   a person appointed by the Authority under section 97, 167 or 168 to conduct
                an investigation,

        must be treated as done in the exercise or discharge of a function of the Authority.]

---

**Annotations:**

**Amendments (Textual)**

**F620**   Sch. 1 para. 19A inserted (24.2.2003) by Proceeds of Crime Act 2002 (c. 29), ss. 456, 458(1), **Sch. 11
        para. 38**; S.I. 2003/120, **art. 2**, Sch. (subject to arts. 3-7) (as amended by S.I. 2003/333, art. 14)

*Financial Services and Markets Act 2000 (c. 8)*
*SCHEDULE 1A – Further provision about the consumer financial education body*
*Document Generated  2014-04-03*
491

**Status:** *This version of this Act contains provisions that are prospective.*
**Changes to legislation:** *There are outstanding changes not yet made by the legislation.gov.uk editorial team to Financial Services and Markets Act 2000. Any changes that have already been made by the team appear in the content and are referenced with annotations. (See end of Document for details)*

### [F621*Amounts required by rules to be paid to the Authority*

**Annotations:**

**Amendments (Textual)**
  **F621**  Sch. 1 para. 19B and preceding cross-heading inserted (8.4.2010) by Financial Services Act 2010 (c. 28), ss. 24(1), 26(1)(g)(l), **Sch. 2 para. 34(3)**

19B        Any amount (other than a fee) which is required by rules to be paid to the Authority may be recovered as a debt due to the Authority.]

### *Disqualification for membership of House of Commons*

20        In Part III of Schedule 1 to the [M82]House of Commons Disqualification Act 1975 (disqualifying offices), insert at the appropriate place—

  "Member of the governing body of the Financial Services Authority

  ."

**Annotations:**

**Marginal Citations**
  **M82**  1975 c. 24.

### *Disqualification for membership of Northern Ireland Assembly*

21        In Part III of Schedule 1 to the [M83]Northern Ireland Assembly Disqualification Act 1975 (disqualifying offices), insert at the appropriate place—

  "Member of the governing body of the Financial Services Authority".

**Annotations:**

**Marginal Citations**
  **M83**  1975 c. 25.

**Status:**
This version of this Act contains provisions that are prospective.

**Changes to legislation:**
There are outstanding changes not yet made by the legislation.gov.uk editorial team to Financial Services and Markets Act 2000. Any changes that have already been made by the team appear in the content and are referenced with annotations.

**Changes and effects yet to be applied to :**

- – s. 1A(6) word omitted by S.I. 2013/1773 Sch. 1 para. 2
- – s. 1A(6)(ca) inserted by S.I. 2013/1773 Sch. 1 para. 2
- – s. 1B(4) restricted by S.I. 2013/1881 art. 61(2)
- – s. 1G modified by S.I. 2013/1881 art. 65(3)(a)
- – s. 1G modified by S.I. 2001/544 art. 60LA(1)(3) (as inserted) by S.I. 2014/366 art. 2(33)
- – s. 1G modified by S.I. 2001/544 art. 60S(1)(3) (as inserted) by S.I. 2014/366 art. 2(37)
- – s. 1G(1)(c) word omitted by S.I. 2013/655 art. 3(2)(a)
- – s. 1G(1)(e) and word inserted by S.I. 2013/655 art. 3(2)(b)
- – s. 1H(2)(b) omitted by S.I. 2013/1881 art. 10(2)(a)
- – s. 1H(7A) inserted by S.I. 2013/655 art. 3(3)
- – s. 1H(8) words omitted by S.I. 2013/1881 art. 10(2)(b)
- – s. 1H(8) words substituted by S.I. 2013/3115 Sch. 2 para. 2
- – s. 1L modified by SI 2002/1775 reg. 12(2) (as amended) by S.I. 2013/472 Sch. 2 para. 77(7)(a)(i)
- – s. 1L(1) applied (with modifications) by S.I. 2013/1882 art. 3(2)(a)
- – s. 1L(2) applied (with modifications) by S.I. 2013/1882 art. 3(2)(b)
- – s. 1L(2) word omitted by S.I. 2013/1773 Sch. 1 para. 3
- – s. 1L(2)(aa) inserted by S.I. 2013/1773 Sch. 1 para. 3
- – s. 1Q(5A)(5B) inserted by 2013 c. 33 s. 132
- – s. 1IA and cross-heading inserted by 2013 c. 33 s. 2
- – s. 2B(3)(a) word omitted by 2013 c. 33 s. 1(2)(a)
- – s. 2B(3)(c) and word inserted by 2013 c. 33 s. 1(2)(b)
- – s. 2B(4) words substituted by 2013 c. 33 s. 1(3)
- – s. 2B(4A) inserted by 2013 c. 33 s. 1(4)
- – s. 2H substituted by 2013 c. 33 s. 130(1)
- – s. 2J(3) words substituted by 2013 c. 33 s. 1(5)(a)
- – s. 2J(3A) inserted by 2013 c. 33 s. 1(5)(b)
- – s. 2J(4) words substituted by 2013 c. 33 s. 1(5)(c)
- – s. 3A(3)(a) word omitted by 2013 c. 33 s. 135(2)(a)
- – s. 3A(3)(c) and word inserted by 2013 c. 33 s. 135(2)(b)
- – s. 3B(1) word substituted by 2013 c. 33 s. 130(2)
- – s. 3I(3)(a) words inserted by 2013 c. 33 Sch. 8 para. 4
- – s. 3I(4)(a) word omitted by 2013 c. 33 s. 3(a)
- – s. 3I(4)(c) and word inserted by 2013 c. 33 s. 3(b)
- – s. 3M(3)(a) words substituted by S.I. 2013/3115 Sch. 2 para. 3(a)
- – s. 3M(3)(c) omitted by S.I. 2013/3115 Sch. 2 para. 3(b)
- – s. 20 modified by S.I. 2007/3510 art. 7(2)
- – s. 20 modified by S.I. 2013/655 art. 10(3)
- – s. 20(1) excluded by S.I. 2013/1773 reg. 76(2)
- – s. 20(1) excluded by S.I. 2013/1773 reg. 78(4)
- – s. 20(1) word substituted by 2012 c. 21 Sch. 9 para. 2(2)(c)
- – s. 20(1) words inserted by 2012 c. 21 Sch. 9 para. 2(2)(a)
- – s. 20(1)(a) substituted by 2012 c. 21 Sch. 9 para. 2(2)(b)
- – s. 20(1A) excluded by S.I. 2013/1773 reg. 76(2)
- – s. 20(1A) excluded by S.I. 2013/1773 reg. 78(4)
- – s. 20(1A) inserted by 2012 c. 21 Sch. 9 para. 2(3)
- – s. 20(2) substituted by 2012 c. 21 Sch. 9 para. 2(4)
- – s. 20(3) words substituted by 2012 c. 21 Sch. 9 para. 2(5)
- – s. 20(4)(5) inserted by 2012 c. 21 Sch. 9 para. 2(6)
- – s. 21(2) modified by S.I. 2007/3510 art. 8(2)
- – s. 21(2) modified by S.I. 2013/1881 art. 59(3)
- – s. 22 applied by S.I. 2013/1046 rule 10(7)(a)

–     s. 22 applied by S.I. 2013/1877 reg. 2(2)(a)
–     s. 22 applied by 2003 c. 1 s. 554O(6) (as inserted) by S.I. 2013/1881 Sch. para. 9(c)
–     s. 22 applied by 2007 c. 3 s. 564B(1A) (as inserted) by S.I. 2013/1881 Sch. para. 12(b)
–     s. 22 applied by 2009 c. 4 s. 502(1A) (as inserted) by S.I. 2013/1881 Sch. para. 16(b)
–     s. 22 applied by SI 2001/341 reg. 114(6) (as inserted) by S.I. 2013/1881 Sch. para. 22(b)
–     s. 22 applied by SI 2001/497 reg. 113(6) (as inserted) by S.I. 2013/1881 Sch. para. 23(b)
–     s. 22 applied by SI 2004/400 reg. 5(7) (as inserted) by S.I. 2013/1881 Sch. para. 25(b)
–     s. 22 applied by SI 2007/2157 reg. 23(6) (as inserted) by S.I. 2013/1881 Sch. para. 31(5)(b)
–     s. 22 applied by SI 2008/1741 reg. 112(5) (as inserted) by S.I. 2013/1881 Sch. para. 37(b)
–     s. 22 applied by SI 2008/570 Sch. para. 11(2) (as substituted) by S.I. 2013/1881 Sch. para. 35
–     s. 22 applied by SI 2008/700 Sch. para. 12(2) (as substituted) by S.I. 2013/1881 Sch. para. 36
–     s. 22 applied by SI 2012/2079 reg. 2(1A) (as inserted) by S.I. 2013/1881 Sch. para. 44(a)(ii)
–     s. 22 applied by SI 2013/380 Sch. 6 para. 11(9) (as inserted) by S.I. 2013/1881 Sch. para. 45(b)
–     s. 22 applied by SSI 2011/141 Sch. 4 para. 1(2) (as substituted) by S.I. 2013/1881 Sch. para. 43(a)
–     s. 22 heading substituted by 2012 c. 21 s. 7(1)(d)
–     s. 22(1A) inserted by 2012 c. 21 s. 7(1)(a)
–     s. 22(3) words inserted by 2012 c. 21 s. 7(1)(b)
–     s. 22(6) inserted by 2012 c. 21 s. 7(1)(c)

– s. 285(2)(b) substituted by 2012 c. 21 s. 28(2)
– s. 285(3) words substituted by 2012 c. 21 s. 28(3)
– s. 285(3) words substituted by S.I. 2013/504 reg. 3(3)(b)
– s. 285(3A) inserted by S.I. 2013/504 reg. 3(3)(c)
– s. 285(4) inserted by 2012 c. 21 s. 28(4)
– s. 285A inserted by 2012 c. 21 s. 29(1)
– s. 285A(3)(c) words substituted by S.I. 2013/504 reg. 3(4)
– s. 286(1)(a) words substituted by 2012 c. 21 Sch. 8 para. 2(2)
– s. 286(4A) words substituted by 2012 c. 21 Sch. 8 para. 2(3)
– s. 286(4C) words substituted by 2012 c. 21 Sch. 8 para. 2(3)
– s. 286(4F) inserted by 2012 c. 21 s. 30
– s. 286(6) words substituted by 2012 c. 21 Sch. 8 para. 2(3)
– s. 287(1) words substituted by 2012 c. 21 Sch. 8 para. 3(2)
– s. 287(2) words substituted by 2012 c. 21 Sch. 8 para. 3(2)
– s. 287(3)(a) words inserted by 2012 c. 21 Sch. 8 para. 3(3)(a)
– s. 287(3)(b) words substituted by 2012 c. 21 Sch. 8 para. 3(3)(b)
– s. 287(3)(d) words substituted by 2012 c. 21 Sch. 8 para. 3(3)(c)
– s. 287(3)(e) words substituted by 2012 c. 21 Sch. 8 para. 3(3)(c)
– s. 288(1)(1A) substituted for s. 288(1) by S.I. 2013/504 reg. 3(5)(a)
– s. 288(1) words substituted by 2012 c. 21 Sch. 8 para. 4(2)
– s. 288(2) words substituted by 2012 c. 21 Sch. 8 para. 4(3)(a)
– s. 288(2) words substituted by S.I. 2013/504 reg. 3(5)(b)
– s. 288(2)(d) words substituted by 2012 c. 21 Sch. 8 para. 4(3)(b)
– s. 288(3)(b) words inserted by 2012 c. 21 Sch. 8 para. 4(4)
– s. 289(1) words substituted by 2012 c. 21 Sch. 8 para. 5
– s. 289(2) words substituted by 2012 c. 21 Sch. 8 para. 5
– s. 289(3) words substituted by 2012 c. 21 Sch. 8 para. 5
– s. 289(4) inserted by S.I. 2013/504 reg. 3(6)
– s. 290(1) substituted by S.I. 2013/504 reg. 3(7)(a)
– s. 290(1) words substituted by 2012 c. 21 Sch. 8 para. 6(2)(a)
– s. 290(1) words substituted by 2012 c. 21 Sch. 8 para. 6(2)(b)
– s. 290(1B) words substituted by 2012 c. 21 Sch. 8 para. 6(3)
– s. 290(1D) inserted by S.I. 2013/504 reg. 3(7)(b)
– s. 290(2) omitted by 2012 c. 21 Sch. 8 para. 6(4)
– s. 290(3) words inserted by S.I. 2013/504 reg. 3(7)(c)
– s. 290(3) words substituted by 2012 c. 21 Sch. 8 para. 6(5)
– s. 290(5) words inserted by S.I. 2013/504 reg. 3(7)(d)
– s. 290(6) omitted by 2012 c. 21 Sch. 8 para. 6(6)
– s. 290(7) words inserted by S.I. 2013/504 reg. 3(7)(e)
– s. 290A(1) words substituted by 2012 c. 21 Sch. 8 para. 7(2)(a)
– s. 290A(1) words substituted by 2012 c. 21 Sch. 8 para. 7(2)(b)
– s. 290A(1)(a) word omitted by 2012 c. 21 Sch. 8 para. 7(2)(c)
– s. 290A(1)(c) and word inserted by 2012 c. 21 Sch. 8 para. 7(2)(d)
– s. 290A(3) words substituted by 2012 c. 21 Sch. 8 para. 7(3)
– s. 290A(6) substituted by S.I. 2013/504 reg. 3(9)
– s. 292(1) word substituted by S.I. 2013/504 reg. 3(10)(a)
– s. 292(2) words substituted by 2012 c. 21 Sch. 8 para. 8

–    s. 292(2)(b) words inserted by S.I. 2013/504 reg. 3(10)(b)
–    s. 292(3)(c) words substituted by 2012 c. 21 Sch. 8 para. 8
–    s. 292(3)(d) words substituted by 2012 c. 21 Sch. 8 para. 8
–    s. 292(4) words substituted by 2012 c. 21 Sch. 8 para. 8
–    s. 292(5)(c) words substituted by 2012 c. 21 Sch. 8 para. 8
–    s. 292(6) inserted by S.I. 2013/504 reg. 3(10)(c)
–    s. 292A(1) word substituted by 2012 c. 21 Sch. 8 para. 9
–    s. 292A(3) word substituted by 2012 c. 21 Sch. 8 para. 9
–    s. 292A(5) word substituted by 2012 c. 21 Sch. 8 para. 9
–    s. 292A(6) word substituted by 2012 c. 21 Sch. 8 para. 9
–    s. 293(1)-(3) words substituted by 2012 c. 21 Sch. 8 para. 10(2)
–    s. 293(5) words substituted by 2012 c. 21 Sch. 8 para. 10(2)
–    s. 293(6) words substituted by 2012 c. 21 Sch. 8 para. 10(3)(c)
–    s. 293(6)(a) words inserted by 2012 c. 21 Sch. 8 para. 10(3)(a)
–    s. 293(6)(b) words substituted by 2012 c. 21 Sch. 8 para. 10(3)(b)
–    s. 293(7) words substituted by 2012 c. 21 Sch. 8 para. 10(4)(c)
–    s. 293(7)(a) words inserted by 2012 c. 21 Sch. 8 para. 10(4)(a)
–    s. 293(7)(b) words inserted by 2012 c. 21 Sch. 8 para. 10(4)(b)
–    s. 293(9) words substituted by 2012 c. 21 Sch. 8 para. 10(5)
–    s. 293A substituted by 2012 c. 21 Sch. 8 para. 11
–    s. 294(1) words substituted by 2012 c. 21 Sch. 8 para. 12
–    s. 294(2) words substituted by 2012 c. 21 Sch. 8 para. 12
–    s. 294(4) words substituted by 2012 c. 21 Sch. 8 para. 12
–    s. 294(6) words substituted by 2012 c. 21 Sch. 8 para. 12
–    s. 295(1) words substituted by 2012 c. 21 Sch. 8 para. 13(2)
–    s. 295(2) words substituted by 2012 c. 21 Sch. 8 para. 13(3)
–    s. 295(3) words substituted by 2012 c. 21 Sch. 8 para. 13(4)
–    s. 295(4) omitted by 2012 c. 21 Sch. 8 para. 13(5)
–    s. 296 heading words substituted by 2012 c. 21 Sch. 8 para. 14(8)
–    s. 296(1) words substituted by 2012 c. 21 Sch. 8 para. 14(2)
–    s. 296(1A) words substituted by 2012 c. 21 Sch. 8 para. 14(3)(a)
–    s. 296(1A) words substituted by 2012 c. 21 Sch. 8 para. 14(3)(b)
–    s. 296(2) words substituted by 2012 c. 21 Sch. 8 para. 14(4)
–    s. 296(2A) words substituted by 2012 c. 21 Sch. 8 para. 14(5)(a)
–    s. 296(2A)(a) words substituted by 2012 c. 21 Sch. 8 para. 14(5)(b)(i)
–    s. 296(2A)(a) words substituted by 2012 c. 21 Sch. 8 para. 14(5)(b)(ii)
–    s. 296(2A)(b) words substituted by 2012 c. 21 Sch. 8 para. 14(5)(c)
–    s. 296(3) words substituted by 2012 c. 21 Sch. 8 para. 14(6)
–    s. 296(4) words substituted by 2012 c. 21 Sch. 8 para. 14(7)
–    s. 297(1) words inserted by S.I. 2013/504 reg. 3(12)(a)
–    s. 297(1) words substituted by 2012 c. 21 Sch. 8 para. 15(2)
–    s. 297(1A) inserted by S.I. 2013/504 reg. 3(12)(b)
–    s. 297(2) words inserted by S.I. 2013/504 reg. 3(12)(c)
–    s. 297(2) words substituted by 2012 c. 21 Sch. 8 para. 15(2)
–    s. 297(2A) words inserted by S.I. 2013/504 reg. 3(12)(d)
–    s. 297(2A) words omitted by 2012 c. 21 Sch. 8 para. 15(3)(a)(ii)
–    s. 297(2A) words substituted by 2012 c. 21 Sch. 8 para. 15(3)(a)(i)
–    s. 297(2A)(a) words inserted by 2012 c. 21 Sch. 8 para. 15(3)(b)
–    s. 297(2A)(b) words inserted by 2012 c. 21 Sch. 8 para. 15(3)(b)
–    s. 297(2A)(c) words substituted by 2012 c. 21 Sch. 8 para. 15(3)(c)
–    s. 297(2C) inserted by 2012 c. 21 Sch. 8 para. 15(4)
–    s. 297(5) words substituted by 2012 c. 21 Sch. 8 para. 15(5)
–    s. 297(6) inserted by S.I. 2012/916 reg. 2(10)
–    s. 297(6) words substituted by 2012 c. 21 Sch. 8 para. 15(5)
–    s. 298 applied (with modifications) by 1998 c. 40 s. 170B(9) (as inserted) by S.I. 2013/504 s. 170B(9)
–    s. 298(1) words inserted by 2012 c. 21 Sch. 8 para. 16(a)
–    s. 298(1) words substituted by 2012 c. 21 Sch. 8 para. 16(b)

– s. 298(1)(b) omitted by 2012 c. 21 s. 32(2)
– s. 298(1)(c) omitted by 2012 c. 21 s. 32(2)
– s. 298(2)(a) words substituted by 2012 c. 21 Sch. 8 para. 16(b)
– s. 298(3) words substituted by 2012 c. 21 Sch. 8 para. 16(b)
– s. 298(3)(b) omitted by 2012 c. 21 s. 32(3)
– s. 298(3)(c) omitted by 2012 c. 21 s. 32(3)
– s. 298(4) substituted by 2012 c. 21 s. 32(4)
– s. 298(5) words substituted by 2012 c. 21 Sch. 8 para. 16(b)
– s. 298(6) words inserted by 2012 c. 21 Sch. 8 para. 16(a)
– s. 298(6) words substituted by 2012 c. 21 Sch. 8 para. 16(b)
– s. 298(6)(b) and word omitted by 2012 c. 21 s. 32(5)
– s. 298(7) words inserted by 2012 c. 21 Sch. 8 para. 16(a)
– s. 298(7) words substituted by 2012 c. 21 s. 32(6)
– s. 298(7) words substituted by 2012 c. 21 Sch. 8 para. 16(b)
– s. 298(8) words substituted by 2012 c. 21 Sch. 8 para. 16(b)
– s. 299(1) words substituted by 2012 c. 21 Sch. 8 para. 17
– s. 299(2) words substituted by 2012 c. 21 Sch. 8 para. 17
– s. 300A heading words substituted by 2012 c. 21 Sch. 8 para. 18(b)
– s. 300A(1) words substituted by 2012 c. 21 Sch. 8 para. 18(a)
– s. 300A(2) words substituted by 2012 c. 21 Sch. 8 para. 18(b)
– s. 300A(4) words substituted by 2012 c. 21 Sch. 8 para. 18(b)
– s. 300B words substituted by 2012 c. 21 Sch. 8 para. 19
– s. 300C heading words substituted by 2012 c. 21 Sch. 8 para. 20
– s. 300C(1) words substituted by 2012 c. 21 Sch. 8 para. 20
– s. 300C(2)(a) words substituted by 2012 c. 21 Sch. 8 para. 20
– s. 300C(3) words substituted by 2012 c. 21 Sch. 8 para. 20
– s. 300C(4)(a) words substituted by 2012 c. 21 Sch. 8 para. 20
– s. 300C(4)(b) words substituted by 2012 c. 21 Sch. 8 para. 20
– s. 300D heading words substituted by 2012 c. 21 Sch. 8 para. 21(4)
– s. 300D(1)-(4) words substituted by 2012 c. 21 Sch. 8 para. 21(2)
– s. 300D(5)(a) words substituted by 2012 c. 21 Sch. 8 para. 21(2)
– s. 300D(5)(b) words substituted by 2012 c. 21 Sch. 8 para. 21(2)
– s. 300D(6) words substituted by 2012 c. 21 Sch. 8 para. 21(3)(a)
– s. 300D(6)(b) words substituted by 2012 c. 21 Sch. 8 para. 21(3)(b)(i)
– s. 300D(6)(b) words substituted by 2012 c. 21 Sch. 8 para. 21(3)(b)(ii)
– s. 300D(6)(c)(i) words substituted by 2012 c. 21 Sch. 8 para. 21(3)(c)
– s. 300D(6)(c)(ii) words substituted by 2012 c. 21 Sch. 8 para. 21(3)(c)
– s. 300E(3) words substituted by S.I. 2013/504 reg. 3(13)
– s. 301(2) words substituted by 2012 c. 21 Sch. 8 para. 22(2)
– s. 301(3) words substituted by 2012 c. 21 Sch. 8 para. 22(3)(a)
– s. 301(3) words substituted by 2012 c. 21 Sch. 8 para. 22(3)(b)
– s. 301(4)(a) words substituted by 2012 c. 21 Sch. 8 para. 22(4)
– s. 301(6)(a) words substituted by 2012 c. 21 Sch. 8 para. 22(4)
– s. 301(7) words substituted by 2012 c. 21 Sch. 8 para. 22(4)
– s. 301(9) words substituted by 2012 c. 21 Sch. 8 para. 22(4)

– Sch. 1 para. 6(1) words inserted by S.I. 2012/1906 art. 3(17)(a)
– Sch. 1 para. 6(3) words inserted by S.I. 2012/1906 art. 3(17)(b)
– Sch. 1 para. 6(1) words inserted by S.I. 2012/2554 reg. 2(16)(a)
– Sch. 1 para. 6(3) words inserted by S.I. 2012/2554 reg. 2(16)(b)

**Changes and effects yet to be applied to the whole Act associated Parts and Chapters:**

– Act excluded by 2012 c. 7 s. 134(5)
– Act excluded by 2008 c. 10 s. 8(1A) (as inserted) by S.I. 2013/1881 Sch. para. 14(a)
– Act modified by S.I. 2007/3510 art. 9
– Act modified by 1990 c. 41 s. 107(17) (as inserted) by S.I. 2013/1881 Sch. para. 2(3)

– s. 1Q modified by S.I. 2013/1881 art. 65(3)(b)
– s. 22A 22B inserted by 2012 c. 21 s. 9

- –    s. 285(1)(b)-(d) substituted for s. 285(1)(b) and word by S.I. 2013/504 reg. 3(3)(a)
- –    s. 290ZA inserted by S.I. 2013/504 reg. 3(8)
- –    s. 296A inserted by 2012 c. 21 s. 31
- –    s. 296A heading words substituted by S.I. 2013/504 reg. 3(11)(a)
- –    s. 296A(1) words substituted by S.I. 2013/504 reg. 3(11)(b)(i)
- –    s. 296A(1)-(4) words substituted by S.I. 2013/504 reg. 3(11)(c)
- –    s. 296A(1)(c) words omitted by S.I. 2013/504 reg. 3(11)(b)(ii)

- –    Sch. 1ZA 1ZB substituted for Sch. 1 by 2012 c. 21 Sch. 3

**Commencement Orders yet to be applied to the Financial Services and Markets Act 2000**

Commencement Orders bringing legislation that affects this Act into force:

- –    S.I. 2003/3142 art. 2-4 Sch. 1 2 commences (2003 c. 21)

# EXHIBIT C

Search Help
HANSARD 1803–2005 → 2000s → 2000 → March 2000 → 30 March 2000 → Lords Sitting

**Financial Services and Markets Bill**

*HL Deb 30 March 2000 vol 611 cc912-81*

*3.35 p.m.*

*Lord McIntosh of Haringey* My Lords, I beg to move that the House do now again resolve itself into Committee on this Bill.

Moved, That the House do now again resolve itself into Committee.—(Lord McIntosh of Haringey.)

*On Question, Motion agreed to.*

*House in Committee accordingly.*

*[The CHAIRMAN OF COMMITTEES in the Chair.]*

*Clause 202 [Notice for payment]:*

*Lord Fraser of Carmyllie* moved Amendment No. 241N: 'Page 102, line 12, at end insert ("unless an appeal has been made to the Tribunal").' The noble and learned Lord said: This amendment has been prompted by the Law Society of Scotland and is essentially probing in nature. I trust that the Government will respond to it in that fashion. A number of other amendments have been prompted by the Law Society of Scotland. In the main, they are of the same character. However, I am bound to say to the Government that a number of administrative decisions may be taken before we reach Report stage on the Bill. If the Minister is not already aware, I hope he will take step; to appreciate that if the decisions are taken in a certain way, they are fraught with constitutional sensitivities and could cause some very real upset north of the Border.

I can be brief on the amendment because I discover from the Marshalled List that the Minister has indicated that it is his intention to oppose the Question that Clause 202 stand part of the Bill. I shall listen with care to what he has to say about that to try to understand his justification for doing so and what amendments he himself proposes in the fullness of time to bring forward. It will not be a new experience for us but it will be useful to know what the amendments are going to be.

The short point that arises here is that if a notice of penalty is to be given to an authorised person under Clause 202, the notice for payment must be in writing and require the person to pay the penalty before the end of such period as specified in the notice. From looking back to the preceding clause, Clause 201, I understand that in such circumstances where a decision notice has been given to an authorised person and where that indicates that there is a proposal to impose a penalty under Clause 199, the opportunity is then given to the authorised person to refer that matter to the tribunal. There is, if one likes, a right of appeal against such a decision notice.

However, unless I am missing the point, there seems to be something rather surprising and unusual here. If one takes that circumstance, and if indeed an appeal has been marked or a requirement that it should be taken up before a tribunal, notwithstanding that indication by the authorised person, he still has to pay the penalty, however vigorously he wishes to reject the imposition of the penalty on him before the tribunal. A more appropriate course would seem to be that suggested by the amendment; namely, until the matter has been satisfactorily resolved one way or another before a tribunal, there should be no requirement on the authorised person to pay the penalty. That is what I

*Clause 284 [Liability in relation to recognised body's regulatory functions]:*

<u>Lord Kingsland</u> moved Amendment No. 256A: 'Page 146, line 33, at end insert(",reckless or negligent").' The noble Lord said: Part XVIII relates to recognised investment exchanges and clearing houses, called "recognised bodies". Clause 284(1) provides that a recognised body and its officers and staff will not be liable in damages for anything done or omitted in the discharge of that body's regulatory functions unless it is shown that the act or omission was in bad faith.

The amendment concerns the old chestnut of immunity from damages. In the first version of the Bill, the provision provided immunity from liability in damages only to the members of the relevant recognised body. However, the Government subsequently introduced amendments which extended the immunity to claims by all persons. The amendment adds the words "reckless or negligent" to the end of the provision. The next amendment adds to Clause 284(2) the words, 'or was in breach of Community law",' as a further exclusion from the immunity provision.

Some Members of the Committee may recall that in an earlier part of the Bill giving statutory immunity to the authority itself, similar amendments were added to a similar immunity clause. Therefore, the Opposition's approach to the position of recognised bodies with respect to statutory immunity is exactly the same as it has been in relation to the authority.

So far as concerns Amendments Nos. 257B and 257C, Clause 293(1) requires the authority to make arrangements for the investigation of complaints about a recognised body. Amendment No. 257B would require the appointment of an independent person to investigate complaints. Amendment No. 257C would add new provisions which would allow the investigator to make recommendations to the authority on the steps, if any, which a recognised body should take to remedy a complaint which is well founded. Specified steps may include the payment by the recognised body of a specified sum to a specified person.

The Committee may recall that, with respect to recognised exchanges, originally the concept was not to give them statutory immunity. However, as I pointed out earlier, the Bill now gives it to them. In those circumstances, it is our contention that at this point it is necessary to inject into the Bill a counterbalance in the form of a genuinely independent complaints investigator who will mirror the independent complaints investigator whom we seek in relation to the authority.

We place very great importance on this amendment and we earnestly hope that the Government will feel inclined to accept it. I beg to move.

*7 p.m.*

<u>Lord McIntosh of Haringey</u> Clause 284 gives recognised investment exchanges and clearing houses statutory immunity from liability in damages in respect of anything done or omitted in the discharge of their regulatory functions. I want to emphasise "regulatory functions" because those bodies have commercial functions and there is no immunity from them.

Amendments Nos. 256A and 256B seek to cut back on the scope of the immunity by removing it, first, in cases where the action complained of was reckless or negligent and, secondly, where the body concerned was in breach of European Community law. Of course, we considered similar amendments when we dealt with the statutory immunity of the FSA. The noble Lord, Lord Kingsland, will not be surprised to hear that I cannot accept these amendments any more than I could on the earlier occasion.

So far as concerns Amendment No. 256A, there is a balance to be struck in granting immunity. It must be sufficiently broad to enable the regulatory body to carry out its functions effectively without being inhibited by the threat of

litigation. At the same time, it must not restrict unreasonably the ability of those who feel that they have been adversely affected by its actions to seek legal redress. I believe that the formula that we have proposed of allowing actions where the regulator has acted in bad faith, or where this concerns Section 6(1) of the Human Rights Act or through judicial review, strikes the right balance.

Like the FSA, the exchanges will have to take difficult regulatory decisions, sometimes very rapidly and perhaps without all the information about a situation which subsequently will be available. If they needed to be constantly alert to the possibility of an action alleging recklessness or negligence, that could seriously interfere with their effective functioning. They need to be able to devote their mind to the proper running of the market and not to be distracted by legal action. That is not only my view; it was the view of the Joint Committee of both Houses which considered the draft Bill.

On one level, Amendment No. 256B is simply unnecessary. The Bill does not, and cannot, override any obligations of European Community law to which the recognised Bodies may be subject. Therefore, there is no need for such an amendment. As I said when we debated the FSA's immunity, the responsibility for ensuring that proper effect is given to the UK's Community obligations is one which rests primarily with the Government. Where it is necessary for regulatory bodies to take action in order to implement a directive, the Government must ensure that relevant action is taken. If they fail to do so, the United Kingdom will be in breach of its Community obligations and the Government will be the proper respondent in infraction proceedings.

That is one reason why Clause 289 gives the FSA a power to give directions to recognised bodies which are in breach of their recognition requirements. If the recognised body was in breach of European Community law, undoubtedly it would be in breach of those requirements. If it did not take action to put matters right, the FSA would be able to make use of that power. However, if for some reason the FSA was reluctant to do that, the Treasury would be able to make use of its power under Clause 389 to direct the FSA to take action in order to ensure that the UK remained in compliance with its international obligations.

Amendments Nos. 257B and 257C deal with Clause 293, which gives the FSA power to make arrangements for the investigation of complaints against authorised bodies. I can understand what lies behind the amendments but still I cannot accept them. They seek to provide in the Bill for matters that we believe should be dealt with in the regulations which we shall make after the Bill comes into force. Those regulations will set out the recognition requirements for recognised bodies.

Clause 293 requires the FSA to make arrangements for the investigation of a complaint which is relevant to the question of whether a recognised body should remain a recognised body. Therefore, if someone felt that a recognised exchange or clearing house had taken action which was not in accordance with the recognition requirements—that is, the basic rules with which exchanges and clearing houses must comply in order to become and remain recognised—he would be able to complain to the FSA. If the FSA felt that that complaint demonstrated that the body did not meet the recognition requirements, it would be able to give the body concerned directions under the powers of Clause 289 or, in an extreme case, to revoke its recognition under Clause 291.

Therefore, the clause deals with complaints of major problems within a recognised body which are such that the FSA might be moved to intervene. However, it does not deal (because that is not its purpose) with what might be called "day-to-day" complaints where a person does not allege that the body is not fit to continue to be recognised but, nevertheless, has what might be a legitimate grievance which, rightly, he would expect to be addressed.

Although such complaints would not call into question the continuing recognition of the body concerned, that does not mean that they are not important. Indeed, I believe that it was that type of complaint that the Joint Committee had in mind when it said that the extension of immunity should be conditional on there being an adequate complaints

procedure in place in each body. We accepted that recommendation of the Joint Committee. However, rather than put any requirements for complaints procedures on the face of the Bill, we continue to believe that the better way to deal with this matter is through the recognition requirements. This refers back to the point made by the noble and learned Lord, Lord Donaldson.

The draft recognition requirements on which we consulted last year currently require recognised bodies to have in place satisfactory arrangements for the investigation of complaints in respect of the use of their facilities. In due course, we shall review those requirements before we make regulations to bring them into effect. They will ensure that the complaints arrangements which a recognised body will be required to maintain provide for adequate and independent investigation of complaints about how it has acted.

*Lord Elton* Perhaps I may intervene because this matter reads across to a letter which the noble Lord, Lord McIntosh, was kind enough to write to me in which he says that, 'wrongful payment due to the negligence of an institution holding clients money in an account held by an authorised person will not make the institution liable, as constructive trustee, under Clause 131(4) of the Bill. The institution has to be acting dishonestly—'legal semantics will no doubt explain how a trustee can be either reckless or negligent and still be honest— 'before liability as constructive trustee is incurred.''There is nothing elsewhere in the Bill to make such an institution liable for negligence. An authorised person who placed their clients money on trust might well have a case for action for negligence".' However, it is the client—I am reading the noble Lord's words. If they seem surprising, I shall read them again.

*Lord McIntosh of Haringey* I express concern only because the letter did not refer to recognised investment exchanges; it referred to constructive trusteeship.

*Lord Elton* I stand corrected. However, I am trying to address a principle. If I come by the side door. I apologise. What puzzles me is that I believed that the Bill set out to provide a complete umbrella over the financial services industry and to protect all the customers or clients of the financial services industry by regulating practitioners in that industry. But here, as my noble friend pointed out, there is a large area where the penalties are not provided to extend that protection to those who may suffer as a result of the negligence or recklessness of the authorised persons.

It seems to me that that runs against the grain of the Bill itself. Before the Minister answers my noble friend in detail, perhaps he will reassure me that that is not against the philosophy of the Bill and that, by some means, clients are still protected and will not have to seek more expensive recourse outside the provisions of the Bill than the Bill itself provides.

==*Lord McIntosh of Haringey* I thought that that is what I said when I answered the noble Lord, Lord Kingsland, in detail. After all, the existence of a recognised investment exchange or a clearing house is, in a sense, a privilege because, although the FSA is responsible, as the noble Lord, Lord Elton said, for the whole of the financial services market, nevertheless, it delegates some of its responsibilities under certain circumstances to recognised investment exchanges and clearing houses.==

It must then ensure—and I thought I spent quite a long time showing how it did so—that there are adequate procedures for the protection of the consumers of the products of those recognised investment exchanges and clearing houses. I made it clear that our view is that they should not be on the face of the Bill but should appear in recognition requirements. I made it clear that we have already published draft recognition requirements to bring that into effect and that, following consultation, we were proposing to bring into effect suitable recognition requirements to cover all those points after the Bill comes into force.

*Lord Donaldson of Lymington* I support the Government's reluctance, indeed, refusal, to alter the immunity provisions as contained in the Bill. Members of the Committee must remember that this is a field where there is a lot of money swilling about. While the ordinary man in the street will hesitate, unless he is a lunatic, to start litigating as a tactical

# EXHIBIT D

Search Help

HANSARD 1803–2005 → 2000s → 2000 → March 2000 → 16 March 2000 → Lords Sitting

# Financial Services and Markets Bill

*HL Deb 16 March 2000 vol 610 cc1769-804*

*8.36 p.m.*

*House again in Committee on Schedule 1.*

*Lord Saatchi moved Amendment No. 33:*

*Page 219, line 34, after ("2(3);") insert— '("() the costs and expenses incurred by the Authority in the period covered by the report, a break-down of those costs and expenses and a comparison with the corresponding costs and expenses incurred in the previous year; ''() the fees paid to the Authority under rules made under paragraph 17 in the period covered by the report and a comparison with the fees paid in the previous year; ''() a review of the costs incurred by the Authority in the period covered by the report in comparison with the costs incurred by regulators in other jurisdictions; ''() the work of the investigator and any action taken by the Authority in response to criticisms of the Authority's conduct made by the investigator; ''() the operation of the penalties scheme referred to in paragraph 16 in the period covered by the report and a comparison with the operation of the penalties scheme in the previous year;").'*

*The noble Lord said: At present, under paragraph 10(1) of Schedule 1, the FSA must at least once a year make a report to the Treasury on the matters set out in headings (a) to (c) of paragraph 10(1). There is also a provision for the Treasury from time to time to direct on other matters on which it wishes to receive a report.*

*The purpose of the amendment is to spell out specific further items which we should like to see included in the FSA's report to ensure full accountability in its activities. The first section of the amendment would ensure that a breakdown of costs and expenses incurred by the FSA in the period covered by the report would be included and that a comparison would also be provided with the corresponding costs and expenses of the previous year. It is one of the most basic of the generally accepted accounting principles that readers of a financial report are provided with a comparison of performance with the previous accounting period.*

*The second section of the amendment states that the fees paid to the FSA under rules made under paragraph 17— these are fees paid to the FSA by authorised persons to cover the FSA's expenses—should be detailed and that a comparison with the fees paid in the previous year should also be included in the report. The purpose is to make more transparent the amount of fees paid to the FSA by the community that it is regulating and to be able to disclose how those fees have increased from one year to another.*

*The third additional section that we should like to see in the report is a calculation of the costs of regulation in the UK as against those incurred by regulators in other jurisdictions. The regulated community itself and many others will want to see this level of transparency and comparability.*

*Under the fourth section of the amendment we aim to see a description of the work of the independent complaints investigator as referred to in paragraph 8. In addition, we should like to see described the action taken by the FSA in response to any criticisms of the FSA's conduct made by the investigator following the investigation by him of complaints against the authority.*

*The final part of the amendment details the operation of the penalties scheme and the provision of a comparison with the previous year. We believe that these are reasonable minimum requirements for the disclosure of performance*

On these Benches, we are absolutely at one with the Government in wanting to create a forceful regulatory body which can carry out an extremely difficult task in an extremely naughty world. There is no question but that the powers given are commensurate with the power of some of the financial bodies and agencies which operate in the global financial market. Having said that, we return to the question of balance and public confidence. It would not be in the long-term interests of the authority and its staff to have the extent of the immunity granted by the Bill as it now stands because, as I suspect all of us—certainly the lawyers among us—know only too well, proving bad faith is an extremely difficult test to establish. We are well aware also of the current extremely ineffectual provisions in the City which do not do their job satisfactorily.

I suggest that the addition of those words will not open the floodgates to a vast amount of speculative legal action. If one considers the purview of the old Monopolies and Mergers Commission, which had no immunity whatever—it was open to the full extent of the common law—I am not aware that it was the subject of much, if any, litigation. I believe that by adding those words we are widening in a sensible way the prospect of commencing and succeeding in an action against the authority.

During the supper break I looked up the definition of "recklessness" in Halsbury's Law. Definitions vary according to the context in which they arise. Broadly, recklessness is acting in a manner, 'which creates an obvious and serious risk' of damage to the other person. An obvious and serious risk seems to be fair, not just plain common or garden negligence.

I am sure that Members of the Committee know that bad faith is dishonesty. As I said, that is extremely difficult to establish, particularly within a bureaucracy. I suggest, therefore, that the amendment proposed, far from weakening the Bill, will strengthen it. It will give the financial community a good deal of reassurance.

 *9.30 p.m.*

<u>*Lord Grabiner*</u> The thrust of the proposed amendments is that although the claimant can sue for damages if he is the victim of bad faith behaviour and infringements of the <u>Human Rights Act</u>, and although in addition he is free to sue for judicial review, those remedies are insufficient. It is said that claimants should, in addition, be allowed to sue variously for negligence and recklessness, and that on that footing the FSA and its officers and staff should not be immune from liability. I respectfully agree with the observations of the noble and learned Lord, Lord Donaldson, and the noble Lord, Lord Bagri. Perhaps I may refer to the points and develop them briefly.

First, if the matters complained of by an individual complainant reveal conduct that is so unreasonable to the extent that no reasonable regulator could have acted in such a way, that is behaviour which will, by definition, be caught by the judicial review principles which are now well established and, indeed, for which many government Ministers over the years have had to pay, to the greater or more efficient performance of their statutory and other responsibilities.

There will, therefore, be a remedy which will be sufficient to ensure that the FSA will behave itself. If in the exceedingly improbable event that the FSA finds itself confronted with numerous successful applications for judicial review, it will be obvious that something has gone fundamentally wrong. I believe that the existence of a remedy of judicial review will be a sufficient control over the improbability of that sort of behaviour developing.

My second point particularly supports the observations of the noble and learned Lord, Lord Donaldson. In my view we would do a great public disservice if we agreed an amendment which turned this legislation into a paradise for lawyers. Contrary to popular belief among some lawyers, it is not the function of legislation to satisfy the hunger of lawyers. It is tolerably clear what is meant by "bad faith". It is also clear what is meant by "judicial review" and the circumstances when judicial review arises.

The problem is that once the concept of negligence is introduced into legislation of this kind, it will be—I speak from bitter experience—impossible to restrain clients who are told that they can simply complain about unreasonable behaviour as a basis for starting litigation against the FSA. There would be no end to litigation and much of that litigation would be nothing short of nonsense.

I turn to "recklessness". In my view, if that word was to be introduced, it would inevitably lead to endless litigation. In English law, notwithstanding whatever the noble Lord may have discovered in the dictionary, this is an exceedingly elusive concept.

*Lord Phillips of Sudbury* I thank the noble Lord for allowing me to intervene. I did not consult a dictionary, but Halsbury's Laws, to which even he may defer.

*Lord Grabiner* That would depend on who was the editor of the particular volume, so I should like to reserve my position.

"Recklessness" is a very elusive word. Without wearying noble Lords with the detail, it has, first, given rise to enormous difficulty in the criminal law. Secondly, in the context of the civil law, it is usually found in discussion about what is meant by fraudulent, reckless or deceitful misrepresentations, as in making reckless statements at the point of a bargain where the provider or seller is anxious to do the deal and goes much too far in making exaggerated claims for the product. That kind of exercise is no doubt interesting, but inevitably it would involve a great deal of litigation and much activity for lawyers.

I believe that the provision would waste valuable court time; it would result in a waste of time for FSA officials; and there would be a corresponding waste of money. Finally, and most importantly of all, it would distract the attention of FSA officials who ought to be concerned with the functions and furtherance of the interests of the FSA in carrying out its statutory responsibilities.

Perhaps I may also say that I am not suggesting for a moment that the proposed amendments are not well motivated because they do have a certain superficial attraction. However, I believe that they are quite unnecessary and that it would be more appropriate for them to be withdrawn.

*Lord Fraser of Carmyllie* At this stage, I do not think that it is necessary for me to elaborate on any of the arguments that have been advanced by the noble Lord, Lord Grabiner, the noble and learned Lord, Lord Donaldson, or my noble friend Lord Bagri.

The line I should like to suggest to the Government—here I hope that I am kicking at an open door—is this. As I understand the scheme of the Bill, the "super regulator" should be the Financial Services Authority. In many respects, it wants the responsibilities imposed on it by statute to be discharged by lesser or devolved bodies; that is to say, the recognised investment exchanges. Then, when it comes to matters such as market abuse or whatever it may be, the FSA would expect those bodies to take up the investigation and the approach before the FSA itself took on those tasks. If that is the case and if I have understood it correctly, it seems to me to be entirely right that if a degree of immunity is to be granted to the FSA, it follows that the same degree of immunity should be given to the RIEs or other bodies required to discharge such responsibilities.

I hope that is a self-evident proposition and that I have understood what the FSA and others have told me. However, if I am wrong about that, it would be helpful if the Deputy Chief Whip could explain the position. While I am not in any way threatening the Government, if he cannot do so, we shall need to explore these matters in much greater depth on Report.

I believe that the short and simple answer to this problem is that there should be an equivalence of treatment in terms of immunity. Whatever degree of immunity is conferred on the FSA, exactly the same degree of immunity should be conferred on those who might be required, under the terms of this statute, to discharge their responsibilities to ensure that the markets are properly regulated.

*Lord Burns* I too support the remarks of the noble and learned Lord, Lord Donaldson of Lymington, and the noble Lord, Lord Bagri. During the course of the Joint Committee's investigation I was fully persuaded of the case for statutory immunity on the grounds of the dangers of over-regulation.

Financial supervision requires a lot of difficult judgments and if everything the regulator does is to be subject to threats of legal action, over-regulation and excessive caution will ensue. It is already the case that, if anyone loses money because a bank or security house goes down, the first thing he does is go to the regulator for compensation. That already happens even though statutory immunity exists in relation to banking supervision.

Regulators will become enormously cautious. They will want everything checked. They will want copies and written confirmation of everything that is done. They will regulate and regulate. There is always going to be risk. The only way to avoid risk to a regulator is by pushing up the costs and making life extremely difficult. So, although the idea of statutory immunity is difficult for many of us to live with, the alternative is considerably worse.

*Lord Jenkin of Roding* I should like to add a few brief words. I am not sure that I go along with the noble Lord, Lord Grabiner, on the question of recklessness. I find myself nearer to the views expressed by the noble Lord, Lord Phillips of Sudbury. I did not recognise his definition of "recklessness", though it is a long time since I have had to look into a law book. The phrase that comes to my mind is that recklessness is not caring whether something is true or false.

The situation that I fear may arise is where a keen, enthusiastic regulator—a member of the staff of the regulatory body—goes into a firm, be it an insurance broker or an investment manager and his suspicions are aroused that the business is not being run properly. In that suspicious frame of mind he feels he is being obstructed because personal antagonism has arisen between him and the head of the office. He then realizes that he has not got all the documents he needs to be able to conduct his investigation. He storms out and as he goes he points and says, "Make no mistake, we are going to get you".

Events continue on and finally he goes for an Anton Piller order; the bailiffs go in and all the documents have to be frozen. But it all turns out to be a mare's nest. The business was being perfectly properly run and the situation simply fell foul of human relations. That is not bad faith, but it could be recklessness. He could have got himself into the frame of mind whereby he said, "I am going to get him and hang the consequences". Is there to be no remedy for that?

That is the sort of situation which I can envisage and where, without the word "recklessness" appearing in the schedule, the wronged head of the office would only be able to throw himself on the mercy of the ombudsman. That was one of the points Mr. Herrington made when he gave evidence to the Joint Select Committee of the noble Lord, Lord Burns. If the ombudsman finds that there has been malpractice, then he can now order that there shall be compensation paid. As Mr. Herrington reminded us, that is what happened in the Barlow Clowes case. That was the other way round, of course; The regulator should have recognised that he was dealing with a fraud and failed to. A lot of people lost a lot of money as a result, so compensation was ordered and the DTI had to pay.

That would be the only other remedy available. The noble and learned Lord, Lord Donaldson, shakes his head and my noble friend Lord Bagri says no, so perhaps I had better sit down. But I envisage that kind of case, where extreme damage could be done to a firm and to its reputation and there may be no redress at all.

*Lord Donaldson of Lymington* At the risk of trespassing on the Committee's time, perhaps I can briefly answer that if the FSA goes to the courts and asks for Anton Piller orders or Mareva injunctions or anything of that sort, it will be

# EXHIBIT E

STATUTORY INSTRUMENTS

# 2001 No. 995

# FINANCIAL SERVICES AND MARKETS

## The Financial Services and Markets Act 2000 (Recognition Requirements for Investment Exchanges and Clearing Houses) Regulations 2001

| | | |
|---|---|---|
| *Made* - - - - | | *9th April 2001* |
| *Laid before Parliament* | | *10th April 2001* |
| *Coming into force in accordance with regulation 2* | | |

The Treasury, in exercise of the powers conferred on them by sections 286(1), 426, 427 and 428(3) of the Financial Services and Markets Act 2000(**1**), and with the approval of the Secretary of State under section 286(2) of that Act, hereby make the following Regulations:

**Citation**

**1.** These Regulations may be cited as the Financial Services and Markets Act 2000 (Recognition Requirements for Investment Exchanges and Clearing Houses) Regulations 2001.

**Commencement**

**2.** These Regulations come into force on the day on which sections 290(1) and 292(2) of the Act (which relate to the making of recognition orders) come into force.

**Interpretation**

**3.** (1) In these Regulations—

"the Act" means the Financial Services and Markets Act 2000;

"the Companies Act" means the Companies Act 1989(**2**);

"defaulter" and "default" are to be construed in accordance with section 188(2) of the Companies Act, and references to action taken under the default rules of an exchange or clearing house are to be construed in accordance with section 188(4) of that Act;

---

(**1**) 2000 c. 8.
(**2**) 1989 c. 40.

"exempt activities", in relation to a recognised body, means the regulated activities in respect of which the body is exempt from the general prohibition as a result of section 285(2) or (3) of the Act;

"facilities", in relation to a recognised body, means the facilities and services it provides in the course of carrying on exempt activities, and references to the use of the facilities of an exchange is to be construed in accordance with paragraph (2);

"financial crime" is to be construed in accordance with section 6(3) and (4) of the Act;

"the Financial Services Act" means the Financial Services Act 1986(**3**);

"investments" means investments of a kind specified for the purposes of section 22 of the Act;

"market contract" has the meaning given in section 286(4) of the Act (with reference, in the case of a recognised investment exchange, to section 155(2) of the Companies Act or article 80(2) of the Northern Ireland Order, or in the case of a recognised clearing house, to section 155(3) of the Companies Act or article 80(3) of the Northern Ireland Order) and references to a party to a market contract are to be construed in accordance with section 187 of the Companies Act;

"the Northern Ireland Order" means the Companies (No. 2) (Northern Ireland) Order 1990(**4**); and

"regulatory functions", in relation to a recognised body, has the meaning given in section 291(3) of the Act.

(2)  In these Regulations, references to dealings on an exchange, or transactions effected on an exchange, are references to dealings or transactions which are effected by means of the exchange's facilities or which are governed by the rules of the exchange, and references to the use of the facilities of an exchange include use which consists of any such dealings or entering into any such transactions.

(3)  In these Regulations, except in regulation 6, references to the performance of the functions of a recognised body are references to the carrying on by it of exempt activities together with the performance of its regulatory functions.

### Recognition requirements for investment exchanges

**4.**  Parts I and II of the Schedule set out recognition requirements applying to bodies in respect of which a recognition order has been made under section 290(1)(a) of the Act, or which have applied for such an order under section 287 of the Act.

### Recognition requirements for clearing houses

**5.**  Parts III and IV of the Schedule set out recognition requirements applying to bodies in respect of which a recognition order has been made under section 290(1)(b) of the Act, or which have applied for such an order under section 288 of the Act.

### Method of satisfying recognition requirements

**6.**  (1)  In considering whether a recognised body or applicant satisfies recognition requirements applying to it under these Regulations, the Authority may take into account all relevant circumstances including the constitution of the person concerned and its regulatory provisions and practices within the meaning of section 302(1) of the Act.

---

(2)  Without prejudice to the generality of paragraph (1), a recognised body or applicant may satisfy recognition requirements applying to it under these Regulations by making arrangements for functions to be performed on its behalf by any other person.

(3)  Where a recognised body or applicant makes arrangements of the kind mentioned in paragraph (2), the arrangements do not affect the responsibility imposed by the Act on the recognised body or applicant to satisfy recognition requirements applying to it under these Regulations, but it is in addition a recognition requirement applying to the recognised body or applicant that the person who performs (or is to perform) the functions is a fit and proper person who is able and willing to perform them.

**Dealings and transactions not involving investments**

**7.**  Nothing in these Regulations is to be construed as requiring a recognised investment exchange to limit dealings on the exchange to dealings in investments, or as requiring a recognised investment exchange or recognised clearing house to limit the provision of its clearing services to clearing services in respect of transactions in investments.

**Exchanges and clearing houses which do not enter into market contracts**

**8.**  Nothing in Parts II or IV of the Schedule is to be taken as requiring a recognised investment exchange or recognised clearing house which does not enter into such contracts as are mentioned in section 155(2)(b) or (3) of the Companies Act to have default rules, or to make any arrangements, relating to such contracts.

**Effect of recognition under the Financial Services Act 1986**

**9.**  (1) In this regulation, "commencement" means the beginning of the day on which subsections (2) and (3) of section 285 of the Act (exemption from the general prohibition for recognised investment exchanges and clearing houses) come into force.

(2)  Subject to paragraph (3), an order under section 37(3) of the Financial Services Act which was in force immediately before commencement has effect after commencement as if it were a recognition order made under section 290(1)(a) of the Act following an application under section 287 of the Act, declaring the body or association to which it relates to be a recognised investment exchange.

(3)  But if the order was made by virtue of section 40(2) of the Financial Services Act (recognition requirements for overseas investment exchanges and clearing houses), it has effect as if it were a recognition order made under section 292(2)(a) of the Act.

(4)  Subject to paragraph (5), an order under section 39(3) of the Financial Services Act which was in force immediately before commencement has effect after commencement as if it were a recognition order made under section 290(1)(b) of the Act following an application under section 288 of the Act, declaring the body or association to which it relates to be a recognised clearing house.

(5)  But if the order was made by virtue of section 40(2) of the Financial Services Act (recognition requirements for overseas investment exchanges and clearing houses), it has effect as if it were a recognition order made under section 292(2)(b) of the Act.

(6)  Where a recognition order has effect by virtue of this regulation, the Authority may not give a notice under section 298(1)(a) of the Act, giving notice of its intention to give a direction under section 296 or to make a revocation order under section 297(2) in relation to the recognised body concerned, earlier than one month after commencement.

(7)  Paragraph (6) is without prejudice to section 298(7) of the Act (which permits the Authority to give a direction under section 296 of the Act without following the procedure set out in section 298,

if the Authority considers it essential to do so), or to the continued effect of any notice which has effect as a notice given under section 298(1)(a) of the Act by virtue of regulation 10(4) below.

**Revocation of recognition: action taken before commencement**

**10.** (1) In this regulation—

(a) "commencement" has the same meaning as in regulation 9 above, and

(b) "relevant person" means—

(i) in relation to action taken in respect of a body or association of the kind described in section 40(1) of the Financial Services Act(**5**) (overseas investment exchanges and clearing houses), the Treasury, or

(ii) in any other case, the Authority.

(2) This regulation applies to action taken by a relevant person before commencement pursuant to section 37(7) or 39(7) of the Financial Services Act(**6**) (which relate to revocation of recognition orders under that Act), or pursuant to subsections (2) to (9) of section 11 of that Act as they had effect by virtue of section 37(7) or 39(7).

(3) Paragraphs (4) to (8) apply where a relevant person has given notice to a body or association under section 11(3) of the Financial Services Act of its intention to revoke a recognition order made under that Act in relation to that body or association, but has not notified the body or association of its determination whether to proceed to revoke that recognition order.

(4) The notice has effect after commencement as if it were a notice given by the Authority under section 298(1)(a) of the Act, giving notice of the Authority's intention to revoke the recognition order which is treated as having effect in relation to the body or association by virtue of regulation 9 above.

(5) If before commencement the relevant person has complied with—

(a) the requirement in subsection (3) of section 11 of the Financial Services Act to bring the notice to the attention of members of the body or association in question, or

(b) the requirement in that subsection to publish the notice to other persons likely to be affected,

the Authority is to be treated as having complied with the equivalent requirement in section 298(1)(b) or (as the case may be) (c) of the Act, in relation to the notice under section 298(1)(a) which has effect by virtue of paragraph (4).

(6) Nothing in paragraph (4) or in the Act is to be treated as changing the length or affecting the continuity of the period within which, in accordance with the notice as originally given, representations might be made by any person to the relevant person pursuant to section 11(5) of the Financial Services Act, but any such representations are to be considered by the Authority as if they were representations made to it pursuant to section 298(3) of the Act.

(7) For the purposes of the Authority's consideration whether to proceed to exercise the power to make a revocation order under subsection (2) of section 297 of the Act (but without prejudice to any exercise by the Authority of that power where it has given a new notice under section 298(1)(a) after commencement), that subsection is to be read as if the reference in paragraph (a) to recognition requirements were a reference to recognition requirements other than new recognition requirements,

---

(**5**)  The functions of the Secretary of State under sections 37, 39 and 40 of the Financial Services Act were transferred to the Financial Services Authority (previously known as the Securities and Investments Board Limited) by S.I. 1987/942, except in relation to bodies or associations of the kind described in section 40(1) of the Financial Services Act 1986 (overseas investment exchanges and clearing houses). In relation to such bodies, these functions of the Secretary of State were transferred to the Treasury by S.I. 1992/1315.

(**6**)  The effect of sections 37(7) and 39(7) of the Financial Services Act is modified by section 40(4)(b) of that Act (in relation to overseas investment exchanges and clearing houses), and section 156 of the Companies Act (in all cases).

and as if the reference in paragraph (b) to obligations were a reference to obligations other than new obligations.

(8) A recognition requirement or obligation is to be treated as a new recognition requirement or obligation if its effect is not substantially the same as the effect of a requirement or obligation of the kind mentioned (or having effect as if mentioned) in section 37(7) (in the case of an investment exchange) or 39(7) (in the case of a clearing house) of the Financial Services Act (as those provisions had effect immediately before commencement).

(9) Paragraph (10) applies where a relevant person has made an order ("the revoking order") under section 37(7) or 39(7) of the Financial Services Act, revoking a recognition order made in relation to a body or association under that Act, but either—

    (a) the revoking order has not taken effect in accordance with section 11(2) of the Financial Services Act, or

    (b) the revoking order has taken effect but contains transitional provisions pursuant to section 11(7) of the Financial Services Act which continued to have effect immediately before commencement.

(10) The revoking order has effect after commencement as if it were a revocation order made by the Authority under section 297 of the Act, revoking (with effect from the date specified in the revoking order) the recognition order which is treated as having effect in relation to the body or association by virtue of regulation 9 above, and as if any such transitional provisions were included in the revocation order by virtue of section 297(5) of the Act.


*David Clelland*
*Clive Betts*
Two of the Lords Commissioners of Her
Majesty's Treasury

15th March 2001


Approved,


*Kim Howells*
Parliamentary Under Secretary of State for
Consumers and Corporate Affairs,
Department of Trade and Industry

9th April 2001

5

**SCHEDULE** <span style="float:right">Regulations 4 and 5.</span>

# PART I

## Recognition requirements for investment exchanges

*Financial resources*

**1.** (1)  The exchange must have financial resources sufficient for the proper performance of its functions as a recognised investment exchange.

(2)  In considering whether this requirement is satisfied, the Authority may (without prejudice to the generality of regulation 6(1)) take into account all the circumstances, including the exchange's connection with any person, and any activity carried on by the exchange, whether or not it is an exempt activity.

*Suitability*

**2.** (1)  The exchange must be a fit and proper person to perform the functions of a recognised investment exchange.

(2)  In considering whether this requirement is satisfied, the Authority may (without prejudice to the generality of regulation 6(1)) take into account all the circumstances, including the exchange's connection with any person.

*Systems and controls*

**3.** (1)  The exchange must ensure that the systems and controls used in the performance of its functions are adequate, and appropriate for the scale and nature of its business.

(2)  Sub-paragraph (1) applies in particular to systems and controls concerning—

    (a)  the transmission of information;

    (b)  the assessment and management of risks to the performance of the exchange's functions;

    (c)  the effecting and monitoring of transactions on the exchange;

    (d)  the operation of the arrangements mentioned in paragraph 4(2)(d) below; and

    (e)  (where relevant) the safeguarding and administration of assets belonging to users of the exchange's facilities.

*Safeguards for investors*

**4.** (1)  The exchange must ensure that business conducted by means of its facilities is conducted in an orderly manner and so as to afford proper protection to investors.

(2)  Without prejudice to the generality of sub-paragraph (1), the exchange must ensure that—

    (a)  access to the exchange's facilities is subject to criteria designed to protect the orderly functioning of the market and the interests of investors;

    (b)  dealings in investments on the exchange are limited to investments in which there is a proper market;

(c) appropriate arrangements are made for relevant information to be made available (whether by the exchange or, where appropriate, by issuers of the investments) to persons engaged in dealing in investments on the exchange;

(d) satisfactory arrangements are made for securing the timely discharge (whether by performance, compromise or otherwise) of the rights and liabilities of the parties to transactions effected on the exchange (being rights and liabilities in relation to those transactions);

(e) satisfactory arrangements are made for recording transactions effected on the exchange, and transactions (whether or not effected on the exchange) which are cleared or to be cleared by means of its facilities;

(f) appropriate measures are adopted to reduce the extent to which the exchange's facilities can be used for a purpose connected with market abuse or financial crime, and to facilitate their detection and monitor their incidence; and

(g) where the exchange's facilities include making provision for the safeguarding and administration of assets belonging to users of those facilities, satisfactory arrangements are made for that purpose.

(3) In sub-paragraph (2)(c), "relevant information" means information which is relevant in determining the current value of the investments.

### *Disclosure by issuers of securities*

**5.** (1) In this paragraph—

"admission to trading", "securities" and "regulated market" are to be construed in accordance with regulation 2 of the Traded Securities (Disclosure) Regulations 1994(**7**);

"the obligation of disclosure" means the obligation imposed by regulation 3 of those Regulations;

"issuer" means a person who is subject to that obligation whose securities are admitted to trading on a regulated market which the exchange regulates and supervises; and

"the relevant securities" means securities in relation to which the obligation of disclosure arises.

(2) The rules of the exchange must enable the exchange, in the event of a failure by an issuer to comply with the obligation of disclosure,—

(a) to discontinue the admission of the relevant securities to trading;

(b) to suspend trading in the relevant securities;

(c) to publish the fact that the issuer has failed to comply with the obligation of disclosure; and

(d) to make public itself any information which the issuer has failed to publish.

(3) This paragraph is without prejudice to the requirement in paragraph 4(2)(c) above.

### *Promotion and maintenance of standards*

**6.** (1) The exchange must be able and willing to promote and maintain high standards of integrity and fair dealing in the carrying on of regulated activities by persons in the course of using the facilities provided by the exchange.

(2) The exchange must be able and willing to cooperate, by the sharing of information or otherwise, with the Authority, with any other authority, body or person having responsibility in the

---

(**7**) S.I. 1994/188.

United Kingdom for the supervision or regulation of any regulated activity or other financial service, or with an overseas regulator within the meaning of section 195 of the Act.

### *Rules and consultation*

**7.** (1)  The exchange must ensure that appropriate procedures are adopted for it to make rules, for keeping its rules under review and for amending them.

(2)  The procedures must include procedures for consulting users of the exchange's facilities in appropriate cases.

(3)  The exchange must consult users of its facilities on any arrangements it proposes to make for dealing with penalty income in accordance with paragraph 8(3) below (or on any changes which it proposes to make to those arrangements).

### *Discipline*

**8.** (1)  The exchange must have effective arrangements for monitoring and enforcing compliance with—

    (a)  its rules (including rules in relation to the provision of clearing services in respect of transactions other than transactions effected on the exchange); and

    (b)  the arrangements made by it as mentioned in paragraph 4(2)(d) above.

(2)  Arrangements made pursuant to sub-paragraph (1) must include procedures for—

    (a)  investigating complaints made to the exchange about the conduct of persons in the course of using the exchange's facilities; and

    (b)  the fair, independent and impartial resolution of appeals against decisions of the exchange.

(3)  Where arrangements made pursuant to sub-paragraph (1) include provision for requiring the payment of financial penalties, they must include arrangements for ensuring that any amount so paid is applied only in one or more of the following ways—

    (a)  towards meeting expenses incurred by the exchange in the course of the investigation of the breach in respect of which the penalty is paid, or in the course of any appeal against the decision of the exchange in relation to that breach;

    (b)  for the benefit of users of the exchange's facilities;

    (c)  for charitable purposes.

### *Complaints*

**9.** (1)  The exchange must have effective arrangements for the investigation and resolution of complaints arising in connection with the performance of, or failure to perform, any of its regulatory functions.

(2)  But sub-paragraph (1) does not extend to—

    (a)  complaints about the content of rules made by the exchange, or

    (b)  complaints about a decision against which the complainant has the right to appeal under procedures of the kind mentioned in paragraph 8(2)(b) above.

(3)  The arrangements must include arrangements for a complaint to be fairly and impartially investigated by a person independent of the exchange, and for him to report on the result of his investigation to the exchange and to the complainant.

(4)  The arrangements must confer on the person mentioned in sub-paragraph (3) the power to recommend, if he thinks it appropriate, that the exchange—

    (a)  makes a compensatory payment to the complainant,

    (b)  remedies the matter complained of,

or takes both of those steps.

(5)  Sub-paragraph (3) is not to be taken as preventing the exchange from making arrangements for the initial investigation of a complaint to be conducted by the exchange.