UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re ALUMINUM WAREHOUSING
ANTITRUST LITIGATION

---

This Document Relates To:

*In re Aluminum Warehousing Antitrust Litigation* (Direct Purchaser Plaintiffs) (14 Civ. 3116); *In re Aluminum Warehousing Antitrust Litigation* (Commercial End User Plaintiffs) (14 Civ. 3121); and *In re Aluminum Warehousing Antitrust Litigation* (Consumer End User Plaintiffs) (14 Civ. 3122).

x
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
x

No. 13 MD 2481 (KBF)

CLASS ACTION

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT LME HOLDINGS LIMITED'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................1

II. FACTS ...............................................................................................................1

III. ARGUMENT ......................................................................................................6

    A.  The Legal Standard for this Motion Supports Personal Jurisdiction .......................6

    B.  The Court Has Personal Jurisdiction Over Holdings Because It Is Doing Business in New York ...........................................................................................8

        1.  Holdings' Agency and Business Contacts in New York ............................9

        2.  Holdings' Participation in a Conspiracy ...................................................12

    C.  The Court Has Jurisdiction Over Holdings Under Section 12 of the Clayton Act ..........................................................................................................14

    D.  The Court Has Jurisdiction Over Holdings Because of Its Ties to the U.S. ..........15

        1.  Plaintiffs' Claims in this Case Are Based on Federal Law......................16

        2.  Defendants Deny Local Jurisdiction........................................................16

        3.  Holdings Has Sufficient U.S. Contacts to Subject It to Personal Jurisdiction...............................................................................................16

            a.  Holdings Has Minimum Contacts with the U.S. Sufficient to Support a Finding of Jurisdiction.................................................17

            b.  Exercising Personal Jurisdiction Over Holdings Is Reasonable and Fair...........................................................................18

    E.  If the Court Is Not Inclined to Deny Holdings' Motion, It Should Allow Plaintiffs to Conduct Jurisdictional Discovery .....................................................19

    F.  Plaintiffs Adequately State a Claim Against Holdings.........................................21

IV. CONCLUSION.................................................................................................22

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aqua Shield, Inc. v. Inter Pool Cover Team,*
    No. 05-CV-4880 (CBA),
    2007 U.S. Dist. LEXIS 90319 (E.D.N.Y. Dec. 7, 2007) ...................................................15, 16

*Asahi Metal Indus. Co. v. Superior Court of Cal.,*
    480 U.S. 102 (1987)........................................................................................................18, 19

*Ball v. Metallurgie Hoboken-Overpelt, S.A.,*
    902 F.2d 194 (2d Cir. 1990)...................................................................................................6

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
    21 F.3d 1558 (Fed. Cir. 1994)..............................................................................................18

*Burger King Corp v. Rudzewicz,*
    471 U.S. 462 (1985)............................................................................................................18

*Chew v. Dietrich,*
    143 F.3d 24 (2d Cir. 1998)..................................................................................................15

*Chrysler Capital Corp. v. Century Power Corp.,*
    778 F. Supp. 1260 (S.D.N.Y. 1991).....................................................................................13

*Cornell v. Asicurazioni Generali S.p.A.,*
    Nos. 98 Civ. 9186, 97 Civ. 2262,
    2000 U.S. Dist. LEXIS 2922 (S.D.N.Y. Mar. 16, 2000) ........................................................7

*Credit Lyonnais Sec. (USA), Inc. v. Alcantara,*
    183 F.3d 151 (2d Cir. 1999)..................................................................................................8

*Daniel v. Am. Bd. of Emergency Med.,*
    428 F.3d 408 (2d Cir. 2005).........................................................................................14, 15

*Dardana Ltd. v. Yugansknefregaz,*
    317 F.3d 202 (2d Cir. 2003).................................................................................................15

*Daventree Ltd. v. Republic of Azerbaijan,*
    349 F. Supp. 2d. 736 (S.D.N.Y. 2004), *modified*,
    2005 U.S. Dist. LEXIS (S.D.N.Y. Oct. 12, 2005) .................................................12, 13, 15, 16

*Eastman Kodak Co. v. S. Photo Materials Co.,*
    273 U.S. 359 (1927).............................................................................................................15

**Page**

*Ehrenfeld v. Mahfouz,*
    489 F.3d 542 (2d Cir. 2007)..................................................................19

*Eskofot A/S v. E.I. DuPont De Nemours & Co.,*
    872 F. Supp. 81 (S.D.N.Y. 1995)............................................................17

*Frummer v. Hilton Hotels Int'l Inc.,*
    227 N.E. 2d 851 (N.Y. 1967)..................................................................8

*GEM Advisors. Inc. v. Corporacion Sidenor, S.A.,*
    667 F. Supp. 2d 308 (S.D.N.Y. 2009)....................................................10

*Go-Video, Inc. v. Akai Elec. Co., Ltd.,*
    885 F.2d 1406 (9th Cir. 1989) ...............................................................14

*GTE New Media Servs. v. BellSouth Corp.,*
    199 F.3d 1343 (D.C. Cir. 2000) .............................................................14

*Gundlach v. IBM Japan, Ltd.,*
    No. 11-CV-846 CS,
    2013 U.S. Dist. LEXIS 165843 (S.D.N.Y. Nov. 21, 2013) .....................9

*Hanson v. Denckla,*
    357 U.S. 235 (1958)...............................................................................19

*Hollins v. United States Tennis Ass'n.,*
    469 F. Supp. 2d 67 (E.D.N.Y. 2006) .....................................................20

*In re Agent Orange Prod. Liab. Litig.,*
    818 F.2d 145 (2d Cir. 1987)...................................................................8

*In re Magnetic Audiotape Antitrust Litig.,*
    334 F.3d 204 (2d Cir. 2003)........................................................17, 19, 20

*In re Parmalat Sec. Litig.,*
    376 F. Supp. 2d 449 (S.D.N.Y. 2005)....................................................11

*In re Ski Train Fire In Kaprun, Aust.,*
    257 F. Supp. 2d 717 (S.D.N.Y. 2003).....................................................8

*In re Sterling Foster & Co. Sec. Litig.,*
    222 F.Supp.2d 289 (E.D.N.Y. 2002) .................................................8, 15

**Page**

*In re Terrorist Attacks,*
349 F. Supp. 2d 765 (S.D.N.Y. 2005)...................................................................................12

*In re Vitamin C Antitrust Litig.,*
No. 06-MD-1738 BMC JO,
2012 U.S. Dist. LEXIS 100075 (E.D.N.Y. July 18, 2012) ......................................................6

*ISI Int'l, Inc. v. Borden Ladner Garvais LLP,*
256 F.3d 548 (7th Cir. 2001) .................................................................................................16

*Jazini by Jazini v. Nissan Motor Co.,*
148 F.3d 181 (2d Cir. 1998)...................................................................................................20

*John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co., Ltd.,*
No. 91 CIV. 3644 (CES),
1992 U.S. Dist. LEXIS 1113 (S.D.N.Y. Feb. 5, 1992) ...........................................................2

*Koehler v. Bank of Bermuda,*
101 F.3d 863 (2d Cir. 1996)....................................................................................................9

*Kreutter v. McFadden Oil Corp.,*
522 N.E.2d 40 (N.Y. 1988)....................................................................................................12

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,*
918 F.2d 1039 (2d Cir. 1990)..............................................................................................7, 8

*Leasco Data Processing Equip. Corp. v. Maxwell,*
468 F.2d 1326 (2d Cir. 1972).................................................................................................17

*Licci v. Lebanese Canadian Bank, SAL,*
673 F.3d 50 (2d Cir. 2012)......................................................................................................6

*Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.,*
264 F.3d 32 (2d Cir. 2001)....................................................................................................12

*Moore v. Publicis Groupe SA,*
No. 11 CIV. 1279 (ALC) (AJP),
2012 U.S. Dist. LEXIS 173332 (S.D.N.Y. Dec. 3, 2012) ....................................................10

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,*
526 U.S. 344 (1999)................................................................................................................6

*Nippon Emo-Trans Co. v. Emo-Trans, Inc.,*
744 F. Supp. 1215 (E.D.N.Y. 1990) ......................................................................................11

- iv -

**Page**

*Ontario Ltd. v. Lencore Acoustics Corp.*,
    142 F. Supp. 2d 309 (E.D.N.Y. 2001) ...............................................................11

*PDK Labs, Inc. v. Friedlander*,
    103 F.3d 1105 (2d Cir. 1997) ..............................................................................7

*Peterson v. Islamic Republic of Iran*,
    No. 10 CIV. 4518 KBF,
    2013 U.S. Dist. LEXIS 40470 (S.D.N.Y. Feb. 28, 2013) ......................................7

*Saudi v. Acomarit Maritimes Servs., S.A.*,
    245 F. Supp. 2d 662 (E.D. Pa. 2003), *aff'd*,
    114 Fed. App'x 449 (3d Cir. 2004) .....................................................................16

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co.,
    Kommanditgesellschaft v. Navimpex Centrala Navala*,
    989 F.2d 572 (2d Cir. 1993) .................................................................................7

*Sikhs for Justice v. Nath*,
    893 F. Supp. 2d 598 (S.D.N.Y. 2012) .................................................................12

*Simon v. Philip Morris, Inc.*,
    86 F. Supp. 2d 95 (E.D.N.Y. 2000) ...............................................................18, 19

*Sodepac, S.A. v. Choyang Park*,
    No. 02 Civ. 3927 (SAS),
    2002 U.S. Dist. LEXIS 19360 (S.D.N.Y. Oct. 10, 2002) ......................................7

*Szafarowicz v. Gotterup*,
    68 F. Supp. 2d 38 (D. Mass. 1999) .....................................................................17

*Taylor v. Phelan*,
    912 F.2d 429 (10th Cir. 1990) (per curiam) ........................................................7

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
    No. 01 CIV. 11814 (MP),
    2003 U.S. Dist. LEXIS 7869 (S.D.N.Y. May 12, 2003) ........................................2

*Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*,
    31 Fed. App'x 738 (2d Cir. 2002) .......................................................................19

*Uebler v. Boss Media AB*,
    363 F. Supp. 2d 499 (E.D.N.Y. 2005) .................................................................20

**Page**

*United Mizrahi Bank Ltd. v. Sullivan*,
  No. 97-9282,
  1998 U.S. Dist. LEXIS 13996 (S.D.N.Y. Sept. 9, 1998)......................................................12

*United States v. Scophony Corp. of Am.*,
  333 U.S. 795 (1948)...............................................................................................................15

*Visual Sciences, Inc. v. Integrated Commc'ns, Inc.*,
  660 F.2d 56 (2d Cir. 1981).......................................................................................................2

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*,
  751 F.2d 117 (2d Cir. 1984)...................................................................................................10

*Wiwa v. Royal Dutch Petroleum Co.*,
  226 F.3d 88 (2d Cir. 2000)..........................................................................................7, 8, 11

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980)...............................................................................................................19

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §1.............................................................................................................................................16
  §22...........................................................................................................................................14

Federal Rules of Civil Procedure
  Rule 4(k)(1)(a) ....................................................................................................................8, 15
  Rule 4(k)(2).....................................................................................................................8, 15, 16
  Rule 12(b)(2)...........................................................................................................................19

New York Civil Practice Law and Rules
  §301...........................................................................................................................................8

## SECONDARY AUTHORITIES

5 Charles Alan Wright & Arthur R. Miller, (2d ed.)
  *Federal Civil Practice & Procedure*,
  §1351 .........................................................................................................................................2

Plaintiffs[1] respectfully submit this memorandum in opposition to the Motion to Dismiss filed by LME Holdings Limited ("Defendant" or "Holdings") (Dkt. No. 327).

## I.    INTRODUCTION

Based on Holdings' own actions and admissions, this Court has personal jurisdiction over Holdings. Plaintiffs have alleged and have shown from publicly available information that Holdings transacts business in both the United States and New York, and that it has substantial contacts with the U.S. as a whole.  For these reasons, Holdings' motion to dismiss based on personal jurisdiction should be denied.  Alternatively, if the Court determines the factual record regarding personal jurisdiction needs further development, then Plaintiffs should be allowed to conduct jurisdictional discovery before the Court decides this motion.  Finally, Plaintiffs have adequately stated a claim against Holdings.

## II.   FACTS

This Court has personal jurisdiction over Holdings based on the following facts, which are alleged in the operative complaints,[2] admitted by Holdings in its motion to dismiss (Defendant LME Holdings Limited's Memorandum of Law in Support of Its Motion to Dismiss) ("Def.'s Mem.") (Dkt. No. 328) or supporting Declaration of Marcos Castro in Support of LME Holdings Limited's

---

[1]   Direct Purchaser Plaintiffs (class only), Commercial End User Plaintiffs and Consumer End User Plaintiffs ("Plaintiffs") join in this opposition.

[2]   Second Corrected Consolidated Amended Class Action Complaint ("SCCACAC") (Dkt. No. 271), Commercial End Users' Corrected Consolidated Class Action Complaint ("Commercial End Users' Complaint") (Dkt. No. 242); Consumer End Users' Consolidated Amended Class Action Complaint ("Consumer End Users' Complaint") (Dkt. No. 227).

Motion to Dismiss ("Castro Decl.") (Dkt. No. 329), or demonstrated through publicly available information.[3]

Defendant LME Holdings Limited is a corporation that, until December 6, 2012, owned the London Metal Exchange ("LME").[4] Defendant The Goldman Sachs Group, Inc. ("Goldman Sachs") and other leading American banks – including defendant JP Morgan (which also owned LME-licensed warehouses), Citigroup, Merrill Lynch, and Morgan Stanley – owned the largest portion of Holdings.[5] Goldman Sachs, along with the other Goldman Defendants,[6] and the other defendants directed, as traders and as intermediaries, large amounts of business to (or away from) the LME and Holdings.[7] And the prospect of increasing revenues aided its shareholders in their search for a buyer

---

[3] When considering a motion to dismiss for lack of personal jurisdiction prior to discovery, the Court may consider both allegations pleaded in the operative complaint and publicly available information. *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01 CIV. 11814 (MP), 2003 U.S. Dist. LEXIS 7869, at *23 (S.D.N.Y. May 12, 2003) ("In considering a jurisdictional motion, the Court may consider evidence outside of the pleadings in reaching a decision without converting the proceeding into one for summary judgment under Rule 56."); *see also John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co., Ltd.*, No. 91 CIV. 3644 (CES), 1992 U.S. Dist. LEXIS 1113, at *1 n.1, at *1 n.1 (S.D.N.Y. Feb. 5, 1992) ("In support of its Motion to Dismiss for lack of personal jurisdiction, defendant and plaintiff have submitted affidavits and other documentation outside of the pleadings. A Rule 12(b)(2) motion is inherently a matter requiring the resolution of factual issues outside of the pleadings and all pertinent documentation submitted by the parties may be considered in deciding this motion.") (citing *Visual Sciences, Inc. v. Integrated Commc'ns, Inc.*, 660 F.2d 56, 58 (2d Cir. 1981); 5 Charles Alan Wright & Arthur R. Miller, *Federal Civil Practice & Procedure*, §1351 (2d ed.)).

[4] SCCACAC, ¶127; Commercial End Users' Complaint, ¶28; Consumer End Users' Complaint, ¶34.

[5] SCCACAC, ¶¶116-117, 127; Commercial End Users' Complaint, ¶28; Consumer End Users' Complaint, ¶¶5, 20, 52.

[6] SCCACAC, ¶¶116-123 (collectively the "Goldman Defendants"); Commercial End Users' Complaint, ¶¶29-31; Consumer End Users' Complaint, ¶¶20-23.

[7] SCCACAC, ¶68; Commercial End Users' Complaint, ¶¶78-79, 86; Consumer End Users' Complaint, ¶¶5, 77, 163.

944658_1

for Holdings in 2012.[8]  Goldman Sachs increased LME warehouse revenues through the conduct

challenged in the complaints, thus making possible the sale of Holdings to Hong Kong-based Hong

Kong Exchanges & Clearing Ltd ("HKEx") at the inflated price of  $2.2 billion on December 6,

2012.[9]

> At the time that Holdings was sold to HKEx, Goldman Sachs held 9.5% of its shares, a stake

valued at $208 million.[10]   Defendant JP Morgan owned even more Holdings stock, with

approximately 1.4 million ordinary shares (10.9%), amounting to a value of $260 million of the $2.2

billion purchase price.[11]

> Holdings is now the intermediate corporate entity between HKEx and the LME.  Castro

Decl., ¶3 (Holdings is the sole shareholder of the LME).  HKEx is located at One International

Finance Centre, 1 Harbour View Street, Central, Hong Kong, China, and does business in the United

States and in this District by, among other things, promoting its exchange among U.S. market

participants including through business meetings and also through the warehousing activities alleged

herein, and licensing of warehouses in the U.S. through the LME.[12]

---

[8]    SCCACAC, ¶69; Consumer End Users' Complaint, ¶5.

[9]    SCCACAC, ¶69, 127-128; Commercial End Users' Complaint, ¶¶28-29; Consumer End Users'
Complaint, ¶¶5, 34.

[10]   SCCACAC, ¶¶68, 69, 70; Commercial End Users' Complaint, ¶¶28-29; Consumer End Users'
Complaint, ¶5.

[11]   SCCACAC, ¶¶68, 69, 70; Commercial End Users' Complaint, ¶¶28-29, 86; Consumer End
Users' Complaint, ¶¶5, 102.

[12]   SCCACAC, ¶129; Commercial End Users' Complaint, ¶27.

Holdings and LME shared directors and senior management both prior to and after the December 6, 2012, acquisition by HKEx, and continue to do so.[13]  Most board members are (and were, during the entire proposed class period) identical between the companies, and both boards are chaired by Sir Brian Bender.  *Id.*  Both pre- and post-acquisition management refer to Holdings as LME.[14]  LME and Holdings have the same Chief Executive, and did so during the entire class period.[15]

As Category 1 and 3 members of the LME, JP Morgan and Goldman Sachs own Class B shares of Holdings.[16]  Other U.S. entities similarly hold Class B shares of Holdings, including: Bank of America, Citigroup and Morgan Stanley.[17]  In considering the allotment of such Class B shares of Holdings, according to its Articles of Association, Holdings considers "the current and future interests of the [London Metal] Exchange and the HKEx Group as a whole."[18]

---

[13]   SCCACAC, ¶128; *see* Ex. 1, HKEx/LME Joint Press Release, Hong Kong Exchanges & Clearing, Ltd., *HKEx and LME Announce Completion of Transaction* (Dec. 6, 2013).  All references to "Ex." are to the exhibits attached to the Declaration of Bonny E. Sweeney in Support of Plaintiffs' Memorandum of Law in Opposition to Defendant LME Holdings Limited's Motion to Dismiss, filed concurrently.

[14]   Ex. 2, Press Release, Hong Kong Exchanges & Clearing, Ltd., *London Metal Exchange Shareholders Vote in Favour of Acquisition by HKEx* (July 25, 2012); *see also* Ex. 3, Letter from Chow Chung Kong, Chairman, to Shareholders (Dec. 7, 2012); Commercial End Users' Complaint, ¶170 (quoting HKEx CEO Charles Li referring to LME and Holdings collectively as "the LME System").

[15]   *See* Ex. 1, HKEx/LME Joint Press Release.

[16]   Commercial End Users' Complaint, ¶78; Ex. 4, *Share Structure*, London Metal Exchange; Ex. 5, *B Shareholders As At 18 December 2013*, London Metal Exchange (Dec. 18, 2013).

[17]   Ex. 5, *B Shareholders As At 18 December 2013*.

[18]   Ex. 6, *New Articles of Association of LME Holdings Limited*, ¶37(e)(vii) (Dec. 13, 2012); Consumer End Users' Complaint, ¶5.

- 4 -

Holdings has an ongoing relationship with defendant Goldman Sachs, a corporation headquartered in New York, as well as the other Goldman Defendants.[19]  Goldman Sachs also owns Metro International Trade Services LLC ("Metro International"), a Delaware limited liability corporation with a registered address and headquarters in Michigan.[20]  Metro International is an LME-licensed warehouse, and operated 29 out of a total of 37 LME-licensed storage facilities in Detroit, Michigan during the class period.[21]  As part of the ongoing business relationship, Metro International has a seat on the LME's Warehousing Committee, which makes recommendations on warehousing-related policy issues, plays a role in developing the rules and regulations governing the warehouses, and advises the executive committee.[22]  Holdings' ongoing relationship with Goldman Sachs includes the unlawful agreements and ongoing payment structures alleged in the complaints.[23]  Defendant GS Power Holdings, a Goldman Sachs subsidiary, is also headquartered in New York.[24]

Holdings also has an ongoing relationship with defendant JP Morgan, an investment bank and financial services firm incorporated in Delaware with its principal place of business at 270 Park

---

[19]   SCCACAC, ¶¶122, 127; Commercial End Users' Complaint, ¶29; Consumer End Users' Complaint, ¶¶5, 20.

[20]   SCCACAC, ¶121; Commercial End Users' Complaint, ¶30; Consumer End Users' Complaint, ¶22.

[21]   SCCACAC, ¶122; Commercial End Users' Complaint, ¶30; Consumer End Users' Complaint, ¶22.

[22]   SCCACAC, ¶122; Commercial End Users' Complaint, ¶¶40, 79; Consumer End Users' Complaint, ¶22.

[23]   SCCACAC, ¶¶50-51, 57; Commercial End Users' Complaint, ¶¶37-43, 72-75, 78-81, 134, 138; Consumer End Users' Complaint, ¶¶5, 49, 52-53, 63, 72, 74, 78-82.

[24]   SCCACAC, ¶¶117, 118; Commercial End Users' Complaint, ¶¶30-31; Consumer End Users' Complaint, ¶¶21-23.

944658_1

Ave., New York, NY.[25]  Along with its Henry Bath subsidiary, JP Morgan operates LME-approved

warehouses in the United States and has a registered agent in Baltimore.[26]

## III.   ARGUMENT

### A.    The Legal Standard for this Motion Supports Personal Jurisdiction

For a court to exercise personal jurisdiction over a defendant, there must be a statutory or

common law source of jurisdiction, which does not surpass the limitations imposed by constitutional

due process.  In the Second Circuit this is a three-pronged test:

> To exercise personal jurisdiction over [a defendant], this Court must find that
> three requirements are met. First, plaintiffs' service of process on [the defendant]
> must have been procedurally proper. Second, the Court must find statutory authority
> to exercise jurisdiction over [the defendant].  Finally, the Court must decide whether
> the exercise of jurisdiction comports with the requirements of the Due Process
> Clause of the Constitution.

*In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 U.S. Dist. LEXIS 100075, at *17-

*18 (E.D.N.Y. July 18, 2012) (relying on *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59

(2d Cir. 2012)).[27]

Before discovery, a plaintiff only needs to assert facts supporting a prima facie showing of

personal jurisdiction to defeat a motion to dismiss. *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902

F.2d 194, 197 (2d Cir. 1990).  "'[P]laintiffs may rely entirely on allegations of fact, and they will

prevail even if the moving party makes contrary allegations which controvert their prima facie

---

[25]   SCCACAC, ¶137; Commercial End Users' Complaint, ¶32; Consumer End Users' Complaint,
¶¶24-27.

[26]   SCCACAC, ¶¶137-141; Commercial End Users' Complaint, ¶¶32-34; Consumer End Users'
Complaint, ¶¶26, 57, 81.

[27]   Holdings does not assert any service of process deficiency.  Accordingly, Plaintiffs consider this
argument waived.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999).
Here, as elsewhere, citations and internal quotations marks are omitted, and emphasis is added,
unless otherwise noted.

944658_1

case.'" *Sodepac, S.A. v. Choyang Park*, No. 02 Civ. 3927 (SAS), 2002 U.S. Dist. LEXIS 19360, at *6 (S.D.N.Y. Oct. 10, 2002) (quoting *Cornell v. Asicurazioni Generali S.p.A.*, Nos. 98 Civ. 9186, 97 Civ. 2262, 2000 U.S. Dist. LEXIS 2922, at *3 (S.D.N.Y. Mar. 16, 2000)).  Before a trial or hearing on the issue, all pleadings and affidavits are construed in the plaintiffs' favor, and all doubts are resolved in plaintiffs' favor.  *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). Courts are mindful that personal jurisdiction inquiries are "necessarily fact sensitive because each case is dependent upon its own particular circumstances." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990).  Plaintiffs' allegations are required to be accepted as true "so long as they are uncontroverted by defendant's affidavits," *Peterson v. Islamic Republic of Iran*, No. 10 CIV. 4518 KBF, 2013 U.S. Dist. LEXIS 40470, at *67 (S.D.N.Y. Feb. 28, 2013), but "[i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993) (quoting *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990) (per curiam) (internal quotation marks omitted)).

In this case, Plaintiffs have had no opportunity for jurisdictional discovery.  Dkt. No. 346 (Order staying discovery as to LME Holdings).  The complaints consist of facts learned in their pre-complaint investigation, including through publicly available information.  Therefore, viewing the facts in the light most favorable to Plaintiffs, they need only make a prima facie showing of jurisdictional facts to defeat Holdings' motion to dismiss.

A federal district court may exercise jurisdiction over any defendant who is subject to the jurisdiction of the state in which the district court is located.  *Wiwa v. Royal Dutch Petroleum Co.*,

226 F.3d 88, 94 (2d Cir. 2000) (citing Fed. R. Civ. P. 4(k)(1)(a)).  Here, Holdings is subject to the jurisdiction of the State of New York.[28]

### B.   The Court Has Personal Jurisdiction Over Holdings Because It Is Doing Business in New York

New York may assert personal jurisdiction over a foreign corporation if the corporation is "doing business" in the state, pursuant to New York Civil Practice Law and Rules ("CPLR") §301. *Wiwa*, 226 F.3d at 951; *see also Frummer v. Hilton Hotels Int'l Inc.,* 227 N.E. 2d 851, 852-53 (N.Y. 1967).  Such jurisdiction exists if the defendant is "'engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction.'" *Landoil Res. Corp.*, 918 F.2d at 1043.  Factors include maintaining a New York office, seeking business in New York, having bank accounts in New York, and having employees or agents in New York.  *Id.*

Even though Holdings asserts that it does no business in New York or in the United States, *see* Castro Decl., ¶¶7, 10, 12-18, 22; *see also* Def.'s Mem. at 2-5, 8 & n.3, these conclusory statements are not entitled to deference.  *Accord Credit Lyonnais Sec. (USA), Inc. v. Alcantara,* 183 F.3d 151, 153 (2d Cir. 1999).  In fact, Holdings is doing business and has done business in New

---

[28]   In multidistrict litigation, the forum state for each proceeding is "the district court where the action was originally filed, and therefore that state's law must be applied." *In re Ski Train Fire In Kaprun, Aust.*, 257 F. Supp. 2d 717, 723 (S.D.N.Y. 2003).  And "a transferee court can exercise personal jurisdiction only to the same extent as the transferor court could." *In re Sterling Foster & Co. Sec. Litig.*, 222 F.Supp.2d 289, 300 (E.D.N.Y. 2002) (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 163 (2d Cir. 1987)).  Multidistrict Litigation No. 2481 contains 29 related cases in 7 federal jurisdictions, all of which were originally filed in different states (S.D. Ala., C.D. Cal, N.D. Fla., E.D. La., D. Mass., E.D. Mich., and S.D.N.Y.).  Of the 29 cases constituting this MDL, 7 were originally filed in the Southern District of New York.  Thus, for purposes of the Consolidated Action currently before the Court, Plaintiffs believe it is sufficient to show jurisdiction in New York.  Should the Court conclude that jurisdiction is not established but jurisdictional discovery is appropriate, Plaintiffs may investigate possibilities for jurisdiction in states underlying transferor courts, in addition to jurisdiction under Fed. R. Civ. P. 4(k)(2).  *See* §§III.D & E, *infra.*

York in two ways during the class period: (1) through an agency relationship between Holdings and the LME, and through its ownership by Goldman Sachs and JP Morgan, among others; and (2) through Holdings' conspiracy relationships with the other defendants.  Each is discussed in turn.

### 1.    Holdings' Agency and Business Contacts in New York

A parent corporation may be subject to general jurisdiction in the state of New York based upon the actions of its corporate affiliate either when:  (1) there is an agency relationship between the two entities; or (2) one affiliate treats the other like a department.  *See Koehler v. Bank of Bermuda*, 101 F.3d 863, 865 (2d Cir. 1996) ("A parent corporation may be sued in New York when the relationship between the foreign parent and the local subsidiary validly suggests the existence of an agency relationship or the parent controls the subsidiary so completely that the subsidiary may be said to be simply a department of the parent.  These tests require a fact-specific inquiry into the realities of the actual relationship between the parent and subsidiary.").  Thus, if the LME is an agent of Holdings, as Plaintiffs allege and as they have good cause to believe discovery will demonstrate, personal jurisdiction over Holdings is appropriate.[29]

In deciding whether there exists an agency relationship sufficient to subject a foreign parent to jurisdiction in New York, "courts look to four factors: (1) 'common ownership,' (2) 'financial dependency of the subsidiary on the parent corporation,' (3) 'the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities,' and (4) 'the degree of control over the marketing and operational policies of the subsidiary exercised by the parent.'"  *Gundlach v. IBM Japan, Ltd.*, No.

---

[29]    LME has not contested personal jurisdiction in either the United States generally or New York specifically.   But it is clear that LME transacts business in both New York and throughout the United States sufficient to confer personal jurisdiction as alleged in the complaints.  *See* SCCACAC, ¶¶10, 22-24, 50-51, 57, 116-117, 121-122, 125-126, 129, 131-134, 137-141; Commercial End Users' Complaint, ¶¶28-29, 32, 35, 67, 82, 88-89, 183-190.

11-CV-846 CS, 2013 U.S. Dist. LEXIS 165843, at *12 (S.D.N.Y. Nov. 21, 2013) (quoting

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984)).

"When applying the *Beech* test, establishing the exercise of personal jurisdiction over an alleged

alter ego requires application of a less stringent standard than that necessary to pierce the corporate

veil for purposes of liability." *Moore v. Publicis Groupe SA*, No. 11 CIV. 1279 (ALC) (AJP), 2012

U.S. Dist. LEXIS 173332, at *16 (S.D.N.Y. Dec. 3, 2012) (quoting *GEM Advisors. Inc. v.*

*Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 319 (S.D.N.Y. 2009)).

Here, since  the December 6, 2012, acquisition, the LME and Holdings have had common

ownership and a common CEO.  *See* n.13, *supra*.  Although Holdings purportedly is the sole

shareholder of the LME (Castro Decl., ¶3), HKEx operates and controls both entities.  *See* n.13,

*supra*.  Holdings and the LME share directors and executive management.[30]  Management refers to

Holdings and LME interchangeably.[31]   And HKEx makes decisions for the LME.[32]   Further,

Holdings does not assert that LME could exist financially without the support of Holdings.  *See*

*generally* Castro Decl.

Additionally, Holdings asserts nothing about the corporate form for Holdings prior to its

acquisition by HKEx.  Before December 6, 2012, Holdings owned the LME outright, and was itself

owned by Defendant Goldman Sachs and other leading American banks including JP Morgan,

Citigroup, Merrill Lynch, and Morgan Stanley, firms which owned LME-licensed warehouses.  The

Goldman Defendants and these other financial firms could and did direct, as traders and as

intermediaries, large amounts of business to the LME (or away from the LME), and through it, to or

---

[30]   *See* n.13, *supra* and accompanying text; *see also* n.14, *supra* and accompanying text.

[31]   *Id.*

[32]   *See* n.18, *supra* and accompanying text; *see also* Commercial End Users' Complaint, ¶¶170-171.

away from Holdings. They used this profit motive to aid in their search for a buyer for Holdings in 2012. Increased warehouse revenues were driven by Goldman Sachs, and enabled the sale of Holdings to HKEx for $2.2 billion. At the time that Holdings was sold to HKEx, Goldman Sachs' 9.5% stake in Holdings was valued at $208 million of the $2.2 billion purchase price.[33] At that same time, JP Morgan's stake was valued at $260 million of the $2.2 billion purchase price, and was the largest Holdings shareholder with approximately 1.4 million ordinary shares (10.9%).[34]

A foreign corporation may be found to be "doing business" in New York by virtue of its agent in the state. *Wiwa*, 226 F.3d at 95; *Nippon Emo-Trans Co. v. Emo-Trans, Inc.*, 744 F. Supp. 1215, 1231 (E.D.N.Y. 1990) ("A foreign corporation may also be found to be doing business in the state by virtue of the actions of an in-state agent taken on the defendant's behalf."). Further, "[I]n some instances, common ownership may give rise to an inference of agency." *Id.* While Holdings makes the conclusory statement that it has no agents in the United States (Castro Decl., ¶¶14-15), Holdings' relationship with Goldman Sachs and JP Morgan, among others, including their ownership prior to December 6, 2012, meet the agency test. *See In re Parmalat Sec. Litig.,* 376 F. Supp. 2d 449, 454 (S.D.N.Y. 2005) (noting that advertisement to and presence of U.S. shareholders in foreign company supported exercise of personal jurisdiction). The presence of co-conspirator agents and co-defendants acting on behalf of a foreign defendant in New York may justify jurisdiction. *See* 777388 *Ontario Ltd. v. Lencore Acoustics Corp*., 142 F. Supp. 2d 309, 317-18 (E.D.N.Y. 2001) (exercising personal jurisdiction over foreign defendant under agency theory when

---

[33]   SCCACAC, ¶¶68, 69, 70; Commercial End Users' Complaint, ¶¶28-29; Consumer End Users' Complaint, ¶5.

[34]   SCCACAC, ¶¶68, 69, 70; Commercial End Users' Complaint, ¶¶28-29; Consumer End Users' Complaint, ¶¶5, 102.

defendants did business together, acted as agents, and were co-conspirators); *accord Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 41 (N.Y. 1988).

If an agency relationship is established between Holdings and its ownership companies, then personal jurisdiction is clearly proper. Goldman Sachs and JP Morgan do not contest personal jurisdiction in New York, both have headquarters in New York, and both do continuous and systematic business in New York. *See United Mizrahi Bank Ltd. v. Sullivan*, No. 97-9282, 1998 U.S. Dist. LEXIS 13996, at *14 (S.D.N.Y. Sept. 9, 1998) (finding that maintenance of a principal place of business in New York was "basis alone" to assert jurisdiction over a company). If the Court is unsure whether jurisdictional veil piercing is appropriate based on the record, then jurisdictional discovery is appropriate. *See Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 624-25 (S.D.N.Y. 2012) (allowing jurisdictional discovery when it was a "close question" whether a relationship was sufficiently close to justify jurisdiction, and noting that discovery was appropriate because the relationship at issue was "not determinable on the current record").

## 2. Holdings' Participation in a Conspiracy

A foreign corporation may also be found to be "doing business" in New York by virtue of the actions of its putative co-conspirators. *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d. 736, 759 (S.D.N.Y. 2004), *modified*, 2005 U.S. Dist. LEXIS (S.D.N.Y. Oct. 12, 2005) (critical errors subsequently corrected). In order to establish such jurisdiction, "Plaintiffs are not required to establish the existence of 'a formal agency relationship . . . .'" *Id.* (quoting *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 36 (2d Cir. 2001)). Rather, "Plaintiffs must make a prima facie showing of conspiracy, allege specific facts warranting the inference that the defendant was a member of the conspiracy, and show that the defendant's co-conspirator committed a tort in New York." *In re Terrorist Attacks*, 349 F. Supp. 2d 765, 805

- 12 -

(S.D.N.Y. 2005).  If a conspiracy exists, each conspirator is the agent of the other, and the acts of one defendant in furtherance of the conspiracy are deemed the acts of the other for both jurisdiction and criminal or civil liability.

First, Plaintiffs must make a prima facie showing of conspiracy.  To properly plead conspiracy under New York law, "a plaintiff must allege the primary tort and four elements: (a) a corrupt agreement between two or more persons, (b) an overt act in furtherance of the agreement, (c) the parties' intentional participation in the furtherance of a plan or purpose, and (d) the resulting damage or injury."  *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1267 (S.D.N.Y. 1991).  Plaintiffs have met these requirements.  First, the SCCACAC alleges a prima facie showing of a conspiracy.  *See generally* Direct Purchaser Plaintiffs' Opposition to Motion by the London Metals Exchange and Goldman Sachs Defendants to Dismiss Claims Against Them on the Merits and for Asserted Lack of Standing.  Second, Plaintiffs allege that Holdings was involved in a conspiracy with the Goldman Defendants to inflate prices and warehouse revenues in warehouses in the United States in order to enable the sale of Holdings to HKEx for maximum value.[35]  Plaintiffs also allege that Holdings was sold in the resulting transaction for $2.2 billion, from which the Goldman Defendants profited for their participation in the conspiracy.  The Goldman Defendants were physically present for at least some acts in furtherance of the conspiracy.[36]  Drawing all inferences in Plaintiffs' favor, these facts support imputing jurisdiction from the Goldman Defendants to Holdings because of the existence of a conspiracy.  *Accord Daventree*, 349 F. Supp. 2d at 760.

---

[35]   SCCACAC, ¶69; Commercial End Users' Complaint, ¶¶28-29; Consumer End Users' Complaint, ¶¶5, 77, 163.

[36]   SCCACAC, ¶¶370, 422-424; Commercial End Users' Complaint, ¶¶12, 158, 191-195; Consumer End Users' Complaint, ¶¶5, 117, 163.

- 13 -

### C.     The Court Has Jurisdiction Over Holdings Under Section 12 of the Clayton Act

Additionally, under the antitrust laws, a plaintiff can establish jurisdiction under §12 of the Clayton Act, 15 U.S.C. §22.[37]   Section 12 consists of two parts, one which establishes the proper venue for an antitrust lawsuit, and the other which allows the exercise of personal jurisdiction through worldwide service of process.  *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 422-23 (2d Cir. 2005) (citing *GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000)).  Venue for antitrust actions is permitted against corporations "not only in the judicial district whereof [the corporate defendant] is an inhabitant, but also in any district wherein it may be found or transacts business."  15 U.S.C. §22.  But §12's "service of process provision can properly confer personal jurisdiction over a defendant "'only when the action is brought in the district where the defendant resides, is found, or transacts business,'" that is, the district where §12 venue lies.  *Daniel*, 428 F.3d at 427 (quoting *GTE*, 199 F.3d at 1351).  Venue must exist under §12 of the Clayton Act as a threshold matter before personal jurisdiction may be exercised over the foreign defendant in accord with the worldwide service provision.[38]

---

[37]   Section 12 of the Clayton Act states:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process ***in such cases*** may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. §22.  The Second Circuit reads the phrase "in such cases" to limit the worldwide service provision to those cases where the preceding venue provision is satisfied.  *Daniel*, 428 F.3d at 423-25.

[38]   The Second Circuit follows a minority interpretation of this issue; many other circuits, such as the Ninth, use a "national contacts" interpretation for satisfying the jurisdictional requirement of Section 12.  *See, e.g.*, *Daniel*, 428 F.3d at 422-23 (discussing the circuit split); *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406 (9th Cir. 1989) (adopting the "national contacts" test).  Thus, to the extent that cases transferred to the Southern District of New York are subject to the jurisdictional

- 14 -

Holdings "transacts business" in the Southern District of New York.  *Accord Daniel*, 428 F.3d at 430.  To "transact business" involves "[t]he practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character.'"  *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948) (quoting *Eastman Kodak Co. v. S. Photo Materials Co.*, 273 U.S. 359, 373 (1927)).  As discussed in §III.B, *supra*, Holdings does business through its agents, through transactions with those agents, and through participation in a conspiracy with those agents.

**D.     The Court Has Jurisdiction Over Holdings Because of Its Ties to the U.S.**

Plaintiffs contend that the Court has personal jurisdiction over Holdings based on Rule 4(k)(1)(a) of the Federal Rules of Civil Procedure and New York's long arm statute, as previously described.  Alternatively, a district court may assert federal claim personal jurisdiction over a defendant who is not subject to the jurisdiction of a particular state, but nevertheless has minimum contacts with the U.S. as a whole. Fed. R. Civ. P. 4(k)(2); *see Dardana Ltd. v. Yugansknefitegaz*, 317 F.3d 202, 207 (2d Cir. 2003) (citing *Chew v. Dietrich*, 143 F.3d 24, 27-28 (2d Cir. 1998); *Daventree*, 349 F. Supp. 2d at 760).  If the Court finds that New York lacks personal jurisdiction over Holdings, then Rule 4(k)(2) applies to provide jurisdiction.

The three requirements for Rule 4(k)(2) jurisdiction are:

> (1) the plaintiff's claim arises under federal law, (2) the defendant lacks sufficient contacts to be subject to jurisdiction in any particular state, and (3) the federal court's exercise of personal jurisdiction over the defendant does not conflict with the Constitution or other federal law.

*Aqua Shield, Inc. v. Inter Pool Cover Team*, No. 05-CV-4880 (CBA), 2007 U.S. Dist. LEXIS 90319, at *14-*15 (E.D.N.Y. Dec. 7, 2007); *see also Daventree*, 349 F. Supp. 2d at 760.  Plaintiffs may

---

requirements of their transferor courts rather than those of the State of New York or the Second Circuit, *see Sterling*, 222 F.Supp.2d at 300, it is likely that any minimal or national contact analysis would satisfy the personal jurisdiction requirements of the transferor court.  *See* n.28, *supra*.

properly assert this personal jurisdiction theory in the alternative to other theories of jurisdiction. *Saudi v. Acomarit Maritimes Servs., S.A.*, 245 F. Supp. 2d 662, 677 n.8 (E.D. Pa. 2003) (noting that "Rule 4(k)(2) does not preclude alternative theories"), *aff'd*, 114 Fed. App'x 449 (3d Cir. 2004). Holdings meets the Rule 4(k)(2) requirements in the present case.

### 1.      Plaintiffs' Claims in this Case Are Based on Federal Law

The first requirement is one or more claims based on federal law. *Daventree,* 349 F. Supp. 2d at 760. Here, many of Plaintiffs' claims against Holdings and its co-Defendants are based upon violations of the Sherman Act, 15 U.S.C. §1, *et seq.*[39]

### 2.      Defendants Deny Local Jurisdiction

The second requirement is that personal jurisdiction does not exist over those Defendants in New York or any other state. *Daventree*, 349 F. Supp. 2d at 760. Although Plaintiffs disagree, Holdings asserts that it is not subject to the jurisdiction of the United States or of any state. *See* Def.'s Mem. at 8 & n.3. Given this assertion, if the Court finds that neither New York nor any other state has jurisdiction over Holdings, then the second element of finding jurisdiction pursuant to Rule 4(k)(2) is satisfied. *Accord ISI Int'l, Inc. v. Borden Ladner Garvais LLP*, 256 F.3d 548, 552 (7th Cir. 2001).

### 3.      Holdings Has Sufficient U.S. Contacts to Subject It to Personal Jurisdiction

The third requirement is that the defendant have sufficient contacts with the U.S. *Aqua Shield, Inc.*, 2007 U.S. Dist. LEXIS 90319, at *14-*15. This requirement is met when the defendant has sufficient contacts with the U.S. as a whole to justify an assertion of personal jurisdiction, and where asserting jurisdiction is reasonable. *Id.*

---

[39]   *See, e.g.*, SCCACAC, ¶¶328-413; Commercial End Users' Complaint, ¶¶216-235; Consumer End Users' Complaint, ¶¶195-216.

944658_1

a.     **Holdings Has Minimum Contacts with the U.S.**
**Sufficient to Support a Finding of Jurisdiction**

The first part of the third requirement is that the defendant have sufficient contacts with the U.S. as a whole.  In turn, three factors are analyzed for this requirement:  (1) transacting business in the U.S.; (2) doing an act in the U.S.; or (3) having an effect in the U.S. by an act done elsewhere. *Eskofot A/S v. E.I. DuPont De Nemours & Co.*, 872 F. Supp. 81, 87 (S.D.N.Y. 1995) (citing *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1340 (2d Cir. 1972)); *accord Szafarowicz v. Gotterup*, 68 F. Supp. 2d 38, 41 (D. Mass. 1999).  As discussed in §III.B, *supra*, Plaintiffs sufficiently allege that Holdings transacts business in the United States.  In addition, Holdings' conduct in the United Kingdom and elsewhere has caused effects in the United States, thus fulfilling the third factor.

A defendant who attends meetings and discusses price-fixing activities directed at the U.S. creates minimum contacts that support personal jurisdiction.  The Second Circuit has stated:

> First, in both Plaintiffs' complaint and materials submitted in opposition to dismissal, they point to minutes from a meeting showing that an executive of SKM was present at a meeting in Seoul in which price-fixing activities took place.  For purposes of a motion to dismiss, this arguably would satisfy the "effects" test frequently used in the analysis of specific personal jurisdiction.

*In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003).

Holdings negotiated contracts for LME warehousing activities as part of a conspiracy to artificially inflate prices for storage rates at LME warehouses.[40]  The sale of Holdings at an inflated price in 2012 was directly related to and a goal of this conspiracy, and was directed at the United States, insofar as a substantial amount of warehousing activity takes place in the United States.[41]

---

[40]   SCCACAC, ¶¶22-54; Commercial End Users' Complaint, ¶¶6, 42-43; Consumer End Users' Complaint, ¶¶33, 46-47, 158, 168.

[41]   SCCACAC, ¶¶26-28; Commercial End Users' Complaint, ¶¶17, 28, 78, 86.

The agreements and inflated prices were aimed at and directly affected the U.S. – Defendants profited substantially from increased storage rates and facilities in interstate commerce during the Class Period.[42]  The conduct was especially directed at the U.S. because warehouses throughout the United States were used to store aluminum by U.S. manufacturers.[43]   Accordingly, Holdings' conduct shows it has minimum contacts to support the exercise of personal jurisdiction.

### b.   Exercising Personal Jurisdiction Over Holdings Is Reasonable and Fair

The Court must also consider the reasonableness of asserting personal jurisdiction over Holdings.  However, when minimum contacts exist, this consideration rarely defeats jurisdiction. *Simon v. Philip Morris, Inc.*, 86 F. Supp. 2d 95, 133 (E.D.N.Y. 2000).  "Generally speaking, this will only occur where 'the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.'"  *Id.* (quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994)); *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 477 (1985) ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.")).

"'When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State," it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation. . . . .'"  *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S.

---

[42]   SCCACAC, ¶¶100-104; Commercial End Users' Complaint, ¶¶199-202; Consumer End Users' Complaint, ¶¶175-76.

[43]   SCCACAC, ¶¶184-186; Commercial End Users' Complaint, ¶¶3, 36-37, 39; Consumer End Users' Complaint, ¶¶179-182.

102, 110 (1987); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  Holdings has availed itself of the privilege of conducting business in New York and throughout the United States.  Through its subsidiary, the LME, it works with warehouses in Baltimore, Chicago, Detroit, Los Angeles, Mobile, New Orleans, Owensboro, Panama City, St. Louis, and Toledo.[44]  And Holdings would not be able to do business without its relationships with Goldman Sachs, JP Morgan, and other New York companies.  By its "action purposefully directed toward" New York and the other states, Holdings has created the connection "necessary for a finding of minimum contacts."  *Asahi*, 480 U.S. at 112.

As in *Simon*, New York and the U.S. have strong interests in providing relief for injured citizens and preventing future price-fixing aimed at those citizens.  *Simon*, 86 F. Supp. 2d at 134.  Holdings was on clear notice that it would be subject to jurisdiction in the United States for conduct purposefully directed toward United States residents.

### E.    If the Court Is Not Inclined to Deny Holdings' Motion, It Should Allow Plaintiffs to Conduct Jurisdictional Discovery

If the Court is not persuaded by Plaintiffs' showing, above, and in their complaints, it should grant Plaintiffs an opportunity to conduct limited personal jurisdiction discovery.  A motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure should not be granted unless Plaintiffs first have the benefit of jurisdictional discovery.  *Magnetic Audiotape*, 334 F.3d at 207-08 ("[W]e believe the district court improperly denied plaintiffs the opportunity to engage in limited discovery on the question [of personal jurisdiction] prior to dismissing SKM."); *Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*, 31 Fed. App'x 738, 739 (2d Cir. 2002) (to same effect); *Ehrenfeld v. Mahfouz*, 489 F.3d 542, 550 n.6 (2d Cir. 2007)

---

[44]    Ex. 7, *Active Listed Warehouses*, London Metal Exchange (May 20, 2014).

("If the District Court understood *Jazini* as forbidding jurisdictional discovery any time a plaintiff does not make a prima facie showing of jurisdiction, this would indeed be legal error.") (discussing *Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998)).

In *Hollins v. United States Tennis Ass'n.*, 469 F. Supp. 2d 67 (E.D.N.Y. 2006), the court stated, "district courts in this Circuit have ordered jurisdictional discovery where plaintiff[s] have made less than a prima facie showing but 'made a sufficient start toward establishing personal jurisdiction.'" *Id.* at 67, 70-71 (E.D.N.Y. 2006) (quoting *Uebler v. Boss Media AB*, 363 F. Supp. 2d 499, 506-07 (E.D.N.Y. 2005)). The *Hollins* court noted that even if allegations are "insufficiently developed," the Plaintiffs should be granted jurisdictional discovery in order to develop such facts before a case is dismissed for lack of personal jurisdiction. *Id.* at 71-72. The court ordered jurisdictional discovery, including for an international sponsor of annual tennis tournaments.

Holdings asks the Court to credit its uncorroborated assertion that it is a different entity than alleged, and cannot be subject to personal jurisdiction in the District. Plaintiffs have alleged facts supporting a conclusion that Holdings has ties to this District. Plaintiffs have also alleged Holdings' participation in price fixing contracts, like in *Magnetic Audiotape*, where the participants agreed to fix prices for freight shipments, including a specific agreement about flights from Hong Kong to the U.S. *See Magnetic Audiotape*, 334 F.3d at 207-08. It would thus be unfair to dismiss Holdings from this action without first providing Plaintiffs jurisdictional discovery to support both of these aspects of personal jurisdiction. *Id.*

Any uncertainty about the exact entity involved in the conduct challenged by Plaintiffs or Holdings' relationship with this District is due to Holdings, and its decision to refer interchangeably

- 20 -

to LME and Holdings in doing business in the United States.[45]  Although Plaintiffs contend the facts sufficiently support assertion of personal jurisdiction over all LME Defendants, any doubts should be resolved in favor of granting jurisdictional discovery so that Plaintiffs can further develop the record.  Permitting jurisdictional discovery from Holdings would also allow this Court to assess whether Defendants are subject to specific or general personal jurisdiction in this forum.

### F.    Plaintiffs Adequately State a Claim Against Holdings

Finally, Holdings argues that Plaintiffs have failed to state a claim against it because:  (a) Plaintiffs' allegations do not adequately describe conduct taken by Holdings; (b) Holdings is not responsible for the acts of the LME; and (c) Holdings does not have adequate notice of the claims against it.  *See* Def.'s Mem. at 16-20.  Holdings is incorrect.  First, Plaintiffs allege Holdings' conduct in detail in the complaints, as summarized in §II, *supra*.[46]  Second, Plaintiffs adequately allege an agency relationship between Holdings and the LME, subjecting Holdings to liability for the conduct of the LME.[47]  Third, Holdings' and LME's interlocking directors refer interchangeably to Holdings and the LME, as well as other LME defendants, and did so both before and after the acquisition by HKEx.[48]  Plaintiffs should not be penalized in a motion to dismiss for Holdings' own

---

[45]   *See* nn.13-18, *supra* and accompanying text (referring to LME and LME holdings interchangeably and describing share status).

[46]   *See* SCCACAC, ¶¶50-51, 57; Commercial End Users' Complaint, ¶¶37-43, 72-75, 78-81, 134, 138; Consumer End Users' Complaint, ¶¶5, 49, 52-53, 63, 72, 74, 78-82 (describing agreements and ongoing payment structures with Goldman Sachs); SCCACAC,¶¶68-70 (describing actions taken during the acquisition of Holdings in furtherance of the conspiracy); SCCACAC,¶¶116-117, 126-128; Commercial End Users' Complaint, ¶¶37-43, 72-75, 78-81, 134, 138; Consumer End Users' Complaint, ¶¶5, 49, 52-53, 63, 72, 74, 78-82 (describing Holdings' ownership structure and relationship with Goldman Sachs, as well as its acquisition); SCCACAC,¶¶137-141; Commercial End Users' Complaint, ¶¶32-34; Consumer End Users' Complaint, ¶¶26, 57, 81 (describing relationship with JP Morgan and its subsidiaries in warehouse dealings); *see also* §II, *supra*.

[47]   *See* §III.B.1, *supra*.

[48]   *See* n.13, *supra* and accompanying text.

actions in referring collectively to LME and Holdings as the LME in doing business in the United

States.[49]  Finally, any question of the adequacy of notice to Holdings should be addressed through

the grant of jurisdictional discovery, given the facts outlined above and the public statements made

by Defendants LME and Holdings that conflate LME and Holdings.

## IV.    CONCLUSION

        For these reasons, Holdings' motion to dismiss based on personal jurisdiction should be

denied.  Alternatively, if the Court determines the factual record regarding personal jurisdiction

needs further development, then Plaintiffs should be allowed to conduct jurisdictional discovery

before the Court decides this motion.

DATED:  May 27, 2014                        Respectfully submitted,

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            BONNY E. SWEENEY
                                            CARMEN A. MEDICI


                                                    s/ Bonny E. Sweeney
                                            _____
                                                BONNY E. SWEENEY

                                            655 West Broadway, Suite 1900
                                            San Diego, CA  92101
                                            Telephone:  619/231-1058
                                            619/231-7423 (fax)

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            SAMUEL H. RUDMAN
                                            58 South Service Road, Suite 200
                                            Melville, NY  11747
                                            Telephone:  631/367-7100
                                            631/367-1173 (fax)

---

[49]  *See* §III.D, *supra*.

944658_1

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
MARK DEARMAN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

Attorneys for Direct Purchaser Plaintiffs Ampal,
Inc., Admiral Beverage, Central Aluminum
Company, Claridge Products and Equipment,
Inc., Custom Aluminum Products, Inc., Extruded
Aluminum, Inc., International Extrusions, Inc.,
Talan Products Inc., and Thule, Inc.

DATED:  May 27, 2014
                                         GRANT & EISENHOFER P.A.
LINDA P. NUSSBAUM
PETER A. BARILE III

                                                s/ Linda P. Nussbaum

                                           LINDA P. NUSSBAUM

485 Lexington Avenue
New York, NY 10017
Telephone:  646/722-8500
646/722-8501 (fax)

Attorneys for Direct Purchaser Plaintiffs Ampal,
Inc., Admiral Beverage, Central Aluminum
Company, Claridge Products and Equipment,
Inc., Custom Aluminum Products, Inc., Extruded
Aluminum, Inc., International Extrusions, Inc.,
Talan Products Inc., and Thule, Inc.

DATED:  May 27, 2014
                                         LOVELL STEWART HALEBIAN
  JACOBSON LLP
CHRISTOPHER LOVELL
BENJAMIN M. JACCARINO
AMANDA N. MILLER

                                          s/ Christopher Lovell

                                         CHRISTOPHER LOVELL

- 23 -

61 Broadway, Suite 501
New York, NY 10006
Telephone: 212/608-1900
212/719-4677 (fax)

Attorneys for Direct Purchaser Plaintiffs Ampal,
Inc., Admiral Beverage, Central Aluminum
Company, Claridge Products and Equipment,
Inc., Custom Aluminum Products, Inc., Extruded
Aluminum, Inc., International Extrusions, Inc.,
Talan Products Inc., and Thule, Inc.

DATED:  May 27, 2014                    GIRARD GIBBS LLP
                                        JOHN A. KEHOE


                                        _____s/ John A. Kehoe_____
                                        JOHN A. KEHOE

                                        GIRARD GIBBS, LLP
                                        JOHN A. KEHOE
                                        711 Third Avenue, 20th Floor
                                        New York, NY 10017
                                        Telephone: 212/798-1059
                                        212/867-1767 (fax)

                                        DANIEL C. GIRARD
                                        AMANDA M. STEINER
                                        ADAM POLK
                                        601 California Street, 14th Floor
                                        San Francisco, CA 94108
                                        Telephone: 405/981-4800
                                        415/981-4846 (fax)

                                        Attorneys for Commercial End User Plaintiff D-
                                        Tek Manufacturing

- 24 -

DATED:  May 27, 2014                    KESSLER TOPAZ MELTZER & CHECK, LLP
                                        JOSEPH H. MELTZER
                                        KIMBERLY A. JUSTICE
                                        TERENCE S. ZIEGLER
                                        J. QUINN KERRIGAN


                                        _____
                                                s/ Joseph H. Meltzer
                                                JOSEPH H. MELTZER

                                        280 King of Prussia Rd.
                                        Radnor, PA 19087
                                        Telephone: 610/667-7706
                                        610/667-7056 (fax)

                                        Attorneys for Commercial End User Plaintiff
                                        Team Ward, Inc.

DATED:  May 27, 2014                    CUNEO GILBERT & LaDUCA, LLP
                                        JONATHAN W. CUNEO
                                        JOEL DAVIDOW
                                        YIFEI LI


                                        _____
                                                s/ Jonathan W. Cuneo
                                                JONATHAN W. CUNEO

                                        507 C. Street, NE
                                        Washington, D.C. 20002
                                        Telephone: 202/789-3960
                                        202/789-1813 (fax)

                                        Attorneys for Commercial End User Plaintiffs
                                        Welk-Ko Fabricators, Inc., *et al.*

DATED:  May 27, 2014                    FINKELSTEIN THOMPSON LLP
                                        ROSALEE B.C. THOMAS
                                        DOUGLAS G. THOMPSON JR.


                                        _____
                                                s/ Douglas G. Thompson Jr.
                                                DOUGLAS G. THOMPSON JR.

944658_1

1077 30th Street, NW, Suite 150
Washington, DC 20007
Telephone:  202/337-8000
202/337-8090 (fax)

STRANGE & CARPENTER
BRIAN R. STRANGE
KEITH BUTLER
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Telephone: 310/207-5055
310/826-3210 (fax)

Attorneys for Consumer Indirect Purchaser
Plaintiffs Daniel Javorsky, Brick Pizzeria LLC
and David Kohlenberg

### ECF CERTIFICATION

The filing attorney attests that she has obtained concurrence regarding the filing of this

document from the signatories to this document.

Dated:  May 27, 2014                        By:_____s/ Bonny E. Sweeney_____
                                                          BONNY E. SWEENEY

- 26 -

944658_1