UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ——————————————— x | | |
| In re ALUMINUM WAREHOUSING ANTITRUST LITIGATION | : : : | No. 14 MD 3122 (KBF) CLASS ACTION |
| ——————————————— | : : | |
| This Document Relates To: | : : : | CONSUMER END-USER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT |
| CONSUMER END-USER ACTION. | : : : | MOTION TO DISMISS STATE LAW CLAIMS (ECF NO. 28) |
| ——————————————— x | | |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................1

II.     ARGUMENT ........................................................................................................2

     A.     Plaintiffs' Consumer Protection Claims Are Adequately Alleged .........................2

         1.     Plaintiffs Have Adequately Alleged State Law Claims Based On The Listed Consumer Protection Statutes ........................................................2

         2.     Plaintiffs Have Adequately Alleged Proximate Cause ...............................4

         3.     Plaintiffs' Consumer Protection Claims Are Adequate Under State Laws And Should Not Be Dismissed............................................................4

             a.     Business purchasers are not precluded from asserting consumer protection claims ............................................................4

             b.     Misrepresentation or fraudulent conduct is not required ................6

             c.     Privity or a business connection between Plaintiffs and Defendants is not required ...............................................................8

             d.     Plaintiffs' consumer protection claims do not raise any extraterritorial concerns ...............................................................10

             e.     Egregious misconduct is not required and Plaintiffs have pled unconscionable activity..........................................................14

             f.     Consumer protection claims are not barred merely because they resemble antitrust claims........................................................17

     B.     Plaintiffs May Assert A Nationwide Class Under Michigan's Antitrust Laws....................................................................................................................20

     C.     Plaintiffs' Unjust Enrichment Claim Is Adequately Alleged ...............................23

III.     CONCLUSION ..................................................................................................24

# TABLE OF AUTHORITIES

**Page**

## <u>Cases</u>

*Anderson News, LLC v. Am. Media, Inc.*,
  680 F.3d 162, 182 (2d Cir. 2012)................................................................ 2, 3, 24

*AT&T Mobility LLC v. AU Optronics Corp.*,
  707 F.3d 1106 (9th Cir. 2013) ................................................................... 20, 21

*Baptist Health v. Murphy*,
  226 S.W.3d 800 (Ark. 2006) ............................................................................. 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................... 2

*Berneike v. CitiMortgage, Inc.*,
  708 F.3d 1141 (10th Cir. 2013) ...................................................................... 18

*Cargill, Inc. v. Degesch Am., Inc.*,
  875 F. Supp. 2d 667 (E.D. La. 2012) ......................................................... 15, 16

*Churchill Vill., L.L.C. v. Gen. Elec. Co.*,
  169 F. Supp. 2d 1119 (N.D. Cal. 2000) ......................................................... 12

*Dalton v. Camp*,
  548 S.E.2d 704 (N.C. 2001).............................................................................. 16

*Diehl v. Ogorewac*,
  836 F. Supp. 88 (E.D.N.Y. 1993) ................................................................... 20

*Dist. Cablevision Ltd. P'ship v. Bassin*,
  828 A.2d 714 (D.C. 2003) ............................................................................... 17

*Eaves v. Designs for Fin., Inc.*,
  785 F. Supp. 2d 229 (S.D.N.Y. 2011).............................................................. 5

*Ehlinger & Assocs. v. La. Architects Ass'n*,
  989 F. Supp. 775 (E.D. La. 1998) ................................................................... 16

*Erickson v. Pardus*,
  551 U.S. 89 (2007)............................................................................................. 3

*Gibbons v. J. Nuckolls, Inc.*,
  216 S.W.3d 667 (Mo. 2007) ............................................................................ 10

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
    98 N.Y.2d 314 (2002) ........................................................................................... 13

*Healy v. Beer Inst., Inc.*,
    491 U.S. 324 (1980) ............................................................................................. 20

*Howard v. Riggs Nat'l Bank*,
    432 A.2d 701 (D.C. Ct. App. 1981) ........................................................................ 9

*Iadanza v. Mather*,
    820 F. Supp. 1371 (D. Utah 1993) ...................................................................... 18

*In re Auto. Parts Antitrust Litig.*,
    2013 WL 2456612 (E.D. Mich. June 6, 2013) ...................................................... 15

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
    701 F. Supp. 2d 356 (E.D.N.Y. 2010) .................................................................... 3

*In re Chocolate Confectionary Antitrust Litig.*,
    602 F. Supp. 2d 538 (M.D. Pa. 2009) ...................................................... 14, 17, 18

*In re Chocolate Confectionary Antitrust Litig.*,
    749 F. Supp. 2d 224 (M.D. Pa. 2010) .................................................................. 13

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
    903 F. Supp. 2d 198 (S.D.N.Y. 2012) .............................................................. 9, 24

*In re Digital Music Antitrust Litig.*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011) ............................................................ 16, 24

*In re DRAM Antitrust Litig.*,
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) ............................................................... 12

*In re Flash Memory Antitrust Litig.*,
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) ........................................................... 3, 18

*In re Flonase Antitrust Litig.*,
    692 F. Supp. 2d 524 (E.D. Pa. 2010) ................................................................... 24

*In re New Motor Vehicles Can. Export Antitrust Litig.*,
    350 F. Supp. 2d 160 (D. Me. 2004) ................................................. 5, 7, 10, 17, 18

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    252 F.R.D. 83 (D. Mass. 2008) .............................................................................. 8

*In re Processed Egg Prods. Antitrust Litig.*,
  851 F. Supp. 2d 867 (E.D. Pa. 2012) ......................................................... 15, 16, 18

*In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litig.*,
  758 F. Supp. 2d 1077 (S.D. Cal. 2010)............................................................... 2

*In re Terazosin Hydrochloride Antitrust Litig.*,
  160 F. Supp. 2d 1365 (S.D. Fla. 2001) ............................................................ 24

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  586 F. Supp. 2d 1109 (N.D. Cal. 2008) ...................................................... 17, 18

*In re Trilegiant Corp., Inc.*,
  2014 WL 1315244 (D. Conn. Mar. 28, 2014) ................................................... 2

*James v. Ashley Adams Antiques, Inc.*,
  2006 WL 4990908 (M.D. Fla. June 15, 2006)................................................... 6

*Jarrell v. Carter*,
  577 So. 2d 120 (La. Ct. App. 1991) ................................................................ 10

*LaSala v. UBS, AG*,
  510 F. Supp. 2d 213 (S.D.N.Y. 2007)............................................................ 21

*Lilawanti Enters., Inc. v. Walden Book Co., Inc.*,
  670 So. 2d 558 (La. Ct. App. 1996)................................................................. 9

*Marshall v. Miller*,
  276 S.E.2d 397 (N.C. 1981).......................................................................... 16

*MD Prods., Inc. v. Callaway Golf Sales Co.*,
  459 F. Supp. 2d 434 (W.D.N.C. 2006) ......................................................... 16

*Meridian Project Sys. Inc. v. Hardin Constr. Co.*,
  404 F. Supp. 2d 1214 (E.D. Cal. 2005).......................................................... 11

*New York v. Feldman*,
  210 F. Supp. 2d 294 (S.D.N.Y. 2002)............................................................. 8

*Ports Petroleum Co., Inc. of Ohio v. Nixon*,
  37 S.W.3d 237 (Mo. 2001) ........................................................................... 10

*Remco Enters., Inc. v. Hous.*,
  677 P.2d 567 (Kan. App. 1984) .................................................................... 15

*Riggs Nat'l Bank v. Dist. of Columbia*,
  581 A.2d 1229 (D.C. 1990) ..................................................... 14

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
  737 F. Supp. 2d 380 (E.D. Pa. 2010) ..................................... 24

*Simon v. Philip Morris Inc.*,
  124 F. Supp. 2d 46 (E.D.N.Y. 2000) .............................. 20, 21

*Spirit Locker, Inc. v. EVO Direct, LLC*,
  696 F. Supp. 2d 296 (E.D.N.Y. 2010) ...................................... 5

*State ex rel. Kline v. Transmasters Towing*,
  168 P.3d 60 (Kan. App. 2007) .............................................. 15

*State ex rel. McGraw v. Scott Runyon Pontiac-Buick*,
  461 S.E.2d 516 (W. Va. 1995) .............................................. 19

*State ex rel. McGraw v. Telecheck Servs., Inc.*,
  582 S.E.2d 885 (W. Va. 2003) .............................................. 19

*State ex rel. Stovall v. DVM Enters., Inc.*,
  275 Kan. 243 (2003) ............................................................. 7

*State v. Polley*,
  2 S.W.3d 887 (Mo. Ct. App. 1999) ....................................... 10

*Utah v. B & H Auto*,
  701 F. Supp. 201 (D. Utah 1988) .......................................... 19

*W. Acceptance Corp., Inc. v. Jones*,
  788 P.2d 214 (Idaho 1990) ...................................................... 9

*Walden v. DB&D, LLC*,
  No. CV 12-138-M-DLC, 2013 WL 322103 (D. Mont. Jan. 28, 2013) ............ 13

*Whalen v. Stryker Corp.*,
  783 F. Supp. 2d 977 (E.D. Ky. 2011) ...................................... 6

*Wille v. Sw. Bell Tel. Co.*,
  549 P.2d 903 (Kan. 1976) ..................................................... 15

## Statutes

Ark. Code Ann. § 4-88-107 .......................................................... 6

D.C. Code § 28-3901(a)(1) ........................................................... 4

D.C. Code § 28-3901(a)(2)(A) ............................................................................ 4

D.C. Code § 28-3904 ......................................................................................... 8

Haw. Rev. Stat. § 480-1 ..................................................................................... 5

Haw. Rev. Stat. § 480-2(e) ................................................................................. 5

Idaho Code Ann. § 48-601 ................................................................................. 9

Kan. Stat. Ann. § 50-627 .............................................................................. 7, 15

La. Rev. Stat. Ann. § 51:1402(8) ....................................................................... 5

La. Rev. Stat. Ann. § 51:1405 ........................................................................ 7, 9

La. Rev. Stat. Ann. § 51:1409(A) ....................................................................... 5

La. Rev. Stat. Ann. § 51:1492(a) ..................................................................... 12

Me. Rev. Stat. Ann. tit. 5, § 206 ........................................................................ 5

Me. Rev. Stat. Ann. tit. 5, § 207 ...................................................................... 10

Me. Rev. Stat. Ann. tit. 5, § 213 ...................................................................... 10

Mont. Code Ann. § 30-14-102(6) ....................................................................... 5

Mont. Code § 30-14-102(8) .............................................................................. 12

N.H. Rev. Stat. § 358-A:2 ................................................................................. 13

Nev. Rev. Stat. § 598.0923(3) ............................................................................ 7

W. Va. Code § 46A-1-102(31) ............................................................................ 6

W. Va. Code § 46A-6-104 ................................................................................. 19

W. Va. Code § 46A-6-106(a) .............................................................................. 5

Plaintiffs Daniel Javorsky, David Kohlenberg, and Brick Pizzeria LLC, on behalf of themselves and all others similarly situated (collectively "Consumer End Users" or "Plaintiffs"), respond to Defendants' Motion (ECF No. 28)[1] and Memorandum of Law in Support of their Joint Motion to Dismiss State Law Claims (ECF No. 29) ("Def. Mem."). Consumer End Users also join in the opposition memorandum of the Direct Purchaser Plaintiffs filed in response to the same, to the extent appropriate.

## I.    INTRODUCTION[2]

Consumer End User Plaintiffs purchased, for their own use and not for resale, consumer products made from primarily aluminum, including outdoor furniture, ladders, home siding, aluminum foil, pots and pans, and soda and beer cans.  (ECF No. 1 ("Consumer CAC") ¶¶ 17–19.) Plaintiffs allege that Defendants conspired in a scheme to hoard physical aluminum in their warehouses and to restrict the deliverable supplies of physical aluminum out of their warehouses. (*Id.* ¶¶ 70–125.)  Thus, Plaintiffs brought suit under the consumer protection and antitrust laws of numerous states.  Defendants now move to dismiss Plaintiffs' state law claims on a variety of unfounded bases, all of which should be rejected by this Court as Defendants have done nothing to meet their burden undermine or challenge Plaintiffs' claims.

---

[1] All ECF citations herein are to docket entries in case number 14-md-03122 (KBF) (Consumer End User docket).

[2] As the facts underlying the Consumer End Users' operative Complaint are substantially similar to those discussed in the Direct Purchaser Plaintiffs' Opposition to the Motion by the London Metal Exchange and Goldman Sachs Defendants to Dismiss Claims Against them on the Merits and for Asserted Lack of Standing, this Brief will not burden the Court with another recital of those facts, but instead will cite the Consumer End Users' operative Complaint as appropriate.

II.     **ARGUMENT**

      A.     **Plaintiffs' Consumer Protection Claims Are Adequately Alleged**

            1.     **Plaintiffs Have Adequately Alleged State Law Claims Based On The Listed Consumer Protection Statutes**

Defendants argue that listing specific state consumer protection and unfair competition statutory provisions, while incorporating previous allegations, is insufficient for pleading purposes.  (Def. Mem. at 2–3.)  However, Defendants have not made such an argument for Plaintiffs' nearly identically-formatted pleading of multi-state antitrust claims—apparently agreeing that, in at least some circumstances, pleading requirements can indeed be met without duplicatively realleging the same basic facts in exhaustive detail for each of the dozens of state laws Defendants have violated.  But even moving past this disparity, Defendants have not cited a single Southern District of New York or Second Circuit decision in crafting this "listing" argument.  Instead, they rely on non-precedential case law from other district courts—much of which can be easily distinguished.  *Compare* (Consumer CAC ¶¶ 268–92), *with In re Trieliant Corp., Inc.*, No. 3:12-cv-00396 (VLB), 2014 WL 1315244, at *35 (D. Conn. Mar. 28, 2014) (finding a footnote in a complaint listing several state consumer statutes without the incorporation of any factual allegations did not satisfy pleading requirements), *and In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litig.*, 758 F. Supp. 2d 1077, 1096–97 (S.D. Cal. 2010) (finding that listed state law claims grounded in fraud and focusing on "false and misleading statements" needed to be pled with more detail as "'the circumstances of the fraud must be stated with particularity' under Rule 9(b)") (internal citations omitted)).

Furthermore, at this early stage in the litigation, Plaintiffs need only have alleged "enough facts to raise a reasonable expectation that discovery will reveal evidence" to support their claims.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Anderson News,*

*LLC v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012).  "'Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests.'"  *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1141 (N.D. Cal. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  Relying on this pleading standard, another New York district court denied a motion to dismiss where plaintiffs broadly outlined forty-three separate state law claims with a statement incorporating the facts previously alleged in the complaint.  *See In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 378–79 (E.D.N.Y. 2010).  The *Bayer* court found that a listing of statutes was sufficient at such a preliminary stage of the case because it allowed "the defendant and the Court to draw inferences that the elements exist."  *Id*.

This is exactly what Plaintiffs have done here.  Plaintiffs laid out detailed factual allegations and incorporated them into their pleading of various state law consumer protection and unfair competition causes of action.  (Consumer CAC ¶¶ 217, 224, 230, 238, 244, 268, 293, 323 (incorporating detailed factual allegations within causes of action).)  Moreover, Defendants cannot genuinely claim that they do not have sufficient notice of the claims being brought against them or the bases for these claims given that they spend several pages discussing these same state law claims and whether the detailed facts pled by Plaintiffs satisfy the required statutory elements.  (*See* Def. Mem. at 4–10.)

As Plaintiffs have satisfied pleading requirements at this early stage in the litigation, Defendants' motion to dismiss based on a "listing" argument should be denied.  However, if the Court would prefer an in depth pleading of these numerous individual consumer protection and unfair competition state law claims, Plaintiffs should be allowed (and hereby request such leave, if necessary) to amend their Complaint to do so.  *See Anderson News*, 680 F.3d at 185.

### 2. Plaintiffs Have Adequately Alleged Proximate Cause

As stated in the Notice of Opposition Briefs Filed Separately, Jointly, or Adopted by Consumer End Users in Response to Defendants' Motions to Dismiss, Consumer End User Plaintiffs adopt and incorporate the arguments made by Direct Purchaser Plaintiffs in their Opposition to Defendants' Joint Motion to Dismiss State Law Claims, as if made fully herein.

### 3. Plaintiffs' Consumer Protection Claims Are Adequate Under State Laws And Should Not Be Dismissed

#### a. Business purchasers are not precluded from asserting consumer protection claims

Defendants argue that the consumer protection laws of nine jurisdictions—the District of Columbia, Hawaii, Louisiana, Maine, Missouri, Montana, New York, Rhode Island, and West Virginia[3]—bar claims by those "who purchased [aluminum] primarily for business or commercial purposes." (Def. Mem. at 4.) With respect to Consumer End-User Plaintiffs, Defendants' argument applies only against Plaintiff Brick Pizzeria LLC—not against Plaintiffs Daniel Javorsky and David Kohlenberg. (*See id.* at 5.) And Plaintiff Brick Pizzeria LLC is entitled to assert the consumer protection statutes at issue because it purchased aluminum products for its own use and not for re-sale.[4] *See, e.g.*, D.C. Code §§ 28-3901(a)(1), (a)(2)(A) (defining "consumer" as "a person who, other than for purposes of resale, does or would purchase, lease (as lessee), or receive consumer goods or services" and further defining "person" as "an individual, firm, corporation, partnership, cooperative, association, or any other organization, legal entity, or group of individuals however

---

[3] Defendants also argue that the consumer protection laws of Michigan, Minnesota, Mississippi, and Utah bar claims for the same reason. (Def. Mem. at 4.) Consumer End-User Plaintiffs do not assert consumer protection claims under the laws of Michigan, Minnesota, Mississippi, or Utah.

[4] In addition, even if Plaintiff Brick Pizzeria LLC is barred from obtaining damages under one or more of the state consumer protection statutes, it may, in certain circumstances, remain entitled to injunctive relief.

organized"); Haw. Rev. Stat. §§ 480-1 (defining "person" as including "individuals, corporations, firms, trusts, partnerships . . . , [and] limited liability companies . . . existing under or authorized by the laws of this State, or any other state, or any foreign country"), 480-2(e) (authorizing "[a]ny person" to "bring an action based on unfair methods of competition declared unlawful by this section"); La. Rev. Stat. Ann. §§ 51:1409(A) ("Any person who suffers any ascertainable loss of money or movable property . . . as a result of . . . an unfair or deceptive method, act, or practice . . . may bring an action . . . ."), 51:1402(8) (defining "person" as "a natural person, corporation, trust, partnership . . . , association, and any other legal entity"); Me. Rev. Stat. Ann. tit. 5, §§ 213 ("Any person who purchases or leases goods, services or property . . . and thereby suffers any loss . . . may bring an action . . . ."), 206 (defining "person" as "natural persons, corporations, trusts, partnerships . . . and any other legal entity"); *In re New Motor Vehicles Can. Export Antitrust Litig.*, 350 F. Supp. 2d 160, 187 (D. Me. 2004) (finding Maine statute "does not limit the scope of its prohibition to consumer transactions"); Mont. Code Ann. § 30-14-102(6) (defining "person" as any "natural persons, corporations, trusts, partnerships . . . and any other legal entity"); *In re New Motor Vehicles Can. Export Antitrust Litig.*, 350 F. Supp. 2d at 193 ("[T]he application of the Montana consumer protection statute is not limited to those who engage directly in consumer transactions."); *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 266 (S.D.N.Y. 2011) ("To be sure, a business plaintiff may state a claim under Section 349 where it demonstrates that the 'defendant's deceptive conduct is, at least to some extent, directed at non-business customers.'" (quoting *Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp. 2d 296, 304 (E.D.N.Y. 2010))); W. Va. Code §§ 46A-6-106(a) ("Any person who purchases or leases goods or services and thereby suffers any ascertainable loss of money or property . . . as a result of the use or employment . . . of a method, act or practice

prohibited . . . by the provisions of this article may bring an action . . . ."), 46A-1-102(31) (defining "person" to include "a natural person or an individual, and an organization").

In addition, Plaintiff Brick Pizzeria LLC may assert consumer protection claims under Florida law because Defendants possess specialized abilities in the aluminum market, unlike Plaintiff. *See James v. Ashley Adams Antiques, Inc.*, No. 2:05-cv-515-FtM-29DNF, 2006 WL 4990908, at *3 (M.D. Fla. June 15, 2006) (finding "average consumer who did not possess defendants' specialized abilities in the field" sufficient to allege a FDUPTA claim, especially on a motion to dismiss).

### b.    Misrepresentation or fraudulent conduct is not required

The consumer protection statutes of five jurisdictions—Arkansas, Kansas, Louisiana, Nevada, and New York[5]—are not required to be predicated upon a misrepresentation or fraudulent conduct. Nor do such claims need to be pled with particularity. In any event, Plaintiffs' allegations satisfy Rule 9(b)'s particularity requirement, in that they provide Defendants with fair notice of the substance of Plaintiffs' claims and enable them to prepare a responsive pleading. *Whalen v. Stryker Corp.*, 783 F. Supp. 2d 977, 982 (E.D. Ky. 2011). The Complaint identifies the individual Defendants and their connection to the overall scheme. (*See* Consumer CAC ¶¶ 20–22, 24–26, 28–31, 33–34.) Thus, even under a Rule 9(b) standard, Defendants' motion should be denied. Defendants' state-specific arguments fail for additional reasons:

<u>Arkansas</u>.    In Arkansas, a consumer protection claim may be predicated upon any "deceptive" or "unconscionable" act or practice, which need not be plead with particularity. *See* Ark. Code Ann. § 4-88-107; *see also Baptist Health v. Murphy*, 226 S.W.3d 800, 811 & n.6 (Ark.

---

[5] Defendants also include the consumer protection laws of Arizona, Minnesota, and Mississippi in this argument (*see* Def. Mem. at 5), but Consumer End-User Plaintiffs do not allege claims under those statutes.

2006) (affirming finding that an unconscionable act is "an act that 'affronts the sense of justice, decency, or reasonableness,'" including acts "violative of public policy or statute" (citations omitted)).   As Plaintiffs have undoubtedly pled an unconscionable act within the meaning of Arkansas law, Defendants' argument must be rejected.   (*See, e.g.*, Consumer CAC ¶¶ 83–109); *In re New Motor Vehicles Can. Export Antitrust Litig.*, 350 F. Supp. 2d at 178 (finding plaintiffs' "allegations of a conspiracy to keep Canadian cars out of the United States market . . . sufficient to state a claim of an unconscionable practice under the ADTPA").

Kansas.        Similarly, Kansas consumer protection laws prohibit "unconscionable" acts or practices; not merely fraudulent or misrepresented conduct.   *See* Kan. Stat. Ann. § 50-627. Determining whether Defendants' acts rise to an unconscionable level requires a fact-intensive analysis that necessarily precludes determination on a motion to dismiss.   *See State ex rel. Stovall v. DVM Enters., Inc.*, 275 Kan. 243, 248–49 (2003) ("[T]he determination of unconscionability depends on the facts in a given case.").   Thus, because Plaintiffs' Kansas claims are not limited to fraud, as Defendants wrongly assert, Defendants' motion to dismiss should be denied.

Louisiana.        Louisiana consumer protection statutes make unlawful all "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[6] La. Rev. Stat. § 51:1405.   Thus, again, Defendants are incorrect in their assertion that Louisiana law requires allegations of misrepresentation or fraudulent conduct.

Nevada.        Nevada law does not require allegations of fraud or deception either.   For example, a business may violate Nevada consumer protection statutes where it "violate[s] a state or federal statute or regulation relating to the sale or lease of goods or services."   Nev. Rev. Stat. § 598.0923(3).   Plaintiffs' Complaint states a claim under this provision and actual reliance on the

---

[6] Defendants fail to state any statutory citation for their argument with regard to Louisiana law.

unfair or deceptive act is not required.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 98 (D. Mass. 2008) (certifying class under Nevada consumer statute based on allegations of illegal pricing).

New York.       New York law does not, as Defendants argue, require Plaintiffs' claims to be dismissed "because the private right of action under these laws applies only to claims involving 'deceptive' conduct."  (Def. Mem. at 6.)  Numerous courts have determined that allegations of antitrust violations are sufficiently "deceptive" to render a New York consumer protection claim valid.  *See, e.g.*, *New York v. Feldman*, 210 F. Supp. 2d 294, 302 (S.D.N.Y. 2002) ("The antitrust violations alleged in the Complaint constitute the kind of deceptive acts and practices contemplated by section 349.").

### c.       Privity or a business connection between Plaintiffs and Defendants is not required

Defendants urge dismissal of Plaintiffs' consumer protection claims under the laws of five jurisdictions—the District of Columbia, Idaho, Louisiana, Maine, and Missouri[7]—because the laws "require plaintiffs to be in privity with defendants."  (Def. Mem. at 6.)  Once again, Defendants are mistaken.

District of Columbia.  The District of Columbia's Consumer Protection Procedures Act ("DCCPPA") prohibits any "person" from engaging in unlawful trade practices.  D.C. Code § 28-3904.  And while some courts have interpreted "person" to apply specifically to "merchants," "a 'merchant' is not limited to the actual seller of the goods or services complained of, [rather] he must

---

[7] Defendants also include consumer protection claims under the laws of Arizona, Connecticut, and Michigan within this argument.  (Def. Mem. at 6.)  Consumer End-User Plaintiffs do not assert consumer protection claims under those state's laws.  In addition, Defendants argue against the application of Massachusetts' consumer protection statute with regard to Commercial End-User Plaintiffs only, and do not challenge Consumer End-User Plaintiffs' Massachusetts consumer protection claim on this ground.  (*Id.* at 7–8.)

be a 'person' connected with the 'supply' side of a consumer transaction." *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 709 (D.C. Ct. App. 1981) (citation omitted). Rather, the DCCPPA "clearly contemplates complaints against 'merchants' who 'supply the goods or services which are or would be the subject matter of a trade practice.'" *Id.* As Defendants clearly lie on the supply side of aluminum transactions and supply the services (aluminum storage) that would be the subject matter of a trade practice under the DCCPPA, Plaintiffs' claims are proper.

Idaho. The Idaho Consumer Protection Act ("ICPA") "protect[s] both consumers and businesses against unfair methods of competition and unfair or deceptive acts and practices in the conduct of trade or commerce. Idaho Code Ann. § 48-601. The Idaho Supreme Court requires broad construction of the ICPA. *W. Acceptance Corp., Inc. v. Jones*, 788 P.2d 214, 216 (Idaho 1990). The statute's prohibition against unfair methods of competition and unfair or deceptive acts or practices covers Defendants' alleged conduct and does not require allegations of privity between the parties. *See In re DDAVP Indirect Purchaser Antitrust Litig. v. Ferring Pharms. Inc.*, 903 F. Supp. 2d 198, 221 (S.D.N.Y. 2012) (finding allegations that defendant engaged in "anticompetitive conduct designed to maintain a fraudulent monopoly through a knowingly invalid patent" stated a claim under the ICPA and noting that "Plaintiffs have plausibly pleaded misrepresentations that, although they may not have been made directly to consumers, had the kind of effect on end-payors that [the ICPA] seeks to remedy").

Louisiana. The Louisiana Unfair Trade Practices Act provides that any "person who suffers any ascertainable loss of money or movable property . . . as a result of the use or employment by another person of an unfair or deceptive method, act or practice . . . may bring an action . . . ." La. Rev. Stat. § 51:1405. This definition does not require allegations of privity. *See Lilawanti Enters., Inc. v. Walden Book Co., Inc.*, 670 So. 2d 558, 561 (La. Ct. App. 1996) ("Any person who

- 9 -

suffers damage as a result of an unfair or deceptive act or practice which is unlawful under § 1405 has a private cause of action."); *Jarrell v. Carter*, 577 So. 2d 120, 124 (La. Ct. App. 1991) (same).

Maine. The Maine statute permits a person to sue for loss caused by another person's use "of a method, act or practice declared unlawful by section 207." Me. Rev. Stat. Ann. tit. 5, § 213. Section 207 prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* § 207. "It does not limit the scope of its prohibition to consumer transactions." *In re New Motor Vehicles Can. Export Antitrust Litig.*, 350 F. Supp. 2d at 187 (denying motion to dismiss Maine consumer protection claims and rejecting argument that privity is a necessary element to assert a claim).

Missouri. The Missouri consumer protection statute covers "every practice imaginable and every unfairness to whatever degree." *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. 2001). Privity of contract is not required. The "statutory framework [of the Missouri consumer protection statute] permits an aggrieved party to seek relief from any 'person' . . . . The statute's plain language does not contemplate a direct contractual relationship between plaintiff and defendant, and Missouri courts have not imposed such a requirement through statutory construction." *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 669 (Mo. 2007); *see also State v. Polley*, 2 S.W.3d 887, 892 (Mo. Ct. App. 1999) ("The statute's broad language . . . contemplates that other parties, besides the direct purchaser or contracting party, who suffer damages . . . are included among those eligible to receive restitution.").

Under every applicable state law, privity is not required and Defendants' argument should be rejected.

### d.   Plaintiffs' consumer protection claims do not raise any extraterritorial concerns

Defendants use a series of cases dealing with the extraterritorial extension of state law to

- 10 -

fabricate a theory that the laws of five jurisdictions—California, Louisiana, Montana, New Hampshire, and New York[8]—require more than an injury within the state for residents to be able to seek relief under the consumer protection laws of their home states.  (Def. Mem. at 8–9.) While it is correct that a citizen of a state who was injured in another state must show wrongful conduct that physically took place in California, Louisiana, Montana, New Hampshire, or New York in order to bring a claim in any of those states, that is not the situation currently before the Court.  Here, the citizenship of the consumers and the locations where their injuries occurred are both the very same states under whose consumer protection laws these claims are being made.

    California.       Defendants rely on a federal case analyzing California law that states that "[c]ourts have held that California's UCL does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California."  *Meridian Project Sys. Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1225 (E.D. Cal. 2005).[9]  In that case the claims were dismissed because the injuries occurred in Canada, to non-California residents, and the wrongdoing occurred in Illinois.  *Id.*  This case is completely different, where the claims are being brought under California law, by California residents, who were injured in California, and Defendants maintain a complete monopoly of LME-approved warehouses in Long Beach and Los Angeles, California, which they improperly used to inflate the price of aluminum in

---

[8] Defendants also make this argument with regard to claims brought under the consumer protection laws of South Carolina.  However, Consumer End User Plaintiffs have not made any such claims, relying only on the laws of South Carolina for a claim brought under that state's anti-monopolization statute.  (*See* Consumer CAC ¶ 314.)  As Defendants have not raised this argument as to the actual South Carolina claim brought by Plaintiffs, Defendants cannot attempt to do so in any reply they might file to this motion to dismiss.

[9] (Def. Mem. at 8.)

California.[10]  (Consumer CAC ¶¶ 7(a)–(c), 8–9, 17–19, 75, 159.)  As Plaintiffs allege California

resident plaintiffs, California misconduct, and California injury, there is absolutely no

extraterritorial application of a different state's laws.

      Louisiana.     Defendants' argument against Plaintiffs' Louisiana consumer protection

claim are also incorrect.  Not only do Defendants base their entire argument on non-precedential

*dicta*,[11] but the statute confirms that it covers injuries arising from the sale of any commodity or

thing of value "directly or indirectly affecting the people of this state."  La. Rev. Stat. §

51:1492(a).  There is no requirement of in-state conduct on top of in-state injury to consumers.

Holding otherwise would allow a defendant to injure consumers in one state and avoid liability

by simply doing all of their "dirty" deeds across state borders.  Moreover, Defendants have a

near total monopoly of the LME-approved warehouses in Louisiana, which allowed them to

unlawfully fix the price of aluminum in Louisiana.  (Consumer CAC ¶¶ 75, 159.)  And at least

one Defendant is domiciled in Louisiana.  (*Id.* ¶ 31.)  Thus, even if allegations of conduct within

Louisiana were required (and they are not), such conduct has been alleged.

      Montana.     Montana law, like Louisiana's, also covers injuries arising from the sale of

any commodity or thing of value "directly or indirectly affecting the people of this state."  Mont.

Code § 30-14-102(8); *see also id.* (jointly defining "trade" and "commerce" as the "offering for

---

[10] *Churchill Village, L.L.C. v. General Electric Co.*, 169 F. Supp. 2d 1119, 1124–27 (N.D. Cal. 2000), another federal case interpreting California state law, is also easily distinguishable as it involved the "extraordinary and drastic remedy" of a preliminary injunction and was an attempt to challenge a settlement by enjoining the settlement notification being sent to California residents for failing to offer the same settlement option to individual consumers that was offered to corporate consumers.  Although the court acknowledged that defendants had sold some of the products that were the subject of the underlying lawsuit in California, that, in and of itself, was not a sufficient nexus to California to enjoin the notification for a settlement that was being handled and administered entirely outside California.  *Id.*

[11] (Def. Mem. at 8); *In re DRAM Antitrust Litig.*, 516 F. Supp. 2d 1072, 1103–04 (N.D. Cal. 2007).

sale, sale, or distribution of any services [or] any property, tangible or intangible . . . *wherever located*" (emphasis added)); *Walden v. DB&D, LLC*, No. CV 12-138-M-DLC, 2013 WL 322103, at *2 (D. Mont. Jan. 28, 2013) ("The statute is interpreted broadly and flexibly so as to effect its object and promote justice.").  Accordingly, as under Louisiana law, in-state conduct is not required under the Montana statute.

New Hampshire.        Relevant New Hampshire case law also rebuts Defendants' "in-state conduct" theory.  "The New Hampshire Supreme Court has emphasized that this statute is broad in sweep, explaining that a pleading sufficiently states a claim if the "allegations encompass conduct which was part of trade or commerce that had direct or indirect effects on the people of [New Hampshire]."  *In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 235 (M.D. Pa. 2010) (internal citations omitted).  Thus, a claim for relief brought under N.H. Rev. Stat. § 358-A:2 is sufficiently pled where it has been alleged that "defendants colluded to fix the price of . . . products that were introduced into the New Hampshire market."  *Id.* ("This purported behavior encompasses conduct that was part of trade or commerce that, at the very least, had indirect effects on the New Hampshire market and its residents.").  This is exactly the same type of claim being brought in this case.

New York.        Similarly, New York law emphasizes that the location where a scheme, cartel, or other illegal plan was hatched is immaterial.  *See Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324–25 (2002).  Because the focus of New York's consumer protection law is to give significant protection to consumers within the state, "the transaction in which the consumer is deceived must occur in New York."  *Id.* at 325.  In this case, only New York consumers who were injured by their purchase of price-fixed aluminum products in New York are asserting claims under New York law.  Thus, the transactions in question (the purchase of price-fixed

goods) all took place in New York and there is no need for Plaintiffs to show other conduct occurring in New York.[12]

Because all of the locality elements of the consumer protection laws of California, Louisiana, Montana, New Hampshire, and New York have been adequately pled in the Complaint, Defendants cannot succeed on this portion of their motion to dismiss.

### e.    Egregious misconduct is not required and Plaintiffs have pled unconscionable activity

Defendants argue that Plaintiffs have not adequately alleged consumer protection claims under the laws of five jurisdictions—Arkansas, the District of Columbia, Kansas, Louisiana, and North Carolina—on the false assertion that these states require "a showing of unequal bargaining power, inequitable terms in the transaction in question, or both."  (Def. Mem. at 9–10.)  This is entirely incorrect.

Arkansas.      The Supreme Court of Arkansas has concluded that the use of the word "unconscionable" in the relevant code section is evidence that the ADTPA is to be construed liberally.  *See In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 583 (M.D. Pa. 2009).  Thus, "[t]he statute reaches any action that 'show[s] no regard for the conscience[,] affronting the sense of justice, decency, or reasonableness.'"  *Id.* (citations omitted).  In particular, price-fixing claims "are cognizable under the act" and there is no requirement to allege unequal bargaining power or inequitable terms.  *Id.*

District of Columbia.   Similarly, Defendants' citation to *Riggs National Bank v. District of Columbia*, 581 A.2d 1229 (D.C. 1990),[13] is misplaced because that case does not involve the

---

[12] Because several Defendants are domiciled in New York, it is implied by the allegations contained in the Complaint that they also engaged in additional wrongful conduct within the state.  (Consumer CAC ¶¶ 20–21, 24.)

[13] (Def. Mem. at 9.)

statute in question in this case and focuses solely on unconscionability under contract law.  When looking to cases that do focus on the laws pled in this action, these cases clearly state that an allegation of unconscionable conduct is **not** required for an "antitrust" claim to constitute an unlawful trade practice under the District of Columbia's consumer protection law.  *See In re Auto. Parts Antitrust Litig.*, No. 2:12-cv-00102, 2013 WL 2456612, at *25 (E.D. Mich. June 6, 2013) (holding the DCCPPA allows "plaintiffs to proceed with a claim of price fixing under the [DCCPPA] statute *without additional unconscionable allegations*" (emphasis added)); *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 899 (E.D. Pa. 2012).

<u>Kansas</u>.        The same flaw is apparent with Defendants' reliance on *Wille v. Southwest Bell Telephone Co.*, 549 P.2d 903 (Kan. 1976),[14] a case that focuses only on contract law and does not even mention Kansas consumer protection laws.  Multiple Kansas state courts have iterated that unconscionability is determined on a case-by-case basis focusing on the "peculiar circumstances of each case." *Remco Enters., Inc. v. Hous.*, 677 P.2d 567, 571 (Kan. App. 1984); *see also State ex rel. Kline v. Transmasters Towing*, 168 P.3d 60, 64 (Kan. App. 2007).  Nor is the enumerated list in Kan. Stat. Ann. § 50-627(b) the only conduct that can be considered unconscionable; it is merely a list of common examples.

<u>Louisiana</u>.        While *Cargill, Inc. v. Degesch America, Inc.*, 875 F. Supp. 2d 667, 676–77 (E.D. La. 2012), cited by Defendants for Louisiana law,[15] does involve the correct statute, the differences between that case (which was a simple breach of contract matter) and this case (a price-fixing cartel) clearly effect the application of that decision to the situation in this case. Here, Plaintiffs alleged that Defendants intentionally deceived participants in the relevant

---

[14] (*Id.*)

[15] (*Id.*)

markets in an effort to create and maintain inflated prices.  (*See, e.g.*, Consumer CAC ¶¶ 4, 116–17.)  Those are most definitely egregious actions involving "unethical conduct [that is to] be sanctioned based on LUTPA."  *Cargill, Inc.*, 875 F. Supp. 2d at 676–77.  Furthermore, "[t]he thrust of LUTPA is to deter injury to competition" and it cannot be seriously argued that a price-fixing cartel does not create a serious injury to competition.  *Ehlinger & Assocs. v. La. Architects Ass'n*, 989 F. Supp. 775, 786 (E.D. La. 1998).

North Carolina.        While *Dalton v. Camp*, 548 S.E.2d 704, 710–11 (N.C. 2001),[16] does involve North Carolina consumer protection laws, it involved an employment dispute, which are typically beyond the scope of the statute.  Thus, *Dalton* is not relevant here.  However, *Dalton* does correctly state that a plaintiff may establish a *prima facie* claim for unfair trade practices by showing that a defendant committed an unfair or deceptive act or practice and that a practice is considered unfair if it is unethical or unscrupulous.  *Id.* at 711; *see also MD Prods., Inc. v. Callaway Golf Sales Co.*, 459 F. Supp. 2d 434, 438 (W.D.N.C. 2006) ("A practice is unfair and deceptive 'when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'" (quoting *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981)).  And while this is once again a situation where a case-by-case assessment based on human experience must be made, "[t]he most persuasive authority arising under North Carolina law holds that price fixing is an unfair practice under that state's law."  *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 410–11 (S.D.N.Y. 2011); *see also In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d at 909–11 (noting that a horizontal conspiracy to fix prices would likely be a *per se* violation of North Carolina's consumer protection laws).

---

[16] (*Id.*)

As Defendants' unconscionability argument is completely unfounded, it should be rejected and Plaintiffs should be allowed to continue forward with their consumer protection claims under the laws of Arkansas, the District of Columbia, Kansas, Louisiana, and North Carolina.

**f.      Consumer protection claims are not barred merely because they resemble antitrust claims**

Defendants claim that Plaintiffs' "antitrust" claims are barred or otherwise not actionable under the consumer protection laws of seven jurisdictions—Arkansas, the District of Columbia, New Mexico, Rhode Island, Utah, Kansas, and West Virginia.  (Def. Mem. at 10.)  But Defendants' assertion is contradicted by legal authority from across the nation.[17]

Arkansas.      "[C]ourts have concluded that claims of price fixing are cognizable under" Arkansas' consumer protection laws.  *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d at 583.  Here, Defendants failed to meet their burden to undermine Plaintiffs' claims and their motion to dismiss should be rejected.

District of Columbia.  The same is true for price-fixing claims brought under the consumer protection laws of the District of Columbia.  *See id.* at 583–84 ("Hence, the DCCPPA subsumes the Sherman Act claim and creates an indirect purchaser cause of action for conspiratorial price fixing regardless of whether defendants have engaged in deceptive conduct."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1125–26 (N.D. Cal. 2008) (denying a motion to dismiss price fixing claims brought under District of Columbia consumer protection laws); *In re New Motor Vehicle Can. Export Antitrust Litig.*, 350 F. Supp. 2d at 182–83 (same); *see also Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 722–23

---

[17] Plaintiffs do not dispute that, to the extent that their claims involve only price-fixing conspiracies, such claims are not actionable under the state consumer protection laws of Idaho and Maine.

(D.C. 2003) (stating that the District of Columbia's consumer protection laws were "designed to provide procedures and remedies for a broad spectrum of practices which injure consumers" and that the enumeration of a number of specific unlawful acts is not exclusive of the claims that may be brought under these laws (citations omitted)).

New Mexico.  Likewise, "antitrust" claims similar to those in this case are actionable under the consumer protection laws of New Mexico.  *See In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d at 585–86 (finding allegations that plaintiffs paid artificially inflated prices maintained by a conspiracy to set noncompetitive prices sufficient to maintain a claim under New Mexico's consumer protection laws); *In re New Motor Vehicle Can. Export Antitrust Litig.*, 350 F. Supp. 2d at 195–96 (finding allegations of a conspiracy to maintain prices at artificially inflated levels creating a "gross disparity between the value received and the price paid" was sufficient to allege "an unconscionable business practice under the NMPUA"); *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d at 905–07 (finding the gross disparity aspect of a NMPUA claim can be based on factual allegations and does not need to be explicitly pled); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d at 1160; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d at 1127.

Rhode Island.  Antitrust claims are also actionable under the laws of Rhode Island where "consumers subject to collusive pricing possess a cognizable claim."  *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d at 586.

Utah.   Additionally, an unconscionable or deceptively inflated price that is passed on to consumers is covered by Utah's consumer protection laws, which are to be construed liberally and with a view towards achieving the statute's object.  *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1150 (10th Cir. 2013); *Iadanza v. Mather*, 820 F. Supp. 1371, 177–78 (D. Utah

- 18 -

1993); *Utah v. B & H Auto*, 701 F. Supp. 201, 204 (D. Utah 1988).

Kansas.       The language contained in the Kansas Unfair Trade and Consumer

Protection Act section 50-623(b), is nearly identical to that in the Utah Consumer Sales Practices

Act section 13-11-1(2), and states that the statute should be "construed liberally to promote" the

"protect[ion of] consumers from suppliers who commit deceptive and unconscionable practices."

Given the similarity between these two statutes and the clearly written legislative desire of both

states for the liberal construction of consumer protection laws, if price-fixing claims are

actionable under the laws of Utah, they should also be actionable under Kansas law, and

Defendants have presented nothing to challenge this inference.

West Virginia. West Virginia's broadly written statute, which declares "[u]nfair methods

of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce"

unlawful, W. Va. Code § 46A-6-104, is to be liberally construed to promote its purpose of

"protect[ing] consumers from unfair, illegal, and deceptive acts or practices by providing an

avenue of relief for consumers who would otherwise have difficulty proving their case under a

more traditional cause of action," *State ex rel. McGraw v. Telecheck Servs., Inc.*, 582 S.E.2d 885,

895 (W. Va. 2003) (quoting *State ex rel. McGraw v. Scott Runyon Pontiac-Buick*, 461 S.E.2d

516, 523 (W. Va. 1995)).  Thus, Defendants have presented nothing to undermine Plaintiffs'

claims under West Virginia's consumer protection laws.

Because case law overwhelmingly demonstrates that Plaintiffs' claims of a price-fixing

conspiracy may be pursued under the consumer protection laws of Arkansas, the District of

Columbia, New Mexico, Rhode Island, Utah, Kansas, and West Virginia, Defendants' motion to

dismiss on this point should be denied.

**B.    Plaintiffs May Assert A Nationwide Class Under Michigan's Antitrust Laws[18]**

Unlike *Healy v. Beer Institute, Inc.*,[19] this case does not involve a state statute that is attempting to set, or has the effect of setting, prices in other states.  *See* 491 U.S. 324, 326–30 (1980).  Instead, this case involves the violation of a state's antitrust laws designed to promote competition and business.  And while the Second Circuit has not yet weighed in on this issue, courts in other circuits have held that a state's antitrust laws can be applied to a class that includes consumers residing in other states and that such an application does not violate the Due Process Clause or raise any other constitutional concerns.  *See AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1112–13 (9th Cir. 2013) ("We see no reason why the due process constraints on the application of state antitrust law should, unlike any other area of law, follow the obsolete *lex loci delicti* rule."); *see also Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46, 69–70 (E.D.N.Y. 2000) (discussing similar issues in the context of a complex tort class action).

The question of whether a state's laws are to be applied to citizens of another state is essentially one of fairness, state interest, and whether there are significant contacts with the chosen state whose laws are to be applied.  *See Diehl v. Ogorewac*, 836 F. Supp. 88, 91–92 (E.D.N.Y. 1993).  "Thus, in-state conduct that causes out-of-state injuries can be relevant to a due process analysis, in the antitrust context and otherwise."  *AT&T Mobility LLC*, 707 F.3d at 1112; *see also Simon*, 124 F. Supp. 2d at 71–73.  For example, "a defendant cannot reasonably

---

[18] Defendants' argument on this point involves complex constitutional and choice of law concerns that should be briefed separately and in depth and not in a handful of paragraphs amongst the multitude of issues raised in Defendants' numerous motions to dismiss.  (Def. Mem. at 10–13.)  Any decision on these issues at this point in time would be premature and should be saved for a later date.

[19] (*Id.* at 12.)

complain that the application of [Michigan] law is arbitrary or unfair when its alleged conspiracy took place, at least in part, in [Michigan]."  *AT&T Mobility LLC*, 707 F.3d at 1113.  In addition, states have a clear interest in discouraging the perpetration of anticompetive activities within their borders.  *See id.* at 1112; *LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 232–33 (S.D.N.Y. 2007); *Simon*, 124 F. Supp. 2d at 72–73.

And while Defendants are correct that New York utilizes the significant relationship test when determining choice of law issues, the location where the injury occurred is not, in and of itself, dispositive of which state's laws will be applied.  *See generally Simon*, 124 F. Supp. 2d 46. Rather, the significant relationship test is a balancing test that requires a case-by-case determination based on several considerations, including: (1) where the injury occurred; (2) where the conduct that caused the injury occurred; (3) the location of the parties; and (4) where the relationship, if there is one, between the parties is centered.  *See, e.g.*, *AT&T Mobility LLC*, 707 F.3d at 1112 n.11.  In short, a district court must consider where **all** of Defendants' conduct occurred, not merely the location of the last sale of price-fixed goods.  *See id.* at 1112.

And here there are a multitude of reasons why Michigan's antitrust laws would be appropriate for application to a nationwide class.  First, there are significant contacts with Michigan in this case:

- Defendant Metro International has its headquarters in Michigan and owns twenty-nine of the LME aluminum storage warehouses in Detroit, Michigan.  (Consumer CAC ¶¶ 22, 52, 223, 229.)

- The LME has approximately thirty-four aluminum storage warehouses in Detroit, Michigan.  (*Id.* ¶ 52.)

- One of the alleged markets is "the market in [the] Detroit, Michigan area . . . for storing

aluminum in, and delivering aluminum from, warehouses." (*Id.* ¶ 158.)

- "[T]he key parties and witnesses to this unlawful conduct reside and do business in Michigan." (*Id.* ¶¶ 223, 229.)

- Defendants' unlawful acts substantially affected Michigan's commerce (*see id.* ¶¶ 221, 227), and it is expected that a not insignificant number of class members are domiciled in Michigan.

Second, much, if not all, of the unlawful conduct that forms the focus of this case occurred in Michigan:

- "Defendants entered an agreement in [an] unreasonable and extreme restraint of trade which intentionally, directly, and foreseeably inflated prices for aluminum in Michigan and in the United States, including the Midwest Premium or Platts MW Premium component of aluminum prices. This, in turn inflated the price of aluminum products throughout Michigan and the United States." (*Id.* ¶ 218.)

- "The primary method and means of the conspiracy was to hoard 75% of the United States' London Metal Exchange physical aluminum within warehouses that were located in Michigan." (*Id.* ¶¶ 223, 229.)

- "Defendants have abused their monopoly power in order anticompetitively and restrictively to limit unreasonably the free alienability of aluminum stored in Detroit warehousing and, thereby, inflate aluminum prices as well as the storage costs paid directly to Defendants." (*Id.* ¶ 226.)

- Defendants "caused a historically unprecedented lengthening and delay in the delivery times of aluminum from the LME Detroit warehouses in a manner inconsistent with the normal workings of competitive supply and demand." (*Id.* ¶ 5(e).)

- Defendants "offered financial incentives of up to $250 per ton for the storage of aluminum at the LME Detroit warehouses for long periods in order to increase even further the amount of aluminum storage."  (*Id.* ¶ 5(g).)

- "Defendants' in-state conduct caused substantial out-of-state injuries to Plaintiffs and the proposed nationwide class."  (*Id.* ¶¶ 223, 229.)

Third, Michigan has a particular interest in this case because most of the aluminum in the United States is "consumed, held and concentrated in warehouses" in Detroit, Michigan.  (*Id.* ¶ 90.)  Thus, Michigan has a significant interest in preventing and eliminating anticompetitive behavior within this industry and ensuring that this trade continues within Michigan.

In short, the application of Michigan state law to the claims of a nationwide class is supported by the balancing test because the various states that consumers may have purchased overpriced aluminum products in do not have the same significant contacts as Michigan does, are not states in which the collusive and improper monopolistic conduct took place, and have less of a direct interest in preserving the competitiveness of the aluminum market.  For these reasons, Defendants' motion to dismiss on this issue should be denied and Plaintiffs should be allowed to move forward on the certification of a nationwide class.[20]

### C.    Plaintiffs' Unjust Enrichment Claim Is Adequately Alleged

Defendants' arguments regarding Plaintiffs' unjust enrichment claim are nothing more than two different, unsupported, and highly abbreviated "theories."  (Def. Mem. at 13–16.)  First, without citing any supporting case law from any jurisdiction, Defendants argue that one cannot bring unjust enrichment claims based on the same conduct that forms the basis for antitrust claims.  (*See id.* at 14.)  At the same time, Defendants' contradict their initial theory by

---

[20] In the alternative, Plaintiffs ask for leave to amend to plead a Michigan-only class instead of a nationwide class for the violation of Michigan's antitrust laws.

simultaneously arguing that Plaintiffs' unjust enrichment claims cannot survive if their other claims are dismissed.  (*See id.* at 15.)

However, no matter which theory Defendants actually pursue, the only precedential cases Defendants' rely upon for their argument actually support the fact that Plaintiffs can assert unjust enrichment claims.  The courts in *In re DDAVP Indirect Purchaser Antitrust Litigation*, 903 F. Supp. 2d at 232–33, and *In re Digital Music Antitrust Litigation*, 812 F. Supp. 2d at 412–14, dismissed only the unjust enrichment claims brought under the laws of states that did not permit indirect purchaser unjust enrichment claims and allowed other unjust enrichment claims permitted by relevant state laws to go forward.  *See Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 424–26 (E.D. Pa. 2010); *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 542–43 (E.D. Pa. 2010); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1380 (S.D. Fla. 2001) (dismissing "without prejudice any unjust enrichment claim specifically pled under the common law of a jurisdiction that allows indirect purchasers to recover 'passed on' overcharges").  In short, Plaintiffs assert a viable unjust enrichment claim and Defendants' motion to dismiss should be denied.[21]

## III.    CONCLUSION

For all of the foregoing reasons, this Court should deny Defendants' Motion to Dismiss Plaintiffs' state law claims.

---

[21] In the alternative, should the Court agree with Defendants' argument, Plaintiffs should be entitled to amend their claims.  As leave to amend should be granted unless it is absolutely impossible for Plaintiffs to show they are entitled to any relief, Plaintiffs should be permitted to replead this cause of action.  *See Anderson News, LLC*, 680 F.3d at 185; *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d at 1380 (dismissing without prejudice various unjust enrichment claims and allowing for amendment).

Dated: May 27, 2014             Respectfully Submitted,

By:    */s/ Brian R. Strange*   
Brian R. Strange
Keith L. Butler
John T. Ceglia
**STRANGE & CARPENTER**
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Telephone: (310) 207-5055
Facsimile: (310) 826-3210
lacounsel@earthlink.net
kbutler@strangeandcarpenter.com
jceglia@strangeandcarpenter.com

Douglas G. Thompson (admitted *pro hac vice*)
Rosalee B. C. Thomas
Michael G. McLellan
Eugene J. Benick
**FINKELSTEIN THOMPSON LLP**
1077 30th Street, NW, Suite 150
Washington, DC 20007
Tel.: (202) 337-8000
Fax: (202) 337-8090
dthompson@finkelsteinthompson.com
rbcthomas@finkelsteinthompson.com
mmclellan@finkelsteinthompson.com
ebenick@finkelsteinthompson.com

*Attorneys for Consumer End User Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 27, 2014               Respectfully Submitted,

By:    */s/ Brian R. Strange*
Brian R. Strange
Keith L. Butler
John T. Ceglia
STRANGE & CARPENTER
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Telephone: (310) 207-5055
Facsimile: (310) 826-3210
lacounsel@earthlink.net
kbutler@strangeandcarpenter.com
jceglia@strangeandcarpenter.com

Douglas G. Thompson (admitted *pro hac vice*)
Rosalee B. C. Thomas
Michael G. McLellan
Eugene J. Benick
FINKELSTEIN THOMPSON LLP
1077 30th Street, NW, Suite 150
Washington, DC 20007
Tel.: (202) 337-8000
Fax: (202) 337-8090
dthompson@finkelsteinthompson.com
rbcthomas@finkelsteinthompson.com
mmclellan@finkelsteinthompson.com
ebenick@finkelsteinthompson.com

*Attorneys for Consumer End User Plaintiffs*