# EXHIBIT 1



Direct line:  020 7066 2720
Email:  david.bailey@fca.org.uk

Garry Jones
CEO
London Metal Exchange
56 Leadenhall Street
London
EC3A 2DX

Financial Conduct Authority
25 The North Colonnade
Canary Wharf
London
E14 5HS

Tel: +44 (0)20 7066 1000
Fax:+44 (0)20 7066 1099
www.fca.org.uk

9 June 2014

Dear Mr Jones,

**FCA Supervision of London Metal Exchange Warehousing Arrangements**

I set out in this letter, the FCA's approach to its ongoing supervisory oversight of the LME with specific regard to the functioning of its warehousing arrangements.

The LME is a "recognised investment exchange" ("RIE"), recognised and supervised by the Financial Conduct Authority ("FCA"), under the UK Financial Services and Markets Act 2000, as amended ("FSMA")[1]. To remain recognised, an RIE must at all times ensure, and be able to demonstrate, that it continues to satisfy the requirements for investment exchanges under the UK FSMA (Recognition Requirements for Investment Exchanges and Clearing Houses) Regulations 2001 ("Recognition Requirements")[2]. Under the Recognition Requirements, the LME must therefore, among other requirements, ensure that:

i) the systems and controls used in the performance of its functions are adequate, and appropriate for the scale and nature of its business;

ii) business conducted by means of its facilities is conducted in an orderly manner and so as to afford proper protection to investors;

iii) it has effective arrangements for monitoring and enforcing compliance with its own rules;

iv) it has made clear and transparent rules to ensure that all financial instruments admitted to trading on any regulated market operated by LME are capable of being traded in a fair, orderly and efficient manner (in accordance with Chapter V of EU Regulation 1287/2006/ EC (MiFID Regulation, where applicable)); and

v) where LME's facilities include making provision for the safeguarding and administration of assets belonging to users of those facilities, satisfactory arrangements are made for that purpose.

---

[1] FSMA: http://www.legislation.gov.uk/ukpga/2000/8/contents
[2] Recognition Requirements: http://www.legislation.gov.uk/uksi/2001/995/made

Registered as a Limited Company in England and Wales No. 1920623. Registered office as above.

In relation to requirement iv. above, the MiFID Regulation further requires LME, in assessing whether a transferable security is capable of being traded on its regulated market in a fair, orderly and efficient manner, to take into account whether the terms of the security are clear and unambiguous and allow for a correlation between the price of the security and the price or other value measure of the underlying.

In relation to requirement v. above, the FCA provides guidance, via the REC sourcebook[3], to make it clear that the FCA may, in determining whether an RIE has made satisfactory arrangements for safeguarding and administration of assets belonging to the users of its facilities, have regard to "...*whether the arrangements include satisfactory procedures to ensure that any rights arising in relation to the assets held as a result of any actions by the issuers of those assets (or other relevant persons) are held, transferred or acted upon in a timely and accurate manner in accordance with the instructions of the owners of those assets...*"

The LME's arrangements with its network of approved warehouses play an important role in the functioning of the LME's market. Therefore, the FCA, as part of its supervision of LME, expects LME to ensure that its warehousing arrangements provide effective and efficient services for the receipt, holding, and delivery of metal related to the trading of LME contracts. This is important to enable the LME to continue to meet its regulatory obligations as a RIE. This would include obligations to ensure the fair, smooth and orderly functioning of its markets, the integrity of its markets, and the effectiveness of its price discovery arrangements. Consequently, although the operation of RIE-approved warehouses is not, by itself, a FCA regulated activity, the FCA expects LME to have in place arrangements that ensure those warehouses which it approves operate in a way that ensures LME meets its regulatory obligations.

As also set out in the REC sourcebook, the FCA expects the LME to at all times keep it informed of significant developments of progress with its plans and operational initiatives in relation to its warehousing arrangements. As part of this, it expects to arrange meetings with key individuals at LME for that purpose. This is in order to provide the FCA with appropriate assurance that the Recognition Requirements will continue to be satisfied at all times.

In its supervisory oversight of the LME, the FCA will therefore continue to fully engage with LME to monitor the impact of all the measures announced by the LME, including initiatives such as LME's new Linked Load-In and Load-Out rule, to ensure that such changes are consistent with LME's regulatory obligations under the Recognition Requirements.

We would be content for you to share this letter with external parties, advising us when you plan to do so, in order to explain the FCA's regulatory role and interest in LME's warehousing arrangements.

Yours sincerely

David Bailey
Head, Market Infrastructure and Policy
Markets Division

---

[3] REC Sourcebook: http://www.fshandbook.info/FS/html/FCA/REC