**Robbins Geller Rudman & Dowd LLP**

| Atlanta | Chicago | Melville | Philadelphia | San Francisco |
| Boca Raton | Manhattan | Nashville | San Diego | Washington, DC |

**REDACTED PURSUANT TO PROTECTIVE ORDER, ENTERED MAY 22, 2014**

June 10, 2014

REDACTED VERSION VIA ECF ONLY
& SEALED VERSION VIA HAND DELIVERY

The Honorable Katherine B. Forrest
United States District Court for the
   Southern District of New York
500 Pearl Street, Room 1950
New York, NY 10007

      Re:   *In re Aluminum Warehousing Antitrust Litigation*,
           No. 13 MD 2481 (KBF)

Dear Judge Forrest:

     We write on behalf of all plaintiffs in the above-captioned litigation in response to the Court's inquiries at the June 3, 2014 hearing on the LME's motion to dismiss (June 3, 2014 Hearing Tr. at 74:12-17) and the Court's June 3, 2014 Order (Dkt. No. 416). Because most of the information directly responsive to the Court's inquiries[1] is either not publicly available or has not yet been produced in discovery, plaintiffs submit only two additional documents, a warehouse agreement between the LME and third party S.H. Bell Co., dated April 4, 2000 (the "S.H. Bell Warehouse Agreement"), attached hereto as Ex. 1 (BELL_000005-23), [REDACTED]

     The S.H. Bell Warehouse Agreement is similar to the warehouse agreement posted on the LME's website and submitted as Ex. 34 to the Declaration of Bonny E. Sweeney in Support of Plaintiffs' Joint Opposition to London Metal Exchange's Motion to Dismiss All Complaints on Sovereign Immunity Grounds (Dkt. No. 368) (the "LME Website Warehouse Agreement"), but differs in several material respects.

---

[1] For example, information about the interactions between the FCA and the LME show the LME-warehouse contracts may have changed over time and questions about the testimony by LME declarants Bradley and Ong-Seng is not yet available to the plaintiffs, with the exception of the warehouse contract posted on the LME website and the warehouse contract produced by third-party warehouse S.H. Bell Co. (*see generally* June 3, 2014 Hearing Tr. at 52:21-53:16; 62:4-7; 72:10-16; 73:18-79:25).

**Robbins Geller
Rudman & Dowd** LLP

The Honorable Katherine B. Forrest
June 10, 2014
Page 2

For example, the contracts contain different language governing cancellation of warrants and delivery of metal (§4.2 in the two agreements) and stock records (§6.3.3 in the two agreements), and the LME Website Warehouse Agreement has several provisions that are not included in the S.H. Bell Warehouse Agreement (*see, e.g.*, §§9.3.3, 9.3.4 and 11 in the LME Website Warehouse Agreement).

Based on the limited discovery to date, it is plaintiffs' understanding that the S.H. Bell Warehouse Agreement is the currently operative agreement between that warehouse and the LME.

In further response to the Court's inquiries, plaintiffs have not located any information, either through publicly available sources or in the documents produced to date by the warehouses, suggesting that the agreements between the LME and warehouses (*i.e.*, either their content or their approval) are or ever have been subjected to a notice and comment procedure. In fact, available information suggests that they are not. *See, e.g.*, Dkt. No. 322 (Declaration of Nicholas David Ong-Seng in Support of London Metal Exchange's Motion to Dismiss All Complaints ("Ong-Seng Decl.")), ¶8 & Ex. E. (Financial Services and Markets Act 2000 (Recognition Requirements for Investment Exchanges and Clearing Houses) Regulations 2001), §7 (requiring consultation with users for penalty income and in "appropriate cases"); Ong-Seng Decl., ¶10 (where appropriate, the LME consults LME users "about possible changes to the rules"); S.H. Bell Warehouse Agreement, §9.11.3 ("The Exchange may amend this Agreement from time to time."); Dkt. No. 387 (Declaration of Mark Bradley in Support of the London Metal Exchange's Motion to Dismiss All Complaints ("Bradley Decl.")), Ex. M. (FCA's Recognised Investment Exchanges Sourcebook), §§2.14.3-.6 (regarding "consulting users of facilities before changes are made to any *rules* relating to its regulatory functions") (emphasis added).

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Katherine B. Forrest
June 10, 2014
Page 3

Similarly, the defendants' agreement to treat the LME's minimum load-out rule as an effective cap was not a "rule" promulgated by the LME that was subjected to any notice and comment procedure. Ex. 2, GS-METRO Memo at GS-METRO-00001116 ▌

Respectfully submitted,

| /s/ *Bonny E. Sweeney* | /s/ *Walter W. Noss* | /s/ *Joseph H. Meltzer* | /s/ *Douglas G. Thompson* |
|---|---|---|---|
| Bonny E. Sweeney | Walter W. Noss | Joseph H. Meltzer | Douglas G. Thompson |
| **Robbins Geller Rudman & Dowd LLP** | **Scott + Scott LLP** | **Kessler Topaz Meltzer & Check, LLP** | **Finkelstein Thompson LLP** |
| /s/ *Christopher Lovell* | | /s/ *John A. Kehoe* | |
| Christopher Lovell | | John A. Kehoe | |
| **Lovell Stewart Halebian Jacobson LLP** | | **Girard Gibbs LLP** | |
| | | /s/ *Jonathan W. Cuneo* | |
| /s/ *Linda P. Nussbaum* | | Jonathan W. Cuneo | |
| Linda P. Nussbaum | | **Cuneo Gilbert & LaDuca, LLP** | |
| **Grant & Eisenhofer P.A** | | | |
| Interim Co-Lead Counsel for Direct Purchaser Plaintiffs | Counsel for Direct Action Plaintiffs Mag Instrument, Inc. and Agfa Corp. | Interim Co-Lead Counsel for Commercial End User Plaintiffs | Interim Co-Lead Counsel for Consumer End User Plaintiffs |

Attachments

cc:   All Counsel of Record (Redacted Version via ECF Only)
      All Counsel of Record (Unredacted Version via Electronic Mail Only)