UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————— x

In re ALUMINUM WAREHOUSING ANTITRUST
LITIGATION

—————————————————————

This Document Relates To:

    DIRECT PURCHASER PLAINTIFFS

       14 Civ. 3116

—————————————————————

:
:
:
:
:
:
:
:
:
:
:
:
:
x

Master Docket No.
13-MD-2481 (KBF)

No. 14-CV-03116

REPLY MEMORANDUM IN SUPPORT OF MOTION
BY PACORINI METALS AG
TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' AMENDED COMPLAINT

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

John M. Nannes
1440 New York Avenue, N.W.
Washington, DC  20005
Telephone:  (202) 371-7500
Facsimile:  (202) 661-9191

Jay B. Kasner
Four Times Square
New York, New York  10036
Telephone:  (212) 735-3000
Facsimile:  (917) 777-2628

*Attorneys for Pacorini Metals AG*

August 19, 2014

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ ii

I.   Applicable Legal Standards ........................................................................................ 1

II.  Plaintiffs Have Not Made Legally Sufficient Specific Allegations as to Pacorini AG ............ 2

    A.   Warehousing Activities .................................................................................... 3

    B.   Aluminum Trading ............................................................................................ 4

    C.   LME Activities .................................................................................................. 5

III. Conclusion .................................................................................................................... 7

# TABLE OF AUTHORITIES

**CASES**                                                            **PAGE(S)**

*American Needle, Inc. v. NFL,*
    560 U.S. 183 (2010).................................................................................4

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)............................................................................5-6

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002) ................................................................6

*Copperweld Corp. v. Independence Tube Corp.,*
    467 U.S. 752 (1984).............................................................................4

*El-Hallani v. Huntington National Bank,*
    No. 13-cv-12983 (GER), 2014 WL 2217237 (E.D. Mich. May 29, 2014)............................2

*In re Lithium Ion Batteries Antitrust Litigation,*
    No. 13-MD-2420 (YGR), 2014 WL 309192 (N.D. Cal. Jan. 21, 2014) ..................................2

*In re TFT-LCD (Flat Panel) Antitrust Litigation,*
    586 F. Supp. 2d 1109 (N.D. Cal. 2008)............................................2

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.,*
    No. 12 Civ. 2837 (KBF), 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012)
    (Forrest, J.), *aff'd*, 530 F. App'x 19 (2d Cir. 2013) ...........................2

*Precision Associates, Inc. v. Panalpina World Transport (Holding) Ltd.,*
    No. 08-CV-00042 (JG), 2012 U.S. Dist. LEXIS 113829 (E.D.N.Y. Aug. 13, 2012)............2, 4

*United States v. Bestfoods,*
    524 U.S. 51 (1998)..............................................................................4

**STATUTES**

Sherman Act, Section 1, 15 U.S.C. § 1 ..................................................4

**TREATISES**

James Wm. Moore, 2 MOORE'S FEDERAL PRACTICE, § 12.34[2]
    (Matthew Bender 3d ed. 2013) .........................................................2

VI Areeda & Hovenkamp, ANTITRUST LAW ¶1417 (3d ed. 2010) .........................................5

ii

Pacorini Metals AG ("Pacorini AG") filed a motion to dismiss the Direct Purchaser Plaintiffs' Complaint (ECF 271) ("DPP Complaint") against it on August 5, 2014 (ECF 520). The Direct Purchaser Plaintiffs have filed a memorandum in opposition to that motion (ECF 550) (hereinafter "Mem. in Opp."), and Pacorini AG submits this reply memorandum in response to the Mem. in Opp. and in further support of its motion to dismiss.

Plaintiffs claim repeatedly that they have made "specific allegations of Pacorini AG's misconduct that are more than sufficient" to survive a motion to dismiss.  Mem. in Opp. at 1. But a comparison of the allegations they claim to have made with the actual allegations in the DPP Complaint shows that is very much not the case.  When Plaintiffs contend that Pacorini AG is alleged to have done this or that, they repeatedly qualify their contentions by saying that Pacorini AG acted "through" some other entity.  Such attribution, neither alleged in the DPP Complaint nor accompanied by factual allegations sufficient to warrant doing so, is insufficient as a matter of law to survive a motion to dismiss.  And, insofar as plaintiffs make any allegations specific to Pacorini AG, the allegations are legally insufficient to state a plausible claim. Pacorini AG's motion to dismiss should therefore be granted.

## I.  Applicable Legal Standards

To some extent, the parties are in agreement with respect to the applicable legal standards.  Thus, while detailed defendant-by-defendant allegations may not be required, there must be allegations that tie each defendant to the alleged conspiracy.  *Compare* Memorandum in Support of Motion by Pacorini Metals AG to Dismiss the Direct Purchaser Plaintiffs' Amended Complaint (ECF 521) ("Mem. in Supp.") at 2 *with* Mem. in Opp. at 5.  But courts have found that allegations of group pleading – allegations that lump defendants together without differentiation – are insufficient to meet those standards precisely because they do not tie each

defendant to the alleged conspiracy. *See, e.g., Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12 Civ. 2837 (KBF), 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012) (Forrest, J.), *aff'd*, 530 F. App'x 19 (2d Cir. 2013).  Plaintiffs cannot require a defendant to guess what plaintiffs are alleging as to it.  *Id.* at *7.  And, importantly for purposes of this motion, this principle has been applied not only to group pleading involving unrelated entities but also to group pleading involving related corporate entities.  *See In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 (YGR), 2014 WL 309192, at *13 (N.D. Cal. Jan. 21, 2014); *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-00042 (JG), 2012 U.S. Dist. LEXIS 113829, at *12 (E.D.N.Y. Aug. 13, 2012); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1116-17 (N.D. Cal. 2008).

There is a second legal principle of import to this motion.  A motion to dismiss challenges the sufficiency of the complaint that has been filed.  Just as a defendant must accept the well-pleaded allegations of a complaint, *see, e.g., Ochre*, 2012 WL 6082387, at *3, so, too, must the plaintiff.  A plaintiff is not free to add, to embellish, or to transform allegations in the complaint via its memorandum in opposition to a motion to dismiss.  A complaint that is insufficient on its face to survive a motion to dismiss cannot be saved by a memorandum in opposition that tries to plug the gaps.  *See El-Hallani v. Huntington Nat'l Bank*, No. 13-cv-12983 (GER), 2014 WL 2217237, at *6 (E.D. Mich. May 29, 2014); James Wm. Moore, 2 MOORE'S FEDERAL PRACTICE, § 12.34[2] (Matthew Bender 3d ed. 2013).

II.  Plaintiffs Have Not Made Legally Sufficient Specific Allegations as to Pacorini AG

The allegations that plaintiffs claim to have made as to Pacorini AG are either not specific as to it or are legally insufficient to state a claim.  Plaintiffs claim that their allegations with respect to warehousing activities, aluminum trading, and LME activities are sufficient to tie

Pacorini AG to the alleged conspiracy, but a review of the allegations in the DPP Complaint refutes that claim.[1]

     A. <u>Warehousing Activities</u>:  The focus of the allegations in the DPP Complaint is on warehousing activities in Detroit. *See, e.g.*, DPP Complaint ¶¶1, 32-33, 49, 92, 303.  Plaintiffs do not allege that Pacorini AG owned or operated warehouses in Detroit.  Indeed, the DPP Complaint alleges specifically that it is Pacorini Metals USA LLC ("Pacorini USA") that "owns and operates LME-approved warehouses in the United States . . . ."  DPP Complaint ¶134.  The only purported link between conduct of Pacorini AG and conduct of Pacorini USA is the conclusory allegation that Pacorini AG "operates through" Pacorini USA (*id*. ¶133), but there is not a single allegation of fact in the DPP Complaint that would support such attribution.[2]  Plaintiffs also contend that the DPP Complaint alleges "that Pacorini AG paid incentives to attract aluminum to its Vlissingen warehouses . . . [and] must have orchestrated the Netherlands warehouse area aluminum load-out delays because it owned and operated 27 of the 29 LME aluminum warehouses in Vlissingen, Netherlands."  Mem. in Opp. at 7.  Again, plaintiffs are guilty of going beyond the allegations in their complaint in their effort to rescue it.  The complaint actually alleges that "Glencore" offered financial incentives and "Glencore" owned warehouses in Vlissingen, DPP Complaint ¶¶366, 368, but plaintiffs now seek to attribute that conduct to Pacorini AG.  That is not permissible without specific factual allegations linking Pacorini AG to the alleged conduct.

---

[1]    For purposes of this motion only, Pacorini AG treats the allegations as true.

[2]    Plaintiffs' contention that "Pacorini AG is responsible for implementing the conduct alleged against Glencore with respect to the Detroit LME warehousing practices complained of" while Pacorini USA "was responsible for actually executing the slowdown at its Detroit warehouses," Mem. in Opp. at 10, is precisely the kind of embellishment of a complaint that is prohibited. *See* p. 2, *supra*.

Without any allegations of fact in the DPP Complaint supporting the "Pacorini-AG-acted-through-Pacorini-USA-or-through-Glencore" proposition, plaintiffs are forced to make the legal argument that facts do not matter because a parent always will be held liable for the anticompetitive actions of its subsidiary because they share a unity of economic interest.  Mem. in Opp. 12-13.  Without accepting the premise that actions of Pacorini USA were anticompetitive,[3] the short answer to plaintiffs is that this is not the law.  The fact that a parent and a subsidiary have a unity of economic interest that renders them unable to conspire as a matter of law under section 1 of the Sherman Act, 15 U.S.C. § 1,[4] does not suggest, let alone compel, that one may be held liable under the antitrust laws for the actions of the other.  Indeed, one of the very cases that plaintiffs rely upon rejects the proposition that they advance here.  *See Precision Assocs.*, 2012 U.S. Dist. LEXIS 113829, at *11 ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.") (internal quotation marks omitted) (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)).

B.  <u>Aluminum Trading</u>:  The same deficiency can be found in plaintiffs' contention that Pacorini AG "[p]articipated" in aluminum trading.  Mem. in Opp. at 8.  Plaintiffs do not contend

---

[3]   As Pacorini USA pointed out in connection with its motion to dismiss, the allegations made in the DPP Complaint about incentives, queues, and delays in Detroit do not apply to Pacorini USA.  *See* Memorandum of Law in Support of Motion by Pacorini Metals USA, LLC to Dismiss the Amended Complaints (ECF No. 332) at 6-7; Reply Memorandum in Support of Motion by Pacorini Metals USA, LLC to Dismiss the Amended Complaints (ECF No. 453) at 3-4.

[4]   *Am. Needle, Inc. v. NFL*, 560 U.S. 183, 196 (2010) (quoting *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771 (1984)).

4

that Pacorini AG itself engaged in aluminum trading,[5] but only that it did so "[t]hrough Glencore."  Plaintiffs' only explanation for this proposition, however, is that Glencore Xstrata plc, which is alleged to be a trading company, acquired Pacorini AG in 2010 and plaintiffs therefore decided to define them together with others as "Glencore" in the DPP Complaint.  *Id*. There is simply no basis in the DPP Complaint, however, for ignoring the separate nature of these entities.  This is why courts have rejected group pleading.  *See* pp. 1-2, *supra*.

     C.  <u>LME Activities</u>:  Plaintiffs are left, then, with a single allegation in the complaint that pertains to Pacorini AG:  that its CEO was a member of the LME Warehousing Committee. Mem. in Opp. at 3-4.  But the law has long since moved beyond the Adam Smith proposition that competitors only get together to cause anticompetitive harm, and the Supreme Court put that proposition to rest in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 567, n.12 (2007) ("*Twombly*").  "Mere conspiratorial opportunity is routinely and correctly held insufficient to support a conspiracy finding."  VI Areeda & Hovenkamp, ANTITRUST LAW ¶1417 at 117 (3d ed. 2010).  That is especially the case when the so-called opportunity to collude arises in a context in which there is a legitimate reason for competitors to get together:  there is a difference between regularly scheduled periodic meetings of a regulatory authority or a trade association

---

[5]    Plaintiffs contend that the Court should not credit Pacorini AG's assertion that warehouses cannot trade – citing the LME Warehouse Notice Terms and Conditions – because that assertion of fact goes outside of the complaint.  Mem. in Opp. at 8, n.2.  Pacorini AG was simply citing a source that plaintiffs themselves had cited and relied upon in their own complaint, but the telling point is that the DPP Complaint nowhere alleges specifically that Pacorini AG (or any other warehouse, for that matter) traded aluminum; all there is then is another group pleading allegation that "Warehouse Defendants" – which is defined to include traders – trade commodities.  DPP ¶¶346, 371-72.

and ad hoc private meetings among pricing managers of competing firms.[6]  This is true even at

the pleading stage, as *Twombly* itself demonstrates.

Plaintiffs contend that membership on the LME Warehousing Committee should be

sufficient to establish a plausible claim against Pacorini AG because the LME Warehousing

Committee allegedly somehow "supported the minimum load-out requirement at issue in this

suit."  Mem. in Opp. at 4.  But, as the Warehousing Committee Terms of Reference cited by

plaintiffs themselves make clear, the Warehousing Committee has no power to set LME rules; it

can only make "recommendations" on warehousing-related policy issues to the LME Executive

Committee, which "has the right to accept, reject or modify" any such recommendations.  *See*

note 6, *supra*.  Plaintiffs' allegations about the load-out rules are implausible – plaintiffs have

acknowledged that the rules were adopted at least six years before Glencore acquired Pacorini –

but, even taking their allegations at face value, the DPP Complaint should be dismissed as to

Pacorini AG because service on a legally-constituted committee that "supported" rules adopted

by another committee is insufficient to state a claim.[7]

---

[6]   The LME Warehousing Committee clearly falls in the former category.  *See* LME
Warehousing Committee Terms of Reference §§ 2-4, 8 (committee is run by an independent
chairman, meets quarterly, requires agendas, must be minuted, and is responsible, *inter alia*,
for making recommendations to the Executive Committee on warehousing-related policy
issues that the Executive Committee has the right to accept, reject, or modify).  The Terms of
Reference are cited and relied upon by plaintiffs in the DPP Complaint ¶360 nn.7-8 and thus
may be considered by the Court in connection with a motion to dismiss.  *Chambers v. Time
Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

[7]   Other allegations that plaintiffs have made about defendants' connections to the LME – such
as significant ownership interests in the LME – do not apply to Pacorini AG as the DPP
Complaint itself indicates.  *See* DPP Complaint ¶70 (Glencore owned 0.4% of class B shares
in the LME).  And there are no allegations in the DPP Complaint that Pacorini AG had any
employee on the Executive Committee.

### III.  Conclusion

Plaintiffs' attempt to withstand dismissal of the DPP Complaint is based on allegations that are either insufficiently specific to Pacorini AG to tie it to the conspiracy alleged or are legally insufficient to do so.  Accordingly, the DPP Complaint should be dismissed and, for the reasons stated in its initial memorandum (Mem. in Supp. at 6-7), Pacorini AG respectfully submits that the dismissal should be with prejudice.

Dated:       August 19, 2014
             New York, New York

                              _____/s/ John M. Nannes___
                              John M. Nannes
                              (john.nannes@skadden.com)
                              SKADDEN, ARPS, SLATE,
                                MEAGHER & FLOM LLP
                              1440 New York Avenue, N.W.
                              Washington, DC  20005
                              Telephone:  (202) 371-7500
                              Facsimile:  (202) 661-9191

                              _____/s/ Jay B. Kasner___
                              Jay B. Kasner
                              (jay.kasner@skadden.com)
                              SKADDEN, ARPS, SLATE,
                                MEAGHER & FLOM LLP
                              Four Times Square
                              New York, New York  10036
                              Telephone:  (212) 735-3000
                              Facsimile:  (917) 777-2628

                              *Attorneys for Pacorini Metals AG*

7