**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                             :

IN RE ALUMINUM WAREHOUSING            :         MDL No. 2481
ANTITRUST LITIGATION                   :
                                             :        Master Docket No.
This Document Relates To:                 :        13-md-2481-KBF
                                             :
ALL ACTIONS                            :         REDACTED
                                           :
                                           :
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**GLENCORE PLC'S (F/K/A GLENCORE XSTRATA PLC) REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINTS**

## <u>TABLE OF CONTENTS</u>

Page

**TABLE OF AUTHORITIES** ...................................................................................................... ii

**INTRODUCTION** ..................................................................................................................... 1

**ARGUMENT** ............................................................................................................................. 3

    I.    There Are No Facts That Show That Glencore plc Has Sufficient Contacts to Support General Jurisdiction ...................................................................................................... 3

    II.    There are No Facts That Establish Specific Jurisdiction over Glencore plc ..................... 11

    III.  There is No Jurisdiction Based Upon the Clayton Act ...................................................... 16

    IV.  There is No Jurisdiction Based Upon Rule 4(k)(2) ........................................................... 17

    V.    Plaintiffs Have Not Demonstrated a Basis for Jurisdictional Discovery .......................... 18

    **CONCLUSION** ...................................................................................................................... **20**

# TABLE OF AUTHORITIES

CASES

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007) ................................................................. 18

*Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc.*,
   No. 09 Civ. 130 (LTS)(JCF), 2010 U.S. Dist. LEXIS 67662 (S.D.N.Y. July 1, 2010)............ 12

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ............................................................................ 11

*Calder v. Jones*,
   465 U.S. 783 (1984) ............................................................................ 13

*In re Cardizem CD Antitrust Litig.*,
   105 F. Supp. 2d 618 (E.D. Mich. 2000) ....................................................... 16

*Chrysler Corp. v Fedders Corp.*,
   643 F.2d 1229 (6th Cir. 1981) ................................................................ 16

*Daimler AG v. Bauman*,
   __ U.S. __, 134 S. Ct. 746 (2014) ............................................................. 4

*Daniel v. Am. Bd. of Emergency Medicine*,
   428 F.3d 408 (2d Cir. 2005) .................................................................. 17

*Dardana Ltd. v. Yugansknefteqaz*,
   317 F.3d 202 (2d Cir. 2003) .................................................................. 17

*Dodson v. United States*,
   215 F.2d 196 (6th Cir. 1954) ................................................................. 16

*Doe v. Delaware State Police*,
   939 F. Supp. 2d 313 (S.D.N.Y. 2013) ......................................................... 12

*Estate of Thomson v. Toyota Motor Corp. Worldwide*,
   545 F.3d 357 (6th Cir. 2008) .................................................................. 8

*Frontera Res. Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic*,
   582 F.3d 393 (2d Cir. 2009) .................................................................. 18

*Gallelli v. Crown Imports, LLC*,
   701 F. Supp. 2d 263 (E.D.N.Y. 2010) ...................................................... 6, 11

*Gen. Motors Corp. v. Ignacio Lopez de Arriortua,*
    948 F. Supp. 656 (E.D. Mich. 1996) ................................................................. 16

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    __ U.S. __, 131 S. Ct. 2846 (2011) ........................................................... 3, 4, 5

*Gurvey v. Cowan, Leibowitz & Latman, PC,*
    No. 06 CIV 1202, 2009 WL 691056 (S.D.N.Y. Mar. 17, 2009) ............................. 7

*Hollins v. U.S. Tennis Ass'n,*
    469 F. Supp. 2d 67 (E.D.N.Y. 2006) ................................................................. 19

*J.L.B. Equities, Inc. v. Ocwen Fin. Corp.,*
    131 F. Supp. 2d 544 (S.D.N.Y. 2001) ........................................................ 6, 9, 10

*Jazini v. Nissan Motor Co., Ltd.,*
    148 F.3d 181 (2d Cir. 1998) ................................................... 6, 7, 9, 11, 19

*Keeton v. Hustler Magazine, Inc.,*
    465 U.S. 770 (1984) .......................................................................................... 12

*In re Magnetic Audiotape Antitrust Litig.,*
    334 F.3d 204 (2d Cir. 2003) ...................................................................... 13, 19

*McKay v. Hageseth,*
    No. C-06-1377 MMC, 2007 WL 1056784 (N.D. Cal. Apr. 6, 2007) ..................... 15

*In re MS Angeln GmBH & Co. KG,*
    510 F. App'x 90 (2d Cir. 2013) ........................................................................ 18

*In re Polyester Staple Antitrust Litig.,*
    No. 03 CV 1516, 2008 WL 906331 (W.D.N.C. Apr. 1, 2008) ............................. 11

*Reers v. Deutsche Bahn AG,*
    320 F. Supp. 2d 140 (S.D.N.Y. 2004) ............................................................... 11

*In re Roman Catholic Diocese of Albany, New York, Inc.,*
    745 F.3d 30 (2d Cir. 2014) .................................................................................. 3

*Rowland v. Paris Las Vegas,*
    No. 13-CV-02630-GPC, 2014 WL 3867528 (S.D. Cal. Aug. 6, 2014) ................. 8

*In re Satyam Computer Servs. Ltd. Sec. Litig.,*
    915 F. Supp. 2d 450 (S.D.N.Y. 2013) ............................................................... 14

*Sikhs for Justice v. Nath*,
   893 F. Supp. 2d 598 (S.D.N.Y. 2012) ........................................................ 19

*Singh v. Daimler, AG*,
   902 F. Supp. 2d 974 (E.D. Mich. 2012)....................................................... 6

*In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*,
   230 F. Supp. 2d 403 (S.D.N.Y. 2002) ...................................................... 8, 9

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
   750 F.3d 221 (2d Cir. 2014) ..................................................................... 5

*Tarsavage v. Citic Trust Co., Ltd.*,
   No. 13 CIV. 2312 KBF, 2014 WL 956408 (S.D.N.Y. Mar. 11, 2014) ....................... 13, 14, 18

*In re Terrorist Attacks*,
   349 F. Supp. 2d 765 (S.D.N.Y. 2005) ........................................................ 14

*Time, Inc. v. Simpson*,
   No. 02 Civ. 4917 (MBM), 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003) ........................... 13

*Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey) Ltd.*,
   560 F. App'x 52 (2d Cir. 2014) ................................................................ 18

*Weather Underground, Inc. v. Navigation Catalyst Sys., Inc.*,
   688 F. Supp. 2d 693 (E.D. Mich. 2009)....................................................... 16

*Williamson ex rel. At Home Bondholders' Liquidating Trust v. Verizon Commc'ns Inc.*,
   11 CIV. 4948 LTS HBP, 2013 WL 227691 (S.D.N.Y. Jan. 22, 2013)..................................... 10

*World Skating Fed'n v. Int'l Skating Union*,
   357 F. Supp. 2d 661 (S.D.N.Y. 2005) ........................................................ 15

*Xiu Feng Li v. Hock*,
   371 F. App'x 171 (2d Cir. 2010) ............................................................. 18

*Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.*,
   No. 00 CIV. 5663, 2001 WL 1468168 (S.D.N.Y. Nov. 19, 2001) ........................................ 14

## STATUTES

15 U.S.C. § 22.......................................................................................... 17

Fed. R. Civ. P. 4(k)(2)............................................................................... 17

Glencore plc (f/k/a "Glencore Xstrata plc") respectfully submits this Reply Memorandum of Law in further support of its Motion to Dismiss, (ECF No. 511), and in reply to the oppositions submitted by the First Level Purchaser Plaintiffs (the "FLP Plaintiffs"), (ECF No. 544), the Commercial End User Plaintiffs, (ECF No. 542), and Mag Instrument, Inc. ("Mag") and Agfa Corporation and Agfa Graphics, N.V. (together, "Agfa"), (ECF No. 540).

## <u>INTRODUCTION</u>

In opposition papers that collectively include over 732 pages of exhibits, there is not a single <u>fact</u> that shows that Glencore plc is anything but a publicly-traded <u>holding company</u>, whose sole business is to own shares in other companies. There is no evidence that Glencore plc itself – as distinct from some of its many operating subsidiaries – engages in aluminum warehousing, aluminum trading, or any of the activities that are the subject of this litigation. As set forth in the Declaration of Glencore plc Company Secretary John Burton (the "Burton Declaration"), Glencore plc "is solely a holding company [whose] sole business is to hold shares in other companies." (ECF No. 512, Burton Decl. ¶ 5.)

In their oppositions, Plaintiffs have presented no <u>facts</u> that rebut or contradict Mr. Burton. Instead, Plaintiffs have loaded their oppositions with hundreds of pages of irrelevant materials.

The voluminous material submitted by Plaintiffs can be grouped into two broad categories.

<u>First</u>, there is evidence that certain <u>operating subsidiaries</u> of Glencore plc (some of whom have names that include "Glencore" or "Pacorini") are engaged in business activities. There is evidence that Glencore Ltd. – an indirect subsidiary of Glencore plc – is active in the aluminum trading business, and that Pacorini Metals USA, LLC – another indirect subsidiary of Glencore plc – is active in the aluminum warehousing business. This is not controverted. Glencore Ltd. and Pacorini USA LLC are named parties in this litigation. They have filed their own motions to

dismiss, and have not claimed that they are not engaged in business activities.  (ECF Nos. 331, 338.)  But they are not one and the same as their indirect holding company parent, Glencore plc. The evidence that mentions these operating subsidiaries is conspicuously bereft of any mention of Glencore plc, and group pleading under the generic name "Glencore," that fails to distinguish between similarly-named but distinct corporate entities, is not acceptable to establish jurisdiction.

Second, Plaintiffs cite selectively to the group website www.glencore.com and Glencore plc's public filings, which describe activities conducted by the many dozens of operating subsidiaries of Glencore plc.  The website and public filings speak in terms of an integrated global company, but do not purport to say that Glencore plc is an operating company that itself actually engages in any of these activities.  Courts have consistently held that statements like this, which speak of an integrated corporate group, are not treated as admissions for purposes of determining jurisdiction.

Unable to point to any evidence that Glencore plc is anything other than a holding company, Plaintiffs invoke labels such as "agency," "alter ego," and "mere department."  But, Plaintiffs offer no facts to base jurisdiction over Glencore plc under one or another of these theories, and their conclusory allegations and speculation are insufficient to rebut a motion to dismiss for lack of personal jurisdiction.  Because there are no facts that show that Glencore plc is engaged in business activity at all, there is no basis to conclude that Glencore plc is engaged in business activity through an agent or alter ego in the U.S.

Likewise, Plaintiffs invoke "conspiracy," and the "effects" theories of jurisdiction.  There again, Plaintiffs offer no facts that show that Glencore plc was a member of any conspiracy, or that Glencore plc committed any acts that had an effect in New York, Michigan, California, or

anywhere else in the U.S.  Absent such facts, Plaintiffs cannot establish jurisdiction over Glencore plc under these theories.

Finally, Plaintiffs request leave to take jurisdictional discovery, but present no evidence at all – much less a prima facie showing – that would justify such a fishing expedition.  In the absence of any facts that support their conclusory allegations, jurisdictional discovery is inappropriate.

In sum, Plaintiffs have not shown – because they cannot show – that there are facts that contradict the unequivocal representations of Glencore plc's Company Secretary that it is merely a holding company, whose sole business is to hold shares in other companies and who has no contacts with the United States.  Plaintiffs' attempt to include Glencore plc in their lawsuits against its operating subsidiaries Glencore Ltd. and Pacorini Metals USA, LLC constitutes blatant overreaching, and is based on no facts.  The Court should grant Glencore plc's Motion to Dismiss.

## ARGUMENT

### I. There Are No Facts That Show That Glencore plc Has Sufficient Contacts to Support General Jurisdiction

Not one fact in Plaintiffs' voluminous filings shows that Glencore plc' has any contacts with New York, California, Michigan, or any other state, much less that it has contacts that are "so continuous and systematic as to render [Glencore plc] essentially at home in the forum State," as required to subject a defendant to general jurisdiction.  *In re Roman Catholic Diocese of Albany, New York, Inc.*, 745 F.3d 30, 38 (2d Cir. 2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, __ U.S. __, 131 S. Ct. 2846, 2851 (2011)) (internal quotation marks omitted) (emphasis added).

As stated recently by the Supreme Court, a corporation is ordinarily deemed to be "at home" only in the state of its principal place of business and its place of incorporation. *Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct. 746, 760 (2014). Only "in an <u>exceptional case</u> . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such nature as to render the corporation at home in that State." *Id.* at 761 n.19 (emphasis added).

There are no facts that in any way refute the Burton Declaration, which states that Glencore plc is a Jersey corporation headquartered in Switzerland and has no place of business, employees, or bank accounts anywhere in the U.S., is not registered to do business anywhere in the U.S., and does not manufacture, sell or advertise products anywhere in the U.S., including New York, California, and Michigan. (ECF No. 512, Burton Decl. ¶¶ 3-4, 7-22.) Accordingly, Glencore plc is not "at home" in New York, California, Michigan, or anywhere else in the U.S., and is therefore not subject to general jurisdiction. *See Goodyear*, 131 S. Ct. at 2852, 2857 (no general jurisdiction over defendant that had no place of business, employees, or bank accounts in the forum, was not registered to do business in the forum, and did not manufacture, sell or advertise products in the forum).

The Commercial End User Plaintiffs argue that Glencore plc has "executive officers working directly in the United States" and point to the LinkedIn page of one Nicholas Wilson. (ECF No. 542 at 8; ECF No. 543, Justice Decl., Ex. 10.) As reflected on that page, however, Mr. Wilson is with Castleton Commodities, a company not affiliated with Glencore plc. Glencore plc did not publish or authorize the inaccurate promotional statements that this single non-employee has placed on his LinkedIn page. The Burton Declaration states definitively that

Glencore plc has <u>never had any employees</u> in the United States.  (ECF No. 512, Burton Decl. ¶ 8.)

Because there are no facts that show that Glencore plc is subject to general jurisdiction anywhere in the United States, jurisdiction over Glencore plc does not comport with constitutional due process.

### A.      There is No Jurisdiction Based on an Agency Theory

Without any basis to establish general jurisdiction over Glencore plc, Plaintiffs point to the business activities of Glencore plc's indirect <u>subsidiaries</u>, including defendants Glencore Ltd. and Pacorini Metals USA, LLC, under a putative agency theory.  (ECF No. 544 at 6-9; ECF No. 542 at 15-17.)  For example, ███████████████████████████████████████

█████████████████████████████████████████████████████████████

███ and the FLP Plaintiffs reference various lawsuits filed by <u>Glencore Ltd.</u> in the Southern District of New York, (ECF No. 544 at 7).  Plaintiffs' arguments fail, however, because the agency theory of jurisdiction is no longer viable as a matter of law, and there are also no facts that demonstrate an agency relationship between Glencore plc and any of these subsidiaries.

As an initial matter, the agency theory relied on by Plaintiffs is no longer viable in light of the Supreme Court's recent *Daimler* decision.  In *Daimler*, the Court found that the test for the agency theory of jurisdiction in the Ninth Circuit (where the Mag Complaint was filed) "appears to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' we rejected in *Goodyear*."  *Id.* at 759-60 (quoting *Goodyear Dunlop Tires Operations S.A. v. Brown*, __ U.S. __, 131 S. Ct. 2846, 2856 (2011)); *see also Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014) ("*Daimler* expressed doubts as to the usefulness of an agency analysis . . . that focuses on a forum-state affiliate's importance to

the defendant rather than on whether the affiliate is so dominated by the defendant as to be its alter ego."). Since the agency theory is no longer viable under Supreme Court precedent, it should be rejected as a matter of law.

Regardless of whether the agency theory is still viable, the Sixth Circuit has never "endorsed an agency test" for establishing general jurisdiction over a defendant. *Singh v. Daimler, AG*, 902 F. Supp. 2d 974, 980 (E.D. Mich. 2012). Thus, to the extent that Agfa is relying on Sixth Circuit law, it is precluded from attempting to impute Glencore plc's subsidiaries' contacts with Michigan to Glencore plc under an agency theory.

Even assuming arguendo the agency theory is still viable post-*Daimler*, it fails here as a matter of fact. Under the Second Circuit's pre-*Daimler* case law, to "establish that a subsidiary is an agent of the parent for jurisdictional purposes, the plaintiff must show that the subsidiary does all the business which [the parent corporation] could do were it here by its own officials." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998). The "agent's activities in [the forum state] must be important enough to the foreign corporation that in the absence of an agent, the named defendant would undertake to perform substantially similar services." *Gallelli v. Crown Imports, LLC*, 701 F. Supp. 2d 263, 272 (E.D.N.Y. 2010) (citation and internal quotation marks omitted). But, as noted, Glencore plc does not engage in any business activities anywhere (other than to hold the shares of companies). It does not have any agents in the U.S., and there is no evidence that it does. The mere fact that it has subsidiaries that operate in the U.S. does not render it subject to jurisdiction under an agency theory. *See J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 549 (S.D.N.Y. 2001) (no personal jurisdiction over holding company under agency theory where plaintiff did not "aver a single fact which could, if credited by the trier of fact, demonstrate that the [subsidiary] conducted business in New York

that [parent] would have done if it were in state with its own officials.  The mere fact that [parent] is the [subsidiary's] holding company is not sufficient to establish personal jurisdiction over [parent].") (internal citation omitted).

Nor can Plaintiffs evade their obligation to come forward with facts showing agency merely by asserting conclusory allegations.  *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (conclusory allegations do "not constitute a prima facie showing of agency"); *Gurvey v. Cowan, Leibowitz & Latman, PC*, No. 06 CIV 1202, 2009 WL 691056, at *4 (S.D.N.Y. Mar. 17, 2009) (same) (no personal jurisdiction over holding company defendants under agency theory where plaintiff engaged in "conclusory pleading").  Their attempt to substitute conclusory allegations for facts is invalid.  There is no jurisdiction based on a theory of agency.

### B.   There is No Jurisdiction Based on an "Alter Ego" or "Mere Department" Theory

Plaintiffs fare no better in their attempt to impute the business operations of Glencore plc's subsidiaries to Glencore plc under an "alter ego" or "mere department" theory.

Under Second Circuit law, to demonstrate that a subsidiary is an "alter ego" or "mere department" of its parent, "the court must consider four factors . . . first, common ownership— which is essential; second, financial dependency of the subsidiary on the parent corporation; third, the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities; and fourth, the degree of control over the marketing and operational policies of the subsidiary exercised by the parent."  *Jazini*, 148 F.3d at 184-85 (internal quotation marks omitted).

To the extent that Mag and Agfa are relying on Ninth and Sixth Circuit law, those circuits have similar tests for alter ego jurisdiction.  In the Ninth Circuit, the alter ego test is satisfied

when: "(1) there is such a unity of interest and ownership that the separate personalities of the two entities no longer exist, and (2) failure to disregard their separate identities would result in fraud or injustice." *Rowland v. Paris Las Vegas*, No. 13-CV-02630-GPC, 2014 WL 3867528, at *5 (S.D. Cal. Aug. 6, 2014) (citation and internal quotation marks omitted).  In the Sixth Circuit, the alter ego test is met when "the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008).

There are no facts here that meet any of these standards.

### 1.      There Are No Facts That Show Glencore plc's Subsidiaries Are Dependent on It

To establish a subsidiary's financial dependence on the parent corporation for purposes of alter ego jurisdiction, a plaintiff must show that the subsidiary "cannot run its business without the financial backing of its parent." *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F. Supp. 2d 403, 410 (S.D.N.Y. 2002).  Glencore plc's filings establish that its subsidiaries carry out their own business operations.  (ECF No. 545, Barile Decl., Ex. C at 196-99; ECF No. 543, Justice Decl., Ex. 1 at 298-99.)  There is no basis for Plaintiffs' speculation that these subsidiaries cannot run their business without the financial backing of the ultimate parent holding company.

The FLP Plaintiffs assert that "[d]ay-to-day finance and accounting tasks relating to the business activities in the U.S. are conducted by staff in Stamford, who report to Glencore's finance department headed by the Chief Financial Officer based in Glencore's head office in Baar."  (ECF No. 544 at 5; ECF No. 545, Barile Decl., Ex. G at 124.)  But the fact that a subsidiary reports financial and accounting information up the corporate chain does not in any

way show that the subsidiary is financially dependent on its ultimate parent holding company.

Absent facts showing such dependence – and there are none – Plaintiffs cannot satisfy this factor.

### 2.      There is No Jurisdiction Based Upon Sharing of Directors

Plaintiffs argue that "alter ego" has been shown because various executives of Glencore

plc sit on the boards of directors of its U.S. subsidiaries.  (ECF No. 544 at 6, 8; ECF No. 542 at

8.)  Courts uniformly recognize that "overlapping officers and directors are intrinsic to the

parent-subsidiary relationship," and are "not determinative as to whether the subsidiary is a

'mere department' of the parent." *J.L.B.*, 131 F. Supp. 2d at 550; *see also Jazini*, 148 F.3d at 185

(that one of the parent company's executives was the chairman of the U.S. subsidiary "does not

establish that the American subsidiary is a 'mere department' of the . . . parent").  The presence

of Glencore plc executives on the boards of its subsidiaries does not, therefore, establish

jurisdiction under an "alter ego" or "mere department" theory.

### 3.      There Are No Facts That Show that Glencore plc Has "Pervasive Control" Over the Marketing and Operational Policies of the Subsidiaries

Lastly, there are no facts that show pervasive control by Glencore plc over the marketing

and operational policies of its subsidiaries, such that the "corporate separation is more formal

than real." *Ski Train Fire*, 230 F. Supp. 2d at 410.  In an effort to meet this standard, Plaintiffs

cite to portions of the www.glencore.com website and to certain public filings that emphasize the

"global" or "integrated" nature of the many companies in which Glencore plc has invested.

(ECF No. 544 at 2-4; ECF No. 542 at 5-7; ECF No. 540 at 3-4.)  Plaintiffs also cite to a portion

of the www.glencore.com website that advertises jobs for all of the companies in the Glencore

group.  (ECF No. 544 at 6.)  These facts do not establish jurisdiction under an "alter ego" theory.

Significantly, Plaintiffs ignore footnote 35 to the financial statements of Glencore plc's

2013 Annual Report, (ECF No. 545, Barile Decl., Ex. C at 196-99), which contains a four-page

list of Glencore plc's "Principal Operating, Finance and Industrial Subsidiaries and Investments" that conduct the business operations described in the Annual Report.  Similarly, the prospectuses cited by Plaintiffs, (ECF No. 545, Barile Decl., Exs. G, H; ECF No. 543, Justice Decl., Ex. 1), use the generic term "Glencore" to refer to the various businesses operated by the subsidiaries of Glencore plc.  Nowhere does the Annual Report, the prospectuses, or any other document say that Glencore plc <u>itself</u> engages in any such activities.

Likewise, the website provides an overview of the types of businesses in which Glencore plc has invested, and describes the business activities of some of Glencore plc's subsidiaries. The website never states that Glencore plc <u>itself</u> engages in any of these business activities. Moreover, the recruiting portion of the website contains a listing of jobs available at Glencore plc's various subsidiaries; the website does not state that Glencore plc is making hiring decisions with respect to the listed positions.

Courts have consistently rejected efforts to establish "alter ego" or "mere department" jurisdiction based upon a defendant's website or other public statements.  *See J.L.B.*, 131 F. Supp. 2d at 550 (declining to find alter ego jurisdiction over holding company even though the holding company's website "treated [the parent and the subsidiary] as one"; "[a]n advertising strategy deciding not to present to its customers the existence of a parent-subsidiary relationship is not equivalent to a showing that the parent corporation exercises any control over its subsidiary's operational or marketing activities.").  Similarly, courts recognize that the "use of a common trade name and references to a conglomerate as a collective entity, when included in statements intended to be read by the consuming public, cannot create a single entity structure given the sophistication and complexity of today's corporate world."  *Williamson ex rel. At Home Bondholders' Liquidating Trust v. Verizon Commc'ns Inc.*, 11 CIV. 4948 LTS HBP, 2013

WL 227691, at *3 (S.D.N.Y. Jan. 22, 2013) (internal quotation marks omitted); *see also Jazini*,

148 F.3d at 185 (statements in defendant's Annual Report regarding its "global operations" and

that it was a "global company" did not "show[] the pervasive control over the subsidiary that the

'mere department' standard requires"); *Gallelli v. Crown Imports, LLC*, 701 F. Supp. 263, 274

(E.D.N.Y. 2010) (references in Annual Report, press releases, and the internet to the "Grupo

Modelo Family" of businesses did not establish jurisdiction over parent company because

"[s]tatements of global cooperation among a parent and its subsidiaries do not support a mere

department holding"); *Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 157 (S.D.N.Y. 2004)

("the fact that . . . the parent decides to present several corporations on a website in a unified

fashion . . . is insufficient to show lack of formal separation between the two entities.").

The FLP Plaintiffs' attempted analogy to *In re Polyester Staple Antitrust Litig.*, No. 03

CV 1516, 2008 WL 906331 (W.D.N.C. Apr. 1, 2008), (ECF No. 544 at 17-18), is inapt.  In that

case, the foreign parent had <u>itself</u> engaged in substantial business activity in the U.S.  For

example, the parent had previously "accepted responsibility for similar illegal conduct within the

United States;" had previously "consented to the exercise of personal jurisdiction" in U.S. courts;

a witness testified that he visited the U.S. on a regular basis to transact business on behalf of the

parent; and the parent maintained a research facility in North Carolina.  *Polyester Staple*, 2008

WL 906331, at *9-10, 12-13.  On these facts, the court found it had jurisdiction over the parent.

*Id.* at *12-13.  There are no such facts here.  Glencore plc has never engaged in any business

activity in the U.S.  There is no general jurisdiction, and jurisdiction over Glencore plc thus does

not comport with constitutional due process.

## II.    There are No Facts That Establish Specific Jurisdiction over Glencore plc

Specific jurisdiction exists when "the defendant has 'purposefully directed' his activities

at residents of the forum and the litigation results from alleged injuries that 'arise out of or

11

related to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citation omitted).

As detailed in the Burton Declaration, Glencore plc is a holding company; it is not a trading company, a warehouse owner, or a member of the LME or of any of its committees. (ECF No. 512, Burton Decl. ¶¶ 23-32.)  Plaintiffs have no facts to counter Mr. Burton.  Plaintiffs have not shown – and cannot show – that the claims in this litigation arise out of activities that Glencore plc itself directed toward the forum states.  Jurisdiction over Glencore plc thus does not comport with constitutional due process.

Unable to present any facts concerning Glencore plc (other than the fact of its ownership of various subsidiaries), Plaintiffs continue to resort to the improper use of the collective terms "Glencore" and "Defendants" to attribute to Glencore plc facts that concern its operating subsidiaries.  As discussed above, and in Glencore plc's Initial Memorandum, (ECF No. 513 at 5-6), Plaintiffs cannot hide their lack of any facts pertaining to Glencore plc behind collective labels, *see Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("Each defendant's contacts with the forum State must be assessed individually"); *Doe v. Delaware State Police*, 939 F. Supp. 2d 313, 332 (S.D.N.Y. 2013) (declining to assert personal jurisdiction because, among other things, plaintiffs "lump[ed]" two defendants together), and in the absence of factual support, cannot impute the business activities of Glencore plc's subsidiaries under an agency theory, *see, e.g.*, *Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc.*, No. 09 Civ. 130 (LTS)(JCF), 2010 U.S. Dist. LEXIS 67662, at *14-16 (S.D.N.Y. July 1, 2010) (finding no specific jurisdiction over foreign corporation via an agency theory because "Plaintiff's allegations do not suggest that . . . [the foreign corporation] exercised any control over [the

purported agent] in connection with [the purported agent's] transaction with Plaintiff").  There is no specific jurisdiction.

A.     **There are No Facts That Establish Specific Jurisdiction Under the "Effects Test"**

Plaintiffs argue that specific jurisdiction exists over Glencore plc because it engaged in conduct overseas that caused effects inside the U.S.  (ECF No. 544 at 19; ECF No. 540 at 11-12.) Under the "effects test," the defendant must engage in an "intentional, and allegedly tortious, action[]" that is "expressly aimed" at the forum states.  *Calder v. Jones*, 465 U.S. 783, 789 (1984); *see also Tarsavage v. Citic Trust Co., Ltd.*, No. 13 CIV. 2312 KBF, 2014 WL 956408, at *5 (S.D.N.Y. Mar. 11, 2014) (declining to find jurisdiction under the "effects test" when the plaintiff "alleges no conduct that [the defendant] 'expressly aimed' at the United States."); *Time, Inc. v. Simpson*, No. 02 Civ. 4917 (MBM), 2003 WL 23018890, at *5 (S.D.N.Y. Dec. 22, 2003) (declining to find jurisdiction under "effects test," and granting motion to dismiss where plaintiff had not demonstrated that defendant had any personal involvement in the events giving rise to the suit).  Because Glencore plc is a holding company, there are no facts that show any conduct whatsoever by Glencore plc, much less intentional and tortious acts expressly aimed at the forum states.

Mag and Agfa's citation to *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 207-09 (2d Cir. 2003), (ECF No. 540 at 12), is inapt.  That case involved direct involvement by the foreign defendant, including a specific meeting in which an executive of the foreign defendant was present and "price-fixing activities took place."  *Id.* at 208.  Here, by contrast, there are no facts that show that Glencore plc participated in any meetings or other conspiratorial activity aimed at the forum states.  Thus, there is no jurisdiction under the "effects test."

**B.   There are No Facts That Establish Jurisdiction Under a "Conspiracy" Theory**

Plaintiffs argue that Glencore plc is subject to personal jurisdiction in New York, California, and Michigan because its alleged co-conspirators are subject to jurisdiction in those states.

The "conspiracy" theory of jurisdiction requires a plaintiff to "(1) make a prima facie factual showing of a conspiracy, (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy, and (3) set forth evidentiary facts to connect the defendants with transactions occurring in the United States." *In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 484 (S.D.N.Y. 2013) (emphasis added). *See also Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.*, No. 00 CIV. 5663, 2001 WL 1468168, at *8 (S.D.N.Y. Nov. 19, 2001) ("[P]laintiffs must make a prima facie case of conspiracy and allege specific facts warranting the inference that the defendants were members of the conspiracy. Plaintiffs then must come forward with some definite evidentiary facts to connect the defendant with transactions occurring in New York.").  Plaintiffs must also show that the defendant exercised "direction or . . . control" over the co-conspirators or that the co-conspirators acted "at the request of or on behalf of the out-of-state defendant." *In re Terrorist Attacks*, 349 F. Supp. 2d 765, 805 (S.D.N.Y. 2005); *Tarsavage v. Citic Trust Co., Ltd.*, No. 13 CIV. 2312 KBF, 2014 WL 956408, at *7-8 (S.D.N.Y. Mar. 11, 2014).  "Bland and conclusory assertions of conspiracy are insufficient." *Satyam*, 915 F. Supp. 2d at 484; *see also Yellow Page Solutions*, 2001 WL 1468168, at *8 (same).  "Mere speculation and conjecture by the plaintiffs . . . cannot provide a substitute for the averment of jurisdictional facts." *Yellow Page Solutions*, 2001 WL 1468168, at *9; *see also World Skating Fed'n v. Int'l Skating Union*, 357 F. Supp. 2d 661, 665 (S.D.N.Y.

2005) (no jurisdiction over foreign defendant based upon membership in conspiracy where allegations were "wholly conclusory and therefore insufficient").

For reasons noted elsewhere, (ECF Nos. 317, 339, 427, 457), and incorporated here, Plaintiffs have failed to plausibly allege the existence of a conspiracy.  But even more importantly for the present motion, they also have failed to present <u>any</u> "specific" or "definite" evidentiary facts necessary to demonstrate that Glencore plc joined a conspiracy, or that Glencore plc "exercised direction or control over" alleged co-conspirators.  There are no such facts.  As set forth in the Burton Declaration, Glencore plc has never engaged in any of the types of activities that Plaintiffs claim were tainted by conspiratorial conduct.  (ECF No. 512, Burton Decl. ¶¶ 23-32.)

Nor can Plaintiffs meet the requisite standard for "conspiracy" by engaging in group pleading using the collective terms "Glencore" and "Defendants," as they try to do.  (ECF No. 542 at 17, 19.)  As set forth in Glencore plc's Initial Memorandum, pleading a conspiracy requires Plaintiffs to allege involvement by each defendant individually.  (ECF No. 513 at 6 (collecting authority).)

We also note that to the extent applicable to Mag's complaint, courts in the Ninth Circuit do not recognize the conspiracy theory of jurisdiction.  *See, e.g., McKay v. Hageseth*, No. C-06-1377 MMC, 2007 WL 1056784, at *2 n.3 (N.D. Cal. Apr. 6, 2007) ("Although this Court previously noted that some jurisdictions recognize a theory of personal jurisdiction based on conspiracy, under which contacts between one defendant and the forum state made in furtherance of the conspiracy are attributed to all members of the conspiracy . . . , defendants correctly point out that California courts have rejected such theory.").

To the extent applicable to Agfa's complaint, courts in the Sixth Circuit likewise do not appear to recognize the conspiracy theory of jurisdiction. *See, e.g.*, *Chrysler Corp. v Fedders Corp.*, 643 F.2d 1229, 1237 (6th Cir. 1981) (rejecting argument that personal jurisdiction could be established through conspiracy but deciding not to pass on the theory "as a general principle of law"); *Weather Underground, Inc. v. Navigation Catalyst Sys., Inc.*, 688 F. Supp. 2d 693, 696 (E.D. Mich. 2009) ("Plaintiff raises the conspiracy theory of jurisdiction; however, it advances no binding authority for this expansive view of jurisdiction. Therefore, the Court declines to endorse the theory in this case. Regardless of whether Defendants are intertwined, their actions may not be imputed to each other."). The cases cited by Mag and Agfa, (ECF No. 540 at 6), are inapposite. *See Dodson v. United States*, 215 F.2d 196, 198 (6th Cir. 1954) (addressing neither the conspiracy theory of jurisdiction nor personal jurisdiction over a foreign defendant); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 625, 676 n.30 (E.D. Mich. 2000) (rejecting the conspiracy theory of jurisdiction in a case concerning contacts with Minnesota and Tennessee); *Gen. Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 656, 665-66 (E.D. Mich. 1996) (finding that plaintiffs had alleged details of the defendants' "minimum contacts with the State of Michigan" and only discussing the conspiracy theory in dictum).

Regardless of whether or not the conspiracy <u>theory</u> is recognized in any given circuit, however, there must be <u>facts</u> that support its application to a particular defendant. In this case, there are no such facts, and therefore no specific jurisdiction.

### III.    There is No Jurisdiction Based Upon the Clayton Act

Section 12 of the Clayton Act provides that "[a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it

may be found." 15 U.S.C. § 22.  As a prerequisite to jurisdiction, the Second Circuit requires satisfaction of the venue provision of Section 12.  *See Daniel v. Am. Bd. of Emergency Medicine*, 428 F.3d 408, 423-24 (2d Cir. 2005).  As explained in Glencore plc's Initial Memorandum, (ECF No. 513 at 8-9), Glencore plc is not an "inhabitant" of the Southern District of New York, the Central District of California, or the Eastern District of Michigan, and is neither "found" nor "transacts business" there, or anywhere else in the U.S.

Plaintiffs argue that Glencore plc "transacts business" in the Southern District of New York, the Central District of California, and the Eastern District of Michigan through subsidiaries under an "agency" theory.  (ECF No. 544 at 20; ECF No. 542 at 23; ECF No. 540 at 10.)  However, as set forth above in Section I.A., there are no facts that support an "agency" theory.  Accordingly, there is no jurisdiction over Glencore plc under the Clayton Act.

## IV.  There is No Jurisdiction Based Upon Rule 4(k)(2)

Plaintiffs argue that jurisdiction over Glencore plc exists under Fed. R. Civ. P. 4(k)(2), which allows personal jurisdiction over a defendant if "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."  Fed. R. Civ. P. 4(k)(2).  Under Rule 4(k)(2), "a defendant sued under federal law may be subject to jurisdiction based on its contacts with the United States as a whole, when the defendant is not subject to personal jurisdiction in any state."  *Dardana Ltd. v. Yugansknefiegaz*, 317 F.3d 202, 207 (2d Cir. 2003).

However, as set forth in the Burton Declaration, Glencore plc is a Jersey corporation with headquarters in Switzerland, (ECF No. 512, Burton Decl. ¶¶ 3-4), and no operations anywhere in the United States, (ECF No. 512, Burton Decl. ¶¶ 6-22).  There are therefore no contacts to aggregate.  There is no jurisdiction under Rule 4(k)(2).

Plaintiffs also argue that the jurisdictional analysis is not limited to contacts with New York, Michigan, and California, but requires analysis of contacts with each state in which an individual action was brought, without regard for the consolidation.  (ECF No. 542 at 12-13.)  This issue is moot because Plaintiffs have not identified any contacts with any state.  Moreover, Glencore plc disagrees with Plaintiffs as a matter of law.  The consolidation overrides any individual action, and the consolidated complaints (*i.e.*, all complaints other than those of Mag and Agfa) are analyzed for jurisdictional purposes as if they had been filed in the Southern District of New York.

## V.      Plaintiffs Have Not Demonstrated a Basis for Jurisdictional Discovery

Plaintiffs request leave to take jurisdictional discovery.  This request should be denied, as Plaintiffs have failed to establish a prima facie case of personal jurisdiction.  Requests for jurisdictional discovery are routinely denied where, as here, plaintiffs have not made a prima facie showing.  *See, e.g.*, *In re MS Angeln GmBH & Co. KG*, 510 F. App'x 90, 93 (2d Cir. 2013) (affirming dismissal and upholding district court's decision to deny jurisdictional discovery because plaintiff had "not made out a prima facie case for jurisdiction."); *Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey) Ltd.*, 560 F. App'x 52, 56 (2d Cir. 2014) (same); *Xiu Feng Li v. Hock*, 371 F. App'x 171, 175 (2d Cir. 2010) (same); *Frontera Res. Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic*, 582 F.3d 393, 401 (2d Cir. 2009) (same); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007) (same).

Moreover, to the extent some courts have on occasion permitted jurisdictional discovery where plaintiffs have failed to make a prima facie showing of personal jurisdiction but have at least made a "sufficient start" towards establishing personal jurisdiction, Plaintiffs here have failed to satisfy even that standard.  *See, e.g.*, *Tarsavage v. Citic Trust Co., Ltd.*, No. 13 CIV. 2312 KBF, 2014 WL 956408, at *8 (S.D.N.Y. Mar. 11, 2014).  Notably, this is not a case where

18

Plaintiffs have set forth at least some specific, relevant facts that tend to establish jurisdiction, as in each of the cases cited by Plaintiffs.  *See, e.g.*, *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003) (plaintiffs "point[ed] to facts in the record in support of their claim that [the foreign parent] exerted extensive control over [the domestic subsidiary]" and to a meeting in which an executive of the defendant was present and "price-fixing activities took place."); *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 624-25 (S.D.N.Y. 2012) (availability of jurisdictional discovery was a "close question" even where plaintiffs had pointed to meetings of foreign defendant's "officials and leaders [occurring] continuously and systematically in New York and around the U.S."); *Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 72-76 (E.D.N.Y. 2006) (detailing factual allegations of plaintiffs, including that foreign parent itself "maintains offices . . . in New York, where it has its own telephone line," and that plaintiffs themselves had "frequent personal contact with [the foreign parent's] personnel and . . . management" in the United States).  By contrast, Plaintiffs here have identified no facts.

*Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998), is instructive.  In that case, the Second Circuit affirmed dismissal and upheld the district court's decision to deny jurisdictional discovery where plaintiff had made "conclusory non-fact-specific jurisdictional allegations" about the relationship between a foreign parent and its U.S.-based subsidiaries.  *Id.* at 185.  The court added:

> We recognize that without discovery it may be extremely difficult for plaintiffs in [plaintiffs'] situation to make a prima facie showing of jurisdiction over a foreign corporation that they seek to sue in the federal courts in New York. That, however, is the consequence of the problems inherent in attempting to sue a foreign corporation that has carefully structured its business so as to separate itself from the operation of its wholly-owned subsidiaries in the United States—as it properly may do. The rules governing establishment of jurisdiction over such a foreign corporation are clear and settled, and it would be inappropriate for us to deviate from them or to create an exception to them because of the problems plaintiffs may have in meeting their somewhat strict standards.

*Id*. At 186.

Jurisdictional discovery is thus inappropriate. It should be denied.

## **CONCLUSION**

There is no jurisdiction over Glencore plc. The Court should dismiss the Complaints.


Dated:   New York, New York
         August 19, 2014

                                        /s/    Eliot Lauer
                                        Eliot Lauer *(elauer@curtis.com)*
                                        Jacques Semmelman
                                        *(jsemmelman@curtis.com)*
                                        Chelsea McLean
                                        *(chelsea.mclean@curtis.com)*
                                        CURTIS, MALLET-PREVOST, COLT &
                                        MOSLE LLP
                                        101 Park Avenue
                                        New York, NY  10178-0061
                                        Telephone: (212) 696-6000
                                        Facsimile:  (212) 697-1559

                                        *Attorneys for Defendant Glencore plc*