UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE ALUMINUM WAREHOUSING ANTITRUST LITIGATION | MDL No. 2481<br><br>Master Docket No.<br>13-md-2481-KBF-RLE |
| This Document Pertains To:<br><br>FIRST LEVEL PURCHASER CASES (14 Civ. 3116)<br>COMMERCIAL END-USER CASES (14 Civ. 3121) | |

**DEFENDANT HENRY BATH & SON LTD.'S**
**REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

COVINGTON & BURLING LLP
Robert D. Wick (*rwick@cov.com*)
Neil K. Roman (*nroman@cov.com*)
Mark D. Herman (*mherman@cov.com*)
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  (202) 662-6000

*Attorneys for Henry Bath & Son Ltd.*

August 20, 2014

## TABLE OF CONTENTS

TABLE OF AUTHORITITES.................................................................................................ii

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT ......................................................................................................................2

I.     Plaintiffs Cannot Attribute U.S. Contacts Of Henry Bath LLC Or JPMorgan To
Henry Bath U.K. ..................................................................................................... 2

     A.     Plaintiffs Do Not Have A Viable "Agency" Jurisdiction Theory.......................... 2

     B.     Plaintiffs Do Not Have A Viable "Alter Ego" Jurisdiction Theory...................... 3

          1.     Plaintiffs must allege facts sufficient to show "domination" and
"pervasive" control. .................................................................................. 3

          2.     Plaintiffs' new factual assertions have not met the governing
standard. .................................................................................................... 5

II.     Henry Bath U.K.'s Contacts With The United States Do Not Provide A Basis For
Jurisdiction. ............................................................................................................ 9

     A.     Henry Bath U.K.'s Contacts Do Not Support General Jurisdiction. ..................... 9

     B.     Henry Bath U.K.'s Contacts Do Not Support Specific Jurisdiction. .................... 11

          1.     Plaintiffs have not shown that Henry Bath U.K. purposefully
availed itself of the privilege of doing business in the United
States. ...................................................................................................... 12

          2.     Plaintiffs do not allege "intentional" conduct of Henry Bath U.K.
"expressly aimed" at the United States.................................................... 12

     C.     Jurisdiction Fails Under State Long-Arm Statutes For The Same Reasons. ........ 14

III.     Jurisdiction Over Henry Bath U.K. Cannot Be Established Through The Contacts
Of Alleged Co-Conspirators. ............................................................................... 14

IV.     Plaintiffs' Oppositions Fail To Identify A Claim Against Henry Bath U.K. ................... 18

V.     Jurisdictional Discovery Should Be Denied. ....................................................... 18

VI.     Leave To Amend Should Be Denied. .................................................................. 19

CONCLUSION.................................................................................................................. 20

# TABLE OF AUTHORITITES

Page(s)

**Cases**

*Am. Fuel Corp. v. Utah Energy Dev. Co.*,
122 F.3d 130 (2d Cir. 1997)...................................................................................6

*APWU v. Potter*,
343 F.3d 619 (2d Cir. 2003)..................................................................................19

*Avila v. Lease Fin. Grp., LLC*,
No. 11 Civ. 8125, 2012 WL 1948777 (S.D.N.Y. May 30, 2012) (Forrest, J.) .......19

*Beeney v. InSightec, Inc.*,
No. 13 Civ. 8022, 2014 WL 3610941 (S.D.N.Y. Jul. 7, 2014) ...............................12

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007)..................................................................................18

*Calder v. Jones*,
465 U.S. 783 (1984)...............................................................................................13

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014)...............................................................................2, 3, 10, 12

*Daventree Ltd. v. Republic of Azerbaijan*,
349 F. Supp. 2d 736 (S.D.N.Y. 2004)...............................................................15, 16

*Drucker Cornell v. Assicurazioni Generali S.p.A. Consolidated*,
Nos. 97 Civ. 2262, 98 Civ. 9186, 2000 WL 284222 (S.D.N.Y. Mar. 16, 2000) .....8

*Eskofot A/S v. E.I. DuPont de Nemours & Co.*,
872 F. Supp. 81 (S.D.N.Y. 1995)...........................................................................13

*Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan*,
582 F.3d 393 (2d Cir. 2009)..................................................................................18

*GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*,
667 F. Supp. 2d 308 (S.D.N.Y. 2009)......................................................................4

*Giar v. Centea*,
No. 02 Civ. 7916, 2003 WL 1900836 (S.D.N.Y. Apr. 16, 2003).........................3, 5

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
131 S. Ct. 2846 (2011)........................................................................................9, 10

*Grow Group, Inc. v. Jandernoa*,
No. 94 Civ. 5679, 1996 WL 31848 (S.D.N.Y. Jan. 26, 1996)................................16

*Gundlach v. IBM Japan, Ltd.*,
    983 F. Supp. 2d 389 (S.D.N.Y. 2013) ................................................................11

*In re Angeln GmBH & Co. KG*,
    510 F. App'x 90 (2d Cir. 2013) ......................................................................18

*In re Automotive Refinishing Paint Antitrust Litig.*,
    MDL No. 1426, 2002 WL 31261330 (E.D. Pa. Jul. 31, 2002) ......................19

*In re Magnetic Audiotape Antitrust Litig.*,
    334 F.3d 204 (2d Cir. 2003) ..............................................................................13

*In re MTBE Prods. Liab. Litig.*,
    959 F. Supp. 2d 476 (S.D.N.Y. 2013) ...........................................................5, 7

*In re Roman Catholic Diocese of Albany, N.Y., Inc.*,
    745 F.3d 30 (2d Cir. 2014) ................................................................................10

*In re Ski Train Fire in Kaprun*,
    230 F. Supp. 2d 430 (S.D.N.Y. 2002) ................................................................5

*In re Terrorist Attacks on Sept. 11, 2001*,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005) .........................................................14, 16

*J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*,
    131 F. Supp. 2d 544 (S.D.N.Y. 2001) ................................................................8

*J. McIntyre Mach., Ltd. v. Nicastro*,
    131 S. Ct. 2780 (2011) ......................................................................................13

*Jazini v. Nissan Motor Co., Ltd.*,
    148 F.3d 181 (2d Cir. 1998) .......................................................................4, 8, 19

*La Piel, Inc. v. Richina Leather Indus. Co.*,
    No. 10-CV-1050, 2013 WL 1315125 (E.D.N.Y. Mar. 29, 2013) ......................6

*LaCourte v. JPMorgan Chase & Co.*,
    No. 12 Civ. 9453, 2013 WL 4830935 (S.D.N.Y. Sept. 4, 2013) .......................4

*Lehigh Valley Industries, Inc. v. Birenbaum*,
    527 F.2d 87 (2d Cir. 1975) ................................................................................16

*Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013) .........................................................................11, 12

*Marine Midland Bank, N.A. v. Miller*,
    664 F.2d 899 (2d Cir. 1981) ................................................................................4

*Penny v. United Fruit Co.*,
    869 F. Supp. 122 (E.D.N.Y. 1994) .....................................................................4

*Philip Morris Inc v. Otamedia*,
   No. 02 Civ. 7575, 2004 WL 1348987 (S.D.N.Y. Jun. 15, 2004)............................................4

*Reers v. Deutsche Bahn AG*,
   320 F. Supp. 2d 140 (S.D.N.Y. 2004)......................................................................................6

*Rush v. Savchuk*,
   444 U.S. 320 (1980)................................................................................................................16

*Safety Software Ltd. v. Rivo Software, Inc.*,
   No. 11 Civ. 7433, 2012 WL 1267889 (S.D.N.Y. Apr. 11, 2012) (Forrest, J.) .......................19

*SEC v. Montle*,
   65 F. App'x 749 (2d Cir. 2003) ................................................................................................3

*Stratagem Dev. Corp. v. Heron Int'l*,
   153 F.R.D. 535 (S.D.N.Y. 1994) ..............................................................................................7

*Tarsavage v. Citic Trust Co.*,
   --- F. Supp. 2d ----, 2014 WL 956408 (S.D.N.Y. 2014) (Forrest, J.) .........................13, 14, 15

*Tymoshenko v. Firtash*,
   No. 11-CV-2794, 2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) ............................................14

*United States v. Bestfoods*,
   524 U.S. 51 (1998)....................................................................................................................4

*Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.*,
   560 F. App'x 52 (2d Cir. 2014) .........................................................................................3, 18

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*,
   751 F.2d 117 (2d Cir. 1984)......................................................................................................8

*Waite v. Schoenbach*,
   No. 10 Civ. 3439, 2010 WL 4456955 (S.D.N.Y. Oct. 29, 2010) .........................................6, 7

*Weinar v. Lex*,
   No. 13 Civ. 1511, 2014 WL 325698 (S.D.N.Y. Jan. 23, 2014)..............................................12

*Weiss v. La Suisse*,
   69 F. Supp. 2d 449 (S.D.N.Y. 1999)........................................................................................4

*Wilson v. Merrill Lynch & Co.*,
   671 F.3d 120 (2d Cir. 2011)....................................................................................................19

*Wiwa v. Royal Dutch Petroleum Co.*,
   226 F.3d 88 (2d Cir. 2000).......................................................................................................2

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980)................................................................................................................13

*Xiu Feng Li v. Hock*,
    371 F. App'x 171 (2d Cir. 2010) ..........................................................................18

**Other Authorities**

House of Commons of the United Kingdom, Select Committee on Science and
    Technology, Strategically important metals - Science and Technology
    Committee", "Examination of Witnesses (Question Numbers 70-107) (Feb.
    16, 2012), *available at*
    http://www.publications.parliament.uk/pa/cm201012/cmselect/cmsctech/726/
    11021602.htm ......................................................................................................17

Letter from John Fingleton, Chief Executive, Office of Fair Trading (May 27,
    2011), *available at* http://www.parliament.uk/documents/commons-
    committees/science-technology/110527-Letter-from-OFT-re-SIMs.pdf. ..............................18

## PRELIMINARY STATEMENT

Plaintiffs' two briefs, together containing 66 pages of argument, 130 footnotes, and 28 evidentiary exhibits (*see* ECF Nos. 531-535), do not change the fundamental facts that (1) Henry Bath U.K. has no minimum contacts with the United States, and (2) Plaintiffs have failed to state a conspiracy claim against Henry Bath U.K.

With respect to personal jurisdiction, Plaintiffs urge this Court to exercise jurisdiction based on irrelevant and insufficient factual assertions.  They principally attempt to attribute to Henry Bath U.K. the U.S. contacts of JPMorgan and Henry Bath LLC, but they fail to allege or establish that Henry Bath U.K. "pervasively controlled" those entities or that the entities were "alter egos" of Henry Bath U.K.  Plaintiffs must therefore show that Henry Bath U.K. *itself* had minimum contacts with the United States, and they cannot make that showing.

With respect to their conspiracy allegations, Plaintiffs simply rehash the arguments that were made in their oppositions to the motions to dismiss of JPMorgan and Henry Bath LLC.  Plaintiffs' arguments do not demonstrate that Plaintiffs have alleged a plausible conspiracy claim, much less that they have stated a plausible claim against Henry Bath U.K.  Accordingly, the acts of Henry Bath U.K.'s alleged "co-conspirators" cannot be imputed to Henry Bath U.K. for purposes of asserting personal jurisdiction.

Having failed to make a prima facie showing of jurisdiction over Henry Bath U.K., Plaintiffs ask for leave to fish for new allegations in jurisdictional discovery and to amend their complaints yet again.  Those requests should be denied because Plaintiffs offer no basis for concluding that either jurisdictional discovery or amendment of the complaints would provide a basis for exercising jurisdiction over Henry Bath U.K.

**ARGUMENT**

I.   **Plaintiffs Cannot Attribute U.S. Contacts Of Henry Bath LLC Or JPMorgan To Henry Bath U.K.**

Tacitly recognizing that Henry Bath U.K. does not have minimum contacts with the United States, Plaintiffs try to attribute the U.S. contacts of JPMorgan and Henry Bath LLC to Henry Bath U.K. on two theories: (i) a theory that the other entities serve as Henry Bath U.K.'s "agent" in the United States and (ii) an alter ego theory. *See* FLP Opp. at 16-24; Commercial Opp. at 13-15.[1] Both theories fail because Plaintiffs show no more than the normal relationship between a corporate parent and its subsidiary.

A.   **Plaintiffs Do Not Have A Viable "Agency" Jurisdiction Theory.**

Plaintiffs' attempt to attribute Henry Bath LLC and JPMorgan's U.S. contacts to Henry Bath U.K. on the basis of an alleged "agency" relationship ignores the Supreme Court's controlling decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). There, the Supreme Court held that the forum contacts of an in-state subsidiary could not be attributed to its out-of-state parent based on an "'agency relationship" allegedly arising out of the subsidiary's performance of "important" services in the forum that otherwise would have performed by the parent. *See id.* at 759-60.[2] The Court reasoned that such a theory inappropriately "stacks the deck" in favor of jurisdiction because it "will always yield a pro-jurisdiction answer." *Id.*

---

[1]   "FLP Opp." refers to "Direct Purchaser Plaintiffs' Memorandum in Opposition as to Motion to Dismiss By Henry Bath & Son Ltd." (ECF No. 531). "Commercial Opp." refers to "Commercial End-User Plaintiffs' Opposition to Henry Bath & Son Ltd.'s Memorandum of Law in Support of Its Motion to Dismiss" (ECF No. 534).

[2]   The standard that the Supreme Court rejected in *Daimler* is essentially the same as the "agency" standard previously applied in this Circuit. *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (noting that "agency" can be established where the subsidiary's services "are sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available").

Without citing or acknowledging *Daimler*, Plaintiffs advance precisely the type of agency theory that *Daimler* rejected.  They simply assert that Henry Bath LLC "is an agent of" Henry Bath U.K. (Commercial Opp. at 13) and that Henry Bath U.K. "acts for the benefit of" JPMorgan (FLP Opp. at 2, 22).  *Daimler* forecloses these arguments.  Moreover, although *Daimler* leaves open the possibility that "a subsidiary's jurisdictional contacts can be imputed to its parent … when the former is so dominated by the latter as to be its alter ego," 134 S. Ct. at 759, Plaintiffs do not meet the alter ego standard for the reasons set forth below.

**B.      Plaintiffs Do Not Have A Viable "Alter Ego" Jurisdiction Theory.**

Plaintiffs have neither alleged nor shown that Henry Bath LLC and JPMorgan are mere alter egos of Henry Bath U.K.  Far from showing the type of "pervasive" control that satisfies the alter ego standard, Plaintiffs have shown only the type of close relationship that invariably exists between parent corporations and their wholly-owned subsidiaries.

**1.      Plaintiffs must allege facts sufficient to show "domination" and "pervasive" control.**

As courts are "extremely reluctant to disregard corporate form," *SEC v. Montle*, 65 F. App'x 749, 752 (2d Cir. 2003), "a parent company's control over a subsidiary is generally not enough to subject the subsidiary to suit," *Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.*, 560 F. App'x 52, 55 n.1 (2d Cir. 2014); *see also* Mem. at 7-9 (ECF No. 505) (collecting cases).  Rather, "jurisdiction is only proper when the activities of the parent show a disregard for the separate corporate existence of the subsidiary."  *Universal Trading,* 560 F. App'x at 55 n.1.

To meet this stringent standard, Plaintiffs must allege "more than the normal business influence of a corporate parent."  *Giar v. Centea*, No. 02 Civ. 7916, 2003 WL 1900836, at *1 (S.D.N.Y. Apr. 16, 2003).  Rather, the plaintiff must allege or show that "the subsidiary is

- 3 -

so dominated by the parent as to be, in practice, a 'mere department' of the parent rather than a truly independent entity."  *Philip Morris Inc v. Otamedia*, No. 02 Civ. 7575, 2004 WL 1348987, at *3 (S.D.N.Y. Jun. 15, 2004); *accord Penny v. United Fruit Co.*, 869 F. Supp. 122, 132 (E.D.N.Y. 1994) (considering "whether a parent so dominates a subsidiary as to warrant disregarding the corporate separateness of the two entities").  Put differently, Plaintiffs' factual allegations or submissions must support the conclusion that the parent exercised "pervasive control" over the subsidiary.  *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998).

Although a plaintiff seeking to establish jurisdiction on the basis of an alter ego theory need not show that the corporate form was used to perpetrate a fraud, as would be necessary under a veil-piercing analysis, the plaintiff must show the same level of "control" that applies for veil-piercing purposes.  *See, e.g.*, *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 319 (S.D.N.Y. 2009) ("[W]hen veil piercing is only being used to assert jurisdiction, the question is … whether the allegedly controlled entity 'was a shell' for the allegedly controlling party." (quotation marks omitted)).[3]  This standard is not satisfied simply by showing that a corporate parent "controlled its subsidiaries in routine ways that are entirely consistent with sound business practice and the studious observation of corporate formalities."  *LaCourte v. JPMorgan Chase & Co.*, No. 12 Civ. 9453, 2013 WL 4830935, at *6 (S.D.N.Y. Sept. 4, 2013).  The plaintiff instead must allege or show "complete domination" of the subsidiary.  *Weiss v. La Suisse*, 69 F. Supp. 2d 449, 458 (S.D.N.Y. 1999); *see also United States*

---

[3]      Plaintiffs are mistaken in asserting that "establishing the exercise of personal jurisdiction over an alleged alter ego requires application of a less stringent standard than that necessary to pierce the corporate veil for purposes of liability."  FLP Opp. at 20; Commercial Opp. at 14.  Although Plaintiffs need not establish, for jurisdictional purposes, that a "shell" corporation was used to commit a fraud, they must still establish that the subsidiary is a mere "shell" for its parent.  *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981); *GEM*, 667 F. Supp. 2d at 319.

*v. Bestfoods*, 524 U.S. 51, 61-62 (1998) ("[I]t is hornbook law that the exercise of the 'control' which stock ownership gives to the stockholders will not create liability beyond the assets of the subsidiary." (quotation marks and ellipsis omitted)).

### 2. Plaintiffs' new factual assertions have not met the governing standard.

Plaintiffs fall far short of alleging the type of pervasive dominance and control that would satisfy the alter ego standard. The complaints fail to allege that Henry Bath LLC is only a "shell" or "mere department" of Henry Bath U.K. (or that Henry Bath U.K. is a shell or mere department of JPMorgan); nor do Plaintiffs' factual submissions make such a showing. To the contrary, Plaintiffs' submissions show no more than the kind of "normal business influence of a corporate parent," *Giar*, 2003 WL 1900836, at *1, that is insufficient to exercise jurisdiction. Each of Plaintiffs' five core contentions is addressed below.

*First*, Plaintiffs' contention that Henry Bath U.K. and Henry Bath LLC hold themselves out as "one global integrated enterprise" (FLP Opp. at 1, 17; Commercial Opp. at 4), share a common website (Commercial Opp. at 4), and use the same e-mail signature (FLP Opp. at 21), reflect no more than the typical efforts of affiliated companies to standardize their brand and marketing presentations. Numerous courts have rejected the argument that such routine standardization justifies exercising jurisdiction on an alter ego theory. *See, e.g.*, *In re MTBE Prods. Liab. Litig.*, 959 F. Supp. 2d 476, 493 (S.D.N.Y. 2013) (parent's "directive to change [subsidiary's] signage to [parent's] trademarked logo and colors neither rises to the level of control 'greater than that normally associated with common ownership and directorship' nor are they sufficient to establishing … jurisdiction"); *In re Ski Train Fire in Kaprun*, 230 F. Supp. 2d 430, 411 (S.D.N.Y. 2002) ("unified presentation" on common website and use of "the same corporate logo" "is insufficient to show 'pervasive' or 'complete' control, or that the distinction

between the companies is more formal than real"); *Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 157 (S.D.N.Y. 2004) ("the fact that subsidiaries share a logo, or that the parent decides to present several corporations on a website in a unified fashion, is insufficient to show lack of formal separation between two entities").

For the same reasons, it makes no difference that Henry Bath U.K. allegedly refers to Henry Bath LLC as an "office" in the United States (FLP Opp. at 1, 17; Commercial Opp. at 4), or that JPMorgan allegedly refers to Henry Bath U.K. as its warehousing "unit" (FLP Opp. at 18). Plaintiffs' contrary argument is "strained at best" because "the mere fact that one calls a subsidiary a 'division,' or even a 'department,' of a larger parent corporation does not make that subsidiary a 'mere department' for purposes of the personal jurisdiction inquiry." *La Piel, Inc. v. Richina Leather Indus. Co.*, No. 10-CV-1050, 2013 WL 1315125, at *9 n.14 (E.D.N.Y. Mar. 29, 2013).

*Second*, Plaintiffs' argument that Henry Bath U.K. and Henry Bath LLC share a "bank account where all rental payments for aluminum warehousing apparently were deposited" (FLP Opp. at 11) is legally insufficient and factually incorrect. Contrary to plaintiffs' suggestion, use of a shared bank account does not meet the alter ego standard. *See, e.g., Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 135 (2d Cir. 1997) (reversing district court and refusing to pierce corporate veil where company "had no separate bank account"); *Waite v. Schoenbach*, No. 10 Civ. 3439, 2010 WL 4456955, at *4 (S.D.N.Y. Oct. 29, 2010) ("Plaintiff's … allegations that Defendants operate at the same location and share employees, officers, owners, and bank accounts, without more, are likewise insufficient to pierce the corporate veil." (quotation marks omitted)).

As a factual matter, moreover, Henry Bath U.K., Henry Bath LLC, and the other Henry Bath entities each have separate bank accounts and do not commingle their assets. *See* Second Declaration of Graham Hawkins ("Second Hawkins Decl.") ¶ 5. For the convenience of customers who store metal at multiple Henry Bath locations around the world, Henry Bath U.K. and its subsidiaries have listed a single bank account with the LME that warrant holders may use to make their annual rent payments, *see id.* ¶ 3, but any payments to this account are promptly allocated to the particular Henry Bath entity to whom the rent was due, *id.* ¶ 4. Furthermore, the relevant account is located in the United Kingdom, *id.* ¶ 3, and thus does not supply a jurisdictional contact with the United States.

*Third*, although Plaintiffs make much of the fact Henry Bath U.K.'s general manager was copied on a handful of e-mails relating to developments affecting Henry Bath LLC (FLP Opp. at 1, 16), the mere fact that a Henry Bath U.K. executive was informed of these developments does not establish the kind of "pervasive control" that justifies jurisdiction. To the contrary, parent companies routinely oversee or monitor operations of their subsidiaries, and such oversight does not provide a basis for jurisdiction. *See, e.g.*, *MTBE*, 959 F. Supp. 2d at 494 n.158 ("customary incidents of a parent-subsidiary relationship," such as "managerial oversight," "are not suspect and are insufficient for vicarious jurisdiction"); *Stratagem Dev. Corp. v. Heron Int'l*, 153 F.R.D. 535, 546 (S.D.N.Y. 1994) (subsidiary was not a mere department under the pervasive control of its parent despite the fact that the parent referred to "integrated" operations among subsidiaries, the subsidiary regularly reported to the parent, and one of the parent's employees had responsibility for the subsidiary's operations).

*Fourth*, neither Henry Bath U.K.'s preparation of financial statements including Henry Bath LLC nor JPMorgan's preparation of financial statements including Henry Bath U.K.

supports jurisdiction.  As the Second Circuit has recognized, preparation of consolidated

financial statements is "not a dispositive factor" because generally accepted accounting

principles ordinarily require consolidation of a subsidiary's financials.  *See Volkswagenwerk*

*Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 121 & n.3 (2d Cir. 1984); *see also*

Second Hawkins Decl. ¶ 6 (noting that U.K. accounting principles require such consolidation).

Indeed, the very financial statements that Plaintiffs cite make clear that, "[u]nder Company *law*,"

Henry Bath U.K.'s "directors must not approve the financial statements unless they are satisfied

that they give a true and fair view of the state of affairs *of the group* and company and of the

profit or loss *of the group* for that period."  Barile Decl., Ex. 3, at 4, Ex. 4, at 4 (ECF No. 532)

(emphasis added).  The consolidated financial statements thus show only the normal workings of

a parent company.  *See Drucker Cornell v. Assicurazioni Generali S.p.A. Consolidated*, Nos. 97

Civ. 2262, 98 Civ. 9186, 2000 WL 284222, at *4 (S.D.N.Y. Mar. 16, 2000) ("Because

consolidated financial reporting is typical of the parent-subsidiary relationship, a mere

department relationship cannot be established solely on the basis of such reporting.").

       *Fifth*, and finally, that Henry Bath U.K. directors are also employed by JPMorgan

(*see* FLP Opp. at 18-19; Commercial Opp. at 7-8) does not provide a basis for exercising

jurisdiction.  "[O]verlapping officers and directors are intrinsic to the parent-subsidiary

relationship" and are "not determinative as to whether the subsidiary is a 'mere department' of

the parent."  *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 550 (S.D.N.Y. 2001)

(quotation marks omitted); *accord Jazini*, 148 F.3d at 185 (U.S. subsidiary was not "mere

department" of Japanese parent where its chairman was "managing executive director[]" of the

parent).  Accordingly, Plaintiffs cannot base jurisdiction on the allegation that Peter Sellars was

an officer or director of both JPMorgan Metal Limited and Henry Bath U.K.  FLP Opp. at 23.

Nor can Plaintiffs premise jurisdiction on Mr. Sellars' e-mail statement that, notwithstanding its acquisition by JPMorgan, "Henry Bath is still Henry Bath 100% owned by JPMorgan," *id.*, as that statement reflects only JPMorgan's ownership — not its control — of Henry Bath.

In sum, Plaintiffs' submissions reflect only ordinary relationships between parents and their subsidiaries and fail to establish that either Henry Bath U.K. or Henry Bath LLC was so pervasively dominated by its parent as to be its parent's alter ego.

## II.    Henry Bath U.K.'s Contacts With The United States Do Not Provide A Basis For Jurisdiction.

Plaintiffs also argue that Henry Bath U.K.'s *own* contacts with the United States support the exercise of jurisdiction, but these arguments are unsuccessful.  Plaintiffs cannot allege or show that Henry Bath U.K. has ever had warehouses in the United States (*see* Hawkins Decl. ¶ 7 (ECF No. 504)), has maintained an office, telephone listing, or mailing address in the United States (*id.* ¶ 8), has real or personal property in the United States (*id.*), has officers or employees in the United States (*id.*), has supplied goods or services in the United States (*id.* ¶ 10), has had a bank account or assets in the United States (*id.*), or ever received income in the United States (*id.*).  The total absence of such U.S. contacts is fatal to jurisdiction.

### A.    Henry Bath U.K.'s Contacts Do Not Support General Jurisdiction.

General jurisdiction typically exists when a corporation is incorporated in the United States or has its principal place of business here.  *See, e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011).  Plaintiffs do not — and cannot — assert jurisdiction on these grounds:  Henry Bath U.K. is organized under the laws of the United Kingdom and has its principal place of business in Liverpool, England.  Hawkins Decl. ¶ 2 (ECF No. 504).

Plaintiffs nevertheless assert that general jurisdiction exists over Henry Bath U.K. as a result of its "continuous and systematic contacts" with the United States.  Commercial Opp. at 19-21.  Even if such contacts actually existed (and they do not), Plaintiffs' argument would fail under two recent Supreme Court cases holding that the general jurisdiction inquiry "is *not* whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Daimler*, 134 S. Ct. at 761 (quoting *Goodyear*, 131 S. Ct. at 2851).  Thus, general jurisdiction may be asserted only in "an exceptional case" where a corporation's U.S. presence is "*so substantial and of such a nature as to render the corporation at home*" in the United States.  *In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 39 (2d Cir. 2014) (emphasis in original) (quoting *Daimler*, 134 S. Ct. at 761 n.19).

Here, none of the alleged contacts between Henry Bath U.K. and the United States are sufficient to render Henry Bath U.K. "at home" in the United States.

Although Plaintiffs assert that Henry Bath U.K. once owned warehouses in New Orleans (*see* Commercial Opp. at 5, 20), this assertion fails to support jurisdiction both as a legal and a factual matter.  As a legal matter, even if Henry Bath U.K. had formerly operated warehouses in New Orleans, such contacts would not render Henry Bath U.K. "at home" in the United States.  *See Sonera*, 750 F.3d at 226 (even imputing "a New York office location" to a Turkish company would "not shift the company's primary place of business (or place of incorporation) away from Turkey," as required to exercise general jurisdiction).  As a factual matter, Plaintiffs have failed to controvert Henry Bath U.K.'s sworn declaration establishing that it has never had warehouses in the United States.  *See* Hawkins Decl. ¶ 7 (ECF No. 504).

Plaintiffs try to dispute the declaration by citing hearsay articles pulled from the internet (*see* Justice Decl., Exs. 4, 5 (ECF No. 535)), but "hearsay evidence submitted by plaintiff is not sufficient to defeat a motion to dismiss for lack of personal jurisdiction."  *Gundlach v. IBM Japan, Ltd.*, 983 F. Supp. 2d 389, 395 n.7 (S.D.N.Y. 2013).  Furthermore, neither of the cited articles actually indicates that Henry Bath U.K. had warehouses in New Orleans.  One of the articles does not identify the specific Henry Bath entity it is discussing.  Justice Decl., Ex. 5 (ECF No. 535).  The other appears to reflect a mere lack of care by the author in distinguishing Henry Bath U.K. from its U.S. subsidiary, and also makes clear that the warehouses at issue ceased operating *over nine years ago* in 2005.  *See id.*, Ex. 4.

Similarly, Plaintiffs' assertion that Henry Bath U.K. has U.S. contacts with the ICE Futures exchange does not withstand scrutiny.  *See* Commercial Opp. at 5-6, 20.  Although Plaintiffs cite a list of ICE-licensed coffee warehouses including *Henry Bath B.V.*, a Henry Bath entity registered in the Netherlands, *see* Justice Decl., Ex. 6, at 6 (ECF No. 535), this is not a contact of *Henry Bath U.K.* with the United States and, in any event, would not support general jurisdiction.

Plaintiffs' reliance on the alleged involvement of the "Henry Bath Group" in a copper trust (Commercial Opp. at 6-7, 20) is equally misplaced.  As Plaintiffs acknowledge (*see id*. at 7), the sole reference to Henry Bath U.K. in the cited documents states only that Henry Bath U.K. "is a member," or one of "four primary subsidiaries," of the Henry Bath Group. Justice Decl. Ex. 7, at 11 n.32; Ex. 9, at 2, 83, 110, F-7 (ECF No. 535).  The cited documents thus fail to show or suggest that Henry Bath U.K. is "at home" in the United States.

**B.    Henry Bath U.K.'s Contacts Do Not Support Specific Jurisdiction.**

Plaintiffs' arguments for specific jurisdiction are even weaker.  Specific jurisdiction may be exercised when "the defendant purposefully availed itself of the privilege of

doing business in the forum" or with respect to conduct that "occurs entirely out-of-forum … if the defendant expressly aimed its conduct at the forum." *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170, 173 (2d Cir. 2013).  Neither of these requirements is met with respect to Henry Bath U.K.

### 1.    Plaintiffs have not shown that Henry Bath U.K. purposefully availed itself of the privilege of doing business in the United States.

Plaintiffs have not alleged or shown that Henry Bath U.K. "purposefully availed itself of the privilege of doing business in" the United States.  *Licci*, 732 F.3d at 170.  Although Plaintiffs assert that Henry Bath U.K. was "directly involved in the day-to-day domestic aluminum warehousing and trading operations of Henry Bath LLC and JPMorgan" (FLP Opp. at 13), the only *fact* they cite in support of this assertion is that a Henry Bath U.K. executive was passively copied "on multiple emails involving Henry Bath LLC and JPMorgan's U.S. aluminum warehousing and trading businesses." *Id.*  These e-mails fall far short of establishing that Henry Bath U.K. purposefully availed itself of the privilege of doing business in the forum.  *See, e.g.*, *Beeney v. InSightec, Inc.*, No. 13 Civ. 8022, 2014 WL 3610941, at *3 (S.D.N.Y. Jul. 7, 2014) ("Contrary to Plaintiff's assertion, [Defendant's] email messages to the Plaintiff in New York … do not constitute business activity conducted by her, and are not sufficiently purposeful for jurisdiction."); *Weinar v. Lex*, No. 13 Civ. 1511, 2014 WL 325698, at *5 (S.D.N.Y. Jan. 23, 2014) (rejecting assertion of jurisdiction based on e-mails with personnel in forum).  Plaintiffs' attempt to assert specific jurisdiction on this basis also fails because Plaintiffs do not contend that their claims "aris[e] out of or relate[] to" the e-mails at issue.  *Daimler*, 134 S. Ct. at 754.

### 2.    Plaintiffs do not allege "intentional" conduct of Henry Bath U.K. "expressly aimed" at the United States.

Although the First Level Purchasers assert that alleged U.S. effects of Henry Bath U.K.'s foreign conduct give rise to jurisdiction, they fail to make the necessary showing that

Henry Bath U.K. engaged in wrongful conduct "expressly aimed" at the United States.  *Licci*, 732 F.3d at 173; *see also Calder v. Jones*, 465 U.S. 783, 789 (1984) (requiring "intentional, and allegedly tortious, actions" that are "expressly aimed" at the forum).

Plaintiffs' conclusory assertions that Henry Bath U.K. conspired to manipulate U.S. aluminum prices (FLP Opp. at 15-16; Commercial Opp. at 17) do not supply the necessary allegations of conduct expressly aimed at the United States because courts need not assume the truth of "conclusory statements… without any supporting facts."  *Tarsavage v. Citic Trust Co.*, --- F. Supp. 2d ----, 2014 WL 956408, at *3 (S.D.N.Y. 2014) (Forrest, J.).  Plaintiffs' assertions, moreover, appear to rest entirely on the fact that a Henry Bath U.K. executive sits on the LME Warehousing Committee.  As Henry Bath U.K. showed in its opening memorandum, mere service on a committee that meets in London and makes recommendations to a London-based futures exchange does not constitute conduct "expressly aimed" at the United States.  *See* Mem. at 10 (ECF No. 505).  Nor have Plaintiffs identified any wrongful actions by the Henry Bath U.K. representative on the committee, *see infra* Section III-IV; ECF Nos. 310, at 12-13; 442, at 5-6,[4] much less that any wrongful actions were "expressly aimed" at the United States, *see* Mem. at 9-10 (ECF No. 505).  *See also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) ("'[F]oreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."); *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2789

---

[4]      The cases cited by Plaintiffs do not support a contrary conclusion.  In *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204 (2d Cir. 2003), "an executive of [the defendant] was present at a meeting in Seoul in which price-fixing activities took place," *id.* at 208.  Similarly, in *Eskofot A/S v. E.I. DuPont de Nemours & Co.*, 872 F. Supp. 81 (S.D.N.Y. 1995), the plaintiff alleged "facts" suggesting intentional acts by the defendant that had effects in the United States, *see, e.g.*, *id.* at 88 (listing alleged facts).  Here, by contrast, Plaintiffs point to no wrongful conduct by a Henry Bath U.K. representative on the committee, much less wrongful conduct expressly aimed at the United States.  *See infra* Section III-IV.

(2011) (rejecting exercise of jurisdiction "based on general notions of fairness and foreseeability").

C.   **Jurisdiction Fails Under State Long-Arm Statutes For The Same Reasons.**

It follows from Henry Bath U.K.'s lack of contacts with the United States as a whole that it also lacks sufficient contacts with Florida, Michigan, and New York, the three states relevant to the Commercial End Users' state-law claims.  *See* Commercial Opp. at 12. Furthermore, even if any of these states' long-arm statutes purported to provide jurisdiction, jurisdiction would not comport with due process.

III.   **Jurisdiction Over Henry Bath U.K. Cannot Be Established Through The Contacts Of Alleged Co-Conspirators.**

Just as Plaintiffs cannot rely on the U.S. contacts of Henry Bath U.K.'s corporate affiliates to establish jurisdiction, they cannot rely on contacts of its alleged co-conspirators as a basis for jurisdiction.

As a threshold matter, it is far from clear whether acts of co-conspirators are a legitimate basis for exercising jurisdiction over non-resident defendants.  *See Tymoshenko v. Firtash*, No. 11-CV-2794, 2013 WL 1234943, at *4 (S.D.N.Y. Mar. 27, 2013) ("the use of this conspiracy theory has been widely criticized by courts and scholars").  Assuming arguendo that such jurisdiction may be exercised, its requirements are strict.  Plaintiffs must "[1] make a prima facie showing of conspiracy, [2] allege specific facts warranting the inference that the defendant was a member of the conspiracy, and [3] show that the defendant's co-conspirator committed a tort in [the forum]."  *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 805 (S.D.N.Y. 2005).  Moreover, the co-conspirator that committed the tortious act must have "acted at the direction or under the control or at the request of or on behalf of the out-of-state

- 14 -

defendant." *Id.* (quotations omitted); *see also Tarsavage*, 2014 WL 956408, at *8 (out-of-state

defendant must have "directed or controlled" co-conspirator's actions to establish jurisdiction).

Here, Plaintiffs cannot satisfy any of these requirements.

*First*, Plaintiffs have not adequately alleged that Henry Bath U.K. directed or

controlled a co-conspirator's commission of a wrongful act.  The complaints in these cases

revolve around an alleged conspiracy to hoard or trap aluminum at LME warehouses.  Plaintiffs

do not allege, however, that Henry Bath U.K. ever directed, controlled, or requested that any

other defendant hoard or trap aluminum.  Nor do Plaintiffs assert that Henry Bath U.K. directed

or controlled any other form of alleged misconduct by a co-defendant.  Plaintiffs thus have no

basis to impute the contacts of alleged co-conspirators to Henry Bath U.K.  *See Tarsavage*, 2014

WL 956408, at *8 (no personal jurisdiction absent specific facts showing that out-of-forum

defendant "directed or controlled" co-conspirator); *Daventree Ltd. v. Republic of Azerbaijan*, 349

F. Supp. 2d 736, 763 (S.D.N.Y. 2004) (no personal jurisdiction absent specific facts showing that

out-of-state defendant "directed, controlled, or requested" acts of co-conspirators).

It makes no difference that a Henry Bath U.K. executive, Graham Hawkins,

allegedly sits on the LME Warehousing Committee.  *See* FLP Opp. at 4, 20; Commercial Opp. at

3.  Plaintiffs never identify any misconduct by the committee, much less by Mr. Hawkins.  *See*

JPMorgan Mem. in Support of Mot. to Dismiss ("JPMorgan Mem.") at 12-13 (ECF No. 310);

JPMorgan Reply in Support of Mot. to Dismiss ("JPMorgan Reply") at 6-7 (ECF No. 442).  To

the contrary, Plaintiffs admit that they do not know "what was said or done at the LME

warehouse committee meetings."  Plaintiffs' Mem. in Opp. to Mots. to Dismiss at 24 (ECF No.

403).  They also admit that "long-time LME warehouse operators" like Henry Bath U.K. spoke

up against queues at committee meetings, and that only the LME had the power to change the

- 15 -

load-out rules.  *See* JPMorgan Reply at 6-7 (ECF No. 442) (citing FLP Compl. ¶¶ 5(a)-(d)), 283;

Commercial Compl. ¶ 40); *see also* FLP. Opp. at 3 ("Henry Bath & Son is one of the oldest

warehouse operators in the world, and a founding member of the LME.").

       *Second*, Plaintiffs fail to allege "specific facts warranting the inference that

[Henry Bath U.K.] was a member of the conspiracy."  *In re Terrorist Attacks*, 349 F. Supp. 2d at

805.  Plaintiffs point to vague and undifferentiated allegations that the "Defendants" or the

"Warehouse Defendants" participated in the alleged conspiracy (*e.g.*, FLP Opp. at 22), but these

group-pleading allegations are no substitute for "specific facts" indicating that *Henry Bath U.K.*

was a member of the alleged conspiracy.  *See In re Terrorist Attacks*, 349 F. Supp. 2d at 805;

*Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980) (personal jurisdiction requirements must be met

"as to each defendant over whom a … court exercises jurisdiction"); *Grow Group, Inc. v.

Jandernoa*, No. 94 Civ. 5679, 1996 WL 31848, at *5 (S.D.N.Y. Jan. 26, 1996) ("considering the

defending parties by *group* and aggregating their forum contacts in determining jurisdiction is

plainly unconstitutional"); *Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87, 93-94 (2d

Cir. 1975) ("the bland assertion of conspiracy or agency is insufficient to establish jurisdiction");

*Daventree*, 349 F. Supp. 2d at 760 ("this Court cannot accept plaintiffs' conclusory assertions [to

establish jurisdiction]").

       *Finally*, Plaintiffs have not even made the required "prima facie showing of

conspiracy."  *In re Terrorist Attacks*, 349 F. Supp. 2d at 805.  As the Court observed at oral

argument, Plaintiffs' conspiracy claims are like "one hand clapping" in the absence of well-

pleaded allegations that futures traders participated in the purported conspiracy.  *See* Oral Arg.

Tr. at 183; *see also id.* at 179.  No such allegations exist.  Plaintiffs do not identify a specific

"agreement" that the futures traders allegedly entered into; they cite no instances of parallel

- 16 -

trading conduct or conduct contrary to a futures trader's unilateral self-interest; and counsel for the Commercial End-Users openly admitted at oral argument that "I don't think we know enough about [the futures traders] with the allegations that we have at this point." *Id.*

Plaintiffs' conspiracy allegations are especially strained against JPMorgan and the Henry Bath companies.  In contrast to their allegations against other defendants, Plaintiffs never allege that the Henry Bath companies had any queues at their warehouses, offered large incentives to attract aluminum, or shuttled aluminum back and forth among their own warehouses.  *See* JPMorgan Mem. at 7-17 (ECF No. 310); JPMorgan Reply at 2-16 (ECF No. 442).  Furthermore, Plaintiffs' own regression analysis shows that, at all three Henry Bath warehouses in the United States, aluminum was delivered at *exactly* the speed at which Plaintiffs say it would have been delivered in the absence of a conspiracy.  *See* JPMorgan Reply at 3-4 & n.3 (ECF No. 442).  Although Plaintiffs renew their attempt to tie JPMorgan to a conspiracy based on its alleged cancellation of warrants at a warehouse in Vlissingen, they never allege that Henry Bath U.K. directed or controlled the alleged cancellation by JPMorgan, and in any event, the alleged cancellation was entirely consistent with JPMorgan's unilateral self-interest.  *See id.* at 11-13; Defendants' Response to Mag/Agfa Submission at 2-4 (ECF No. 492).

It bears emphasis that, in their desperation to tie JPMorgan to a conspiracy, Plaintiffs frequently overstate the allegations in their complaints.  For example, Plaintiffs argue that they have alleged that JPMorgan "control[led] 50% of the aluminum stock listed on the LME."  *See* Commercial Opp. at 2 (citing Commercial Compl. ¶ 63); FLP Opp. at 35 (citing FLP Compl. ¶ 375).  But the documents cited in the complaints for this proposition do not involve

aluminum; they relate to a different metal.[5]  Plaintiffs also neglect to mention that the U.K.

Office of Fair Trading considered the allegations at issue and found no reason to investigate.[6]  As

this example shows, the statements made in Plaintiffs' oppositions cannot necessarily be taken at

face value.

       For all these reasons, Plaintiffs cannot establish jurisdiction over Henry Bath U.K.

on a conspiracy theory.

## IV.  Plaintiffs' Oppositions Fail To Identify A Claim Against Henry Bath U.K.

       As Henry Bath U.K. showed in its opening memorandum, Plaintiffs have also

failed to state a plausible claim for relief against Henry Bath U.K.  *See* Mem. at 13-14 (ECF No.

505).  Contrary to the assertions in Plaintiffs' oppositions, group-pleading allegations fail to

satisfy either *Twombly* or Rule 8.  *See id.*; JPMorgan Reply at 9 & n.5 (ECF No. 442).

## V.  Jurisdictional Discovery Should Be Denied.

       Plaintiffs' requests for jurisdictional discovery (FLP Opp. at 25; Commercial

Opp. at 22) should be denied.  Jurisdictional discovery is routinely denied where, as here,

Plaintiffs have not made a prima facie showing of personal jurisdiction.  *See Universal Trading*,

560 F. App'x at 56 ("declining to allow [plaintiffs] to fish for additional grounds of jurisdiction

that they had not alleged").[7]  Plaintiffs are not entitled to "conduct substantial jurisdictional

---

[5]    *See* House of Commons of the United Kingdom, Select Committee on Science and Technology, *Strategically important metals - Science and Technology Committee", "Examination of Witnesses (Question Numbers 70-107)* (Feb. 16, 2012), *available at* http://www.publications.parliament.uk/pa/cm201012/cmselect/cmsctech/726/11021602.htm.

[6]    *See* Letter from John Fingleton, Chief Executive, Office of Fair Trading (May 27, 2011), *available at* http://www.parliament.uk/documents/commons-committees/science-technology/110527-Letter-from-OFT-re-SIMs.pdf.

[7]    *Accord In re Angeln GmBH & Co. KG*, 510 F. App'x 90, 93 (2d Cir. 2013) ("Declining to permit jurisdictional discovery is well within a district court's discretion if the plaintiff has not made out a prima facie case for jurisdiction." (quotation marks and brackets omitted)); *Xiu Feng* (continued…)

discovery over foreign corporations" based on "conclusory non-fact-specific jurisdictional allegations" like those asserted in the oppositions. *Jazini*, 148 F.3d at 185-86.

The cases Plaintiffs cite do not support a different result.  In *APWU v. Potter*, 343 F.3d 619 (2d Cir. 2003), for example, the Second Circuit affirmed the *denial* of discovery concerning subject matter jurisdiction (not personal jurisdiction) because plaintiffs there "fail[ed] to articulate … why such evidence is relevant." *Id.* at 627.  Similarly, in *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2002 WL 31261330 (E.D. Pa. Jul. 31, 2002), the court ordered discovery only after "Plaintiffs … made a threshold *prima facie* showing of personal jurisdiction over Defendants." *Id.* at *9. Here, by contrast, Plaintiffs' alter ego and conspiracy allegations are insufficient to provide a basis for jurisdiction, and Plaintiffs have provided no reason to believe that discovery would overcome these problems.

**VI.     Leave To Amend Should Be Denied.**

Plaintiffs' request for leave to amend fails for similar reasons.  Plaintiffs have already filed numerous complaints that were consolidated into the operative consolidated amended complaints, and they offer no reason for concluding that yet another complaint would succeed where others failed — especially against Henry Bath U.K.  Because Plaintiffs fail to

---

*Li v. Hock*, 371 F. App'x 171, 175 (2d Cir. 2010) ("Since we conclude that there was no prima facie case for jurisdiction, we also find that the district court did not err in declining to engage in jurisdictional discovery."); *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan*, 582 F.3d 393, 401 (2d Cir. 2009) (noting that a district court "typically [acts] within its discretion to deny jurisdictional discovery when the plaintiff has not made out a prima facie case for jurisdiction" (quotation marks and brackets omitted)); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007) ("[T]he district court acted well within its discretion in declining to permit discovery because the plaintiff had not made out a prima facie case for jurisdiction."); *Avila v. Lease Fin. Grp., LLC*, No. 11 Civ. 8125, 2012 WL 1948777, at *4 n.6 (S.D.N.Y. May 30, 2012) (Forrest, J.) ("Plaintiffs' request for jurisdictional discovery is denied because plaintiff has failed to make out a *prima facie* case that jurisdiction exists."); *Safety Software Ltd. v. Rivo Software, Inc.*, No. 11 Civ. 7433, 2012 WL 1267889, at *5 n.6 (S.D.N.Y. Apr. 11, 2012) (Forrest, J.) (same).

- 19 -

explain how an amendment would overcome Henry Bath U.K.'s lack of contacts with the United

States, or how an amended complaint would state a plausible claim against Henry Bath U.K.,

leave to amend should be denied.  *See, e.g., Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 140

(2d Cir. 2011) (denial of leave to amend is warranted when plaintiff "never indicated … how

further amendment would permit him to cure the deficiencies in the complaint").

## CONCLUSION

For the foregoing reasons and the reasons stated in Henry Bath U.K.'s

Memorandum Of Law In Support Of Its Motion To Dismiss (ECF No. 505), all claims against

Henry Bath U.K. should be dismissed without leave to amend.


August 20, 2014                              Respectfully submitted,


                                            s/ Robert D. Wick
                                            Robert D. Wick (*rwick@cov.com*)
                                            Neil K. Roman (*nroman@cov.com*)
                                            Mark D. Herman (*mherman@cov.com*)
                                            COVINGTON & BURLING LLP
                                            1201 Pennsylvania Avenue, N.W.
                                            Washington, D.C. 20004
                                            Telephone:  (202) 662-5487

                                            *Attorneys for Henry Bath & Son Ltd.*