

**Grant & Eisenhofer P.A.**

485 Lexington Avenue   New York, NY 10017   Tel: 646-722-8500   Fax: 646-722-8501

123 Justison Street
Wilmington, DE 19801
Tel: 302-622-7000
Fax: 302-622-7100

1747 Pennsylvania Avenue, N.W., Suite 875
Washington, DC 20006
Tel: 202-386-9500
Fax: 202-386-9505

30 N. LaSalle Street, Suite 1200
Chicago, IL 60602
Tel: 312-214-0000
Fax: 312-214-0001

Linda P. Nussbaum
Director
Tel: 646-722-8504
lnussbaum@gelaw.com

VIA ECF

October 9, 2014

The Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
500 Pearl Street, Room 1950
New York, New York 10007

      Re:    In re Aluminum Warehousing Antitrust Litigation (13-md-2481 (KBF)), Direct Purchaser Plaintiffs (14 Civ. 3116 (KBF)); AGFA Corporation, et al. v. The Goldman Sachs Group, Inc., et al. (14 Civ. 0211 (KBF)); Mag Instrument Inc. v. The Goldman Sachs Group Inc., et al. (14 Civ. 0217 (KBF))

Dear Judge Forrest:

    I write in response to the LME's asserted Notice of Supplemental Authority filed yesterday. (ECF 606.)

    First, a ruling of a U.K. tribunal is not "Authority" in this Court or any other U.S. court in interpreting federal laws such as FSIA. This has been so since at least July 4, 1776.

    At best, the LME's submission of the new Rusal decision is additional evidence. And, without an expert in U.K. law here to testify as to what any of the terms used by that tribunal really mean under U.K. law (and without any interpretive guide at all), the probative value of what the U.K. tribunal said is questionable. The meaning of the term "public body," under U.K. law is by no means self-evident; the term certainly is not in the FSIA.

    Other language right in the middle of the tribunal's "summary of conclusions," reads:

> The common law duty is imposed to hold the constitutional balance between a public body and the general body of consultees. It is not, in my judgment, imposed to enable a consultee to challenge the absence of information on an option which it quite simply does not wish to have pursued.



(ECF 606 at 21, ¶ 88.)

This raises questions; it doesn't give answers. What does the tribunal mean by a "constitutional balance"? What is a "general body of consultees"?

Judge Wood's observation in the *Bodum* case is instructive:

Exercises in comparative law are notoriously difficult, because the U.S. reader is likely to miss nuances in the foreign law, to fail to appreciate the way in which one branch of the other country's law interacts with another, or to assume erroneously that the foreign law mirrors U.S. law when it does not. As the French might put it more generally, apparently similar phrases might be *faux amis*.

There will be many times when testimony from an acknowledged expert in foreign law will be helpful, or even necessary, to ensure that the U.S. judge is not confronted with a "false friend" or that the U.S. judge understands the full context of the foreign provision.

*Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624, 638-39 (7th Cir. Ill. 2010) (Wood, J., concurring).

Here, the LME has left us only to speculate as to what some of these English, but decidedly foreign, words mean, and, worse, to wander from the text of the FSIA, which, as concerns the question presented in this Court, controls.

Then there is the cherry picking. The LME neglects to concede that the tribunal described the Rusal case not as some sort of APA-style administrative review, despite the tribunal itself described the case an "unusual case of commercial judicial review" in the Rusal case. (ECF 606 at 21, ¶ 89.) That's right: "**commercial**."

Further to the point, and regardless of what undefined label might be affixed to the LME or its conduct one way or the other, the fact is that the U.K. tribunal ruled that the LME was justified in its rejection of capping warehouse rents prior to its public consultation concerning LILO because the LME reasonably feared that the rent-capping "option carried unacceptably high legal risk on competition law grounds." (ECF 606 at 4, ¶ 2.)

Indeed, its fear of violating competition law, being that LME decisions by nature are concerted action among competitors, was the primary reason the tribunal says that the LME provided them for its decision early-on not to seriously consider instituting a rate cap. (ECF 606, *passim*.) The LME's counsel argued that "it was **self-evident that there were competition issues**." (ECF 606 at 13, ¶ 49.) Thus, even if the LME were an organ because it is a "public body," the bottom line is that when it comes to "regulating" warehouses, the LME is engaging in conduct subject to "commercial" conduct, which is subject to "competition law," by its own admission.

Hon. Katherine B. Forrest<br>
October 9, 2014<br>
Page 3 of 3

If the LME is subject to competition law in the U.K. for conduct relating to warehousing and warehousing rules—and it admits that it is—then surely the LME is subject to antitrust law in the United States. To interpret the FSIA otherwise would lead to an improperly absurd result; a result foreclosed by (U.S.) law.

Plaintiffs respectfully submit that this new evidence offered by the LME calls for reconsideration of the Court's dismissal of the LME on FSIA grounds without to leave to replead.

Respectfully submitted,

Linda P. Nussbaum

cc: Counsel of Record via ECF