Case 1:13-md-02481-KBF  Document 638  Filed 11/07/14  Page 1 of 17

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: NOV 0 7 2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- X
                          :

IN RE ALUMINUM WAREHOUSING      :      13-md-2481 (KBF)
ANTITRUST LITIGATION            :      and all related cases
                          :

                          :      OPINION & ORDER
                          :
---------------------------------------------------------------------- X

KATHERINE B. FORREST, District Judge:

On August 25, 2014, this Court issued an Opinion & Order dismissing defendant the London Metal Exchange Limited (the "LME") from this action on sovereign immunity grounds without leave to replead. (ECF No. 564 ("Op.").) Now before the Court is plaintiffs' joint[1] motion for reconsideration of this Opinion & Order pursuant to Local Civil Rule 6.3.[2] (ECF No. 578.) For the following reasons, that motion is DENIED.

I.    PROCEDURAL BACKGROUND

On August 16, 2013, the first of what would become a large number of lawsuits alleging federal antitrust and analogous state law claims was filed against, inter alia, the LME. The LME moved to dismiss all claims against it on the basis that it is immune under the Foreign Sovereign Immunities Act ("FSIA"). (ECF No. 320.) In an Opinion & Order dated August 25, 2014 (the "Opinion"), the Court granted the LME's motion to dismiss without leave to replead. (Op. at 31.)

---

[1] Plaintiff Eastman Kodak Company has not joined in the motion.

[2] In support of their motion for reconsideration, plaintiffs submitted hundreds of pages of new factual materials. (See ECF Nos. 580, 594.) While submission of such materials was not procedurally proper, the Court has considered such materials in connection with the instant motion.

Applying the multi-factor test set forth by the Second Circuit in <u>Filler v. Hanvit</u> <u>Bank</u>, 378 F.3d 213 (2d Cir. 2004), the Court determined that the LME is an "organ" of the United Kingdom, despite the fact that it is privately owned by Hong Kong Exchanges and Clearing Limited and was previously owned by, <u>inter alia,</u> various investment banks and trading companies. (Op. at 22-28.)  The Court further determined that the LME's allegedly unlawful conduct—involvement in a conspiracy involving, <u>inter alia</u>, the manipulation of load-out rules for aluminum warehouses—did not constitute "commercial" activity under the FSIA because conduct relating to warehouse rules falls within the LME's broad regulatory function. (Op. at 28-31.)  In sum, based on the minimal facts which are needed to make such determinations and clear law, this Court determined that it lacks jurisdiction over the LME's particular conduct alleged in the various complaints in this consolidated and coordinated series of actions. (Op. at 3 & n.5.)

On September 8, 2014, plaintiffs filed a joint motion for reconsideration of the Opinion. (ECF No. 578.)  Plaintiffs argue that the Opinion should be reconsidered and that the Court should reverse itself based on: (1) an intervening change in the law regarding the definitions of organ status and commercial activity under the FSIA owing to the Supreme Court's decision in <u>Republic of Argentina v. NML</u> <u>Capital, Ltd.</u>, 134 S. Ct. 2250 (2014) and the Second Circuit's decision in <u>Export-</u> <u>Import Bank of the Republic of China v. Grenada</u>, 768 F.3d 75 (2d Cir. 2014); (2) the Court's error in not permitting plaintiffs to take limited discovery from the LME;

and (3) additional facts not previously brought to the Court's attention. (See ECF Nos. 579, 593, 604, 607, 617.)

On October 7, 2014, the Court notified plaintiffs that they might in their proposed amended complaints set forth any new factual allegations not previously brought to the Court's attention that bear on the LME's role in the alleged antitrust conspiracy. (ECF No. 605.) On October 9, 2014, plaintiffs Agfa Corporation, Agfa Graphics, N.V., Mag Instrument, Inc., and Eastman Kodak Company submitted a motion for leave to amend their complaint and a proposed amended complaint. (ECF No. 608.) On October 10, 2014, the First Level Purchaser plaintiffs did the same, and then on October 29, 2014 submitted a revised version of their proposed amended complaint in response to an order from the Court regarding the proper titling of the complaint.[3] (ECF Nos. 610, 631.) The briefs and letters pertaining to this motion became fully submitted on October 23, 2014.[4] The Court has reviewed and considered all of these materials in connection with the instant motion.

---

[3] The First Level Purchaser plaintiffs ("FLPs") filed a motion for leave to amend their complaint and a proposed amended complaint, which they titled their "Second Consolidated Class Action Complaint," on October 10, 2014. (ECF No. 180.) The Court then issued two orders dated October 24, 2014 and October 27, 2014 clarifying that the FLPs' proposed amended complaint was in fact their "Third Proposed Amended Complaint" and should be amended to reflect such designation. (ECF Nos. 628, 630.) The FLPs subsequently refiled their motion for leave to amend and proposed amended complaint to reflect this designation on October 29, 2014. (ECF No. 631.)

[4] In a memo-endorsed order dated October 6, 2014, the Court permitted the LME to file a sur-reply brief. (ECF No. 602.) The LME filed its sur-reply later that day. (ECF No. 603). On October 7, 2014, the Court issued an order stating that the motion was fully briefed. (ECF No. 605.) Each of the parties then, without leave from the Court, filed several additional letters regarding the merits of the motion for reconsideration, the last of which was filed on October 23, 2014. (ECF Nos. 604, 606, 607, 617, 622.) On October 24, 2014, the Court ordered the parties to refrain from additional filings. (ECF No. 626.)

## II. LEGAL STANDARD

This is a motion for reconsideration based on Local Rule 6.3. It is not an opportunity simply to reargue that which has already been decided. "The standards governing a motion for reconsideration under Local Rule 6.3 are the same as those under Federal Rule of Civil Procedure 59(e)." Abrahamson v. Bd. of Educ., 237 F. Supp. 2d 507, 510 (S.D.N.Y. 2002). Thus, a "motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Rather, to prevail on a motion for reconsideration, the movant must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Id. However, motions for reconsideration cannot be based on arguments not previously raised. See Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998) ("Rule 59 is not a vehicle for . . . presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' . . . .").

## III. DISCUSSION

Plaintiffs argue that this Court should reconsider the Opinion for three reasons. First, plaintiffs argue that the Supreme Court's decision in NML Capital and the Second Circuit's decision in Export-Import Bank together establish that Filler v. Hanvit Bank, 378 F.3d 213 (2d Cir. 2004), the primary authority on which the Opinion was based, is no longer controlling. The Court disagrees. This argument is based on a misreading of those opinions. Second, plaintiffs argue that the Court should have permitted plaintiffs to take limited discovery from the LME.

4

This is simply reargument of a point already raised and lost by plaintiffs. (ECF Nos. 346, 362.) In any event, as a substantive matter, the Court disagrees. Third, plaintiffs point to several "new" factual considerations which they argue establish that the LME is not entitled to immunity. Several of these considerations are not, in fact, "new." None of the facts change or alter the Court's decision. Accordingly, plaintiffs' motion is DENIED.

A.    Lack of Intervening Changes in the Law

1.    *Filler v. Hanvit Bank* and *NML Capital.*

There has not been an intervening change in the law with regard to organ status or what constitutes "commercial activity" under the FSIA since the Court issued the Opinion on August 25, 2014.

In the Opinion, the Court determined that the LME was an organ of the U.K. Government under the five-factor test set forth in Filler. In Filler, the Second Circuit set forth various factors relevant to determine whether an entity constitutes an "organ" of a foreign state under the FSIA ("Filler factors"). 378 F.3d at 217. The Filler factors thus aid in interpreting the statutory term "an organ of a foreign state," and in that regard are tethered to the text of the FSIA. Notably, and contrary to the underlying premise of much of plaintiffs' argument, the Filler factors would be unnecessary if organs of a foreign state were always easily identifiable as such. Instead, Filler and numerous cases applying the Filler factors recognize that the identification exercise can require further inquiry.

Plaintiffs argue that Filler was overruled sub silentio by the Supreme Court's recent decision in NML Capital, which was decided after this Court held oral

5

argument on the LME's motion to dismiss, notwithstanding the fact that the

Supreme Court's decision affirmed a Second Circuit decision that did not purport to

overrule <u>Filler</u>. Specifically, plaintiffs argue that <u>NML Capital</u> rejected the use of

multi-factor balancing tests in interpreting and applying the FSIA, as evidenced by

the Supreme Court's statement that federal courts are no longer in the "immunity-

by-factor-balancing business," and that "any sort of immunity defense made by a

foreign sovereign in an American court must stand on the Act's text. Or it must

fall." (<u>See</u> ECF No. 579 at 3-5 (quoting <u>NML Capital</u>, 134 S. Ct. at 2256, 2258)).

Plaintiffs point to <u>Filler</u> as fitting the bill for an "immunity-by-factor-balancing"

case. As further support for their argument, plaintiffs point to the Second Circuit's

statement in <u>Export-Import Bank</u> that <u>NML Capital</u> has left in its wake an "altered

legal landscape." (<u>See</u> ECF No. 593 (quoting <u>Export-Import Bank</u>, 768 F.3d at 93).)

According to plaintiffs, this altered landscape includes the overruling of <u>Filler</u>. This

Court disagrees with plaintiffs' assessment of <u>NML Capital</u> and <u>Export-Import

Bank</u>.

In <u>NML Capital</u>, the Supreme Court addressed whether the FSIA shields a

judgment debtor from federal rules governing discovery when the judgment debtor

is a foreign state. <u>Id.</u> at 2255. There, a holder of debt issued by Argentina sought

post-judgment discovery from third parties for the purpose of identifying

Argentinean assets to attach. <u>Id.</u> at 2253. Argentina argued that the FSIA

prohibited such discovery, citing as support several decisions pre-dating the FSIA in

which courts extended absolute immunity as to discovery in aid of execution against

6

foreign-state property. Id. at 2254-58. These decisions were generally based upon multi-factor balancing tests that incorporated considerations the State Department had taken into account when deciding whether to request immunity for a particular foreign entity. Id. at 2255.

The Supreme Court explained that Congress passed the FSIA to "abate[] the bedlam" created by this "old executive-driven, factor-intensive, loosely common-law based immunity regime." Id. at 2255. Accordingly, because the FSIA displaced the common law decisions pre-dating it, these earlier decisions that employed "immunity-by-factor-balancing" were irrelevant to the question before the Court, as "any sort of immunity defense made by a foreign sovereign in an American court must stand on the Act's text. Or it must fall." Id. at 2256-58. Applying this principle to the case at hand, the Court searched the FSIA for a provision forbidding or limiting the discovery sought, and because it could not find one, concluded that the FSIA did not prohibit such discovery. See id.

NML Capital therefore did not address the issue of whether a particular entity is "an organ of a foreign state" under the FSIA, which was the key issue decided by the Second Circuit in Filler. Further, there is no reason to believe that the Supreme Court's rejection in NML Capital of "immunity-by-factor-balancing" and non-textually based immunity functionally overrules Filler, both because the Filler factors set forth by the Second Circuit in 2004 are not part of the "loosely common-law based immunity regime" displaced by the passage of the FSIA in 1976,

and because they are tethered to the text of the statute; they serve not to displace but to aid in interpreting a statutory term.

The Second Circuit's recent decision in <u>Export-Import Bank</u> does not affect this conclusion, as it is merely a straightforward application of <u>NML Capital</u> to a dispute over post-judgment discovery that does not so much as mention <u>Filler</u>. <u>See</u> 768 F.3d at 78 (vacating district court's order denying plaintiff's request for post-judgment discovery "in light of the Supreme Court's recent decision in [<u>NML Capital</u>], which rejected any perceived FSIA-based restrictions on discovery related to a foreign sovereign's assets in the United States").

Simply put, <u>Filler</u> was not overruled <u>sub silentio</u> by <u>NML Capital</u> or any subsequent Second Circuit case. Accordingly, there has been no intervening change in federal law since the Court issued the Opinion that warrants this Court's reconsideration of its determination that the LME is an organ of the U.K. Government.

### 2. Discovery.

Plaintiffs argue that <u>NML Capital</u> requires the Court to allow plaintiffs to seek discovery from the LME. They argue that <u>NML Capital</u> establishes that the FSIA does not preclude the permissive discovery allowed by Rule 26, and that courts should disregard a discovery target's "self-serving" statements regarding the necessity of discovery and permit such discovery to proceed where factual questions are relevant to determining whether the target is immune under the FSIA. (ECF No. 579 at 4.)

8

This is incorrect. <u>NML Capital</u> does not address under what specific factual circumstances a court <u>must</u> grant jurisdictional discovery, and in fact, it makes clear that the decision whether to permit such discovery remains within the discretion of the district court. Indeed, in its opinion the Supreme Court noted that "other sources of law ordinarily will bear on the propriety of discovery requests of this nature and scope, such as settled doctrines of privilege and the discretionary determination by the district court whether the discovery is warranted." 134 S. Ct. at 2258 n.6 (internal quotation marks omitted). Likewise, in <u>Export-Import Bank</u>, the Second Circuit remanded the case to the district court to consider "<u>whether</u> to permit further [post-judgment] discovery, consistent with . . . <u>NML Capital</u>" and Rule 69 of the Federal Rules of Civil Procedure. 768 F.3d at 93 (emphasis added).

The Second Circuit's recent decision in <u>Mare Shipping Inc. v. Squire Sanders (US) LLP</u>, 574 Fed. App'x 6 (2d Cir. 2014), which is cited by plaintiffs in support of their argument that this Court should permit jurisdictional discovery (<u>see</u> ECF Nos. 579 at 4, 593 at 4-5), does not alter this conclusion. In <u>Mare</u>, a summary order without precedential effect, the Second Circuit held that a U.S. law firm was not immune to discovery under the FSIA because the plain text of the statute precluded the law firm from qualifying as an "agency or instrumentality" of a foreign state. <u>Id.</u> at 9. In so doing, the Second Circuit explicitly reviewed the district court's denial of a discovery request for abuse of discretion and stated that "[o]nce a District Court determines that it has jurisdiction over the [discovery] request, the District Court has discretion to decide whether or not to grant it." <u>Id.</u> at 8.

9

There has been no intervening change in the law regarding the district court's discretion whether to permit jurisdictional discovery since this Court issued the Opinion.

Further, discovery would not help plaintiffs. Whether an entity is entitled to organ status is based, inter alia, on how its government treats it; if it is an organ, the Court then turn to whether there is an exception to immunity (such as whether the allegedly unlawful conduct is commercial in nature). Here, there are no additional facts needed: the positions of the U.K.'s Financial Conduct Authority and the U.K. judiciary regarding the LME are clear, as discussed in the opinion. (Op. at 12-13, 23-30.) The LME's regulatory role is clear; its oversight by the FCA is clear; its immunity from suit under U.K. law for actions it takes to fulfill its regulatory functions is clear; and the U.K. judiciary's view that the LME is a public body whose rules are subject to judicial oversight is also clear. Discovery will not alter the fact that the LME's allegedly unlawful conduct—which concerns the setting of load-out rules for aluminum warehouses—is regulatory, and not commercial in nature. Accordingly, the Court does not reverse its prior decision not to permit jurisdictional discovery from the LME.

B.    Additional Facts

In its Opinion, the Court noted that its decision was grounded both on the law and facts, and that the factual record bearing on whether the LME was immune from suit under the FSIA was "amply developed." (Op. at 31.)    Nevertheless, in their submissions in support of this motion, plaintiffs point to several additional facts they assert demonstrate that the LME is not an organ of the U.K.

10

Government. As set forth below, the Court has considered each of the proffered facts and determines that none alters its prior determination as to the LME's immunity from suit under the FSIA.

1.      Trademarks.

Plaintiffs argue that the fact that the LME has registered various trademarks in the United States shows that the LME's conduct is commercial within the meaning of the FSIA. In particular, plaintiffs point to the LME's trademarks for "London Metal Exchange"; "LMEsword," which is an electronic database that tracks transactions involving LME-warehoused aluminum; and "LME Clear," an in-U.S. electronic trading platform. (ECF No. 579 at 7.) Plaintiffs also, in their proposed amended complaint, allege that that International Commodity Services, Ltd. ("ICS") is a co-conspirator, and that its role in the conspiracy is to use the LMEsword database on behalf of several defendants. (See Proposed Third Amended Complaint, ECF No. 631 ex. A at ¶¶ 133-40 (filed under seal); Joint Amended Complaint of Plaintiffs Agfa Corporation and Agfa Graphics, N.V., Mag Instrument, Inc., and Eastman Kodak Company, ECF No. 608 at ¶¶ 92-97 (filed under seal).)

This argument is unpersuasive. First, trademarks are merely intellectual property. While trademarks may point to and refer to commercial activity, they do not themselves constitute commercial activity. The LMEsword database is used for monitoring and tracking LME-warehoused aluminum transactions, and as such is used by the LME to effectuate its public function of market regulation. The LME conduct here at issue is part of its regulatory function; the fact that LMEsword may

be used in connection with or to facilitate that conduct does not alter that characterization. In addition, plaintiffs also do not explain how LME Clear serves as evidence of commercial activity—they point only to the fact that the LME registered a trademark for LME Clear.

Second, the commercial activity exception is concerned only with activities relevant to plaintiffs' claims and theory of the case. See Saudi Arabia v. Nelson, 507 U.S. 349, 357 (1993). Plaintiffs' allegations with regard to the use of LMEsword concern its use by ICS, not the LME. Further, plaintiffs have not alleged that LME Clear is implicated in the conspiracy at all.

Accordingly, the LME's trademarks do not lead this Court to alter or change its prior determination as to the LME's immunity.

       2.    CFTC.

Plaintiffs also argue that this Court should reconsider its decision because the LME has applied to the CFTC to become a Foreign Board of Trade ("FBOT") and, as part of the application process, agreed to appoint an agent for service of process in the United States and to subject itself to CFTC regulations. Plaintiffs note that this application has drawn scrutiny from three U.S. senators, who would like the CFTC to investigate the LME for conduct relating to the conspiracy alleged in the case before this Court.

Plaintiffs implicitly argue that being an FBOT would entail the LME having a generally commercialized presence in the United States. However, the commercial activity exception is concerned only with whether the allegedly unlawful conduct is commercial in nature. It is of no import if an entity otherwise engages in

12

commercial activities unrelated to those at issue in the lawsuit, and the LME's

activities as an FBOT applicant are not at issue here. Further, even if being an

FBOT entails engaging in commercial activity in the United States, this would only

mean that the commercial activity exception could apply to future LME conduct, not

the past activities at issue in this case. Again, "commercial activity" for FSIA

purposes must be related to plaintiffs' allegations.

Second, it is not the case that the appointment of an individual by a foreign

sovereign or its organ for purposes of accepting service of process constitutes a

concession of or admission to jurisdiction. This is not how jurisdiction over a foreign

sovereign or its organ works, nor is it consistent with the legislative history of the

FSIA. See Blue Ridge Investments, L.L.C. v. Republic of Argentina, 735 F.3d 72, 84

(2d Cir. 2013) (citing Cabiri v. Gov't of Republic of Ghana, 165 F.3d 193, 201 (2d Cir.

1999) (implied waiver provision of FSIA must be construed narrowly); Paterson,

Zochonis (U.K.) Ltd. v. Compania United Arrow, 493 F. Supp. 621, 629 (S.D.N.Y.

1980) (designation of U.S. agent for receipt of service of process was not implied

waiver of immunity under FSIA).

Finally, concerns expressed by certain legislators are irrelevant to

qualification for legal immunity under the FSIA. Whether an entity is entitled to

organ status is based on how its government treats it, not how it is treated by the

United States or anyone within the U.S. See Filler, 378 F.3d at 217.

In any event, there is no reason why plaintiffs should have failed to bring this

application to the Court's attention until now, given that the LME first applied to

13

become an FBOT as early as 2012 and the factual materials submitted by plaintiffs relating to the LME's FBOT application are publicly available on the CFTC's website. (See ECF Nos. 594 & 594-4.) Plaintiffs' argument here is nothing but a meritless attempt to take a "second bite at the apple." Sequa, 156 F.3d at 144.

### 3.    Other considerations.

None of the other facts or considerations pointed to by plaintiffs in support of this motion (several of which plaintiffs' counsel simply failed to raise in their prior briefing) alter this Court's conclusion.

First, plaintiffs argue that the LME's disclosure to the Judicial Panel on Multidistrict Litigation that it is a "non-governmental corporate party" is an admission that it is not immune under the FSIA. This is not a new fact—the disclosure was filed 264 days before plaintiffs filed their joint opposition to the LME's motion to dismiss (see ECF Nos. 367, 594 ex. F), and the Court acknowledged and took into consideration the private non-governmental ownership of the LME in the Opinion (see Op. at 2, 22). Further, as the Court noted in the Opinion (Op. at 16-17), a foreign state need not have any ownership interest in an entity for it to be an "organ" of that state. See USX Corp. v. Adriatic Ins., Co., 345 F.3d 190, 209 (3d Cir. 2003). Accordingly, this fact does not alter the Court's determination that the LME is immune from plaintiffs' suit under the FSIA.

Second, plaintiffs have brought to the Court's attention several statements that indicate that the LME believes its warehousing rules are subject to U.K. or E.U. competition law. Plaintiffs argue that if the LME is subject to competition law in the U.K., then it must also be subject to U.S. antitrust law. This argument is

14

also unpersuasive. Whether the LME is subject to foreign competition law has no bearing on Congress's intent with regard to the extent of sovereign immunity under a U.S. statute, the FSIA. Even assuming, arguendo, that the LME is subject to U.K. or E.U. competition law, this would only matter insofar as it is an additional and, in the Court's view, minor consideration relevant to the Court's assessment of the fifth Filler factor, "how the entity is treated under foreign state law," 378 F.3d at 217, which is in any event not dispositive and not to be given any particular weight, see In re Terrorist Attacks on Sept. 11, 2001, 538 F.3d 71, 85 (2d Cir. 2008), abrogated on other grounds by Samantar v. Yousuf, 560 U.S. 305 (2010); Hausler v. JPMorgan Chase Bank, N.A., 845 F. Supp. 2d 553, 572–73 (S.D.N.Y. 2012). This consideration therefore does not alter the Court's conclusion that, on balance, the Filler factors establish that the LME is an organ of the U.K. government.

Third, plaintiffs argue that the LME has acknowledged that it is a private commercial entity and not a sovereign organ because it has recently engaged in lobbying activities in the United States. Specifically, plaintiffs note that the LME's head of business development recently visited Washington, D.C. and met with Senator Sherrod Brown, among others. (ECF No. 617.) However, the LME's lobbying activities in the United States are irrelevant to any of the Filler factors, and they cannot change the regulatory nature of the LME's setting of load-out rules. Further, not all organizations that engage in lobbying are commercial in nature, and not all lobbying is done for commercial ends. And again, "commercial activity" for FSIA purposes must be related to the alleged conspiracy itself.

15

Lastly, plaintiffs' proposed amended complaints (ECF Nos. 613, 623) do not set forth any additional factual allegations not previously brought to the Court's attention or highlighted in the briefing for the instant motion that alter this Court's determination as to the LME's immunity from suit under the FSIA. Plaintiffs have drafted their proposed amended complaints with the benefit of having obtained some document discovery from defendant Metro International Trade Services, L.L.C. and the defendants affiliated with Goldman Sachs, as well as a more detailed review of the publicly available information and statements relating to this case, which includes press releases, news articles, other media reports, data made publicly available by the LME, historical data regarding aluminum physical and forward contract prices, Congressional testimony, economic analysis, and expert analysis. (See ECF No. 613 ex. 2; ECF No. 623 ¶ 1 n.1.) Although the Court denied plaintiffs leave to replead against the LME, it has nevertheless reviewed the allegations relating to the LME in plaintiffs' amended complaints as if pursuant to Rule 15. To the extent plaintiffs' factual allegations are relevant to this Court's determination that the LME is an organ of the U.K. Government, the Court has already discussed them in this opinion.

IV.   CONCLUSION

For the reasons set forth above, plaintiffs' joint motion for reconsideration of the Court's dismissal of the LME on foreign sovereign immunity grounds without leave to replead and its denial of limited discovery from the LME is DENIED.

The Clerk of Court is directed to close the motion at ECF No. 578.  The Clerk of Court is also directed to close the following member-case motions: ECF No. 70 in no. 14-cv-211; ECF No. 87 in 14-cv-217; ECF No. 160 in no. 14-cv-3116.

SO ORDERED.

Dated:        New York, New York
              November 7, 2014

                                        _____
                                        KATHERINE B. FORREST
                                        United States District Judge