

123 Justison Street
Wilmington, DE 19801
Tel: 302-622-7000 • Fax: 302-622-7100

Grant & Eisenhofer P.A.

485 Lexington Avenue
New York, NY 10017
Tel: 646-722-8500 • Fax: 646-722-8501
www.gelaw.com

1920 L Street, N.W., Suite 400
Washington, DC 20036
Tel: 202-386-9500 • Fax: 202-386-9505

VIA ECF AND HAND

November 20, 2014

The Honorable Katherine B. Forrest
United States District Judge
United States District Court for the
 Southern District of New York
500 Pearl Street, Room 1950
New York, New York 10007

      Re:    *In re Aluminum Warehousing Antitrust Litigation* (13-md-2481 (KBF))
             Direct Purchaser Plaintiffs (14 Civ. 3116 (KBF))

Dear Judge Forrest:

      Direct Purchaser Plaintiffs write to provide the Court with a copy of a United States Senate 396-page, 2,565-footnote, report released this morning, titled WALL STREET BANK INVOLVEMENT WITH PHYSICAL COMMODITIES ("Senate Report").[1]

      The Senate Report "scrutinizes Goldman's involvement with aluminum, including its acquisition of Metro International Trade Services LLC."[2]

      Facts and circumstances concerning aluminum warehousing and trading by Defendants during the Class Period are discussed, *inter alia*, in Part IV.D. of the Senate Report ("Goldman Involvement with Aluminum"), at pages 169-226.

      There is also discussion in the introductory sections. *See* Part I ("Executive Summary," pages 1-12, and Part II.B ("Risks Associated with Bank Involvement in Physical Commodities," pages 34-42).

---

[1] *See* United States Senate, Permanent Subcommittee on Investigations of the Committee on Homeland Security and Governmental Affairs, Majority and Minority Staff *Report*, 113th Cong., WALL STREET BANK INVOLVEMENT WITH PHYSICAL COMMODITIES (released Nov. 20, 2014), *available at* http://www.hsgac.senate.gov/download/report-wall-street-involvement-with-physical-commodities

[2] *Id.* at 2.

Hon. Katherine B. Forrest
November 20, 2014
Page 2 of 3

This action is referenced a number of times in the report. *See* Senate Report at 175 n.1041; 176 n.1043; 190 n.1127; 191 n.1131; 192 n.1140; 206 n.1249; 212 n.1297.

Although the Court may take judicial notice of the Senate Report,[3] Plaintiffs respectfully note as follows:

First, the Senate Subcommittee investigation is continuing today including with testimony from witnesses whose contemporaneous emails are quoted in Plaintiffs' proposed pleading.

Second, the attached report and still-ongoing revelations are based upon extensive documents, interviews, testimony, and other materials that were not available to Plaintiffs when they filed their proposed amended pleading. (Again, Plaintiffs had only approximately 10% of the documents that the Goldman Defendants produced to the government, had no documents produced by any other Defendants, and had none of the new Senate interviews and testimony when they filed their proposed amended pleading.)

Third, Plaintiffs believe these new materials provide additional facts plausibly corroborating and extensively supplementing Plaintiffs detailed allegations of a web of agreements among Defendants and their co-conspirators to inflate aluminum premiums[4] and prices, and share Defendants' profits therefrom with their alleged co-conspirators.

Obviously, case management issues arise from these extensive new and on-going revelations that were unavailable to Plaintiffs when they submitted their proposed amended pleading. Although Plaintiffs believe their pleading plausibly states the claims alleged, Plaintiffs

---

[3] *See Federal Election Com. v. Hall-Tyner Election Campaign Committee*, 524 F. Supp. 955, 959 (S.D.N.Y. 1981) ("The court takes judicial notice of the Senate Report."). *Accord In re September 11 Litig.*, 751 F.3d 86, 90 (2d Cir. N.Y. 2014) (taking judicial notice of facts contained within the 9/11 Commission Report); *In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d 170, 172 (2d Cir. 2013) (citing Staff Report of Senate Permanent Subcommittee on Investigations, Committee on Homeland Security and Governmental Affairs, 110th Cong., EXCESSIVE SPECULATION IN THE NATURAL GAS MARKET (2007)) (referenced in this current Senate Report at 1 (explaining that prior Senate Report "expos[ed] a $6 billion manipulation of natural gas prices by a hedge fund called Amaranth").

[4] *See e.g.*, Senate Report pp. 209-214 (recounting numerous sources of Goldman's profits from increases in the Midwest premium, including (1) "at least 13" derivative transactions that profited from increases in the Midwest premium; (2) holdings of more than 1.5 million tons of aluminum; and (3) repeated participations in the profits of other persons from increases in the Midwest premium).

Hon. Katherine B. Forrest<br>
November 20, 2014<br>
Page 3 of 3

must respectfully request that the Court schedule a status conference to explore the case management issues and Plaintiffs' proposed pleading.

Respectfully submitted,

*[signature]*

Linda P. Nussbaum

cc: Counsel of Record via ECF