**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
IN RE ALUMINUM WAREHOUSING :
ANTITRUST LITIGATION : MDL No. 2481
:
This Document Relates To: : Master Docket No.
: 13-md-2481-KBF-RLE
First Level Purchaser Plaintiffs (14 Civ. 3116) :
:
AGFA Corporation, et al. v. The Goldman Sachs Group :
Inc., et al. (14 Civ. 0211) :
:
Mag Instrument Inc. v. The Goldman Sachs Group Inc., :
et al. (14 Civ. 0217) :
:
Eastman Kodak Company v. The Goldman Sachs Group, :
Inc. et al. (14 Civ. 6849) :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO CERTIFY THE COURT'S MARCH 26, 2015 ORDER FOR
INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...............................................................................................................1

ARGUMENT .....................................................................................................................2

I. THE ORDER INVOLVES A CONTROLLING QUESTION OF LAW. ............................2

II. SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION CLEARLY
    EXIST HERE. .......................................................................................................3

    A.  This Court's Extension of *McCready* to Plaintiffs Whose Alleged Injury
        Was Merely "Collateral Damage" Is an Issue of First Impression for the
        Second Circuit. ...........................................................................................4
    B.  The Court's Conclusion That Collateral Damage Is Sufficient for Antitrust
        Injury Conflicts with Existing Authority. ...................................................8

III. CERTIFICATION WOULD MATERIALLY ADVANCE TERMINATION OF
     THE LITIGATION. ..............................................................................................11

CONCLUSION ................................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Assoc. Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters*,
  459 U.S. 519 (1983) ................................................................................................................7

*Blue Shield of Virginia v. McCready*,
  457 U.S. 465 (1982) ..................................................................................................4, 6, 7, 8

*Crimpers Promotions Inc. v. Home Box Office, Inc.*,
  724 F.2d 290 (2d Cir. 1983) ....................................................................................................8

*Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.*,
  253 F. Supp. 2d 262 (D. Conn. 2003) ......................................................................................9

*In re Aluminum Warehousing Antitrust Litig.*,
  2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014) .....................................................................3, 4

*In re Aluminum Warehousing Antitrust Litig.*,
  2015 WL 1378946 (S.D.N.Y. Mar. 26, 2015) ................................................................ *passim*

*In re Crude Oil Commodity Futures Litig.*,
  913 F. Supp. 2d 41 (S.D.N.Y. 2012) .......................................................................................9

*In re Dynex Capital, Inc. Sec. Litig.*,
  2006 WL 1517580 (S.D.N.Y. June 2, 2006) .........................................................................11

*In re Lloyd's Am. Trust Fund Litig*,
  1997 WL 458739 (S.D.N.Y. Aug. 12, 1997) ....................................................................3, 11

*Klinghoffer v. S.N.C. Achille Lauro*,
  921 F.2d 21 (2d Cir. 1990) ............................................................................................2, 3, 11

*LNC Invs., Inc. v. First Fid. Bank*,
  2000 WL 461612 (S.D.N.Y. Apr. 18, 2000) ...........................................................................3

*Province v. Cleveland Press Publ'g Co.*,
  787 F.2d 1047 (6th Cir. 1986) ............................................................................................9, 10

*SAS of Puerto Rico, Inc. v. Puerto Rico Tel. Co.*,
  48 F.3d 39 (1st Cir. 1995) .......................................................................................................7

*Serpa Corp. v. McWane, Inc.*,
  199 F.3d 6 (1st Cir. 1999) .......................................................................................................7

**STATUTES**

28 U.S.C. § 1292(b) ................................................................................................................ *passim*

## INTRODUCTION

Defendants respectfully request that the Court certify its March 26, 2015 Order ("March 26 Order") for interlocutory review pursuant to 28 U.S.C. § 1292(b). The Court's ruling that the First Level Purchasers ("FLPs") and Individual Plaintiffs Mag, Agfa and Kodak ("IPs") have alleged antitrust injury arising from their surviving conspiracy claim is plainly a controlling question of law as to which there is substantial ground for difference of opinion. If the Second Circuit agrees with defendants' position, and holds that the FLPs and IPs lack antitrust injury, then this litigation will be terminated.

This controlling question of law already is before the Second Circuit because of the pending appeals by the Commercial End Users and Consumer End Users (collectively, the "End Users") of the Court's dismissal of their complaints. A central question in those appeals will be whether the End Users have adequately alleged antitrust injury in connection with their antitrust conspiracy claims. This Court's March 26 Order inevitably will be front and center in those appeals because both sides will argue about the correctness of that decision and its application, if any, to the End User cases. Certifying the March 26 Order for immediate appeal thus will enable the Second Circuit comprehensively to resolve the antitrust injury issue at one time with all of the various plaintiffs before it. Conversely, declining to certify the March 26 Order could result in additional motion practice in this Court concerning the impact in these cases of the Second Circuit's decision in the End Users' appeals. For these reasons, certification of an interlocutory appeal will promote judicial efficiency by avoiding piecemeal appeals of and further motion practice concerning the same antitrust injury issue in all of the cases before the Court.

**ARGUMENT**

Certification under Section 1292(b) is appropriate if the order "involves a controlling question of law as to which there is a substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Court's March 26 Order easily meets that standard. Indeed, whether the FLPs and IPs have alleged antitrust injury is precisely the type of controlling question of law that a court should certify. The case for certification is even more compelling here because the same issue already is before the Second Circuit as a result of the pending appeals in two related cases. If the Court certifies its March 26 Order, then all appeals can proceed in tandem, and the Second Circuit can issue a comprehensive decision that addresses this controlling question of law in all cases.

**I.    THE ORDER INVOLVES A CONTROLLING QUESTION OF LAW.**

Whether the FLPs and IPs have adequately alleged antitrust injury is a controlling question of law. In the Second Circuit, "it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990). There can be no question that reversal of this Court's holding in its March 26 Order that the FLPs and IPs have adequately pled antitrust injury would terminate this litigation.

As this Court has correctly stated, antitrust standing, of which antitrust injury is an indispensable part, "is 'a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement [the court] must dismiss it as a matter of law.'" *In re Aluminum Warehousing Antitrust Litig.*, 2015 WL 1378946, at *11 (S.D.N.Y. Mar. 26, 2015) (quoting *Gatt Commc'ns Inc. v. PMC Assocs. LLC*, 711 F.3d 68, 75 (2d Cir. 2013)). Indeed, the Court already has dismissed the End Users' claims without leave to replead because those

- 2 -

plaintiffs failed to allege that they suffered antitrust injury or that they are efficient enforcers of the antitrust laws.  In so ruling, the Court concluded that it would be impossible for those plaintiffs to satisfy those pleading requirements.  *In re Aluminum Warehousing Antitrust Litig.*, 2014 WL 4277510, at *21-23, *39 (S.D.N.Y. Aug. 29, 2014).  A ruling by the Second Circuit that the FLPs and IPs have not alleged antitrust injury likewise would result in the dismissal of this entire litigation with prejudice.

As this Court has recognized, the antitrust injury issue in these cases is not merely a matter of the sufficiency of the allegations in the particular complaints.  Instead, these cases raise a "difficult question of substantive law," and therefore are appropriate for interlocutory review.  *In re Lloyd's Am. Trust Fund Litig.*, 1997 WL 458739, at *5 (S.D.N.Y. Aug. 12, 1997).  Moreover, immediate appellate review would serve the interests of judicial economy and efficiency.  Because antitrust injury is a pleading-stage inquiry and the allegations of the complaints are accepted as true, whether the plaintiffs in these cases have alleged antitrust injury presents a "single, discrete question which will not require the Court of Appeals to master a complicated evidentiary record."  *LNC Invs., Inc. v. First Fid. Bank*, 2000 WL 461612, at *3 (S.D.N.Y. Apr. 18, 2000).  It is even more efficient to present that question to the Second Circuit now given that the same issue is already before that court in two closely related aluminum cases.

## II. SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION CLEARLY EXIST HERE.

Substantial ground for difference of opinion exists where "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit."  *In re Lloyd's*, 1997 WL 458739, at *5; *see also Klinghoffer*, 921 F.2d at 25 (there is substantial ground for difference of opinion where "the issues are difficult and of first impression").  Both tests are met here.

### A. This Court's Extension of *McCready* to Plaintiffs Whose Alleged Injury Was Merely "Collateral Damage" Is an Issue of First Impression for the Second Circuit.

This Court held in both its August 29 and March 26 opinions that plaintiffs in these cases are neither competitors nor consumers in any relevant market. *In re Aluminum Warehousing*, 2015 WL 1378946, at *13, *14; *In re Aluminum Warehousing*, 2014 WL 4277510, at *1. Relying on *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982), this Court next analyzed whether plaintiffs' alleged injuries were "inextricably intertwined with the injury that the conspirators sought to inflict." *In re Aluminum Warehousing*, 2015 WL 1378946, at *13-14. To meet that test, the Court held that plaintiffs must allege that they were "'manipulated or utilized' by [d]efendants as a fulcrum, conduit or market force to injure competitors or participants *in the relevant product and geographical market*.'" *Id.* at *13 (quoting *Province v. Cleveland Press Publ'g Co.,* 787 F.2d 1047, 1052 (6th Cir. 1986)) (emphasis added).

In both of its decisions, the Court repeatedly acknowledged that the injury that plaintiffs allege here is merely "collateral damage" from defendants' purported scheme. *In re Aluminum Warehousing*, 2015 WL 1378946, at *7, *13, *14 & n.26. In fact, the Court stated that "impacting the price that real world users of aluminum may pay is not the focus of defendants' alleged play—it is merely the play's by-product." *Id.* at *7. The Court nonetheless held that plaintiffs had alleged antitrust injury because they were the "fulcrum" that creates "the market opportunity underlying both metal storage and warrant trading for aluminum." *Id*. at *13. According to the Court, "[p]laintiffs are the real world users whose demand for aluminum creates the market opportunity for aluminum sales; thus, were it not for their need to use aluminum as an input in their production processes, it would not be possible for the financial trading defendants to trade aluminum as a commodity." *Id.* The Court stressed, however, that plaintiffs' alleged injury is "ultimately collateral damage" because "impacting the price that real

world users of aluminum may pay is not the focus of defendants' alleged financial play." *Id*. at *7.

The Court did not find, because plaintiffs did not allege, that defendants *used* plaintiffs to increase the Midwest Premium or to harm competition in the alleged relevant markets (the markets for warehouse services and for physical aluminum). The complaints instead allege that defendants used holders of cancelled warrants in their warehouses to increase the Midwest Premium and harm competition by generating and sustaining warehouse load-out queues for aluminum. The Court found that plaintiffs adequately alleged that they had suffered antitrust injury because the increase in the Midwest Premium that defendants allegedly caused by engaging in such warehouse-related conduct permitted defendants to profit in some financial-instruments market in some unspecified way. *Id*. at *7 & n.15. Here, too, however, the persons injured in that market (which is not alleged to be a relevant market in these cases) are not plaintiffs; plaintiffs do not claim that they were injured as a result of their purchases of any aluminum-based financial instruments. The Court therefore did not find that defendants used plaintiffs to injure competitors or participants in any relevant market, but that plaintiffs' ordinary course of business role as participants in the physical aluminum market was enough to qualify them for antitrust injury because the physical market underpins any financial-instruments market where defendants allegedly profited.

The Court acknowledged that this conclusion was not dictated by existing precedent. The Court candidly stated:

> Ultimately, this case does not fit into any traditional box [and] other antitrust cases involving commodities trading have not examined with precision market structure and anticompetitive acts analogous to those at issue here. These are unusual facts for an antitrust case to be sure: where the commodity trading occurs at one level, warehousing is merely a means to an end, and the plaintiffs' injury is collateral damage.

*In re Aluminum Warehousing*, 2015 WL 1378946, at *14 (footnote omitted). The Court found only three antitrust cases "in which alleged purposeful commodity trading inefficiency has led to collateral damage in physical markets," but stated it "does not necessarily agree with the manner in which the courts in those cases described the anticompetitive condition, conduct or markets." *Id.* at *14 n.26 (citing *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469 (7th Cir. 2002); *In re Crude Oil Commodity Litig.*, 913 F. Supp. 2d 41 (S.D.N.Y. 2012); and *Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.*, 253 F. Supp. 2d 262 (D. Conn. 2003)). Given this Court's remarks, there can be no doubt here that there is substantial ground for difference of opinion on the controlling question of law presented by these cases.

The Second Circuit has not definitively answered the important questions raised by these cases related to antitrust injury: what does it mean for defendants to manipulate or utilize the plaintiffs as a "means" to achieve, or "fulcrum" to effectuate, the injury to competitors or participants in the restrained market? Can defendants be found to have used or manipulated the plaintiffs when defendants had no relevant interactions with them to effectuate their alleged scheme? There is at least a reasonable possibility that the Second Circuit will conclude that plaintiffs' injury is not inextricably intertwined with a market injury under *McCready* unless the defendants actually used plaintiffs to injure competitors or participants in the market where the restraint occurred (as opposed to the current situation where plaintiffs' alleged injury is merely collateral damage).

Nothing about the facts of *McCready* compels the conclusion that antitrust injury exists in these cases. McCready was a *consumer in the allegedly restrained market* (the market for psychotherapeutic services), and one of the alleged conspirators was her own insurance company that refused to reimburse her for payments that she made to psychologists. *McCready*, 457 U.S.

at 467-70, 480-81.  The defendants argued in that case that only competitors of the conspirators suffered antitrust injury, and that injuries to consumers like McCready, who were not the target of the conspiracy, were too remote to constitute antitrust injury.  *Id.* at 478-81.  The Supreme Court rejected this argument, holding that as a consumer in the allegedly restrained market, McCready's injuries were inextricably intertwined with the injury to the competitors of the conspirators and the psychotherapy market itself.  *Id*. at 483-84.

This is precisely how the First Circuit reads *McCready*.  The First Circuit has twice held that, because McCready was a consumer in the allegedly restrained market, her injury did not expand the categories of plaintiffs who suffer antitrust injury.  *Serpa Corp. v. McWane, Inc.*, 199 F.3d 6, 13 (1st Cir. 1999) (because McCready was a consumer in the allegedly restrained market, her injury did not expand the categories of plaintiffs who suffer antitrust injury ); *SAS of Puerto Rico, Inc. v. Puerto Rico Tel. Co.*, 48 F.3d 39, 45-46 (1st Cir. 1995) (same).  And, just one year after *McCready* was decided, the Supreme Court itself characterized that case as merely confirming that consumers in the relevant market can suffer antitrust injury.  *Assoc. Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters*, 459 U.S. 519, 538 (1983) (citing *McCready* as example of a case that "emphasized the central interest in protecting the economic freedom of participants in the relevant market").  It is, of course, undisputed that the FLPs and IPs are neither participants nor consumers in either of the allegedly restrained markets—the warehousing or financial-instruments markets.

In sum, the antitrust injury question presented in these cases is an open question under both Supreme Court and Second Circuit precedent, and the interests of judicial economy and efficiency would be best served by a single appeal of this Court's August 29 and March 26 decisions.  This Court thus should certify its March 26 Order for an immediate appeal under

Section 1292(b) so that the Second Circuit can definitively resolve the antitrust injury question in a single appeal involving all complaints filed by all aluminum plaintiffs. In the absence of a Section 1292(b) certification, this important issue likely will be presented to the Second Circuit in piecemeal fashion—first in the End User cases under the allegations and the state-law claims at issue in those complaints and then again in these cases under the amended allegations and federal claims at issue in the FLP and IP complaints.

### B. The Court's Conclusion That Collateral Damage Is Sufficient for Antitrust Injury Conflicts with Existing Authority.

Although the question of whether the Court correctly extended *McCready* to circumstances in which plaintiffs' alleged injury is only a collateral by-product of defendants' purported scheme is an issue of first impression in this Circuit, defendants respectfully submit that the Court's ruling conflicts with cases that have considered similar issues.

First, no court in this Circuit has held that collateral damage is enough to allege antitrust injury. In the cases on which plaintiffs have relied, the defendants actually used plaintiffs to injure the market they were attempting to restrain.

- *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982): As noted above, plaintiff was a subscriber to an insurance plan that was an alleged conspirator, and her injury arose from defendant's refusal to reimburse her for psychotherapy services provided by psychologists. This refusal to reimburse not only injured plaintiff, but also was the means by which the conspirators disadvantaged psychologists in the marketplace. The conspirators thus used McCready to injure psychologists.

- *Crimpers Promotions Inc. v. Home Box Office, Inc.*, 724 F.2d 290 (2d Cir. 1983): The defendants, cable programmers HBO and Showtime, orchestrated

- 8 -

a boycott of plaintiff's trade show that would have brought together cable programmers and local TV stations whom defendants wanted to keep apart. Plaintiff's injury arose from the failed trade show, *i.e.*, defendants used the plaintiff to keep cable programmers and local TV stations apart and maintain their market dominance.

- *Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.*, 253 F. Supp. 2d 262 (D. Conn. 2003): The defendants sought to inflate the price of butter futures as part of a scheme to sell milk and cream to plaintiffs at inflated prices. To accomplish their goal, defendants intentionally paid inflated prices for butter futures and then overcharged plaintiffs to recoup the losses that they had intentionally incurred. Plaintiffs thus were the intended target of defendants' scheme.

- *In re Crude Oil Commodity Litigation,* 913 F. Supp. 2d 41 (S.D.N.Y. 2012): The purpose of defendants' scheme was to profit on futures trades. Plaintiffs were traders who purchased the offsetting side (either long or short) of defendants' trades. Defendants used plaintiffs to achieve the profit that was the conspiracy's objective.

Here, plaintiffs have not alleged, and this Court did not find, that defendants used plaintiffs to injure competitors or consumers in either the alleged warehousing market or the purported (but not alleged in the complaints) financial-instruments market.

Second, the Sixth Circuit reached the opposite conclusion in *Province v. Cleveland Press Publishing Co.*, 787 F.2d 1047 (6th Cir. 1986), holding that harm that is a tangential by-product of an antitrust violation does not constitute antitrust injury. In that case, former employees of the

*Cleveland Press* sued after they lost their jobs when the *Cleveland Press* closed down.  *Id*. at 1047.  Plaintiffs alleged that the *Cleveland Press* and another newspaper, the *Cleveland Plain Dealer*, had conspired to shut down the *Cleveland Press* and allow the *Cleveland Plain Dealer* to monopolize the Cleveland newspaper market by acquiring assets from the *Cleveland Press*.  *Id.* at 1050.  The Sixth Circuit held that plaintiffs did not have antitrust standing, explaining that "[a]n inextricably intertwined injury is one that results from the manipulation of the injured party *as a means to carry out the restraint of trade in the product market.*"  *Id.* at 1052 (emphasis added).  The court concluded that plaintiffs "were not manipulated in any way to cause the Press to cease publication; their injury was, at best, a result of—rather than a means to or cause of—the Press' demise."  *Id.*  As the court explained, although plaintiffs' loss of their jobs was an effect of the *Cleveland Press*'s closing its doors, it was merely a "tangential by-product" of the alleged conspiracy.  *Id.* (internal quotation marks omitted).

Likewise here, this Court found that plaintiffs' injury was merely a "by-product" of the alleged aluminum conspiracy.  *See In re Aluminum Warehousing*, 2015 WL 1378946, at *7 ("[I]mpacting the price that real world users of aluminum may pay is not the focus of defendants' alleged financial play—it is merely the play's by-product.").  Moreover, although there would be no aluminum futures market if not for the physical aluminum market in which plaintiffs made their purchases, the plaintiffs in *Cleveland Press* equally could have argued that there would have been no assets for the *Cleveland Plain Dealer* to buy if plaintiffs had not worked at the *Cleveland Press*.  The Sixth Circuit's decision thus clearly constitutes conflicting authority that supports certification of an immediate appeal.

### III. CERTIFICATION WOULD MATERIALLY ADVANCE TERMINATION OF THE LITIGATION.

It is beyond dispute that certification of the antitrust injury question would materially advance the termination of this litigation.  If the Second Circuit agrees with defendants, and holds that the FLPs and IPs lack antitrust injury, then these cases are over.  *See In re Lloyd's*, 1997 WL 458739, at *5 (granting Section 1292(b) certification where reversal would "result in dismissal" of entire litigation and would "curtail the consumption of substantial resources in the district court").

This complex MDL proceeding presents precisely the type of "exceptional circumstances" that Section 1292(b) was designed to address.  *Klinghoffer*, 921 F.2d at 25.  "The institutional efficiency of the federal court system is among the chief concerns underlying § 1292(b).  Because the district court's efficiency concerns are greatest in large, complex cases, certification may be more freely granted in so-called 'big' cases," like this one.  *Lloyd's*, 1997 WL 458739, at *4 (citations omitted).  That is particularly true where, as here, a large multidistrict litigation will involve prolonged and expensive discovery and extensive class-certification proceedings.  *See In re Dynex Capital, Inc. Sec. Litig.*, 2006 WL 1517580, at *3 (S.D.N.Y. June 2, 2006) ("[S]ubstantial resources may be expended in vain both by the parties and this court if [this court's] initial conclusion proves incorrect.").

The efficiency of an interlocutory appeal is even greater here than in the typical MDL proceeding because the same antitrust injury issue already is before the Second Circuit as a result of the End Users' appeals.  It is most efficient for the Second Circuit to decide that issue once in a single appeal involving all of the assorted plaintiffs, allegations and statutes that are at issue in the various aluminum actions.  In the absence of such a consolidated appeal, this Court may be faced with protracted disputes about the proper application in the FLP and IP cases of the Second

### III. CERTIFICATION WOULD MATERIALLY ADVANCE TERMINATION OF THE LITIGATION.

It is beyond dispute that certification of the antitrust injury question would materially advance the termination of this litigation.  If the Second Circuit agrees with defendants, and holds that the FLPs and IPs lack antitrust injury, then these cases are over.  *See In re Lloyd's*, 1997 WL 458739, at *5 (granting Section 1292(b) certification where reversal would "result in dismissal" of entire litigation and would "curtail the consumption of substantial resources in the district court").

This complex MDL proceeding presents precisely the type of "exceptional circumstances" that Section 1292(b) was designed to address.  *Klinghoffer*, 921 F.2d at 25.  "The institutional efficiency of the federal court system is among the chief concerns underlying § 1292(b).  Because the district court's efficiency concerns are greatest in large, complex cases, certification may be more freely granted in so-called 'big' cases," like this one.  *Lloyd's*, 1997 WL 458739, at *4 (citations omitted).  That is particularly true where, as here, a large multidistrict litigation will involve prolonged and expensive discovery and extensive class-certification proceedings.  *See In re Dynex Capital, Inc. Sec. Litig.*, 2006 WL 1517580, at *3 (S.D.N.Y. June 2, 2006) ("[S]ubstantial resources may be expended in vain both by the parties and this court if [this court's] initial conclusion proves incorrect.").

The efficiency of an interlocutory appeal is even greater here than in the typical MDL proceeding because the same antitrust injury issue already is before the Second Circuit as a result of the End Users' appeals.  It is most efficient for the Second Circuit to decide that issue once in a single appeal involving all of the assorted plaintiffs, allegations and statutes that are at issue in the various aluminum actions.  In the absence of such a consolidated appeal, this Court may be faced with protracted disputes about the proper application in the FLP and IP cases of the Second

Circuit's ruling in the End User cases. Beyond the aluminum cases, the zinc actions currently pending before this Court may raise similar antitrust injury issues. If the Second Circuit holds that first-level purchasers of aluminum cannot plead antitrust injury, such a ruling could very well end the zinc litigations as well.

## CONCLUSION

Defendants respectfully request that the Court certify its March 26, 2015 Order for interlocutory appeal under 28 U.S.C. § 1292(b).

Dated:   New York, New York
         April 24, 2015

Respectfully submitted,

/s/
Robert D. Wick (admitted pro hac vice)
(rwick@cov.com)
Henry B. Liu (hliu@cov.com)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, N.W.
Washington, D.C.  20001
Telephone:  (202) 662-6000

*Attorneys for Defendants J.P. Morgan Securities plc and Henry Bath, LLC*

/s/
Richard C. Pepperman, II (peppermanr@sullcrom.com)
Suhana S. Han (hans@sullcrom.com)
M. David Possick (possickmd@sullcrom.com)
Yavar Bathaee (bathaeey@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Attorneys for Defendants Goldman, Sachs & Co., J. Aron & Company, Metro International Trade Services LLC and Mitsi Holdings LLC*

| | |
|---|---|
| /s/ | /s/ |
| Eliot Lauer (elauer@curtis.com) | John M. Nannes (admitted pro hac vice) |
| Jacques Semmelman (jsemmelman@curtis.com) | (john.nannes@skadden.com) |
| Chelsea McLean (chelsea.mclean@curtis.com) | John H. Lyons (john.h.lyons@skadden.com) |
| CURTIS, MALLET-PREVOST, COLT & MOSLE LLP | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| 101 Park Avenue | 1440 New York Avenue, N.W. |
| New York, New York  10178 | Washington, D.C.  20005 |
| Telephone:  (212) 696-6000 | Telephone:  (202) 371-7500 |
| Facsimile:  (212) 697-1559 | Facsimile:  (202) 661-9191 |
| | |
| *Attorneys for Defendant Glencore Ltd.* | *Attorneys for Defendant Pacorini Metals USA, LLC* |