**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ALUMINUM WAREHOUSING ANTITRUST LITIGATION | MDL No. 2481 |
| | Master Docket No. |
| | 13 MD 2481 (KBF) |
| This Document Relates To: | |
| All Actions. | **ECF CASE** |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO CERTIFY THE COURT'S MARCH 26, 2015 ORDER
FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. §1292(b)**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

**A.** The Order Does Not Involve a "Pure Question of Law" as to Plaintiffs' Antitrust Standing and Is Therefore Inappropriate for Interlocutory Appeal ..................................... 5

**B.** There Is No Substantial Grounds for Difference of Opinion ................................................ 9

    **1.** The Court Followed Supreme Court and Second Circuit Precedent in Finding that Plaintiffs Properly Plead Antitrust Standing ....................................... 9

    **2.** There Is No Conflicting Authority Amounting to Substantial Grounds for a Difference of Opinion ......................................................................................... 11

**C.** There Is Little or No Efficiency to Be Gained from Certification ..................................... 14

    **1.** Plaintiffs' Antitrust Standing and the End Users' Antitrust Standing Are Two Different Questions ......................................................................................... 14

    **2.** The End User Appeals Involve a Multitude of Issues Not Presented Here .......... 16

    **3.** There Is No Other Efficiency to Be Gained by Interlocutory Appeal .................. 17

CONCLUSION .................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

<small>CASES</small>

*Ahrenholz v. Bd. of Trustees of Univ. of Illinois,*
219 F.3d 674 (7th Cir. 2000) (Posner, J.) ............................................................3, 5

*Allied Princess Bay Co. # 2 v. Atochem N. Am., Inc.,*
No. CV-91-4146, 1992 WL 135235 (E.D.N.Y. May 29, 1992) ............................12

*Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*
("*AGC*"), 459 U.S. 519 (1983) ................................................................................9

*Atl. Richfield Co. v. USA Petroleum Co.,*
495 U.S. 328 (1990) ........................................................................................9, 8

*Blue Shield of Virginia v. McCready*
("*McCready*"), 457 U.S. 465 (1982) ......................................................... *passim*

*Bradley v. Jusino,*
No. 04 Civ. 8411, 2008 WL 4566792 (S.D.N.Y. Oct. 14, 2008) ............................5

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
429 U.S. 477 (1977) ........................................................................................7, 9

*Century Pac., Inc. v. Hilton Hotels Corp.,*
574 F. Supp. 2d 369 (S.D.N.Y. 2008) ................................................................2, 5

*Colon ex rel. Molina v. BIC USA, Inc.,*
No. 00-cv-366 (SAS), 2001 WL 88230 (S.D.N.Y. Feb. 1, 2001) ........................13

*Consol. Edison, Inc., v. NE Utils.,*
318 F. Supp. 2d 181 (S.D.N.Y. 2004), *reversed in part on other grounds,* 426 F.3d
524 (2d Cir. 2005) ................................................................................................4

*Coopers & Lybrand v. Livesay,*
437 U.S., 463 (1978) ............................................................................................3

*Crimpers Promotions Inc. v. Home Box Office, Inc.,*
724 F.2d 290 (2d Cir. 1983) ..........................................................................10, 11

*Daniel v. Am. Bd. Of Emergency Med.,*
428 F.3d 408 (2d Cir. 2005) ................................................................................10

*Fed. Deposit Ins. Corp. v. First Nat'l Bank of Waukesha, Wis.,*
604 F. Supp. 616 (E.D. Wis. 1985) ....................................................................10

*Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co.*,
  No. 01-cv-6217, 2003 WL 22384797 (W.D.N.Y. Sept. 4, 2003)...........................................12

*Gatt Commc'ns Inc. v. PMC Assocs. L.L.C.*,
  711 F.3d 68 (2d Cir. 2013)...........................................................................................9

*Gelboim v. Bank of Am. Corp.*,
  135 S. Ct. 897, 190 L. Ed. 2d 789 (2015) ...............................................................17

*Gottesman v. General Motors Corp.*,
  268 F.2d 194 (2d Cir. 1959)......................................................................................4

*Harriscom Svenska AB v. Harris Corp.*,
  947 F.2d 627 (2d Cir. 1991).....................................................................................18

*Hart v. Rick's Cabaret Int'l, Inc.*,
  No. 09 Civ. 3043, 2014 WL 7183956 (S.D.N.Y. Dec. 17, 2014) ...........................................3

*Hulmes v. Honda Motor Co., Ltd.*,
  936 F. Supp. 195 (D.N.J. 1996), *aff'd*, 141 F.3d 1154 (1998)...................................5

*Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.*,
  253 F. Supp. 2d 262 (D. Conn. 2003) .....................................................................11

*In re Adelphia Commc'ns Corp.*,
  No. 02-41729 (REG), 2008 WL 361082 (S.D.N.Y. Feb. 11, 2008) .........................................4

*In re Aluminum Warehousing Antitrust Litig.*,
  No. 13-md-2481 (KBF), 2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014).....................6, 7, 15

*In re Bridgestone/Firestone, Inc.*, *Tires Prods. Liab. Litig.*,
  212 F. Supp. 2d 903 (S.D. Ind. 2002) ................................................................5, 10

*In re Complete Retreats, LLC*,
  No. 07-mc-152, 2008 WL 220752 (D. Conn. Jan. 23, 2008) ..................................................14

*In re Crude Oil Commodity Litigation*,
  913 F. Supp. 2d 41 (S.D.N.Y. 2012)........................................................................11

*In re DDAVP Direct Purchaser Antitrust Litig.*,
  585 F.3d 677 (2d Cir. 2009).........................................................................11, 12, 13

*In re Flor*,
  79 F.3d 281 (2d Cir. 1996) (*per curiam*) ..............................................................10

*In re Goldman Sachs Grp., Inc. Securities Litig.*,
  No. 10 Civ. 3461 (PAC), 2014 WL 5002090 (S.D.N.Y. Oct 7, 2014)......................................5

*In re Manhattan Inv. Fund Ltd.*,
    288 B.R. 52 (S.D.N.Y. 2002)................................................................4

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,
    No. MDL 1358 (SAS), 2005 WL 39918, at *2 (S.D.N.Y. Jan. 6, 2005) ................................13

*In re NASDAQ Market Makers Antitrust Litig.*,
    938 F. Supp. 232 (S.D.N.Y. 1996)................................................................14

*In re World Trade Center Disaster Site Litig.*,
    469 F. Supp. 2d 134 (S.D.N.Y. 2007)................................................................4

*Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*,
    217 F.R.D. 235 (D.D.C. 2003)................................................................5

*Klinghoffer v. S.N.C. Achille Lauro*,
    921 F.2d 21 (2d Cir. 1990)................................................................3

*Koehler v. Bank of Bermuda Ltd.*,
    101 F.3d 863 (2d Cir. 1996) ................................................................4

*Loeb Indus., Inc. v. Sumitomo Corp.*,
    306 F.3d 469 (7th Cir. 2002) ................................................................11

*Murray v. UBS Securities, LLC*,
    No. 12-cv-5914 (KPF), 2014 WL 1316472 (S.D.N.Y. Apr. 1, 2014) ................................13

*Oliner v. Kontrabecki*,
    305 B.R. 510 (N.D. Cal. 2004) ................................................................5

*Paycom Billing Servs., Inc. v. MasterCard Int'l, Inc.*,
    467 F.3d 283 (2d Cir. 2006)................................................................10

*Port Dock & Stone Corp. v. Oldcastle NE, Inc.*,
    507 F.3d 117 (2d Cir. 2007)................................................................10

*Province v. Cleveland Press Pub. Co.*,
    787 F.2d 1047 (6th Cir. 1986) ................................................................12, 13

*S.E.C. v. First Jersey Sec., Inc.*,
    587 F. Supp. 535 (S.D.N.Y. 1984)................................................................6

*Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp. N.V.*,
    No. 95-cv-9165, 1997 WL 16664, at *2 (S.D.N.Y. Jan. 16, 1997) ................................12

*State of N.C. ex rel. Long v. Alexander & Alexander Servs., Inc.*,
    685 F. Supp. 114 (E.D.N.C. 1988)................................................................6

*Steering Comm. v. U.S.*,
    6 F.3d 572 (9th Cir. 1993) ...........................................................5

*Transp. Workers Union of Am., Local 100, AFL-CIO v. NYC Transit Auth.*,
    358 F. Supp. 2d 347 (S.D.N.Y. 2005) ......................................3

*U.S. Rubber Co. v. Wright*,
    359 F.2d 784 (9th Cir. 1966) .................................................10

*Walker v. Eastern Air Lines, Inc.*,
    785 F. Supp. 1168 (S.D.N.Y. 1992).......................................12

*Westwood Pharms., Inc. v. Nat'l Fuel Gas Dist. Corp.*,
    964 F.2d 85 (2d Cir. 1992)........................................................3

*White v. Nix*,
    43 F.3d 374 (8th Cir. 1994) ....................................................10

*Williston v. Eggleston*,
    410 F. Supp. 2d 274 (S.D.N.Y. 2006)...............................4, 10

*Winthrop, Stimson, Putnam & Roberts v. Official Comm. Of Unsecured Creditors of St. Johnsbury Trucking Co.*,
    186 B.R. 53 (D. Vt. 1995).........................................................6

## STATUTES, RULES, AND REGULATIONS

28 U.S.C.
    §1291................................................................................2, 3
    §1292................................................................................2, 4
    §1292(b)........................................................................ *passim*

Federal Rules of Civil Procedure
    Rule 12...............................................................................3
    Rule 15...............................................................................3

Agfa Corporation and Agfa Graphics NV, Mag Instrument, Inc., and Eastman Kodak Company (together, "Individual Plaintiffs" or "IPs"), together with Ampal, Inc., Custom Aluminum Products Inc., Claridge Products and Equipment Corp., and Extruded Aluminum Corp. (together, "First Level Purchaser Plaintiffs" or "FLPs"; and, collectively with Individual Plaintiffs, "Plaintiffs"), respectfully submit this memorandum in opposition to Defendants' Joint Motion to Certify the Court's March 26, 2015 Order for Interlocutory Appeal Under 28 U.S.C. §1292(b).

## INTRODUCTION

Defendants ask this Court to certify the Court's March 26, 2015 Order, ECF No. 733 (the "Order") — which granted Plaintiffs' motions for leave to amend and denied Defendants' motions to dismiss the Kodak complaint — for interlocutory appeal under 28 U.S.C. §1292(b). Defendants argue that in finding that Plaintiffs "have alleged antitrust injury," the Order is appropriate for interlocutory appeal because this is a controlling question of law as to which there is substantial grounds for difference of opinion, and a resolution in Defendants' favor will terminate the litigation. Defendants' Mem. of Law in Support of Motion to Certify ("Def. Mem."), at 1. Defendants load the weight of this motion on their assertion that this controlling question "already is before the Second Circuit" by way of the pending appeals of the Commercial End Users and Consumer End Users ("End Users").

In response to this assertion, on April 30, 2015, the Court observed:

> Isn't the theory underlying the allegations of antitrust injury - as well as the factual allegations themselves - different between the two actions? If the 2d Cir. resolved standing against defendants, that wouldn't alter this case; and if it affirmed this Court's standing, it also wouldn't alter this case, right? What am I missing?

Memo Endorsement (ECF No. 777 at 2).

The Court is not missing anything. The theory underlying the allegations of antitrust injury as well as the factual allegations themselves differs between those of the Plaintiffs, on the one hand, and those of End Users, on the other. This issue, therefore, is *not* already before the

Second Circuit.  What's more, irrespective of the antitrust *injury* analyses, this Court already has determined that End Users do not have antitrust *standing* because they are not efficient enforcers; accordingly, no matter what the Second Circuit concludes about End Users' antitrust *injury*, they would still lack antitrust standing under the Court's rulings.

More fundamentally, Defendants must demonstrate "exceptional circumstances" justifying departure from the bedrock federal principle that an appeal lies only from a final judgment under.  Section 1292 (b) provides a very narrow exception to the "final judgment" rule of Section 1291 where the "district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that [1] such order involves a controlling question of law [2] as to which there is substantial ground for difference of opinion *and* [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation. . . ."  28 U.S.C. §1292.[1]  Defendants must establish each of these elements to demonstrate exceptional circumstances.

Defendants' §1292(b) motion fails to establish any of the three required elements.  The question of Plaintiffs' antitrust standing is not, as necessary for §1292, a purely legal question, as this Court has evaluated it.  Nor do Defendants point to any substantial grounds for difference of opinion.  This Court "carefully considered" all of the arguments and precedent before it — binding and otherwise — and Defendants point to no Supreme Court or Second Circuit decision contravening the Order, or to any intra-circuit conflict on the issue.  And, finally, Defendants point to no manner in which interlocutory appeal in this case will speed termination of the litigation in any manner that does not also exist with respect to every other denied motion to dismiss.  That is, despite Defendants' false claims of efficiency in immediate appeal, Defendants point to no exceptional circumstances demonstrating its necessity here.

Defendants' motion should be denied in its entirety.

---

[1]     Unless otherwise noted all emphasis is added and citations are omitted.

**ARGUMENT**

As a general rule, only "final decisions of the district courts" may be appealed to the Court of Appeals.  28 U.S.C. §1291.  Decisions denying Rule 12 motions (or granting Rule 15 motions) are, by definition, not "final" decisions appealable under §1291, because they do not end the case.

Section 1292(b) provides a limited exception where the district judge may certify an order for interlocutory appeal.  Interlocutory appeals are not to be granted unless **all** of the Section 1292(b) criteria are satisfied: "there must be a question of **law**, it must be **controlling**, it must be **contestable**, and its resolution must promise to **speed up** the litigation."  *Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000) (Posner, J.) (emphasis in original); *see also id.* at 676 ("The criteria are conjunctive, not disjunctive.").  The party seeking certification has the burden to show the presence of these exceptional circumstances.  *Coopers & Lybrand v. Livesay*, 437 U.S., 463, 474-75 (1978).

Only "exceptional circumstances [may] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Id.* at 475.  In furtherance of this long-standing policy against piecemeal appeals, district courts should certify orders for interlocutory review sparingly and only in exceptional cases.  *See*, *e.g.*, *Westwood Pharms., Inc. v. Nat'l Fuel Gas Dist. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992); *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990).  Certification is proper under only the most unusual circumstances and where an immediate appeal might avoid protracted and costly litigation.  *Hart v. Rick's Cabaret Int'l, Inc.*, No. 09 Civ. 3043, 2014 WL 7183956, at *3 (S.D.N.Y. Dec. 17, 2014) (denying motion to certify for interlocutory appeal) (citing *Westwood Pharms.*, 964 F.2d at 88).  "[E]ven where the three legislative criteria of section 1292(b) appear to be met, district courts have 'unfettered discretion to deny certification' if other factors counsel against it." *Transp. Workers Union of Am., Local 100, AFL-CIO v. NYC Transit Auth.*, 358 F. Supp. 2d 347, 351 (S.D.N.Y. 2005).

Certification under §1292(b) is not intended as an avenue to substitute the appellate court's judgment for that of the trial court before final judgment, even on important issues. *Williston v. Eggleston*, 410 F. Supp. 2d 274, 277 (S.D.N.Y. 2006).  For this reason, courts in this Circuit overwhelmingly deny requests for interlocutory appeal, recognizing that "'interlocutory appeals are strongly disfavored in federal practice.'" *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2008 WL 361082, at *1 (S.D.N.Y. Feb. 11, 2008); *see also In re World Trade Center Disaster Site Litig.*, 469 F. Supp. 2d 134, 144 (S.D.N.Y. 2007) ("[F]ederal practice strongly disfavors discretionary interlocutory appeals . . . [as they] prolong judicial proceedings, add delay and expense to litigants, burden appellate courts, and present issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions.")  (citing *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865-66 (2d Cir. 1996)).

Notably, "the Second Circuit has held that challenges to the sufficiency of a pleading are not generally the appropriate subjects of interlocutory review, as 'a reversal [on interlocutory appeal] at most could lead only to a remand for repleading, with possibilities of further interlocutory appeals thereafter.'" *In re Manhattan Inv. Fund Ltd.*, 288 B.R. 52, 56 (S.D.N.Y. 2002) (quoting *Gottesman v. General Motors Corp.*, 268 F.2d 194, 196 (2d Cir. 1959)).  Indeed, a piecemeal appeal on issues that could later be corrected via amendment impedes judicial efficiency, rather than advancing it, and runs counter to the underlying purpose of Section 1292(b).  *Gottesman*, 268 F.2d at 196; *Consol. Edison, Inc., v. NE Utils.*, 318 F. Supp. 2d 181, 196 (S.D.N.Y. 2004), *reversed in part on other grounds,* 426 F.3d 524 (2d Cir. 2005).

Defendants here fail to carry their heavy burden, where: (1) the question of Plaintiffs' antitrust standing is not purely a question of law; (2) there is no substantial grounds for difference of opinion within the meaning of Section 1292; and (3) immediate appeal of the Court's Order will not speed resolution of the litigation beyond the manner in which any litigation might be accelerated by reversal of a denied motion to dismiss.

## A. The Order Does Not Involve a "Pure Question of Law" as to Plaintiffs' Antitrust Standing and Is Therefore Inappropriate for Interlocutory Appeal

The "question of law" as used in 28 U.S.C. §1292(b) refers "to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Ahrenholz*, 219 F.3d at 676. This applies only to a "pure" question of law, which "the reviewing court 'could decide quickly and clearly without having to study [a] record.'" *Bradley v. Jusino*, No. 04 Civ. 8411, 2008 WL 4566792, at *2 (S.D.N.Y. Oct. 14, 2008); *In re Goldman Sachs Grp., Inc. Securities Litig.*, No. 10 Civ. 3461 (PAC), 2014 WL 5002090, at *2 n.1 (S.D.N.Y. Oct 7, 2014) (rejecting defendant's argument that Section 1292(b) requires a "controlling" but not a "pure" question of law, and collecting cases); *see also Ahrenholz*, 219 F.3d at 676-77 ("question of law" means "an abstract legal issue"; Section 1292(b) only appropriate for "pure" question of law that appellate court could decide "quickly and cleanly"); *Steering Comm. v. U.S.*, 6 F.3d 572, 575-76 (9th Cir. 1993) (to be a controlling question for purposes of §1292(b), the issue must be a pure question of law, not a mixed question of law and fact or even an application of law to a particular set of facts). Indeed, the Seventh Circuit has held that even a question of the meaning of a contract, "though technically a question of law," is not a proper use of §1292(b) because it could require the appellate court to evaluate the underlying factual predicate. *See Ahrenholz*, 219 F.3d at 676. [2]

---

[2] In keeping with the Congressional directive that 28 U.S.C. §1292(b) be applied narrowly and only in exceptional circumstances, this district and numerous other federal courts also have interpreted the phrase "question of law" to mean a pure legal issue. *See Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 371-72 (S.D.N.Y. 2008) (holding that mixed questions of law and fact are insufficient to warrant interlocutory review); *Oliner v. Kontrabecki*, 305 B.R. 510, 529 (N.D. Cal. 2004) ("Because the alleged 'controlling questions of law' raised . . . are inextricably intertwined with the bankruptcy court's factual findings, an interlocutory appeal is not appropriate."); *Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 239 (D.D.C. 2003) ("[w]here the crux of an issue decided by the Court is fact-dependent, the Court has not decided 'a controlling question of law' justifying immediate appeal"); *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 212 F. Supp. 2d 903, 907 (S.D. Ind. 2002) (quoting *Ahrenholz*, 219 F.3d at 676-77) ("A question of law in this situation is one that presents 'an abstract legal issue' that can be 'decided quickly and cleanly without having to study the record.'"); *Hulmes v. Honda Motor Co., Ltd.*, 936 F. Supp. 195, 210 (D.N.J. 1996), *aff'd*, 141

Defendants do not meet the §1292(b) test because they do not seek review of a "pure" question of law or an "abstract legal issue."  This Court addressed the antitrust standing question as an intensely factual undertaking.  The Court allowed the current pleadings specifically so that Plaintiffs could assert additional factual matter concerning their aluminum purchasing: the necessary facts included market structure detail, purchasing and distribution chain detail, further specificity about from whom Plaintiffs buy, and the ubiquity of the premium.  When it dismissed the complaints in 2014, the Court noted as to antitrust injury that "it may be that the plaintiffs are indirectly necessary."  "For instance, it may be that the price of aluminum futures contracts is necessarily impacted by the actual expected usage of aluminum by manufacturers.  That is, without usage of aluminum and therefore without purchases of aluminum at some point along the chain, the traders would not have a market **opportunity**.  The factual allegations of the current complaints are, however, insufficient to support such a view."  *In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481 (KBF), 2014 WL 4277510, at *21 (S.D.N.Y. Aug. 29, 2014).  The Court also believed that factual allegations were lacking for purposes of establishing the efficient enforcer prong of the antitrust standing analysis:  "In short, none of these plaintiffs [the FLPs, Mag, and Agfa] have set forth sufficient allegations regarding from which level in the supply/distribution chain they purchased aluminum in order to be able [to] assess their role *vis-à-vis* other potential plaintiffs. . . .  The number of steps in their supply/distribution chains plainly

---

F.3d 1154 (1998) ("[s]ection 1292(b) was not designed to secure appellate review of 'factual matters' or of the application of the acknowledged law to the facts of a particular case"); *Winthrop, Stimson, Putnam & Roberts v. Official Comm. Of Unsecured Creditors of St. Johnsbury Trucking Co.*, 186 B.R. 53, 55 (D. Vt. 1995) (finding no "controlling question of law" because the issue – whether a fraud was committed upon the court – required resolution of facts); *State of N.C. ex rel. Long v. Alexander & Alexander Servs., Inc.*, 685 F. Supp. 114, 115-16 (E.D.N.C. 1988) ("Decisions that are 'fact specific' may not be appealed under §1292(b)."); *S.E.C. v. First Jersey Sec., Inc.*, 587 F. Supp. 535, 536 (S.D.N.Y. 1984) ("The Court's decision . . . was predicated at least in part on specific factual findings. . . .  Therefore, an appeal would necessarily present a mixed question of law and fact, not a controlling issue of pure law.  Such an order is not appropriate for certification pursuant to 28 U.S.C. §1292(b).").

implicate the directness of their injury, and whether any damages might be duplicative. Moreover, the Court cannot adequately analyze whether damages would be speculative without additional, specific allegations." *Id.*, at *23.

In the amendments that followed, Plaintiffs added detail to (and clarified) their factual allegations. From this, the Court concluded that "plaintiffs are central — they are the fulcrum — to the creation of the market opportunity underlying both metal storage and warrant trading for aluminum. As the real world buyers who — they allege — must pay prices for aluminum that incorporate [the] Midwest Premium, they are necessarily directly impacted by the alleged conduct." Order at 30.

> Taken as a whole, plaintiffs' allegation is that defendants' actions altered the normal competitive price setting dynamic of aluminum, resulting in an abnormally high Midwest Premium; and they were forced to pay that premium as part of their purchases of physical aluminum. These allegations concern a dysfunction of the competitive process that — according to plaintiffs — would not have occurred but for defendants' actions. Defendants [*sic*, Plaintiffs] are the real world actors necessary for the effectuation of the conspiracy — the fulcrum, in the words of *McCready*. These allegations are, at this stage, sufficient to support 'injury of the type the antitrust laws were intended to prevent.' *Brunswick Corp.*, 429 U.S. at 489.[3]

*Id.* at 31.

The Court recognized that, like this case, "*McCready* also presented an unusual (and different) fact pattern and dictates that this Court examine whether plaintiffs have alleged facts that call for the application of analogous principles. They have." *Id.* at 32. Based on the allegations made, the Court concluded that "the winners and losers of defendants' scheme are not only the counterparties to their trades, but also those who actually need the physical commodity underpinning the trades. As now cast in their most recent proposed pleadings, this scheme is alleged to have substituted supply and demand based-pricing with pricing driven by the webbed conspiracy described above. These allegations, ***taken in the light most favorable to plaintiff***, are

---

[3]    *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).

sufficient to support antitrust injury.  In short, if defendants have engaged in a conspiracy that caused dysfunction in the price-setting process, driving prices higher, and defendants [*sic*, plaintiffs] then paid those higher prices, then defendants [*sic*, plaintiffs] have suffered an injury of the type the antitrust laws were designed to prevent.  *See Atl. Richfield*, 495 U.S. at 337 (higher prices that do not work to a plaintiff's advantage cause plaintiff to suffer antitrust injury)."  Order at 32-33.

This history demonstrates that the Court grappled not with a "pure" or "abstract" question of law, but with a fact-driven analysis.  That the appellate court should not simply substitute its judgment for this Court's judgment, before a final order, is underscored by the limited reach of the Order.  As the Court noted, it did not address every issue that the parties argued about in the amended complaints and the extensive briefing in connection therewith.  Order at 21 n.20 ("The parties raise numerous arguments in their papers.  This Court has reviewed all of them and addresses herein only those that are required for resolution of the instant motions.")  Resolving only what it needed to resolve, the Court nonetheless agreed that Plaintiffs "***at the very least*** … fall within the scope of antitrust injury contemplated by *McCready*."  Order at 31.  The Court may yet conclude that Plaintiffs' antitrust standing is also grounded in their status as top-level purchasers in the (restrained) physical aluminum market.  It is undisputed both that Plaintiffs are consumers in the market for physical aluminum and that certain of the Defendants sell physical aluminum.  JAC, ¶¶31-34, 38-39, 43-46, 117, 124, 290; TAC, ¶¶33-34, 48-50, 54-55, 61-62, 68-69, 415, 507, 518, 594, 603.  *See also* Order at 17 ("First, Mag, Agfa, and Kodak allege that the higher storage costs associated with unduly prolonged storage pushed up the Midwest Premium, enabling defendants to sell aluminum in the spot market at an inflated price.  (JAC, ¶17.)."[4]  Of

---

[4]     To bolster their argument that the Court's Order was debatable, Defendants seize on the Court's use of the phrase "collateral damage," Def. Mem. at, *e.g.*, 4-5, in order to maintain that Plaintiffs are not consumers or competitors in "any relevant market," *id.* at 4-5, 7.  But this overlooks that Plaintiffs allege that the physical aluminum market is one of the relevant markets in the litigation and that Plaintiffs purchase aluminum in that market.  *See*, *e.g.*, JAC, ¶¶31-34, 38-39, 43-46, 116-117; TAC, ¶¶33-34, 48-50, 54-55, 61-62, 68-69, 158.  Defendants are untrue

course, if Defendants reformulated their question into a "pure" question of law — *i.e.*, whether Plaintiffs have antitrust standing by virtue of being top-level purchasers in a restrained market — that question would not be debatable. But the Court's Order demonstrates that even the question Defendants ***do*** seek to put to the Court is not one that is subject to substantial grounds for difference of opinion, and we turn now to that requirement.

**B.** **There Is No Substantial Grounds for Difference of Opinion**

Defendants cannot establish that there are substantial grounds for difference of opinion because the Court undeniably evaluated Plaintiffs' antitrust standing under controlling Supreme Court and Second Circuit law; Defendants point to no conflicting authority that supports interlocutory review.

> **1.** **The Court Followed Supreme Court and Second Circuit Precedent in Finding that Plaintiffs Properly Plead Antitrust Standing**

In its Order, the Court undeniably weighed Plaintiffs' antitrust standing under precedents established by the Second Circuit and the Supreme Court. The Court assessed, Order at 26, whether Plaintiffs alleged a harm that is an "injury of the type the antitrust laws were intended to prevent." *Brunswick*, 429 U.S. at 489. It concluded that they did. Order at 31. The Court asked, Order at 27, whether Plaintiffs' injury was attributable to an anticompetitive aspect of the challenged conduct. *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990). It was. Order at 31-33. The Court, moreover, evaluated Plaintiffs' antitrust injury and efficient enforcer status within the guidelines of the Supreme Court's decision in *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters* ("*AGC*"), 459 U.S. 519 (1983), and the Second Circuit's distillation of the *AGC* factors under *Gatt Commc'ns Inc. v. PMC Assocs.*

---

even to their own argument, though, when they acknowledge, as they must, that Plaintiffs ***do*** in fact allege a relevant market for physical aluminum, Def. Mem. at 5, but somehow later argue, *id.* at 7, that Plaintiffs are "neither participants nor consumers in either of the allegedly restrained markets — the warehousing or financial-instruments markets." Defendants further confound this with reference to a "purported (but not alleged in the complaints) financial-instruments market." Def. Mem. at 9.

*L.L.C.*, 711 F.3d 68 (2d Cir. 2013), *Port Dock & Stone Corp. v. Oldcastle NE, Inc.*, 507 F.3d 117 (2d Cir. 2007), *Daniel v. Am. Bd. Of Emergency Med.*, 428 F.3d 408 (2d Cir. 2005), and *Paycom Billing Servs., Inc. v. MasterCard Int'l, Inc.*, 467 F.3d 283 (2d Cir. 2006). Order at 26-28. Finally, the Court evaluated Plaintiffs' fit within these principles in light of the Supreme Court's decision in *Blue Shield of Virginia v. McCready* ("*McCready*"), 457 U.S. 465 (1982). Order at 29-32.[5] Defendants point to no other controlling precedent.

Defendants argue that the question of Plaintiffs' antitrust injury is one of "first impression" for the Second Circuit, and a difficult one. But even accepting this, in the face of the above law, "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (*per curiam*); *White v. Nix*, 43 F.3d 374, 378 (8th Cir. 1994) (A "substantial ground for difference of opinion does not exist merely because there is a dearth of cases"); *accord Bridgestone/Firestone*, 212 F. Supp. 2d at 909; *Fed. Deposit Ins. Corp. v. First Nat'l Bank of Waukesha, Wis.*, 604 F. Supp. 616, 620 (E.D. Wis. 1985). And even if the issue is a difficult one, that alone is insufficient as review is always available later, at the litigation's end, as §1292(b) "'is not intended as a vehicle to provide early review of difficult rulings in hard cases.'" *Williston v. Eggleston*, 410 F. Supp. 2d 274, 277 (S.D.N.Y. 2006); *see also U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (same). More importantly, Defendants' argument flies in the face of the analysis this Court conducted under the volumes of binding precedent described in the preceding paragraph. Finally, Defendants' entire "collateral damage" argument is rooted in an overly simplistic view of Plaintiffs' allegations. While Plaintiffs do allege that **one of** the ways that Defendants profited from their conspiracy was through trading activities, Plaintiffs **also** allege that the bank and trader defendants are sellers of aluminum and that the conspiracy enabled Defendants to sell aluminum in the spot market —

---

[5] The Court also referenced the Second Circuit's *Crimpers Promotions Inc. v. Home Box Office, Inc.*, 724 F.2d 290 (2d Cir. 1983).

*i.e.*, the physical aluminum market where Plaintiffs buy aluminum — at an inflated price. JAC, ¶17; Order at 17. That is, as Plaintiffs allege, Defendants' conduct inflated the price for all aluminum, to Plaintiffs' detriment and to Defendants' advantage, at least with respect to their sales.

## 2. There Is No Conflicting Authority Amounting to Substantial Grounds for a Difference of Opinion

Defendants point to no Second Circuit decision that conflicts with the Court's Order. Defendants rehash and attempt to distinguish *McCready*; *Crimpers*; *Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.*, 253 F. Supp. 2d 262 (D. Conn. 2003); and *In re Crude Oil Commodity Litigation*, 913 F. Supp. 2d 41 (S.D.N.Y. 2012). *See* Def. Mem. at 8-9. But the Court addressed each of these decisions in its Order and none of these cases dictates a lack of antitrust standing here in any event.[6] Notwithstanding Defendants' effort to (again) distinguish those cases, they point to no Second Circuit law that conflicts with the Order. *Cf. In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677 (2d Cir. 2009) (purchasers had antitrust standing even where defendants' conduct targeted different market actors).

*DDAVP* is instructive. In this leading Second Circuit case, the defendants intended to, and did, exclude a competitor from the market. Defendants' anticompetitive exclusion gave rise to a lost profits claim on selling one product by the excluded competitor. At the same time, Defendants' anticompetitive exclusion also caused consumers to suffer overcharge damages on

---

[6] This Court's "remark" that it "does not necessarily agree with the manner in which the courts in [*Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469 (7th Cir. 2002); *Crude Oil*; and *Ice Cream*] described the anticompetitive condition, conducts or markets" in those cases lead to the conclusion that there must therefore be substantial ground for difference of opinion on the controlling question of law. Def. Mem. at 6. First, the Court noted that those cases "Nevertheless … are instructive." Order at 32 n.26. But more to the point, antitrust standing existed in each of these cases and this Court concluded likewise here. Defendants' argument apparently boils down to the not-very-compelling notion that because **this** Court, on its way to finding antitrust standing in *this* case, looked at some other cases (that also found antitrust standing) and suggested that it did not agree with **everything** about those cases, then there must be some substantial grounds for difference of opinion.

buying a different product by reason of the exclusion and diminution of competition. The consumers had antitrust standing to sue for their overcharge damages on the product not sold by the other type of plaintiff.

Even if Defendants' phantom enforcers — the aluminum investors that paid increased rents (some surely as a result of their own unclean hands) were targeted by the conduct, the consumers of physical aluminum who paid for physical aluminum, suffering overcharge damages just like the consumers in *DDAVP*, have suffered antitrust injury and have antitrust standing to sue under well-settled, established, Second Circuit law.

Moreover, even if, as in Defendants' world, *DDAVP* were never decided, a reversal on antitrust standing would not terminate the litigation. Plaintiffs have pled, and the Court has upheld, state law claims, such as unjust enrichment, that do not have antitrust injury or antitrust standing requirements. Even absent federal claims, the Court would have jurisdiction under the Class Action Fairness Act over Direct Purchaser Plaintiffs' non-antitrust state law claims, and it would have diversity and alienage jurisdiction over Mag's and Agfa's claims. It would have supplemental jurisdiction over Kodak's claims.

In fact, even if other district courts within this circuit had ruled otherwise, that would not create a substantial difference of opinion. *See Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co.*, No. 01-cv-6217, 2003 WL 22384797, *4 (W.D.N.Y. Sept. 4, 2003) ("When the circuit court of appeals has already ruled on an issue, there is no substantial ground for difference of opinion.") (citing *Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp. N.V.*, No. 95-cv-9165, 1997 WL 16664, at *2 (S.D.N.Y. Jan. 16, 1997)); *Walker v. Eastern Air Lines, Inc.*, 785 F. Supp. 1168, 1174 (S.D.N.Y. 1992). And, "[a] court is not bound to find reasonable cause for disagreement whenever authorities lack unanimity." *Allied Princess Bay Co. # 2 v. Atochem N. Am., Inc.*, No. CV-91-4146, 1992 WL 135235, at *3 (E.D.N.Y. May 29, 1992).

Much as they did during briefing on the underlying motions, Defendants apparently hang their collective hat on the Sixth Circuit's decision in *Province v. Cleveland Press Pub. Co.*, 787 F.2d 1047 (6th Cir. 1986). They argue that Plaintiffs' claims fail, according to *Province*, because

"harm that is a tangential by-product of an antitrust violation does not constitute antitrust injury." Def. Mem., at 9. *But see DDAVP*, 585 F.3d 677. It is, first of all, certain that this Court was fully aware of the *Province* decision when it issued the Order and, as the Court itself put it, it "examined [Defendants'] arguments with care." Order at 31. But even if this Court's Order did disagree with *Province*, courts in this district routinely hold for purposes of §1292(b) that "[d]isagreement among courts outside the Second Circuit does not establish a substantial ground for difference of opinion." *See, e.g., Colon ex rel. Molina v. BIC USA, Inc.*, No. 00-cv-366 (SAS), 2001 WL 88230, at *2 (S.D.N.Y. Feb. 1, 2001). In *BIC USA*, the defendant sought interlocutory review of an order denying its motion to dismiss, arguing that the Second Circuit should consider whether a Federal statute preempted the plaintiff's common law claims. Judge Scheindlin denied the motion, citing a lack of differing opinions, even though the Second Circuit had not yet ruled on the preemption issue and defendants identified several other decisions affirming the preemption (from the Sixth and Eighth Circuits, Eastern District of Pennsylvania, District of Missouri, and Northern District of California). The Court held:

> **Disagreement among courts outside the Second Circuit does not establish a substantial ground for difference of opinion**. *See S.E.C. [v. Credit Bancorp, Ltd.]*, 103 F. Supp. 2d [223,] at 227 [(S.D.N.Y. 2000)] ("The fact that there is some level of disagreement among the courts does not mean, however, that the standards of 1292(b) are necessarily satisfied."); *see also Shah v. Wilco Sys.*, No. 99 Civ. 12054, 2000 WL 1876913, at *2 (S.D.N.Y. Dec. 22, 2000) (denying certification, in part, because the cases cited by the defendant were outside the Second Circuit). Moreover, the mere presence of a disputed issue that is a question of first impression in this Circuit is insufficient to demonstrate a substantial ground for a difference of opinion. *See Flor v. BOT Fin. Corp.*, 79 F.3d 281, 284 (2d Cir.1996).

*BIC USA*, 2001 WL 88230, at *2. Other Southern District decisions are in accord. *See, e.g., Murray v. UBS Securities, LLC*, No. 12-cv-5914 (KPF), 2014 WL 1316472 (S.D.N.Y. Apr. 1, 2014), at *6 (holding that "[c]ourts have repeatedly found that '[d]isagreement among courts outside the Second Circuit does not establish a substantial ground for difference of opinion'") (quoting *BIC USA*, 2001 WL 88230, at *2, and citing *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, No. MDL 1358 (SAS), 2005 WL 39918, at *2 (S.D.N.Y. Jan. 6, 2005)

("'[D]isagreement [from] outside this Circuit … [does not] demonstrate a substantial ground for a difference of opinion.'")); *In re NASDAQ Market Makers Antitrust Litig.*, 938 F. Supp. 232, 253 (S.D.N.Y. 1996) ("Those opinions [from other district courts] do not control in this Circuit and do not themselves create 'substantial grounds' for a difference of opinion.").

To be sure, ***Defendants*** disagree with the Court's ruling, but this alone does not create a substantial difference of opinion. *In re Complete Retreats, LLC*, No. 07-mc-152, 2008 WL 220752, at *4-5 (D. Conn. Jan. 23, 2008). Given that they point to no Second Circuit or Supreme Court precedent differing from the Order, and point to no intra-circuit conflict, Defendants fail to carry their burden of showing this to be an exceptional case where there is substantial grounds for difference of opinion.

## C. There Is Little or No Efficiency to Be Gained from Certification

Defendants argue that there is some special economy or efficiency to be gained by allowing interlocutory appeal of the Court's Order alongside the pending End User appeals. Defendants fail, however, to show the exceptional circumstances necessary to meet the §1292(b) standard, where the End User appeals present different (and significant additional) issues, where there is no likelihood of materially advancing the termination of this litigation beyond that which always exists when a motion to dismiss is denied, and where Plaintiffs' allegations support antitrust standing even aside from being inextricably intertwined with the injury (or, one of the injuries) Defendants sought to inflict.

### 1. Plaintiffs' Antitrust Standing and the End Users' Antitrust Standing Are Two Different Questions

The touchstone of Defendants' motion to certify is that there is some efficiency to be gained because the Court's dismissal of the End User actions is currently on appeal before the Second Circuit. But that argument is built on a false premise. Defendants assert repeatedly that "the same antitrust ***injury*** issue" is involved in the End User appeals, *see*, *e.g.*, Def. Mem. at 1, 11. But this is both incorrect — as the Court has recognized, Plaintiffs and the End Users do not share the same antitrust injury — and it also ignores that the End Users were dismissed

irrespective of antitrust *injury*. The End Users were dismissed with prejudice because, based on their own pleadings, they could not meet the *efficient enforcer* prong of the antitrust standing test.

As the Court recognized,   "The [End Users'] purchases are the furthest down the chain and definitionally indirect. … The injury suffered by these plaintiffs is therefore indirect." *Aluminum Warehousing Antitrust Litig.*, 2014 WL 4277510, at \*22.  In other words, Plaintiffs and the End Users *do not* share the same antitrust injury.  There is, accordingly, no efficiency or other "exceptional" rationale — and Defendants point to none — for disrupting *this* case and allowing interlocutory appeal of the Court's finding as to *these* Plaintiffs' antitrust injury so that it can be appealed along with the *different* injury alleged by the End Users.

Further, because of the difficulty of isolating End Users' harm from other potential causes, the risk of duplicative relief, and the difficult manageability issues injected by End Users' claims, the Court concluded that other plaintiffs (*i.e.*, the remaining Plaintiffs) "would be better positioned to enforce the antitrust laws."  *Id.*, at \*23.[7]  Defendants entirely ignore this aspect of the antitrust standing issue.  Presumably, if not for the End Users' "own allegations regarding their positions in the supply/distribution chain, [which] they cannot plead around," *id.*, the End Users too would have been afforded an opportunity to replead.  Instead, the appeals emanating out of their dismissals can be resolved without ever addressing the antitrust *injury* question that Defendants assert is appropriate for interlocutory appeal here.

Because the End Users' appeal can be resolved without impacting Plaintiffs' antitrust standing, there is no efficiency to be gained by expediting an interlocutory appeal in the

---

[7]     By contrast, the Court found that Plaintiffs set forth appropriate factual allegations supporting their role as efficient enforcers, including: that Plaintiffs buy directly from producers; the contracts contain prices tied to the Midwest Premium; no buyer of aluminum is higher up the distribution chain (damages are not duplicative); and Plaintiffs' allegations support "non-speculative" damages.  Order at 33-34.  In short, "Plaintiffs here are the most efficient enforcers of claims that defendants' anticompetitive conduct caused injuries to economic actors who paid prices in the primary aluminum market that incorporated the Midwest Premium."  Order at 35.

remaining matters. Defendants appear to have recognized as much, though their motion is silent on this point. On February 19, 2015, the End Users filed a "Consent Motion" in the Second Circuit asking the appellate court to continue to hold the End User appeals in abeyance. Consent Motion of Plaintiff Appellants Commercial End Users and Consumer End Users to Continue to Hold Their Appeals in Abeyance Pending the District Court's Decision in Relates Cases, No. 14-3574(L), 14-3581 (2d Cir. Feb. 19, 2015) ("End Users' Appeal") ECF No. 59-1; *see also* ECF No. 774 at 1-2. In that motion, the End Users argued that if the district court allowed some or all of the IP and FLP claims to proceed, some of the issues in the End Users' appeal might be mooted. End Users' Appeal, ECF No. 59-1 at 4. Defendants, however, apparently insisted on the inclusion of a footnote in the Consent Motion clarifying that they "do not believe that these appeals would be mooted by a district court decision that the remaining plaintiffs may amend their complaints." *Id.* at 4 n.5. Defendants apparently were not prepared to agree that a ruling that allowed IPs and FLPs to proceed would also apply in any way to End Users; they should not now be heard to say that End Users' lack of antitrust standing has bearing on *this* action.

2.      **The End User Appeals Involve a Multitude of Issues Not Presented Here**

Trying to combine interlocutory appeal here with the ongoing End User appeals would be inefficient for other reasons, as well. The End Users appeal final orders of the district court and so must raise (or forever waive) every basis they have for appeal. Accordingly, the Commercial End Users have set forth 10 separate issues proposed for review and the Consumer End Users have set forth 15 separate issues to be raised on appeal. *See* End Users' Appeal, ECF No. 20-3. These issues extend well beyond the antitrust injury (or even antitrust standing) inquiries and Defendants provide no rationale why this Court should burden Plaintiffs with involvement in a protracted appeal process, the scope of which well exceeds the question of Plaintiffs' antitrust standing.

Included as well, among the issues in the End Users' appeal is the propriety of this Court's dismissal of the London Metal Exchange ("LME") as a defendant under the Foreign

Sovereign Immunities Act. *See id.* In their JAC, Individual Plaintiffs do not even sue the LME and it would be particularly inefficient to bog these plaintiffs down with that portion of any appeal. And if interlocutory appeal were granted, would the FLPs be forced to proceed with their appeal of the Foreign Sovereign Immunities Act ruling on an interlocutory basis? This would turn the final judgment rule on its head.

### 3. There Is No Other Efficiency to Be Gained by Interlocutory Appeal

The Supreme Court's recent decision in *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 190 L. Ed. 2d 789 (2015) counsels against the proposition that efficiency requires all appellate proceedings from coordinated MDL proceedings to proceed simultaneously together. In *Gelboim* — the pendency of which formed the rationale for Defendants' initial request that the Second Circuit stay the End Users' appeals — one of the constituent cases in the *In re LIBOR-Based Financial Instruments Antitrust Litigation* MDL was dismissed for the plaintiffs' lack of antitrust standing, though other cases continued. *Gelboim*, 190 L. Ed. 2d 899. The plaintiffs in the dismissed case appealed and the Second Circuit dismissed that appeal on the basis that the "order appealed from did not dispose of all claims in the consolidated action." *Id.*. The Supreme Court reversed, *id.* at 905, noting that constituent cases in an MDL ordinarily retain their separate identities and there was nothing about the trial court's dismissal of the complaint at issue that was "in any way tentative or incomplete." *Gelboim*, then, implicitly suggests that efficiency of waiting for all appeals (or accelerating all appeals at once) is not paramount.

This makes particularly good sense where the remaining plaintiffs in the MDL trial court proceedings hold a different position in the antitrust standing analysis, or where the remaining cases present different claims. Both are true here. The remaining Plaintiffs present a different antitrust standing analysis than do the End Users. As well, the remaining Plaintiffs assert state common law actions which the Court has not dismissed. Order at 2-3, 59-61. To accelerate appeal of the Court's ruling on Plaintiffs' antitrust standing under federal law, merely to couple that with appeal of the End Users' non-identical standing question, when even ***that*** would not be dispositive of all the claims Plaintiffs present, would be immensely inefficient. This is even

more true where, as discussed above, the Court did not address every issue that the parties argued about leading up to the Order. Order at 21 n.20 ("This Court has reviewed all [arguments] and addresses herein only those that are required for resolution of the instant motions."). Plaintiffs "*at the very least*" fall within the scope of antitrust injury contemplated by *McCready*. Order at 31. To the extent Plaintiffs' standing is better than **the very least** (a factual matter determined by the district court), interlocutory appeal based on the arguments Defendants set out in their motion would be a meaningless waste of time and resources.

Undeterred, Defendants argue that the efficiency interests are great in this case because it is a "big" case, that "will involve prolonged and expensive discovery and extensive class-certification proceedings." Def. Mem. at 11. But the scheduling order in this case cannot fairly be characterized as providing for prolonged discovery or class certification proceedings. Fact discovery is set to close in 11 months, class certification will be complete by April 1, 2016, and the cases are to be trial-ready by October 2016. If anything, Defendants' motion for interlocutory appeal threatens to delay the proceedings, rather than advance them. Absent a stay of proceedings in this Court,[8] the appeal Defendants propose to petition the Second Circuit for permission to pursue likely would not even be resolved before these cases are well into trial preparation. And while it is true that a reversal of the Court's decision that Plaintiffs have properly pleaded antitrust standing would end litigation of the federal claims (subject to further appeals), this is true in any case where interlocutory appeal of an order denying a motion to dismiss or denying summary judgment could be had. In short, this is not the "exceptional" scenario where §1292(b) is implicated, and Defendants have not carried their burden to show otherwise. *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir. 1991) ("[T]he federal scheme does not provide for an immediate appeal solely on the ground that such an appeal may advance the proceedings in the district court.").

---

[8]     Section 1292(b) provides that application for interlocutory appeal "shall not" stay the trial court proceedings absent order of the trial court or the court of appeals. 28 U.S.C. §1292(b).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to certify the Court's March 26, 2015 Order for interlocutory appeal under 28 U.S.C. §1292(b).[9]

DATED:  May 4, 2015

Respectfully submitted,

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

*/s/*Walter W. Noss
Christopher M. Burke (*pro hac vice*)
Walter W. Noss (*pro hac vice*)
Kristen M. Anderson (*pro hac vice*)
Stephanie A. Hackett (*pro hac vice*)
Jennifer J. Scott (*pro hac vice*)
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone:  619-233-4565
cburke@scott-scott.com
wnoss@scott-scott.com
kanderson@scott-scott.com
shackett@scott-scott.com
jscott@scott-scott.com

SIMMONS HANLY CONROY
Derek Y. Brandt (*pro hac vice*)
One Court Street
Alton, IL 62002
Telephone:  618-259-2222
dbrandt@simmonsfirm.com

---

[9]     This Court should disregard Defendants' two-sentence argument about the impact that interlocutory appeal in this MDL might have on the unrelated "zinc actions" that "may raise" similar antitrust injury issues.  Def. Mem. at 12.  Section 1292(b) refers to materially advancing the ultimate termination of ***the*** litigation, not of some other litigation that "may raise" similar issues.  *See* 28 U.S.C. §1292(b).  (The zinc actions "may raise" similar issues, or they may raise additional issues or even entirely different issues.)  In any event, Defendants provide no authority supporting this argument.

SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
Todd M. Schneider (*pro hac vice*)
Jason H. Kim (*pro hac vice*)
Kyle G. Bates (*pro hac vice*)
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Telephone:  415-421-7100
tschneider@schneiderwallace.com
jkim@schneiderwallace.com
kbates@schneiderwallace.com
        - and -
Garrett W. Wotkyns (*pro hac vice*)
8501 North Scottsdale Road, Suite 270
Scottsdale, AZ 85253
Telephone:  480-428-0144
gwotkyns@schneiderwallace.com


STEYER LOWENTHRAL BOODROOKAS
ALVAREZ & SMITH LLP
Allan Steyer (*pro hac vice*)
Gabriel D. Zeldin (*pro hac vice*)
One California Street, 3rd Floor
San Francisco, CA 94111
Telephone: 415-421-3400
asteyer@steyerlaw.com
gzeldin@steyerlaw.com

THE MOGIN LAW FIRM, P.C.
Daniel J. Mogin (*pro hac vice*)
707 Broadway, Suite 1000
San Diego, CA 92124
Telephone:  619-687-6611
dmogin@moginlaw.com

PEIFFER ROSCA WOLF ABDULLAH CARR &
KANE, L.L.P.
Joseph C. Peiffer (*pro hac vice*)
201 St. Charles Avenue, Suite 4610
New Orleans, LA 70170
Telephone:  505-586-5259
jpeiffer@prwlegal.com

*Counsel for Individual Plaintiffs Agfa Corporation
and Agfa Graphics, N.V.; Mag Instrument, Inc., and
Eastman Kodak Company*

NICOLL DAVIS & SPINELLA LLP
Christopher M. Santomassimo
95 Route 17 South, Suite 316
Paramus, NJ 07652
Telephone:  201-712-1616
csantomassimo@ndslaw.com

*Counsel only for Individual Plaintiffs Agfa
Corporation and Agfa Graphics, N.V.*

ROBBINS GELLER RUDMAN
& DOWD LLP


*/s/*David Mitchell
David Mitchell (*pro hac vice*)
Carmen Medici (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619 231-1058
davidm@rgrdlaw.com
cmedici@rgrdlaw.com
          -and-
ROBBINS GELLER RUDMAN &
DOWD L.L.P.
Samuel H. Rudman
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: (631) 367-7100
srudman@rgrdlaw.com

LOVELL STEWART HALEBIAN &
JACOBSON L.L.P.
Christopher Lovell
Gary S. Jacobson
Benjamin M. Jaccarino
61 Broadway, Suite 501
New York, NY 10006
Telephone: 212 608-1900
Email: clovell@lshllp.com
bjaccarino@lshllp.com
gsjacobson@lshllp.com

GRANT & EISENHOFER, P.A.
Peter A. Barile III
485 Lexington Avenue
New York, NY  10017
Telephone: 646-722-8500
pbarile@gelaw.com

*Interim Co-Lead Counsel for Direct Purchaser
Plaintiffs and the Proposed Direct Purchaser Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2015, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF's system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 4, 2015.

*/s/*Walter W. Noss
Walter W. Noss
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Tel: 619-233-4565
Fax: 619-233-0508
wnoss@scott-scott.com