**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                 :

| | | |
|---|---|---|
| IN RE ALUMINUM WAREHOUSING ANTITRUST LITIGATION | : | MDL No. 2481 |
| | : | |
| This Document Relates To: | : | Master Docket No. 13-md-2481-KBF-RLE |
| | : | |
| First Level Purchaser Plaintiffs (14 Civ. 3116) | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS
OF ROBERT BURGESS-ALLEN AND BURGESS-ALLEN PARTNERSHIP LTD.**

Richard C. Pepperman II
(*peppermanr@sullcrom.com*)
Suhana S. Han (*hans@sullcrom.com*)
William H. Wagener (*wagenerw@sullcrom.com*)
Yavar Bathaee (*bathaeey@sullcrom.com*)
Jennifer H. Blecher (*blecherj@sullcrom.com*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Attorneys for Defendants Robert Burgess-Allen
and Burgess-Allen Partnership Ltd.*

Dated:  July 13, 2015

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND ..............................................................................................4

    A.    Robert Burgess-Allen and BAP ..................................................4

    B.    The TAC ......................................................................................5

    C.    The Court's March 26, 2015 Opinion ..........................................6

ARGUMENT ....................................................................................................7

I.    The TAC Fails to State a Viable Conspiracy Claim against Burgess-Allen and BAP under This Court's Prior Ruling ...........................................7

II.    The TAC Fails to Allege Personal Jurisdiction over Burgess-Allen and BAP .................9

    A.    Personal Jurisdiction Does Not Exist under Section 12 of the Clayton Act .........10

    B.    Exercising Personal Jurisdiction over Burgess-Allen and BAP Would Violate Due Process ...................................................11

        1.    The TAC Does Not Allege General Jurisdiction over Burgess-Allen and BAP ..............................................12

        2.    The TAC Does Not Allege Specific Jurisdiction over Burgess-Allen and BAP ..............................................13

        3.    The Exercise of Personal Jurisdiction over Burgess-Allen and BAP Would Be Unreasonable in Any Event ...................16

CONCLUSION ...............................................................................................18

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*7 W. 57th St. Realty Co., LLC* v. *Citigroup, Inc.*,
   2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ........................................................13, 14, 15

*In re Aluminum Warehousing Antitrust Litig.*,
   2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014) ...................................................................7

*In re Aluminum Warehousing Antitrust Litig.*,
   2015 WL 892255 (S.D.N.Y. Mar. 3, 2015) ................................................................ *passim*

*In re Aluminum Warehousing Antitrust Litig.*,
   2015 WL 1378946 (S.D.N.Y. Mar. 26, 2015) .............................................................. *passim*

*Asahi Metal Indus. Co., Ltd.* v. *Superior Ct. of Cal.*,
   480 U.S. 102 (1987) ...................................................................................................12, 16

*Bill's Birds Inc.* v. *Trademarketing Resources Inc.*,
   920 F. Supp. 2d 357 (E.D.N.Y. 2013) .............................................................................9

*Bonita Fabrics, Inc.* v. *Anand*,
   2014 WL 406837 (S.D.N.Y. Feb. 3, 2014) .....................................................................12

*In re Bristol-Myers Squibb Sec. Litig.*,
   312 F. Supp. 2d 549 (S.D.N.Y. 2004) .............................................................................10

*Chloé* v. *Queen Bee of Beverly Hills, LLC*,
   616 F.3d 158 (2d Cir. 2010) ......................................................................................12, 17

*Copperweld Corp.* v. *Independence Tube Corp.*,
   467 U.S. 752 (1984) .....................................................................................................2, 9

*D&R Global Selections, S.L.* v. *Pineiro*,
   9 N.Y.S.3d 234 (1st Dep't 2015) ....................................................................................11

*Daimler AG* v. *Bauman*,
   134 S. Ct. 746 (2014) .....................................................................................................12

*Daniel* v. *Am. Bd. of Emergency Med.*,
   428 F.3d 408 (2d Cir. 2005) ...........................................................................................10

*Fuchs Sugars & Syrups, Inc.* v. *Amstar Corp.*,
   602 F.2d 1025 (2d Cir. 1979) ...........................................................................................9

## TABLE OF AUTHORITIES
*(continued)*

Page(s)

**Cases**
*(continued)*

*Helicopteros Nacionales de Colombia, S.A.* v. *Hall,*
    466 U.S. 408 (1984) ...........................................................................12, 13

*Jazini* v. *Nissan Motor Co., Ltd.,*
    148 F.3d 181 (2d Cir. 1998) ..............................................................9

*Licci ex rel.* v. *Lebanese Canadian Bank,*
    673 F.3d 50 (2d Cir. 2012) ................................................................9, 16

*Licci ex rel. Licci* v. *Lebanese Canadian Bank,*
    732 F.3d 161 (2d Cir. 2013) ..............................................................14

*Peterson* v. *Islamic Republic of Iran,*
    2013 WL 1155576 (S.D.N.Y. Mar. 13, 2013) ..................................9

*Porina* v. *Marward Shipping Co.,*
    521 F.3d 122 (2d Cir. 2008) ..............................................................3, 11, 13

*In re Roman Catholic Diocese of Albany, N.Y., Inc.,*
    745 F.3d 30 (2d Cir. 2014) ................................................................12, 13

*Saudi* v. *Marine Atl., Ltd.,*
    306 F. App'x 653 (2d Cir. 2009) ......................................................13

*Sonera Holding B.V.* v. *Cukurova Holding A.S.,*
    750 F.3d 221 (2d Cir. 2014) ..............................................................12

*Tarsavage* v. *CITIC Trust Co.,*
    3 F. Supp. 3d 137 (S.D.N.Y. 2014) ..................................................14

*In re Terrorist Attacks on Sept. 11, 2001* ("*Terrorist Attacks I*"),
    538 F.3d 71 (2d Cir. 2008) ................................................................3, 15, 16

*In re Terrorist Attacks on Sept. 11, 2001* ("*Terrorist Attacks II*"),
    714 F.3d 659 (2d Cir. 2013) ..............................................................14, 15, 16

*Troma Entm't, Inc.* v. *Centennial Pictures Inc.,*
    729 F.3d 215 (2d Cir. 2013) ..............................................................9

## TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

**Statutes and Rules**
*(continued)*

**Statutes and Rules**

15 U.S.C. § 22 ...............................................................................................10

N.Y. C.P.L.R. § 302 ........................................................................................11

Fed. R. Civ. P. 4(k) ...................................................................................10, 11

Fed. R. Civ. P. 12(b)(2) .....................................................................................1

Fed. R. Civ. P. 12(b)(6) .....................................................................................1

Defendants Robert Burgess-Allen and Burgess-Allen Partnership Ltd. ("BAP") respectfully submit this memorandum in support of their motion to dismiss all claims against them for failure to state a claim under Rule 12(b)(6) and for lack of personal jurisdiction under Rule 12(b)(2).

## PRELIMINARY STATEMENT

The Third Amended Complaint ("TAC") of the first-level purchasers ("FLPs") includes as defendants Robert Burgess-Allen and his firm—alleged only to have been sales agents of defendant Metro International Trade Services ("Metro") responsible for soliciting on Metro's behalf potential customers in the United Kingdom and Europe. Burgess-Allen and his firm are not named as defendants in the separate complaint filed by the individual plaintiffs.

Under this Court's prior ruling applying the longstanding *Copperweld* doctrine, the TAC does not state a viable conspiracy claim against Burgess-Allen and BAP. Both are named as defendants in this case principally because of a single email Burgess-Allen wrote and sent from England solely in his capacity as a Metro sales agent. The TAC alleges no facts suggesting that either entered into any agreement with any defendant other than Metro. As this Court observed, "BAP and Burgess-Allen are alleged to have not had any independent economic role in the conspiracy beyond that which [they] undertook while working on behalf of Metro—they are alleged only to have introduced customers to Metro and consulted on and negotiated transactions with or for Metro." *In re Aluminum Warehousing Antitrust Litig.*, 2015 WL 1378946, at *17 (S.D.N.Y. Mar. 26, 2015). Further, even if the TAC could state a conspiracy claim against them, there is no personal jurisdiction over either. Burgess-Allen is a resident and citizen of the United Kingdom, his firm (a partnership with his wife) likewise is located in England, and the TAC fails

to allege that either defendant intentionally aimed allegedly wrongful conduct at the United States.

**No Viable Conspiracy Claim.** The claims against Burgess-Allen and BAP should be dismissed for failure to state a claim for the cogent reasons set forth in the Court's prior ruling in this action. The TAC does not allege any facts connecting Burgess-Allen and BAP to the FLPs' remaining conspiracy claim under Section 1 of the Sherman Act and state-law equivalents. Rather, all of the TAC's allegations directed at those two defendants, including the allegation that Burgess-Allen formulated a so-called "smart ass plan" for the re-warranting of aluminum, concern his and BAP's dealings with or on behalf of Metro—not with any other defendant in this case. Under *Copperweld Corp.* v. *Independence Tube Corp.*, 467 U.S. 752 (1984), and its progeny, a Section 1 claim cannot be predicated on an alleged agreement between a principal and its agents. As this Court already has recognized, "[t]o the extent agents are merely carrying out the decisions of principals, they are not separate entities for purposes of Section 1." *In re Aluminum Warehousing Antitrust Litig.*, 2015 WL 1378946, at *16. Neither Burgess-Allen nor BAP is alleged to have "had any independent economic role in the conspiracy beyond that which [they] undertook while working on behalf of Metro." *Id.* at *17. They "are alleged only to have introduced customers to Metro and consulted on and negotiated transactions with or for Metro," not to have conspired with any other warehouse or financial-firm defendant. *Id.* (citing TAC ¶¶ 254, 449, 605).

**No Personal Jurisdiction.** Although the *Copperweld* barrier obviates the need to address these defendants' jurisdictional challenges, they present an alternative basis for dismissal. BAP does no business in the United States: its office and only two employees—Burgess-Allen and his wife—are located in England. BAP also has no bank account or other property here.

- 2 -

Because the FLPs do not allege any systematic contacts with the United States, the TAC fails to plead general jurisdiction over Burgess-Allen and BAP.  Nor have the FLPs adequately alleged specific jurisdiction, which requires that "a suit aris[e] out of or relate[] to the defendant's contacts with the forum."  *Porina* v. *Marward Shipping Co.*, 521 F.3d 122, 128 (2d Cir. 2008) (citation omitted).  The FLPs make no allegations that Burgess-Allen and BAP themselves— Metro sales agents responsible for soliciting potential customers abroad—had any contacts with the United States relevant to the lawsuit.  The TAC also does not allege that Burgess-Allen and BAP intentionally aimed allegedly wrongful conduct at the United States.  The FLPs' allegations that they (i) devised a so-called "smart ass" plan for potential re-warranting transactions involving aluminum, (ii) provided consulting and marketing services for Metro abroad, and (iii) introduced customers in England and Europe to Metro are insufficient to plead specific jurisdiction under *In re Terrorist Attacks on Sept. 11* ("*Terrorist Attacks I*"), 538 F.3d 71, 95 (2d Cir. 2008), *abrogated on other grounds by Samantar* v. *Yousuf*, 560 U.S. 305 (2010).  That case makes clear that such conduct abroad—even if its effects in the United States were foreseeable— is too attenuated to confer personal jurisdiction.

Even if the TAC did adequately allege specific jurisdiction, the exercise of personal jurisdiction over Burgess-Allen and BAP would be unreasonable under the Due Process Clause given those defendants' lack of presence in the United States, their burden in litigating this lawsuit here and the inclusion of Metro, the entity on whose behalf they acted as agents, as a defendant in the litigation.[1]

---

[1]  Burgess-Allen and BAP join in and adopt the arguments set forth by other defendants in their motions to dismiss plaintiffs' complaints and in their oppositions to plaintiffs' motions for leave to amend their complaints.

## BACKGROUND

### A.      Robert Burgess-Allen and BAP

Robert Burgess-Allen is a resident and citizen of the United Kingdom.  (TAC ¶ 129; Declaration of Robert Burgess-Allen, dated July 10, 2015 ("Burgess-Allen Decl.") ¶ 4.)  In June 2009, he and his wife, Emily Ruth Villiers Burgess-Allen, founded BAP, a privately held company organized under the laws of the United Kingdom and headquartered in West Sussex, England.  (TAC ¶ 128; Burgess-Allen Decl. ¶¶ 2, 5.)  Since 2009, Burgess-Allen has worked at BAP, and he continues to do so today.  (Burgess-Allen Decl. ¶ 4.)  BAP's business includes providing consulting services relating to warehousing, trading and financing of base metals.  (*Id.* ¶ 3.)

Between 2010 and 2013, Metro retained BAP as its sales agent to market Metro's warehousing services to metal owners in the United Kingdom and Europe—not in the United States.  (*Id.* ¶ 13; TAC ¶ 254.)  In performing those services for Metro, Burgess-Allen worked primarily from BAP's offices in England.  (Burgess-Allen Decl. ¶ 14.)  For example, the representative of DB Energy Trading LLC (referenced in the TAC) with whom Burgess-Allen interacted was located in London at the time Metro allegedly entered into a re-warranting transaction with DB Energy.  (*Id.*)  BAP and Burgess-Allen had no authority to enter into any transactions on Metro's behalf without Metro's review and approval.  (*Id.* ¶ 13.)

BAP has only two employees, who also are its only directors:  Burgess-Allen and his wife, Emily Ruth Villiers Burgess-Allen.  (*Id.* ¶ 4.)  BAP has no officers or employees located in the United States and has never been licensed to do business here.  (*Id.* ¶¶ 7-8.)  Nor has BAP ever had an agent for service of process in the United States or conducted board meetings in this country.  (*Id.* ¶¶ 8, 11.)  Moreover, both Burgess-Allen and BAP:

- 4 -

- Do not now own or maintain, and have never owned or maintained, an office, telephone listing, fax number or mailing address in the United States. (Burgess-Allen Decl. ¶ 5.)

- Do not now lease or own, and have never leased or owned, any real or personal property in the United States. (*Id.* ¶ 6.)

- Do not now pay, and have never paid, any taxes in the United States. (*Id.* ¶ 10.)

- Do not now maintain, and have never maintained, any bank accounts in the United States. (*Id.* ¶ 9.)

In sum, Mr. Burgess-Allen and BAP lack any relevant connections to the United States other than that they were hired to act as the European agent of a warehousing company headquartered in Detroit.

### B.    The TAC

The TAC refers to BAP only twice. First, it alleges that BAP is "a private limited company started in June 2009 by Robert George Burgess-Allen" and Emily Ruth Villiers Burgess-Allen who also "serve as Directors of the company, for a total of two employees." (TAC ¶ 128.) Second, the TAC identifies Robert Burgess-Allen as "Mr. Burgess-Allen of Burgess-Allen Partners ('BAP')." (*Id.* ¶ 252.) No other paragraphs of the 663-paragraph TAC mention BAP.

The TAC's allegations directed to Burgess-Allen are similarly sparse. The FLPs allege that Burgess-Allen "is a citizen and resident of the United Kingdom," "had a Metro email address in 2010 and worked with Metro during the class period." (TAC ¶ 129.) The TAC further alleges that Burgess-Allen represented Metro exclusively "on all metals deals with customers in London and Europe" (*id.* ¶ 254) and that "Metro . . . violated the LME minimum load-out rule by making anticompetitive agreements with Defendant Burgess-Allen and co-conspirators DB Energy, Red Kite, and other persons presently unknown to Plaintiffs" (*id.*

¶ 251).  According to the TAC, "Metro and Burgess-Allen called these agreements the 'smart ass plan.'"  (*Id.*)

The focus of the FLPs' allegations against Burgess-Allen is an email he purportedly wrote to Metro CEO Chris Wibbelman in August 2010 describing a hypothetical transaction to re-warrant aluminum, referred to as a "smart ass plan."  (*Id.* ¶ 252.)  The TAC alleges:

> From at least as early as July or August 2010 until the present, Metro made with Defendant Burgess-Allen and they performed what they called the 'smart-ass plan' agreement.  Thereby, Burgess-Allen introduced persons, including DB Energy, who made agreements with Metro that lacked any pro-competitive purpose and even had no or virtually no economic or commercial substance except as follows.  By restricting the true aluminum output and lengthening the load-out queues from Metro's Detroit warehouses, this agreement increased Metro's revenues and prevented, delayed, and discouraged persons who truly wanted to load aluminum out of Metro's Detroit warehouses from doing so.  Metro effectively shared with Burgess-Allen a portion of its increased revenues.

(*Id.* ¶ 449 (citation omitted).)  The FLPs also quote a May 2011 email that Burgess-Allen wrote that discussed a potential transfer of metal from Toledo to Detroit.  (*See id.* ¶ 605.)

The TAC does not allege that Burgess-Allen or BAP had any authority to bind Metro to such agreements or to enter into any transactions on Metro's behalf without Metro's review and approval.  Nor are there any allegations that Burgess-Allen and BAP entered into any agreement with any warehouse or financial-firm defendant in this case apart from Metro.  The FLPs instead contend that Burgess-Allen and BAP, as sales agents, entered into a conspiracy with their principal, Metro.

### C.    The Court's March 26, 2015 Opinion

On March 26, 2015, the Court granted in part and denied in part the FLPs' motion for leave to replead.  (Dkt. No. 733.)  In so ruling, the Court rejected any conspiracy claim to the extent that it is based on an alleged conspiracy between or among Burgess-Allen, BAP, Metro

and any affiliated Goldman Sachs entity.  After noting that "*Copperweld* and *American Needle* establish that a non-wholly owned affiliate cannot conspire with its parent in violation of § 1 of the Sherman Act if they are jointly controlled," the Court stated that "[t]he same principles apply to agents."  *In re Aluminum Warehousing Antitrust Litig.*, 2015 WL 1378946, at *16.  Thus, "[t]o the extent agents are merely carrying out the decisions of principals, they are not separate entities for purposes of Section 1."  *Id.*  The Court explained that the FLPs "allege that defendants BAP and its director, Robert Burgess-Allen, were the sales agent of defendant Metro" and that "they are alleged only to have introduced customers to Metro and consulted on and negotiated transactions with or for Metro."  *Id.* at *17 (citing TAC ¶¶ 128-29, 254, 449, 605).

## ARGUMENT

I. **The TAC Fails to State a Viable Conspiracy Claim against Burgess-Allen and BAP under This Court's Prior Ruling.**

This Court should dismiss the claims against Burgess-Allen and BAP for failure to state a claim under the law of this case.[2]  To survive a motion to dismiss, "[a] claim must have facial plausibility," which means that plaintiffs must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *In re*

---

[2] Although courts ordinarily decide jurisdictional questions before reaching the merits of a claim, as this Court has recognized previously in this action, the jurisdictional issues need not be reached if dismissal is appropriate on the basis of other grounds the Court has addressed more broadly in the context of other defendants.  *See In re Aluminum Warehousing Antitrust Litig.*, 2014 WL 4277510, at *38 (S.D.N.Y. Aug. 29, 2014) ("In light of the Court's determinations that dismissal is appropriate on the basis of both standing and failure to state a claim, the Court need not and does not reach this additional argument [on personal jurisdiction].").  Here, dismissal of the claims against Burgess-Allen and BAP follows directly from this Court's prior ruling on the FLP's motion for leave to amend regarding the import of the *Copperweld* doctrine.  Under the unique circumstances of this case, the Court can accordingly simply give effect to its prior ruling without determining the jurisdictional question first.

*Aluminum Warehousing Antitrust Litig.*, 2015 WL 1378946, at *8 (citation omitted).  The FLPs have not satisfied that pleading burden with respect to BAP and Burgess-Allen.

There are only two paragraphs in the TAC that mention BAP—neither of which is substantive.  One merely alleges that BAP is a "private limited company started in June 2009 by Robert George Burgess-Allen" and his wife that is "headquarter[ed]" in England (TAC ¶ 128), and the other mentions BAP in passing as part of its description of an email from Burgess-Allen (*id.* ¶ 252).  There is simply no allegation relating to BAP that could form the basis for a viable conspiracy claim under Section 1 or a state-law equivalent.

The TAC's allegations with respect to Burgess-Allen are based entirely on his work as a sales agent or consultant for Metro—*i.e.*, as an agent, not as a principal.  (*See* TAC ¶¶ 252, 254, 292-94, 449, 605, 607.)  The FLPs cannot state a conspiracy claim based on Burgess-Allen's alleged agreement or interactions with Metro or on Burgess-Allen's alleged conduct undertaken on behalf of Metro.  As this Court already has held, "[t]o the extent agents are merely carrying out the decision of principals, they are not separate entities for purposes of Section 1."  *In re Aluminum Warehousing Antitrust Litig.*, 2015 WL 1378946, at *16.  Burgess-Allen and his firm are not alleged to have "had any independent economic role in the conspiracy beyond that which [they] undertook while working on behalf of Metro."  *Id.* at *17.  Instead, both are alleged to be "sales agents" that "introduced customers to Metro and consulted on and negotiated transactions with or for Metro."  *Id.* (citing TAC ¶¶ 128-29, 254, 449, 605).

The TAC is devoid of any allegations that Burgess-Allen and BAP conspired with any defendant unaffiliated with Metro or Goldman Sachs.  There are simply no allegations that Burgess-Allen and BAP themselves conspired in any way with Glencore, JPMorgan, Pacorini or Henry Bath.  Because the TAC does not allege that Burgess-Allen and BAP entered into an

agreement with any warehouse or financial-firm defendant other than their principal Metro, the FLPs fail to state a viable conspiracy claim against those two defendants under Section 1 or a state-law equivalent.  *See Copperweld*, 467 U.S. at 777; *Fuchs Sugars & Syrups, Inc.* v. *Amstar Corp.*, 602 F.2d 1025, 1031 n.5 (2d Cir. 1979) (agent and principal cannot conspire under Section 1 where agent's "sole function was to supply [principal] with potential customers"); *Bill's Birds Inc.* v. *Trademarketing Resources Inc.*, 920 F. Supp. 2d 357, 365 (E.D.N.Y. 2013) (agent and principal cannot conspire under Section 1 where agent lacked "decision-making capacity, and was merely the conduit of communication between [principal] and [its customers]").   Indeed, the dismissal of the claims against Burgess-Allen and BAP follows directly from this Court's prior ruling.

## II.     The TAC Fails to Allege Personal Jurisdiction over Burgess-Allen and BAP.

Even if the TAC could state a claim against Burgess-Allen and BAP, there is no basis for personal jurisdiction over those two defendants.  To survive a motion to dismiss, the FLPs bear the burden of pleading a *prima facie* case of personal jurisdiction.  *See Troma Entm't, Inc.* v. *Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013).  Although a complaint's allegations should be read in the light most favorable to plaintiffs, the Court need not credit "conclusory statements . . . without any supporting facts," *Jazini* v. *Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998), or accept as true "a legal conclusion couched as a factual allegation," *Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (citation omitted).  Moreover, the Court is "required to accept the allegations in the complaint as true so long as they are uncontroverted by defendant's affidavits." *Peterson* v. *Islamic Republic of Iran*, 2013 WL 1155576, at *11 (S.D.N.Y. Mar. 13, 2013) (Forrest, J.).  And the Court "need not accept as true an allegation that is contradicted by documents on which the complaint relies." *In re Aluminum*

*Warehousing Antitrust Litig.*, 2015 WL 892255, at *9 (S.D.N.Y. Mar. 3, 2015) (quoting *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004)).

### A.    Personal Jurisdiction Does Not Exist under Section 12 of the Clayton Act.

Rule 4(k)(1) states that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by federal statute." FED. R. CIV. P. 4(k)(1).  Section 12 of the Clayton Act provides that "[a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."  15 U.S.C. § 22.

As the Second Circuit has explained, this "section consists of two parts.  The part before the semicolon addresses venue, permitting antitrust actions against corporations to be maintained 'not only in the judicial district whereof [the corporate defendant] is an inhabitant, but also in any district wherein it may be found or transacts business,'" and the second part "after the semicolon provides for worldwide service of process and, therefore, the exercise of personal jurisdiction 'in such cases.'"  *Daniel* v. *Am. Bd. of Emergency Med.*, 428 F.3d 408, 422 (2d Cir. 2005).  Section 12 of the Clayton Act thus provides personal jurisdiction over a defendant only if the "section's specific venue provision" is satisfied.  *Id.*

Here, the TAC does not allege that Burgess-Allen and BAP are "inhabitants" of, or "found" in, the United States, let alone the Southern District of New York.  To the contrary, the TAC alleges that Burgess-Allen "is a citizen and resident of the United Kingdom" (TAC ¶ 129) and that BAP is headquartered in England (*id.* ¶ 128).  Nor is there any allegation that Burgess-Allen and BAP "transact business" in this District.  To the contrary, the TAC alleges that Burgess-Allen and BAP represented Metro on metal deals "with customers in London and

- 10 -

Europe." (*Id.* ¶ 254.)   Accordingly, there is no basis for this Court to exercise personal jurisdiction over them under Section 12 of the Clayton Act.[3]

## B.   Exercising Personal Jurisdiction over Burgess-Allen and BAP Would Violate Due Process.

Under Rule 4(k)(2), the Court can exercise personal jurisdiction over a defendant only if doing so is "consistent with the United States Constitution and laws." *Porina*, 521 F.3d at 126. Rule 4(k)(2) thus confers personal jurisdiction only to the extent permitted by the Due Process Clause. *See id.* at 127.

The Due Process inquiry involves two steps.   First, courts consider "whether the defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction." *Id.* "Minimum contacts" can be established through either (i) general jurisdiction based on the defendant's "continuous and systematic general business contacts with the United States," or (ii) specific jurisdiction "arising out of or related to the defendant's contacts with the forum." *Id.* at 128 (internal quotation marks omitted).   For claims that arise under federal law, courts consider under Rule 4(k)(2) the defendant's contacts with the United States as a whole, not with any particular state. *See id.* at 126-27.

Second, even if the defendant is alleged to have sufficient minimum contacts with the forum to confer general or specific jurisdiction, "plaintiffs must still demonstrate that the exercise of jurisdiction does not 'offend traditional notions of fair play and substantial justice'

---

[3]   For the same reasons, there is no basis for jurisdiction under New York's long-arm statute. *See* N.Y. C.P.L.R. § 302. "CPLR 302 authorizes the exercise of personal jurisdiction over a nondomiciliary 'if the cause of action at issue arose out of the transaction of business within the State.'" *D&R Global Selections, S.L.* v. *Pineiro*, 9 N.Y.S.3d 234, 235 (1st Dep't 2015). The FLPs do not allege that their claims against Burgess-Allen and BAP arose out of the transaction of business within New York. "But the Court need only reach the individual long-arm tests if due process requirements are otherwise met—and they are not." *In re Aluminum Warehousing Antitrust Litig.*, 2015 WL 892255, at *8 n.6.

and is thus reasonable under the Due Process Clause." *Chloé* v. *Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 172-73 (2d Cir. 2010) (quoting *Asahi Metal Indus. Co., Ltd.* v. *Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987)).   Under this second step, courts determine "whether it is *reasonable* to exercise personal jurisdiction under the circumstances of the particular case." *In re Aluminum Warehousing Antitrust Litig.*, 2015 WL 892255, at \*3 (emphasis in original and internal quotation marks omitted).

**1.    The TAC Does Not Allege General Jurisdiction over
Burgess-Allen and BAP.**

"General jurisdiction is a fairly high standard that is tantamount to approximate physical presence in the foreign forum state." *Bonita Fabrics, Inc.* v. *Anand*, 2014 WL 406837, at \*5 (S.D.N.Y. Feb. 3, 2014) (internal quotation marks omitted).   No such facts are alleged here. Even accepting as true all of the TAC's allegations, neither Burgess-Allen nor BAP has had "continuous and systematic general business contacts" with the United States. *Helicopteros Nacionales de Colombia, S.A.* v. *Hall*, 466 U.S. 408, 415-16 (1984).   Burgess-Allen is a citizen and resident of the United Kingdom (TAC ¶ 129), and BAP is a private limited company incorporated and headquartered in England (*id.* ¶ 128).   There are no allegations that BAP's contacts with the United States are "so substantial and of such a nature as to render the corporation at home" in the United States. *In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 39 (2d Cir. 2014) (per curiam) (internal quotation marks and brackets omitted); *see also Daimler AG* v. *Bauman*, 134 S. Ct. 746, 760 (2014); *Sonera Holding B.V.* v. *Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014) (per curiam) ("[E]ven a company's engage[ment] in a substantial, continuous, and systematic course of business is alone insufficient to render it at home in a forum." (internal quotation marks omitted)).

In fact, BAP and Mr. Burgess-Allen have no presence in the United States.  They neither own nor lease any real property here.  (Burgess-Allen Decl. ¶ 6.)  BAP also has no offices, employees, telephone listing, fax number, mailing address or bank accounts in the United States. (*Id.* ¶¶ 5, 9.)  BAP also is not licensed to do business in this country.  (*Id.* ¶ 8.)  As plaintiffs acknowledge, Burgess-Allen represented Metro on "metal deals with customers in London and Europe."  (TAC ¶ 254.)  The TAC thus falls far short of alleging general jurisdiction over BAP and Burgess-Allen.  *See In re Roman Catholic Diocese*, 745 F.3d at 40 (no general jurisdiction in Vermont because diocese "operates no office or facility in Vermont," even though it employed Vermont residents and served Vermont parishioners); *Saudi* v. *Marine Atl., Ltd.*, 306 F. App'x 653, 655 (2d Cir. 2009) (no general jurisdiction in New York because defendant "has no office in New York, no bank account or property in New York, and no employees permanently stationed in New York").

### 2.   The TAC Does Not Allege Specific Jurisdiction over Burgess-Allen and BAP.

Nor have the FLPs adequately alleged specific jurisdiction.  The Court can exercise specific jurisdiction only if "a suit aris[es] out of or relate[s] to the defendant's contacts with the forum."  *Porina*, 521 F.3d at 128 (quoting *Helicopteros Nacionales*, 466 U.S. at 414 n.8).  This relationship with the forum "must arise out of contacts that the defendant himself creates with the forum.  And the 'minimum contacts' analysis looks to the defendants' contacts with the forum . . . itself, not the defendant's contacts with persons who reside there."  *7 W. 57th St. Realty Co., LLC* v. *Citigroup, Inc.*, 2015 WL 1514539, at *8 (S.D.N.Y. Mar. 31, 2015) (quoting *Burger King* v. *Rudzewicz*, 471 U.S. 462, 475 (1985)) (internal quotation marks and citations omitted; ellipses in original).

The FLPs cannot plead specific jurisdiction based simply on allegations that Burgess-Allen and BAP acted as "sales agents" of Metro, "introduced customers to Metro" and "consulted on and negotiated transactions with or for Metro." *In re Aluminum Warehousing Antitrust Litig.*, 2015 WL 1378946, at *17 (citing TAC ¶¶ 254, 449, 605). Because their services for Metro were performed entirely from the United Kingdom, the contacts of Burgess-Allen and BAP with the United States are analyzed under the so-called "effects test." *7 W. 57th St. Realty Co., LLC*, 2015 WL 1514539, at *9; *Tarsavage* v. *CITIC Trust Co.*, Ltd., 3 F. Supp. 3d 137, 145 (S.D.N.Y. 2014) (Forrest, J.). As this Court has explained, "[w]here 'the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to plaintiff,' the Second Circuit uses an 'effects test,' by which 'the exercise of personal jurisdiction may be constitutionally permissible if the defendant expressly aimed its conduct at the forum." *Tarsavage*, 3 F. Supp. 3d at 145 (quoting *Licci ex rel. Licci* v. *Lebanese Canadian Bank*, 732 F.3d at 161, 173 (2d Cir. 2013)); *see also In re Aluminum Warehousing Antitrust Litig.*, 2015 WL 892255, at *2 (same). Under the effects test, "intentional wrongdoing is required for jurisdiction over an out-of-forum defendant." *Tarsavage*, 3 F. Supp. 3d at 146. It is not sufficient that "'harm in the forum is foreseeable.'" *Id.* (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013) ("*Terrorist Attacks II*")).

The TAC does not allege that Burgess-Allen or BAP engaged in any intentional wrongdoing expressly aimed at the United States. Rather, the FLPs allege that Burgess-Allen and BAP "'represent[ed] Metro exclusively' on all metals deals with customers in London and Europe." (TAC ¶ 254 (quoting GS-METRO-00004626)). Nor can the FLPs establish specific jurisdiction based on their allegation that Burgess-Allen devised the so-called "smart-ass plan"

- 14 -

that Metro allegedly implemented or that Burgess-Allen somehow aided or caused Metro to enter into transactions that allegedly "restrict[ed] the true aluminum output and lengthen[ed] the load-out queues from Metro's Detroit warehouses" by "introduc[ing] persons, including DB Energy, who made agreements with Metro."   (TAC ¶ 449.)   Such attenuated contacts alone are insufficient to plead intentional wrongdoing expressly aimed at the United States under the effects test. *See Terrorist Attacks I*, 538 F.3d at 94-95; *7 W. 57th St. Realty Co., LLC*, 2015 WL 1514539, at *11 (holding that allegations that LIBOR manipulation foreseeably caused interest rates to rise and the value of plaintiff's bond portfolio in turn to fall were insufficient to plead intentional wrongdoing expressly aimed at the United States under the effects test).

For example, in *Terrorist Attacks I*, the Second Circuit held that there was no personal jurisdiction over Saudi Arabian princes who allegedly knew that their donations to certain charities would be channeled to al Qaeda, which then used the money to finance the September 11th attacks.  538 F.3d at 95.  Applying the effects test, the Second Circuit held that "[e]ven assuming that the Four Princes were aware of Osama Bin Laden's public announcements" and planned attacks against the United States, "their contacts with the United States would remain far too attenuated to establish personal jurisdiction in American Courts."  *Id.*  Although "[i]t may be the case that acts of violence committed against residents of the United States were a foreseeable consequence" of funding those charities, the court stated that "foreseeability is not the standard for recognizing personal jurisdiction."  *Id.*  The Second Circuit also rejected the notion that the provision of financial assistance to an entity that carried out an attack on the United States is a basis for specific jurisdiction.  *Id.* at 96.[4]

---

[4]  In 2013, the Second Circuit re-affirmed its holding in *Terrorist Attacks I* that the mere provision of financial services to entities that sponsored attacks in the United States does not

(*footnote continued*)

As that case makes clear, the FLPs cannot plead specific jurisdiction based on the allegation that Burgess-Allen and BAP provided consulting and marketing services to Metro, which in turn entered into transactions in the United States involving aluminum. That is true even if the "restrict[ion] [of] true aluminum output" or the "lengthening [of] the load-out queues from Metro's Detroit warehouses" (TAC ¶ 449) was a foreseeable consequence of those defendants' consulting services or their introduction of potential customers to Metro. 538 F.3d at 95-96. The TAC thus does not plead specific jurisdiction over Burgess-Allen and BAP under the effects test.

### 3.   The Exercise of Personal Jurisdiction over Burgess-Allen and BAP Would Be Unreasonable in Any Event.

Even if the TAC did adequately allege general or specific jurisdiction, the Court still would need to consider "the second step of the due process inquiry," namely, "whether it is *reasonable* to exercise personal jurisdiction under the circumstances of the particular case." *In re Aluminum Warehousing Antitrust Litig.*, 2015 WL 892255, at *3 (emphasis in original) (quoting *Licci*, 673 F.3d at 60). As the Supreme Court has stressed, "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi*, 480 U.S. at 115 (citation omitted).

---

(*footnote continued*)

establish personal jurisdiction under the effects test. *See Terrorist Attacks II*, 714 F.3d at 676 ("These allegations are not enough for personal jurisdiction purposes. Just as we concluded in [*Terrorist Attacks I*] that the 'managers of . . . financial institutions' who allegedly 'knowingly and intentionally provided material support to terrorists' by 'actively sponsor[ing] and support[ing] the al Qa[e]da movement through several . . . subsidiaries' did not 'expressly aim' their conduct at the United States, the allegations against these various banking and financial institutions—as well as the individuals who managed them—similarly fall short." (internal citations omitted; ellipses and brackets in original)).

In assessing the reasonableness of personal jurisdiction, the Court should consider the following five factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interests in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Chloé*, 616 F.3d at 164-65 (citing *Asahi*, 480 U.S. at 113-14).  These factors weigh against the exercise of personal jurisdiction over Burgess-Allen and BAP.

First, it would be highly burdensome for Burgess-Allen and BAP, an individual and his two-person firm domiciled in the United Kingdom, to litigate this case in the United States.  BAP has no offices or employees here, and Burgess-Allen and his wife reside in England.  Second, neither New York nor the United States as a whole has any significant interest in exercising jurisdiction over Burgess-Allen and his firm.  The entity on whose behalf Burgess-Allen and BAP acted during the relevant period and who made all of the relevant decisions and entered into all of the relevant transactions—Metro—is already a defendant in this case.  Third, for the same reason, the FLPs need not include Burgess-Allen and his two-person firm as additional defendants here to obtain effective relief.  Fourth, the Court need not exercise personal jurisdiction over Burgess-Allen and BAP for the FLPs to obtain relevant discovery.  To the extent that Burgess-Allen used his Metro email address, that information is within Metro's possession, custody or control in the United States, and the FLPs otherwise can seek discovery from Burgess-Allen and BAP through appropriate international means.  Fifth, keeping Burgess-Allen and BAP in this case does not further any substantive social policies.  Both defendants are citizens of a foreign nation and subject to the laws of that nation, and their role here was simply as agents representing Metro in "deals with customers in London and Europe."  (TAC ¶ 254.)  In

sum, even if the FLPs could allege general or specific jurisdiction, the exercise of personal jurisdiction here still would be unreasonable under the circumstances of this case.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Robert Burgess-Allen and Burgess-Allen Partnership Ltd. as defendants because the Third Amended Complaint fails to plead a viable conspiracy claim against them under the antitrust laws.  In the alternative, those defendants should be dismissed for lack of personal jurisdiction.

Dated:  New York, New York
        July 13, 2015

Respectfully submitted,

/s/  Richard C. Pepperman, II
Richard C. Pepperman, II (*peppermanr@sullcrom.com*)
Suhana S. Han (*hans@sullcrom.com*)
William H. Wagener (*wagenerw@sullcrom.com*)
Yavar Bathaee (*bathaeey@sullcrom.com*)
Jennifer H. Blecher (*blecherj@sullcrom.com*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Attorneys for Defendants Robert Burgess-Allen and Burgess-Allen Partnership Ltd.*