## SCHEDULE A
### (Noble)

## I.     DEFINITIONS

1.     **Alcoa.**  The term "Alcoa" means Alcoa Inc. and any of its predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of its present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on its behalf.

2.     **Communication.**  The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

3.     **Concerning.**   The term "concerning" means relating to, referring to, indicating, describing, evidencing, or constituting**.**

4.     **Defendants.**  The term "Defendants" means Goldman Sachs Group, Inc., GS Power Holdings LLC, J. Aron & Company, Goldman Sachs International, Metro International Trade Services LLC, MITSI Holdings LLC, MCPEF Metro I., Inc., The London Metal Exchange (f/k/a The London Metal Exchange Limited) (the "LME"), LME Holdings Ltd., Honk Kong Exchanges & Clearing Ltd., JP Morgan Chase & Co., J.P. Morgan Securities plc, JPMorgan Chase Bank, N.A., J.P. Morgan Ventures Energy Corp., Henry Bath & Sons, Ltd., Henry Bath LLC, Glencore plc (f/k/a Glencore Xstrata, plc), Glencore Xstrata Inc., Glencore International AG, Glencore AG, Glencore UK Ltd., Glencore Ltd. (a/k/a Glencore US), Pacorini Metals AG, Pacorini Metals USA, LLC, Pacorini Vlissingen BV, Century Aluminum Company, and Century Aluminum of Kentucky, LLC, Robert Burgess-Allen, Burgess-Allen Partnership Ltd., Deutsche Bank AG, DB Energy Trading LLC, RK Capital Management LLP, Red Kite Group, International Commodity Services, LTD. (a/k/a "ICS"), Martin Abbott, Charles Li, Mathew Chamberlain, Garry Jones, Jacques Gabillon, Christopher Wibbelman, Michael Whelan, Stephen Branton-Speak, Graham

Hawkins, Peter Sellars, and Blythe Masters. The term "Defendant" means any one of the Defendants.

5. **Document.** The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

6. **Noble Americas.** "Noble Americas," "You" or "Your" means Noble Americas Corp., and any of its predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of its present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on its behalf.

7. **Litigation.** The term "Litigation" refers to any one or all of the consolidated actions within *In re Aluminum Warehousing Antitrust Litigation*, 13-md-2481-KBF, pending in the Southern District of New York.

8. **LME.** The term "LME" means the London Metal Exchange Limited ("LME") – the world center for trading industrial metals, including aluminum – as well as any of its predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of its present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on its behalf.

9. **Person.** The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

10.     **Senate Investigation and Report.**  The term "Senate Investigation and Report" means the two (2) year investigation by the United States Senate's Permanent Subcommittee on Investigation into the involvement of JP Morgan and other financial institutions in the physical commodities markets (**including** aluminum), which resulted in a hearing and bipartisan report entitled "Wall Street Bank Involvement with Physical Commodities" dated November 18, 2014.

## II.     INSTRUCTIONS

1.     The following rules of construction apply to all discovery requests:

(a)     **All/Any/Each.**  The terms "all," "any," and "each" shall each be construed as encompassing any and all.

(b)     **And/Or.**  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

(c)     **Number.**  The use of the singular form of any word includes the plural and vice versa.

2.     All Documents shall be produced in the order they are kept in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile thereof.

3.     These requests relate to all Documents which are in Your possession, custody or control.

4.     You shall produce the original of each Document described below or if the original is not in Your custody, then a copy thereof, and in any event, all non-identical copies which differ from the original or from the other copies produced for any reason, including, but not limited to, the making of notes thereon.

5.      If production of Documents is withheld on the ground of privilege, as to each such withheld Document, furnish in a text searchable privilege log information sufficient to identify the nature of the privilege (including work product) which is being claimed (and, if the privilege is governed by state law, indicate the applicable state privilege rule being invoked) as well as:

(a)      the type of document, *e.g.*, letter or memorandum;

(b)      the general subject matter of the document;

(c)      the date of the document;

(d)      the author of the document, the addressees of the document, and any other recipients, and the relationship of the author, addressees, and recipients to each other; and

(e)      all attorneys upon which the asserted privilege is predicated.

6.      Documents shall be produced in such fashion as to identify the department, branch or office in whose possession they were located and, where applicable, the natural person in whose possession they were found and the business address of each Document's custodian(s).

7.      Whenever a Document is not produced in full or is produced in redacted form, so indicate on the Document and state with particularity the reason or reasons it is not being produced in full and describe with particularity those portions of the Document which are not being produced.

8.      If a Document responsive to these requests was at any time in Your possession, custody or control but is no longer available for production, as to each such Document state the following information:

(a)      whether the Document is missing or lost;

(b)      whether the Document has been destroyed;

(c)     whether the Document has been transferred or delivered to another person and, if so, at whose request;

(d)     whether the Document has been otherwise disposed of; and

(e)     the circumstances surrounding the destruction of the Document and the date of its destruction.

9.      These document requests are deemed continuing in nature and any Documents or information secured after the service of Your responses, which would have been included in the responses had they been known or available at the time of the response, must be supplied in supplemental responses as required by the Federal Rules of Civil Procedure.

10.     No Document request shall be construed to include individual transactional Documents, unless otherwise specified.

11.     Unless otherwise mutually agreed-upon, all productions will be made in accord with the attached "ESI PRODUCTION PROTOCOL."

## III.     RELEVANT TIME PERIOD

Unless otherwise indicated, these requests relate to the period between January 1, 2006 and the present (the "Relevant Time Period").  Your responses should reflect information for that entire period.  Where Your responses relate to only a portion of that period, indicate the date or dates to which Your response relates.

## IV.     REQUESTS FOR THE PRODUCTION OF DOCUMENTS

REQUEST NO. 1:

Documents sufficient to show the terms on which You bought or sold primary aluminum between January 1, 2007 and the present, including by means of price components called the Platts' Metals Week US Transaction Price, Platts MW Midwest Premium, Midwest Premium, Midwest Transaction price, or other similar term.

5

REQUEST NO. 2:

Documents sufficient to show the volumes of purchases or sales made pursuant to contracts which included the Platts' Metals Week US Transaction Price, Platts MW Midwest Premium, Midwest Premium, Midwest Transaction price or other similar term.

REQUEST NO. 3:

All documents concerning any analysis of the impact (i) on aluminum premium prices of the storage of aluminum including storage in LME warehouses or aluminum storage in the Detroit area, or (ii) resulting from any financial incentive offered by any Defendant or other entity.

REQUEST NO. 4:

Documents sufficient to show the names and most recent addresses of the persons who purchased aluminum from, or sold aluminum to, You from February 1, 2010 to the present based upon terms which included, as a component of price, the Platts' Metals Week US Transaction Price, Platts MW Midwest Premium, Midwest Premium, Midwest Transaction premium price, or similar other terms.

REQUEST NO. 5:

All documents concerning any communication between You and any Defendant between January 1, 2009 and the present.

REQUEST NO. 6:

All documents You either sent to or received from any governmental, administrative, or regulatory body (including, but not limited to, the United States Senate, Commodity Futures Trading Commission, Financial Services Authority, Financial Conduct Authority, the Bank of England) related to the aluminum market including, without limitation, aluminum trading, storage, or delivery in the United States.

REQUEST NO. 7:

All documents (including, without limitation, agendas, transcripts, preparation materials, audio or video recordings, presentations, minutes or meeting notes) prepared by or for Your management or Board of Directors about the Litigation, the Senate Investigation and Report, or any potential or actual investigation by the Commodity Futures Trading Commission, Financial Services Authority, Financial Conduct Authority, or any other governmental, administrative, or regulatory body concerning the aluminum market including, without limitation, aluminum trading, storage, or delivery in the United States.

REQUEST NO. 8:

All agreements between You and any Defendant or Alcoa concerning the storage and/or warehousing of aluminum in the United States (whether through LME or non-LME warehouses).

REQUEST NO. 9:

All documents concerning any incentives – including, without limitation, cash, discounts, offset of inbound logistics costs, agreements to hold warranted aluminum at rental rates which are below the published rates of the warehouse – offered or provided to You by any aluminum warehouse operated in the United States by any Defendant.

REQUEST NO. 10:

Documents sufficient to identify the details of any financing offered or provided to You by warehouses operated in the United States by any Defendant, including, without limitation, the interest rates, duration, and covenants attached to such financing.

REQUEST NO. 11:

Documents sufficient to identify the amount of aluminum delivered by You to LME and non-LME warehouses in the United States.

REQUEST NO. 12:

For aluminum owned by You that is stored in warehouses operated in the United States by any Defendant, documents sufficient to identify the:

(a)    tonnages of Your aluminum loaded in and out of each warehouse, on a daily, weekly, and monthly basis;

(b)    end of day stocks of Your aluminum in each warehouse; and

(c)    amount of Your aluminum held in each warehouse on- and off-warrant.

REQUEST NO. 13:

Documents sufficient to identify the total amount of P1020 aluminum or LME HG aluminum delivered and/or sold by You to physical customers, outside of the warehouse network, in the United States.

REQUEST NO. 14:

Documents sufficient to identify all warehousing and/or delivery charges paid by You for the storage of aluminum in the United States, including on- and off-warrant, and aluminum that was never on-warrant.

REQUEST NO. 15:

All communications You either sent to or received from any Defendant concerning:  (i) LME's rules, regulations, bylaws or policies concerning the warehousing and/or delivery of aluminum through LME warehouses, including any changes or proposed changes to the rules and regulations concerning the warehousing of aluminum; (ii) load-outs or load-out delays, or (iii) incentive payment agreements.

REQUEST NO. 16:

All communications between You and any Defendant concerning: (i) the warehousing and/or delivery of aluminum in the United States; or (ii) the trade, sale, or purchase of aluminum commodities or aluminum derivatives, including through LME.

REQUEST NO. 17:

Documents sufficient to identify all derivative transactions undertaken by You, including, without limitation, put options, call options, swaps, swaptions or commodity futures transactions, where the underlying value of the derivative was based on aluminum.

REQUEST NO. 18:

All documents concerning any analysis, study, or report concerning the warehousing of aluminum in the United States, including the storage fees or rental rates charged by the warehouses, the cost of freight and handling, delivery time, and pricing.

REQUEST NO. 19:

Documents sufficient to show the commercial terms on which You purchased and/or sold and the parties to whom You purchased and/or sold primary aluminum, where the said primary aluminum was delivered to or from a LME warehouse located in the United States.

REQUEST NO. 20:

All documents concerning (a) agreements by You to ship aluminum to Detroit LME warehouses, (b) the negotiations for such shipments and purchases or sales, and (c) any insistence or negotiation by You that the aluminum You were purchasing or selling be shipped to Detroit, or (d) Your aggregation of multiple sales for shipment to Detroit LME warehouses.

REQUEST NO. 21:

Documents sufficient to show transactions wherein You satisfied an LME aluminum forward contract by delivering a warrant for aluminum stored in a Detroit LME warehouse.

REQUEST NO. 22:

All documents concerning communications between You and the LME, including communications concerning (a) any LME Committees including the Warehouse Committee and/or the Aluminum Committee, (b) changes in rules, (c) load-outs or load-out delays, or (d) incentive payment agreements.

REQUEST NO. 23:

For any aluminum that was shipped to or from a Detroit LME warehouse, documents sufficient to show the identity of each party to whom You sold or from whom You purchased said aluminum.

REQUEST NO. 24:

Documents sufficient to show how You are structured at both the corporate level (*e.g.*, corporate parents, subsidiaries, and affiliates, etc.) and organizationally (*i.e.*, organizational charts identifying, by name and title, the person(s) having responsibility over each of Your divisions, subdivisions, departments, business units, and/or work groups, etc.).