UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE ALUMINUM WAREHOUSING ANTITRUST LITIGATION | MDL No. 2481 |
| This Document Pertains To: DIRECT PURCHASER CASES | Master Docket No. 13-md-2481-KBF |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO THE ZINC PLAINTIFFS' MOTION FOR LEAVE TO
<u>INTERVENE AND TO MODIFY PROTECTIVE ORDER</u>**

January 21, 2016

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ....................................................................................................................... 4

I.     THE ZINC PLAINTIFFS' MOTION TO INTERVENE SHOULD BE DENIED. ........... 4

       A.     The Zinc Plaintiffs Cannot Use Intervention In This Action To Seek
              Discovery In Support of Dismissed Claims In Another Action. ........................... 4

       B.     The Intervention Motion Is Futile Because, Even If Granted, It Would
              Provide No Basis for Reconsideration in *Zinc*. ...................................................... 7

       C.     The Intervention Motion Is Untimely. .................................................................... 9

              1.     The Zinc Plaintiffs Were Aware of the *Aluminum* Discovery and
                     Could Have Moved To Intervene Long Ago. ............................................ 9

              2.     Defendants Would Be Prejudiced By Modification of the
                     Protective Order or Relitigation of Their *Zinc* Motions to Dismiss. ........ 10

              3.     The Zinc Plaintiffs Will Not Be Unfairly Prejudiced If Intervention
                     Is Denied. ............................................................................................... 11

       D.     The Zinc Plaintiffs' Motion Does Not Present Common Questions of Law
              and Fact With *Aluminum*. ...................................................................................... 11

II.    THE ZINC PLAINTIFFS' REQUEST TO MODIFY THE PROTECTIVE
       ORDER SHOULD BE DENIED. .................................................................................... 12

       A.     The Zinc Plaintiffs Have Not Shown That The Protective Order Was
              Improvidently Entered Or That Extraordinary Circumstances Justify
              Modification. ........................................................................................................... 13

       B.     The Zinc Plaintiffs Have Not Shown That Defendants Could Not
              Reasonably Have Relied On The Protective Order. .............................................. 14

CONCLUSION ................................................................................................................... 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
  684 F.3d 36 (2d Cir. 2012)........................................................................7

*AT&T Corp. v. Sprint Corp.*,
  407 F.3d 560 (2d Cir. 2005)..............................................................4, 5, 12

*Calderon v. U.S. Dist. Ct.*,
  98 F.3d 1102 (9th Cir. 1996) ....................................................................5

*Charter Oak Fire Insurance Co. v. Electrolux Home Products, Inc.*,
  287 F.R.D. 130 (E.D.N.Y. 2012) ..............................................................13

*Daniels v. City of New York*,
  200 F.R.D. 205 (S.D.N.Y. 2001) ................................................................5

*Deangelis v. Corzine*,
  No. 11 Civ. 7866, 12 MD 2388, 2015 WL 9647531 (S.D.N.Y. Dec. 23, 2015) .................7, 9

*Diversified Group, Inc. v. Daugerdas*,
  217 F.R.D. 152 (S.D.N.Y. 2003) ................................................................6

*Dodona I, LLC v. Goldman, Sachs & Co.*,
  No. 10 Civ. 7497 (VM), 2015 WL 4652608 (S.D.N.Y July 30, 2015) .............................5, 12

*Frigerio v. United States*,
  No. 10 Civ. 9086 (SAS), 2011 WL 3477135 (S.D.N.Y. Aug. 5, 2011) ................................5

*Hughes v. LaSalle Bank, N.A.*,
  No. 02 Civ. 6384 (MBM) (HBP), 2004 WL 414828 (S.D.N.Y. Mar. 4, 2004)........................5

*In re Aluminum Warehousing Antitrust Litig.*,
  No. 13-md-2481 (KBF), 2014 WL 5801607 (S.D.N.Y. Nov. 7, 2014)..............................8

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation*,
  255 F.R.D. 308 (D. Conn. 2009)............................................................6, 12

*In re Health Mgmt. Sys. Inc. Sec. Litig.*,
  113 F. Supp. 2d 613 (S.D.N.Y. 2000)..........................................................7

*In re Petition of Austin*,
  No. 13 Misc. 252, 2013 WL 5255125 (S.D.N.Y. July 16, 2013) .........................................1, 5

*International Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*,
    No. 05 Civ. 2745 (JGK) (RLE), 2010 WL 779314 (S.D.N.Y. Mar. 2, 2010) ..............6, 14, 16

*Martindell v. Int'l Tel. & Tel Corp.*,
    594 F.2d 291 (2d Cir. 1979)...................................................................................................12

*Md. Cas. Co. v. W.R. Grace & Co.*,
    No. 83 Civ. 7451 (SWK) (LB), 1994 WL 419787 (S.D.N.Y. Aug. 10, 1994).......................13

*Med. Diagnostic Imaging, PLLC v. Carecore Nat'l, LLC*,
    No. 06 Civ. 7764 (CS), 2009 WL 2135294 (S.D.N.Y. July 16, 2009)........................13, 14, 15

*Meyer v. Zubak*,
    No. 97 Civ. 1393 (LMM), 2000 WL 145754 (S.D.N.Y. Feb. 8, 2000)....................................5

*Rockland Exposition, Inc. v. Alliance of Auto. Serv. Prov. of N.J.*,
    894 F. Supp. 2d 288 (S.D.N.Y. 2012)......................................................................................8

*Schrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995).......................................................................................................7

*SEC. v. Ashbury Capital Partners, L.P.*,
    No. 00 CV 7898 (RCC), 2001 WL 604044 (S.D.N.Y. May 31, 2001) ..................................10

*SEC v. TheStreet.com*,
    273 F.3d 222 (2d Cir. 2001)........................................................................................12, 14, 16

*Sequa Corp. v. GBJ Corp.*,
    156 F.3d 136 (2d Cir. 1998)..................................................................................................7, 8

*Stoner v. Walsh*,
    772 F. Supp. 790 (S.D.N.Y. 1991) ..........................................................................................5

*U.S. Postal Serv. v. Brennan*,
    579 F.2d 188 (2d Cir. 1978).....................................................................................................4

*United States v. Int'l Bhd. of Teamsters*,
    247 F.3d 370 (2d Cir. 2001).....................................................................................................7

*United States v. Pitney Bowes, Inc.*,
    25 F.3d 66 (2d Cir. 1994).........................................................................................................9

*United States v. Potamkin Cadillac Corp.*,
    697 F.2d 491 (2d Cir. 1983).....................................................................................................8

*United States v. Yonkers Bd. of Educ.*,
    902 F.2d 213 (2d Cir. 1990)...................................................................................................11

*USA Certified Merchs., LLC v. Koebel*,
    273 F. Supp. 2d 501 (S.D.N.Y. 2003)................................................................10

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
    956 F.2d 1245 (2d Cir. 1992)...........................................................................7

*Westerly Elecs. Corp. v. Walter Kidde & Co.*,
    367 F.2d 269 (2d Cir. 1966)............................................................................8

**Other Authorities**

7C Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc. (3d ed. 2007)...........................4, 10

Federal Rule of Civil Procedure 24(b) ................................................................. *passim*

Defendants Glencore Ltd. ("Glencore"), Pacorini Metals USA, LLC ("Pacorini USA"), Goldman, Sachs & Co., Goldman Sachs International and J. Aron & Company ("Goldman Sachs"), MITSI Holdings LLC and Metro International Trade Services LLC ("Metro"), Henry Bath LLC ("Henry Bath"), and J.P. Morgan Securities plc ("JPMorgan") submit this memorandum in opposition to the motion to intervene in this *Aluminum* action filed by Plaintiffs in *In re Zinc Antitrust Litigation*, No. 14-cv-03728-KBF ("Zinc Plaintiffs").

## PRELIMINARY STATEMENT

The stated purpose of the Zinc Plaintiffs' motion to intervene is to modify the Court's Protective Order in this action so that they can obtain discovery materials that they predict would support a motion for reconsideration of this Court's dismissal of the *Zinc* complaint.  The Zinc Plaintiffs' motion fails on multiple grounds, each sufficient to warrant denial.

*First*, the Zinc Plaintiffs should not be permitted to intervene in this action in an effort to obtain discovery to which they are not entitled in their own action.  "In federal court, pre-complaint discovery is not available to determine whether a claim for relief exists."  *In re Petition of Austin*, No. 13 Misc. 252, 2013 WL 5255125, at *1 (S.D.N.Y. July 16, 2013). Accordingly, once this Court dismissed all claims in the *Zinc* action (*Zinc*, ECF No. 155), the Zinc Plaintiffs no longer had any right to seek discovery in that action.  They should not be permitted to seek discovery *indirectly* through intervention in the *Aluminum* action when they admittedly have no right to seek such discovery *directly* in the *Zinc* action.

*Second*, the intervention motion is futile because any documents that the Zinc Plaintiffs might obtain through intervention would not provide a valid basis for the extraordinary remedy of reconsideration.  As this Court recognized in its order denying the Zinc Plaintiffs' request for an extension of time to move for reconsideration, "[t]he point of reconsideration is not to allow a party to beef up a deficient pleading with new material that with even reasonable diligence could

1

have been sought earlier." (*Zinc*, ECF No. 162.)  The Zinc Plaintiffs had ample time in which to seek to intervene in this action and modify the Protective Order before this Court issued its *Zinc* decision.  They did not do so, and they cannot now seek "reconsideration" based on a stratagem that they failed to pursue earlier.

*Third*, the intervention motion is untimely under Federal Rule of Civil Procedure 24(b).  The Zinc Plaintiffs could have sought to intervene long ago, but waited until after the Court and the parties had expended significant resources briefing, arguing, and deciding the *Zinc* motions to dismiss.  The Zinc Plaintiffs' undue delay in seeking intervention provides an independent reason for denying their motion.

*Fourth*, intervention also is not appropriate under Rule 24(b) because the *Zinc* and *Aluminum* actions do not present common questions of law and fact.  Rather, as the Zinc Plaintiffs have acknowledged, the two actions involve different markets, different metals, different facts, and different claims.

*Fifth*, the Zinc Plaintiffs have not satisfied the demanding standard for modifying protective orders under Second Circuit law.  They fail to show that the Protective Order in this action was "improvidently" entered by the Court, that "extraordinary circumstances" support its modification, or that Defendants could not have "reasonably relied" on the Protective Order after it was entered.

## **BACKGROUND**

The Zinc Plaintiffs filed their initial complaint on May 23, 2014, through lead counsel Linda Nussbaum and Christopher Lovell.  (*Zinc*, ECF No. 2.)  This was about a week after the same counsel signed, and a day after the Court entered, the Protective Order in this action. (*Aluminum*, ECF No. 381.)  Around the same time, on May 19, 2014, the first substantial

document production was made in *Aluminum* in response to document requests served by, among others, Ms. Nussbaum and Mr. Lovell.  Bathaee Decl. Exs. 1-3.

The Zinc Plaintiffs thereafter sought and obtained several extensions of time to file a consolidated amended complaint in *Zinc*, in part "so that Plaintiffs may continue to develop their claims in light of the Court's three recent opinions and orders in *Aluminum*."  (*Zinc*, ECF Nos. 78, 79, 84, 101.)  The Zinc Plaintiffs ultimately filed their consolidated amended complaint on June 17, 2015 (*Zinc*, ECF No. 106), more than a year after they filed their original complaint.  A corrected consolidated amended complaint was later filed on September 28, 2015.  (*Zinc*, ECF No. 138.)

Following extensive briefing and argument, the Court on January 7, 2016, dismissed Counts I and II of the *Zinc* amended complaint with prejudice – fully resolving all claims against Goldman Sachs, Metro, Henry Bath, and JPMorgan – and dismissed Counts III and IV with a limited right to replead against Pacorini USA and Glencore.  (*Zinc*, ECF No. 155.)  In denying leave to amend Counts I and II, the Court observed that the Zinc Plaintiffs had been given "ample opportunity to construct their pleadings in accordance with the teachings of this Court's decisions in *Aluminum I* and *Aluminum II*."  (*Id.* at 85.)

On January 8, 2016, just one day after the Court issued its *Zinc* decision, the Zinc Plaintiffs sent the Zinc Defendants an email stating:  "Counsel:  Given the Court's opinion yesterday, we are suspending our responses to defendants' outstanding discovery requests until further notice."  Bathaee Decl. Ex. 4.  In so doing, the Zinc Plaintiffs acknowledged that the dismissal of their complaint had terminated the parties' rights to seek discovery in *Zinc*.

## ARGUMENT

**I.    THE ZINC PLAINTIFFS' MOTION TO INTERVENE SHOULD BE DENIED.**

The Court has broad discretion to deny the Zinc Plaintiffs' motion for permissive intervention under Fed. R. Civ. P. 24(b).  *See AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005); *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978) ("Permissive intervention is wholly discretionary with the trial court."); *see also* 7C Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc. § 1913 (3d ed. 2007) ("[E]ven though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention.").

The Court should exercise its discretion to deny intervention here because (i) intervention in support of dismissed claims would be improper, (ii) evidence obtained through intervention would not provide a valid basis for reconsideration of the dismissal of the *Zinc* action, (iii) the intervention motion is untimely, and (iv) the Zinc Plaintiffs have not shown that common questions of law and fact support intervention.

### A.    The Zinc Plaintiffs Cannot Use Intervention In This Action To Seek Discovery In Support of Dismissed Claims In Another Action.

The Zinc Plaintiffs seek to intervene and modify the Protective Order in this case in an effort to obtain access to documents produced in *Aluminum*.  The Zinc Plaintiffs attempt to justify their motion by arguing that these documents would "otherwise be discoverable" in *Zinc* if the Zinc Plaintiffs were to "conduct[] their own discovery" in that case.  (Zinc Pls.' Mem. at 7 [*Aluminum*, ECF No. 873].)  This argument ignores the Court's dismissal of the *Zinc* action. (*Zinc*, ECF No. 155.)  Because that action has been dismissed, the Zinc Plaintiffs are not entitled to seek discovery in *Zinc* at all, much less to intervene in *Aluminum* to seek discovery in support of their dismissed *Zinc* claims.

Courts consistently reject efforts to intervene and gain access to discovery materials for use in separate actions in which discovery has closed or in which the plaintiff's claims already have been rejected. *See, e.g., AT&T*, 407 F.3d at 562 (affirming denial of intervention sought to obtain discovery materials produced in federal court for use in pending state court litigation where discovery period in state court action had closed); *Dodona I, LLC v. Goldman, Sachs & Co.*, No. 10 Civ. 7497 (VM), 2015 WL 4652608, at *4 (S.D.N.Y July 30, 2015) (same).

Here, the reasons for rejecting intervention are even stronger. The *Zinc* action has been dismissed in its entirety. As a result, the Zinc Plaintiffs have no pending claims. Furthermore, the Zinc Plaintiffs have conceded that discovery is no longer appropriate in *Zinc* by notifying the Zinc Defendants that they do not intend to respond to the Zinc Defendants' discovery requests because of the dismissal of their claims. Bathaee Decl. Ex. 4. This concession is consistent with the settled rule that, "[i]n federal court, pre-complaint discovery is not available to determine whether a claim for relief exists." *In re Petition of Austin*, 2013 WL 5255125, at *1. Because discovery would not be proper in the *Zinc* action itself, it follows *a fortiori* that the Zinc Plaintiffs should not be permitted to procure discovery through the back-door expedient of intervening in the *Aluminum* action. *See, e.g., AT&T*, 407 F.3d at 562; *Frigerio v. United States*, No. 10 Civ. 9086 (SAS), 2011 WL 3477135, at *1 (S.D.N.Y. Aug. 5, 2011) ("The American legal system does not permit pre-action discovery."); *Daniels v. City of New York*, 200 F.R.D. 205, 209 n.7 (S.D.N.Y. 2001) ("Pre-action discovery is generally not permitted.").[1]

---

[1] *See also Calderon v. U.S. Dist. Ct.*, 98 F.3d 1102, 1106 (9th Cir. 1996) ("[T]he Federal Rules of Civil Procedure do not permit pre-complaint discovery."); *Hughes v. LaSalle Bank, N.A.*, No. 02 Civ. 6384 (MBM) (HBP), 2004 WL 414828, at *1 (S.D.N.Y. Mar. 4, 2004) ("A litigant may not use discovery to determine whether there is a cause of action."); *Meyer v. Zubak*, No. 97 Civ. 1393 (LMM), 2000 WL 145754, at *3 (S.D.N.Y. Feb. 8, 2000) ("[T]he purpose of discovery is not to enable [plaintiff] to determine whether he has a viable claim."); *Stoner v. Walsh*, 772 F. (continued…)

The cases cited by the Zinc Plaintiffs do not support a contrary conclusion; they either support Defendants or are based on different facts.  For example, in *International Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*, No. 05 Civ. 2745 (JGK) (RLE), 2010 WL 779314, at *8-9 (S.D.N.Y. Mar. 2, 2010), intervention was granted to a non-party with litigation pending in Brazil, but modification of the protective order and access to discovery was denied because of the differences between the Brazilian action and the Southern District action.  Similarly, in *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation*, 255 F.R.D. 308, 313-14 (D. Conn. 2009), intervention and modification were granted, but under circumstances sharply different from the circumstances here:  (i) the intervenor had a pending action in Canada based on an identical nucleus of operative facts, (ii) the Canadian litigation was ongoing and discovery in that action was not closed, and (iii) the discovery sought by the intervenor was not foreclosed in the Canadian action.[2]

The Zinc Plaintiffs do not cite a single case in which a court has allowed intervention in support of pre-complaint discovery or in an effort to revive previously-dismissed claims through a motion for reconsideration.  This Court should decline to be the first to allow such an extraordinary procedure.

---

Supp. 790, 800 (S.D.N.Y. 1991) ("The purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists.").

[2] The other case cited by the Zinc Plaintiffs to support intervention is even further afield.  In *Diversified Group, Inc. v. Daugerdas*, 217 F.R.D. 152, 157-58 (S.D.N.Y. 2003), a motion to intervene was brought by a journalist and was not directed at discovery materials.  It was granted as to certain sealed judicial documents based on the public's presumptive access to such documents, but was denied as to other materials as to which there was no presumptive right of public access.

**B.     The Intervention Motion Is Futile Because, Even If Granted, It Would Provide No Basis for Reconsideration in *Zinc*.**

The intervention motion also should be denied because it cannot fulfill its intended purpose of providing support for a motion for reconsideration of the *Zinc* dismissal.  Under Second Circuit law, newly-discovered evidence will not support a motion for reconsideration unless the evidence previously was unavailable despite the exercise of due diligence.  Here, the Zinc Plaintiffs seek access to *Aluminum* discovery materials to which they could have sought access long before the dismissal.  Accordingly, intervention should be denied as futile.

As the Court well knows, reconsideration is an "extraordinary remedy to be employed sparingly."  *Deangelis v. Corzine*, No. 11 Civ. 7866, 12 MD 2388, 2015 WL 9647531, at *2 (S.D.N.Y. Dec. 23, 2015) (quoting *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)); *see also Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("Reconsideration will generally be denied . . . .").  "[It] is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'"  *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

A motion for reconsideration therefore must be premised on "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citation omitted).  Furthermore, for "new evidence" to justify reconsideration, a plaintiff must show that it was "justifiably ignorant" of the new materials "despite due diligence" in seeking to procure them.  *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001).  In other words, as this Court stated in its Order issued yesterday, "[t]he point of reconsideration is not to allow a party to beef up a deficient pleading with new material that with

even reasonable diligence could have been sought earlier." (*Zinc*, ECF No. 162.) *See also United States v. Potamkin Cadillac Corp.*, 697 F.2d 491, 493 (2d Cir. 1983) ("[T]he movant must present evidence that is 'truly newly discovered or . . . could not have been found by due diligence.'") (quoting *Westerly Elecs. Corp. v. Walter Kidde & Co.*, 367 F.2d 269, 270 (2d Cir. 1966)); *Rockland Exposition, Inc. v. Alliance of Auto. Serv. Prov. of N.J.*, 894 F. Supp. 2d 288, 340-41 (S.D.N.Y. 2012) (requiring moving party to show that it "did not possess [evidence] at the time of the earlier decision and could not have obtained it despite . . . efforts to procure it").

The Zinc Plaintiffs cannot meet this stringent standard. Common counsel in *Zinc* and *Aluminum* signed the *Aluminum* Protective Order in May 2014; those same counsel have had access to Defendants' *Aluminum* productions from the outset; and the Zinc Plaintiffs were given more than a year in which to file their consolidated amended complaint. The Zinc Plaintiffs nonetheless waited until *after* the Court's dismissal of the *Zinc* action to seek leave to intervene in *Aluminum*. As the Court observed yesterday, "there is a significant amount of public material on the *Aluminum* case including public references to numerous facts. Had plaintiffs in Zinc believed those facts useful, or wanted more, undisclosed facts, they could have taken appropriate action to amend long ago or sought to intervene long ago." (*Zinc*, ECF No. 162.)

A motion for reconsideration premised on materials that the movant's counsel knew about and chose not to pursue earlier is no more than "a meritless attempt to take a 'second bite at the apple.'" *In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481 (KBF), 2014 WL 5801607, at *7 (S.D.N.Y. Nov. 7, 2014) (quoting *Sequa*, 156 F.3d at 144).[3] The Zinc Plaintiffs'

---

[3] Although the Zinc Plaintiffs agreed for a time not to serve discovery in the *Zinc* action (Zinc Pls.' Mem. at 1), they cannot invoke their own voluntary agreement to excuse their lack of diligence. Furthermore, the agreement to refrain from serving discovery in *Zinc* expired at the (continued…)

proposed motion for reconsideration thus provides no basis for asking this Court to reconsider its carefully-crafted, 87-page *Zinc* opinion, let alone for intervening in this action in an attempt to glean support for the "extraordinary remedy" of reconsideration.  *Deangelis*, 2015 WL 9647531, at *2.

### C.      The Intervention Motion Is Untimely.

A motion for permissive intervention must be timely.  *See* Fed. R. Civ. P. 24(b)(1).  To determine whether such a motion is timely, courts may consider: "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness."  *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994).  Consideration of these factors confirms that the Zinc Plaintiffs' motion to intervene should be denied as untimely.

### 1.      The Zinc Plaintiffs Were Aware of the *Aluminum* Discovery and Could Have Moved To Intervene Long Ago.

The Zinc Plaintiffs have long had notice of the *Aluminum* case and of the discovery materials they now seek to obtain.  As described above, the Zinc Plaintiffs filed their initial complaint on May 23, 2014, about a week after their counsel signed the *Aluminum* Protective Order.  (*Aluminum*, ECF No. 381.)  Around the same time, the first substantial document production was made in *Aluminum* pursuant to the agreed-upon Protective Order, and notice of that production was sent to the same counsel who represent the Zinc Plaintiffs.  Bathaee Decl. Ex. 1.  Counsel for the Zinc Plaintiffs likewise have been notified of all subsequent *Aluminum* productions.

---

latest when Defendants filed their motions to dismiss in August of 2015, and would not have barred a motion to intervene in *Aluminum* and modify the Protective Order in any event.

Counsel for the Zinc Plaintiffs thus have been aware of the *Aluminum* Protective Order and the discovery produced pursuant to that order since May 2014, more than twenty months ago.  The Zinc Plaintiffs could have moved to intervene and modify the *Aluminum* Protective Order at any time in the last twenty months, but elected not to do so.  Their motion to intervene is therefore untimely.  *See* 7C Wright & Miller § 1916 ("When the applicant appears to have been aware of the litigation but has delayed unduly seeking to intervene, courts generally have been reluctant to allow intervention.").

> **2.      Defendants Would Be Prejudiced By Modification of the Protective Order or Relitigation of Their *Zinc* Motions to Dismiss.**

As this Court knows, briefing, argument, and decision on the *Zinc* motions to dismiss involved a considerable expenditure of resources and effort by the Court and the parties.  Even before briefing on those motions commenced, the Zinc Plaintiffs were given more than a year – from May 2014 to June 2015 – in which to file their consolidated amended complaint.  The Zinc Plaintiffs could have moved to intervene and modify the *Aluminum* Protective Order at any time during that period, but chose not to do so.  Nor did they seek to intervene and modify the Protective Order during the seven-month period during which briefing, argument, and this Court's consideration of the motions to dismiss took place.  The Court and Defendants should not be put through an additional round of briefing, argument, and decision in the *Zinc* action pursuant to a motion for reconsideration merely because the Zinc Plaintiffs waited until *after* they lost the motions to dismiss to try their intervention gambit.

Both Defendants and the court system have an interest in the finality of the *Zinc* Order rendered after due consideration of the pleadings, briefing, and argument in that action.  *See USA Certified Merchs., LLC v. Koebel*, 273 F. Supp. 2d 501, 503 (S.D.N.Y. 2003) (reconsideration is disfavored "to ensure the finality of decisions") (quoting *SEC. v. Ashbury Capital Partners, L.P.*,

No. 00 CV 7898 (RCC), 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001)).  Granting the Zinc

Plaintiffs' belated motion to intervene would prejudice those interests.  Moreover, for the reasons

set forth in Part II below, Defendants also would be prejudiced by the Zinc Plaintiffs' effort to

modify the *Aluminum* Protective Order after Defendants reasonably have relied on that order.

The "prejudice" factor thus supports denial of the Zinc Plaintiffs' untimely request for

intervention.

### 3.    The Zinc Plaintiffs Will Not Be Unfairly Prejudiced If Intervention Is Denied.

Because the Zinc Plaintiffs chose to delay their motion to intervene, any prejudice

allegedly arising from that decision cannot be cited as a reason to grant intervention.

Furthermore, the Zinc Plaintiffs will not suffer any prejudice from a denial of their intervention

motion because its only purpose is to support a futile motion for reconsideration.  *See United

States v. Yonkers Bd. of Educ.*, 902 F.2d 213, 219 (2d Cir. 1990) (affirming denial of intervention

to pursue appeal where movant "did not suffer real prejudice" because proposed appeal "would

have stood little chance of success").

For all these reasons, the motion to intervene should be denied as untimely.

### D.    The Zinc Plaintiffs' Motion Does Not Present Common Questions of Law and Fact With *Aluminum*.

In order to intervene, a party must "ha[ve] a claim or defense that shares with the main

action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  The Zinc Plaintiffs of

course do not have any pending claims after the dismissal of their complaint.  But even if they

did, they themselves have emphasized the separateness of the claims in the *Aluminum* and *Zinc*

actions.  Specifically, the Zinc Plaintiffs previously have explained:

> At a minimum, the aluminum cases and the zinc cases involve:  Different
> products; Different classes; Different class members; Different class periods;
> Different price premiums; Different claims; Different damages; Different

11

> geographic regions; Different warehouse operator defendants and queues; Different government investigations; and Different market dynamics.

(*Zinc*, ECF No. 8.)

Although both cases broadly assert antitrust claims related to metals, the Zinc Plaintiffs themselves assert that the factual allegations and claims in the cases are distinct.  Accordingly, intervention in, and more discovery from, the *Aluminum* case would not be warranted in respect of the *Zinc* case.  *See Dodona I*, 2015 WL 4652608, at *4 (finding no common question of law or fact as between a state-court litigation that involved two collateralized debt obligations ("CDOs") and a federal-court action against the same defendant that involved two distinct CDOs).  The situation here is decidedly different from the facts in the *EPDM* case relied on by the Zinc Plaintiffs.  In *EPDM*, intervention and modification were granted because the Canadian litigation was based on an identical alleged conspiracy, involving the identical product, with the only difference in the case being the location of the affected market and damages.  *See EPDM*, 255 F.R.D. at 316.

## II.  THE ZINC PLAINTIFFS' REQUEST TO MODIFY THE PROTECTIVE ORDER SHOULD BE DENIED.

Even if they could satisfy the standard for intervention, the Zinc Plaintiffs could not overcome the strong presumption against modification of protective orders in this Circuit.  As the Second Circuit has emphasized, "[i]t is 'presumptively unfair for courts to modify protective orders which assure confidentiality and upon which parties have reasonably relied.'"  *AT&T*, 407 F.3d at 562 (quoting *SEC v. TheStreet.com*, 273 F.3d 222, 230 (2d Cir. 2001)).  "Once a court enters a protective order and the parties rely on that order, it cannot be modified 'absent a showing of improvidence in the grant' of the order or 'some extraordinary circumstance or compelling need.'"  *Id.* at 562 (quoting *Martindell v. Int'l Tel. & Tel Corp.*, 594 F.2d 291, 296 (2d Cir. 1979)); *see also Dodona I*, 2015 WL 4652608, at *4 (citing *AT&T*, 407 F.3d at 562).

The Zinc Plaintiffs do not even acknowledge this presumption against modification of protective orders, much less overcome it.

A.   **The Zinc Plaintiffs Have Not Shown That The Protective Order Was Improvidently Entered Or That Extraordinary Circumstances Justify Modification.**

The Zinc Plaintiffs do not argue that the Protective Order – signed by some of the same lawyers who bring the instant motion – was improvidently entered by the Court.  Nor do they identify any extraordinary circumstance or compelling need that justifies modification of the Protective Order.  Their failure to make this showing distinguishes their motion from that in *Charter Oak Fire Insurance Co. v. Electrolux Home Products, Inc.*, 287 F.R.D. 130 (E.D.N.Y. 2012), a case on which the Zinc Plaintiffs heavily rely.  In *Charter Oak*, the plaintiff sought to modify the protective order *in its own case* so that it could use discovery materials in other litigation against the same defendant involving the same product defect.  The court found that the same plaintiff could have obtained the same discovery materials from the same defendant in the other litigation, so it made sense to modify the protective order there.  287 F.R.D. at 134.

Instead of identifying a compelling and extraordinary need, the Zinc Plaintiffs simply assert that allowing them access to unidentified documents covered by the *Aluminum* Protective Order would "assist them in the prosecution of the *Zinc* litigation."  (Zinc Pls.' Mem. at 5.) Courts in this district have held, however, that avoiding duplicative discovery or facilitating efficiency in a merely similar case does not qualify as an extraordinary circumstance that warrants modification of a protective order.  *See, e.g.*, *Med. Diagnostic Imaging, PLLC v. Carecore Nat'l, LLC*, No. 06 Civ. 7764 (CS) (THK), 2009 WL 2135294, at *2 (S.D.N.Y. July 16, 2009) (rejecting modification of protective order to "eliminate the need for expensive, complex, and largely duplicative discovery" in similar action); *Md. Cas. Co. v. W.R. Grace & Co.*, No. 83 Civ. 7451 (SWK) (LB), 1994 WL 419787, at *3 (S.D.N.Y. Aug. 10, 1994)

("Although fostering judicial economy and avoiding duplicative discovery are laudable goals – and perhaps would be sufficient motivation to modify a protective order in the Ninth or Tenth Circuits – they hardly amount to extraordinary circumstances or compelling need.").

     **B.**     **The Zinc Plaintiffs Have Not Shown That Defendants Could Not Reasonably Have Relied On The Protective Order.**

Absent a showing of improvidence in the grant or some extraordinary circumstance or compelling need, courts in this Circuit will modify protective orders only "where a litigant or deponent could not reasonably have relied" on the protections of the order.  *TheStreet.com*, 273 F.3d at 231.  For example, the presumption against modification will not apply to "protective orders that are on their face temporary or limited" because such orders "may not justify reliance by the parties."  *Id.*  In determining whether a party's reliance was unreasonable, courts consider: "(1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order."  *Int'l Equity Invs.*, 2010 WL 779314, at *4.  All four factors weigh against modification of the *Aluminum* Protective Order.

*First*, the Protective Order here is not temporary or limited.  By its terms, the order "survive[s] the termination of the litigation" (*Aluminum*, ECF No. 381 ¶ 21), and further provides that the Court "shall retain jurisdiction over all persons subject to this Order to the extent necessary to enforce any obligations arising hereunder" (*id.* ¶ 23).  Courts have found that such provisions weigh against a finding of unreasonable reliance.  *See, e.g.*, *Med. Diagnostic Imaging*, 2009 WL 2135294, at *4 ("As for the duration of the Protective Order, it explicitly provides that i[t] 'shall survive the final termination of this action,' and further provides that the Court shall retain jurisdiction over the Protective Order for purposes of enforcing it.  This supports a finding of reasonable reliance.") (citation omitted).

*Second*, the language of the Protective Order that the Zinc Plaintiffs seek to modify could not be clearer.  Paragraph 2 states:  "All Discovery Material produced or disclosed in connection with this action shall be used solely for the prosecution or the defense of this action (including any appeal therefrom) and for no other purpose."  (*Aluminum*, ECF No. 381 ¶ 2.)  As the *Medical Diagnostic Imaging* court explained, such a provision shows that the "parties' intent . . . was to preclude the dissemination of confidential material outside this litigation."  2009 WL 2135294, at *3.  Although that protection is subject to modification by the Court – by definition, any order is subject to the Court's modification – the possibility of modification "does not . . . undermine the parties' expectation that the Protective Order . . . will not be modified to allow confidential materials they produced in this litigation to be used in other litigation."  *Id*. at *3.  Such provisions are standard in litigation today because they minimize motion practice by enabling the parties to share discovery materials without getting into fact-specific disputes over relevance; that is possible only if the parties agree that discovery materials will not be used for collateral purposes such as spawning additional litigation.

*Third*, the Zinc Plaintiffs complain that "the Court did not review confidential designations before entering the Protective Order."  (Zinc Pls.' Mem. at 6.)  The notion that the Court should have reviewed Defendants' confidentiality designations before entering the Protective Order does not reflect the practicalities of modern litigation in general or this litigation in particular – and certainly does not mean that Defendants could not reasonably have relied on the Protective Order.  Although the Protective Order obviously does not contemplate the Court's prior review of all confidentiality designations, the order provides that the parties will "convene a joint telephone call with the Court to obtain a ruling" on any parties' objections to any designation.

*Fourth*, the nature of Defendants' reliance defeats the Zinc Plaintiffs' request. The Protective Order's provision limiting the use of discovery material produced in this action to the prosecution or defense of this action is consistent with the overall purpose of the presumption against modification of protective orders. *See TheStreet.com*, 273 F.3d at 230. This provision fosters the expedient and full production of relevant information and encourages candid deposition testimony based on the produced information, while minimizing the need for intervention by the Court. If, contrary to Second Circuit law, protective orders were easily modified and such provisions were not enforced whenever litigants in other lawsuits request the discovery materials, then parties would be more reluctant to produce marginally relevant discovery materials and more inclined to seek relief from the Court from overbroad requests. In response, the Zinc Plaintiffs simply argue that the Protective Order should be modified because the information they seek "would otherwise be discoverable in the *Zinc* litigation." (Zinc Pls.' Mem. at 7.) As previously noted, however, that is not true here because the Zinc Plaintiffs cannot now seek discovery in support of their dismissed claims.

*Finally*, an intervenor's "purpose in seeking the documents is another important factor when considering a request to modify." *Int'l Equity Invs.*, 2010 WL 779314, at *8. Here, the Zinc Plaintiffs seek relief from the Protective Order in an effort to obtain documents for use in support of a futile motion for reconsideration in *Zinc*. As the Court held yesterday in denying the Zinc Plaintiffs' request for an extension of time, the Zinc Plaintiffs cannot possibly satisfy the high standard for reconsideration by relying on documents produced in this action that they could have sought long ago. (*Zinc*, ECF No. 162.)

## **CONCLUSION**

For the reasons stated above, leave to intervene and to modify the Protective Order in this case should be denied.

Dated:  January 21, 2016                    Respectfully submitted,


                                            *s/ Robert D. Wick*
                                            Robert D. Wick (*rwick@cov.com*)
                                            Henry Liu (*hliu@cov.com*)
                                            COVINGTON & BURLING LLP
                                            One City Center
                                            850 Tenth Street, N.W.
                                            Washington, D.C.  20001
                                            Telephone: (202) 662-6000
                                            Fax: (202) 662-6291

                                            David W. Haller (*dhaller@cov.com*)
                                            COVINGTON & BURLING LLP
                                            The New York Times Building
                                            620 Eighth Avenue
                                            New York, New York  10018
                                            (212) 841-1057

                                            *Attorneys for Defendant Henry Bath LLC &
                                            JPMorgan Chase & Co.*


                                            *s/ Richard C. Pepperman II*
                                            Richard C. Pepperman II
                                            (*peppermanr@sullcrom.com*)
                                            Suhana S. Han (*hans@sullcrom.com*)
                                            Yavar Bathaee (*bathaeey@sullcrom.com*)
                                            SULLIVAN & CROMWELL LLP
                                            125 Broad Street
                                            New York, New York  10004-2498
                                            Telephone: (212) 558-4000
                                            Facsimile: (212) 558-3588

                                            *Attorneys for Defendants Goldman, Sachs & Co.,
                                            Goldman Sachs International, J. Aron & Company,
                                            MITSI Holdings LLC and Metro International
                                            Trade Services LLC*

*s/ Eliot Lauer*
Eliot Lauer (*elauer@curtis com*)
Jacques Semmelman (*jsemmelman@curtis.com*)
Chelsea McLean (*chelsea.mclean@curtis.com*)
CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP
101 Park Avenue
New York, NY 10178
Telephone: (212) 696-6000
Facsimile: (212) 697-1559

*Attorneys for Defendant Glencore Ltd.*


*s/ John M. Nannes*
John M. Nannes (*john.nannes@skadden.com*)
John H. Lyons (*john.h.lyons@skadden.com*)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 371-7500
Facsimile: (202) 661-9191

*Attorneys for Defendant Pacorini Metals USA,
LLC*