UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE ALUMINUM WAREHOUSING ANTITRUST LITIGATION | MDL No. 2481<br>Master Docket No.<br>13 MD 2481 (KBF) |
| This Document Relates To: | |
| *Agfa Corporation and Agfa Graphics, N.V. v. The Goldman Sachs Group, Inc.*, Case No. 1:14-cv-0211-KBF | **ECF CASE** |
| *Mag Instrument, Inc. v. The Goldman Sachs Group, Inc.*, Case No. 1:14-cv-00217-KBF | **MEMORANDUM IN SUPPORT OF PLAINTIFFS AGFA CORPORATION'S, AGFA GRAPHICS, N.V.'S, MAG INSTRUMENT, INC.'S, EASTMAN KODAK COMPANY'S, AND FUJIFILM MANUFACTURING U.S.A., INC.'S MOTION FOR LEAVE TO FILE THEIR SECOND JOINT AMENDED COMPLAINT** |
| *Eastman Kodak Company v. The Goldman Sachs Group, Inc.*, Case No. 1:14-cv-06849-KBF | |
| *FUJIFILM Manufacturing U.S.A., Inc. v. Goldman Sachs & Co.*, Case No. 1:15-cv-08307-KBF | |

**[REDACTED]**

**TABLE OF CONTENTS**

I.  INTRODUCTION .................................................................................................... 1

II. STATEMENT OF BACKGROUND AND SUMMARY OF ALLEGATIONS ..................... 3

III. ARGUMENT .................................................................................................... 6

    A.  Leave to Amend Shall Be Freely Given ........................................................... 6

    B.  The Allegations Adequately Tie the New Defendants to the Already Plausibly
        Alleged Conspiracy ......................................................................................... 7

    C.  IPs Have Otherwise Satisfied the Governing Standard for Amending
        Their Complaints ........................................................................................... 12

        1.  The Proposed Amendment Will Not Prejudice Defendants ....................... 12

        2.  IPs Have Not Unduly Delayed Amendment ............................................. 14

IV. CONCLUSION .................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Apex Oil Co. v. DiMauro,*
   822 F.2d 246 (2d Cir. 1987)....................................................................................7

*Block v. First Blood Associates,*
   988 F.2d 344 (2d Cir. 1993)..................................................................................12

*Bridgeport Music, Inc. v. Universal Music Grp., Inc.,*
   248 F.R.D. 408 (S.D.N.Y. 2008) ......................................................................2, 13

*Continental Ore Co. v. Union Carbide & Carbon Corp.,*
   370 U.S. 690 (1962)...............................................................................................8

*Duling v. Gristede's Operating Corp.,*
   265 F.R.D. 91 (S.D.N.Y. 2010) .......................................................................6, 14

*Foman v. Davis,*
   371 U.S. 178 (1962)...............................................................................................6

*In re Investors Funding Corp. of New York Sec. Litig.,*
   100 F.R.D. 64 (S.D.N.Y.1983) .............................................................................7

*In re Polyurethane Foam Antitrust Litig.,*
   86 F. Supp. 3d 769 (N.D. Ohio 2015).....................................................................7

*New Hampshire Ins. Co. v. Total Tool Supply, Inc.,*
   621 F. Supp. 2d 121 (S.D.N.Y. 2009)..................................................................12

*Ross v. American Express Co.,*
   35 F. Supp. 3d 407 (S.D.N.Y. 2014).....................................................................7

*Ruotolo v. City of New York,*
   514 F.3d 184 (2d Cir. 2008).................................................................................14

*State Teachers Ret. Bd. v. Fluor Corp.,*
   654 F.2d 843 (2d Cir. 1981).................................................................................14

*U.S. v. Catalano,*
   439 F.2d 1100 (2d Cir. 1971).................................................................................7

*U.S. v. Consolidated Packaging Corp.,*
   575 F.2d 117 (7th Cir. 1978) ........................................................................ *passim*

*U.S. v. Robinson*,
 354 Fed. Appx. 518 (2d Cir. 2009)................................................................7

*United States v. Apple, Inc.*,
 791 F.3d 290 (2d Cir. 2015)....................................................................8

*United States v. Cont'l Illinois Nat'l Bank & Trust Co. of Chicago*,
 889 F.2d 1248 (2d Cir. 1989)................................................................13

*Williams v. Citigroup Inc.*,
 659 F.3d 208 (2d Cir. 2011)....................................................................6

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure
 Rule 8 ................................................................................................12
 Rule 12(b)(6) ........................................................................................7
 Rule 15 ..........................................................................................2, 4, 6, 7

Individual Plaintiffs Agfa Corporation and Agfa Graphics, N.V. (together, "Agfa"), Mag Instrument, Inc. ("Mag"), Eastman Kodak Company ("Kodak"), and FUJIFILM Manufacturing U.S.A., Inc. ("Fujifilm" and, together with Agfa, Mag, and Kodak, the "IPs"), respectfully submit this memorandum in support of their motion for leave to file their Second Joint Amended Complaint.

## I.    INTRODUCTION

In its March 26, 2015 Opinion & Order, the Court ruled that Plaintiffs Agfa's, Mag's, and Kodak's Joint Amended Complaint ("JAC") plausibly stated a claim for relief under the Sherman Act against certain of the named Defendants.[1] (ECF No. 733.) Shortly before issuing the March 26, 2015 Opinion & Order, however, the Court dismissed certain Defendants, including Glencore International AG and Glencore AG, because no Plaintiff had set forth "any specific facts that suggest any participation by any one of these specific entities in the allegedly unlawful conduct." (ECF No. 729 at 6.) Instead, the Court found, "the claims as to them [were] based solely on corporate proximity." *Id.*[2]

With the benefit of discovery taken since the April 2015 filing of the JAC (ECF No. 745), IPs can now allege specific facts that tie additional (though related) Defendants JPMorgan Chase Bank, N.A., Glencore International AG, Glencore AG, and Pacorini Metals Vlissingen BV (together, the "New Defendants") to the conspiracy to artificially inflate regional premiums,

---

[1]     At the same time, the Court sustained the First Level Purchaser plaintiffs' motion for leave to amend to the extent those plaintiffs' proposed Third Amended Complaint was consistent with the JAC. (ECF No. 733 at 61.) The Court ruled that Plaintiffs could proceed against defendants Goldman, Sachs & Co., Goldman Sachs International, J. Aron & Company, Metro International Trade Services LLC, JPMorgan Securities plc, Henry Bath LLC, Glencore Ltd., and Pacorini Metals USA, LLC. These defendants are hereafter referred to as the "Current Defendants."

[2]     The First Level Purchaser class plaintiffs had named Glencore International AG and Glencore AG, along with Glencore plc, as defendants in their proposed Third Amended Complaint; by contrast, the JAC named only Glencore plc. In its March 4, 2015 Opinion & Order, the Court dismissed Glencore plc, the ultimate parent of the Glencore and Pacorini entities for lack of personal jurisdiction. ECF No. 728 at 2.

including the Midwest Premium and the Rotterdam Premium. Fujifilm already alleges these facts and names the New Defendants in its amended complaint which it filed, of right under Rule 15, on February 4, 2016. (*See* No. 1:15-cv-08307, ECF No. 35 (hereinafter "Fujifilm amended complaint" or "FAC").)

Through this motion, IPs seek leave to file a Second Joint Amended Complaint ("JAC2"), which would adopt the allegations of Fujifilm's operative amended complaint, to be supplemented only by the specific allegations relating to Agfa's, Mag's, and Kodak's respective purchases of aluminum – allegations that already have been made in the JAC. JAC2 would thereby bring all the IPs into one operative complaint, align the list of Defendants sued by the IPs, and help to further coordinate the aluminum warehousing litigation.

"[F]ederal courts have consistently granted motions to amend where, as here, 'it appears that new facts and allegations were developed during discovery, are closely related to the original claim, and are foreshadowed in earlier pleadings.'" *Bridgeport Music, Inc. v. Universal Music Grp., Inc.*, 248 F.R.D. 408, 415 (S.D.N.Y. 2008).[3] The new facts and allegations that tie each New Defendant to the already plausibly alleged conspiracy were developed in discovery from document and data productions as well as discovery responses.[4] They are closely related to IPs' original Section 1 Sherman Act claim against the Current Defendants.[5] And the IPs foreshadowed the participation of the New Defendants with allegations of conduct and

---

[3]     Unless otherwise noted, citations are omitted and emphasis is added.

[4]     Per the Court's discovery orders, IPs and Class Plaintiffs have coordinated their discovery efforts. IPs understand that Class Plaintiffs plan to seek leave to amend their operative complaint to mirror the substantive allegations of Fujifilm's amended complaint, thus bringing all Plaintiffs' allegations largely in line with one another.

[5]     Agfa, Mag, and Kodak did not originally name Defendants Goldman Sachs & Co. and J. Aron as Defendants in the JAC. They would allege a claim against these two Goldman entities in the JAC2. These Goldman entities are already named as Defendants by Fujifilm and the Class Plaintiffs. These entities have been participating in discovery at least since the Court's March 26, 2015 Order granting, in part, leave to amend.

transactions, such as the December 2011 Vlissingen swap, that involved affiliates of Current Defendants. (*See*, *e.g.*, ECF No. 745 (JAC), ¶¶5, 6, 8-9, 11-12, 18-20.)[6] Moreover, as discussed below, this motion is timely made and will not cause undue prejudice to any party, particularly where IPs seek leave to file an amended complaint that is already the operative complaint in the Fujifilm action.

Because IPs meet the liberal standard for amendment and the JAC2 will help further coordinate this action, IPs respectfully request that the Court grant this motion and allow IPs one week from the Court's order granting this motion to file the JAC2.

## II. STATEMENT OF BACKGROUND AND SUMMARY OF ALLEGATIONS

After the Court granted, in part, all Plaintiffs' motions for leave to amend, the parties commenced full discovery. Discovery to date has included the production of over 1,000,000 pages of documents, production of transactional data, and the use of interrogatories. While the parties are noticing depositions, none have yet been taken.

Through discovery, IPs learned facts relating to the New Defendants' involvement in the same conspiracy IPs always have alleged. For example, IPs learned the nature and extent to which Defendants Glencore International AG and Glencore AG participated in storing aluminum and canceling warrants in the United States. IPs further learned about JPMorgan Chase Bank's outsized aluminum holdings. Perhaps most importantly, IPs learned actionable information about the Vlissingen-Detroit warrant swap which instantaneously created a large queue at Pacorini Metals Vlissingen BV's warehouse and drove up the Rotterdam Premium.

---

[6] The above citations are limited to the JAC's introduction. Additional allegations foreshadow the participation of the New Defendants elsewhere in the JAC. For example, the word "Vlissingen" appears 31 times in the JAC.

IPs always have alleged that Pacorini Metals Vlissingen was the strategic European aluminum chokepoint and that warrant cancelation activity there played into the global conspiracy. *See*, *e.g.*, JAC, ¶11 ("Once the aluminum was warehoused into Detroit and Vlissingen, Defendants' trading operations canceled warrants for metal held there to increase dramatically their queue lengths. For example, in December 2011, JPM canceled warrants for 500,000 tonnes of aluminum stored in Vlissingen . . . instantly caus[ing] a large queue in Vlissingen – one that grew to more than 700 days."). On August 31, 2015, Agfa, Kodak, and Mag served interrogatories directed at discovering the identities of the persons (legal and natural) involved in a massive December 2011 Vlissingen swap. The U.S. Senate's Permanent Subcommittee on Investigations' report and exhibits (together, "Senate Report") had become publicly available in December 2014, after IPs had submitted the JAC as their proposed amended pleading. The Senate Report identified JPMorgan Chase Bank as one party to the massive swap, but it did not disclose the identity of the bank's counter-party. After several meet and confers concerning responses, in December 2015, Defendant JPM Securities plc provided verified responses identifying JPMorgan Chase Bank, N.A., and Glencore International AG as the parties to the Vlissingen swap.

On October 21, 2015, Fujifilm filed its original complaint. Because Fujifilm was not a party to the action, its complaint was based only on publicly available information, such as the JAC and the Senate Report, including allegations relating to the "merry-go-round" deals already known to involve Metro, the Goldman entities, and Glencore Ltd., among others. The Current Defendants answered Fujifilm's original complaint on January 15, 2016. With access to the discovery record and having the benefit of Current Defendants' answers, on February 4, 2016, Fujifilm filed its amended complaint, of right, under Rule 15.

In addition to strengthening allegations against the Current Defendants, Fujifilm's amended complaint added the New Defendants. Key allegations in Fujifilm's amended complaint relating to the New Defendants' participation in the conspiracy include that:



- Glencore International and JPMorgan Chase Bank engineered a massive swap and cancelation of warrants that caused a large, instantaneous queue at Pacorini Metals Vlissingen's warehouse. (*Id.*, ¶¶16, 60, 231-34);

- The Vlissingen swap was so large that it caused JPMorgan Chase Bank to violate its Tier 1 Capital requirements. (*Id.*, ¶236);



On or about February 18, 2016, counsel for the Current Defendants and JPMorgan Chase Bank agreed to answer Fujifilm's amended complaint within 60 days, rather than file motions to dismiss. A stipulation to that effect has been submitted to the Court. Counsel for these Defendants, however, indicated that they would oppose IPs' request for leave to file the JAC2. Counsel for Glencore Ltd. (who previously represented New Defendants Glencore International AG and Glencore AG in their earlier motions to dismiss), and counsel for Pacorini Metals USA, LLC (who previously represented Pacorini Metals AG in its earlier motion to dismiss), declined to accept service of summons on behalf of New Defendants Glencore International AG, Glencore AG, and Pacorini Metals Vlissingen BV, respectively. In lieu thereof, service via the Hague Convention is under way.

## III. ARGUMENT

### A. Leave to Amend Shall Be Freely Given

The standard for granting leave to amend a complaint is a liberal one and should be freely given in the absence of undue delay, bad faith or dilatory motive on the part of the movant or undue prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (referring to the "liberal spirit of Rule 15"); *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 97 (S.D.N.Y. 2010) (referring to Rule 15 as a "liberal standard"). "Applying this extremely liberal standard, . . . this Court is reluctant,

absent a ***strong showing*** of prejudice, to deny leave to amend, and thereby deprive a party of a conceivably valid cause of action . . . ." *In re Investors Funding Corp. of New York Sec. Litig.*, 100 F.R.D. 64, 65 (S.D.N.Y.1983).

## B. The Allegations Adequately Tie the New Defendants to the Already Plausibly Alleged Conspiracy

The Court has already ruled that IPs plausibly alleged a claim for relief under the Sherman Act arising from Defendants' alleged conspiracy to squeeze up regional premiums. (ECF No. 733 at 31-33, 61.) "'[O]nce a conspiracy is shown, only slight evidence is needed to link another defendant with it.'" *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 257 (2d Cir. 1987); *Ross v. American Express Co.*, 35 F. Supp. 3d 407, 438 (S.D.N.Y. 2014).[7] This burden is not onerous. *In re Polyurethane Foam Antitrust Litig.*, 86 F. Supp. 3d 769, 786 (N.D. Ohio 2015). "Even a single act may be sufficient to draw a defendant within the ambit of a conspiracy where the act is such that one may infer from it an intent to participate in the unlawful enterprise." *U.S. v. Consolidated Packaging Corp.*, 575 F.2d 117, 126 (7th Cir. 1978). *See also U.S. v. Catalano*, 439 F.2d 1100, 1102 (2d Cir. 1971) ("[o]nly one overt act was necessary to support the conspiracy conviction"); *U.S. v. Robinson*, 354 Fed. Appx. 518, 519 (2d Cir. 2009) (summary order) (conspiracy conviction affirmed where defendant was "named as a participant in six of the eighty-two overt acts").

Moreover, the Supreme Court has held that courts, when viewing evidence of conspiracy, should not "tightly compartmentaliz[e] the various factual components and wip[e] the slate clean after scrutiny of each. The character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole."

---

[7] The Court previously discussed the proper legal standard to evaluate proposed pleadings. *See* ECF No. 733 at 18-21. Notably, the Court discussed that the Rule 15 futility standard is essentially the same legal standard as Rule 12(b)(6). *Id.* at 18, n.17.

*Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962).  *See also United States v. Apple, Inc.*, 791 F.3d 290, 319 (2d Cir. 2015) (same).

The new allegations in Fujifilm's amended complaint, which Agfa, Mag, and Kodak propose to adopt in the JAC2, adequately tie each of the New Defendants to the alleged conspiracy.  For example, ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████

As Fujifilm alleges, ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████

The agreement is also consistent with existing allegations that communications between Whelan and Casciano demonstrated that Glencore/Pacorini would not destock Goldman/Metro in Detroit. (*See* JAC, ¶¶6, 197) (email communication noting that Glencore/Pacorini "have no desire to nitpick us in Detroit otherwise Glencore would have done this long ago. Besides they know we [Goldman\Metro] would retaliate incrementally in some place like Vlissingen."); FAC, ¶¶8, 183 (same)).

Fujifilm's amended complaint alleges additional facts concerning the December 2011 Vlissingen █████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████    ███████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████[8] (*Id.*, ¶231.)

        █████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

---

[8]    JPMorgan Chase Bank's aluminum transactions around and as part of the Vlissingen swap were so large they caused the bank to violate its Tier 1 capital requirements. (FAC, ¶236.)

Following the Vlissingen swap, the Fujifilm amended complaint alleges that Defendants engaged in similar conduct in Vlissingen to build the queue and squeeze up the Rotterdam Premium. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Fujifilm's amended complaint further ties Glencore AG to the conspiracy. ████████

More generally, the Fujifilm amended complaint alleges that ████████████████

Furthermore, consistent with IPs' prior allegations that the trading companies controlled their warehouses, the Fujifilm amended complaint alleges that ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████

The Fujifilm amended complaint also clarifies the identities of the person involved in certain large warrant cancelations in 2012, which greatly expanded the Detroit queue (and drove up premiums). ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██

Consistent with prior allegations that Defendants took collective action to prevent changes to LME rules which might reduce the queues (*see* JAC, ¶¶278-84), the Fujifilm amended complaint includes allegations about ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████

The new fact allegations in Fujifilm's amended complaint, which IPs propose to adopt for the JAC2, provide far more than the slight evidence required to tie the New Defendants to the already plausibly alleged conspiracy. Moreover, these allegations fully address the Court's March 4, 2015 Opinion & Order concerning the lack of sufficient allegations concerning the New Defendants to meet the basic pleading standards of Rule 8. (*See* ECF No. 731.)

C.     **IPs Have Otherwise Satisfied the Governing Standard for Amending Their Complaints**

1. **The Proposed Amendment Will Not Prejudice Defendants**

In the Second Circuit, "[i]n determining what constitutes 'prejudice,' we consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction."[9] *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993); *see also New Hampshire Ins. Co. v. Total Tool Supply, Inc.*, 621 F. Supp. 2d 121, 123 (S.D.N.Y. 2009) ("'Prejudice may be found, for example, when the amendment is sought after discovery has been closed . . . . Undue delay [and] bad faith . . . are other reasons for denying a motion to

---

[9]     The third prong of this test is not applicable here, as IPs are the parties seeking to amend.

amend.'"); *Bridgeport Music, Inc. v. Universal Music Grp., Inc.*, 248 F.R.D. 408, 415 (S.D.N.Y. 2008) ("Moreover, federal courts have consistently granted motions to amend where, as here, 'it appears that new facts and allegations were developed during discovery, are closely related to the original claim, and are foreshadowed in earlier pleadings.'").

For the reasons discussed below, allowing IPs to file the JAC2 will not prejudice the Defendants.

### a. The Amended Complaint Will Not Require Defendants to Expend Significant Additional Resources

Permitting IPs leave to amend will not substantially change the discovery landscape in this action. To date, the parties have negotiated custodians, search terms, and a substantial production of documents has occurred. The bulk of the document discovery for the Current Defendants is underway. IPs now have a sufficient understanding of the case to target the remaining discovery needed from Current Defendants. That there may be some additional discovery does not constitute undue prejudice. *See Bridgeport Music, Inc.*, 248 F.R.D. at 414 ("[e]ven assuming that additional discovery would impose costs on [defendant] and the current defendants, '[a]llegations that an amendment will require the expenditure of some additional time, effort, or money do not constitute undue prejudice.'"); *United States v. Cont'l Illinois Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1255 (2d Cir. 1989) ("the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading").

### b. The Amended Complaint Will Not Significantly Delay the Resolution of the Dispute

Similar to the above argument, the JAC2 will also not cause a significant delay in the resolution of this action. The JAC2 offers no new plaintiffs or new causes of action. The parties

are still producing documents to meet the Court's March 26 deadline for substantial completion of document productions. Depositions have been noticed, but no depositions have been taken.

While the addition of the New Defendants will add to the discovery to be completed, any delay caused by that, when compared to the size of the litigation, does not rise to the level courts have found merits denial of a motion to amend. *See State Teachers Ret. Bd. v. Fluor Corp*., 654 F.2d 843, 856 (2d Cir. 1981) ("Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.").

### 2. IPs Have Not Unduly Delayed Amendment

IPs have not unduly delayed in seeking leave to amend. As noted above, IPs pursued timely written discovery concerning the critical facts involved in the 2011 Vlissingen swap. The information was not forthcoming until December 2015, after IPs challenged Defendants' objections. There has been no undue delay.

Even so, "[d]elay alone, in the absence of bad faith or prejudice, is not a sufficient reason for denying a motion to amend." *Duling*, 265 F.R.D. at 97 (citing *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008)). "Thus, the court may 'deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, ***and*** the amendment would prejudice'" other parties." (*Duling*, 265 F.R.D. at 97 (emphasis in original).) The standards adopted by the Second Circuit for finding prejudice due to delay are very high. As the Second Circuit opined in *State Teachers*, when overruling the district court's denial of a motion to amend:

> This is not a case where the amendment came on the eve of trial and would result in new problems of proof. At the time plaintiffs requested leave to amend, no trial date had been set by the court and no motion for summary judgment had yet been filed by the defendants. Also, it appears that the amendment will not involve a great deal of additional discovery.

654 F.2d at 856.

Here, IPs have sought leave to amend in a timely fashion. IPs filed their motion substantially before the close of discovery and before any depositions have occurred. IPs' proposed amendments do not assert new legal theories and do not constitute a sea change in this litigation. Instead, they build on the existing allegations, clarifying the parties and transactions involved in the conspiracy. Simply put, IPs' motion is a good-faith attempt to prosecute the claims asserted against the proper parties – parties IPs have previously suspected, but were unable to factually allege, were involved the conspiracy.

## IV.    CONCLUSION

IPs' motion seeks to bring Agfa, Kodak, and Mag in line with the operative complaint for Fujifilm so that all IPs may have the opportunity to prove their claims against the proper Defendants. For the above stated reasons, IPs' motion to amend their complaints should be granted. The Court should allow IPs seven days from the issuance of its order to file the JAC2.

DATED: February 19, 2016

Respectfully submitted,
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP


s/ Walter W. Noss
Christopher M. Burke (CB-3468)
Walter W. Noss (WN-0529)
Kristen M. Anderson
Stephanie Hackett
Jennifer Scott
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619-233-4565

Derek Y. Brandt (*pro hac vice*)
BRANDT LAW LLC
Po Box 487
Edwardsville, IL 62025
Telephone: 618-307-6116

Todd M. Schneider
Jason H. Kim
Kyle G. Bates
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Telephone:  415-421-7100

Garrett W. Wotkyns
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
8501 North Scottsdale Road, Suite 270
Scottsdale, AZ 85253
Telephone:  480-428-0144

*Counsel for Agfa Corporation and Agfa Graphics,
N.V.; Mag Instrument, Inc.; Eastman Kodak
Company; and FUJIFILM Manufacturing U.S.A.,
Inc.*

Christopher M. Santomassimo
NICOLL DAVIS & SPINELLA LLP
95 Route 17 South, Suite 316
Paramus, NJ 07652
Telephone:  201-712-1616

*Counsel only for Agfa Corporation and Agfa
Graphics, N.V.*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 19, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 19, 2016.

s/ Walter W. Noss
WALTER W. NOSS
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Tel: 619-233-4565
Fax: 619-233-0508
wnoss@scott-scott.com