UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE ALUMINUM WAREHOUSING ANTITRUST LITIGATION | MDL No. 2481<br>Master Docket No.<br>13 MD 2481 (KBF) |
| This Document Relates To:<br><br>*Agfa Corporation and Agfa Graphics, N.V. v. The Goldman Sachs Group, Inc.*, Case No. 1:14-cv-0211-KBF<br><br>*Mag Instrument, Inc. v. The Goldman Sachs Group, Inc.*, Case No. 1:14-cv-00217-KBF<br><br>*Eastman Kodak Company v. The Goldman Sachs Group, Inc.*, Case No. 1:14-cv-06849-KBF<br><br>*FUJIFILM Manufacturing U.S.A., Inc. v. Goldman Sachs & Co*., Case No. 1:15-cv-08307-KBF | ECF CASE<br><br>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS AGFA CORPORATION'S, AGFA GRAPHICS, N.V.'S, MAG INSTRUMENT, INC.'S, EASTMAN KODAK COMPANY'S, AND FUJIFILM MANUFACTURING U.S.A., INC.'S MOTION FOR LEAVE TO FILE THEIR SECOND JOINT AMENDED COMPLAINT** |

Individual Plaintiffs Agfa Corporation and Agfa Graphics, N.V. (together, "Agfa"), Mag Instrument, Inc. ("Mag"), Eastman Kodak Company ("Kodak"), and FUJIFILM Manufacturing U.S.A., Inc. ("Fujifilm" and, together with Agfa, Mag, and Kodak, the "IPs"), respectfully submit this reply memorandum in support of their motion for leave to file their Second Joint Amended Complaint ("JAC2").

**I.   IPS HAVE NOT EXPANDED THE SCOPE OF THEIR CLAIMS**

The vast majority of Defendants' opposition focuses on issues relating only to the Class complaint. The IPs will not address these points because they are irrelevant to IPs' motion.

As to the IPs, Defendants argue that IPs seek to "dramatically expand their scope of their claims." (ECF No. 896 at 1.) Defendants never explain how this argument applies to IPs'

motion.  Contrary to Defendants' argument, IPs neither expand nor propose to expand their claims.  From the beginning, IPs have alleged that Defendants conspired to manipulate regional premiums in violation of Section 1 of the Sherman Act.  The Joint Amended Complaint ("JAC") alleges that "Defendants conspired to manipulate the spot price of physically delivered aluminum, particularly the components of that price that reflects co-called regional premiums."  (ECF No. 745, ¶2.)  The JAC makes clear that the applicable regional premiums include the Midwest Premium, the Rotterdam Premium, and the CIF Japan Premium.  (*See*, *e.g.*, *id*., ¶¶18., 19 n.16, 121, 122.)  The JAC alleged IPs, including Agfa and Kodak, had purchased aluminum pursuant to supply contracts that incorporate these various regional premiums.  (¶¶33-34, 45.)  The Fujifilm Amended Complaint (and the proposed JAC2) contain the exact same allegations relating to relevant markets.  (*Compare* JAC, ¶144 *with* Fujifilm Amended Complaint, ¶130.)  Moreover, the IPs have long complained about Defendants' conduct in Europe, particularly in relation to the chokepoint Pacorini warehouse in Vlissingen.  (JAC, ¶240.)  Defendants likewise have long understood the global nature of IPs' claims.  For example, Defendants' Fourth Request for Production to Plaintiffs seeks detailed information from IPs related to the geographic location (on a worldwide basis) of IPs' aluminum purchases and suppliers.  (*See* Declaration of Walter W. Noss ("Noss Decl.") filed herewith, ¶2, Ex. 1.)  Accordingly, IPs have not expanded the scope of their claims and Defendants cannot claim to be prejudiced by granting leave to amend to add new Defendants.[1]

---

[1]  To the contrary, IPs stipulated to the dismissal of their remaining state law claims, leaving a single claim for relief under Section 1 of the Sherman Act.  (*See* ECF No. 875.)  This stipulation narrowed the scope of discovery required in this action.

## II. DELAYS REGARDING SERVICE AND BRIEFING ARE EASILY RESOLVED

Defendants complain that they will be severely prejudiced by the delay inherent in service under the Hague Convention and length of time required to brief anticipated motions to dismiss. This situation is easily resolved by the new foreign Defendants, who are represented by counsel for existing Defendants, accepting service and agreeing to an expedited briefing schedule for their motions to dismiss. IPs asked counsel whether they could accept service (without waiver of any defenses other than as to service), but only Defendant JPMorgan Chase Bank, N.A. agreed. (Noss Decl., ¶9.) Defendants are complaining about something that is within their power to rectify.

Even if continuing with the Hague Convention service and additional motion work related to the new foreign Defendants is required, it would not materially alter the existing schedule as Defendants suggest. As stated above, IPs have not expanded their claims; they merely seek to add the proper parties to the conduct alleged in the JAC and the Fujifilm Amended Complaint. Further, according to Defendants, Glencore AG is the same entity as Glencore Ltd., which is already a Defendant in this action. (ECF No. 896 at 2, n.1.) In its amended complaint, Fujifilm alleged that Glencore International AG conducted business on behalf of Glencore Ltd. and Glencore AG, and that Glencore International AG and Glencore AG shared the same employees, with the same addresses and telephone numbers. (Fujifilm Amended Complaint, ¶61.) Presumably, Defendant Glencore Ltd. has already produced, or is in the process of producing, all documents concerning Glencore International AG's involvement with Glencore Ltd. or Glencore AG in the types of conduct alleged by IPs in the JAC and Fujifilm Amended Complaint. As documents continue to be produced supporting the addition of the new Defendants in this Action, Defendants can hardly complain about IPs' lack of diligence

or delay as they have had the sole possession of this information since at least the beginning of discovery.

Defendants JPMorgan and Goldman Sachs have already produced, or are in the process of producing, documents regarding IPs' allegations related to their activities with Pacorini Metals Vlissingen B.V. and their aluminum holdings in Europe. Plaintiffs have already requested the same from Glencore Ltd. (or Glencore AG). Therefore, any minimal additional discovery should not be burdensome or cause delay, such that it would prejudice the new Defendants. *See Salomon v. Adderley Industries, Inc.*, 960 F. Supp. 2d 502, 508 (S.D.N.Y. 2014) (finding no undue prejudice where amended pleadings would not cause defendant to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute).

## III. IPS DILIGENTLY SOUGHT TARGETED DISCOVERY OF THE PROPER IDENTITIES OF THE GLENCORE AND PACORINI ENTITIES

Defendants argue that IPs were not diligent in pursuing their proposed amendment, but this is simply wrong. Not only did IPs not have access to information necessary to identify all parties to the 2011 Vlissingen swap, but Defendants Glencore Ltd. and JPMorgan Securities plc actively sought to withhold that information.

Defendants base their argument that IPs were not diligent on the contention that the identities of the new Defendants should have been known based on a draft term sheet produced by Defendant JPMorgan Securities plc. This document merely identifies "Glencore." While Defendants now argue that this was sufficient to establish the identity of the proper party (ECF No. 896 at 20-21), the Court previously instructed IPs that "grouping defendants who are affiliated together into a single name (*e.g.*, '"JP Morgan' or 'Glencore' to encompass affiliated trading and warehousing operations) for pleading purposes does not resolve this larger issue

[providing proper notice under Rule 8]." (ECF No. 571 at 82.)  The Court noted that IPs "should take into account the arguments raised regarding lack of specificity as to particular entities." *Id*. at 82-83.  Counsel for Glencore Ltd. certainly took note and raised these "group pleading" arguments in support of Glencore Ltd.'s and Glencore plc's opposition to motions for leave to file the JAC.  *See, e.g.*, Memorandum of Glencore Ltd. in Opposition to Motions for Leave to File Amended Complaints and in Support of Motion to Dismiss Amended Complaint at 3, filed under seal December 8, 2014 ("continue to impermissibly group Glencore Ltd. together with its corporate affiliates . . . Glencore International AG . . . and make allegations using the amorphous term 'Glencore'"); ECF No. 657 at 14 ("Plaintiffs continue to improperly utilized terms such as 'Glencore'").  Doubtless, Glencore Ltd. (and any other Glencore entity) would have made the same argument had IPs attempted to include them based merely on identifying "Glencore."

To determine the identities of the persons involved, in August 2015, IPs served targeted interrogatories which referenced the draft term sheet on Defendants JPMorgan Securities plc, Glencore Ltd., Henry Bath, LLC, and Pacorini Metals USA, LLC.  (Noss Decl., Ex. 2.) Interrogatory No. 1 asked those Defendants to "Identify all persons involved in the December 2011 Aluminum Trade."  (*See id*. at 3.)  IPs' interrogatories made clear that "persons" was defined under Local Rule 26 to include both legal and natural persons.

In response, Defendants raised boilerplate objections, including that the interrogatory was "not reasonably calculated to lead to the discovery of admissible evidence," even though the Vlissingen swap is alleged in the JAC.  (*See* Noss Decl., Exs. 3 at 5-6 & 4 at 7.)  Defendant JPMorgan Securities – which produced the draft term sheet – objected on grounds that it was information not in its possession, custody, or control.[2]  Glencore made a similar objection.

---

[2] After the filing of the Fujifilm Amended Complaint, counsel for Fujifilm and JPMorgan

Though the Local Rules clearly define a person to include a legal entity (and IPs specifically referenced identification of legal entities in the interrogatories), no Defendant identified a single legal entity. Rather than simply answer the interrogatory, Defendants offered to search for and produce documents in response to the interrogatory (subject to additional caveats that were unacceptable to IPs).[3] *See, e.g.*, Noss Decl., Exs. 3, 4. Only after being threatened with motion practice and potential Court intervention, Defendants finally provided a verified response in December 2015, identifying Glencore International AG as the proper Glencore entity to the Vlissingen swap. IPs cannot be found to have lacked diligence in determining the proper parties to the Vlissingen swap when Defendants resisted IPs' targeted attempt to acquire this information for months.

Defendants also complain that the amendments to add in the new Defendants are based only on 14 new documents, apparently suggesting that there was very little new information. Whether IPs supported their allegations relating to the new Defendants with 14 or 140 documents is meaningless. The standard is whether their allegations meet the standards of Rule 8, and this is the standard IPs meet. Moreover, while the parties have been diligently working to substantially complete document discovery by the March 25, 2016 deadline, Defendants have produced the majority of their documents since Fujifilm filed its amended complaint. (Noss Decl., Ex 5.) Defendant Glencore Ltd. has produced over 800,000 pages (or 95% of its total production) in March 2016. Likewise, Pacorini has produced about 130,000 pages in March

---

Securities plc and JPMorgan Chase Bank, N.A. met and conferred about whether additional discovery would be necessary from JPMorgan Chase Bank, N.A. (Noss Decl., ¶8.) During this meet and confer, counsel for Fujifilm learned that no additional discovery from JPMorgan Chase Bank, N.A. would be required since its discovery was already being produced through JPMorgan Securities plc's custodians. (*Id.*) Counsel for JPMorgan suggested that JPMorgan Securities plc's custodians may actually have been employees of the bank. (*Id.*)

[3] At the time of Glencore Ltd.'s October 5, 2015 interrogatory response, its entire document production in the case consisted of a single three-page document.

2016 (or 77% of its total production). Other Defendants continue to make productions, including, just today, 770,000 pages by Defendant JPMorgan. (*See id*.)

IV. **THERE WERE NO "PRIOR ASSURANCES" RELATING TO THE NOVEMBER 2015 FUJIFILM STIPULATION**

In a section describing Fujifilm's Original and Amended Complaint, Defendants make reference to so-called "prior assurances" ostensibly made by Fujifilm. ECF No. 896 at 7 ("despite its prior assurances, Fujifilm filed an amended complaint"). But Fujifilm made no assurance that it would not amend its complaint. Rather, the stipulation Fujifilm entered into with the Defendants accurately described its allegations as "substantially similar" to those asserted in the JAC (which remains true to this day), and simply identified that the Defendants (who already were litigating the case) accepted service of the complaint. Indeed, the same stipulation that Defendants seem to think gave some "prior assurance" about amendments, provided that Defendants retain their rights to raise any defense under Rule 12 and any common law defenses "in response to the FUJIFILM Complaint or any operative or *amended complaint* that might be filed relating to this Action." ECF No. 868 at 3 (emphasis added). And while Defendants complain Fujifilm waited until after Defendants answered (and thus, had the benefit of the answer), it was Defendants who requested almost *ninety* days until January 15, 2016 to file answers to a complaint whose allegations were substantially similar (and, in fact, in numerous instances identical) to those in the JAC filed on April 9, 2015.

V. **DEFENDANTS' SUPPOSED NEED FOR THIRD-PARTY DISCOVERY IS IRRELEVANT TO IPS' CLAIMS**

While Defendants claim that they will suffer severe prejudice because they will need to conduct additional third-party discovery, Defendants never explain how this relates to IPs' motion or why they would need it to oppose IPs' claims.

7

## VI. THE SCHEDULING ORDER IMPOSED NO DEADLINE TO AMEND

While the Court's Scheduling Order set forth deadlines to file the JAC, the Scheduling Order set no deadline for filing any subsequent amendments. Defendants interpret the lack of the deadline to file any additional amendments to mean that the only amended pleading that would be allowed is the JAC on April 9, 2015. But this interpretation would have cut off IPs' ability to amend without having any discovery from Defendants JPMorgan, Henry Bath, Glencore, and Pacorini.[4] Such an interpretation would deprive IPs of the benefit of using discovery to identify proper Defendants.

Defendants argue that IPs never mentioned that they might again seek leave to amend their complaints when they were negotiating a proposed Joint Scheduling Order. ECF No. 896 at 6. However, IPs were not required to stipulate to or give notice of a potential amendment to the JAC. *See id*. at 508 ("Plaintiffs cannot be faulted for failing to stipulate to a later amendment deadline just in case discovery revealed other potentially liable parties."). Regardless, good cause exists to allow IPs to amend the JAC because they have exercised diligence in adding new Defendants and additional facts regarding the same claims alleged in the JAC. *See Salomon*, 960 F. Supp. 2d at 507-08 (finding good cause existed to amend pleadings where plaintiffs learned about the putative employer status of the additional parties through discovery after the expiration of the scheduling order deadline).

---

[4] The JAC was drafted and submitted to the Court and to Defendants before the Senate PSI hearing was conducted and before the PSI issued its Report.

## VII. CONCLUSION

For the above stated reasons and as set forth in their opening memorandum, IPs' motion to amend their complaints should be granted.  The Court should allow IPs seven days from the issuance of its order to file the JAC2.

|  |  |
|---|---|
| DATED:  March 21, 2016 | Respectfully submitted,<br>SCOTT+SCOTT, ATTORNEYS AT LAW, LLP |

 s/Walter W. Noss
Christopher M. Burke (CB-3468)
Walter W. Noss (WN-0529)
Kristen M. Anderson
Stephanie A. Hackett
Jennifer S. Scott
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone:  619-233-4565

Derek Y. Brandt (*pro hac vice*)
BRANDT LAW LLC
P.O. Box 487
Edwardsville, IL 62025
Telephone:  618-307-6116

Todd M. Schneider
Jason H. Kim
Kyle G. Bates
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Telephone:  415-421-7100

Garrett W. Wotkyns
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
8501 North Scottsdale Road, Suite 270
Scottsdale, AZ 85253
Telephone:  480-428-0144

*Counsel for Agfa Corporation and Agfa Graphics, N.V.; Mag Instrument, Inc.; Eastman Kodak Company; and FUJIFILM Manufacturing U.S.A.,*

*Inc.*

Christopher M. Santomassimo
NICOLL DAVIS & SPINELLA LLP
95 Route 17 South, Suite 316
Paramus, NJ 07652
Telephone: 201-712-1616

*Counsel only for Agfa Corporation and Agfa Graphics, N.V.*

CERTIFICATE OF SERVICE

      I hereby certify that on March 21, 2106, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

      s/Walter W. Noss
WALTER W. NOSS
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Tel: 619-233-4565
Fax: 619-233-0508
wnoss@scott-scott.com