USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 25, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                          :
                          :
IN RE ALUMINUM WAREHOUSING    :      13-md-2481 (KBF)
ANTITRUST LITIGATION           :     and all related cases
                          :
                          :     <u>OPINION & ORDER</u>
                          :
------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

      This large, complex multidistrict litigation ("MDL") has been vigorously litigated and actively proceeding in this Court for over two years.  A tremendous amount of time and energy have been poured into these actions by all parties.  To arrive at the operative pleadings on which discovery has been proceeding for the past year, these actions went through multiple rounds of pleadings and two substantive rounds of motions to dismiss, with respect to which this Court issued several written decisions.  The parties are now in the midst of briefing on plaintiffs' motion for class certification, and fact discovery is set to close (except for a limited set of depositions), in less than one month, on May 13, 2016.

      Pending before the Court are the Individual Plaintiffs' ("IPs") motion for leave to file their proposed Second Joint Amended Complaint ("SJAC") (ECF No. 887)[1] and the First Level Purchaser Plaintiffs' ("FLPs") motion for leave to file their

---

[1] Unless otherwise specified by reference to a specific docket number, all citations in parentheses refer to the main docket in this case, 13-md-2481.

proposed Fifth Amended Complaint ("FAC") (ECF No. 891).[2]  Upon review of plaintiffs' proposed amendments and the parties' arguments, the Court concludes that plaintiffs have failed to establish sufficient good cause to justify allowing these pleadings at this late juncture.  Not only would allowing the amendments seriously prejudice defendants and cause substantial delays to the existing schedule, but plaintiffs, moreover, did not exercise reasonable diligence in putting these motions before the Court in a timely manner.  The time for raising entirely new theories of the case has long since passed.

While the Court appreciates that many of the allegations that the IPs and FLPs seek to add are contained in Fujifilm's Amended Complaint (15-cv-8307, ECF No. 35), Fujifilm's action has remained separate from the consolidated action and therefore stands on its own.  That Fujifilm asserts what is in many respects a different, broader case does not warrant significantly extending the entire schedule in what has already been a long-running litigation.  This is especially so given that plaintiffs had the information necessary to make their proposed amendments months before bringing their motions.  For the reasons set forth below, plaintiffs' motions for leave to amend their complaints and add new parties are DENIED.

---

[2] The IPs include Agfa Corporation, Agfa Graphics, N.V., Mag Instrument, Inc., and Eastman Kodak Company.  Although Fujifilm Manufacturing U.S.A., Inc. ("Fujifilm") also seek to join the IPs' SJAC, the Court does not herein refer to Fujifilm as an "IP," as it shall retain its own separate complaint and case number from the IPs as set forth in the Court's decision.  The FLPs include Ampal, Inc., Custom Aluminum Products, Inc., Claridge Products and Equipment, Inc., and Extruded Aluminum Corporation.  Thule, Inc. ("Thule"), which originally filed a complaint in these actions in December 2013, see Thule, Inc. v. Goldman Sachs Group, Inc., 13-cv-8847 (KBF) (S.D.N.Y.), now seeks to re-join as a named plaintiff in the FLPs' FAC.

I.    BACKGROUND[3]

This litigation commenced in August 2013 when a number of plaintiffs first filed what would become a large number of lawsuits alleging anticompetitive conduct impacting the pricing of aluminum.  (See, e.g., 14-cv-217, ECF No. 1.) Numerous actions were filed over the succeeding months.  By December 2013, all of these actions were transferred to this Court pursuant to an Order of the U.S. Judicial Panel on Multidistrict Litigation.  (ECF No. 1.)

Two heavily-litigated rounds of motions to dismiss followed.  First, the defendants moved to dismiss the several amended complaints that were filed by various plaintiffs—either on an individual or a consolidated basis—in March 2014. (See ECF Nos. 226, 227, 242, 271, 272.)  After lengthy briefing on these motions, in late August 2014, the Court granted defendants' motions to dismiss in several written decisions, but allowed the FLPs and individual plaintiffs Agfa Corporation and Agfa Graphics, N.V., and Mag Instrument, Inc. one more opportunity to amend their complaints as to certain defendants.  (ECF No. 571.)[4]

The IPs moved for leave to file their Joint Amended Complaint ("JAC") on October 9, 2014 (ECF No. 608), and the FLPs moved for leave to file their Third

---

[3] The Court here assumes familiarity with the history of this litigation and provides background only to the extent necessary to resolve the pending motions.

[4] Individual plaintiff Eastman Kodak Company did not file its initial complaint until July 28, 2014, when the initial rounds of motions to dismiss were already pending.  (14-cv-6849, ECF No. 1.)  As discussed further below, Fujifilm did not file its initial complaint until October 21, 2015, several months after this Court issued its decisions resolving the second round of motions to dismiss.  (15-cv-8307, ECF No. 1.)

Amended Complaint ("TAC") on October 29, 2014 (ECF No. 631).[5]  Numerous motions to dismiss the amended pleadings—and extensive briefing on those motions—followed.  On March 26, 2015, the Court granted the FLPs leave to file the TAC and the IPs leave to file the JAC, but denied their motions to the extent that they sought to (1) add Henry Bath & Son Ltd. and Glencore plc as defendants (for lack of personal jurisdiction), and (2) add Glencore International AG, Glencore UK Ltd., Pacorini Metals AG, The Goldman Sachs Group, Inc., and JPMorgan Chase & Co. as defendants (due to insufficient factual allegations).  (ECF Nos. 728, 731, 733.) Having finally trimmed the litigation down solely to the claims capable of surviving the pleading stage after two large rounds of motions and several written decisions on the adequacy of the pleadings, the Court directed the parties to confer as to a schedule for all remaining dates in these actions.  (ECF No. 733.)

On April 3, 2015, the Court entered a scheduling order requiring the FLPs to file their TAC and the IPs to file their JAC not later than April 9, 2015, with defendants to answer not later than May 29, 2015.  (ECF No. 736.)  The Court also set the deadline for motions for class certification for December 1, 2015, the close of fact discovery for April 1, 2016, the close of expert discovery for June 1, 2016, the deadline for summary judgment motions for July 1, 2016, and trial to commence on October 31, 2016.  (ECF No. 736.)  The Court thus gave the parties one full year to conduct additional fact discovery even though discovery had already been proceeding as to certain defendants for approximately one year.  (See Feb. 6, 2014

---

[5] The FLPs later attached a Fourth Amended Complaint to their reply brief in support of their motion for leave to amend (ECF Nos. 687, 688), but that complaint has not been answered and never became operative.

Hr'g Tr. 31-32, 36-37, ECF No. 233; Apr. 25, 2014 Hr'g Tr. 27, ECF No. 362.)

Plaintiffs had also benefited—since November 2014—from the nearly 400-page

Senate Report and a substantial volume of documents that certain defendants had

produced to government regulators.  (See ECF No. 640.)  No party sought—and the

scheduling order did not explicitly state—a date allowing for further amendment of

the pleadings.  It appeared clear—certainly to this Court—that the long history of

pleading motion practice and decisions meant that the pleadings were closed.

Except for a slight change to the class certification briefing schedule (ECF No. 757),

no party sought modification to the schedule until late October 2015.  During that

interval, no party gave any indication of an intention to further amend the

pleadings.

On October 29, 2015, the FLPs and defendants (with the IPs' consent), sought

modification of the schedule in light of the vast amounts of documents and data still

to be produced, including substantial data to be received from third parties.  (ECF

No. 862.)  Noting that it would be "exceedingly unlikely" for the parties to receive

any further extensions, the Court approved the parties' proposed revised schedule.

(ECF No. 864.)  Pursuant to that Scheduling Order, motions for class certification

were due March 18, 2016, fact discovery is set to close on May 13, 2016, expert

discovery is set to close and summary judgment motions are due on October 14,

2016, and trial is set to commence on February 14, 2017.  (ECF No. 864.)  That

schedule remains fully operative except in certain very limited respects.[6]  The Court believes that the current schedule has given the parties more than sufficient time to advance this litigation and the Court has been committed to keeping that schedule on track.

After discovery in these actions had been proceeding for several months, and approximately one week before the Court approved the current schedule, on October 21, 2015, Fujifilm—which is represented by the same counsel group as several of the IPs—filed its initial complaint, which contained allegations that were substantially similar to those asserted by the IPs in the JAC.  (15-cv-8307, ECF No. 1.)  On November 30, 2015, the Court entered a stipulation between Fujifilm and defendants providing, inter alia, that: (1) Fujifilm's action would stay separate from the consolidated FLPs' complaint and retain its own individual case number, (2) Fujifilm could immediately initiate and participate in the MDL proceeding's discovery, (3) Fujifilm would proceed on the same discovery schedule as the other IPs, and (4) would use its best efforts to become substantially aligned with the progress of the other IPs in terms of discovery.  (ECF No. 868.)  The stipulation also extended the deadline for defendants to answer Fujifilm's complaint until January 15, 2016 (ECF No. 868), and defendants did so (15-cv-8307, ECF Nos. 24, 26, 27, 31, 32).

With the benefit of access to full discovery, Fujifilm filed its Amended Complaint on February 4, 2016, its last day to amend as of right under Fed. R. Civ.

---

[6] The Court granted a one-week extension of the briefing deadlines relating to plaintiffs' motion for class certification (ECF No. 903), and granted a one-month extension of fact discovery solely as to a limited number of depositions (ECF No. 936).

P. 15(a)(1)(B).  (15-cv-8307, ECF No. 35.)  The Amended Complaint added three new

defendants—Glencore International AG, Pacorini Vlissingen B.V., and JPMorgan

Chase Bank, N.A.—and adds various allegations based on 14 documents not

mentioned in its original complaint, which had been produced in discovery months

earlier.  All defendants except for Pacorini Metals Vlissingen B.V., Glencore AG,

and Glencore International AG answered the Amended Complaint on April 11,

2016.  (15-cv-8307, ECF Nos. 60, 61, 62, 63, 64, 66.)

On February 19, 2016, the IPs filed the pending motion for leave to file the

proposed SJAC.  (ECF No. 887; 15-cv-8307, ECF No. 44.)  In contrast to the manner

of proceeding of the litigation up to that juncture, in which Fujifilm was pursuing

its action separately under its own pleadings, the proposed SJAC included Fujifilm

as one of the IPs.  The FLPs followed suit on February 23, 2016, filing the pending

motion for leave to file the proposed FAC.  (ECF No. 891; 14-cv-3116, ECF No. 316.)

In support of their motions, both sets of plaintiffs assert that their proposed

complaints merely seek to adopt the allegations contained in Fujifilm's Amended

Complaint, and argue that allowing leave to amend serves to align all of the

operative complaints and thus create greater efficiencies in these actions.[7]  As

explained further below, in contrast to plaintiffs' representations, the proposed

amendments substantially and materially alter the plaintiffs' allegations, and

would completely undermine the schedule at this advanced stage of the case.  The

---

[7] The FLPs filed under seal a copy of their proposed FAC along with their motion.  (FLPs' Mem. of
Law, Ex. A, ECF No. 892-1.)  In response to the Court's March 24, 2016 Order (ECF No. 910), the IPs
submitted under seal their proposed SJAC on March 31, 2016.

proposed amendments dramatically change the scope and breadth of the existing claims.

On March 11, 2016, defendants filed a joint opposition to plaintiffs' motions. (ECF No. 896.)  Plaintiffs filed their reply briefs on March 21, 2016.  (ECF Nos. 905, 908-1.)  Although the Court initially granted defendants' request for oral argument on the motions (ECF No. 927; see ECF No. 907), the Court subsequently adjourned the argument when it determined that it was unnecessary (ECF No. 937).

II.    LEGAL STANDARD FOR GRANTING LEAVE TO AMEND

It is within the sound discretion of this Court to grant or deny leave to amend.  See Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000).  Under Federal Rule of Civil Procedure 15(a), a court should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Undue delay and prejudice to the opposing party, along with futility and bad faith, are among the reasons a court may properly deny leave to amend.  See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted).  Prejudice to the opposing party includes assertion of new allegations that would "require the opponent to spend significant additional resources to conduct discovery and prepare for trial," "significantly delay resolution of the dispute," or "prevent the plaintiff from bringing a timely action in another jurisdiction."  Block v. First Blood Associates, 988 F.2d 344, 350 (2d Cir. 1993).

When a scheduling order governs amendments to the pleadings, Rule 15 must be interpreted against the provisions of Rule 16(b), which state that a scheduling order "'shall not be modified except upon a showing of good cause.'"

Holmes v. Grubman, 568 F.3d 329, 334-35 (2d Cir. 2009) (quoting Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003)).  In assessing whether good cause exists, "the primary consideration is whether the moving party can demonstrate diligence."  Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 244 (2d Cir. 2007) (explaining that diligence is the primary but not only consideration); Holmes, 568 F.3d at 334-35 ("Whether good cause exists turn on the diligence of the moving party." (quotation marks omitted)).  That is, the plaintiff must show that despite having exercised diligence, "the applicable deadline could not have been reasonably met."  Perfect Pearl Co. v. Majestic Pearl & Stone, Inc., 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (citing Sokol Holdings, Inc. v. BMB Muani, Inc., 05-cv-3749 (KMW)(DF), 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009)); see also Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 267 (2d Cir. 2009).  The Court should also consider whether the movant had notice of the deficiency of its claim and weigh the prejudice between the parties.  See, e.g., High Point Design LLC v. Buyers Direct, Inc., 730 F.3d 1301, 1319 (Fed. Cir. 2013).  Rule 16(b) also governs a motion to add a party under Rule 21 if made after the deadline imposed in a scheduling order.  E.g., Int'l Media Films, Inc. v. Lucas Entm't, Inc., No. 07 Civ. 1178 (JGK)(FM), 2008 WL 781823, at *2 (S.D.N.Y. Mar. 20, 2008).

III.   DISCUSSION

A.   Applicable Standard

Before reaching the merits of plaintiffs' motions, the threshold issue is the appropriate standard pursuant to which the Court must consider plaintiffs' requests for leave to amend and add new parties.  Plaintiffs argue that their motions should

be considered solely by reference to the standard set forth in Rule 15(a) on the ground that they do not seek a modification of the operative scheduling order, which does not explicitly set a deadline for further amendment of pleadings.  (See ECF No. 864.)  Defendants counter that Rule 16(b)'s more stringent standard governs because the Court has issued a detailed scheduling order that, at the very least, strongly implies that further amendment of the pleadings would not be allowed. Based on the context of how we have reached this point in these actions and the clear implication of the scheduling orders dating back to April 2015, the Court easily concludes that Rule 16(b)'s more stringent "good cause" standard applies.

While the Court's October 30, 2015 Joint Scheduling Order—which was in effect at the time that plaintiffs brought their motions in February 2016—does not explicitly identify a cut-off date for <u>further</u> amendment of pleadings, the clear implication of the dates and deadlines set forth in that Order, especially when viewed in the context of how this litigation has progressed to this point, is that the FLPs' and IPs' pleadings could not be further amended subsequent to April 9, 2015, the date that was set for the filing of the FLPs' TAC and the IPs' JAC.  This should come as no surprise to plaintiffs, as Rule 16(b)(3)(A) provides that the "scheduling order must limit the time to join other parties [and] amend the pleadings," Fed. R. Civ. P. 16(b)(3)(A), and the Court made very clear that in ruling on the second round of pleading-stage motions that it sought to have final resolution of the pleadings and considered the pleadings to be closed after rendering that round of decisions, see In re Gen. Elec. Co. Sec. Litig., No. 09 Civ. 1951 DLC, 2012 WL

2892376, at *4 (S.D.N.Y. July 12, 2012); In re Wireless Tel. Servs. Antitrust Litig.,

No. 02 Civ. 2637 DLC, 2004 WL 2244502, at *5 n.6 (S.D.N.Y. Oct. 6, 2004).  Rule

16(b)'s good cause standard thus applies here.

      B.    <u>Analysis</u>

      Having determined the applicable standard, the Court next addresses

whether plaintiffs have met their burden of showing good cause to make their

proposed amendments at this advanced juncture in the litigation.  The Court's

analysis is, in particular, driven by its view as to the impact that allowing the

proposed amendments would have on the remainder of the schedule and the

prejudice that defendants would suffer as a result, as well as plaintiffs' diligence (or

lack thereof) in pursuing leave to make these amendments and add new parties.  As

explained below, upon a careful review of the proposed amendments and the

parties' arguments, the Court finds that plaintiffs have not made a good cause

showing.  In fact, each of the relevant factors weighs against allowing plaintiffs'

amendments.

      Plaintiffs assert that they seek to amend their complaints to conform their

claims to the evidence gathered to date by revising their claims to closely mirror the

allegations in Fujifilm's Amended Complaint, which the current defendants have

now answered.[8]  Plaintiffs argue that the proposed amendments serve to sharpen

---

[8] Plaintiffs' motions make much of the fact that Fujifilm has already added these allegations in its Amended Complaint and that defendants have answered or otherwise must respond to those allegations regardless of whether the Court grants the pending motions.  While the Court can only guess as to whether Fujifilm's insertion into this litigation was intended to serve as a sort of Trojan Horse for these very motions, the Court does not find that the realities and current state of the Fujifilm action are a sufficient ground to fundamentally alter and derail the much larger MDL actions.  The Court will not let the tail wag the dog.

their existing claims, enhance efficiencies by allowing the parties to concentrate on one set of operative allegations, and provide defendants with additional evidence and a more complete record.  Although plaintiffs essentially assert that their amendments plead the same case that they have always alleged and do not materially change their claims, and that allowing the amendments would have little or no impact on the current schedule, a comparison of the FAC and JAC to plaintiffs' proposed amendments shows that these representations are far off the mark.  As explained below, plaintiffs have failed to show good cause because their characterization of their amendments and their justification for the lateness of their motions are inconsistent with a review of their proposed pleadings and the record before the Court.

Allowing the proposed amendments would of necessity totally upend the existing schedule, which was carefully negotiated between the parties and upon which the parties have been actively proceeding since October 2015.  Despite plaintiffs' arguments to the contrary, the Court has no doubt that the amendments alter plaintiffs' theory of the case and the substance of their allegations in significant respects that make the existing schedule unworkable.  Much of the substantial work that has been performed to date would have to be redone with significantly broader scope.  There are, in fact, several aspects of the proposed amendments that would necessitate an adjournment of the current schedule by at least several months, or at the very least cause significant prejudice to defendants if

existing deadlines were retained.[9]   The Court outlines just some of the most obvious ways in which the proposed amendments prejudice defendants and/or require a substantial extension of the operative schedule.

First, the proposed amendments add two new foreign defendants, Glencore International AG and Pacorini Vlissingen B.V., with respect to whom service would not be completed under the Hague Convention for at least several months.  If the Court were to allow the proposed amendments, there is a substantial argument that claims against these defendants should remain on hold until completion of that process.  In addition, defendants have indicated likely vigorous motion practice on several grounds, including lack of personal jurisdiction; thus, issue would not be joined as to these defendants until months after the current deadline for fact discovery has long passed and after briefing on plaintiffs' motion for class certification would otherwise have been completed.

Second, as defendants point out, the FLPs' proposed FAC effectively changes their claims and proposed class definition in the midst of class certification briefing[10] in ways that could necessitate substantial new fact and expert discovery—including significant non-party and overseas discovery—that defendants

---

[9] The Court is mindful that Fujifilm has already asserted similar claims.  However, tactical and discovery choices by the defendants with respect to one set of claims from a single plaintiff, who may or may not be vigorously litigating the full potential scope of its claims, is far different from decisions in the context of a much larger group of plaintiffs.  The scope and risk analyses are vastly different.

[10] As discussed above, while plaintiffs' motions for leave to amend were filed prior to the start of class certification briefing, these motions did not become fully briefed until mere days before the FLPs filed their opening brief and other papers in support of class certification.

could not have anticipated (and had no reason to conduct) based on the claims that survived in the TAC.[11]

For instance, whereas in the TAC the FLPs alleged a conspiracy to inflate the Midwest Premium by creating a queue for aluminum at Metro's Detroit warehouses, the proposed FAC broadens the scope of the conspiracy to also include alleged manipulation of the Rotterdam Premium by creating a queue at Pacorini Vlissingen B.V.'s warehouse in the Netherlands.  Although the allegations in the TAC (and prior complaints) show that the FLPs have long been aware of the significance of the Rotterdam Premium and Vlissingen warehouses (e.g., TAC ¶¶ 13, 171, 186-87, 323, 552, 557), the FLPs have not until this late date sought to expand their claims to include a fundamentally distinct conspiracy based on activity at those locations.  The FLPs seek to further substantially alter their claims by expanding the relevant geographic market beyond North America to include, in the alternative, a potential global market or a global market less China.  The Court agrees with defendants that these expanded allegations implicate substantial new discovery—including foreign document production and sales and pricing data, much

---

[11] While the Court's discussion that follows focuses on the broadened scope of the claims that the FLPs allege in the proposed FAC, the Court has also carefully reviewed the new allegations made in the SJAC and finds that—in contrast to the IPs' arguments to the contrary—the IPs have also fundamentally changed their claims in similar fashion to the FLPs.  Although the IPs fault defendants for failing to explain how certain of their arguments apply to the IPs (IPs' Reply Mem. at 1-2, ECF No. 905), that omission is understandable in light of the fact that the IPs did not submit a copy of their proposed SJAC until this Court directed them to do so following the completion of briefing on these motions.

of which would have to be obtained from non-parties—that could not possibly be completed under the current schedule.[12]

Additionally, the proposed FAC also appears to substantially broaden the scope of the proposed class and the relevant transactions by, for example, expanding the case beyond primary aluminum to also include secondary aluminum, a separate market that defendants have not had reason to address during the discovery period. The proposed FAC also seeks to expand the proposed class definition to include spot purchases of aluminum, rather than aluminum purchased pursuant to a contract, which may also raise significant discovery issues.  In short, the FLPs' proposed amendments would require significantly lengthening the discovery period— especially in light of the voluminous non-party discovery that the FLPs' substantially broadened claims would require—as well as considerable extension of the deadlines relating to class certification and all other remaining dates.  As Judge Cote stated under analogous circumstances in In re Wireless Telephone Services Antitrust Litigation, "[t]o permit the plaintiffs to change and expand the focus [of] their case at this stage in the litigation demands too much of the defendants."  2004 WL 2244502, at *6.

Although the Court considers the issue of prejudice to the defendants and non-parties to be a significant one, the Court is mindful that the interest in preserving the current schedule is not the sole factor upon which to assess plaintiffs'

---

[12] While the JAC does allege that primary aluminum is a global market and that the IPs' Section 1 claim has international dimensions (e.g., JAC ¶¶ 3, 8, 117, ECF No. 745), the IPs have not shown that they have actually pursued discovery of such broad international scope (see Noss Decl., ECF No. 906).

motions.  Even where, as here, proposed amended pleadings significantly alter the scope of necessary discovery and the theory of the case upon which the parties have long been proceeding, a plaintiff may still demonstrate good cause under Rule 16(b) if it exercised diligence in bringing a motion for leave to amend.  A plaintiff may demonstrate its diligence by showing that the deadline to amend the pleadings could not reasonably have been met.  Where, as here, the prejudice that would be incurred by the defendants would be substantial, the plaintiff's burden to show good cause is similarly onerous.

Plaintiffs argue that they acted diligently and could not have made the proposed amendments at an earlier date because the documents upon which their amendments rely were not produced until after the TAC and JAC were filed. Review of the parties' arguments, the timing of production of the documents and materials upon which plaintiffs now rely to supplement their allegations, and the nature of the allegation added, demonstrate that plaintiffs have not been diligent in bringing the pending motions.

First, the Court observes that to the extent that plaintiffs argue that they could not have learned of the facts they now seek to add until this late stage, that claim is flatly contradicted by their assertion that the amendments allege the same case that the parties have been litigating from the outset.  (See IPs' Mem. at 2-3, ECF No. 888; FLPs' Mem. at 4, ECF No. 892.)  Although the Court disagrees with plaintiffs' characterization of their amendments as simply asserting the same theory of the case as their prior complaints, this contradiction nonetheless renders

their diligence arguments incredible at the outset. See Oscar v. BMW of N. Am., LLC, No. 09 Civ. 11 (PAE), 2011 WL 6399505, at *5 n.2 (S.D.N.Y. Dec. 20, 2011).

Second, even if plaintiffs did not have sufficient information to include each and every allegations that they now seek to add at the time that they filed the operative complaints in April 2015, the record reflects—and the Court's understanding of the timing and progress of discovery in these actions confirms— that plaintiffs have for months had access to adequate documents and information to allow them to make their most significant proposed amendments.  Not only had full discovery been actively proceeding for nearly a year by the time that plaintiffs filed the pending motions, but plaintiffs also had access—prior to filing the operative complaints—to substantial productions of documents produced to regulators, as well as the Senate Report generated from its investigation into the aluminum market.  Plaintiffs seek to justify the timing of their motions based on the timing of defendants' document productions, arguing that they could not have earlier sought to supplement their complaints with documents that Fujifilm was able to utilize and reference in framing its Amended Complaint.  This claim is unsupported by the record.  Of the fourteen documents produced by the Goldman Sachs-Metro defendants that were referenced in Fujifilm's Amended Complaint, three duplicated information produced in 2014 and all but two were produced (at least in some form) at least three months before Fujifilm filed its Amended Complaint.  (Wagener Decl. ¶¶ 3-4, ECF No. 897.)  Similarly, all three of the

documents produced by JPMorgan cited in Fujifilm's Amended Complaint were produced in July 2015.  (Liu Decl. ¶¶ 9-10, ECF No. 898.)

Plaintiffs further argue that their delay is justified because they only learned in December 2015 the identity of JPMorgan's counterparty in a "2011 Vlissingen warrant swap."  (IPs' Mem. at 4, 14.)  The record demonstrates, however, that JPMorgan produced an email communication in May 2015 that identified JPMorgan's counterparty to the transaction as Glencore and identified Robin Scheiner of Glencore as an individual involved in the transaction, whom plaintiffs were aware since at least July 2014 was an employee of Glencore International AG. (Liu Decl. ¶¶ 4-5; see also TAC ¶ 115 (alleging that Scheiner is an employee of Glencore International AG).)  This email communication, when coupled with other information of which plaintiffs were aware, gave them sufficient information to name as defendants JPMorgan Chase Bank, N.A., Glencore International AG, and Pacorini Vlissingen B.V. months before they filed the pending motions.  (Liu Decl. ¶ 6.)  While plaintiffs therefore could not have included such allegations in the TAC or JAC (which were filed in April 2015), plaintiffs certainly could have sought leave to amend earlier than February 2016.

Third, allegations and representations made by plaintiffs in the early stages of these actions demonstrate that plaintiffs had information that would have allowed them to make many of their proposed amendments long ago, but tactically chose not to do so.  As discussed above, a review of the operative complaints show that they have long been aware of the aluminum queues at warehouses in

Vlissingen, JPMorgan's cancellation of Vlissingen warrants and the significance of the Rotterdam Premium.  (E.g., TAC ¶¶ 13, 171, 186-87, 323, 552, 557; JAC ¶¶ 3, 18, 33, 45, 122, 123, 194.)  Plaintiffs' early awareness and understanding of the significance of these other locations and regional premiums is further supported by numerous references to Vlissingen warehouses and the Rotterdam Premium in the June 2014 oral argument before this Court on the first round of motions to dismiss. (E.g., June 20, 2014 Oral Arg. Tr. 107-09, 116, 147, 151, 168-76, 185, ECF No. 494.) As just one additional example of facts that plaintiffs now seek to add for which they have long had knowledge, the FLPs waited until February 2016 to add Thule as a named plaintiff even though Thule filed its own aluminum complaint back in December 2013 (see 13-cv-8847) and was nevertheless excluded from the TAC.[13]

Finally, the Court notes that not every single one of plaintiffs' proposed amendments seek to fundamentally shift the scope and theory of the case in a way that prejudices defendants, and that plaintiffs may not have had sufficient information to make at least certain of those allegations at a materially earlier date. For instance, the proposed FAC and SJAC contain a number of amendments that constitute mere clarifications of plaintiffs' existing allegations.  While such clarification has some utility, these sort of minor alterations are unnecessary from a pleading standpoint, and are therefore disallowed on that basis.  As a result, plaintiffs' proposed amendments are disallowed in their entirety.

---

[13] To the extent that the FLPs argue that Thule's addition as a new named plaintiff will not impose additional discovery burdens or change the class definition in any way, it is unclear what the purpose or utility is of adding Thule as a named plaintiff at this time.

C.    Effect of the Court's Decision

The Court's denial of plaintiffs' motions for leave to amend will create a disparity between the allegations in Fujifilm's Amended Complaint on the one hand and the FLPs' TAC and the IPs' JAC on the other.  In light of how we have reached that disparity, however, the Court believes that the most equitable and efficient course is to proceed with two different operative case theories in two parallel tracks. Fujifilm did not bring its independent action until October 2015, several months after the Court resolved the second round of pleading motions and reached what the Court believed to be the last word on the pleadings in these actions.  Despite its late start, in November 2015, Fujifilm stipulated with defendants that its action would stay separate and retain its own individual case number, but that it would be permitted to immediately initiate and participate in the MDL's discovery and proceed on the same discovery schedule as the IPs.  (ECF No. 868.)  Until seeking to join the IPs' proposed SJAC in the pending motion, Fujifilm did not give any indication that it no longer desired to proceed on its own stand-alone basis.[14]

Whether Fujifilm's late insertion into this action was a clever attempt by the other plaintiffs could take advantage of and piggyback on Fujifilm's opportunity to amend its pleading as of right with the benefit of all of the discovery taken to date is a question that this Court cannot answer.  At the very least, the Court believes that

---

[14] The fact that all of the defendants who have thus far appeared in Fujifilm's action have chosen to answer its Amended Complaint—rather than move against that complaint—does not weigh for or against allowing the other plaintiffs to amend their complaints.  As stated above, defendants may well have some particular strategy vis-à-vis defending against Fujifilm that made it unnecessary to move against that complaint, or may have a targeted discovery plan vis-à-vis Fujifilm that renders it less burdensome to defend against the broader case that Fujifilm now alleges than it would be if all of the plaintiffs were permitted to broaden their allegations in similar fashion.

is a credible theory of plaintiffs' strategy.  Regardless, having represented that it would be proceeding on its own, fairness dictates that Fujifilm be required to continue to proceed on an individual basis.  While proceeding under two different theories may impose some burden on Fujifilm's counsel (which, as discussed above, also represents certain of the IPs), it is plaintiffs, rather than defendants, who should bear that burden after electing to proceed in this manner.  In accordance with the November 30, 2015 stipulation, the Court does intend, however, to hold Fujifilm to the same discovery schedule as the remaining plaintiffs.

IV.     CONCLUSION

For the reasons set forth above, the Individual Plaintiffs' motion for leave to file their proposed Second Joint Amended Complaint and the First Level Purchaser Plaintiffs' motion for leave to file their proposed Fifth Amended Complaint are DENIED.

The Clerk of Court is directed to close the motions at ECF Nos. 887 and 891 in 13-md-2481, ECF No. 316 in 14-cv-3116, and ECF No. 44 in 15-cv-8307.

SO ORDERED.

Dated:      New York, New York
            April 25, 2016

_____
            KATHERINE B. FORREST
            United States District Judge