# NUSSBAUM LAW GROUP, P.C.

570 Lexington Avenue, 19th Floor
New York, New York 10022
Telephone: (212) 702-7053 / Fax: (212) 681-0300

Linda P. Nussbaum
Direct Dial: (212) 702-7054
Mobile: (914) 874-7152
Email: lnussbaum@nussbaumpc.com

May 11, 2016

*Via ECF*

The Honorable Katherine B. Forrest, U.S.D.J.
United States District Court
 for the Southern District of New York
500 Pearl Street, Room 1950
New York, NY 10007-1312

   Re: *In re Aluminum Warehousing Antitrust Litig.*, 13-md-2481 (KBF) (S.D.N.Y.)

Dear Judge Forrest:

  I write to very briefly respond to the 10 page letter brief Richard Pepperman submitted yesterday, which either concedes or otherwise fails to rebut the following:

  Soon after RBA conceived the "smart ass plan" in August 2010: (i) Goldman negotiated and offered RBA a new Metro Services Agreement which more than quadrupled his annual compensation; (ii) Metro decommissioned the rba@metroftz.com email address RBA had been using and directed RBA to thereafter only use his offshore rba@bap.uk.com email, the effect of which (a) "purged" all then-existent rba@metroftz.com emails on Metro's system, and (b) would make discovery of RBA's subsequent offshore Metro communications more difficult; and (iii) Metro made no effort to archive the then-existent rba@metroftz.com emails before they were purged although they routinely did so for any employee leaving Metro's employ at that time.

  At the same time and thereafter, as evidenced by the unrebutted string of consciousness-of-guilt emails cited in my May 4 letter, Metro understood (i) its implementation of the smart ass plan would cause havoc in the marketplace and likely lead to future litigation, and accordingly (ii) made every effort to minimize the creation and production of documentary evidence.

  Contemporaneously with Metro's consciousness in March 2013 of being a target of the Senate's investigation into the aluminum warehousing industry, including lengthening load-out queues, warrant cancellations, and warehouse incentive payments, RBA provided 90-days' notice of an early June 2013 termination of his Metro Services Agreement, which by its terms was

intended to continue through December 2013. No such written notice, as is required by that Services Agreement, has ever been found or produced by Metro.[1]

Within days of RBA's premature termination, the CFTC served a litigation hold and thereafter served a formal subpoena which requested production of documents from Metro, including its "agents" concerning documents and information over which RBA was principally responsible.[2] In response to that subpoena, Metro produced documents from former employees and custodians having far less responsibility than RBA, but never made any effort at any time to collect documents from RBA.

Some unspecified time after RBA's premature June 30, 2013 termination of the Services Agreement (which, given RBA's curious lack of recall, appears now to likely have occurred after the CFTC served its early July litigation hold notice and/or the August 1 filing of this action) and despite the fact that (i) Services Agreement terms explicitly designate Metro's ownership of, and RBA's obligation to return, all RBA Metro files, and (ii) Metro never asked RBA to return and did not provide any other instruction with respect to those files, RBA destroyed all of his Metro files.

In or after November 2013, RBA removed and destroyed the hard-drive and the rest of the computer he used for his Metro work, and discarded the pieces. At some unspecified time, RBA also destroyed any cell phones he used for his Metro work.

While Metro collected documents, phones, and computers from custodians who had already left Metro, Metro – as it knew all along – never made any effort, at any time (either before or after the July CFTC action or the August 1 filing of this case) to collect any documents, computers, or cell phones from RBA. Defense counsel, however, made repeated efforts, over the course of months, to obscure and hide the fact that Metro had no RBA custodial files to produce because Metro never made any effort to collect them and, as a result, enabled their spoliation (as was the strategy from the very beginning).

All the cases upon which Mr. Pepperman's May 10 letter rely either involved a situation where no evidence was actually lost (as in the *Khaldei*, *Orbit*, *Delta*, *Point Blank*, and *Brigham Young* cases) or are otherwise plainly distinguishable from the uncontested facts here. Accordingly, Plaintiffs' request for relief should be granted.

Respectfully Submitted,

*s/Linda P. Nussbaum*

Linda P. Nussbaum

---

[1] Metro has also never produced a copy of the "summary of all current actions / items and their status" that is referenced in the purported termination letter RBA attached as Exhibit B to his April 26 Declaration (the sudden materialization of which is especially surprising given defense counsel's repeated prior representations that RBA had destroyed all of his Metro documents).
[2] Notwithstanding Metro, RBA, and defense counsel's inconsistent "agent" positions, Metro's CEO Chris Wibbleman testified repeatedly yesterday that RBA was Metro's "agent."