```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                              :
                                              :
                                              :
                                              :
IN RE ALUMINUM WAREHOUSING       :    13-md-2481 (KBF)
ANTITRUST LITIGATION                   :    and all related cases
                                              :
                                              :    MEMORANDUM
                                              :    DECISION & ORDER
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 19, 2016

KATHERINE B. FORREST, District Judge:

Pending before the Court are the Class and Individual Plaintiffs' ("Plaintiffs") letter motions seeking (1) to compel non-party Robert Burgess-Allen ("Burgess-Allen") to produce certain documents, and (2) an order imposing spoliation sanctions against Burgess-Allen and defendant Metro International Trade Services LLC ("Metro"), with whom Burgess-Allen at one time had a business relationship. As explained below, although the Court was initially only presented with a limited discovery dispute in which Plaintiffs sought three categories of documents from Burgess-Allen, over the course of the parties' subsequent submissions the dispute morphed into what is now primarily a spoliation motion.

For the reasons set forth below, after a thorough review of the parties' detailed and voluminous submissions, the Court largely denies Plaintiffs' motion to compel and denies their request for spoliation sanctions at this time. As set forth below, the Court does, in relation to Plaintiffs' motion to compel, direct Burgess-Allen to produce information sufficient to show, if any, payments that he received from Metro and/or Goldman Sachs after June 2013.

Before addressing the merits of Plaintiffs' letter motions, the Court briefly recites the progression of the pending disputes and the submissions it has considered.  In connection with Plaintiffs' initial motion to compel, the Court received Plaintiffs' April 21, 2016 letter (ECF No. 951), Metro and Burgess-Allen's ("Defendants") April 26, 2016 response (ECF No. 953), and Plaintiffs' April 28, 2016 reply (ECF No. 952).[1]  On April 29, 2016, the Court issued an Order asking Plaintiffs to clarify the scope of the relief they requested.  (ECF No. 950.)

On May 4, 2016, Plaintiffs responded in a letter stating that, after deposing Dennis McConnell, Metro's Rule 30(b)(6) witness and its Manager of Information Technology, and Burgess-Allen, they now also sought—in addition to the relief previously requested—an order finding that Metro and Burgess-Allen have each spoliated evidence, authorizing the use of adverse inferences (or, potentially, a terminating sanction), and directing Metro, Burgess-Allen and/or defense counsel to reimburse Plaintiffs for all costs associated with the investigation and briefing of the spoliation issues.  (ECF No. 966.)  Defendants responded to Plaintiffs new requests in letters dated May 5, 2016 and May 10, 2016.  (ECF Nos. 959, 962.) Plaintiffs replied in a May 11, 2016 letter (ECF No. 965), to which Defendants responded in a final letter on May 12, 2016 (ECF No. 967).  Finally, in connection with both the motion to compel and the motion for spoliation sanctions, the Court notes that it has also received numerous exhibits attached to the parties' various

---

[1] The Court notes that the parties' letters are not filed on the docket in chronological order due to the fact that several were originally submitted to the Court under seal.  In Orders dated April 28, 2016 and May 11, 2016, the Court directed the parties to file all of the materials relating to these disputes on the public docket.  (ECF Nos. 949, 963.)

letters, as well as declarations from Burgess-Allen (ECF No. 954) and Dennis McConnell (ECF No. 955).

I. MOTION TO COMPEL

As stated above, this dispute began as a letter-motion to compel Burgess-Allen to produce certain documents requested in Plaintiffs' second subpoena (ECF No. 951-19), including (1) personal diaries, (2) passports and other travel records, and (3) bank statements, annual tax filings, Metro payment evidence, and other informative financial records. In their April 21, 2016 letter, Plaintiffs contend that these documents are relevant because they may help Plaintiffs piece facts together (including the extent to which Burgess-Allen continued to receive compensation from Metro and/or Goldman Sachs after June 2013) and bear on Burgess-Allen's credibility as a witness. In their May 4, 2016 letter, Plaintiffs further asserted that the documents they seek are relevant to show Burgess-Allen's work for Metro, his financial stake in the alleged unlawful conduct, and to test his credibility.

First, as to Plaintiffs' request for Burgess-Allen's personal diaries, Defendants have represented that Burgess Allen did not have any such diaries (see Apr. 26, 2016 Ltr. at 9, ECF No. 953), and therefore this request is denied as moot. Second, as to the remaining two categories of documents, the Court denies the bulk of Plaintiffs' request because Plaintiffs have failed to show that the material sought is truly "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Plaintiffs have not explained how Burgess-Allen's passports and other travel records are relevant to any issue or have any genuine connection to this case, nor

have they explained why their broad request for financial documents—including Burgess-Allen's bank statements, annual tax filings or other financial records—bear on any issue in this case. Even to the extent that any of these documents are relevant, the broad scope of Plaintiffs' request is vastly out of proportion with the degree of that relevance. That being said, Plaintiffs have identified one category of information that appears to be at least minimally relevant to this case, which is evidence of financial compensation made to Burgess-Allen by Metro or Goldman Sachs after June 2013 for the purpose of showing Burgess-Allen's credibility as a witness. The Court concludes that it is appropriate to require Burgess-Allen to produce information sufficient to show whether he received compensation (and the amount of such compensation)—regardless of the form that such compensation took—from Metro and/or Goldman Sachs after June 2013.

## II. MOTION FOR SPOLIATION SANCTIONS

In addition to their request for an order directing Burgess-Allen to produce the financial and travel records discussed above, Plaintiffs' May 4, 2016 letter adds a new request seeking an order from the Court finding that Metro and Burgess-Allen have each spoliated evidence, authorizing the use of adverse inferences (or, even, a terminating sanction), and imposing costs relating to these motions on Defendants. The underlying basis for Plaintiffs' motion is Burgess-Allen's purported destruction of documents and files on three separate occasions. First, when Burgess-Allen deleted his Metro files at some unspecified time in early July 2013 after his Services Agreement with Metro ended in June 2013. Second, when

4

Burgess-Allen discarded his computer and its hard-drive in or after November 2013. And, third, when Burgess-Allen—on an unspecified date—destroyed any cell phones he had used when working with Metro. Plaintiffs assert that Metro is responsible for spoliating evidence because it did not retrieve relevant evidence in Burgess-Allen's possession or preserve Burgess-Allen's electronically stored information located on Metro's system. Plaintiffs argue that the record is sufficient to show that Burgess-Allen and/or Metro intentionally spoliated evidence. Based on its careful review of the record, the Court concludes that Plaintiffs have not met their burden at this time.

A.  Legal Standards

Under Second Circuit precedent, a party seeking spoliation sanctions, including an adverse inference instruction, "must establish '(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" Coale v. Metro-N. Commuter R. Co., 621 F. App'x 13, 16 (2d Cir. 2015) (summary order) (quoting Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002)). As amended in December 2015,[2] Rule 37(e) governs a party's failure

---

[2] Rule 37(e) was substantively amended in December 2015 to authorize and specify measures a court may employ if information that should been preserved is lost, and specifies the findings necessary to justify such measures. See Fed. R. Civ. P. 37(e) advisory committee's notes to 2015 amendment. Neither party asserts that the instant motion should be considered under the language of the prior version of Rule 37(e). The Court concludes that it is appropriate to apply the current version of the Rule to this dispute. See CAT3, LLC v. Black Lineage, Inc., No. 14 Civ. 5511 (AT) (JCF), 2016 WL 154116, at *5 (S.D.N.Y. Jan. 12, 2016) (considering defendants' motion for conduct that occurred

5

to preserve electronically stored information, a category into which the allegedly destroyed evidence indisputably falls. That Rule provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). It is Plaintiffs' burden to establish their entitlement to spoliation sanctions. Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 109 (2d Cir. 2001).[3]

Among the threshold elements for relief under Rule 37(e), Plaintiffs must show that Burgess-Allen and/or Metro had a duty to preserve the information at the time it was lost or destroyed. CAT3, 2016 WL 154116, at *9; In re: Gen. Motors LLC Ignition Switch Litig., No. 14-MD-2543 (JMF), 2015 WL 9480315, at *2

---

prior to amendment under current Rule 37(e)). In any event, applying the pre-amendment version of the Rule would not alter the Court's decision.

[3] Particularly in light of the new language of the Rule, precedent is not clear on the standard of proof governing the factual findings that underpin a spoliation finding pursuant to Rule 37(e). At least one court within this District has applied a clear and convincing evidence standard with respect to issues concerning a party's bad faith, see CAT3, 2016 WL 154116, at *8 (citing Shepherd v. Am. Broad. Companies, Inc., 62 F.3d 1469, 1477 (D.C. Cir. 1995), but applied a preponderance of the evidence standard with respect to issues such as prejudice, see id. at *8 (citing Residential Funding, 306 F.3d at 109). Here, the Court need not decide whether the more stringent clear and convincing standard should apply to certain elements of Plaintiffs' motion, as the Court concludes that Plaintiffs have not met their burden even under a preponderance of the evidence standard.

(S.D.N.Y. Dec. 29, 2015). The "obligation to preserve evidence arises when the party has notice that the evidence is relevant litigation," either "when suit has already been filed," or, for instance, "when a party should have known that the evidence may be relevant to future litigation." Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998); see also Living Color Enterprises, Inc. v. New Era Aquaculture, Ltd., No. 14-cv-62216, 2016 WL 1105297, at *4 (S.D. Fla. Mar. 22, 2016) ("Rule 37(e) does not set forth a standard for preservation and does not alter existing federal law as to whether evidence should have been preserved or when the duty to preserve attaches."). The mere fact that misconduct has occurred does not trigger the preservation obligation until litigation becomes "reasonably foreseeable." John Wiley & Sons, Inc. v. Book Dog Books, LLC, No. 13 Civ. 816 (WHP) (GWG), 2015 WL 5769943, at *7 (S.D.N.Y. Oct. 2, 2015); see also Kraus v. Gen. Motors Corp., No. 03 Civ. 4467 (CM), 2007 WL 3146911, at *2 (S.D.N.Y. Oct. 24, 2007).

As to the element of Defendants' culpability, because Plaintiffs seek an adverse inference or a terminating sanction, the stricter requirements of Rule 37(e)(2) apply. Plaintiffs therefore must show that Burgess-Allen and/or Metro acted with intent to deprive Plaintiffs of the use of the allegedly destroyed information in the litigation. Fed. R. Civ. P. 37(e)(2). The Advisory Committee's Notes to the 2015 Amendments explain that the revised Rule is intended to reject cases that "authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence." Fed. R. Civ. P. 37(e) advisory committee's notes to 2015 amendment. Courts consider a party's conduct with respect to culpability "in

the context of the entire discovery process in [the] case." In re Pfizer Inc. Sec. Litig., 288 F.R.D. 297, 317 (S.D.N.Y. 2013).

Finally, in order to be entitled to spoliation sanctions, Plaintiffs must also show that the evidence lost was relevant and helpful to their case, meaning that there is "sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction." Orbit One Commc'ns, Inc. v. Numerex Corp., 271 F.R.D. 429, 438 (S.D.N.Y. 2010) (citing Residential Funding, 306 F.3d at 108-09); see also CAT3, 2016 WL 154116, at *11.

B.   Discussion

Across their several letters to the Court on this issue, the parties dispute numerous of their opponents' factual assertions, many of which are actually a sideshow from the central questions raised by the motion. Based on the above legal standards governing spoliation sanctions under Rule 37(e), this motion boils down to two primary factual disputes. The first dispute is whether and when Metro's and Burgess-Allen's duty to preserve the material allegedly lost was triggered. As to this question, Plaintiffs propose several alternative dates (with the earliest date being August 2010, when Burgess-Allen allegedly formulated the "Smart Ass Plan") at which an obligation to preserve arose. Defendants counter that any duty to preserve arose far later, challenging each of the dates that Plaintiffs propose. The second dispute is whether there is sufficient evidence to show that any spoliation was done with the requisite intent. As explained below, the Court concludes that

8

Plaintiffs have failed to meet their burden with respect to the second question; having reached this conclusion, the Court declines to resolve the first question at this time.[4]

Plaintiffs seek to prove Metro's and Burgess-Allen's intent primarily based on the very fact that Burgess-Allen deleted his Metro files and discarded his computer, hard-drive and cell phone. Plaintiffs also rely on the facts that Metro, inter alia, never requested that Burgess-Allen return its files, never told Burgess-Allen that he could destroy his files, never confirmed whether Burgess-Allen had destroyed the files, and never sought to examine Burgess-Allen's computer or phone, despite the presence of a clause in Burgess-Allen's Services Agreement stating that Burgess-Allen was to return all documents and information he used and/or created in the course of his work under that contract. Plaintiffs also appear to seek to prove intent through their numerous assertions as to how Defendants' counsel's representations on discovery issues have been vague and inconsistent over the course of this litigation.

---

[4] Although the Court does not determine when Burgess-Allen's and Metro's preservation obligations were triggered with respect to the information at issue, the Court notes that it does not fully endorse the narrow view of preservation obligations that Defendants advance in certain of their arguments. That being said, the Court observes that under the circumstances of this case and the particular record before this Court, it is not yet convinced that any preservation obligation for the material at issue attached before the first complaint was filed in this action in August 2013. If August 2013 is the date upon which the preservation obligation attached, only conduct occurring after that date would be relevant to spoliation. The Court further observes that there is at least a reasonable argument that Metro's independent obligation with respect to material in Burgess-Allen's possession was likely not triggered until the Court's decision dismissing Burgess-Allen and his company from this action in October 2015 (at least the record is incomplete as to an earlier date). See In re Aluminum Warehousing Antitrust Litig., No. 13-md-2481 (KBF), 2015 WL 6472656, at *17 n.20 (S.D.N.Y. Oct. 23, 2015) ("The Court notes that it would be surprising, in light of defendants' argument (and the Court's determination) that Burgess-Allen was acting as an agent of Metro, if Metro lacked all access to relevant material in Burgess-Allen's possession.").

Considering Plaintiffs' evidence in conjunction with the evidence submitted by Defendants in opposition to the request for sanctions, the Court cannot conclude by a preponderance of the evidence that Metro or Burgess-Allen acted with the intent to deprive Plaintiffs of the use of the allegedly destroyed information in this litigation.[5] This is not akin to a motion to dismiss where inferences are construed only in one direction; the Court is required to weigh the record before it and make a finding. There is simply not enough there on intent. Burgess-Allen explained at his deposition that he deleted the emails on his personal computer in an effort to comply with his understanding of the confidentiality obligations under his Services Agreement with Metro, and later disposed of his computer and phone because he bought replacements. (Apr. 28, 2016 Ltr., Ex. 23 at 93:2-94:25, 117:22-118:25, ECF No. 952-3.) That explanation is also consistent with Burgess-Allen's declaration submitted in opposition to Plaintiffs' motion to compel (Burgess-Allen Decl. ¶¶ 14-16, ECF No. 954), and is not controverted by any evidence before the Court. To the extent that Plaintiffs contend that Metro itself intended to deprive Plaintiffs of relevant evidence by not safeguarding information in Burgess-Allen's possession, that position is not supported in the record, and is, furthermore, undermined by the substantial discovery that Metro has otherwise produced to Plaintiffs in this action, including records relating to Burgess-Allen's "Smart Ass Plan." Simply put, based on the Court's consideration of all the evidence in the record on this motion, plaintiffs offer only uncorroborated allegations to suggest that Burgess-Allen acted

---

[5] This is not to say that the Court would necessarily reach the same conclusion on a more developed record at a later stage of this case.

with intent to deprive Plaintiffs of the information in his files or stored on his computer or phone for this litigation, or that Metro failed to preserve or safeguard the information with such intent.

Because Plaintiffs have not met their burden of showing that Burgess-Allen or Metro acted with the intent to deprive Plaintiffs of the use of the allegedly destroyed information in this litigation, Plaintiffs' motion for spoliation sanctions is DENIED.[6] Having concluded that Plaintiffs are not entitled to spoliation sanctions, Plaintiffs' request for costs associated with investigating and briefing this motion is similarly DENIED.

III. CONCLUSION

For the foregoing reasons, Plaintiffs' letter motion to compel Robert Burgess-Allen to produce certain records is GRANTED IN PART. The Court requires only that Burgess-Allen produce information sufficient to show, if any, payments and/or other compensation that he received from Metro and/or Goldman Sachs after June 2013. Furthermore, Plaintiffs' letter motion seeking spoliation sanctions against Burgess-Allen and Metro is DENIED at this time.

---

[6] The Court also finds that Plaintiffs have failed to meet their burden to show that they actually suffered any prejudice as a result of the loss of the alleged evidence.

11

The Clerk of Court is directed to close the motion at ECF No. 951.

SO ORDERED.

Dated:	New York, New York
	May 19, 2016

                                        _____
                                        KATHERINE B. FORREST
                                        United States District Judge