UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
IN RE ALUMINUM WAREHOUSING :
ANTITRUST LITIGATION :
: Master Docket No.
This Document Relates To: : 13 MD 2481 (KBF)
:
*In re Aluminum Warehousing Antitrust Litigation* :
(Direct Purchaser Plaintiffs), Case No. 1:14-cv- :
03116-KBF :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# DECLARATION OF DR. KATE LEE IN SUPPORT OF DEFENDANTS' LETTER MOTION FOR AN EXTENSION OF TIME

I, Dr. Kate Lee, declare as follows:

1. I am an economist with Berkeley Research Group ("BRG"). My practice focuses on litigation consulting work, and I have worked as a litigation consultant since 1996. BRG was retained to analyze, among other items, the expert report and associated work-product produced by Dr. Christopher Gilbert in this matter.

2. On March 28, 2016, BRG received files that purported to be the backup to Dr. Gilbert's expert report, dated March 24, 2016. The backup Dr. Gilbert provided on March 28 was nowhere near complete. Numerous files, programming code, and data necessary to replicate and evaluate Dr. Gilbert's analyses were missing. Among the materials missing were:

- Backup to support Dr. Gilbert's Appendix A, which purports to summarize certain large warrant cancellations.

- Backup to support Dr. Gilbert's Exhibits B2 and B3, which purport to show his estimates of historical queue lengths for 2014 and 2015 in comparison to queue lengths reported by the LME.

- Backup to support Dr. Gilbert's Appendix C, which includes analyses of transaction prices paid by aluminum purchasers to smelters.

- Backup to support Dr. Gilbert's Exhibit D3, which reflects the results of a number of "Granger causality" analyses.

- Backup for Dr. Gilbert's Appendix E, which presents three econometric analyses regarding the purported relationship between his calculation of warehouse queues, the LME price, and the Midwest Transaction Price reported by Platts.

- Backup to support most of Dr. Gilbert's Appendix F, which presents eight econometric analyses related to Dr. Gilbert's damages model. In particular, we did not receive any backup to Exhibits F2 through F8, and we received backup for only one of the two columns of Exhibit F1.

- Backup to support Dr. Gilbert's Exhibit G1, which presents a so-called counterfactual simulation of the Midwest Premium if queue lengths had remained constant.

- Backup to support the creation of Dr. Gilbert's data files. Dr. Gilbert's analyses are based in part on two data files contained in his backup, "Data.xlsx" and "Deliveries.xlsx." Dr. Gilbert's backup did not contain information regarding the sources of the data in these files, nor did the backup contain code that explained how the original source data had been consolidated and modified by Dr. Gilbert.

3. Missing materials were produced sporadically from March 31, 2016 through early May. Important backup materials continued to be missing even weeks after the filing of Dr. Gilbert's report. These missing materials included, among other items, sufficient backup to replicate various data files incorporated in Dr. Gilbert's analyses such as "Data.xlsx", "Deliveries.xlsx", and the data files Dr. Gilbert generated from the transaction data produced by the smelters; backup for the so-called calibration factors used in his Appendix B queue calculations; and backup for Exhibit D3.

4. On May 5, 2016, six weeks after the date of Dr. Gilbert's initial report, BRG received a "corrected" report and a set of revised backup materials, which reflected an increase in claimed damages of more than 30 percent. BRG also received a cover communication indicating this change in Dr. Gilbert's damages estimate and changes to certain other of his modeling results were due to the correction of "a data error." It is not accurate that the changes in Dr. Gilbert's analyses reflect the correction of a single data error. Among other

changes, Dr. Gilbert (1) changed his prior practice of zeroing out certain large negative warrant cancellations in Vlissingen; (2) changed his methodology for allocating his reduction of Vlissingen warrant cancellations to particular days in his counterfactual "but-for" world; (3) changed his methodology to estimate excess warrant cancellations in Vlissingen by no longer making the "stock run-down" adjustment described in Appendix G of his report; (4) changed the historical queue estimates used in certain of his analyses; (5) changed the dependent variable in his Exhibit E3 to coincide with the description of the variable in the text of his report; and (6) changed the lag length in his Exhibit F7. Dr. Gilbert neglected to describe certain of these changes in the text of his report or in his list of corrections. Dr. Gilbert's failure to fully describe the changes to his analyses forced BRG to further examine his initial backup in comparison to his revised backup to determine the extent of the undisclosed changes Dr. Gilbert made in his corrected report.

5. Although the metadata in the backup provided with the corrected report indicated that no work was done on the backup after April 21, 2016, BRG did not receive the corrected report and backup until May 5, 2016.

6. The backup received on May 5 in connection with Dr. Gilbert's corrected report also was incomplete because it did not contain any backup to reflect changes that Dr. Gilbert made to his Exhibit E3. On May 13, we received a "newly corrected version" of Dr. Gilbert's Exhibit E3 and associated backup, which included further corrections to that exhibit.

7. We also anticipate yet another correction from Dr. Gilbert based on a comparison of his backup to the text of his report and based on his deposition testimony. As stated above, the backup to Dr. Gilbert's corrected report indicates he did not make the "stock run-down" adjustment in his estimation of excess warrant cancellations for Vlissingen, as

described in Appendix G of his report. At his deposition, which I attended, I understood Dr. Gilbert to say that if he had omitted the stock run-down adjustment for Vlissingen that he would need to make a further correction because this omission was inadvertent.

8. The incompleteness of Dr. Gilbert's backup and the extensive back-and-forth that was required to obtain Dr. Gilbert's backup, as well as the receipt of a corrected report for which the text and backup in some respects were inconsistent, has substantially delayed the tasks of replicating, understanding, and responding to Dr. Gilbert's work.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge and belief, the foregoing is true and correct.

Executed:  Washington, DC
           May 26, 2016

*Kate Lee*
Kate Lee
Berkeley Research Group
1800 M Street NW, Second Floor
Washington, DC 20036