**SULLIVAN & CROMWELL LLP**

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588

WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

June 17, 2016

<u>Via Hand Delivery and ECF</u>

The Honorable Katherine B. Forrest,
   United States District Court,
      Southern District of New York,
         500 Pearl Street,
           New York, New York 10007-1312.

        Re: <u>In re Aluminum Warehousing Antitrust Litig.</u>, 13-md-2481 (KBF)

Dear Judge Forrest:

      I write on behalf of the Goldman Sachs defendants ("Goldman Sachs") in response to Christopher Lovell's June 13, 2016 letter, not filed with the Court until June 14, 2016, seeking to compel Goldman Sachs to produce text messages from the personal cell phone of Scott Evans, a former Goldman Sachs employee who left the firm in April 2013. In the alternative, plaintiffs seek leave to serve new subpoenas on both Mr. Evans and his cellular-service provider, AT&T, for those same messages, even though fact discovery closed in this case on May 13, 2016.

      Plaintiffs' overlength letter to the Court ignores that text messages on the personal cell phone of a former employee are not in Goldman Sachs' possession, custody or control, and plaintiffs' alternative request for leave to serve brand new subpoenas is unjustifiably late, coming a month after the close of fact discovery. Plaintiffs' request is based on the false assertion that Mr. Evans "regularly used" his "cell phone . . . to conduct Goldman business communications[,] . . . includ[ing] in conversations with the head Glencore traders of physical aluminum." (Letter ¶¶ 15-16.) That assertion is contradicted by the very deposition testimony plaintiffs cite. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████. Finally, plaintiffs' motion is ambiguous as to whether it seeks text messages from Mr. Evans' firm-issued Blackberry; to the extent that it does, such messages would have been collected and reviewed for responsiveness but none exist.

-2-

Goldman Sachs is obligated to produce only documents in its possession, custody or control, Fed. R. Civ. P. 34(a)—which has been defined as materials that a party has the "legal right or the practical ability to obtain." *Riddell Sports Inc.* v. *Brooks*, 158 F.R.D. 555, 558 (S.D.N.Y. 1994). It is plaintiffs' burden to establish that Goldman Sachs has that right or ability here. *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006). They have not done so. Scott Evans left Goldman Sachs in April 2013, months before this litigation commenced. Plaintiffs offer no explanation—other than hypothesizing about a possible secret agreement between Mr. Evans and Goldman Sachs (Letter ¶ 8)—why Goldman Sachs supposedly has the legal right or practical ability to obtain text messages from Mr. Evans' personal cell phone. Several courts have held that employers do not have control over their employees' personal devices. *See Matthew Enter.* v. *Chrysler Grp. LLC*, 2015 WL 8482256, at *3-4 (N.D. Cal. Dec. 10, 2015) (even if ordered to do so by a court, employer had no authority under which it could force employees to turn over work-related emails sent from employee's' personal email accounts); *Cotton* v. *Costco Wholesale Corp.*, 2013 WL 3819974, at *6 (D. Kan. Jul. 24, 2013) (employer likely did not have possession, custody or control over text messages on employee's personal cell phone where employer had not issued the phone for work purposes).

Moreover, the Second Circuit considered it "fairly obvious that a party . . . need not seek . . . documents from third parties if compulsory process against the third parties is available to the party seeking the documents." *Shcherbakovskiy* v. *Da Capo Al Fine, Ltd.*, 490 F.3d 130, 139 (2d Cir. 2007).[1] Mr. Evans lives in New York City and was clearly within this Court's subpoena power. His departure from Goldman Sachs in April 2013 also was publicized in the business press.[2] Plaintiffs therefore have been on notice since the outset of this case that they would have to subpoena Mr. Evans for his personal documents, yet they did not do so during the period for fact discovery, even though they served document subpoenas on other former employees. Their only explanation for this omission is that they somehow were led to believe by Goldman Sachs' silence that Goldman Sachs was going to obtain and produce Mr. Evans' personal text messages. Since 2014, Goldman Sachs has objected to the collection and production of text messages (*see, e.g.*, Ex. A ¶ 10), which its employees are prohibited from using for business purposes. At no point did Goldman Sachs agree to collect and produce text messages from any current or former employee's personal cell phone. Indeed, plaintiffs did not raise the issue of text messages until April 2016, after a Metro witness testified that Metro had imaged the cellphones of then-current employees in

---

[1] The sole exception noted by the court, on which plaintiffs rely here, is if compulsory process *is not otherwise available*. (*Id.* (citing *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 530 (S.D.N.Y. 1996).) That exception does not apply here.

[2] *See, e.g.*, *Goldman's Senior Physical Metals Trader Scott Evans Leaves Bank*, REUTERS, April 1, 2013.

-3-

2013.[3] Even the April 2016 production of those Metro employees' text messages, which plaintiffs point to as the basis for their belief that they would receive Mr. Evans' messages, was accompanied by a clear statement that this production "does not constitute an agreement that any further text message documents will be produced." (Ex. B.) The following month, Mr. Evans testified that Goldman Sachs did not have his text messages. (See Ex. C to Plaintiffs' June 13 Letter ("Evans Tr.") at 123:10-13.) Yet plaintiffs still failed to issue a subpoena. Plaintiffs offer no justification for their delay.

Nor is there any basis to permit plaintiffs now to serve new subpoenas for documents on Mr. Evans and his cellular-service provider—more than a month after the close of fact discovery. Even leaving aside the untimeliness of this request, plaintiffs' alleged basis for seeking Mr. Evans' text messages does not withstand scrutiny. At his deposition, Mr. Evans testified that he "rarely" sent or received text messages on his personal cell phone for business purposes, and never for conducting transactions. (See Evans Tr. at 120:15-18; 121:16-23.) Contrary to plaintiffs' assertion, Mr. Evans further testified that he did not recall ever texting Patrick Wilson or Matthew Lucke of Glencore. (Id. 122:1-4; 122:22-123:1.) And at no point did Mr. Evans testify that he texted with representatives of any other co-defendant in this case.

Under plaintiffs' own theory, Mr. Evans is not even a participant in the alleged conspiracy. On June 10, 2016, plaintiffs responded to the following interrogatory: "Identify all corporations, individuals, or any other entities that You contend participated in the conspiracy You allege in the Action." ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs should not be granted a reprieve more than a month after fact discovery closed to go on a fishing expedition by seeking the personal text messages of a former Goldman Sachs employee ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Finally, to the extent that plaintiffs seek responsive text messages from Mr. Evans' Goldman Sachs-issued Blackberry, none exist. Text messaging functionality is disabled by default on such device, and even if it had been enabled, all texts sent to or from any firm-issued Blackberry would have been captured in Goldman Sachs' centralized journaling system that was the source of all of Mr. Evans' documents produced in this action. To the extent Mr. Evans sent or received texts on a Goldman Sachs-issued device during the relevant period, those documents would have been captured and, subject to the parties' negotiated search and responsiveness protocols, produced.

---

[3] For Metro custodians who used text messages for business purposes during the relevant period, their responsive text messages were produced to plaintiffs.

-4-

Respectfully,

Richard C. Pepperman II

cc:   All Counsel of Record (via ECF)