# CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

| | | | |
|---|---|---|---|
| ALMATY | ISTANBUL | | |
| ASHGABAT | LONDON | | |
| ASTANA | MEXICO CITY | ATTORNEYS AND COUNSELLORS AT LAW | TELEPHONE +1 212 696 6000 |
| BEIJING | MILAN | | FACSIMILE +1 212 697 1559 |
| BUENOS AIRES | MUSCAT | 101 PARK AVENUE | WWW.CURTIS.COM |
| DUBAI | PARIS | NEW YORK, NEW YORK 10178-0061 | |
| FRANKFURT | ROME | | |
| GENEVA | WASHINGTON, D.C. | | A. ROBERT DAWES |
| HOUSTON | | | TEL: +1 212 696 6191 |
| | | | FAX: +1 917 368 8981 |
| | | | E-MAIL: ARDAWES@CURTIS.COM |

June 23, 2016

**VIA ECF**

The Honorable Katherine B. Forrest
United States District Court
Southern District of New York
500 Pearl Street, Room 1950
New York, New York 10007-1312

      Re:    *In re Aluminum Warehousing Antitrust Litigation*
                 No. 13-MD-2481 (KBF) (S.D.N.Y.)

Dear Judge Forrest:

        On behalf of Defendant Glencore Ltd., I write in response to the Class and Individual Plaintiffs' ("Plaintiffs") letter-motion to compel dated June 16, 2016 (the "June 16 Letter"), regarding Glencore Ltd.'s privilege log. In short, even though Plaintiffs failed to timely meet and confer with Glencore Ltd. in good faith, all of Plaintiffs' complaints have either been addressed already by Glencore Ltd. or are entirely baseless. The relief Plaintiffs request should be denied.

### A. Plaintiffs Failed to Meet and Confer with Glencore Ltd. in Good Faith

        As Plaintiffs acknowledge, Glencore Ltd. produced its privilege log on April 29, 2016, and was the first party in this case to do so. Various Plaintiffs did not produce any privilege logs until weeks later. In May, Plaintiffs raised certain complaints about Glencore Ltd.'s privilege log, but refused Glencore Ltd.'s requests to conduct a global meet and confer. *See* Attachment A. Glencore Ltd. nonetheless offered to supplement its privilege log to address Plaintiffs' concerns. *See* Attachment B.

        Plaintiffs ignored this offer and instead filed a premature and wasteful motion to compel on May 12, 2016 (ECF No. 968). Glencore Ltd. replied on May 13, 2016, explaining that Court intervention was premature and unnecessary because the parties had not yet met and conferred, and because several Plaintiffs had yet to produce any privilege logs at all (ECF No. 972). On May 17, 2016, the Court issued an order denying Plaintiffs' motion and setting out a schedule by which the parties were to discuss and resolve any outstanding privilege log issues (ECF No. 975) (the "May 17 Order").

25807855

The May 17 Order required any party who had not yet produced a privilege log to do so immediately, and for the parties to meet and confer about any outstanding privilege log issues "over the next two weeks" – *i.e.*, no later than May 31, 2016. (Plaintiffs' June 16 Letter traces the various relevant dates but omits that one.) Glencore Ltd. had already produced its log in April, but pursuant to its good faith commitment to address the issues identified by Plaintiffs, Glencore Ltd. produced a revised and expanded privilege log along with 83 documents on May 27, 2016.

Despite being in possession of Glencore Ltd.'s original and revised privilege logs, Plaintiffs ignored the Court's May 31 deadline to meet and confer. In fact, Plaintiffs waited an additional two weeks after the Court's deadline had expired to even propose a meet and confer with Glencore Ltd. – a mere two days before the deadline to file opening letters. Despite being left with only two days to address Plaintiffs' rehashed complaints (which Glencore Ltd. believed had been resolved by its prior revisions and productions), and despite Glencore Ltd.'s objection that Plaintiffs had violated the Court's order to raise these issues on or before May 31, Glencore Ltd. agreed to meet and confer the following day, June 15.

On that meet and confer call, Glencore Ltd. addressed Plaintiffs' complaints. Among other things, Glencore Ltd. (1) committed to revise its log to change the names of certain attorneys to bold font and to ensure that the entries explicitly stated that legal advice was being discussed, (2) provided supplemental information regarding the titles and roles of certain individuals named on communications listed on its privilege log, (3) explained that logged emails with subject lines similar to certain produced documents had branched out from the produced discussions in a manner that caused them to be privileged, (4) explained how each document identified on the call as a potential privilege waiver was in fact not waived, and (5) committed to conduct a comprehensive reassessment of its privilege log, double-check all alleged third-party waiver documents, and produce any documents that were found to be not privileged.

Counsel for Plaintiffs seemed to understand and appreciate these explanations and commitments. Counsel for Plaintiffs also agreed that internal discussions regarding privileged advice from counsel continue to be privileged even if an attorney is not included on subsequent communications about the advice. Nonetheless, at the end of the call, counsel for Plaintiffs stated that unless Glencore Ltd. somehow satisfied all of Plaintiffs' demands before the following morning (in approximately 12 hours, overnight), they would file a motion to compel. That evening, Glencore Ltd. memorialized this call in an email to Plaintiffs, and suggested that Court intervention remained unnecessary given its disclosure of the additional information Plaintiffs sought and its commitment to address any remaining issues very shortly. *See* Attachment C.[1]

The next day, on June 16, counsel for Glencore Ltd. agreed with counsel for Plaintiffs that they would call the Court to request an extension to the privilege log meet and confer schedule. The parties then jointly called the Court, and the Court's clerk directed the

---

[1] Of course, Glencore Ltd. would have taken these concerns under advisement much earlier had Plaintiffs provided timely notice of them.

parties to write to the Court and request the extension, since Your Honor was in hearings that afternoon. Glencore Ltd. gave its go-ahead on a draft extension letter, but Plaintiffs abruptly stopped replying to emails and then filed their letter-motion to compel instead of the agreed extension request.

Plaintiffs have failed to timely meet and confer in good faith with Glencore Ltd., flagrantly disregarded the Court's schedule for resolving privilege log issues, repudiated their agreement with Glencore Ltd. to seek an extension rather than file a motion to compel, and deprived the parties of any reasonable opportunity to reach agreement on these issues, in violation of Federal Rule of Civil Procedure 37(a)(1) and Your Honor's requirement that parties "first confer in good faith" before involving the Court in discovery disputes. *See* Individual Rules of Practice in Civil Cases § 2(F). Nonetheless, in a good faith effort to address Plaintiffs' remaining concerns, Glencore Ltd. reviewed the documents identified in Plaintiffs' June 16 Letter and produced three additional email chains (totaling 63 component documents) where it determined upon reassessment that the documents in question were not privileged.[2]

### B. Plaintiffs Have No Basis to Challenge Glencore Ltd.'s Privilege Log

As explained below, Plaintiffs' complaints about Glencore Ltd.'s privilege log are baseless and/or have already been addressed by Glencore Ltd. and rendered moot.

#### 1. All of Glencore Ltd.'s Logged Entries Involve an Attorney

As the Court can see for itself, Plaintiffs are simply incorrect that Glencore Ltd.'s privilege log contains communications that "fail to involve any attorney for Glencore Ltd." (ECF No. 996). Counsel for Plaintiffs agreed with counsel for Glencore Ltd. that internal corporate discussions of attorney legal advice remain privileged, even if the attorney subsequently drops off of the email chain. *See* Attachment C. All of the documents identified in Plaintiffs' second footnote fall into this category, as well as the specific example of communications with in-house counsel regarding a "Sunday Times Article." Plaintiffs' allegations here are baseless and moot.

#### 2. All of Glencore Ltd.'s Logged Entries Concern Confidential Legal Advice

Plaintiffs speculate that certain of Glencore Ltd.'s in-house counsel may be "serv[ing] dual roles as legal advisors and business consultants," and list in their third footnote entries they say "appear to relate to business advice rather than legal advice." But an examination of those entries, seemingly identified by Plaintiffs at random, belies this frivolous claim.

---

[2] In response to Glencore Ltd.'s June 20 request that Plaintiffs' withdraw their motion to compel as moot, Plaintiffs complained on June 22 that Glencore Ltd. "did not identify on the second revised privilege log the documents that it de-designated and produced on June 20." *See* Attachment D. But as should be obvious, and as Glencore Ltd. specifically pointed out in its June 20 production letter to Plaintiffs, documents that were no longer withheld as privileged were purposefully removed from the privilege log. Plaintiffs also refused to withdraw their motion to compel "given the large number of entries identifying documents Glencore continues to withhold from production," which of course is not a valid basis for a motion to compel.

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
ATTORNEYS AND COUNSELLORS AT LAW

Page 4                                                        June 23, 2016

For example, to start at the beginning of Plaintiffs' list, entries 185-196 are emails with the subject lines "Guarantee document," "Agreement," "Aluminum Purchase," and "2012 Revised Proposals." Counsel for Glencore Ltd. has reviewed these documents and made a good faith determination that they concern legal advice. On some of the entries Plaintiffs identify, this is even more patently obvious. For example, entries 774-777 contain the subject line "Form of Warehousing Agreement – Draft," and are sent to a Glencore attorney. Entries 858-859 contain the subject line "Fw: revised incentive proposal and extended NDA," and are sent to multiple Glencore attorneys. Entries 861-872 contain the subject line "Compliance Considerations" and are sent to and from Glencore attorneys. Entries 1063 and 1064 are from Glencore in-house counsel to Curtis litigation counsel with the subject line "RE: Fw: Follow Up Questions." Plaintiffs' unsupported assertion that all of these entries "appear to relate to business advice" is incorrect.[3]

### 3. None of Glencore Ltd.'s Logged Communications Were Disclosed to Third Parties

Finally, Plaintiffs allege that there remain logged communications that were disclosed to third parties, but Glencore Ltd. has now produced all such documents. On the parties' June 15 meet and confer call, Glencore Ltd. explained to counsel for Plaintiffs why the various entries they pointed to were not waivers, identifying the alleged "third parties" as personnel from Glencore entities, in-house or outside counsel, and alternate email addresses or servers used by Glencore personnel. Plaintiffs' counsel seemed to understand this on the phone, but nonetheless continue to insist that the entries listed in footnote 4 of their June 16 Letter reflect third-party waiver. Glencore Ltd. has addressed these entries through explanations to Plaintiffs, reassessment of the documents in question, and production of any waived communications. Plaintiffs' waiver arguments are therefore moot.

**For the reasons described above, Plaintiffs' motion should be denied.**

Sincerely,

*[signature]*

A. Robert Dawes

CC: All Counsel of Record (via ECF)

---

[3] Plaintiffs also complain that Glencore Ltd. has withheld documents that contain similar subject lines to emails that were produced. *See* Attachment D. But as Glencore Ltd. explained in its June 15 meet and confer call with Plaintiffs, many of the withheld documents concern confidential legal advice regarding draft contracts, which may retain the same subject line as other (not privileged) emails regarding the contract, or in some cases, the topic of the underlying email chain may change but the subject line is not updated, or groups of email participants may branch off into separate conversations. Counsel for Plaintiffs seemed to understand and accept this on the phone, but nonetheless continue to press this point here. Plaintiffs also complain that the three email chains produced on June 20 "contain no confidential legal advice," but those documents contain attorney markups of contracts (which upon reassessment were found to have been sent to third parties).

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
ATTORNEYS AND COUNSELLORS AT LAW

Page 5

June 23, 2016

Enclosures:

    Attachment A: Email from Chelsea McLean to Jill Manning dated May 2, 2016

    Attachment B: Email from Robert Dawes to Jill Manning dated May 12, 2016

    Attachment C: Email from Robert Dawes to Jill Manning dated June 15, 2016

    Attachment D: Email from Jill Manning to Robert Dawes dated June 22, 2016

25807855