# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588

WWW.SULLCROM.COM

*125 Broad Street*

*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  AUG 1 0 2016
```

August 10, 2016

Via ECF

The Honorable Katherine B. Forrest,
    United States District Court,
        Southern District of New York,
            500 Pearl Street,
                New York, New York  10007.

        Re:    *In re Aluminum Warehousing Antitrust Litig.*, 1:14-cv-03116-KBF

Dear Judge Forrest:

        I write on behalf of defendants in the above-referenced action to advise the Court of the Second Circuit's decision yesterday in *In re Aluminum Warehousing Antitrust Litigation*, Nos. 14-3574(L), 14-3581(CON), the appeals by the Commercial End Users and Consumer End Users from the Court's August 29, 2014 dismissal of their actions. Because the reasoning of the Second Circuit's affirmance (opinion enclosed with this letter) makes clear that the First Level Purchasers have not alleged and cannot allege antitrust injury—an essential element of their antitrust claims—defendants respectfully request a prompt conference with the Court to discuss the implications of that decision for future proceedings in this case.

        In its August 2014 decision, this Court held, among other things, that the Commercial and Consumer End Users failed adequately to allege either that they suffered antitrust injury or that they are efficient enforcers of the antitrust laws. The Court declined to permit those plaintiffs to amend their complaints because "[t]here will always be others who are more directly injured than them" and thus "other, more efficient enforcers." *In re Aluminum Warehousing Antitrust Litig.*, 2014 U.S. Dist. LEXIS 121435, at *132 (S.D.N.Y. Aug. 29, 2014). On appeal, the Commercial and Consumer End Users argued that this Court had erred in holding that they are not efficient enforcers, and also contended that they could plead antitrust injury on remand simply by following the roadmap of the First Level Purchasers' amended complaint, which this Court subsequently had held adequately alleges antitrust injury under *Blue Shield of Virginia* v. *McCready*, 457 U.S. 465 (1982). *See In re Aluminum Warehousing Antitrust Litig.*, 95 F. Supp. 3d 419, 440-44 (S.D.N.Y. 2015).

The Honorable Katherine B. Forrest                                                    -2-

In its decision yesterday, the Second Circuit did not reach the "efficient enforcer" issue, but instead affirmed the dismissal of the Commercial and Consumer End Users' actions "on the ground that they did not (and could not) suffer antitrust injury." Op. at 4. In so ruling, the Second Circuit adopted defendants' reading of *McCready*'s "inextricably intertwined" language and rejected the argument that aluminum purchasers "suffered an antitrust injury because, under *McCready*, their role in creating demand for physical aluminum makes them 'inextricably intertwined' with the anticompetitive scheme." *Id.* at 28. Of particular relevance here, the Second Circuit held that purchasers of physical aluminum did not suffer antitrust injury from the exact same warehouse-related conduct challenged by the First Level Purchasers as anticompetitive in this case. The court explained that plaintiffs could not satisfy *McCready* because "[a]ll of the alleged anticompetitive acts—cancelling warrants, shuttling aluminum, and slowing load-outs— were within the defendants' power to do; they did not need or use injury to the Consumers or Commercials as a 'fulcrum' or 'conduit.'" *Id.* at 29; *see also id.* ("They allege the following anticompetitive conduct: the trader defendants cancelled warrants en masse; the trader defendants directed the warehouse operators to shuttle aluminum from one warehouse to another; the warehouse operator defendants treated the minimum load-out requirement as a maximum; and the warehouse operator defendants offered incentive payments to attract more aluminum. All of this conduct took place (if at all) in the LME-warehouse storage market, and that is where the direct, immediate impact would have been felt.").

The Second Circuit's decision (see, in particular, pages 28-32) applies with equal force to the First Level Purchasers' allegations of antitrust injury based on their own purchases of aluminum amidst the very same purported anticompetitive conduct and does not in any way depend on the fact that the Commercial and Consumer End Users bought aluminum further down the distribution chain. With respect, the Second Circuit's opinion cannot be reconciled with this Court's interpretation of *McCready* in its March 2015 opinion. *Compare* Op. at 30 ("Commercials and Consumers in effect argue that the 'inextricably intertwined' exception is a 'but-for' cause test: if Commercials and Consumers did not exist, there would be no real world purchasers of aluminum, and without users of physical aluminum, there would be no market for aluminum futures or aluminum warehousing. This approach would limitlessly increase the universe of potential plaintiffs, and cannot be squared with *McCready* itself . . . ."), *with* 95 F. Supp. 3d at 442 ("Plaintiffs are the real world users whose demand for aluminum creates the market for aluminum sales; thus, were it not for their need to use aluminum as an input in their production processes, it would not be possible for the financial trading defendants to trade aluminum as a commodity . . . . That is, their purchases are inextricably intertwined with the competitive landscape in which defendants' alleged scheme ultimately played out."). Indeed, the Commercial and Consumer End Users argued on appeal that they should be permitted to amend their complaints to make precisely the same allegations of antitrust injury that this Court had upheld in the First Level Purchasers' amended complaint. The Second Circuit rejected that request, holding that the Commercial and

The Honorable Katherine B. Forrest                                        -3-

Consumer End Users "failed to allege (*and could not allege*) antitrust injury."  Op. at 32 (emphasis added).)

In view of the obvious significance of the Second Circuit's decision to the First Level Purchasers' claims, defendants respectfully request that the Court schedule a prompt in-person or telephonic conference to discuss next steps.  Based on the Second Circuit's opinion, defendants intend to make a Rule 12(c) motion for judgment on the pleadings that can be briefed on an expedited basis.  Defendants respectfully submit that this motion will dispose of the entire case and thus obviate the heavy burden for the parties and the Court from any further proceedings in this action.  Defendants therefore will ask at the conference that the Court adjourn any further proceedings on plaintiffs' pending *Daubert* and class certification motions (which would be rendered moot by dismissal but otherwise would need to take into account the Second Circuit's decision).

yes.

Respectfully,

/s/ Richard C. Pepperman II

Richard C. Pepperman II

(Enclosure)

cc:     All Counsel (via ECF)

*Ordered*

*I expected this letter. I will not adjourn the schedule -- and class cert. shall proceed as scheduled -- but file your motion as soon as practicable. If the motion suggests more strongly that the Court should adjourn dates, I will consider doing so (and would likely need to see plaintiffs' opposition and assess its strength).*

*KBF.*

*8/10/16*

*USDJ*